Steven J. Hassing
California SBN 152125
LAW OFFICES OF STEVEN J. HASSING
425 Calabria Court
Roseville, CA  95747
Telephone:  (916) 677-1776
Facsimile:   (916) 677-1770

Attorney *for Defendant, Northern California Universal Enterprise Company and Lotus Developments, L.P.*

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROGER MCINTOSH,<br><br>                              Plaintiff(s);<br>v.<br><br>NORTHERN CALIFORNIA UNIVERSAL ENTERPRISES COMPANY, ET AL.,<br><br>                              Defendant(s). | No.  1:07-CV-01080-LJO-GSA<br><br>**STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF SUMMARY JUDGMENT**<br><br>**DATE:  OCTOBER 28, 2009**<br>**TIME:   8:30 A.M.**<br>**PLACE:  COURTROOM 4**<br><br>**JUDGE: Lawrence J. O'Neill** |

| UNDISPUTED MATERIAL FACTS: | SUPPORTING EVIDENCE: |
|---|---|
| 1. In around January of 1992, John Hendrikson, then Wasco City Manager, encouraged Legacy to purchase approximately 480 acres adjacent to the Wasco Valley Rose Golf Course and develop the property utilizing City financing. | 1. Para 3, Michael Brown Declaration. |

| | |
|---|---|
| 2. In early 1992, Legacy, Martin-McIntosh and The City of Wasco joined together in a loose association for the purpose of providing direction and to clarify expectations of those parties regarding development of the 480 acres adjacent to the golf course. | 2. Para 4, Michael Brown Declaration and page 2 of Exhibit "A" thereto. |
| 3. On or around April 13, 1992, Martin-McIntosh prepared a "draft guidance package" for the "Valley Rose Estates Master Planned Community". | 3. Para 4, Declaration of Michael Brown and Exhibit "A" thereto. |
| 4. The guidance package was prepared to provide direction and clarify expectations regarding development of the 480 acres. | 4. Para 4, Michael Brown Declaration and page 2 of Exhibit "A" thereto. |
| 5. The guidance package required Martin-McIntosh to prepare a Master Development Plan in close cooperation with The City. | 5. Para 5, Steven J Hassing Declaration<br><br>PP 4 and 5 of Exhibit "A" to the Declaration of Michael Brown. |
| 6. The City, Martin-McIntosh and Legacy comprised what MM referred to as the "project team" which was to collaborate and agree upon project objectives. | 6. Paras 5 and 6, Michael Brown Declaration<br><br>Page 4 of Exhibit "A" attached to the Declaration of Michael Brown. |
| 7. Under the terms of the draft guidance package, MM was to serve as the planner, engineer and consultant. | 7. Para 6, Declaration of Steven J Hassing,<br><br>Page 4 of Exhibit "A" to the Declaration of Michael Brown. |

| | |
|---|---|
| 8. MM was also to supervise the development and construction of the subdivision. | 8. Para 7, Declaration of Steven J Hassing,<br><br>Para 15 Third Amended Complaint attached to Steven J Hassing Declaration as Exhibit "C". |
| 9. Legacy was to serve as the project applicant. | 9. Para 8, Declaration of Steven J Hassing,<br><br>Page 4 of Exhibit "A" to the Declaration of Michael Brown. |
| 10. MM received all its directions related to the performance of the engineering services from The City with The City paying MM's bills. | 10. Para 9, Steven J Hassing Declaration and Exhibit "D" thereto. (see pg 3, lines 16-27). |
| 11. On March 18, 1992, MM prepared a written contract which addressed the entire 480 acres adjacent to the Valley Rose Golf Course.  It provided that MM would prepare a conceptual plan for $15,200, prepare master plans for water, sewer and drainage, and other utilities for $54,800 and conduct a survey of the area for $19,100, a total of $89,100. | 11. Para 7, Michael Brown Declaration and Exhibit "B" thereto including MM's March 18, 1992 letter. |
| 12. On May 11, 1992, MM and Brown expanded the terms of The Contract to include preparation of Parcel Map No. 9572 for $5,000, preparation of improvement plans and final map for Tract 5472 for $57,900. | 12. Para 7, Declaration of Michael Brown and Exhibit "C" thereto. |

3

| | |
|---|---|
| 13. On June 24, 1992, The Contract was again expanded, increasing certain fees and adding $12,100 for the preparation of a tentative map for Tract 5472. | 13. Para 7, Declaration of Michael Brown and Exhibit "D" thereto. |
| 14. In 1993, MM submitted The Plans to The City so that Legacy could obtain a building permit for construction of the Tract 5472 improvements. | 14. Para 26, Third Amended Complaint attached to Steven J Hassing Declaration as Exhibit "C" |
| 15. The City approved The Plans and the improvements were constructed in 1993 and 1994 | 15. Paras 26, 27 and 28 Third Amended Complaint attached to Steven J Hassing Declaration as Exhibit "C". |
| 16. Even though the subdivision improvements were constructed in conjunction with Map 5472, legal lots within Parcel 1 or Tract 5472 were not created by MM because MM stopped working on the project before the final map was approved. | 16. Para 10, Steven J Hassing Declaration and Exhibit "E" thereto. (McIntosh depo, p 80; 1-25). |
| 17. On March 8, 1993, MM issued a memorandum of "cost update" advising of $174,400 in additional costs, none of which directly related to Tract 5472. | 17. Para 7, Michael Brown Declaration, and Exhibit "D" thereto. |
| 18. On July 21, 1992, MM recorded Parcel Map 9572 which divided the 480 acres into 6 separate parcels of between 27.64 and 154.31 acres. | 18. Para 11, Steven J Hassing Declaration and Exhibit "F" thereto. |
| 19. Parcel 1, the parcel at issue in this lawsuit, contains 33.51 acres. | 19. Para 12, Steven J Hassing Declaration and page 3 of Exhibit "F" thereto. |

4

| | |
|---|---|
| 20. Map 5472 sought to further divide Parcel 1 into 69 lots, 68 for single family residential and 1 for ninety six apartments. | 20. Para 3, Steven J Hassing Declaration, Exhibit "B" thereto.<br><br>Para 8, Jeff Gutierrez Declaration. |
| 21. In 2007, DeWalt's Final Map 6451 divided Parcel 1 in 68 single family lots. | 21. Para 14, Steven J Hassing Declaration, Exhibit "G" thereto.<br><br>Para 8, Jeff Gutierrez Declaration. |
| 22. On January 28, 1993, The City and Legacy, aided by MM, executed an Acquisition Agreement whereby The City agreed to purchase MM's plans and specifications as well as the infrastructure improvements to be constructed in Tract 5472. | 22. Paras 9 and 10, Michael Brown Declaration and Exhibit "F" thereto. (See pages 2 and 3). |
| 23. Ronald Staub, MM's project manager, prepared the engineering cost summary for the acquisition agreement which established the amounts MM was to received from The City. | 23. Para 10, Michael Brown Declaration.<br><br>Para 7, Steven J. Hassing declaration and Exhibit "U" thereto. (McIntosh Dec. 18, 2008 declaration, page 156; 2-22). |
| 24. The City paid for The Plans as well as the improvements. | 24. Para 20, Third Amended Complaint attached to Steven J Hassing Declaration as Exhibit "C". |
| 25. The City paid MM over $800,000 for its Services. | 25. Para 9, Steven J Hassing Declaration and Exhibit "D" thereto. (see 3: 1- 6). |

| | |
|---|---|
| 26. On April 26, 2002, The City acquired parcels 1 and 3 via tax sale. | 26. Para 15, Steven J Hassing Declaration and Exhibits "H" and "I" thereto.<br><br>Para 28, Third Amended Complaint attached to Steven J Hassing Declaration as Exhibit "C". |
| 27. The City circulated a Developer Information Package, one of which reached Northern's real estate agent, which touted Tract 5472 as having "infrastructure". | 27. Para 5, Joe Wu Declaration and Exhibit "A" thereto. (see page 5).<br><br>Para 4, Darrell Souza Declaration and Exhibit "A" thereto. (see page 5). |
| 28. The Developer Information Package included a copy of Map 5472 as well as a sewer and water map. | 28. Para 6, Joe Wu Declaration. (see Appendix "C"). |
| 29. The Developer Information Package noted that there were several plan documents developed in the early 1990's currently on file with The City which The City would make available to interested parties. | 29. Para 7, Joe Wu Declaration. (see pages 6 and 11). |
| 30. The Developer Information Package also contained an executive summary which noted in two places that, "infrastructure, including roadways and water lines, were developed on the 34 acre parcel within the City-owned land". | 30. Para 8, Joe Wu Declaration. (see Appendix "B", pp 1 and 5). |
| 31. On May 18, 2004, The City and Northern entered into an agreement whereby Northern would purchase Parcel 1 which contained Tract 5472 (33.51 acres) and Parcel 3, which contained Tract 5618 (64.06 acres). | 31. Para 9, Joe Wu Declaration.<br><br>Para 15, Steven J. Hassing declaration and Exhibits "H: and "I" thereto. |

| | |
|---|---|
| 32. Later, but prior to close of escrow, Northern assigned its purchase rights to Lotus and Lotus was the actual purchaser of Parcels 1 and 3. | 32. Para 10, Joe Wu Declaration. |
| 33. Tentative Map 5472 expired on May 11, 2001 and even though the subdivision improvements had been installed, The City required that Lotus prepare and submit a new tentative map. | 33. Para 11, Joe Wu Declaration<br><br>Para 32, Steven J Hassing Declaration and Exhibit "Z" thereto. (January 28, 2009 deposition of Roger McIntosh, pp 310; 24- 311; 17). |
| 34. Prior to Lotus's purchase, Wu and McIntosh spoke by telephone about the intended purchase of Parcel 1 from The City.  Wu asked McIntosh if he would be interested in preparing the new tentative map that The City was requiring.  McIntosh stated that he would but that he would have to be paid the $800,000 left owing by the previous developer and The City. | 34. Para 12, Joe Wu Declaration<br><br>Para 16, Steven J. Hassing Declaration and Exhibit "J" thereto. (Jan. 28, 2009 deposition of Roger McIntosh, pp 310; 24- 311; 17). |
| 35. On July 21, 2004, Wu hired DeWalt to survey the existing improvements and prepare and process the new tentative map for the sum of $26,000.00. | 35. Para 13, Joe Wu Declaration<br><br>Para 3, Jeff Gutierrez Declaration. |
| 36. Mr. McIntosh knew, at the time he participated in a telephone call with Mr. Wu in which he told Mr. Wu that he would prepare a new tentative map for the amount still owed by the prior developer, that he held a copyright interest in Map 5472 and The Plans but he did not tell that to Mr. Wu. | 36. Para 17, Steven J Hassing Declaration and Exhibit "K" thereto. (January 28, 2009 depo of Roger McIntosh, p 312; 2-22).<br><br>Paras 14 and 15, Joe Wu declaration. |

7

| | |
|---|---|
| 37. Mr. McIntosh kept the information regarding his copyright interests to himself because he didn't feel it was his duty to tell Mr. Wu. | 37. Para 18, Steven J Hassing Declaration and Exhibit "L" thereto. (January 28, 2009 deposition of Roger McIntosh, pp 312; 23-314; 17.) |
| 38. Right after his telephone conversation with Mr. Wu, Mr. McIntosh requested that The City send him all future City agendas so he could follow Mr. Wu's progress at Valley Rose. | 38. Para 19, Steven J Hassing Declaration and Exhibit "M" thereto. (December 18, 2008 deposition of Roger McIntosh, pp 186; 8- 188; 13). |
| 39. Mr. McIntosh believed that if Mr. Wu used a different engineer, one besides Mr. McIntosh, that Mr. Wu would be infringing and that Mr. McIntosh could sue. | 39. Para 20, Steven J Hassing Declaration and Exhibit "N" thereto. (December 18, 2008 deposition of Roger McIntosh, pp 191; 12- 192; 12). |
| 40. McIntosh considered suing Wu when he first learned that he wasn't being hired to prepare the new map. | 40. Para 21, Steven J Hassing Declaration and Exhibit "O" thereto.. (December 18, 2008 deposition of Roger McIntosh, p 198; 12-16.) |
| 41. Although McIntosh suspected that his work would be copied he failed to warn DeWalt, Wu or The City that he intended to sue for infringement. | 41. Para 22, Steven J Hassing Declaration and Exhibit "P".. (December 18, 2008 deposition of Roger McIntosh, pp 196;22- 197; 22.)<br><br>Para 14, Joe Wu Declaration<br><br>Para 9, Jeff Gutierrez Declaration. |
| 42. All the time that DeWalt's tentative and final maps were being processed, McIntosh knew that Northern was spending money. | 42. Para 23, Steven J Hassing Declaration and Exhibit "Q" thereto. (January 28, 2009 deposition of Roger McIntosh, 315; 3-8.) |

| | |
|---|---|
| 43. In early 2006 when Final Map 6451 was recorded, McIntosh began driving by the subdivision to see if anything was happening. | 43. Para 24, Steven J Hassing Declaration and Exhibit "R" thereto. (January 28, 2009 deposition of Roger McIntosh, 9 197; 17-22.) |
| 44. McIntosh did not warn Wu about copyright infringement because "he didn't feel it was his position to tell Joe what the law says". | 44. Para 25, Steven J Hassing Declaration and Exhibit "S" thereto. (January 28, 2009 deposition of Roger McIntosh, pp 314; 10-315; 1.) |
| 45. Joe Wu's first knowledge of McIntosh's belief that infringement was occurring was when Wu was served with the summons and complaint in this action. | 45. Para 15, Joe Wu Declaration. |
| 46. The first time Wu ever heard anything regarding McIntosh's alleged copyright was when he was served with the summons and complaint in this action. By that time Lotus and Northern had spent over $1,250,000 in hard construction costs on twelve homes then being constructed on Parcel 1 and $979,403.86 for 68 building permits. | 46. Para 15, Joe Wu Declaration. |
| 47. DeWalt surveyed the streets, curbs, gutters, manhole covers, block walls and all visible improvements which had been constructed within Tract 5472. | 47. Para 11, Greg Black Declaration<br><br>Para 4, Jeff Gutierrez Declaration. |
| 48. DeWalt then processed the survey information and created a map which depicted all observed site improvements and conditions. | 48. Para 12, Greg Black Declaration<br><br>Para 6, Jeff Gutierrez Declaration. |

9

| | |
|---|---|
| 49. In 1993, MM submitted The Plans for Tract 5472 to The City so that Legacy could obtain building permits and begin constructing improvements. | 49. Para 26, Third Amended Complaint attached to Steven J Hassing Declaration as Exhibit "C". |
| 50. Greg Black was the lead engineer/project manager for DeWalt regarding Map 6451. | 50. Para 3, Greg Black Declaration.<br><br>Para 10, Jeff Gutierrez Declaration. |
| 51. Greg Black testified that although he does not deny receiving emailed copies of The Plans from The City, he has no recollection of ever having requested them and that it was his practice to try and obtain any and all documents in any way related to a parcel of land on which he is working. | 51. Para 6, Greg Black Declaration. |
| 52. Greg Black did not reproduce anything from, or otherwise make any use of any improvement plans The City provided to him in connection with his work on Tentative Map 6451 and has no knowledge of any DeWalt employee reproducing improvement plans prepared by Martin-McIntosh. | 52. Paras 7 and 8, Greg Black Declaration. |
| 53. Sara Burgi was another DeWalt employee that did some work on Tentative Map 6451. | 53. Para 2, Sara Burgi Declaration. |
| 54. Sara Burgi never even saw The Plans or Map 5472 prior to this litigation. | 54. Para 3, Sara Burgi Declaration. |

| | |
|---|---|
| 55. Josh Woodard does not recall ever working on Map 6451 but knows for a fact that he has never copied from another engineer's work while working on any map for DeWalt. | 55. Paras 4 and 7, Josh Woodard Declaration. |
| 56. Prior to this lawsuit being filed Wu obtained copies of the landscape plans and pump station plans so that he could make repairs ordered by The City. | 56. Para 16, Joe Wu Declaration. |
| 57. Neither Wu, Lotus nor Northern obtained any other portions of The Plans prior to the filing of this lawsuit nor did they make copies of any of The Plans. | 57. Para 17, Joe Wu Declaration. |
| 58. The City waived the requirement that Lotus prepare or submit improvement plans. | 58. Para 19, Joe Wu Declaration<br><br>Para 13, Greg Black Declaration<br><br>Para 26, Steven J Hassing Declaration and Exhibit "T" thereto.  (January 28, 2009 deposition of Roger McIntosh, 29; 2-8.) |
| 59. Lotus was able to have its final map approved without submitting any improvement plans. | 59. Para 19, Joe Wu Declaration<br><br>Para 13, Greg Black Declaration<br><br>Para 11, Jeff Gutierrez Declaration<br><br>Para 27, Steven J Hassing Declaration and Exhibit "T" thereto.  (January 29, 2009 deposition of Keith Woodcock, p 29; 2-8.) |

| | |
|---|---|
| 60. The City did not "use" MM's old improvement plans for any purpose in conjunction with the approval of Lotus's Map. | 60. Para 28, Steven J Hassing Declaration and Exhibit "V" thereto.  (January 29, 2009 deposition of Keith Woodcock, P 15; 7-18.) |
| 61. The Acquisition Agreement gave The City the right to complete any improvements which were not completed by the developer. | 61. Para 9, Michael Brown Declaration and Exhibit "F" thereof at page 9. |
| 62. Section 6 of the Acquisition Agreement provided that it would inure to the benefit of the parties' heirs, executors, administrators, successors and assigns. | 62. Para 9, Michael Brown Declaration and Exhibit "F" thereof at page 10. |
| 63. All the directions to MM for the performance of the engineering services for the subdivision came from The City which paid all the bills. | 63. Para 9, Steven J Hassing Declaration and Exhibit "D" thereto.  (3;16-27). |
| 64. The Contract between Legacy/Brown and MM does not prohibit The City from using The Plans for the specific purpose for which they were intended. | 64. Para 7, Michael Brown Declaration and Exhibit "B" thereto. |
| 65. Paragraph 13 of The Contract between Legacy/Brown and MM specifically spells out that the plans, drawings or other work product may be used for the project described on the face hereof. | 65. Para 7, Michael Brown Declaration and Exhibit "B" thereto. (see para 13). |

| | |
|---|---|
| 66. Improvement plans are kept by the public works department. | 66. Para 12, Jeff Gutierrez Declaration<br><br>Para 32, Steven J Hassing Declaration and Exhibit "Z" thereto.  (January 29, 2009 deposition of Keith Woodcock, Pp 13; 18-14; 12.) |
| 67. MM had no intention of using Map 5472 or The Plans on any other subdivision. | 67. Para 30, Steven J Hassing Declaration and Exhibit "X" thereto.  (December 18, 2008 deposition of Roger McIntosh, pp 210; 21-211; 9.) |
| 68. DeWalt surveyed all of the parcels in which Tract 6451 is located.  It then surveyed the existing improvements within Tract 6451, including existing . streets, curbs and gutters, building pads, any visible utilities, block walls and previously set street monuments. | 68. Paras 10 and 11, Greg Black Declaration<br><br>Para 4, Jeff Gutierrez Declaration. |
| 69. DeWalt processed the survey information and created a map which depicted all observed site improvements and conditions. | 69. Para 12, Greg Black Declaration<br><br>Para 6, Jeff Gutierrez Declaration. |
| 70. Pages 67 through 79 and pages 103 through 120 of the deposition transcript of Steven Wong are filled with differences between maps 5472 and 6451. | 70. Para 31, Steven J Hassing Declaration and Exhibit "Y" thereto. |
| 71. The "idea" of a 68 lot subdivision with streets running through it in the same manner as in MM's "idea" was employed by DeWalt because all of the improvements were in and that was the only way of drawing a map to take | 71. Para 13, Jeff Gutierrez Declaration. |

13

| | |
|---|---|
| advantage of those expensive improvements. | |
| 72. McIntosh did not warn anyone of his intended infringement lawsuit before filing it on July 21, 2007. | 72. Para 25, Steven J Hassing Declaration and Exhibit "S" thereto<br><br>Para 15, Joe Wu Declaration<br><br>Para 9, Jeff Gutierrez Declaration. |
| 73. DeWalt submitted Tentative Map 6451 to The City on November 10, 2004. | 73. Para 14, Greg Black Declaration.<br><br>Para 14, Jeff Gutierrez Declaration. |
| 74. McIntosh's decision to sue Lotus and Northern for copyright infringement was made when DeWalt started processing Map 6451. | 74. Para 21, Steven J Hassing Declaration and Exhibit "O" thereto. |
| 75. McIntosh kept his true intentions regarding copyright infringement secret from Wu, DeWalt and The City. | 75. Para 25, Steven J Hassing Declaration and Exhibit "S" thereto<br><br>Para 15, Joe Wu Declaration<br><br>Para 9, Jeff Gutierrez Declaration. |
| 76. Between the time McIntosh first considered suing and the time he did sue, Northern and Lotus had spent $1,605,000 in purchasing the land, $979,403.86 on building permits, $26,000 on engineering, and over $1,250,000 in hard construction costs. | 76. Para 20, Joe Wu Declaration. |
| 77. Wu believed that his conduct in hiring DeWalt to survey Parcel 1 and create a new subdivision map was innocent. He was ignorant of McIntosh's intent to sue is Northern hired a new engineer. Wu | 77. Paras 21, 22 and 23, Joe Wu Declaration. |

14

| | |
|---|---|
| would not have proceeded with the purchase of the land had he known of McIntosh's intention to sue for infringement. | |
| 78. On September 8, 1993, MM received a promissory note from Legacy in the amount of $250,000. | 78. Para 11, Michael Brown Declaration and Exhibit "G" thereto. |
| 79. In October of 1993, MM secured the $250,000 with a deed of trust. | 79. Para 12, Michael Brown Declaration and Exhibit "H" thereto. |
| 80. On January 26, 2001, MM and Legacy entered into a Settlement Agreement and Mutual Release and obtained a stipulated judgment in the amount of $341,487.01. | 80. Paras 13 and 14, Michael Brown Declaration and Exhibits "I" and "J" thereto. |
| 81. DeWalt had no need to copy The Plans and did not copy them | 81. Para 13, Greg Black Declaration<br><br>Paras 5 and 7, Josh Woodard Declaration<br><br>Para 7, Jeff Gutierrez declaration<br><br>Para 6, Sarah Burgi Declaration<br><br>Paras 26 and 27, Steven J Hassing Declaration and Exhibit "T" thereto. |

Dated this 22nd day of September, 2009    /s/ Steven J. Hassing, Esq.
                                          Steven J Hassing, Attorney for defendants

**CERTIFICATE OF SERVICE**

1. On September 28, 2009, I served the following document:

   - **STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF SUMMARY JUDGMENT**

2. The above-named document was served by the following means to the persons as listed below:

__XX__   Overnight service via UPS and addressed to:

   James Braze
   Jeffrey Travis
   Borton, Petrini, LLP
   1600 Truxtun Avenue
   Bakersfield, CA  93301

   Chaka Okadigbo
   Garcia Calderon Ruiz, LLP
   500 South Grand Avenue, Ste. 1100
   Los Angeles, CA  90071

   William L. Alexander
   Alexander & Associates
   1925 G Street
   Bakersfield, CA  93301

   By fax transmission. I faxed the document to the persons at the fax number listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission is attached.

I declare under penalty of perjury that the foregoing is true and correct. Dated this 28th Day of September, 2009.

/s/ Kimberley A. Hassing
Kimberley A. Hassing

16