1   and -- at the first conversation.
2       Q.  When he called you and you had that first
3   conversation, you never mentioned the word copyright at
4   all, did you?
5       A.  No.  No, but I told him that I hadn't been
6   paid for those improvement plans.
7       Q.  Right.
8       A.  So that if he wanted me to work with him, I
9   would need to get compensated for that -- for that work.
10      Q.  Okay.  And as he moved forward with obtaining
11  his final, and as he moved forward with constructing
12  homes, you never considered contacting him to advise him
13  that in your opinion he was violating your copyright,
14  correct?
15      A.  Well, I don't feel that that's my -- my
16  position to advise him of what the law says.
17      Q.  So, the answer to my question would be yes?
18      A.  Could you restate the question?
19  MR. HASSING:  Could you read the question back?
20  (Record read as follows:
21      "Question:  Okay.  And as he moved forward
22  with obtaining his final, and as he moved forward
23  with constructing homes, you never considered
24  contacting him to advise him that in your opinion
25  he was violating your copyright, correct?")



Toll Free: 800.300.1214
Facsimile: 661.322.2242

Suite 170
5001 East Commercenter Drive
Bakersfield, CA 93309
www.esquiresolutions.com

315

1        THE WITNESS:  That's correct.
2        BY MR. HASSING:
3        Q.  And based on your experience in the industry,
4   you knew, did you not, that as he moved forward with his
5   engineer to obtain a final, and as he moved forward to
6   construct homes, that he was spending money in this
7   process?  You knew that, right?
8        A.  Absolutely.
9        Q.  Now, you were asked about the City's benefit
10  that was obtained by the use of your improvement plans and
11  tentative map, remember that?
12       A.  Yes.
13       Q.  And you said something to the effect that
14  using your improvement plans allowed Joe to obtain a
15  higher appraisal on the Valley Rose subdivision.  Do you
16  recall that?
17       A.  Yes.
18       Q.  What was that answer based on?  What facts
19  was that answer based on?
20       A.  I believe there's a public record from -- in
21  the City of Wasco that he submitted -- or some letters or
22  documents that showed a new appraised value, and a new
23  loan that he obtained on the property after he purchased
24  it, that he then went and used to purchase the golf
25  course.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.300.1214
Facsimile: 661.322.2242

Suite 170
5001 East Commercenter Drive
Bakersfield, CA 93309
www.esquiresolutions.com

**EXIBIT   T**   HASSING DEC

**Certified Copy**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

ROGER McINTOSH,

    Plaintiff,

vs.

NORTHERN CALIFORNIA UNIVERSAL
ENTERPRISES COMPANY, ET AL.,

    Defendants.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

Case No.
107CV-01080-
LJO-WMW

**DEPOSITION OF**

**KEITH WOODCOCK**

January 29, 2009
1:40 p.m.

Suite 170, 5001 East Commercenter
Bakersfield, California

Brian S. Cardoza, CSR No. 8362



ESQUIRE

Toll Free: 800.300.1214
Facsimile: 661.322.2242

Suite 170
5001 East Commercenter Drive
Bakersfield, CA 93309
www.esquiresolutions.com

                              29
1    meet the standards of the City.
2           Q.  And to your understanding, were there any
3    improvement plans that were accepted by the City for tract
4    6451?
5           A.  They were not required to be submitted.
6           Q.  And not required pursuant to what?
7           A.  Because that the improvements were already in
8    place.
9           Q.  I understand.  Doing this for as many years
10   as you have been doing it, and I'm speaking about, you
11   know, the planning and coordination of these subdivisions,
12   if work needs to be done, let's say that a water main
13   breaks, which I'm sure happens sometimes?
14          A.  Yes.
15          Q.  A water main breaks and work needs to be done
16   to fix that work, and someone needs to understand the
17   layout of the problem, would they typically consult the
18   improvement plans for that subdivision in order to fix
19   that problem?
20          MR. OKADIGBO:  Objection, calls for speculation,
21   lack of personal knowledge, incomplete hypothetical.
22          You can answer if you understand.
23          THE WITNESS:  I -- I -- I do not know how public
24   works would approach the issue, but I presume that they
25   would use -- look -- look at the improvement plans to see



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.300.1214
Facsimile: 661.322.2242

Suite 170
5001 East Commercenter Drive
Bakersfield, CA 93309
www.esquiresolutions.com

# EXIBIT U    HASSING DEC

**Certified Copy**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

ROGER McINTOSH,

    Plaintiff,

vs.

NORTHERN CALIFORNIA UNIVERSAL
ENTERPRISES COMPANY, ET AL.,

    Defendants.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

Case No.
107CV-01080-LJO-WMW

**DEPOSITION OF**

**ROGER McINTOSH**

December 18, 2008
9:11 a.m.

5001 East Commercenter
Suite 170
Bakersfield, California

Brian S. Cardoza, CSR No. 8362




Toll Free: 800.300.1214
Facsimile: 661.322.2242

Suite 170
5001 East Commercenter Drive
Bakersfield, CA 93309
www.paulsonreporting.com

1    A.  Not really.
2    Q.  All right.  I'd like to direct your attention
3 to the very last page of this document.  It says at the
4 top, "Acquisition Of Master Plans", and then it says,
5 "Engineering Costs", "Date:  January 26th, 1993".  Do you
6 see that?
7    A.  Yes, I do.
8    Q.  And it reflects costs through December 15th,
9 1992, right?
10    A.  Yes.
11    Q.  And it indicates that it was prepared by
12 "RJS".  Do you know who "RJS" is?
13    A.  It was probably Ron Staub.
14    Q.  And he worked for Martin-McIntosh, right,
15 during this time period?
16    A.  Yes.  Yes, he did.
17    Q.  He was the point man, for lack of a better
18 word, at Martin-McIntosh with The Legacy Group, right?
19    A.  Yes.
20    Q.  Okay.  And you understand that he prepared
21 this document?
22    A.  That's what it appears.
23    Q.  All right.  Do you recognize this document as
24 one which reflects the cost of the work that
25 Martin-McIntosh did regarding engineering for this



ESQUIRE DEPOSITION SERVICES

PAULSON REPORTING & LITIGATION SERVICES, LLC

Toll Free: 800.300.1214
Facsimile: 661.322.2242
Suite 170
5001 East Commercenter Drive
Bakersfield, CA 93309
www.paulsonreporting.com

# EXIBIT  V   HASSING DEC

**Condensed Transcript**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

ROGER McINTOSH,

    Plaintiff,

vs.

NORTHERN CALIFORNIA UNIVERSAL
ENTERPRISES COMPANY, ET AL.,

    Defendants.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

Case No.
107CV-01080-
LJO-WMW

### DEPOSITION OF

### KEITH WOODCOCK

January 29, 2009
1:40 p.m.

Suite 170, 5001 East Commercenter
Bakersfield, California

Brian S. Cardoza, CSR No. 8362



Toll Free: 800.300.1214
Facsimile: 661.322.2242

ESQUIRE

Suite 170
5001 East Commercenter Drive
Bakersfield, CA 93309
www.esquiresolutions.com

                                    15

1    that subdivision agreement, for costing out those figures,
2    that -- that no -- no value was -- was placed as far as
3    what needed to be bonded.
4         Q.   Okay.  So, in the subdivision agreement
5    there's someplace in there where you list certain values?
6         A.   Yes.
7         Q.   And you're telling me then that in that
8    subdivision agreement, in the place where you would have
9    had a number for the improvements, there was no number
10   inserted in that agreement?
11        A.   That's correct.
12        Q.   And that's because those improvements were
13   already completed?
14        A.   That's correct.
15        Q.   Did you, or anybody working under you, ever
16   actually use the old improvement plans for any purpose in
17   conjunction with 6451?
18        A.   Not within planning, no.
19        Q.   Okay.
20        I think that's all I have, Jeff.  Do you have any
21   questions or should we send him home?
22        MR. TRAVIS:  No, I have a few.  Just a few, not
23   too many.
24   ///
25   ///



Toll Free: 800.300.1214
Facsimile: 661.322.2242

Suite 170
5001 East Commercenter Drive
Bakersfield, CA 93309
www.esquiresolutions.com

EXIBIT  X   HASSING DEC

**Certified Copy**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

ROGER McINTOSH,

    Plaintiff,

vs.

NORTHERN CALIFORNIA UNIVERSAL
ENTERPRISES COMPANY, ET AL.,

    Defendants.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

Case No.
107CV-01080-LJO-WMW

**DEPOSITION OF**

**ROGER McINTOSH**

December 18, 2008
9:11 a.m.

5001 East Commercenter
Suite 170
Bakersfield, California

Brian S. Cardoza, CSR No. 8362




Toll Free: 800.300.1214
Facsimile: 661.322.2242

Suite 170
5001 East Commercenter Drive
Bakersfield, CA 93309
www.paulsonreporting.com

                                  210

1           Q.  Okay.  And you're claiming profits that Joe
2   has made, right?
3           A.  For copyright infringement, yes.
4           Q.  All right.  Okay.  Before we get to the
5   profits that Joe's made, are you claiming any other
6   monetary damage other than the 338 plus interest?
7           A.  Attorney's fees.
8           Q.  Anything else?
9           A.  Whatever's in the -- the -- the lawsuit.
10          Q.  All right.  You're claiming as additional
11  damages profits that Joe has made, in the alternative, are
12  you claiming any profits lost by Martin-McIntosh or
13  yourself?  In other words, I know you're claiming the
14  $338,000.00 that you were due for the work you did, right?
15          A.  Yes.
16          Q.  We talked about that.  Are you also claiming
17  any lost profits, or does that encompass any profits that
18  you would have made?
19          A.  I'm not clear what you mean by "lost
20  profits".
21          Q.  Well, let me ask it this way.  You created a
22  map, 5472, right?
23          A.  Yes.
24          Q.  Did you ever intend to use that map on any
25  other pieces of property at anyplace?



Toll Free: 800.300.1214
Facsimile: 661.322.2242

PAULSON
REPORTING & LITIGATION SERVICES, LLC

Suite 170
5001 East Commercenter Drive
Bakersfield, CA 93309
www.paulsonreporting.com

211

1     A. No.
2     Q. All right. Did you ever intend to use the
3  landscape plan that you created for 5472 on any other
4  projects?
5     A. Possibly.
6     Q. And did anything that my client has done
7  prevent you from using that landscape plan on other
8  projects?
9     A. No.
10    Q. One of the prayers in the Complaint asks that
11 Joe be obligated to remove the structures he's built. Is
12 that one of the remedies that you're actually seeking in
13 this case, for Joe to remove the houses he's built from
14 that land?
15    A. Yes.
16    Q. Did you ever give out an electronic file of
17 the tentative map to anybody?
18    A. Not that I'm aware of.
19    MR. HASSING: Chaka?
20    MR. OKADIGBO: Yes?
21    MR. HASSING: I'm going to turn it over to you
22 while I take a look at some of these boxes, all right?
23    MR. OKADIGBO: Okay.
24 ///
25 ///

 

Toll Free: 800.300.1214
Facsimile: 661.322.2242
Suite 170
5001 East Commercenter Drive
Bakersfield, CA 93309
www.paulsonreporting.com

# EXIBIT   Y   HASSING DEC

Certified Copy

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

ROGER McINTOSH,

    Plaintiff,

vs.

NORTHERN CALIFORNIA UNIVERSAL
ENTERPRISES, COMPANY, et al.,

    Defendants.
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

Case No.
107CV 01080 LJO-WMW

## 30(b) AND 34 DEPOSITIONS OF

### STEPHEN WONG, C.E.

July 2, 2009
1:30 p.m.

5060 California Avenue
Suite 700
Bakersfield, California

Wendy Hahesy, RMR, CSR-4873



Toll Free: 800.300.1214
Facsimile: 661.322.2242

Suite 170
5001 East Commercenter Drive
Bakersfield, CA 93309
www.esquiresolutions.com

67

```
 1  differences that are more substantial in my mind and we
 2  can go, you know, through the maps themselves and I can
 3  show you the differences.
 4      Q.   You're going to be testifying that the two maps
 5  are substantially different, correct?
 6      A.   Yes.
 7      Q.   All right.  I want to know what leads you to
 8  believe that in your opinion that these two maps are
 9  substantially different?
10      A.   Okay.
11      Q.   All right.  And I want to know specifically
12  what are the differences that make them -- well, let's
13  just go into it.
14           MR. HASSING:  Would you like a larger map to
15  look at?
16           THE WITNESS:  If you have one.
17           MR. HASSING:  Right here.
18           MR. TRAVIS:  Well, those are the improvement
19  plans.
20           MR. HASSING:  Okay.  You got good eyes?
21  BY MR. TRAVIS:
22      Q.   Let's go through the things, the differences
23  that you've listed in your opinion then we'll go through
24  any others that you feel are significant.  Before we do
25  that, however, I want to list as exhibit -- what are we
```


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.300.1214
Facsimile: 661.322.2242

Suite 170
5001 East Commercenter Drive
Bakersfield, CA 93309
www.esquiresolutions.com

1    at, 6?

2             (Tract No. 6451 marked Exhibit No. 6)

3    BY MR. TRAVIS:

4         Q.   We'll also bring back and resurrect Exhibit 5

5    so that we can review these two maps.  Let's first go

6    through what you've listed as -- I'm assuming this is a

7    significant difference which is the legal description of

8    the property; is that correct?

9         A.   Yes.

10        Q.   Okay.  What significant difference is that?

11        A.   Well, the legal description is different.

12        Q.   Okay.

13        A.   It represents the same property but is

14   described differently.  The legal description on

15   Tentative Tract 5472 reads "A portion of the southeast

16   quarter section of southwest quarter of Section No. 4,

17   township 27 south, range 24 east of Mount Diablo Base

18   and Meridian, City of Wasco.  The legal description on

19   the Vesting Tentative Map 6451 reads "A division of

20   Parcel 1 of Parcel Map 9572 filed in Book 44 of Parcel

21   Maps at Pages 57 through 62", and it goes on from there.

22   So you can see at the outset one is a simple Parcel 1 of

23   this parcel map the other is a portion of the quarter

24   section.

25        Q.   But as you stated before you started reading


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.300.1214
Facsimile: 661.322.2242

Suite 170
5001 East Commercenter Drive
Bakersfield, CA 93309
www.esquiresolutions.com

1  they're describing the same property; isn't that right?
2      A.   Yes, they are.
3      Q.   So isn't it a matter of schematics in the way
4  that it's being described?
5           MR. OKADIGBO:  Objection.
6           MR. HASSING:  Argumentative.
7      A.   Looking for differences they are describing the
8  property in a different manner.  I mean, if you were to
9  copy, if you would, from an original map why wouldn't
10 you copy then the legal description?  It's a
11 representation in a difference manner.
12 BY MR. TRAVIS:
13     Q.   Well, I'm asking you something more specific
14 than just differences.  I'm asking you exactly what you
15 put here which is we noted several significant
16 differences.
17     A.   Okay.  In my mind that's significant.
18     Q.   Let me just get it clear for the record.  So
19 it's significant to you that even though they're
20 describing the same property it's described in a
21 different way?
22     A.   Yes.
23     Q.   That was the first significant difference that
24 you listed on your opinion.  The second part of that you
25 said another what I take as a significant difference,



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.300.1214
Facsimile: 661.322.2242

Suite 170
5001 East Commercenter Drive
Bakersfield, CA 93309
www.esquiresolutions.com