1   Q.   Which one are you looking at now that you see a
2   difference on?
3   A.   I'm looking at -- well, I was looking at the
4   westerly boundary of the designated remainder which is
5   adjacent to and perpendicular with Lot No. 16.
6   Q.   Can you take a look at the other boundaries and
7   see if, in fact, they show differences?
8   A.   Do you want me to expound on the differences
9   when I come to them?
10  Q.   Yes, sir, I would like that.
11  A.   Yes, there are differences.  I can't tell with
12  respect to the most southerly boundary of Lots 13
13  through 18 because they show different locations for the
14  total.  I need to add them up in order to compare them.
15  But on the most westerly boundary of the project
16  adjacent to Lots 9 through 13 there is a bearing on 5472
17  of south one degree, five minutes, and 49 seconds west.
18  On 6451 that bearing is north one degree, four minutes,
19  20 seconds east.  And the distance on that same line on
20  5472 is 512.90, on 6451 it's 512.92.
21  Q.   Right.  What I'd like you to do on the rest of
22  the boundaries is just tell me if you see differences,
23  you don't have to tell me what they are.
24  A.   On the most northerly boundary there is a
25  difference between the two maps.  The most southerly



Toll Free: 800.300.1214
Facsimile: 661.322.2242

Suite 170
5001 East Commercenter Drive
Bakersfield, CA 93309
www.esquiresolutions.com

1  boundary which is along the State Route 46 appears to
2  identify a different line on these two maps.
3      Q.  What do you mean by that?
4      A.  Well, on 5472 the most southerly boundary
5  depicted on this map is the center line of that which is
6  a total of 89 feet from the property line of the
7  remainder lot in that area.  On 6451 the southerly
8  boundary that's depicted is not the center line of State
9  Route 46 but rather a line that is 49 feet from that
10 designated remainder lot so the difference of about
11 50 feet.
12     Q.  Okay.
13     A.  I don't know exactly which is right.  I don't
14 know.
15     Q.  I don't really care.
16     A.  But there is a difference.
17     Q.  What about that little configuration at the
18 bottom left-hand corner of the map of 5472, is there one
19 like that on 6451?
20     A.  That's just a key map or a vicinity map.
21     Q.  Is there one like that on 6451?
22     A.  No.
23     Q.  Do you see any other differences?
24     A.  Yes, there are improvements not just the
25 streets and the utilities that we discussed previously,


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.300.1214
Facsimile: 661.322.2242

Suite 170
5001 East Commercenter Drive
Bakersfield, CA 93309
www.esquiresolutions.com

1  but the fence lines that I mentioned adjacent to Lot 46
2  there are also existing block wall fences adjacent to
3  other lots.  There are monuments that are adjacent to
4  the entrance at Valley Rose Parkway and State Route 46.
5  There are location of existing power poles or service
6  lines or guy wires, again, based on the topographic data
7  found by the survey in the most southeasterly corner of
8  6451 that is not shown on 5472.
9      Q.   All right.  Are there additional differences?
10     A.   Yes.  6451 goes much further than the
11 boundaries with their survey to locate the corner of a
12 quarter section that was shown on the parcel map.
13     Q.   5472 doesn't do that?
14     A.   And 5472 does not.
15     Q.   You can probably guess what my next question
16 is, right?
17     A.   6451 also indicates references to a parcel map
18 of 5472 which is adjacent to this subdivision by parcel
19 numbers.  Parcel 6, for example, being next to Lots 30
20 through 37.  Parcel 3 of 9572 being adjacent to Lots 1
21 through 8.
22          MR. OKADIGBO:  You meant 5472.
23          THE WITNESS:  No, 9572.
24          MR. OKADIGBO:  Sorry.
25     A.   And Parcel 3 of 9572 being adjacent to Lots 8



Toll Free: 800.300.1214
Facsimile: 661.322.2242

Suite 170
5001 East Commercenter Drive
Bakersfield, CA 93309
www.esquiresolutions.com

1    through 13.  And Parcel 2 of that Parcel Map 9572 being
2    southerly of Lots 13 through 15 all of which are not
3    referenced or shown on 5472.
4    BY MR. HASSING:
5        Q.   Anything else?
6        A.   5472 does not indicate a benchmark or a basis
7    of bearings which is something that normally is
8    referenced by the surveys.  6451 does specifically call
9    out a benchmark because it shows topographic data or
10   elevations.  It also calls out a basis of bearings
11   because it shows the boundaries in meets and bounds
12   descriptions.
13       Q.   Are you saying that 5472 doesn't show
14   topography?
15       A.   That's correct, it does not.
16       Q.   6541 does?  What is it, 6541?  I wrote down the
17   wrong number that's why I'm saying it wrong every time.
18   6451.
19       A.   6451 does show topography.
20       Q.   All right.
21       A.   We discussed that earlier.
22       Q.   Yes.
23       A.   That's why I didn't mention it separately.
24       Q.   Based on your analysis of the differences
25   between the two maps can you give an opinion as to



Toll Free: 800.300.1214
Facsimile: 661.322.2242

Suite 170
5001 East Commercenter Drive
Bakersfield, CA 93309
www.esquiresolutions.com

1  whether or not you believe that 6451 was in any way a
2  copy of 5472?
3      A.   While there are similarities and I think we
4  tried to explain the commonalty of it based upon
5  existing improvements and the boundaries that were
6  established for this development, there are more
7  significant differences between the two maps.  As we've
8  just pointed out it would indicate that it could not be
9  a copy because a lot of the information that's shown on
10 6451 is not shown on 5472.
11     Q.   All right.  And what we're going to do is we
12 are going to ask you to continue to look at these two
13 maps and make a list of any further differences you see,
14 provide that list to your lawyer who will provide it to
15 Mr. Travis, and at that point Mr. Travis might have you
16 come back and ask you some more questions but we'd like
17 you to take an exhaustive look at both maps to see if
18 you can find any more differences; is that right?
19          MR. OKADIGBO:  Yes.
20     A.   Are you speaking of every single lot?
21 BY MR. HASSING:
22     Q.   Well, you've already testified with regard to
23 Lot 46, and you've indicated that your testimony with
24 regard to Lot 46 can BE extrapolated to the other
25 67 lots, correct?


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.300.1214
Facsimile: 661.322.2242

Suite 170
5001 East Commercenter Drive
Bakersfield, CA 93309
www.esquiresolutions.com

1    A.   68 lots.

2    Q.   You've already looked at 46, so those
3  differences between the two maps with regard to Lot 46
4  can then be extrapolated to the other 67 lots; is that
5  correct?

6    A.   Not exactly but substantially so.

7    Q.   But substantially so.  I don't think we're
8  going to ask you to make a list of every difference with
9  respect to every single lot but with regards to other
10 differences that you might see we'd like you to make a
11 list and get it to your lawyer who will get it to
12 Mr. Travis.

13       And I'd also for the record like to point out
14 that any time I was referring to 6541 I meant 6451
15 because I had it written down wrong.  I don't have any
16 further questions.

17                    EXAMINATION
18 BY MR. OKADIGBO:

19   Q.   Not to beat a dead horse but I'm going to refer
20 you to Lots 13 in both Tentative Tract Map No. 5472 and
21 Tract Map No. 6451, and I would like you to describe, if
22 anything, what differences you see in Lot 13 between the
23 two maps?

24   A.   Much like we did on Lot 46?

25   Q.   Correct.



Toll Free: 800.300.1214
Facsimile: 661.322.2242

Suite 170
5001 East Commercenter Drive
Bakersfield, CA 93309
www.esquiresolutions.com

1   A.   And, again, we're using Exhibit No. 7?

2   Q.   Right.  Exhibit 7 is the Tentative Tract Map
3   No. 6451.

4   A.   Okay.  The north westerly boundary of Lot 13,
5   that is the boundary between Lots 12 and 13 is shown as
6   115.67 on 5472 without a bearing shown.  On Lot 13 on
7   the 6451 map it is shown as north 52 degrees, 27
8   minutes, 48 seconds east, 135.43.  Wow.  That is a
9   significant difference, we're talking about 20 feet.
10  Okay.  I didn't catch that.  Sorry.

11  Q.   It's okay.

12  A.   Along the street on Lot 5472 there is no
13  dimension.  It does give a radius for the curvature of
14  the street.  On 6451 it has a dimension of 36.45.  On
15  the property boundary between Lots 13 and 14 on 5472 it
16  has a distance of 129.04 with no bearing.  And on 6451
17  we have a bearing of north 30 degrees, 31 minutes, seven
18  seconds east, 110.38 feet.  That's a difference of
19  19 feet.

20       Okay.  On the most southerly boundary of
21  Lot 13, and it is map 5472 has a dimension of 45.34 feet
22  with a bearing of 89 degrees, 14 minutes, and 42 seconds
23  west.  6451 has a dimension of 79.15 feet with the same
24  bearing.

25       And lastly, along the westerly boundary of



Toll Free: 800.300.1214
Facsimile: 661.322.2242

Suite 170
5001 East Commercenter Drive
Bakersfield, CA 93309
www.esquiresolutions.com

1   Lot 13, 5472 has a dimension of 69.86 feet with a
2   bearing of south one degree, five minutes, 49 seconds
3   west.  On 6451 we have a dimension of 35.54 feet and the
4   bearing of north one degree, four minutes, and 20
5   seconds east.  The area of Lot 13 on 5472 is not shown.
6   On 6451 the area is 8,529 square feet.
7       Q.   Okay.  You just talked about Lot 13, can you do
8   the same for Lot 14 and after Lot 14 we'll leave it at
9   that for examples, but can you go through the
10  differences between Lot 14 on Tentative Tract Map No.
11  6451 and Tentative Tract Map No. 5472?
12      A.   If you wish.  If you insist.
13      Q.   I wish.
14      A.   We just identified the difference with respect
15  to the most westerly boundary that is the lot, lot line
16  between Lots 13 and 14 so I wouldn't go through that
17  again.
18      Q.   That's fine.
19      A.   Along the street or the most northerly boundary
20  5472 does not have a dimension.  On 6451 it has a
21  dimension of 49.51 feet.  Along the most easterly
22  boundary line 5472 shows a distance of 84.96 feet with
23  no bearing.  And 6451 shows a bearing of north 00
24  degrees, six minutes, 19 seconds east, 83.31 feet.  And
25  on the most southerly boundary of Lot 14, 5472 shows a



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.300.1214
Facsimile: 661.322.2242

Suite 170
5001 East Commercenter Drive
Bakersfield, CA 93309
www.esquiresolutions.com

118

1  distance of 111.17 feet.  On 6451 the distance is 103.07
2  feet.  The bearings are the same.  The area for Lot 14
3  is not shown an 5472.  On 6451 it's shown as 6,798
4  square feet.
5           There is also a note on 6451 that is not shown
6  on 5472 relative to an existing improvement of a block
7  wall that adjoins both sides of an easement that is
8  partially within Lot 14.
9     Q.   Okay.  Can I direct your attention to the outer
10 boundary of Lot 40, do you see where it says "16-foot
11 wide existing golf course access road"?
12    A.   Yes.
13    Q.   Can you tell me whether you see that same
14 designation in -- first of all, it says "16-feet wide
15 golf course golf cart access road" and this is on
16 Tentative Tract Map No. 6451 which is Exhibit 7.  Can
17 you tell me whether you see that same sort of
18 designation in the Revised Tentative Tract Map No. 5472?
19    A.   Yes.  5472 shows it as a 10 feet rather than a
20 16-foot wide path and does not identify its intended
21 purpose.  It pictorially shows it to be split between
22 Lots 39 and 40 and I believe that to be the same except
23 for the width on 6451.
24    Q.   Based on all the differences that you've
25 testified to today between Tentative Tract Map No. 6451,


Toll Free: 800.300.1214
Facsimile: 661.322.2242
Suite 170
5001 East Commercenter Drive
Bakersfield, CA 93309
www.esquiresolutions.com

1   Exhibit 7 and Revised Tentative Tracts Map No. 5472,
2   based on those differences would you say that Exhibit 7
3   is a copy of Tentative Tract Map No. 5472?
4       A.  No, it is not a copy of that map, no.
5       Q.  Mr. Travis asked you whether you were only
6   going to testify to the issue of substantial similarity,
7   do you recall that question?
8       A.  I recall a question of that sort, yes.  I'm not
9   sure it was only relative to that issue.
10      Q.  Is it fair to say that you're going to testify
11  on the subject matters that you set forth in your
12  opinion?
13      A.  Yes.
14      Q.  And the bases, therefore?
15      A.  Yes.
16      Q.  Is it also fair to say that whatever in your
17  experience, in your own experience in engineering
18  generally helps you come to the conclusions that you
19  have formulated that you will also talk about those
20  things?
21      A.  Yes.
22      Q.  Based on your review of Tentative Tract Map
23  No. 6451 which is Exhibit 7 and Revised Tentative Tract
24  Map No. 5472 would you state that the two maps are
25  substantially similar?


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.300.1214
Facsimile: 661.322.2242

Suite 170
5001 East Commercenter Drive
Bakersfield, CA 93309
www.esquiresolutions.com

1  A. While they have certain elements in common I
2  would not state that they are substantially similar.
3  Q. Earlier Mr. Travis was asking you or there was
4  discussion about the differences between Tentative Tract
5  Map No. 6451 which is Exhibit 7 and the Vesting
6  Tentative Tract Map No. 6451.
7  A. Which is Exhibit 5.
8  Q. If the Vesting Tract Map No. 6451 was submitted
9  to the city and the city rejected it because it didn't
10 want that label "vesting," is there any reason why the
11 engineer submitting Tentative Tract Map No. 6451 would
12 subtract the level of detail that he has in Vesting
13 Tentative Tract Map No. 6451?
14    MR. TRAVIS: Objection. Incomplete
15 hypothetical. Unintelligible. Compound and vague.
16    MR. HASSING: You can answer.
17 A. As I understand your question you're comparing
18 Exhibit 5 with Exhibit 7?
19 BY MR. OKADIGBO:
20 Q. Correct.
21 A. And asked if whether or not there were any, why
22 would the engineer change Exhibit 5 just to remove the
23 designation of vesting if that was requested by the
24 city. And there would be really no reason to change it
25 because the vesting tentative map or Exhibit 5 had



Toll Free: 800.300.1214
Facsimile: 661.322.2242

Suite 170
5001 East Commercenter Drive
Bakersfield, CA 93309
www.esquiresolutions.com

# EXIBIT  Z  HASSING DEC

**Certified Copy**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

ROGER McINTOSH,

    Plaintiff,

vs.

NORTHERN CALIFORNIA UNIVERSAL
ENTERPRISES COMPANY, ET AL.,

    Defendants.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

Case No.
107CV-01080-
LJO-WMW

**DEPOSITION OF**

**KEITH WOODCOCK**

January 29, 2009
1:40 p.m.

Suite 170, 5001 East Commercenter
Bakersfield, California

Brian S. Cardoza, CSR No. 8362



ESQUIRE

Toll Free: 800.300.1214
Facsimile: 661.322.2242

Suite 170
5001 East Commercenter Drive
Bakersfield, CA 93309
www.esquiresolutions.com

13

1  Q. Okay. And do you recall what process you
2  undertook to determine what those improvements were?
3  A. The -- I -- I -- I need to defer to the
4  public works and then the -- and the city engineer on --
5  on how they costed items out. But as far as -- as
6  inspection for improvements, that it was that each -- each
7  aspect of the improvement that would be within the public
8  right-of-way. Value of streets, of fire hydrants, sewer
9  lines, water lines, etcetera, would each have a cost that
10 would come up with a -- with a total, and then -- and then
11 typically that -- that the developer would have to -- to
12 bond for a certain percent of that.
13 Q. Okay. Is it also customary, in approving a
14 final tentative subdivision map, that the developer bond
15 the amount, or a percentage of the amount, of the
16 infrastructure improvements?
17 A. Yes.
18 Q. And with regard to 6451, was there a
19 requirement that Northern bond the subdivision
20 infrastructure improvements?
21 A. No.
22 Q. Well, why is that?
23 A. That the infrastructure had already been
24 completed, and at the time of the prior -- I forget the
25 number that -- that -- that you referred to -- the prior



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.300.1214
Facsimile: 661.322.2242

Suite 170
5001 East Commercenter Drive
Bakersfield, CA 93309
www.esquiresolutions.com

14

1  tentative map and the infrastructure was -- was in place,
2  and so that when this -- the newer tentative map came up,
3  that since that the improvements were already in and had
4  been inspected and conformed to the -- the improvement
5  plans, that no bonding was required because that they were
6  already in.
7         Q.  All right.  So, what I hear you telling me
8  then, if I understand you correctly, is that Northern was
9  not required to bond the infrastructure improvements
10 because it was not required to build any infrastructure
11 improvements; is that correct?
12        A.  That's correct.
13        Q.  In the subdivision agreement, though, I think
14 I remember some language in there that indicated that as
15 part of that agreement, that Northern would construct
16 improvements.  Do you recall anything like that in the
17 subdivision agreement?
18        A.  Yes.
19        Q.  Well, why would that have been in there if
20 those improvements were already in place and the City
21 wasn't requiring Northern to build any?
22        A.  I -- I don't recall all the specifics, but
23 that I think the City wanted a list of what to place in
24 the record of what improvements needed to be warranted for
25 the 24-month period, and -- and that because later on in



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.300.1214
Facsimile: 661.322.2242

Suite 170
5001 East Commercenter Drive
Bakersfield, CA 93309
www.esquiresolutions.com

                                    29

1    meet the standards of the City.
2         Q.  And to your understanding, were there any
3    improvement plans that were accepted by the City for tract
4    6451?
5         A.  They were not required to be submitted.
6         Q.  And not required pursuant to what?
7         A.  Because that the improvements were already in
8    place.
9         Q.  I understand.  Doing this for as many years
10   as you have been doing it, and I'm speaking about, you
11   know, the planning and coordination of these subdivisions,
12   if work needs to be done, let's say that a water main
13   breaks, which I'm sure happens sometimes?
14        A.  Yes.
15        Q.  A water main breaks and work needs to be done
16   to fix that work, and someone needs to understand the
17   layout of the problem, would they typically consult the
18   improvement plans for that subdivision in order to fix
19   that problem?
20        MR. OKADIGBO:  Objection, calls for speculation,
21   lack of personal knowledge, incomplete hypothetical.
22        You can answer if you understand.
23        THE WITNESS:  I -- I -- I do not know how public
24   works would approach the issue, but I presume that they
25   would use -- look -- look at the improvement plans to see



Toll Free: 800.300.1214
Facsimile: 661.322.2242

Suite 170
5001 East Commercenter Drive
Bakersfield, CA 93309
www.esquiresolutions.com