C. In the event that a project proponent expresses a concern over certain comments received, Martin-McIntosh will mediate a consensus.

D. Martin-McIntosh will revise the product based upon City input. Two revisions will take place; one for substantive comments and one for technical comments.

E. It should be emphasized that effective consensus is not necessarily unanimity. However, agreement regarding the significant issues is necessary to make project continuance worthwhile.

## 7.6   Meetings

### 7.6.1   Issues

The Master Development Plan and related products are intended to represent the desires of both the City and the developers. Scheduling meetings for a team of players may often lead to delays in the project, as meetings are delayed to a time when schedules can be accommodated.

### 7.6.2   Solutions

A. It is essential that all team members participate in and attend most or all meetings. It is important to make the most out of these meetings; resolve issues and merge with some concrete decisions and input. Agendas will be prepared by Martin-McIntosh to guide meetings, and agenda input will be collected by Martin-McIntosh. Prior to each meeting, Martin-McIntosh, with the City, will draft a master agenda to be distributed prior to each meeting.

B. Martin-McIntosh and the City staff shall coordinate to establish an advanced meeting schedule, when possible.

11

A 00027

## 8.0   GOALS AND CONCEPTS

### 8.1   Project Goals

To create a residential mixed use environment that will enhance and promote increased usage of the recently developed Valley Rose Golf Course. The project design should optimize the golf course and its open space qualities as a residential amenity. The design ideas for the project listed below have evolved from Martin-McIntosh and The Legacy Group Limited brainstorming sessions and design meetings.

### Guiding Design Features

-Utilize windows and focals to Golf Course
-Increase Golf Course play and frontage by adding 9 holes
-Provide gated communities to enhance security
-Provide retirement, executive and multi-family neighborhoods
-Provide parkway/belt park features connecting neighborhoods to commercial centers, Golf Course and public amenities (ie. community center, amphitheater and parks)
-Eliminate "strip commercial" by providing windows into the Hwy 46 commercial center from inside the project.
-Encourage pedestrian, golf cart and bicycle access
-Encourage the use of art in public places
-Develop unique indentifying entry features into project and neighborhoods
-Provide multi-use plaza areas for community events, exhibits, farmers markets, etc.
-Provide a grassy, terraced amphitheater for community concerts and events. This facility would also serve as a storm water detention basin.
-Provide an Inn and Restaurant adjacent to the Golf Course at the project entry along Hwy 46.
-Provide one community utilizing a formal street configuration with appropriate architectural theme (ie. Victorian).

### 8.2   Preminary Concepts and Features

1. Create fluid streetscaping by introducing on-site pedestrian linkages that connect a series of nodes or plazas and open spaces.

A 00028

2. Create pedestrian areas with a strong streetscape involving furniture, trees, light fixtures and textured paving of a character that will be unique to the Valley Rose Community.

3. Create a central public plaza that will be a gathering place and intersection for pedestrian circulation paths. The plaza will have its own character and potential uses include a restaurant,amphitheater and/or facilities oriented to residents and the community of Wasco..

4. The project enterance may be identified by a multi-level Inn that will be a focal point for passing motorists on Hwy 46 and will provide visitors an opportunity to look out over the Valley Rose Golf Course and the surrounding scenery. Seating areas and entertainment space may be integrated into the Inn common areas.

5. Design water features that may be used as focal points and gateways, creating items of strong visual interest. These features can be used along the trail system to provide variation of scenery.

6. Plant dramatic trees to line the main streets. These trees will compliment the architecture and define the residential neighborhoods.

7. Locate artwork in important nodes of cultural and aesthetic interest, making these nodes and plazas a community stage and gallery for an Art in Public Places Program. This program will help the City and citizens identify with this new addition to Wasco.

8. Give pedestrians many choices via an interconnecting web of paths and plazas that create an urban pattern within the project.

9. Design spaces to allow incorporation of signs and banners to advertise cultural events taking place in the Valley Rose community.

10. Provide significant landscaping to be integrated into the spaces rather than forming a uniform buffer. Pedestrians should walk beneath the tree canopy rather than only view it from a distant sidewalk.

A 00029

11. Setbacks and rooflines of buildings should vary to create interest and promote a stimulating visual image.

12. Assure that this pedestrian-oriented project encourages a growing connection between the Valley Rose community and the existing downtown. This connection should be encouraged through linkages to a parkway system.

13. The Valley Rose project architecture <u>must</u> make a positive statement about the community. It should be warm, inviting and interesting.

14. Examples of non-residential uses:

| | |
|---|---|
| Deli | Craft Store |
| Sidewalk Cafe | Clothing |
| Restaurant | Art/Sculpture Galleries |
| Inn & Conference Facility | Travel Agency |
| Community Services | Tailor |
| Neighborhood Grocery | Medical Office |
| Drug Store | |

15. Examples of residential support uses:

| | |
|---|---|
| Dry Cleaners | Recreation Center |
| Post Office | Tennis Courts |
| Health Club | Pool |
| Gymnasium | Bank |

14

**A 00030**

# APPENDIX

A 00031

## Valley Rose Master Plan
### 1992 Design Schedule



| WBS | Name | Duration | % | Sched ST | Sched FN |
|---|---|---|---|---|---|
| 1 | GUIDANCE PKG & CONCEPTUAL PLAN | 28.08ed | 0% | 3/24/92 | 4/21/92 |
| 1.1 | Finalize Concept Plan & Guidance Pkg | 9d | 0% | 3/24/92 | 4/6/92 |
| 1.2 | Meet & Present to Staff | 0.25d | 0% | 4/6/92 | 4/6/92 |
| 1.3 | Staff Review | 3d | 0% | 4/6/92 | 4/8/92 |
| 1.4 | Martin-McIntosh Revision | 4.5d | 0% | 4/8/92 | 4/10/92 |
| 1.5 | Advertise Hearing | 0.25d | 0% | 4/3/92 | 4/3/92 |
| 1.6 | Planning Commission | 0.25d | 0% | 4/13/92 | 4/13/92 |
| 1.7 | City Council | 0.25d | 0% | 4/21/92 | 4/21/92 |
| | | | | | |
| 2 | SURVEYING | 22.33ed | 0% | 3/26/92 | 4/16/92 |
| 2.1 | Boundary Survey | 7d | 0% | 3/25/92 | 4/2/92 |
| 2.2 | Topographic Survey | 10d | 0% | 4/2/92 | 4/16/92 |
| | | | | | |
| 3 | PH 1 DVLPMNT SUBPROJECT (27 ACRES) | 97.04ed | 0% | 4/14/92 | 7/20/92 |
| | | | | | |
| 4 | TENTATIVE PARCEL MAP | 57.08ed | 0% | 4/6/92 | 6/2/92 |
| 4.1 | Design Parcel Map | 4.5d | 0% | 4/6/92 | 4/10/92 |
| 4.2 | Draft Parcel Map | 3.25d | 0% | 4/10/92 | 4/15/92 |
| 4.3 | Check Parcel Map | 2d | 0% | 4/15/92 | 4/17/92 |
| 4.4 | Revise Parcel Map | 2d | 0% | 4/17/92 | 4/21/92 |

| WBS |
|---|
| 4.5 |
| 4.6 |
| 4.7 |
| 4.8 |
| 4.9 |
| 4.10 |
| 5 |
| 5.1 |
| 5.2 |
| 5.3 |
| 5.4 |
| 5.5 |
| 5.6 |
| 5.7 |
| 5.8 |
| 6 |
| 6.1 |
| 6.2 |
| 6.3 |

By: Martin-McIntosh
Date: 4/8/92
M-Mc Job# 92-22

Summary Bar

Schedule Timeframe

Actual Progress

Target Timeframe

Milestone

Page 1

A 00032

## Valley Rose Master Plan
### 1992 Design Schedule

| WBS | Name | Duration | % | Sched ST | Sched FN |
|---|---|---|---|---|---|
| 6.4 | Final Design | 7d | 0% | 4/6/92 | 4/15/92 |
| 6.5 | Draft | 7.25d | 0% | 4/15/92 | 4/24/92 |
| 6.6 | Office Review | 5d | 0% | 4/24/92 | 5/1/92 |
| 6.7 | Revisions | 1d | 0% | 5/1/92 | 5/4/92 |
| 6.8 | Prepare Applications | 6.5d | 0% | 4/2/92 | 4/10/92 |
| 6.9 | Obtain Signatures/Fees | 1d | 0% | 5/4/92 | 5/4/92 |
| 6.10 | Incremental Traffic Study | 15d | 0% | 4/6/92 | 4/27/92 |
| 6.11 | Submittal to City 5618 | 0.25d | 0% | 4/27/92 | 4/27/92 |
| 6.12 | City Staff/Resp. Agency Review 5618 | 30d | 0% | 4/27/92 | 6/8/92 |
| 6.13 | M-Mc / Client Review Conditions | 7d | 0% | 6/8/92 | 6/17/92 |
| 6.14 | Advertise Hearing | 1d | 0% | 6/8/92 | 6/9/92 |
| 6.15 | Planning Commision | 0.25d | 0% | 6/30/92 | 6/30/92 |
| 6.16 | City Council | 0.25d | 0% | 7/8/92 | 7/8/92 |
| | | | | | |
| 7 | MASTER PLANNING | 93.29d | 0% | 4/6/92 | 7/8/92 |
| 7.1 | Land Use Master Plan | 6d | 0% | 4/15/92 | 4/22/92 |
| 7.2 | Design Guidelines | 8d | 0% | 4/15/92 | 4/27/92 |
| 7.3 | Development Agreement | 8d | 0% | 4/15/92 | 4/27/92 |
| 7.4 | Water Master Plan | 3d | 0% | 4/22/92 | 4/27/92 |
| 7.5 | Sewer Master Plan | 3d | 0% | 4/22/92 | 4/27/92 |
| 7.6 | Drainage Master Plan | 3d | 0% | 4/22/92 | 4/27/92 |
| 7.7 | Traffic Master Plan | 15d | 0% | 4/6/92 | 4/27/92 |

By: Martin-McIntosh
Date: 4/8/92
M-Mc Job# 92-22

Page 3

Summary Bar — Actual Progress — Milestone

Schedule Timeframe — Target Timeframe

A 00033

# Valley Rose Master Plan
## 1992 Design Schedule

| WBS | Name | Duration | % | Sched ST | Sched FN |
|---|---|---|---|---|---|
| 7.8 | Submittal to City M-Plan | 0.25d | 0% | 4/27/92 | 4/27/92 |
| 7.9 | City Staff/Resp Agency Review M-Plan | 30d | 0% | 4/27/92 | 6/8/92 |
| 7.10 | M-Mc Review/Revise | 9.5d | 0% | 6/8/92 | 6/22/92 |
| 7.11 | Advertise Hearing | 1d | 0% | 6/8/92 | 6/9/92 |
| 7.12 | Planning Commision | 0.25d | 0% | 6/30/92 | 6/30/92 |
| 7.13 | City Council | 0.25d | 0% | 7/8/92 | 7/8/92 |
| | | | | | |
| 8 | VALLEY ROSE IMPRVMNTS TR. 5618 | 98ed | 0% | 7/8/92 | 10/14/92 |
| | | | | | |
| 8.1 | STREETS | 90.04ed | 0% | 7/9/92 | 10/7/92 |
| 8.1.1 | Design Street Grades | 20d | 0% | 7/9/92 | 8/6/92 |
| 8.1.2 | Draft Street Grades | 25d | 0% | 7/16/92 | 8/20/92 |
| 8.1.3 | Wesco Street Review | 20d | 0% | 8/27/92 | 9/24/92 |
| 8.1.4 | Final Street Revisions | 9d | 0% | 9/24/92 | 10/7/92 |
| | | | | | |
| 8.2 | GRADING | 91ed | 0% | 7/8/92 | 10/7/92 |
| 8.2.1 | Design Grading Plans | 20d | 0% | 7/8/92 | 8/5/92 |
| 8.2.2 | Draft Grading Plans | 30d | 0% | 7/15/92 | 8/26/92 |
| 8.2.3 | Wesco GP Review | 20d | 0% | 8/26/92 | 9/23/92 |
| 8.2.4 | Pull Grading Permit | 10d | 0% | 9/23/92 | 10/7/92 |
| | | | | | |
| 8.3 | STORM DRAINAGE | 77ed | 0% | 7/8/92 | 9/23/92 |

By: Martin-McIntosh
Date: 4/8/92
M-Mc Job # 92-22

Summary Bar
Schedule Timeframe
Actual Progress
Target Timeframe
Milestone

Page 4

A 00034

## Valley Rose Master Plan
### 1992 Design Schedule

| WBS | Name | Duration | % | Sched ST | Sched FN |
|---|---|---|---|---|---|
| 8.3.1 | Design SD System | 10d | 0% | 7/8/92 | 7/22/92 |
| 8.3.2 | Draft SD System | 15d | 0% | 7/22/92 | 8/12/92 |
| 8.3.3 | Wasco SD Review | 20d | 0% | 8/12/92 | 9/9/92 |
| 8.3.4 | Final SD Revisions | 10d | 0% | 9/9/92 | 9/23/92 |
| **8.4** | **SEWERS** | **84ed** | **0%** | **7/8/92** | **9/30/92** |
| 8.4.1 | Design Sewer Piping | 20d | 0% | 7/8/92 | 8/5/92 |
| 8.4.2 | Draft Sewer Piping | 25d | 0% | 7/15/92 | 8/19/92 |
| 8.4.3 | Wasco Sewer Review | 20d | 0% | 8/19/92 | 9/16/92 |
| 8.4.4 | Final Sewer Revisions | 10d | 0% | 9/16/92 | 9/30/92 |
| **8.5** | **WATER** | **91ed** | **0%** | **7/8/92** | **10/7/92** |
| 8.5.1 | Design Water Piping | 20d | 0% | 7/8/92 | 8/5/92 |
| 8.5.2 | Draft Water Piping | 25d | 0% | 7/22/92 | 8/26/92 |
| 8.5.3 | Wasco Water Review | 20d | 0% | 8/26/92 | 9/23/92 |
| 8.5.4 | Final Water Revisions | 10d | 0% | 9/23/92 | 10/7/92 |
| **8.6** | **FINAL MAP** | **84ed** | **0%** | **7/22/92** | **10/14/92** |
| 8.6.1 | Prep Legals & Certificates | 15d | 0% | 7/22/92 | 8/12/92 |
| 8.6.2 | Draft Final Map | 25d | 0% | 7/29/92 | 9/2/92 |
| 8.6.3 | Wasco Map Review | 20d | 0% | 9/2/92 | 9/30/92 |
| 8.6.4 | Final Revisions to Map | 10d | 0% | 9/30/92 | 10/14/92 |



By: Martin-McIntosh
Date: 4/8/92
M-Mc Job# 92-22

Summary Bar
Schedule Timeframe
Actual Progress
Target Timeframe
Milestone

Page 5

A 00035

# EXIBIT   B   BROWN DEC

This form of agreement is distributed by the California Council of Civil Engineers & Land Surveyors

## Agreement Between Client and Consultant

Form A was developed by the California Council of Civil Engineers and Land Surveyors and is intended primarily for the use of Council members, and may not be reproduced without the permission of the California Council of Civil Engineers and Land Surveyors  Copyright 1991, 1989, 1987, 1984, 1982, 1979, 1978, 1975, 1973, 1970 and 1967

Project No. 92-22-3

Agreement entered into at __Bakersfield, California__

made this __18th__ day of __March__ , 19 __92__ , by and between

**Client:**

Name __Mr. Michael S. Brown__

Address __16255 Ventura Blvd., Suite 1000__

__Encino, CA  91436__

Phone _____

FAX _____

**Consultant:**

Name __Martin-McIntosh__

Address __4130 Ardmore Avenue__

__Bakersfield, California  93309__

Phone __(805) 834-4814__

FAX __(805) 834-0972__

### Client And Consultant Agree As Follows:

Client intends to:

See letter dated March 18, 1992, attached and made a part hereof.

hereinafter called "project"

Consultant agrees to perform the following scope of services:

Design Services, broken down into three (3) phases:

1) Conceptual Plan
2) Develop Master Plans for water, sewer and drainage, etc.
3) Survey

as stated in letter dated March 18, 1992, attached and made a part hereof.
Client agrees to compensate consultant for such services as follows:

Phase 1 - $ 15,200.00 ,  Phase 2 - $54,800.00 ,  Phase 3 - $19,100.00
plus costs of printing and reproductions to be billed at cost plus 10%, as stated
in letter dated March 18, 1992, attached and made a part hereof.

* Martin-McIntosh will proceed with each Phase upon written authorization.

This Agreement is subject to provisions 1 through 48 contained herein, and the terms and conditions contained in initialed exhibits attached herewith and made a part hereof.  (List exhibits below.)

## Provisions of Agreement

Client and consultant agree that the following provisions shall be part of their agreement:

1. This agreement shall be binding upon the heirs, executors, administrators, successors and assigns of client and consultant

2. This agreement shall not be assigned by either client or consultant without the prior written consent of the other

3. This agreement contains the entire agreement between client and consultant relating to the project and the provision of services to the project. Any prior agreements, promises, negotiations or representations not expressly set forth in this agreement are of no force or effect. Subsequent modifications to this agreement shall be in writing and signed by both client and consultant

4. Consultant's waiver of any term, condition, or covenant, or breach of any term, condition, or covenant, shall not constitute the waiver of any other term, condition, or covenant, or the breach of any other term, condition, or covenant.

5. If any term, condition, or covenant of this agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remaining provisions of this agreement shall be valid and binding on client and consultant.

A-91

Page 1 of 4



6. This agreement shall be governed by and construed in accordance with the laws of the State of California.

7. Consultant shall only act as an advisor in all governmental relations.

8. All original papers, documents, drawings and other work product of consultant, and copies thereof, produced by consultant pursuant to this agreement shall remain the property of consultant and may be used by consultant without the consent of client. Upon request and payment of the costs involved, client is entitled to a copy of all papers, documents and drawings provided client's account is paid current.

9. Client acknowledges that its right to utilize the services and work product provided pursuant to this agreement will continue only so long as client is not in default pursuant to the terms and conditions of this agreement and client has performed all obligations under this agreement. Client further acknowledges that consultant has the unrestricted right to use the services provided pursuant to this agreement as well as all work product provided pursuant to this agreement.

10. Client and consultant agree to cooperate with each other in every way on the project.

11. Upon request, client shall execute and deliver, or cause to be executed and delivered, such additional instruments, documents, governmental fees and charges which are necessary to perform the terms of this agreement.

12. Consultant makes no representations concerning soil conditions unless specifically included in writing in this agreement, and he is not responsible for any liability that may arise out of the making or failure to make soil surveys, or sub-surface soil tests, or general soil testing.

13. Client agrees not to use or permit any other person to use plans, drawings, or other work product prepared by consultant, which plans, drawings, or other work product are not final and which are not signed, and stamped or sealed by consultant. Client agrees to be able and responsible for any such use of nonfinal plans, drawings, other work product not signed and stamped or sealed by consultant and waives liability against consultant for their use. Client further agrees that final plans, drawings or other work product are for the exclusive use of client and may be used by client only for the project described on the face hereof. Such final plans, drawings or other work product may not be changed nor used on a different project without the written authorization or approval of consultant. If consultant's work product exists in electronic or computerized format, or is transferred in electronic or computerized format, the name, seal and signature shall be original and may not be a computer-generated copy, photocopy, or facsimile transmission of the original.

14. Consultant has a right to complete all services agreed to be rendered pursuant to this contract. In the event this agreement is terminated before the completion of all services, unless consultant is responsible for such early termination, client agrees to release consultant from all liability for services performed. In the event all or any portion of the services or work product prepared by consultant is suspended, abandoned, or terminated, client shall pay consultant for all fees, charges, and services provided for the project, not to exceed any contract limit specified herein. Client acknowledges if the project services are suspended and restarted, there will be additional charges due to suspension of the services which shall be paid for by client as extra services.

15. If the scope of services to be provided by consultant pursuant to the terms of this agreement include an ALTA survey, client agrees that consultant may sign one of the two ALTA Survey Statements attached hereto and incorporated herein by reference. In the event that consultant is required to sign a statement or certificate which differs from the ALTA Survey Statements contained in the attachment, client hereby agrees to indemnify and hold consultant harmless from any and all liability arising from or resulting from the signing of any statement which differs from those statements contained in the attachment.

16. If the scope of services to be provided by consultant pursuant to the terms of this agreement include the preparation of grading plans but exclude construction staking services, client acknowledges that such staking services normally include coordinating civil engineering services and the preparation of as-built drawings pursuant to Uniform Building Code Chapter 70 or local grading ordinances and client will be required to retain such services from another consultant or pay consultant pursuant to this agreement for such services as extra work in accordance with Provision 26.

17. Consultant shall be entitled to immediately, and without notice, suspend the performance of any and all of its obligations pursuant to this agreement if client files a voluntary petition seeking relief under the United States Bankruptcy Code or if there is an involuntary bankruptcy petition filed against client in the United States Bankruptcy Court, and that petition is not dismissed within fifteen (15) days of its filing. Any suspension of services made pursuant to the provisions of this paragraph shall continue until such time as this agreement has been fully and completely assumed in accordance with the applicable provisions of the United States Bankruptcy Code and in compliance with the final order or judgment issued by the Bankruptcy Court.

18. This agreement shall not be construed to alter, affect or waive any lien or stop notice right which consultant may have for the performance of services pursuant to this agreement. Client agrees to separately provide to consultant the present name and address of the record owner of the property on which the project is to be located. Client also agrees to separately provide consultant with the name and address of any and all lenders who would loan money on the project and who are entitled to receive a preliminary notice.

19. If payment for consultant's services is to be made on behalf of client by a third-party lender, client agrees that consultant shall not be required to indemnify the third-party lender, in the form of an endorsement or otherwise, as a condition of receiving payment for services.

20. If client fails to pay consultant within thirty (30) days after invoices are rendered, client agrees consultant shall have the right to consider such default in payment a material breach of this entire agreement, and, upon written notice, the duties, obligations, and responsibilities of consultant under this agreement are suspended or terminated. In such event, client shall promptly pay consultant for all fees, charges, and services provided by consultant.

21. All fees and other charges will be billed monthly and shall be due at the time of billing unless otherwise specified in this agreement.

22. Client agrees that the periodic billings from consultant to client are correct, conclusive, and binding on client unless client, within ten (10) days from the date of receipt of such billing, notifies consultant in writing of alleged inaccuracies, discrepancies, or errors in billing.

23. Client agrees to pay a monthly late payment charge which will be the lesser of one and one-half percent (1 1/2%) per month or a monthly charge not to exceed the maximum legal rate, which will be applied to any unpaid balance commencing thirty (30) days after the date of the original billing.

BP000406

24. If consultant pursuant to this agreement produces plans, specifications, or other documents and/or performs field services, and such plans, specifications, and other documents and/or field services are required by one or more governmental agency, and one or more such governmental agency changes its ordinances, policies, procedures or requirements after the date of this agreement, any additional office or field services thereby required shall be paid for by client as extra services.

25. In the event consultant's fee schedule changes due to any increase of costs such as the granting of wage increases and/or other employee benefits to field or office employees due to the terms of any labor agreement, or rise in the cost of living, during the lifetime of this agreement, a percentage increase shall be applied to all remaining compensation.

26. Client agrees that if client requests services not specified pursuant to the scope of services description within this agreement, client agrees to pay for all such additional services as extra work

27. In the event that any staking is destroyed, damaged or disturbed by an act of God or parties other than consultant, the cost of restaking shall be paid for by client as extra services.

28. Client acknowledges that the design services performed pursuant to this agreement are based upon field and other conditions existing at the time these services were performed. Client further acknowledges that field and other conditions may change by the time project construction occurs and clarification, adjustments, modifications and other changes may be necessary to reflect changed field or other conditions. If the scope of services pursuant to this agreement does not include construction staking services by consultant for this project, or if subsequent to this agreement client retains other persons or entities to provide such staking services, client acknowledges that such staking services will be performed by others and that client will defend, indemnify, and hold consultant harmless from any and all claims arising from or resulting from the performance of uch staking services by other persons or entities except claims caused by the sole negligence or willful misconduct of consultant; and from any and all claims arising from or resulting from clarifications, adjustments, modifications or other changes which may be necessary to reflect changed field or other conditions except claims caused by the sole negligence or willful misconduct of consultant

29. Client shall pay the costs of checking and inspection fees, zoning and annexation application fees, assessment fees, soils engineering fees, soils testing fees, aerial topography fees, and all ther fees, permits, bond premiums, title company charges, blueprints and reproductions, and all other charges not specifically covered by the terms of this agreement

30. Client acknowledges and agrees that if consultant provides surveying services, which services require the filing of a Record of Survey in accordance with Business and Professions Code Section 8762, that all of the costs of preparation, examination and filing for the Record of Survey will be paid by client as extra work in accordance with Provision 26.

31. Consultant is not responsible for delay caused by activities or factors beyond consultant's reasonable control, including but not limited to, delays by reason of strikes, lockouts, work slowdowns or stoppages, accidents, acts of God, failure of client to furnish timely information or approve or disapprove of consultant's services or work product promptly, faulty performance by client or other contractors or governmental agencies.  When such delays beyond consultant's reasonable control occur, client agrees consultant is not responsible in damages nor shall consultant be deemed to be in default of this agreement.

32. Consultant shall not be liable for damages resulting from the ac-

tions or inactions of governmental agencies including, but not limited to, permit processing, environmental impact reports, dedications, general plans and amendments thereto, zoning matters, annexations or consolidations, use or conditional use permits, project or plan approvals, and building permits. The client agrees that it is the responsibility of the client to maintain in good standing all government approvals and permits and to apply for any extensions thereof.


Client Initials ____   Consultant Initials ____

33. In the event that client institutes a suit against consultant, either directly by complaint or by way of cross-complaint, including a cross-complaint for indemnity, for alleged negligence, error, omission, or other failure to perform, and if client fails to obtain a judgment in client's favor, the lawsuit is dismissed, or if judgment is rendered for consultant, client agrees to pay  consultant all costs of defense, including attorneys' fees, expert witness fees, court costs, and any and all other expenses of defense. Client agrees such payments shall be made immediately following dismissal of the case or upon entry of judgment

34. If any action at law or equity, including an action for declaratory relief, is brought to enforce or interpret the provisions of this agreement, the prevailing party shall be entitled to reasonable attorneys' fees, which fees may be set by the court in the same action or in a separate action brought for that purpose, in addition to any other relief to which he may be entitled

35. Client agrees that in the event client institutes litigation to enforce or interpret the provisions of this agreement, such litigation is to be brought and adjudicated in the appropriate court in the county in which consultant's principal place of business is located, and client waives the right to bring, try or remove such litigation to any other county or judicial district.

36. Consultant makes no representation concerning the estimated quantities and probable costs made in connection with maps, plans, specifications, reports or drawings other than that all such costs are estimates only and actual costs will vary.  It is the responsibility of client to verify costs.

37. Client acknowledges that consultant is not responsible for the performance of work by third parties including, but not limited to, the construction contractor and its subcontractors.

38. Consultant makes no warranty, either expressed or implied, as to his findings, recommendations, plans, specifications or professional advice except that the services or work product were performed pursuant to generally accepted standards of practice in effect at the time of performance.

39. Estimates of land areas provided under this agreement are not to be considered precise unless consultant specifically agrees to provide the precise determination of such areas

40. In the event the client agrees to, permits, authorizes, constructs or permits construction of changes in the plans, specifications, and documents or does not follow recommendations or reports prepared by consultant pursuant to this agreement, which changes are not consented to in writing by consultant, client acknowledges that the changes and their effects are not the responsibility of consultant and client agrees to release consultant from all liability arising from the use of such changes and further agrees to defend, indemnify and hold harmless consultant, its officers, directors, principals, agents and employees from and against all claims, demands, damages or costs arising from the changes and their effects.

41. Client acknowledges that the design services performed pursuant to this agreement are based upon field and other conditions existing at the time of preparation of consultant's services.  Client

5P000438