further acknowledges that field and other conditions at the time project construction occurs and clarification, adjustments, modifications, discrepancies or other changes may be necessary to reflect changed field or other conditions. If the scope of services pursuant to this agreement does not include on-site construction review, construction management, supervision of construction of engineering structures, or other construction supervision for this project, or if subsequent to this agreement client retains other persons or entities to provide such services, client acknowledges that such services will be performed by others and client will defend, indemnify and hold consultant harmless from any and all claims arising from or resulting from the performance of such services by other persons or entities except claims caused by the sole negligence or willful misconduct of consultant, and from any and all claims arising from or resulting from clarifications, adjustments, modifications, discrepancies or other changes necessary to reflect changed field or other conditions, except claims caused by the sole negligence or willful misconduct of consultant.

42. Client agrees that in accordance with generally accepted construction practices, construction contractor will be required to assume sole and complete responsibility for job site conditions during the course of construction of the project, including safety of all persons and property; that this requirement shall be made to apply continuously and not be limited to normal working hours, and client further agrees to defend, indemnify and hold consultant harmless from any and all liability, real or alleged, in connection with the performance of services on this project, excepting liability arising from the sole negligence of consultant.

43. In the event client discovers or becomes aware of changed field or other conditions which necessitate clarification, adjustments, modifications or other changes during the construction phase of the project, client agrees to notify consultant and engage consultant to prepare the necessary clarifications, adjustments, modifications or other changes to consultant's services or work product before construction activities commence or further activity proceeds. Further, client agrees to have a provision in its construction contracts for the project which requires the contractor to notify client of any changed field or other conditions so that client may in turn notify consultant pursuant to the provisions of this paragraph.

44. Client agrees to limit the liability of consultant, its principals and employees, to client and to all contractors and subcontractors on the project, for any claim or action arising in tort or contract, to the sum $50,000 or consultant's fee, whichever is greater. However, if consultant's fee exceeds $250,000, liability to client and to all contractors and subcontractors shall not exceed $250,000.

45. Client agrees to purchase and maintain, during the course of construction, builder's risk "all risk" insurance which will name consultant as an additional insured as their interest may appear.

46. Consultant hereby states and client hereby acknowledges that consultant has no professional liability insurance for claims arising out of the performance of or failure to perform professional services including, but not limited to the preparation of reports, designs, drawings and specifications, related to the investigation, detection, abatement, replacement, use or specification, or removal of products, materials or processes containing asbestos, asbestos cement pipe, and/or hazardous waste materials. Accordingly, the client hereby agrees to bring no claim for negligence, breach of contract, indemnity or otherwise against the consultant, its principals, employees, and agents if such claim, in any way, would involve the consultant's services for the investigation, detection, abatement, replacement, use or specification, or removal of products, materials or processes containing asbestos, asbestos cement pipe, and/or hazardous waste materials. Client further agrees to defend, indemnify and hold harmless consultant, its officers, directors, principals, employees and agents from any asbestos and/or hazardous waste material related claims that may be brought by third parties as a result of the services provided by the consultant pursuant to this agreement except claims caused by the sole negligence or willful misconduct of the consultant.

47. Client acknowledges that consultant's scope of services for this project do not include any services related in any way to asbestos and/or hazardous waste. Should consultant or any other party encounter such materials on the job site, or should it in any other way become known that such materials are present or may be present on the job site or any adjacent or nearby areas which may affect consultant's services, consultant may, at its option, terminate work on the project until such time as client retains a specialist contractor to abate and/or remove the asbestos and/or hazardous waste materials and warrant that the job site is free from any hazard which may result from the existence of such materials.

48. (a) Notwithstanding any other provision of this Agreement and except for the provisions of (b) and (c), if a dispute arises regarding consultant's fees pursuant to this contract, and if the fee dispute cannot be settled by discussions between client and consultant, both client and consultant agree to attempt to settle the fee dispute by mediation through the American Arbitration Association [or other mediation service] before recourse to arbitration.

If mediation does not resolve the fee dispute, such dispute shall be settled by binding arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association and judgment upon the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof.

(b) Subdivision (a) does not preclude or limit consultant's right to elect to file an action for collection of fees if the amount in dispute is within the jurisdiction of the small claims court.

(c) Subdivision (a) does not preclude or limit consultant's right to elect to perfect or enforce applicable mechanics lien remedies.

IN WITNESS WHEREOF, the parties hereby execute this agreement dated _____ upon the terms and conditions stated above.

Client  MICHAEL E. BROWN
By  [signature]
Name/Title
Date Signed  3/25/92
Project Number  92-22

Consultant  Martin-McIntosh - Eugene P. Martin
By  [signature]
Name/Title  Eugene P. Martin - Partner
Date Signed  3/26/92
Project Number  92-22

Client should mail completed contract to the address shown for consultant

Form A-91

Page 4 of 4





LAND SURVEYING • CIVIL ENGINEERING

March 18, 1992

Mr. Michael S. Brown
16255 Ventura Blvd., Suite 1000
Encino, CA 91436

Reference: Proposal for Professional Planning and Engineering Services for
Valley Rose Subdivision - Wasco, California
Martin-McIntosh Project # 92-22

Dear Mr. Brown:

    We are pleased to submit our proposal for professional planning and engineering services for the design of Valley Rose Subdivision in Wasco, California. Martin-McIntosh proposes to provide the following design services:

1. Prepare Conceptual Plan Alternatives with associated densities.
2. Prepare Draft Guidance Package consisting of the following:
   a. Define Issues.
   b. Determine roles and responsibilities of project players.
   c. Determine development process.
   d. Determine review process with City of Wasco.
3. Refine Draft and Prepare Final Guidance Package.
4. Prepare Final Conceptual Plan with preliminary lot layout.

We estimate the cost for the above services to be $15,200.00.

    Upon approval of the Conceptual Plan for the project, the following services would be performed:

1. Develop Master Plans for water, sewer, and drainage systems.
2. Develop a phased Traffic and Circulation Plan per Cal-Trans requirement.
3. Determine boundaries for first Williamson Act cancellation.
4. Develop Tentative Tract Map for first 100 acres and process through City of Wasco.

4130 ARDMORE AVE., SUITE 101 • BAKERSFIELD, CA. 93309 • 805/834-4814

Valley Rose Proposal
March 18, 1992
Page 2

5. Write Environmental Findings for first Tentative Map.
6. Process Zone Change through City of Wasco.
7. Coordinate Development Agreement.

We estimate the cost for these services to be $54,800.00

A field survey will be required for some of the above work and for all Improvement Plans and Final Maps. The following services would be provided:

1. Boundary Survey
2. Topographic Survey - 200' grid.
3. Utility Research.
4. Title Report - Easements.
5. Topo Map
6. Boundary Map.
7. Soils Report

We estimate the cost for these services to be $19,100.00.

This proposal is provided to you with the following qualifications:

1. If fast-track timing is pursued, Martin-McIntosh would not be responsible for costs associated with developer - initiated revisions or unusual City of Wasco requirements.
2. Costs of printing and reproductions are not included, and would be billed on a cost plus 10% basis.
3. Public meetings are based on normal processing procedures and do not include cost for appeals, if required.

This proposal is subject to your acceptance and execution of our standard agreement. Thank you for the opportunity to provide this proposal. If you have any questions, please feel free to contact us.

Sincerely,
MARTIN-MCINTOSH

Gene Martin

GM/pm

EXIBIT  C   BROWN DEC



**Martin-McIntosh**
LAND SURVEYING • CIVIL ENGINEERING

May 11, 1992

Mr. Michael S. Brown
16255 Ventura Blvd., Suite 1000
Encino, CA 91436

Reference:   Addition to Agreement, dated March 18, 1992
             Valley Rose Subdivision, Wasco, CA
             M-Mc #92-22  — *Billing*

Dear Mr. Brown:

  As you are aware, we are proceeding with a number of the tasks as outlined in our letter and agreement, dated March 18, 1992. As the scope has been more clearly defined and the need for additional services determined, we are pleased to submit our proposal for these services:

  1)   Prepare Parcel Map No. 9572. This map is required as part of your agreement to purchase the land from the seller. We estimate the cost of these services to be $ 5,000.

  2)   Prepare Improvement Plans and Final Map for Tract No. 5472. These will be developed from the approved Tentative Map. We estimate the cost of these services to be $57,900.

  3)   Prepare Improvement Plans and Final Map for Tract No. 5618. These will be developed from the approved Tentative Map. We estimate the cost of these services to be $183,000.

  4)   In our March 18 letter, we included an estimated fee of $54,800 for Master Planning services. The scope of these services have changed somewhat. For example, the scope of the sewer, water and drainage studies has been reduced, Since the City has provided us with approved studies to use as a basis for our work. However, we have expanded the Master Plan to include landscaping and design guidelines for the public facilities. The estimated fee for these services should remain unchanged.

Δπ EXHIBIT _6_
Deponent _McIntosh_
Date _10-13-08_ Rptr. _BC_
WWW.DEPOBOOK.COM

4130 ARDMORE AVE., SUITE 101 • BAKERSFIELD, CA. 93309 • 805/834-4814

5x6

Mr. Michael Brown
May 11, 1992
Page 2

In addition to the above services, Improvement Plans for off-site water, sewer, drainage and roadway facilities will be required. The concept design for this work has not yet been determined. We will provide an estimated fee as soon as possible.

Enclosed is an updated schedule which includes the above additional services. Please review the estimate as well as the schedule. If you have any questions, please feel free to call me.

This proposal is subject to your acceptance and will become an extension to our current agreement dated March 18, 1992.

Sincerely,
MARTIN-MCINTOSH

Gene Martin

Accepted:

_____      _____
Michael S. Brown        Date

GM:RJS:pm

Enclosure

**EXIBIT D**  BROWN DEC



LAND SURVEYING • CIVIL ENGINEERING

June 24, 1992

Mr. Michael S. Brown
16000 Ventura Blvd., Suite 1200
Encino, CA 91436

Reference:   Addition to Agreement, dated March 18, 1992
Valley Rose Subdivision, Wasco, CA
M-Mc #92-22

Dear Mr. Brown:

As you are aware, we are proceeding with a number of the tasks as outlined in our letter and agreement, dated March 18, 1992. As the scope has been more clearly defined and the need for additional services determined, we are pleased to submit our proposal for these services:

1) Prepare Tentative and Final Parcel Map No. 9572. This map is required as part of your agreement to purchase the land from the seller. We estimate the cost of these services to be $ 10,000.

2) Prepare Tentative Map Improvement Plans and Final Map for Tract No. 5472. We estimate the cost of these services to be $70,000.

3) In our March 18 letter, we included an estimated fee of $55,000 for Master Planning services. The scope of these services has changed considerably since that time. For example, we have expanded the Master Plan to include landscaping and design guidelines for the public facilities. The City had originally provided us with approved sewer, water and drainage studies to use as a basis for our work. They have now requested that these studies be completely revised to bring them to their current standards. We estimate the Master Planning services to be increased to $62,800.

4) Prepare Tentative Map, Improvement Plans and Final Map for Tract No. 5618. We estimate these services to be $225,000.

4130 ARDMORE AVE., SUITE 101 • BAKERSFIELD, CA. 93309 • 805/834-4814



BP000417

Mr. Michael Brown
June 24, 1992
Page 2

    5)    Prepare Engineering Studies and Improvement Plans for required off-site sewer, water and highway work. We estimate these services to be $75,000.

In order to provide the many required items of work to the City and to meet scheduling deadlines, some work is currently being done on all of the above items. However, it is our intention to only provide our services to you as required to meet your schedule. We estimate that about 35% of Items 4 & 5 will be required at this time so that the bonding process can go forward.

This proposal is subject to your acceptance and will become an extension to our current agreement dated March 18, 1992.

                              Sincerely,
                              MARTIN-MCINTOSH

                              Gene Martin

Accepted:

_____    6/26/92
Michael S. Brown            Date

GM:RJS:pm

Enclosure

# EXIBIT  E   BROWN DEC



**Martin-McIntosh**
LAND SURVEYING • CIVIL ENGINEERING

March 8, 1993

Legacy Group, LP
C/O Scapa & Brown
16000 Ventura Blvd.
Suite 1200
Encino, CA 91436

ATTN: Mr. Michael S. Brown

RE:   Valley Rose Estates - Cost Update      *Billing*
      Martin-McIntosh Project No. 92-22

Dear Mr. Brown:

The purpose of this letter is to bring you up to date regarding costs on the above project. As you are aware, your contract with Martin-McIntosh is hourly based on our current rate schedule. On March 18, 1992, and June 24, 1992, you were provided with the scope of the work and estimates of cost as they were known at that time. Since then, the scope of the project has increased requiring additional design services.

The following is a list of tasks and contract items which changed in scope or were added to the project at the request of the Legacy Group since the June 24, 1992 letter. The costs shown are <u>in addition</u> to the original budget estimates.

    1. <u>Route 46 Offsite Survey</u> - Work was required to perform
    design for Route 46 Improvements. (No original budget.)   $ 4,550.00

    2. <u>Offsite Sewer Survey</u> - Work was required as a result of
    the City's decision to require construction of sewer lines to
    existing Waste Water Treatment Plant.
    (No original budget.)   $ 6,570.00

    3. <u>Offsite Water Survey</u> - Work was required for design of
    Route 46 water main, water storage tank and booster
    station. (No original budget.)

    $ 11,860.00

2001 WHEELAN COURT • BAKERSFIELD, CA 93309 • 805/834-4814

Δ π EXHIBIT 12
Deponent: McIntosh
Date 10-8-08  Rptr. BC

Legacy Group, LP
March 8, 1993
Page 2

4. <u>Development Agreement</u> - Time was originally budgeted only for review of engineering issues in the document. At the request of the Legacy Group, we were involved in writing and editing of a number of technical sections in addition to the review of the entire document. (Original budget - $5,000)   $ 16,100.00

5. <u>Parcel Map #9572</u> - Original budget estimated completion of a Final Map based on a previously approved Tentative Map. Upon approval of the Land Plan, Legacy Group authorized a revised Tentative Parcel Map to be prepared based on the Land Plan to obtain City approval of the revised Map. The City then limited the number of parcels after submittal of the Tentative Map, requiring redesign. In addition, Legacy Group requested preparation of legal descriptions for drilling islands and research into the mineral rights ownership, surface waiver processing and research of waiver statutes. (Original budget - $10,000)   $ 16,040.00

6. <u>Williamson Act Cancellation</u> - Work was required to process Tentative Map No. 5618. Corrected previous land owner's cancellation legal descriptions on the property. (No original budget.)   $ 4,280.00

7. <u>Master Studies (Water, Sewer, Drainage)</u> - Original budget estimate included revisions to previously approved studies necessary to reflect changes in roadway alignments. The City then required a rewrite of all studies, and re-analysis of the systems per the standards provided. Multiple City reviews occurred over a five month period requiring a number of changes and refinements. (Original budget - $15,000)   $ 40,720.00

8. <u>Revisions to Tract 5618</u> - At the request of Legacy Group, we revised the Tract to increase the number of R-1 lots, reducing the number of R-2 lots, including changes to the Tentative Map, Grading Plan, Street Plans, Plot Plan and Final Map. (No original budget.)   $ 12,660.00

Legacy Group, LP
March 8, 1993
Page 3

*9. <u>Offsite Sewer</u> - After early concurrence from the City to allow an on-site WWTP, the City then reversed their thinking and required a pump station and force main connection to the City's existing WWTP south of the project. (Original budget - $25,000)     $ 22,060.00

*10. <u>Oversizing Pump Station</u> - The City authorized oversizing of the pump station, gravity sewers and force main. (City has agreed to reimburse Legacy Group for this work.) (No original budget.)     $ 2,000.00

*11. <u>Offsite Water</u> - Legacy Group authorized an alternate water study and the design of an offsite water main and a storage tank. Also, investigation of the use of existing Ag wells and coordination with well driller. Original budget allowed only for the development of a well site and on-site storage tanks. (Original budget - $25,000)     $ 18,430.00

*12. <u>Offsite Highway (Caltrans)</u> - CalTrans has required that the Legacy Group provide a Project Study Report (not originally required). Also modification of required improvements on Route 46 following the first plan check. (Original budget - $25,000)     $ 12,570.00

*13. <u>Plot Plans for Tracts 5472 & 5618</u> - Legacy Group requested our review of floor plans and development of Plot Plans and matrices to show lot availability. Also, a Special Planning District is required to provide flexibility in setbacks to accommodate models and meet stated project objectives. (No original budget.)     <u>$ 6,600.00</u>

Total Additional Cost Through February 22, 1993     $174,440.00

The costs shown above represent our services through February 26, 1993. The work noted with an asterisk (*) is on-going and additional costs will be incurred. It should also be noted that our experience with Quad Consultants to date has been difficult. Their review process is very slow and many times we find that their review comments represent personal views and are not necessarily the requirements of City Codes and Ordinances presently in place.

Legacy Group, LP
March 8, 1992
Page 4

While some personal opinion is expected, a meeting of the minds usually resolves issues. In this case we are finding a lack of commitment by City staff to the Codes and Standards provided to us early in the project. Unless this procedure is modified, we expect the costs for completion of plans currently in process to exceed our best estimates.

I hope this brings you up to date on the status of the various phases of the project. If you have any questions or comments, please call me.

Sincerely,
Martin-McIntosh

Gene Martin

GM:RJS:yr

cc:   R. Staub
      C. Christensen
      J. Higgins

**EXIBIT  F**   BROWN DEC

RECORDED BY
GALE S. ENSTAD
KERN COUNTY RECORDER

Recording Requested by:    038134    90 MAR 17 PM 12: 45

   City of Wasco

When recorded please mail to:

   City of Wasco ( DRU)
   746 Eighth Street
   Wasco, California 93280

## ACQUISITION AGREEMENT

### FOR CERTAIN IMPROVEMENTS TO VALLEY ROSE ESTATES TRACT NOS. 5472 AND 5618

WHEREAS, the Legacy Group, L.P., a California limited partnership (hereinafter referred to as the "Subdivider") is the legal owner of all of that real property in the City of Wasco, County of Kern, commonly known as Tract Numbers 5472 and 5618, or Valley Rose Estates Subdivision, which is more fully described in Exhibit "A," which is attached hereto and incorporated by this reference (hereinafter referred to as the "Property");

WHEREAS, the City of Wasco proposes to conduct proceedings pursuant to the Municipal Improvement Act of 1913, with bonds to represent the unpaid assessments to be issued under the Improvement Bond Act of 1915, to pay the cost of acquisition of improvements including, but not limited to, such acquisition as provided herein;

WHEREAS, the parties desire to agree upon the terms and conditions of construction by the Subdivider and acquisition by the City of Wasco of the Improvements as hereinafter defined and described in Exhibit "B," attached hereto and by this reference

1

incorporated herein.                                BOOK 6816 PAGE 2318

WHEREAS, Sections 10010 and 10311.5 of the California Streets and Highways Code contemplate the acquisition by a public agency of subdivision public improvements;

NOW, THEREFORE, based upon the foregoing Recitals and in consideration of the mutual covenants set forth herein, the parties agree as follows:

Section 1.  Entire Agreement.  This Agreement contains the entire agreement and understanding between the parties with respect to the matters pertaining to the process of acquisition by the City of Wasco of the Improvements. Insofar as any pre-existing agreement between the parties hereto is inconsistent with the terms of this Agreement, but only insofar as any such pre-existing agreement is inconsistent with the terms of this Agreement, such preexisting agreement is amended by this Agreement. In interpreting any existing agreement between the parties and this Agreement, to the extent there is an inconsistency between the terms of this Agreement and any existing agreement, the terms of this Agreement shall be given greater weight and shall prevail.

Section 2.  Construction of Improvements.  The Subdivider, at the Subdivider's own expense, shall cause to be constructed the improvements more particularly described in Exhibit "B" hereto (the "Improvements"). Exhibit "B" also identifies the approved plans and specifications for such Improvements and incorporates them by reference. The Total Project Cost for the Improvements does not include: (i) Permit fees; (ii) Utility

2