EXHIBIT "1"

lj:mh

1 James J. Braze, Esq.; SBN 75911
Jeffrey A. Travis, Esq.; SBN 235507
2 BORTON PETRINI, LLP
5060 California Avenue, Suite 700
3 Post Office Box 2026
Bakersfield, CA 93303
4 Telephone (661) 322-3051
email: jbraze@bortonpetrini.com
5 email: jtravis@bortonpetrini.com

6 Attorneys for Plaintiff, Roger McIntosh dba McIntosh
& Associates

7

8                    UNITED STATES DISTRICT COURT

9          EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

10

11 ROGER McINTOSH,                    Case No.  1:07-CV-01080 LJO-GSA

12              Plaintiff,
                                      DECLARATION OF ROGER A.
13 v.                                 MCINTOSH IN SUPPORT OF MOTION
                                      FOR PARTIAL SUMMARY JUDGMENT
14 NORTHERN CALIFORNIA UNIVERSAL
   ENTERPRISES COMPANY, a California
15 corporation; LOTUS DEVELOPMENTS,
   LLP; THE CITY OF WASCO, a municipal   JUDGE: Lawrence J. O'Neill;
16 corporation; DEWALT CM, INC., a California     Gary S. Austin
   corporation also doing business as DEWALT
17 CORPORATION; DENNIS W. DE WALT,
   INC., a California corporation also doing
18 business as DEWALT CORPORATION; and
   DOES 1 through 10, inclusive,
19
                Defendants.
20

21

22          I, Roger A. McIntosh, state, and if so called, will testify as follows:

23          1.      I am the plaintiff in this case and am the owner of and doing business as

24 McIntosh & Associates at 2001 Wheelan Court, Bakersfield CA 93309.

25          2.      McIntosh & Associates has been serving Central and Southern California,

26 since 1980 including Arizona and Nevada since 1992. It was originally founded as Martin-McIntosh

27 Land Surveying and operated as a partnership between me and Eugene Martin.  However, in 1999,

28

H:\PUBLIC\0544\00\060971
McIntosh v.
Northern\Plead\sep\DCL OF
RAM ISP MSJ TO
PRECLUDE
DEFENSES.wpd

1
DECLARATION IN SUPPORT OF MOTION TO AMEND PLEADINGS

1  I purchased all of the interests in Martin-McIntosh pursuant to a buyout agreement including the

2  rights to the name Martin-McIntosh here in California, and all assets in California including all

3  intellectual property assets. (See, Exhibit "C" attached hereto)

4         3.     Since that time, the firm's services have expanded to include civil engineering,

5  planning, landscape architecture, photogrammetrics, petroleum engineering, and construction

6  management. Our services are provided for all facets of commercial, industrial, residential,

7  municipal, oil field, and agricultural developments.

8         4.     I am a licensed civil engineer in the State of California and have held that

9  license for 28 years. My civil engineering license is 33322. I am also a licensed land surveyor in

10  the State of California and have held that license for 32 years. My land surveyor license is 4383.

11         5.     I was a partner with Martin-McIntosh when it contracted with Michael Brown,

12  president of the Legacy Group, in 1992 to prepare a survey, engineering studies, create tentative and

13  final maps, improvement plans, and master subdivision plans for the improvements that were to be

14  constructed in the Valley Rose subdivision. I am currently the person most knowledgeable as to any

15  questions relating to Martin-McIntosh and McIntosh & Associates and also about the business

16  practices and customs of Martin-McIntosh and also McIntosh & Associates. I am also the custodian

17  of all business records and documents kept by Martin-McIntosh, including the contract between

18  Legacy Group and Martin-McIntosh.

19         6.     Attached hereto as Exhibit "A" is a true and correct copy of the 1992 contract

20  between Martin-McIntosh and Michael Brown who was a principal for the Legacy Group. In or

21  about 1992, and while I was a partner at Martin-McIntosh, we entered into the above-referenced

22  agreement with Michael Brown of the Legacy Group, a developer, to prepare a Tentative map, plans,

23  and other supporting documents for the development of the Valley Rose Estates.

24         7.     Attached hereto as part of the business documents kept on file at the offices

25  of McIntosh & Associates for work done during 1992 by Martin-McIntosh, is Exhibit "B", a true and

26  correct copy of the 1992 staff report prepared by the City of Wasco for the original tract number

27  given to the Valley Rose subdivision, No. 5472. The staff report required Legacy Group to prepare

28

H:\PUBLIC\0044497\0004971
McIntosh v.
Northern\Pleading\DCL OF
RAM ISP MSJ TO
PRECLUDE
DEFENSES.wpd

2

DECLARATION IN SUPPORT OF MOTION TO AMEND PLEADINGS

1  the Valley Rose subdivision according to the conditions in this report. The conditions included,

2  amongst other things, preparing improvement plans supporting the 5472 Tentative Map and which

3  improvement plans were my company's improvement plans that we prepared for the Valley Rose

4  subdivision. The tentative map we prepared for the Legacy Group was approved by the City of

5  Wasco but never recorded nor was a final map ever recorded and it is my understanding that the

6  5472 Tentative Map eventually expired.

7          8.     I was never contacted by anyone from the City of Wasco or DeWalt

8  Corporation requesting permission to use the 5472 Tentative maps or improvement plans. I also

9  never gave any oral or written permission for either of them to use the 5472 Tentative maps or

10  improvement plans.

11          9.     Although I and my office were contacted by Northern California Universal

12  Enterprises Co. or Lotus Developments, LLP, regarding use of our improvement plans, we refused

13  permission to use them.

14          10.    I became aware of the copying or use of my copyrighted plans in late 2006.

15  I then filed for a copyright lawsuit for Tentative Map No. 5472 and the 5472 improvement plans in

16  February of 2007 after I confirmed my map and plans were used to get final approval to build and

17  sell homes and had a lawsuit filed against Northern in July of 2007.

18          11.    I was also never paid by the City of Wasco, Northern, Lotus Development,

19  or DeWalt Corporation for the use of the 5472 map or plans.

20          12.    In or about 1999, the partnership between Martin-McIntosh was dissolved

21  and all assets in California were transferred to me. This included the rights and work under the 1992

22  contract between Martin-McIntosh and Michael Brown. Attached hereto as Exhibit "C" is a true and

23  correct copy of a redacted version of the buyout agreement between Eugene Martin and myself as

24  partners of Martin-McIntosh, and transferring all assets in California to me.

25          13.    As a civil engineer for over 28 years, it is my understanding that the Valley

26  Rose subdivision could have been redesigned or modified and a new map and improvement plans

27  could have been submitted to the City of Wasco different than the design my office had originally

28

H:\PUBLIC\MS44932\060971
McIntosh v.
Northern\Pleadings\DCL OF
RAM ISP MSF TO
PRECLUDE
DEFENSES.wpd

3
DECLARATION IN SUPPORT OF MOTION TO AMEND PLEADINGS

1  prepared back in 1992.  However, it would have cost money to tear out or modify the existing

2  improvements and get a brand new approval by the City of Wasco, but there is nothing about the

3  land or the location of the subdivision itself that requires the type of subdivision layout we designed

4  or would have prevented another developer from putting in, for example, larger lots with more

5  upscale homes.

6       14.    I  personally was never contacted either, or on behalf of McIntosh &

7  Associates, or Martin-McIntosh by DeWalt or anyone claiming to call on behalf of DeWalt

8  informing me that they were creating a new tentative map based on my prior tentative map and

9  improvements for expired Tract No. 5472.

10      15.    I was not aware until late 2006 at the earliest that DeWalt or Northern had

11  contracted with each other to prepare a new tentative map. I only became aware of this much later

12  and which was confirmed when I attended the deposition of Jeff Gutierrez in 2008.

13      16.    Attached hereto as Exhibit "D" is a true and correct copy of the copyrighted

14  5472 Tentative Map my office had prepared for the Valley Rose Estates subdivision in 1992.

15      17.    Attached hereto as Exhibit "E" is a true and correct copy of the copyrighted

16  5472 improvement plans my office had prepared for the Valley Rose Estates subdivision in 1992.

17      I declare under penalty of perjury, under the laws of the State of California, that the

18  foregoing is true and correct.

19      Executed this __20__ day of September, 2009, at Bakersfield, California.

20

21

22             Roger A. McIntosh, Declarant

23

24

25

26

27

28

H:\PLtf.1C\4544951060971
McIntosh v.
Northern\Pleadings\DCL OF
RAM ISP M33 TO
PRECLUDE
DEFENSES.wpd

4

DECLARATION IN SUPPORT OF MOTION TO AMEND PLEADINGS

**PROOF OF SERVICE**
**(FRCP No. 5(b)(2)(E))**

**STATE OF CALIFORNIA,  COUNTY OF KERN**

I, Vanessa J. Claridge, declare:

I am a citizen of the United States. I am employed in the County of Kern, State of California. I am over the age of 18 and not a party to the within action; my business address is 5060 California Avenue, Suite 700, Bakersfield, California 93309.

On **September 29, 2009**, I served the foregoing document described as **DECLARATION OF ROGER A. MCINTOSH IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT** on the other party(ies) in this action as follows:

| | |
|---|---|
| Steven John Hassing, Esq.<br> Law Offices of Steven J. Hassing<br>425 Calabria Court<br>Roseville, CA 95747<br>email address: **stevehassing@yahoo.com** | Attorneys for Attorneys for Defendants, Northern California Universal Enterprises Company and Lotus Developments<br>Tel:     916/677-1776<br>**Fax:   916/677-1770** |
| Chaka Okadigbo<br>**Garcia Calderon Ruiz, LLP**<br>500 South Grand Ave Suite 1100<br>Los Angeles, CA 90071<br>email address: **cokadigbo@gcrlegal.com** | Attorneys for Defendant, City of Wasco<br><br>Tel: 213/347-0210<br>**Fax: 213-347-0216** |
| William L. Alexander, Esq.<br>Alexander & Associates<br>1925 "G" Street<br>Bakersfield, CA 93301<br>email address: **walexander@alexander-law.com** | Attorneys for Defendant, DeWalt CM, Inc.<br><br>Tel: 661/316-7888<br>**Fax: 661/316-7890** |

☒     **BY ELECTRONIC SERVICE:**  Pursuant to Fed. R. Civ. P. 5(b)(2)(E) and Local Court Rule(s), the foregoing document will be served by the court via CM/ECF..  Pursuant to the CM/ECF docket for this case proceeding the following person(s) are on the Electronic Mail Notice List to receive ECF transmission at the email address(es) indicated below:

☒     **BY OVERNIGHT MAIL:** I caused such envelope with postage fully prepaid to be sent by Golden State Overnight Mail.

Executed on **September 29, 2009**, at Bakersfield, California.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

_____Vanessa J. Claridge_____

H:\PUBLIC\054493\060971 McIntosh v. Northern\Pleadings\DCL OF RAM ISP MSJ TO PRECLUDE DEFENSES.wpd

DECLARATION IN SUPPORT OF MOTION TO AMEND PLEADINGS

# EXHIBIT "A"

| | |
|---|---|
| This form of agreement is distributed by the: **California Council of Civil Engineers & Land Surveyors** | **Agreement Between Client and Consultant**<br>Form A was developed by the California Council of Civil Engineers and Land Surveyors, is intended primarily for the use of Council members, and may not be reproduced without the permission of the California Council of Civil Engineers and Land Surveyors. Copyright 1991, 1989, 1987, 1984, 1982, 1979, 1978, 1975, 1973, 1970 and 1967. |

Client Initials | Consultant Initials

Project No. __92-22__ Billing

Agreement entered into at _____ Bakersfield, California _____

made this ____18th____ day of ____March____ ,19 92 , by and between

**Client:**

Name   Mr. Michael S. Brown

Address   16255 Ventura Blvd., Suite 1000
         Encino, CA  91436

Phone

FAX

**Consultant:**

Name   Martin-McIntosh

Address   4130 Ardmore Avenue
         Bakersfield, California  93309

Phone   (805) 834-4814

FAX   (805) 834-0972

### Client And Consultant Agree As Follows:

Client intends to:

See letter dated March 18, 1992, attached and made a part hereof.

hereinafter called "project."

A.   Consultant agrees to perform the following scope of services:

Design Services, broken down into three (3) phases:

1) Conceptual Plan
2) Develop Master Plans for water, sewer and drainage, etc.
3) Survey.

as stated in letter dated March 18, 1992, attached and made a part hereof.

B.   Client agrees to compensate consultant for such services as follows:

Phase 1 – $ 15,200.00 , Phase 2 – $54,800.00 , Phase 3 – $19,100.00
plus costs of printing and reproductions to be billed at cost plus 10%, as stated
in letter dated March 18, 1992, attached and made a part hereof.

\* Martin-McIntosh will proceed with each Phase upon written authorization.

C.   This Agreement is subject to provisions 1 through 48 contained herein, and the terms and conditions contained in
initialed exhibits attached herewith and made a part hereof. (List exhibits below.)

## Provisions of Agreement

Client and consultant agree that the following provisions shall be part of their agreement:

1.   This agreement shall be binding upon the heirs, executors, administrators, successors and assigns of client and consultant.

2.   This agreement shall not be assigned by either client or consultant without the prior written consent of the other.

3.   This agreement contains the entire agreement between client and consultant relating to the project and the provision of services to the project. Any prior agreements, promises, negotiations or representations not expressly set forth in this agreement are of no force

or effect. Subsequent modifications to this agreement shall be in writing and signed by both client and consultant.

4.   Consultant's waiver of any term, condition, or covenant, or breach of any term, condition, or covenant, shall not constitute the waiver of any other term, condition, or covenant, or the breach of any other term, condition, or covenant.

5.   If any term, condition, or covenant of this agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remaining provisions of this agreement shall be valid and binding on client and consultant.

Form A 91                           Page 1 of 4

BP000425

6. This agreement shall be governed by and construed in accordance with the laws of the State of California.

7. Consultant shall only act as an advisor in all governmental relations.

8. All original papers, documents, drawings and other work product of consultant, and copies thereof, produced by consultant pursuant to this agreement shall remain the property of consultant and may be used by consultant without the consent of client. Upon request and payment of the costs involved, client is entitled to a copy of all papers, documents and drawings provided client's account is paid current.

9. Client acknowledges that its right to utilize the services and work product provided pursuant to this agreement will continue only so long as client is not in default pursuant to the terms and conditions of this agreement and client has performed all obligations under this agreement. Client further acknowledges that consultant has the unrestricted right to use the services provided pursuant to this agreement as well as all work product provided pursuant to this agreement.

10. Client and consultant agree to cooperate with each other in every way on the project.

11. Upon request, client shall execute and deliver, or cause to be executed and delivered, such additional instruments, documents, governmental fees and charges which are necessary to perform the terms of this agreement.

12. Consultant makes no representations concerning soil conditions unless specifically included in writing in this agreement, and he is not responsible for any liability that may arise out of the making or failure to make soil surveys, or sub-surface soil tests, or general soil testing.

13. Client agrees not to use or permit any other person to use plans, drawings, or other work product prepared by consultant, which plans, drawings, or other work product are not final and which are not signed, and stamped or sealed by consultant. Client agrees to be liable and responsible for any such use of nonfinal plans, drawings, or other work product not signed and stamped or sealed by consultant and waives liability against consultant for their use. Client further agrees that final plans, drawings or other work product are for the exclusive use of client and may be used by client only for the project described on the face hereof. Such final plans, drawings or other work product may not be changed nor used on a different project without the written authorization or approval by consultant. If consultant's work product exists in electronic or computerized format, or is transferred in electronic or computerized format, the stamp, seal and signature shall be original and may not be a computer-generated copy, photocopy, or facsimile transmission of the original.

14. Consultant has a right to complete all services agreed to be rendered pursuant to this contract. In the event this agreement is terminated before the completion of all services, unless consultant is responsible for such early termination, client agrees to release consultant from all liability for services performed. In the event all or any portion of the services or work product prepared or partially prepared by consultant be suspended, abandoned, or terminated, client shall pay consultant for all fees, charges, and services provided for the project, not to exceed any contract limit specified herein. Client acknowledges if the project services are suspended and restarted, there will be additional charges due to suspension of the services which shall be paid for by client as extra services.

15. If the scope of services to be provided by consultant pursuant to the terms of this agreement include an ALTA survey, client agrees that consultant may sign one of the two ALTA Survey Statements

attached hereto and incorporated herein by reference. In the event that consultant is required to sign a statement or certificate which  differs from the ALTA Survey Statements contained in the attachment, client hereby agrees to indemnify and hold consultant harmless from any and all liability arising from or resulting from the signing of any statement which differs from those statements contained in the attachment.

16. If the scope of services to be provided by consultant pursuant to the terms of this agreement include the preparation of grading plans but exclude construction staking services, client acknowledges that such staking services normally include coordinating civil engineering services and the preparation of as-built drawings pursuant to Uniform Building Code Chapter 70 or local grading ordinances and client will be required to retain such services from another consultant or pay consultant pursuant to this agreement for such services as extra work in accordance with Provision 26.

17. Consultant shall be entitled to immediately, and without notice, suspend the performance of any and all of its obligations pursuant to this agreement if client files a voluntary petition seeking relief under the United States Bankruptcy Code or if there is an involuntary bankruptcy petition filed against client in the United States Bankruptcy Court, and that petition is not dismissed within fifteen (15) days of its filing. Any suspension of services made pursuant to the provisions of this paragraph shall continue until such time as this agreement has been fully and properly assumed in accordance with the applicable provisions of the United States Bankruptcy Code and in compliance with the final order or judgment issued by the Bankruptcy Court.

18. This agreement shall not be construed to alter, affect or waive any lien or stop notice right which consultant may have for the performance of services pursuant to this agreement. Client agrees to separately provide to consultant the present name and address of the record owner of the property on which the project is to be located. Client also agrees to separately provide consultant with the name and address of any and all lenders who would loan money on the project and who are entitled to receive a preliminary notice.

19. If payment for consultant's services is to be made on behalf of client by a third-party lender, client agrees that consultant shall not be required to indemnify the third-party lender, in the form of an endorsement or otherwise, as a condition of receiving payment for services.

20. If client fails to pay consultant within thirty (30) days after invoices are rendered, client agrees consultant shall have the right to consider such default in payment a material breach of this entire agreement, and, upon written notice, the duties, obligations, and responsibilities of consultant under this agreement are suspended or terminated. In such event, client shall promptly pay consultant for all fees, charges, and services provided by consultant.

21. All fees and other charges will be billed monthly and shall be due at the time of billing unless otherwise specified in this agreement.

22. Client agrees that the periodic billings from consultant to client are correct, conclusive, and binding on client unless client, within ten (10) days from the date of receipt of such billing, notifies consultant in writing of alleged inaccuracies, discrepancies, or errors in billing.

23. Client agrees to pay a monthly late payment charge, which will be the lesser of, one and one-half percent (1 1/2%) per month or a monthly charge not to exceed the maximum legal rate, which will be applied to any unpaid balance commencing thirty (30) days after the date of the original billing.

BP000426

further acknowledges that field and other conditions may change by the time project construction occurs and clarification, adjustments, modifications, discrepancies or other changes may be necessary to reflect changed field or other conditions. If the scope of services pursuant to this agreement does not include on-site construction review, construction management, supervision of construction of engineering structures, or other construction supervision for this project, or if subsequent to this agreement client retains other persons or entities to provide such services, client acknowledges that such services will be performed by others and client will defend, indemnify and hold consultant harmless from any and all claims arising from or resulting from the performance of such services by other persons or entities except claims caused by the sole negligence or willful misconduct of consultant; and from any and all claims arising from or resulting from clarifications, adjustments, modifications, discrepancies or other changes necessary to reflect changed field or other conditions, except claims caused by the sole negligence or willful misconduct of consultant.

**42.** Client agrees that in accordance with generally accepted construction practices, construction contractor will be required to assume sole and complete responsibility for job site conditions during the course of construction of the project, including safety of all persons and property; that this requirement shall be made to apply continuously and not be limited to normal working hours, and client further agrees to defend, indemnify and hold consultant harmless from any and all liability, real or alleged, in connection with the performance of services on this project, excepting liability arising from the sole negligence of consultant.

**43.** In the event client discovers or becomes aware of changed field or other conditions which necessitate clarification, adjustments, modifications or other changes during the construction phase of the project, client agrees to notify consultant and engage consultant to prepare the necessary clarifications, adjustments, modifications or other changes to consultant's services or work product before construction activities commence or further activity proceeds. Further, client agrees to have a provision in its construction contracts for the project which requires the contractor to notify client of any changed field or other conditions so that client may in turn notify consultant pursuant to the provisions of this paragraph.

**44.** Client agrees to limit the liability of consultant, its principals and employees, to client and to all contractors and subcontractors on the project, for any claim or action arising in tort or contract, to the sum of $50,000 or consultant's fee, whichever is greater. However, if consultant's fee exceeds $250,000, liability to client and to all contractors and subcontractors shall not exceed $250,000.

**45.** Client agrees to purchase and maintain, during the course of construction, builder's risk "all risk" insurance which will name consultant as an additional insured as their interest may appear.

**46.** Consultant hereby states and client hereby acknowledges that consultant has no professional liability insurance for claims arising out of the performance of or failure to perform professional services, including, but not limited to the preparation of reports, designs, drawings and specifications, related to the investigation, detection, abatement, replacement, use or specification, or removal of products, materials or processes containing asbestos, asbestos cement pipe, and/or hazardous waste materials. Accordingly, the client hereby agrees to bring no claim for negligence, breach of contract, indemnity or otherwise against the consultant, its principals, employees, and agents if such claim, in any way, would involve the consultant's services for the investigation, detection, abatement, replacement, use or specification, or removal of products, materials or processes containing asbestos, asbestos cement pipe, and/or hazardous waste materials. Client further agrees to defend, indemnify and hold harmless consultant, its officers, directors, principals, employees and agents from any asbestos and/or hazardous waste material related claims that may be brought by third parties as a result of the services provided by the consultant pursuant to this agreement except claims caused by the sole negligence or willful misconduct of the consultant.

**47.** Client acknowledges that consultant's scope of services for this project do not include any services related in any way to asbestos and/or hazardous waste. Should consultant or any other party encounter such materials on the job site, or should it in any other way become known that such materials are present or may be present on the job site or any adjacent or nearby areas which may affect consultant's services, consultant may, at its option, terminate work on the project until such time as client retains a specialist contractor to abate and/or remove the asbestos and/or hazardous waste materials and warrant that the job site is free from any hazard which may result from the existence of such materials.

**48.** (a) Notwithstanding any other provision of this Agreement and except for the provisions of (b) and (c), if a dispute arises regarding consultant's fees pursuant to this contract, and if the fee dispute cannot be settled by discussions between client and consultant, both client and consultant agree to attempt to settle the fee dispute by mediation through the American Arbitration Association [or other mediation service] before recourse to arbitration.

If mediation does not resolve the fee dispute, such dispute shall be settled by binding arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof.

(b) Subdivision (a) does not preclude or limit consultant's right to elect to file an action for collection of fees if the amount in dispute is within the jurisdiction of the small claims court.

(c) Subdivision (a) does not preclude or limit consultant's right to elect to perfect or enforce applicable mechanics lien remedies.

IN WITNESS WHEREOF, the parties hereby execute this agreement dated _____ upon the terms and conditions stated above.

Client ___MICHAEL S. Brown___  
By _____  
Name/Title _____  
Date Signed ___3/26/92___  
Project Number ___92-22___

Consultant ___Martin-McIntosh – Eugene P. Martin___  
By _____  
Name/Title ___Eugene P. Martin – Partner___  
Date Signed ___3/26/92___  
Project Number ___92-22___

Client should mail completed contract to the address shown for consultant.

BP000427



24. If consultant, pursuant to this agreement, produces plans, specifications, or other documents and/or performs field services, and such plans, specifications, and other documents and/or field services are required by one or more governmental agency, and one or more such governmental agency changes its ordinances, policies, procedures or requirements after the date of this agreement, any additional office or field services thereby required shall be paid for by client as extra services.

25. In the event consultant's fee schedule changes due to any increase of costs such as the granting of wage increases and/or other employee benefits to field or office employees due to the terms of any labor agreement, or rise in the cost of living, during the lifetime of this agreement, a percentage increase shall be applied to all remaining compensation.

26. Client agrees that if client requests services not specified pursuant to the scope of services description within this agreement, client agrees to pay for all such additional services as extra work.

27. In the event that any staking is destroyed, damaged or disturbed by an act of God or parties other than consultant, the cost of restaking shall be paid for by client as extra services.

28. Client acknowledges that the design services performed pursuant to this agreement are based upon field and other conditions existing at the time these services were performed. Client further acknowledges that field and other conditions may change by the time project construction occurs and clarification, adjustments, modifications and other changes may be necessary to reflect changed field or other conditions. If the scope of services pursuant to this agreement does not include construction staking services by consultant for this project, or if subsequent to this agreement client retains other persons or entities to provide such staking services, client acknowledges that such staking services will be performed by others and that client will defend, indemnify, and hold consultant harmless from any and all claims arising from or resulting from the performance of such staking services by other persons or entities except claims caused by the sole negligence or willful misconduct of consultant; and from any and all claims arising from or resulting from clarifications, adjustments, modifications or other changes which may be necessary to reflect changed field or other conditions except claims caused by the sole negligence or willful misconduct of consultant.

29. Client shall pay the costs of checking and inspection fees, zoning and annexation application fees, assessment fees, soils engineering fees, soils testing fees, aerial topography fees, and all other fees, permits, bond premiums, title company charges, blueprints and reproductions, and all other charges not specifically covered by the terms of this agreement.

30. Client acknowledges and agrees that if consultant provides surveying services, which services require the filing of a Record of Survey in accordance with Business and Professions Code Section 8762, that all of the costs of preparation, examination and filing for the Record of Survey will be paid by client as extra work in accordance with Provision 26.

31. Consultant is not responsible for delay caused by activities or factors beyond consultant's reasonable control, including but not limited to, delays by reason of strikes, lockouts, work slowdowns or stoppages, accidents, acts of God, failure of client to furnish timely information or approve or disapprove of consultant's services or work product promptly, faulty performance by client or other contractors or governmental agencies.   When such delays beyond consultant's reasonable control occur, client agrees consultant is not responsible in damages nor shall consultant be deemed to be in default of this agreement.

32. Consultant shall not be liable for damages resulting from the ac-

tions or inactions of governmental agencies including, but not limited to, permit processing, environmental impact reports, dedications, general plans and amendments thereto, zoning matters, annexations or consolidations, use or conditional use permits, project or plan approvals, and building permits. The client agrees that it is the responsibility of the client to maintain in good standing all government approvals and permits and to apply for any extensions thereof.

33. In the event that client institutes a suit against consultant, either directly by complaint or by way of cross-complaint, including a cross-complaint for indemnity, for alleged negligence, error, omission, or other failure to perform, and if client fails to obtain a judgment in client's favor, the lawsuit is dismissed, or if judgment is rendered for consultant, client agrees to pay  consultant all costs of defense, including attorneys' fees, expert witness fees, court costs, and any and all other expenses of defense.  Client agrees such payments shall be made immediately following dismissal of the case or upon entry of judgment.

34. If any action at law or equity, including an action for declaratory relief, is brought to enforce or interpret the provisions of this agreement, the prevailing party shall be entitled to reasonable attorneys' fees, which fees may be set by the court in the same action or in a separate action brought for that purpose, in addition to any other relief to which he may be entitled.

35. Client agrees that in the event client institutes litigation to enforce or interpret the provisions of this agreement, such litigation is to be brought and adjudicated in the appropriate court in the county in which consultant's principal place of business is located, and client waives the right to bring, try or remove such litigation to any other county or judicial district.

36. Consultant makes no representation concerning the estimated quantities and probable costs made in connection with maps, plans, specifications, reports or drawings other than that all such costs are estimates only and actual costs will vary.  It is the responsibility of client to verify costs.

37. Client acknowledges that consultant is not responsible for the performance of work by third parties including, but not limited to, the construction contractor and its subcontractors.

38. Consultant makes no warranty, either expressed or implied, as to his findings, recommendations, plans, specifications, or professional advice except that the services or work product were performed pursuant to generally accepted standards of practice in effect at the time of performance.

39. Estimates of land areas provided under this agreement are not to be considered precise unless consultant specifically agrees to provide the precise determination of such areas.

40. In the event the client agrees to, permits, authorizes, constructs or permits construction of changes in the plans, specifications, and documents or does not follow recommendations or reports prepared by consultant pursuant to this agreement, which changes are not consented to in writing by consultant, client acknowledges that the changes and their effects are not the responsibility of consultant and client agrees to release consultant from all liability arising from the use of such changes and further agrees to defend, indemnify and hold harmless consultant, its officers, directors, principals, agents and employees from and against all claims, demands, damages or costs arising from the changes and their effects.

41. Client acknowledges that the design services performed pursuant to this agreement are based upon field and other conditions existing at the time of preparation of consultant's services. Client

BP000428

# EXHIBIT "B"

STAFF REPORT

FILE: Tentative Tract 5472

APPLICANT: Wasco Community Development Company by Porter Robertson

LOCATION: Section 4, Township 27 S., Range 24 E. (Adjacent to the West side of the Valley Rose Golf Course, and North of State Highway 46.

APN #: 070-050-23

CEQA ACTION: Negative Declaration

PUBLIC INQUIRY AND CORRESPONDENCE:
        Department of Transportation
        Shafter-Wasco Irrigation District
        State Clearinghouse
        Department of Public Works
        Southern California Gas Co.
        Kern County Fire Department

ANALYSIS: The proposed project was a part of Annexation 323 and is approximately 26.95 acres in size. Tentative Tract 5472 consists of 86 large, single family lots and 16 multi-family lots. The City of Wasco Land Use Element of the General Plan designates the site as Low Density Residential, and the adjacent properties are designated by the Land Use Element as follows:

        North: Low Density Residential
        East:  Public Facilities
        South: Commercial
        West:  Low Density Residential

The City of Wasco Zone Plan designates the above mentioned site as R-1 (Low Density Residential) and R-3 P-D (High Density Residential, Precise Development). The adjacent properties are zoned as follows:

        North: R-1 (Low Density Residential)
               R-2 P-D (Medium Density Residential, Precise Develop-
               ment)
        East:  R-F O-S (Recreational Forest, Open Space)
        South: H-C P-D (Highway Commercial, Precise Development)
               C-2 P-D (General Commercial, Precise Development)
        West:  A (County Agriculture)

i

BP000928

The existing land use of the project site is Vacant Agricultural (fallow). The existing land uses surrounding the property are as follows:

North: Agriculture (vacant)
East:  Recreational Forest, Open Space (Valley Rose Golf
       Course)
South: Agriculture (vacant)
West:  Agriculture (Cotton)

The site is within the Wasco City limits and is in compliance with the Wasco General Plan Land Use Element and Zone Plan. Mitigation measures included in the Master Environmental Assessment for Annexation #23 (SCH#90020291) shall be included as a part of this project in order to avoid potentially significant adverse effects.

STAFF RECOMMENDATIONS: Staff recommends approval of Tentative Tract 5475 with the following conditions:

1. All requirements of the Development Agreement between Wasco Community Development Company and the City of Wasco shall be met.

2. All requirements of the Kern County Fire Department shall be met.

3. All requirements of the California Department of Transportation (CALTRANS) shall be met including:

    A) A traffic impact analysis for the intersection of Highway 46 and Schofield Avenue;
    B) A tiered traffic impact analysis on said intersection when additional new development occurs;
    C) A traffic impact study for Augusta Way when it intersects with Highway 46;
    D) A tiered traffic impact analysis on said intersection when new development occurs;

These impact analysis reports will be used to determine needs for signalization, channelization, merge lanes or other improvements.

4. Final subdivision map must be in accordance with City Ordinances and the Subdivision Map Act.

5. Storm water may not flow on to neighboring properties.

6. All required construction shall be detailed on plans prepared by a licensed Civil Engineer and shall conform to City of Wasco Standards and shall be subject to review and approval by the City Engineer.

2

BP000929

7.  All improvements shall be installed prior to recordation of
    the Subdivision Map or securities, as deemed sufficient, by
    the  City, shall be provided in accordance with the  Subdivi-
    sion Map Act.

8.  To the extent feasible, the subdivision shall utilize energy
    conservation techniques in it's development.

9.  Payment of all required City fees shall be made.

10. All utilities including cable services shall be installed in
    accordance  with the City of Wasco Standards and each of  the
    appropriate utility company standards.

11. All storm drainage, sewer and water facilities shall be in
    accordance with the requirements of the City Engineer and
    the  respective Master Plans for the area as approved by  the
    City Engineer.  Plans shall be submitted for approval of  the
    City Engineer.

12. All dedication and improvements of land for rights-of-way
    purposes shall be in accordance with the requirements of  the
    Planning Director, City Engineer and the Circulation Element
    of the City of Wasco General Plan.

13. Revised storm drainage, water and sewer studies shall be
    submitted and approved by the City Engineer before improve
    ment plans are submitted to the City.

14. Street improvements shall be made to Highway 46 and Schofield
    Avenue  (to Hazeltine Terrace) as determined in the  required
    traffic study.  As a minimum, Schofield Avenue  shall  be
    widened to ultimate half street width at the connection  with
    Hazeltine  Terrace and the ultimate connection made  at  this
    location including curb returns.

15. Full street improvements shall be made to Augusta Way, Cy
    press Point, Olympic Court, Pebble Beach Way, Sawgrass Court,
    St.  Andrews Lane and St. Augustine Way.  Hazeltine  Terrace
    shall have full street improvements within the boundary of
    Tentative Tract 5472.  Full street improvements are not
    required outside of the tract boundary, except at the connec-
    tion  to  Schofield Avenue.  Hazeltine Terrace shall  be  de
    veloped to a twenty-eight (28) foot all paved section between
    the tract boundary and Schofield Avenue with transition to be
    provided at Schofield Avenue and the tract boundary

16. All through lots shall have a one foot non-access easement at
    the rear of the property.

17. Irrevocable offers of dedication (totaling fifty-five feet
    from  center  line) shall be given to the City of  Wasco  for
    Schofield Avenue, Gromer Road, Leonard Avenue and Highway 46.

BP000930

18. All open ended streets or those streets not terminating at an intersection of another street or in a cul-de-sac, shall have barriers placed at the end of pavement. All barriers are to be approved by the City Engineer.

19. A ninety (90) foot utility easement shall be established along the proposed alignment of Augusta Way between Highway 46 and Tract 5478.

BP000931

EXHIBIT "C"

## REDEMPTION AND DISSOLUTION AGREEMENT

THIS AGREEMENT, dated January 1, 1999, is made and entered into by and between the following parties, and shall be retroactive to the above date:

1.  Martin-McIntosh, a California General Partnership ("MARTIN-McINTOSH");
2.  MARTIN-McINTOSH, L.L.C., an Arizona limited liability company ("Martin-McIntosh, L.L.C. (Arizona)");
3.  MARTIN & McINTOSH LLC, a Nevada limited liability company ("Martin & McIntosh, LLC (Nevada)");
4.  Wescon, Inc., a Nevada corporation ("Wescon");
5.  Western Photogrammetrics, a fictitious business name for MARTIN-McINTOSH;
6.  Roger A. McIntosh ("McINTOSH"); and
7.  Eugene P. Martin ("MARTIN").

E.T.M.M., a General Partnership ("E.T.M.M."), whose sole remaining partners are MARTIN and McINTOSH, is not a party to this agreement and is not affected by this agreement.

1.  <u>Background and Purpose of Agreement</u>.  MARTIN and McINTOSH are the sole partners of MARTIN-McINTOSH (hereinafter referred to as "the Partnership").  The Partnership provides engineering, land surveying and related professional services through the Partnership and its affiliates, identified as:

1.  Martin-McIntosh, L.L.C. (Arizona);
2.  Martin & McIntosh, LLC (Nevada);
3.  Western Photogrammetrics; and
4.  Wescon.

The affiliates are collectively identified as "the Affiliated Companies".  The Partnership and its Affiliated Companies, either individually or collectively, conduct business in the States of Arizona, California and Nevada.  A separate entity, Western Constructors, Inc. ("Western Constructors"), was the name of a proposed Nevada corporation which was submitted by MARTIN and McINTOSH as an alternative to Wescon.  Insofar that the name Wescon, Inc. was authorized and permitted to be used by MARTIN and McINTOSH by the State of Nevada, Western Constructors was never formed and never existed.

The Partnership commenced on July 21, 1980, and currently exists pursuant to a partnership agreement dated September 18, 1980.  MARTIN and McINTOSH are equal partners, each owning fifty percent (50%) of the interest in the Partnership profits and losses, including those of the Affiliated Companies.  The parties wish to end their business association, and the Partnership has agreed to redeem MARTIN's fifty percent (50%) interest in the Partnership, with

the understanding that McINTOSH will carry on the business of the Partnership as a sole proprietor, to wit, "Roger McIntosh dba Martin-McIntosh", and MARTIN will continue to do business in Reno as Martin & McIntosh, LLC. The parties have also agreed to end their business association in the Affiliated Companies and to divide the assets and ownership interests therein, as well as other assets of the Partnership. For the foregoing reasons, the parties have entered into this Agreement.

The parties hereto acknowledge and agree that it shall be conclusively presumed that the within Redemption and Dissolution Agreement fully complies with all terms and conditions, if any, of the above-referenced partnership agreement with respect to the redemption of a partnership interest, as well as the division of the partnership assets as set forth therein.

2.    Agreement of Redemption. Subject to the terms and conditions set forth in this Agreement, MARTIN-McINTOSH shall redeem MARTIN's fifty percent (50%) interest in the Partnership. In addition, Martin-McIntosh, L.L.C. (Arizona) shall fully redeem the membership interest of MARTIN in that company and Martin & McIntosh, LLC (Nevada) shall fully redeem the membership interest of McINTOSH in that company, with the assets of each of the respective companies to be distributed as set forth below. Moreover, Wescon will redeem both MARTIN and McINTOSH's fifty percent (50%) interests in Wescon and, thereafter, dissolve and distribute its assets as set forth below. The assets and interests of the Partnership and the Affiliated Companies shall be divided as follows:

a.    Partnership Assets. MARTIN-McINTOSH shall receive all of MARTIN's right, title and interest to any of the assets of MARTIN-McINTOSH, which includes, but is not limited to, all assets located in the State of California and/or used in the business of MARTIN-McINTOSH, including accounts receivable, wherever located. The assets of MARTIN-McINTOSH, except for the accounts receivable, are more fully identified in the attached Exhibit "1", and include the goodwill of MARTIN-McINTOSH, any client lists, as well as the sole and exclusive right to continue using the names "MARTIN-McINTOSH", and "Western Photogrammetrics" in all States of the United States except, that in Nevada, MARTIN will have the right to continue using the name Martin & McIntosh, without limiting McINTOSH's right to use of that same name in Nevada. The accounts receivable for MARTIN-McINTOSH as of December 31, 1998 are identified in the attached Exhibit "2". Notwithstanding the omission of any asset from Exhibit "1" or "2", such omitted asset, if not already specifically listed as an asset of another entity herein, shall be considered a Partnership asset if the above-referenced criteria are satisfied.

In event of a breach of the foregoing covenant, such breach shall be conclusively presumed to constitute irreparable injury to the non-breaching party and, therefore, entitling such non-breaching party to injunctive relief.

1.    Accounts Receivable. All accounts receivable as set forth in the attached Exhibit "2" shall be the property of MARTIN-McINTOSH. Notwithstanding the

foregoing, all sums due and received as a result of the Valley Rose and Voyager litigation, as more fully discussed in paragraphs 8(a) and (b) herein, shall be split equally between MARTIN and MARTIN-McINTOSH.

2.    Real Property: With respect to the real property located at 2001 Wheelan Court, Bakersfield, California ("the Wheelan Real Property"), only, such shall not be considered an asset of the Partnership. The Partnership shall, by way of grant deeds and prior to the execution of the within Agreement, transfer title of the Wheelan Real Property to MARTIN and McINTOSH individually, with each to hold a ½ undivided interest as tenants in common. Copies of the grant deeds to be executed hereunder are attached hereto as Exhibit "3".

b.    Martin-McIntosh, L.L.C. (Arizona) Assets. MARTIN hereby sells, transfers and conveys to McINTOSH all of his membership interest in Martin-McIntosh, L.L.C. (Arizona). The consideration for this sale shall be the simultaneous transfer of all of McINTOSH's membership interest in Martin & McIntosh, LLC (Nevada), As a result of such transfer, McINTOSH represents and warrants to MARTIN, with respect to his membership interest in Martin & McIntosh, LLC (Nevada), that (i) his membership interest is free of liens; (ii) his membership interest has been duly authorized, validly issued, and fully paid for; (iii) his membership interest is not bound by any outstanding options, calls, commitments or agreements of any character which would be violated by the transfer contemplated herein; and (iv) that as a result of this transfer MARTIN shall become the sole member of Martin & McIntosh, LLC (Nevada). McINTOSH represents and warrants that all of the assets required to operate the business of Martin & McIntosh, LLC (Nevada) are owned by Martin & McIntosh, LLC (Nevada), free and clear of all liens. The assets of Martin & McIntosh, LLC (Nevada), except for the accounts receivable, are more fully identified in the attached Exhibit "4". The accounts receivable for Martin & McIntosh, LLC (Nevada) as of December 31, 1998 are identified in the attached Exhibit "5". Notwithstanding the omission of any asset from Exhibit "4" or "5", such omitted asset, if not already specifically listed as an asset of another entity herein, shall be considered an asset of Martin & McIntosh, LLC (Nevada) if it is an asset located in the State of Nevada and/or used in the business of Martin & McIntosh, LLC (Nevada).

c.    Martin & McIntosh, LLC (Nevada). McINTOSH hereby sells, transfers and conveys to MARTIN all of his membership interest in Martin & McIntosh, LLC (Nevada). The consideration for this sale shall be the simultaneous transfer of all of MARTIN's membership interest in Martin-McIntosh, L.L.C. (Arizona). As a result of such transfer, MARTIN represents and warrants to McINTOSH, with respect to his membership interest in Martin-McIntosh, L.L.C. (Arizona) that (i) his membership interest is free of liens; (ii) his membership interest has been duly authorized, validly issued, and fully paid for; (iii) his membership interest is not bound by any outstanding options, calls, commitments or agreements of any character which would be violated by the transfer contemplated herein; and (iv) that as a result of this transfer McINTOSH shall become the sole member of Martin-McIntosh, L.L.C. (Arizona). MARTIN represents and warrants that all of the assets required to operate the business of Martin-McIntosh, L.L.C. (Arizona) are owned by Martin-McIntosh, L.L.C. (Arizona), free and clear of all liens. The assets

MARTIN further agrees not to disturb or interfere with the continuing business of the Partnership, its Affiliated Companies, or any of their successors in interest for the prescribed four (4) year period, by way of soliciting, hiring or luring away customers, employees or contractors of those entities. McINTOSH also agrees not to disturb or interfere with the continuing business of Martin & McIntosh, LLC (Nevada), or any of their successors in interest for the prescribed four (4) year period, by way of soliciting, hiring or luring away customers, employees or contractors of those entities.

The parties intend that the covenant contained in the first paragraph of this section shall be construed as a series of separate covenants, one for each State specified. Except for geographic coverage, each separate covenant shall be deemed identical in terms to the covenant contained in that paragraph. If in any judicial proceeding a court refuses to enforce any of these separate covenants, the unenforceable covenant shall be deemed eliminated from these provisions for the purpose of those proceedings, to the extent necessary to permit the remaining separate covenants to be enforced.

In the event of a breach of any of the foregoing covenants, such breach shall be conclusively presumed to constitute irreparable injury to the non-breaching party and, therefore, entitling such non-breaching party to injunctive relief.

13.    Trade Secrets and Intellectual Property. MARTIN agrees not to divulge, communicate, use to the detriment of the Partnership, its Affiliated Companies, or any of their successor entities, including, but not limited to, Roger McIntosh dba Martin-McIntosh and Roger McIntosh dba Western Photogrammetrics, or for the benefit of any other person or persons, or misuse in any way any confidential information, trade secret, copyright, trademark, patent or other intellectual property right of the Partnership, its Affiliated Companies or its successors, including but not limited to personnel information, secret processes, know-how, customer lists or other technical data. MARTIN acknowledges and agrees that any such information or data acquired through connections with the Partnership was received in confidence and as a fiduciary of the Partnership and its successors.

Similarly, McINTOSH agrees not to divulge, communicate, use to the detriment of the Martin & McIntosh, LLC (Nevada) or any of its successor entities, or for the benefit of any other person or persons, or misuse in any way any confidential information, trade secret, copyright, trademark, patent or other intellectual property right of Martin & McIntosh, LLC (Nevada), or its successors, including but not limited to personnel information, secret processes, know-how, customer lists or other technical data. McINTOSH acknowledges and agrees that any such information or data acquired through connections with Martin & McIntosh, LLC (Nevada) was received in confidence and as a fiduciary of Martin & McIntosh, LLC (Nevada).

In the event of a breach of the foregoing covenants, such breach shall be conclusively presumed to constitute irreparable injury to the non-breaching party and, therefore, entitling such non-breaching party to injunctive relief.

Notwithstanding the provisions of Civil Code, Section 1717, a dismissal, with or without prejudice, shall constitute a determination on the merits in favor of the non-dismissing party for purposes of a costs and attorneys' fees award hereunder.

35.   <u>Venue for Litigation</u>.  Any litigation or disputes between the parties hereto involving the business of Martin & McIntosh, LLC (Nevada) shall be litigated solely and exclusively in the State of Nevada in a court of that State, and within the county where Martin & McIntosh, LLC (Nevada) has its principal place of business..

Any other litigation or disputes between the parties hereto, including, but not limited to any disputes arising out of the within Redemption and Dissolution Agreement, shall be solely and exclusively litigated in the Superior or Municipal Court for the State of California in the County of Kern.  California law shall apply in any and all such disputes.

The foregoing is not intended to, nor does it affect the Choice of Law provision pertaining to the applicable law for purposes of interpreting or construing the within agreement.

36.   <u>Incorporation by Reference</u>.  All exhibits referred to in this Agreement and attached hereto are incorporated in this Agreement by that reference as though set forth in full.

IN WITNESS WHEREOF, this Agreement is executed this 4-29-99 day of April, 1999.

EUGENE MARTIN

ROGER McINTOSH

MARTIN-McINTOSH, a California
General Partnership

MARTIN-McINTOSH, a California General
Partnership

By: Eugene Martin, Partner

By: Roger McIntosh, Partner

MARTIN-McINTOSH, L.L.C., an
Arizona Limited Liability Company

MARTIN-McINTOSH, L.L.C., an
Arizona Limited Liability Company

By: Eugene Martin
Its: MEMBER

By: Roger McIntosh
Its:

April 26, 1999 (4:09PM)          Page 18 of 19

# EXHIBIT "D"



TENTATIVE TRACT MAP No. 5472

"REVISED"

BP000434

# EXHIBIT "E"

BP000435

BP000436

CITY OF WASCO
DEPARTMENT OF PUBLIC WORKS
WALL CONSTRUCTION PLANS

VALLEY ROSE
PLANNED COMMUNITY
TRACT NO. 5472

GENERAL STRUCTURAL NOTES

**GENERAL**

**FOUNDATIONS**

**CONCRETE**

**MASONRY**

**GENERAL NOTES**

**INDEX OF DRAWINGS:**

1   COVER SHEET
2   WALL EAST OF VALLEY ROSE PARKWAY
3   WALL EAST OF PUBLIC BEACH WAY
4   WALL WEST OF VALLEY ROSE PARKWAY
5   WALL ALONG VALLEY ROSE PARKWAY
6   PROJECT ENTRANCE AND PUMP STATION
7   WROUGHT IRON FENCE DETAILS
8   WALL SECTIONS
9   PLANO ONE DETAILS
10  PLANTER WALL LOT FILLS
11  PUMP STATION GATE AND DETAILS

VICINITY MAP

BENCH MARK:

KEY MAP
SCALE 1" = 200'

SUBMITTED BY: _____

APPROVED BY: _____
CITY OF WASCO PLANNING DIRECTOR, WALTER CURRIE   DATE

Martin-McIntosh
LAND SURVEYING · CIVIL ENGINEERING
2001 WHEELAN COURT
BAKERSFIELD, CALIFORNIA 93309

SHEET 1
OF 11 SHEETS
TRACT NO. 5472
VALLEY ROSE PLANNED COMMUNITY
WALL PLANS

BP000437

BP000438

BP000439

BP000440

SHEET 4

TRACT NO. 5472
VALLEY ROSE PLANNED COMMUNITY
WALL PLANS

Martin-McIntosh

BP000441



BP000442

BP000443

BP000444

BP000445

BP000446

TRACT NO. 5472
VALLEY ROSE PLANNED COMMUNITY
WALL PLANS

Martin-McIntosh
LAND SURVEYING · CIVIL ENGINEERING



BP000447





BP000448



BP000449



BP000450

N.W. 1/4 SEC. 4, 27/24
N.E. 1/4 SEC. 4, 27/24
S.W. 1/4 SEC.
VACANT LAND
WELL SITE NO. 3
WELL SITE NO. 2
WELLSITE NO. 1
(E) VALLEY ROSE GOLF COURSE
(E) CLUB HOUSE
(E) POND
(E) GOLF COURSE WELL & 10,000 GALLON PRESSURE TANK

## NOTES:

1. WELL SITE NO. 3 WILL BE CONSTRUCTED WITH THE FIRST PHASE OF DEVELOPMENT WITH THE GOLF COURSE WELL MODIFIED AND CONNECTED TO THE SYSTEM AS A BACK-UP SOURCE SUPPLY. THIS WILL PROVIDE AN ADEQUATE WATER SUPPLY FOR APPROXIMATELY 481 UNITS BEFORE A NEW WELL IS REQUIRED.
2. THE WATER SYSTEM HAS BEEN DESIGN BASED ON CALIFORNIA ADMINISTRATIVE CODE, TITLE 22, AND THE WASCO DESIGN STANDARDS PROVIDED BY MR. [illegible], CITY ENGINEER.
3. MINIMUM ALLOWABLE RESIDUAL PRESSURE AT A FIRE HYDRANT SHALL BE 20 PSI.
4. FIRE FLOW IS BASED ON 1000 GPM FOR 1 HOUR FOR SINGLE FAMILY RESIDENTIAL AND 1500 GPM FOR 2 HOURS FOR MULTI FAMILY RESIDENTIAL AND COMMERCIAL DEVELOPMENTS.
5. PIPE SIZES SHOWN ARE ADEQUATE TO MEET THE DEMAND REQUIREMENTS WITH THE WELL LOCATIONS SHOWN.
6. ALL MATERIALS AND INSTALLATION TO BE IN ACCORDANCE WITH CITY OF WASCO REQUIREMENTS.
7. MAXIMUM SPACING OF 1000' FOR ALL GATE VALVES.
8. FIRE HYDRANT SPACING AND LOCATIONS SHALL BE PER THE KERN COUNTY FIRE DEPARTMENT.
9. WATER MAINS SHALL HAVE 30" MINIMUM COVER.
10. ALL WATER SERVICES SHALL BE 3/4" MINIMUM.
11. ALL SERVICES SHALL BE METERED.
12. THE PIPE SIZES AND FACILITIES SHOWN ON THESE PLANS ARE BASED ON THE LAND USES PROPOSED BY THE VALLEY ROSE MASTER LAND USE PLAN. THE FACILITY LOCATIONS, PIPE SIZES, AND INTERNAL PIPE ALIGNMENTS MAY BE CHANGED SLIGHTLY AS THE PROJECT IS DEVELOPED AND MORE PRECISE ROAD ALIGNMENTS ARE ESTABLISHED. HOWEVER THE USE OF THE FOLLOWING PARAMETERS OR AN APPROVED REVISION THEREOF SHALL BE APPLIED.
   - (A) WATER CONSUMPTION = 200 GPD/PERSON AVERAGE DAY DEMAND, 3 PERSONS PER SINGLE FAMILY DWELLING FOR 600 GPD/SINGLE FAMILY DWELLING UNIT. (EQUIVALENT SINGLE FAMILY DWELLING UNIT = E.S.F.D.U.) 1.5 PERSONS PER MULTI FAMILY DWELLING UNIT.
   - (B) PARK, SCHOOL, COMMUNITY CENTER DEVELOPMENT AND COMMERCIAL DEVELOPMENT WATER DEMAND SHALL BE BASED ON A MINIMUM OF 3 E.S.F.D.U. PER ACRE FOR COMMERCIAL AND 2 E.S.F.D.U. PER ACRE FOR PARKS, LANDSCAPE, AND COMMUNITY CENTER AREAS AND SCHOOL AREAS.
   - (C) MAXIMUM DAY DEMAND = 2 AVERAGE DAY DEMAND
     MAXIMUM HOUR DEMAND = 1.5 X MAXIMUM DAY DEMAND
13. MINOR CHANGES IN FACILITY LOCATION, PIPE SIZES AND PIPE ALIGNMENT RESULTING FROM THE USAGE OF THESE FACTORS WILL NOT CONSTITUTE A DEVIATION FROM THE MASTER PLAN.
14. SCHEDULE OF WELL AND STORAGE TANK INSTALLATION.
   - (A) ONE 1500 GPM NEW WELL AND CONNECTION TO THE GOLF COURSE WELL TO BE COMPLETED, OR TWO NEW WELLS (1500 GPM EACH) IN OPERATION BEFORE BUILDING PERMITS ARE ISSUED FOR ANY BUILDING OF PHASE I (PARCEL 2, 3 & 5, PARCEL MAP NO. 9673).
   - (B) ONE 31,000 GALLON STORAGE TANK TO BE INSTALLED WITH THE DEVELOPMENT OF PHASE I RESIDENTIAL. 71,000 GALLONS OF ADDITIONAL STORAGE IS REQUIRED FOR THE DEVELOPMENT OF COMMERCIAL PROPERTY WITHIN PHASE I.
   - (C) A TOTAL OF 445,000 GALLONS OF STORAGE WILL BE REQUIRED TO MEET THE MAX HOUR DEMANDS OF THE OVERALL PROJECT.
   - (D) A COMBINATION OF NEW WELLS AND STORAGE IS REQUIRED TO MEET THE PHASED DEMANDS OF THE PROJECT. REFER TO THE APPROVED MASTER WATER PLAN FOR AN INDICATION OF THE PHASING REQUIREMENTS BEYOND PHASE I. AS FUTURE PHASES ARE DEFINED, THESE FACILITIES SHALL BE JUSTIFIED IF A VARIATION FROM THE APPROVED PLAN IS PROPOSED.

SCALE: 1" = 200'

## LEGEND

| | |
|---|---|
| PVC | CLASS 150 PVC ASTM C-900 WATER PIPE |
| (symbol) | GATE VALVES |
| (E) | EXISTING |
| GPM | GALLONS PER MINUTE |

Martin-McIntosh
LAND SURVEYING • CIVIL ENGINEERING
3001 WHEELAN COURT
BAKERSFIELD, CALIFORNIA 93309

"REFINED" MASTER WATER PLAN
VALLEY ROSE PLANNED COMMUNITY
SYSTEM SCHEMATIC

SHEET 1 OF 1 SHEETS

2514



CITY OF WASCO
DEPARTMENT OF PUBLIC WORKS
WALL CONSTRUCTION PLANS

VALLEY ROSE
PLANNED COMMUNITY
TRACT NO. 5472

KEY MAP
SCALE 1" = 500'

GENERAL STRUCTURAL NOTES

NOTES

INDEX OF DRAWINGS

1  COVER SHEET
2  WALL EAST OF VALLEY ROSE PARKWAY
3  WALL EAST OF PUBLIC BEACH WAY
4  WALL WEST OF VALLEY ROSE PARKWAY
5  WALL ALONG VALLEY ROSE PARKWAY
6  PROJECT ENTRANCE AND PUMP STATION
7  WROUGHT IRON FENCE DETAILS
8  WALL SECTIONS
9  PASEO GATE DETAILS
10 PLANTER WALL DETAILS
11 PUMP STATION GATE AND DETAILS

BENCH MARK:

VICINITY MAP
NOT TO SCALE

SUBMITTED BY:

APPROVED BY:
CITY OF WASCO PLANNING DIRECTOR, WALTER CHINE

Martin-McIntosh
LAND SURVEYORS · CIVIL ENGINEERS

SHEET 1
OF SHEETS
TRACT NO. 5472
VALLEY ROSE PLANNED COMMUNITY
WALL PLANS

BP000452



BP000453

BP000454

BP000455

BP000456

BP000457

BP000458

PROPOSED ULTIMATE INTERSECTION DESIGN

PROPOSED TRANSITION STRIPING DESIGN PHASE I

PROPOSED TRANSITION PAVING DESIGN PHASE I

MATCHLINE—SEE SHEET 2     MATCHLINE—SEE SHEET 2     MATCHLINE—SEE SHEET 2

VICINITY MAP

KEY MAP

SCALE 1" = 50'

BP000459

MATCHLINE—SEE SHEET 1     MATCHLINE—SEE SHEET 1     MATCHLINE—SEE SHEET 1

PROPOSED ULTIMATE INTERSECTION DESIGN

PROPOSED TRANSITION STRIPING DESIGN PHASE I

PROPOSED TRANSITION PAVING DESIGN PHASE I

SCALE: 1" = 50'

SHEET 2 OF 8 SHEETS

HIGHWAY 46 TRANSITION
INTERSECTION DESIGN PLAN
STA. 809+80.54 to STA. 824+00

Martin-McIntosh
LAND SURVEYING · CIVIL ENGINEERING



HIGHWAY 46 AND VALLEY ROSE PARKWAY

INCREMENT NO. 0

VICINITY MAP
NOT TO SCALE

SECTION A
NO SCALE

SECTION D
NO SCALE

VALLEY ROSE PLANNED COMMUNITY
HIGHWAY 46 MONUMENT NO. 0
CONSTRUCTION PLANS

SHEET 1

Martin-McIntosh
LAND SURVEYING · CIVIL ENGINEERING

STATE HIGHWAY 46 AND VALLEY ROSE PARKWAY
PROPOSED INTERSECTION DESIGN
STA. 793+00.00 - 823+00.00

MATCHLINE SEE ABOVE

MATCHLINE SEE ABOVE

PROJECT LIMIT

PROJECT LIMIT

MATCHLINE SEE BELOW

MATCHLINE SEE BELOW

CURVE DATA

VICINITY MAP
(NO SCALE)

| SHEET | | HIGHWAY 46 TRANSITION | | | | FOX WHEELAN COURT | Martin-McIntosh |
|---|---|---|---|---|---|---|---|
| 1 | | INTERSECTION DESIGN PLANS | | | | SHAFTER, CALIFORNIA 93263 | |
| OF | SHEETS | STA. 793+00.00 - 823+00.00 | | | | | LAND SURVEYING · CIVIL ENGINEERING |

BP000463



STATE HIGHWAY 46 AND VALLEY ROSE PARKWAY

PROPOSED INTERSECTION DESIGN

INCREMENT #3

INCREMENT #2

INCREMENT #1

BP000464



BP000465

TENTATIVE TRACT MAP No. 5618

BP000466

TENTATIVE TRACT MAP No. 5618

BP000467

"REVISED" TENTATIVE TRACT MAP No. 5618

BP000468

"REVISED" TENTATIVE TRACT MAP No. 5618

BP000469

# CITY OF WASCO
## DEPARTMENT OF PUBLIC WORKS
## OFF-SITE WATER PLANS
## FOR CONSTRUCTION

# VALLEY ROSE
# PLANNED COMMUNITY

VICINITY MAP
SCALE: NO SCALE

KEY MAP
SCALE 1" = 400'

INDEX OF DRAWINGS:

DEVELOPER:
THE LEGACY GROUP

BENCHMARK USED:

APPROVALS:
City of Wasco Department of Public Works

SUBMITTED:
MARTIN-McINTOSH

VALLEY ROSE ESTATES
OFF-SITE WATER
CONSTRUCTION PLAN

Martin-McIntosh
LAND SURVEYING · CIVIL ENGINEERING

BP000470

BP000471

MATCH LINE
SEE SHEET 2

PLAN VIEW

PROFILE

STATE HIGHWAY 46

MATCH LINE
SEE SHEET 4

CONSTRUCTION PLAN

VALLEY POPPY STATION
OFF-SITE WATER

SHEET 3 OF 3 SHEETS

Martin-McIntosh

BP000472

STATE HIGHWAY 46

CONSTRUCTION PLAN

VALLEY POINT ESTATES
OFFSITE WATER

MATCH LINE
SEE SHEET 3

MATCH LINE
SEE SHEET 5

PLAN VIEW

PROFILE

Martin-McIntosh

SHEET 4
OF 5 SHEETS

BP000473

MATCH LINE
SEE SHEET 4

PLAN VIEW

MATCH LINE
SEE SHEET 6

PROFILE

STATE HIGHWAY 46

LEGEND

BP000474

| SHEET 5 OF 11 SHEETS | VALLEY ROSE ESTATES OFF-SITE WATER CONSTRUCTION PLAN | | Martin-McIntosh LAND SURVEYING · CIVIL ENGINEERING |

BP000475

BP000476

BP000477

MATCH LINE
SEE SHEET 8



STATE HIGHWAY 46

PROFILE

PLAN VIEW

VALLEY ROSE ESTATES
OFF-SITE WATER
CONSTRUCTION PLAN

Martin-McIntosh

SHEET
9



℄ STATE HIGHWAY 46
PLAN VIEW
LEONARD AVENUE
PROFILE
LEGEND
LIMITS OF CONSTRUCTION
SEE SHEET 4
LEONARD AVENUE
A.C. DRIVE
10+00
11+00
12+00
13+00
14+00
15+00
SHEET
10
CONSTRUCTION PLAN
7001 WHEELAN COURT
BAKERSFIELD, CALIFORNIA 93309
Martin-McIntosh
LAND SURVEYING · CIVIL ENGINEERING

BP000479

VALLEY ROSE ESTATES
OFF-SITE WATER
DETAIL SHEET

BP000480

BP000481