| | |
|---|---|
| 1 | BONIFACIO B. GARCIA (SBN 100761) |
| | EVA M. PLAZA (SBN 250321) |
| 2 | CHAKA C. OKADIGBO (SBN 224547) |
| | GARCIA CALDERON RUIZ, LLP |
| 3 | 500 S. Grand Avenue, Suite 1100 |
| | Los Angeles, CA 90071 |
| 4 | (213) 347-0210; Fax (213) 347-0216 |
| 5 | Attorneys for Defendant CITY OF WASCO |

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | | |
|---|---|---|
| ROGER McINTOSH. | | Case No: 1:07-CV-01080-LJO-GSA |
| Plaintiffs. | | **DECLARATION OF JAMES ZERVIS IN SUPPORT OF CITY OF WASCO'S MOTION FOR SUMMARY JUDGMENT** |
| vs. | | |
| NORTHERN CALIFORNIA UNIVERSAL ENTERPRISES, INC. *et al.* | | Date:  October 28, 2009 |
| Defendants. | | Time:  8:30 a.m. |
| | | Dept.:  4 |
| | | Judge:  Lawrence J. O'Neill |

I, James Zervis, declare as follows:

1.    I have firsthand personal knowledge of the facts set forth below, except as to those matters attested to on information and belief, and, if called as a witness, could and would competently testify thereto under oath.

2.    I am currently the City Manager for the City of Wasco ("City"). I have served in this capacity since July 7, 2009. As City Manager, I am responsible for the day to day operations of the City and report to the City Council.

3.    Prior to becoming City Manager, I served as an Assistant City Manager from January 21. 2009 through July 26, 2009. Before that, I was the City's Director of Finance from December 10, 2006 through January 20, 2009. In my capacity as Director of Finance, I oversaw the Finance Department, which provides support to the City Manager and City Departments in

1   matters relating to revenue generation, budgetary accounting and reporting, investments,

2   business licenses and purchasing. In addition, the Finance Department is responsible for all

3   utility billing for the City of Wasco. In the case of the Valley Rose Estates Subdivision

4   ("Subdivision"), I am knowledgeable about the City's collection of impact fees and other forms

5   of revenue from the Subdivision.

6       4.      I am aware that in 1993, the City entered into an Acquisition Agreement with the

7   Legacy Group ("Legacy"), a prior developer of the Subdivision. A true and correct copy of the

8   Acquisition Agreement is attached hereto as Exhibit A. This document is a public record in that

9   the City has maintained them during the regular course of business and it has been filed with the

10  Office of the Recorder in Kern County.

11      5.      Under the Acquisition Agreement, Legacy agreed to construct the improvements

12  in the Subdivision and the City agreed to purchase them. Through the Agreement, the City

13  purchased the Subdivision improvements and paid for the Martin-McIntosh improvement plans

14  (Master plans) for the Subdivision.

15      6.      I am also aware that the City once owned the Subdivision as a result of

16  purchasing it at a tax sale in 2002. On or about May 18, 2004, the City sold the Subdivision to

17  Northern California Universal Enterprises Company ("NCUE"). Attached as Exhibit B are true

18  and correct copies of all agreements relating to the City's purchase and sale of the Subdivision to

19  NCUE.

20      7.      Since selling the Subdivision to NCUE, the City has ceased to retain any

21  ownership interests in the Subdivision.

22      8.      The City and NCUE have not entered into any joint venture, partnership, co-

23  ownership or other such arrangement with respect to owning or developing the Subdivision.

24      9.      The City and Lotus Developments, LP, have not entered into any joint venture,

25  partnership, co-ownership or other such arrangement with respect to owning or developing the

26  Subdivision.

27

28

4818-9621-8884                              -2-
DECLARATION OF JAMES ZERVIS IN SUPPORT OF CITY OF WASCO'S MOTION FOR SUMMARY
JUDGMENT

1      10.    The City and Dennis W. DeWalt, Inc. ("DeWalt), NCUE's civil engineer, have

2   not entered into any joint venture, partnership, co-ownership or other such arrangement with

3   respect to owning or developing the Subdivision.

4      11.    To my knowledge, City staff have not advised, encouraged or suggested to

5   persons from NCUE, Lotus Developments, or DeWalt during conversation that any of these

6   entities violate any of Roger McIntosh's copyright interests in the Revised Tentative Map for

7   Tract No. 5472.

8      12.    Similarly, to my knowledge, until it was clear that Plaintiff was on the verge of

9   filing the above-captioned lawsuit against the City, no City staff had ever been advised that

10   NCUE, Lotus Developments, or DeWalt were infringing upon on Roger McIntosh's alleged

11   copyright interests in a prior tentative map and a set of improvement plans created for the

12   Subdivision.

13      13.    The City has collected fees from the Subdivision for reasons established in

14   Chapters 13 and 16 of the Wasco Municipal Code.  I was deposed earlier in this litigation and,

15   during that time, set forth a detailed account of the fees collected and the purposes for which the

16   fees were collected.

17      I declare under penalty of perjury that the foregoing is true and correct.

18      Executed this _29_ th day of September, 2009, at Wasco, California.

19

20

21                            James Zervis

22

23

24

25

26

27

28

DECLARATION OF JAMES ZERVIS IN SUPPORT OF CITY OF WASCO'S MOTION FOR SUMMARY
JUDGMENT

# EXHIBIT A

RECORDED BY
GALE S. ENSTAD
KERN COUNTY RECORDER

Recording Requested by:      038134      90 MAR 17 PM 12: 45

    City of Wasco

When recorded please mail to:

    City of Wasco ( DRU)
    746 Eighth Street
    Wasco, California 93280

## ACQUISITION AGREEMENT

### FOR CERTAIN IMPROVEMENTS TO VALLEY ROSE ESTATES TRACT NOS. 5472 AND 5618

    WHEREAS, the Legacy Group, L.P., a California limited partnership (hereinafter referred to as the "Subdivider") is the legal owner of all of that real property in the City of Wasco, County of Kern, commonly known as Tract Numbers 5472 and 5618, or Valley Rose Estates Subdivision, which is more fully described in Exhibit "A," which is attached hereto and incorporated by this reference (hereinafter referred to as the "Property");

    WHEREAS, the City of Wasco proposes to conduct proceedings pursuant to the Municipal Improvement Act of 1913, with bonds to represent the unpaid assessments to be issued under the Improvement Bond Act of 1915, to pay the cost of acquisition of improvements including, but not limited to, such acquisition as provided herein;

    WHEREAS, the parties desire to agree upon the terms and conditions of construction by the Subdivider and acquisition by the City of Wasco of the Improvements as hereinafter defined and described in Exhibit "B," attached hereto and by this reference

1

Δ π EXHIBIT  11
Deponent Mc Intosh
Date 12-18-08  Rptr. BC.
WWW.DEPOBOOK.COM

incorporated herein.

BOOK 6816 PAGE 2318

WHEREAS, Sections 10010 and 10311.5 of the California Streets and Highways Code contemplate the acquisition by a public agency of subdivision public improvements;

NOW, THEREFORE, based upon the foregoing Recitals and in consideration of the mutual covenants set forth herein, the parties agree as follows:

Section 1. <u>Entire Agreement</u>. This Agreement contains the entire agreement and understanding between the parties with respect to the matters pertaining to the process of acquisition by the City of Wasco of the Improvements. Insofar as any pre-existing agreement between the parties hereto is inconsistent with the terms of this Agreement, but only insofar as any such pre-existing agreement is inconsistent with the terms of this Agreement, such preexisting agreement is amended by this Agreement. In interpreting any existing agreement between the parties and this Agreement, to the extent there is an inconsistency between the terms of this Agreement and any existing agreement, the terms of this Agreement shall be given greater weight and shall prevail.

Section 2. <u>Construction of Improvements</u>. The Subdivider, at the Subdivider's own expense, shall cause to be constructed the improvements more particularly described in Exhibit "B" hereto (the "Improvements"). Exhibit "B" also identifies the approved plans and specifications for such Improvements and incorporates them by reference. The Total Project Cost for the Improvements does not include: (i) Permit fees; (ii) Utility

2

relocations; (iii) the cost of site grading; and (iv) Permits and inspections by other governmental agencies and any agreement fees and bonds that are required by them.

Section 3.   Acquisition of Improvements.   The City of Wasco shall acquire the Improvements from the Subdivider, as follows:

Subsection (a).   Total Project Cost.   For the purpose of this Agreement, the term "Total Project Cost" is defined in Exhibit "B," under which all of the Improvements are eligible and authorized under the applicable statutes of the State of California and the Municipal Code of the City of Wasco.   The Improvements and work provided for in Exhibit "B," including but not limited to any incidental work and Improvements not specifically set forth in said Exhibit "B" but normal and pertinent to such work and Improvements, or necessary to coordinate and connect the Improvements with other improvements of the City of Wasco, are the responsibility of the Subdivider.   The maximum amount of the Total Project Cost shall be FIVE MILLION TWO HUNDRED THOUSAND DOLLARS ($5,200,000.00).

The construction management and administration fees identified in each phase in Exhibit "B," shall, in the aggregate, constitute full compensation to the Subdivider for all costs of construction management and administration, attorney, accountant and other professional services and overhead incurred by the Subdivider in connection with the construction of the Improvements. Any such costs exceeding the amounts set forth in Exhibit "B" shall

3

BOOK 6816 PAGE 2320

not be paid out of District funds, but shall be borne solely by the Subdivider.

Subsection (b). Acquisition of Improvements. The Improvements in this particular project are set forth in Exhibit "B" in the following phases: sewer acquisition; water acquisition; storm drain acquisition; streets acquisition; and street light acquisition costs. Each of these phases is a discrete system which is capable of being completed and accepted by the City for general public use whether or not other portions of the Improvements are completed and accepted by the City, and which the City, in its sole discretion, may consider, determine complete, and accept, for the City Purposes in accordance with the list of Improvements set forth in Exhibit "B." Such consent shall not be unreasonably withheld. The phases need not be completed in any given sequence nor does there need to be the completion of one phase before the beginning of another or any given period of time between the acquisition of one phase and the acquisition of another phase. The process of acquisition consists of:

(i) Acceptance of one particular phase of the Improvements must be in writing by the City of Wasco as issued by Department of Public Works of the City of Wasco. Each phase shall be subject to approval for payment by the City, but such approval shall not be unreasonably withheld; such approval shall be made on behalf of the City by the Director of the Department of Public Works. The Department of Public Works will not issue the letter of

4

BOOK 6816 PAGE 2321

acceptance as to any given phase of construction of the Improvements until such confirmation of inspection and completion has been accomplished.   All inspection and certification as to completion shall be done by the Department of Public Works in accordance with its then current standards for inspection and certification for public works of the City of Wasco.

(ii) The acceptance shall set forth the specific date of acceptance by the City of Wasco of that particular phase. That date shall constitute the date of transfer of ownership of the Improvements which are in that phase. However, the warranty to the City of Wasco as is provided in this Agreement shall begin on the date of the acceptance of any individual phase but the one year time period shall run from the date of the recordation of the Notice of Completion of the last phase of the Improvements. Acceptance of each phase shall follow inspection by the City of Wasco Department of Public Works and written confirmation of completion of the Improvements pursuant to this Agreement by the Department of Public Works.

Subsection (c).  Acquisition Value.  The amount to be paid to the Subdivider for the total of all Improvements (the "Acquisition Value") shall be the actual cost of all of the Improvements, not to exceed the Total Project Cost.

Subsection (d).  Payment for the Improvements.  Any payment for the Improvements is subject to Section 5 hereof.

(i) Within thirty (30) days after the City of Wasco has accepted in writing a particular phase of the

5

BOOK 6816 PAGE 2322

Improvements as complete, in City of Wasco's sole determination and discretion, and provided the Subdivider has submitted the invoices and other documents determined in City of Wasco's sole judgment necessary to establish the actual cost of the Improvements, the City of Wasco shall pay to the Subdivider the Acquisition Value of that phase; provided, however, that (A) the amount paid for the acquisition of any phase of the Improvements shall never exceed the amount set forth for the total cost of that phase in Exhibit "B" and, provided further that (B) if, at the end of the project, the actual cost of a particular phase exceeded the amount budgeted for that phase in Exhibit "B," but the actual cost of another phase was below the budgeted amount in Exhibit "B," then the savings on one phase may be used to offset the deficit incurred by Subdivider in any other phase or phases.   Such correction of payment for one phase by using the savings on another shall not occur until the date of the release of the ten percent retention, as set forth herein.   (C) However, in no event shall the total Acquisition Value ever exceed the Total Project Cost set forth herein, up to and including the end of the construction of all of the Improvements. (D) It is further provided that the Developer shall not submit request for payment of the Construction Management & Supervision portion of any phase until Developer has either supplied the City with the additional MAI appraisal described in Section 5 or has completed the Project in its entirety, whichever comes first.   Once the additional MAI appraisal data has been submitted and accepted by City as adequate, Developer may submit a request for payment of

6

BOOK 6816 PAGE 2323

the Construction Management & Supervision portion of each of the phases which had been completed prior to that time.

(ii) The City of Wasco shall withhold ten percent (10%) of the Acquisition Value of each and every phase until a date which is thirty-five (35) days after the recording of a Notice of Completion with respect to all of the Improvements and shall pay the balance immediately thereafter, exclusive of any lien pursuant to law.

(iii) If a Notice of Completion is not filed within ten (10) days after the date of the City of Wasco's acceptance of the last phase of the Improvements, then the final ten percent (10%) payment shall be made within ninety (90) days after the date of such acceptance. Payment of the amount of any liens withheld from the final ten percent (10%) payment shall be made when any of the following have occurred: (A) the liens have been released, (B) an appropriate bond has been recorded with respect to the liens as required by Civil Code Section 3143, or (C) an appropriate title guarantee has been provided showing title free of such liens.

Subsection (e). Possession. The City of Wasco shall take and have possession of each phase of the Improvements immediately upon the City of Wasco's acceptance thereof and transfer of title as provided in Subsection (b) of Section 3 hereof.

Subsection (f). Repairs and Corrections. The City of Wasco's acceptance of any phase of the Improvements shall

7

BOOK 6816 PAGE 2324

constitute a finding by the City of Wasco that the work in that particular phase of Improvements complies with the plans and specifications therefor. However, in addition to any other rights and remedies the City of Wasco may have in law or equity (including without limitation express or implied warranties), the Subdivider shall be responsible to the City of Wasco for any defects in work or material in connection with the Improvements occurring or appearing within one (1) year after the date of City of Wasco acceptance for public use. The City of Wasco shall give the Subdivider written notice to repair or correct any such defect.

Subsection (g). Warranties. The Subdivider warrants that the Improvements will be free from defects in materials or workmanship and will be suitable for their intended use(s). Subdivider shall remedy or repair, to the satisfaction of the Department of Public Works of City of Wasco, any such defect or unsuitability appearing or occurring within one (1) year after the recordation of the Notice of Completion of the Improvements by the City of Wasco. The one (1) year warranty time period for the Improvements shall begin to run at the recordation of the Notice of Completion of the Improvements by the City of Wasco as provided herein but Subdivider's responsibility to remedy or repair shall in fact commence at the time of the acceptance of the individual phase by the City of Wasco. The Subdivider shall require each contractor, subcontractor and materialman employed in connection with the Improvements to name the City of Wasco as a beneficiary of any warranty or guarantee given by such contractor, subcontractor

8

or materialman in connection with their work, materials or supplies.

  Section 4. Limited Liability of the City of Wasco. The City of Wasco's obligation to acquire the Improvements is not backed by the full faith and credit of the City of Wasco but is limited solely to the funds available to the City of Wasco in the District, if any, as a result of the proceedings for formation of the District, confirmation of assessments and receipt of proceeds from the issuance of bonds. Any funds committed by the City of Wasco as a contribution, grant, subvention,. or otherwise are not available for the purpose of this Agreement unless and until assessments have been confirmed under proceedings for the District and bonds validly issued pursuant thereto. The City of Wasco cannot and does not assert, imply or guarantee the success of the proceedings or the ability to sell bonds. Sale of any bonds is subject to the sole judgement of the Finance Director of the City of Wasco that such sale is economically viable and an unqualified opinion for issuance is provided by Bond Counsel to the City of Wasco for the District.

  Notwithstanding the preceding paragraph, in addition to any other remedies or provisions under this Agreement, if the Subdivider fails or refuses to construct or complete the Improvements within a reasonable period of time after the acceptance by the City of one or more phases, the City may, but shall not be obligated to, complete the Improvements or any remaining phases thereof, as provided by law and pay the costs of

9

BOOK 6816 PAGE 2326

such completion out of proceeds of the assessment district proceedings.

Section 5. **Appraisal:** The Subdivider shall submit written evidence satisfactory to the City of Wasco, and the City of Wasco shall find and determine that the total estimated amount of the proposed assessment for acquisitions, work and improvements under the proposed assessment proceedings will not exceed a lien-to-value ratio of 1:3 based on the estimated fair market value of the Property after the Improvements shall have been constructed using the MAI Appraisal. The City of Wasco may withhold payment of any portion of the funds that may be eligible for payment hereunder and release payment up to the amount permitted under this section. Prior to the payment of any funds permitted under this section, the City of Wasco shall require a MAI Appraisal or an amended MAI Appraisal verifying that the amount of funds to be disbursed, including funds previously disbursed, does not exceed lien-to-value ratio of 1:3.

Section 6. **Assignment and Successors In Interest.** None of the obligations or benefits of this Agreement shall be assignable by the Subdivider without the prior written consent of the City of Wasco. However, this Agreement shall be binding upon and inure to the benefit of the parties' heirs, executors, administrators, successors, and assigns.

Section 7. **Notices.** Any notices required to be given pursuant to this Agreement shall be given in writing and shall be mailed to the parties at the following addresses:

10

BOOK 6816 PAGE 2327

```
City of
Wasco: City Manager            with a
          City of Wasco        copy to:  Special Counsel
          746 Eighth Street              Richard H. Hargrove
          Wasco, CA  93280               7108 North Fresno St.
                                         Fresno, CA 93720-2938

Subdivider: The Legacy Group, L.P.
            16000 Ventura Boulevard, Suite 1200
            Encino, CA  91436
```

Section 8.   Indemnity.  The Subdivider shall indemnify, hold harmless and defend the City of Wasco and each of its officers, officials and employees from any and all liability, loss, debts, costs, and damages (whether in contract, tort or strict liability, including but not limited to personal injury, death at any time, property damage and damages for breach of contract or warranty) incurred by the City of Wasco, the Subdivider or any other person, and from any and all claims, demands, actions and proceedings in law or equity (whether or not well-founded) brought by the Subdivider or any other person, arising directly or indirectly out of (i) any act, omission or contract of the Subdivider or any of its contractors, subcontractors, materialmen or employees in connection with construction of the Improvements, or (ii) any defects in materials or workmanship in the Improvements.  The preceding sentence shall not apply to any liability, loss, debts, costs or damages caused solely by the negligence or willful misconduct of the City of Wasco.

Section 9.   Applicable Laws.  It is further understood that the Subdivider is responsible for compliance with all applicable laws including, but not limited to the Labor Code, Public Contract Code and Government Code of the State of

11

Description: Kern,CA Document-Book.Page 6816.2317 Page: 11 of 18
Order: SAL Comment:

BOOK 6816 PAGE 2328

California.  City makes no representation as to the applicability or inapplicability of any laws regarding contracts, and especially the payment of prevailing wages thereunder.  Subdivider will not hold or seek to hold City liable for any failure by Subdivider to comply with any such laws without regard to whether City knew, could have known, or should have known as to the necessity of such compliance.  The preceding section shall apply in regard to any enforcement action, whether public or private, and whether brought by a public enforcement agency or by private civil litigation, against City with regard to the content of this section.

Section 10.  Attorneys' Fees.  If either party is required to commence any legal action or proceeding to enforce the provisions of this Agreement, the prevailing party shall be entitled to recover its attorneys' fees and litigation expenses from the other party.  The parties acknowledge that City of Wasco has incurred certain legal costs in the negotiation and drafting of this Acquisition Agreement and so hereby agree to reimburse City of Wasco for these costs.

Section 11.  Time of Essence.  Time is of the essence of this Agreement and each and every provision hereof.

Section 12.  Integration.  This is intended to be a fully integrated agreement which contains the entire agreement between the parties with respect to the matters pertaining to the process of acquisition by the City of the Improvements.

12

BOOK 6816 PAGE 2329

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed on the ___28th___ day of January, 1993.

CITY:                                    SUBDIVIDER:

City of Wasco                            The Legacy Group, L.P., a
                                         Limited Partnership

By: _____                    By: _____
    Mayor of the City of                      General Partner
    Wasco

ATTEST:

By: _____
    City Clerk

APPROVED AS TO FORM:

By: _____
    Richard H. Hargrove, Special
    Counsel

710318EF.A03

13

BOOK 6816 PAGE 2330

NO. 205

## ALL-PURPOSE ACKNOWLEDGMENT

State of **CALIFORNIA**

County of **LOS ANGELES**

On **Mar. 9, 1993** before me, **SANDI STENDEL**
DATE                        NAME, TITLE OF OFFICER - E.G., "JANE DOE, NOTARY PUBLIC"

personally appeared **MICHAEL S. BROWN**
                        NAME(S) OF SIGNER(S)

☒ personally known to me - OR - ☐ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

[Notary Seal:
SANDI STENDEL
COMM. #980565
Notary Public — California
LOS ANGELES COUNTY
My Comm. Expires DEC 13, 1996]

*Sandi Stendel*
SIGNATURE OF NOTARY

### CAPACITY CLAIMED BY SIGNER

☐ INDIVIDUAL(S)
☐ CORPORATE
  OFFICER(S) _____
                    TITLE(S)
☒ PARTNER(S)
☐ ATTORNEY-IN-FACT
☐ TRUSTEE(S)
☐ SUBSCRIBING WITNESS
☐ GUARDIAN/CONSERVATOR
☐ OTHER: _____
_____
_____

SIGNER IS REPRESENTING:
NAME OF PERSON(S) OR ENTITY(IES)
**The Legacy Group**

ATTENTION NOTARY: Although the information requested below is OPTIONAL, it could prevent fraudulent attachment of this certificate to unauthorized document.

| THIS CERTIFICATE MUST BE ATTACHED TO THE DOCUMENT DESCRIBED AT RIGHT: | | |
|---|---|---|
| Title or Type of Document | **Acquisition Agreement** | |
| Number of Pages **17** | Date of Document **1/28/93** | |
| Signer(s) Other Than Named Above **Yes** | | |

© 1991 NATIONAL NOTARY ASSOCIATION • 8236 Remmet Ave. • P.O. Box 7184 • Canoga Park, CA 91304-7184

---

No. 5183

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of **CALIFORNIA**

County of **KERN**

On **Mar.11,1993** before me, **Carol L. Hosman, Notary Public**
   DATE                    NAME, TITLE OF OFFICER - E.G., "JANE DOE, NOTARY PUBLIC"

personally appeared **Fred L. West Jr.**
                        NAME(S) OF SIGNER(S)

☒ personally known to me - OR - ☐ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

[Notary Seal:
CAROL L. HOSMAN
COMM. #955593
NOTARY PUBLIC - CALIFORNIA
KERN COUNTY
My Comm. Expires FEB. 9, 1995]

*Carol R. Hosman*
SIGNATURE OF NOTARY

### OPTIONAL SECTION
### CAPACITY CLAIMED BY SIGNER
Though statute does not require the Notary to fill in the data below, doing so may prove invaluable to persons relying on the document.

☐ INDIVIDUAL
☐ CORPORATE OFFICER(S)
                    TITLE(S)
☐ PARTNER(S) ☐ LIMITED
              ☐ GENERAL
☐ ATTORNEY-IN-FACT
☐ TRUSTEE(S)
☐ GUARDIAN/CONSERVATOR
☒ OTHER: **Public Agency**
        **Mayor**

SIGNER IS REPRESENTING:
NAME OF PERSON(S) OR ENTITY(IES)
**City of Wasco**

### OPTIONAL SECTION

| THIS CERTIFICATE MUST BE ATTACHED TO THE DOCUMENT DESCRIBED AT RIGHT: | | |
|---|---|---|
| TITLE OR TYPE OF DOCUMENT | **Acquisition Agreement** | |
| NUMBER OF PAGES **17** | DATE OF DOCUMENT **1/28/93** | |
| SIGNER(S) OTHER THAN NAMED ABOVE **Yes** | | |

Though the data requested here is not required by law, it could prevent fraudulent reattachment of this form.

©1992 NATIONAL NOTARY ASSOCIATION • 8236 Remmet Ave., P.O. Box 7184 • Canoga Park, CA 91309-7184

BOOK 6816 PAGE 2331

EXHIBIT A

## DESCRIPTION OF THE PROPERTY

**VALLEY ROSE ESTATES— TRACT NOS. 5472 AND 5618**

The subject property may be legally described as:

Parcels 1 and 3 of Parcel Map No. 9572, in the City of Wasco,
County of Kern, State of California.

710318EF.E05

A-1

Description: Kern,CA Document-Book.Page 6816.2317 Page: 15 of 18
Order: SAL Comment:

BOOK 6816 PAGE 2332

## EXHIBIT B
### DESCRIPTION OF IMPROVEMENTS

**A.**   Acquisition of Master Plans:

   Drainage
   Sewer
   Water
   Traffic
   Utilities

   $499,080.33

**B.**   Tract 5472

   Storm Drain                     $ 61,120.00
   Sewer                             96,310.00
   Water                             79,207.00
   Street Improvement               147,803.00
   Utilities (gas)                   83,989.00
   Miscellaneous                     56,025.00
   Contract Administrative Fee

                                   $

**C.**   Tract 5618

   Storm Drain               $    191,530.00
   Sewer                          361,550.00
   Water                          453,300.00
   Street                       1,216,195.00
   Utilities (gas)                353,257.00
   Miscellaneous                  350,213.00
   Contract Administrative Fee

                                   $

**D.**   Combined Off-Site Improvements

   Storm Drain               $     71,488.00
   Sewer                          328,175.00
   Water                          473,800.00
   Street                         255,758.00
   Utilities                       14,066.00
   Miscellaneous                   29,625.00
   Contract Administrative Fee

   18 Phases of Acquisition


710318EF.D24        GRAND TOTAL        $5,200,000.00

BOOK 6816 PAGE 2333

LEGACY GROUP
ASSESSMENT DISTRICT EXPENSES
FOR ACQUISITION OF MASTER PLANS

| | | |
|---|---|---|
| 04/27/92 | Bruce Beaudoin, MAI (Appraisal Deposit) | 10,800.00 |
| 05/01/92 | Colman Christensen (Const. & Mgmt Fees) | 2,500.00 |
| 06/01/92 | Colman Christensen (Const. & Mgmt Fees) | 2,500.00 |
| 07/01/92 | Colman Christensen (Const. & Mgmt Fees) | 5,000.00 |
| 07/31/92 | Soils Engineering | 9,147.25 |
| 08/01/92 | Colman Christensen (Const. & Mgmt Fees) | 5,000.00 |
| 08/10/92 | Kern County Treasurer (William Act Cancel) | 50,000.00 |
| 08/19/92 | Howard Berkson (Feasibility for Appraisal) | 15,000.00 |
| 09/01/92 | Colman Christensen (Const. & Mgmt Fees) | 5,000.00 |
| 09/18/92 | John Eastridge (Utilities Plan) | 385.00 |
| 09/18/92 | John Eastridge (Utilities Plan) | 1,042.00 |
| 09/22/92 | City of Wasco (Quad Engineering) | 436.98 |
| 09/24/92 | G.T. Farms (Reservoir Grading) | 2,419.50 |
| 10/01/92 | Colman Christensen (Const. & Mgmt Fees) | 5,000.00 |
| 10/06/92 | City of Wasco (Legal Fees) | 3,662.80 |
| 10/07/92 | City of Wasco (Williamson Act Cancel) | 724.65 |
| 10/14/92 | City of Wasco (Quad Engineering) | 841.00 |
| 10/14/92 | City of Wasco (Legal Publication) | 52.65 |
| 11/01/92 | Colman Christensen (Const. & Mgmt Fees) | 5,000.00 |
| 11/06/92 | City of Wasco (Impact Fee) | 1,290.00 |
| 11/18/92 | City of Wasco (Quad Engineering) | 945.50 |
| 12/02/92 | Colman Christensen (Const. & Mgmt Fees) | 5,000.00 |
| 01/01/93 | Colman Christensen (Const. & Mgmt Fees) | 5,000.00 |
| 01/01/93 | S.A. Camp Pump Co. (Well Sample & Analysis) | 594.00 |

TOTAL FOR EXPENSES

$137,341.33

TOTAL FOR ENGINEERING COSTS

$361,739.00

TOTAL FOR CONSTRUCTION AND EXPENSES

$499,080.33

710318EF.D23

ACQUISITION OF MASTER PLANS

BOOK 6816 PAGE 2334

| | PROJECT NUMBER | DESCRIPTION | | % REIMB. | TOTAL COST | REIMB. COST |
|---|---|---|---|---|---|---|
| | | ENGINEERING COSTS | | | DATE: | 26-Jan-93 |
| | | VALLEY ROSE ESTATES | | | COSTS THRU: | 15-Dec-92 |
| | | | | | BY: | RJS |
| 1 | 9222-00 | Guidance Fee & Conceptual | | 100% | 1223.00 | 1223.00 |
| 2 | 9222-01-01 | Boundary & Topo Survey | (A) | 30% | 24287.15 | 7286.15 |
| 3 | 9222-01-02 | Rte 46 Survey | | 100% | 4547.17 | 4547.17 |
| 4 | 9222-01-03 | Offsite Sewer Survey | | 100% | 6388.72 | 6388.72 |
| 5 | 9222-01-04 | Offsite Water Survey | | 100% | 10449.15 | 10449.15 |
| 6 | 9222-02-01 | Land Use Plan | (G) | 30% | 35528.89 | 10658.97 |
| 7 | 9222-02-02 | Design Guidelines | | 100% | 1378.57 | 1378.57 |
| 8 | 9222-02-03 | Development Agreement | | 100% | 20761.00 | 20761.00 |
| 9 | 9222-02-04 | Water Master Plan | | 100% | 16601.50 | 16601.50 |
| 10 | 9222-02-05 | Sewer Master Plan | | 100% | 24678.12 | 24678.12 |
| 11 | 9222-02-06 | Drainage Master Plan | | 100% | 12967.73 | 12967.73 |
| 12 | 9222-02-07 | Traffic Master Plan | | 100% | 16785.51 | 16785.51 |
| 13 | 9222-03 | Williamson Act Cancellation | | 100% | 4281.05 | 4281.05 |
| 14 | 9222-04-01 | Tract #5472-Class Map | (C) | 60% | 9523.72 | 19117.27 |
| 15 | 9222-04-02 | Tract #5472-Streets & Wells | | 100% | 49188.18 | 49188.18 |
| 16 | 9222-04-03 | Tract #5472-Drainage Plans | | 100% | 2826.88 | 2826.88 |
| 17 | 9222-04-04 | Tract #5472-Grading Plan | (C) | 60% | 8934.22 | 5360.53 |
| 18 | 9222-04-05 | Tract #5472-Sewer Plan | (D) | 80% | 12902.00 | 10321.60 |
| 19 | 9222-04-06 | Tract #5472-Water Plan | (D) | 80% | 4226.06 | 3380.85 |
| 20 | 9222-04-07 | Tract #5472-Final  Map | (B) | 0% | 12889.50 | 0.00 |
| 21 | 9222-04-08 | Tract #5472-Landscape Plans | | 100% | 23789.62 | 23789.62 |
| 22 | 9222-04-08 | Tract #5472-Plant. Design | | 100% | 3736.82 | 3736.82 |
| 23 | 9222-05-01 | Tract #5618-Tentative Map | (B) | 0% | 11665.74 | 0.00 |
| 24 | 9222-05-02 | Tract #5618-Street Plans | | 100% | 45755.52 | 45755.52 |
| 25 | 9222-05-03 | Tract #5618-Drainage Plans | | 100% | 3752.48 | 3752.48 |
| 26 | 9222-05-04 | Tract #5618-Grading Plan | (C) | 60% | 9658.08 | 5794.85 |
| 27 | 9222-05-05 | Tract #5618-Sewer Plans | (D) | 80% | 2618.98 | 2095.19 |
| 28 | 9222-05-06 | Tract #5618-Water Plans | (D) | 80% | 1783.78 | 1427.02 |
| 29 | 9222-05-07 | Tract #5618-Final  Map | (B) | 0% | 6704.72 | 0.00 |
| 30 | 9222-05-08 | Tract #5618-Zone Change | | 100% | 150.00 | 150.00 |
| 31 | 9222-05-09 | Tract #5618-Landscape Plans | | 100% | 3385.80 | 3385.80 |
| 32 | 9222-05-10 | Tract #5618-Revise Tent Map | | 0% | 2506.20 | 0.00 |
| 33 | 9222-05-11 | Tract #5618-Revise Grading | | 100% | 39.30 | 39.30 |
| 34 | 9222-05-12 | Tract #5618-Revise Final Map | | 0% | 39.30 | 0.00 |
| 35 | 9222-05-13 | Tract #5618-Revise Plot Plan | (E) | 0% | 1852.00 | 0.00 |
| 36 | 9222-06-01 | PM #9572-Tentative Map | (F) | 0% | 7723.49 | 0.00 |
| 37 | 9222-06-02 | PM #9572-Final Map | (F) | 0% | 17924.48 | 0.00 |
| 38 | 9222-09 | Offsite Sewer Plans | | 100% | 36401.06 | 36401.06 |
| 39 | 9222-10 | Offsite Water Study & Plans | | 100% | 17802.64 | 17802.64 |
| 40 | 9222-11 | Offsite Highway Plans | | 100% | 30758.03 | 30758.03 |
| | | TOTALS | | | | 361,739.00 |
| | | | | Recoverable portion: | | |

[A]- Boundary and topo survey work was also performed for  additional property not owned
by the client. Therefore, that cost is not reimbursable.

Page 1

# EXHIBIT B

EXHIBIT "3"

PURCHASE AND SALE AGREEMENT

AND JOINT ESCROW INSTRUCTIONS

This Purchase and Sale Agreement and Joint Escrow Instructions ("Agreement"), dated as of April 6th, 2004 is entered into by and between WASCO PROJECT LLC ("Buyer"), and CITY OF WASCO ("Seller");

WHEREAS, Seller is the sole owner in fee of two parcels of real property which contain approximately +/- 97.57 acres which are located in the City of Wasco, and are more particularly described in Exhibit "A" attached hereto and incorporated herein by this reference (the "Property"); and

WHEREAS, the Property is subject to over Four Million Dollars in Assessment Liens; and

WHEREAS, the Property has been partially developed and is currently in a blighted condition; and

WHEREAS, the best use of the Property is for private development; and

WHEREAS, it is for the public benefit that said Property be sold; and

WHEREAS, Buyer desires to purchase from Seller and Seller desires to sell to Buyer the Property on the terms and conditions set forth herein.

Buyer and Seller hereby agree as follows:

1.    Purchase and Sale. Upon, and subject to the terms and conditions set forth in this Agreement, Seller hereby agrees to sell to Buyer and Buyer hereby agrees to buy from Seller the following property (collectively, the "Property"); that certain real property located in the County of Kern, State of California, more particularly described in Exhibit "A" attached hereto, together with all easements, hereditaments and appurtenances therein, and all improvements situated thereon, and all other rights and interests in connection with the foregoing.

2.    Purchase Price. The purchase price for the Property (the "Purchase Price") shall be $ 1,950,000.00

3.    Method of Payment of Purchase Price. The Purchase Price shall be paid by Buyer to Seller upon the Closing (as that term is defined in Paragraph 4.2, below). Buyer shall make the following deposits into the Escrow (as defined in Paragraph 4.1, below):

3.1   Deposit. Buyer shall deposit into the Escrow, at the Opening, the sum of $ 195,000.00 (10% of the Purchase Price) (the "Deposit"). Escrow Holder (as defined in Paragraph 4.1, below) shall invest the Deposit in an interest-bearing account and the interest earned on such account shall be applied as provided in this Agreement.

3.2   Cash At Closing. Buyer shall deposit into the Escrow in the form of cash, a certified or bank cashier's check or a confirmed wire transfer of funds, on or before the Closing Deadline, the balance of the Purchase Price remaining after deduction of the Deposit (and interest earned thereon in Escrow). The amount payable by Buyer pursuant to this Paragraph 3.2 shall be adjusted as necessary to reflect the costs and prorations payable pursuant to Paragraph 4.7 below.

4.   Escrow.

4.1   Opening; Joint Instructions. Within five (5) days after the execution of this Agreement, Buyer and Seller shall open an escrow (the "Escrow") with Fidelity National Title Company, whose address is 110 New Stine Road, Bakersfield, California ("Escrow Holder"), by delivering to Escrow Holder a fully-executed copy of this Agreement (the "Opening"). The purchase and sale of the Property shall be completed through the Escrow. This Agreement, together with the provisions of Exhibit "B" attached hereto and incorporated herein by this reference, shall constitute joint escrow instructions to the Escrow Holder in connection with the Escrow. In the event of any inconsistency between the typed provisions of this Agreement and the provisions of Exhibit "B", the typed provisions of this Agreement shall prevail.

4.2   Additional Instructions. Buyer and Seller hereby agree to execute such additional instructions not inconsistent with this Agreement as may be reasonably required by the Escrow Holder.

4.3   Closing Deadline. The Grant Deed (as defined in Paragraph 4.4, below) shall be recorded and the Escrow shall close (the "Closing") as soon as possible after the satisfaction of all of the conditions contained in this Agreement, including but not limited to Section 7.1, but in no event later than June 1st, 2004 (the "Closing Deadline"). Time is specifically of the essence as to the Closing Deadline, and the Closing Deadline shall not be extended except by the mutual written agreement of Buyer and Seller.

4.4   Seller's Closing Documents. Seller shall deliver to the Escrow Holder, on or before the date two (2) business days prior to the Closing Deadline, the following documents:

(a)   a Grant Deed to the Property duly executed and acknowledged by the Seller in favor of Buyer and in recordable form (the "Grant Deed"); and

(b)   other instruments and documents that may be required by the Escrow Holder to transfer the Property to Buyer.

4.5     Actions at Closing.     At the Closing, the Escrow Holder shall do the following:

(a)     Prorate all matters in accordance with Paragraph 4.7, below, based on the latest available information.

(b)     Cause the Grant Deed to be recorded in the Official Records of the county in which the Property is located.

(c)     Deduct from funds deposited with the Escrow Holder by Buyer in payment of the Purchase Price for the Property for the amount of items chargeable to the account of Seller pursuant to this Agreement;

(d)     The remaining balance of the funds deposited by Buyer into the Escrow in payment of the Purchase Price shall be disbursed for the benefit of the Seller promptly upon the Closing in accordance with separate escrow instructions to be provided to the Escrow.

(e)     Deliver or cause to be delivered to Buyer an original of the owner's policy of title insurance, or commitment therefor, to be issued pursuant to Paragraph 5.2, below, and deliver to Buyer a conformed copy of the Grant Deed.

4.6     Cancellation of Escrow.

(a)     In the event that the Closing does not occur at the time and in the manner provided in this Agreement due to the material failure of Buyer to comply with any of its obligations under this Agreement ("Buyer Default"), Seller shall have the right to cancel the Escrow by written notice to Buyer and the Escrow Holder, and upon such cancellation all costs of cancellation of the Escrow, including without limitation the cost of the preliminary title report furnished to Buyer pursuant to Paragraph 5.1, below (collectively, the "Cancellation Costs"), shall be paid by Buyer.

(b)     In the event that the Closing does not occur at the time and in the manner provided in this Agreement due to the material failure of Seller to comply with any of its obligations under this Agreement ("Seller Default"), Buyer shall have the right to cancel the Escrow by written notice to Seller and the Escrow Holder, and upon such cancellation the Cancellation Costs shall be paid by Seller, and the Escrow Holder shall refund to Buyer the Deposit and all interest earned thereon in Escrow.

(c)     In the event that the Closing does not occur at the time and in the manner provided in this Agreement for any reason other than a Buyer Default or a Seller Default, either Buyer or Seller may, at any time after the Closing Deadline, cancel the Escrow by written notice to the Escrow Holder and to the other; and upon such cancellation, the Cancellation Costs shall be divided equally between Buyer and Seller, and Escrow Holder shall refund to Buyer the Deposit and all interest earned thereon in Escrow.

(d)    Upon any cancellation of the Escrow, all instruments and documents deposited into the Escrow shall be returned to the parties who deposited the same, and any amounts deposited into the Escrow by Buyer pursuant to Paragraph 3, above, shall be returned to Buyer.

4.7    Closing Costs and Prorations.  The costs incidental to the Closing shall be paid as follows:

(a)    Seller shall pay:  (i) the cost of the preliminary title report furnished to Buyer pursuant to Paragraph 5.1, below; (ii) the premium for the CLTA standard coverage owner's policy of title insurance obtained pursuant to Paragraph 5.2, below (provided that if Buyer elects to obtain an ALTA extended coverage policy of title insurance or any endorsements to the policy of title insurance pursuant to Paragraph 5.2, below, Buyer shall pay the additional premium for such policy over the premium for a CLTA policy and the additional premium for any endorsements to the policy of title insurance); (iii) the documentary transfer tax on the Grant Deed; and (iv) the Escrow Holder's fees in connection with the Escrow.

(b)    Buyer shall pay:  (i) the cost of recording the Grant Deed; (ii) one-half (1/2) of the Escrow Holder's fees in connection with the Escrow; and (iii) the additional premium for an ALTA extended coverage policy of title insurance over the premium for a CLTA policy, in the event that Buyer elects to obtain an ALTA policy pursuant to Paragraph 5.2, below, and the additional premium for any endorsements to the policy of title insurance.

(c)    Buyer and Seller shall each pay their own legal fees and other incidental expenses incurred in connection with the transaction contemplated by this Agreement.

(d)    Any other costs or expenses in connection with the transactions contemplated by this Agreement shall be apportioned in the manner customary in the County in which the Property is located.

(e)    As between Buyer and Seller only, Buyer shall be responsible for all real and personal property taxes and assessments for the Property relating to the period commencing on or after the Closing, and the Seller shall be responsible for all real and personal property taxes and assessments for the Property relating to the period prior to the Closing, if any.

5.    Title.

5.1    Preliminary Title Report.  Seller shall furnish Buyer, as soon as available, a preliminary title report for the Property prepared by Fidelity National Title Company (the "Title Company"), together with copies of the documents described in such report (collectively, the "Title Documents").  Buyer shall have ten (10) business days after receipt of the Title Documents (the "Title Approval Period") to approve the same.  If Buyer fails to deliver a written notice disapproving the Title Documents to the Escrow

W02-LA:1-YLW0663279.1                                    -4-

Company on or before the last day of the Title Approval Period, Buyer shall be conclusively deemed to have approved the Title Documents and the exceptions contained therein. If Buyer timely disapproves the Title Documents, Buyer at its option may (a) cancel the Escrow and this Agreement by written notice to Seller and the Escrow Holder, in which case the Cancellation Costs shall be paid by Seller, or (b) permit Seller to remove the objectionable items from title. If Seller does not remove such items before the Closing Deadline, Buyer at its option may (x) waive its objection and close the transaction or (y) cancel the Escrow and this Agreement by written notice to Seller and the Escrow Holder, in which case the Cancellation Costs shall be paid by Seller.

5.3    Title Insurance.  At the time of the Closing and as a condition thereto, the Escrow Holder shall deliver to Buyer an original of either a CLTA standard coverage owner's policy of title insurance issued by the Title Company or an unconditional and unqualified commitment by the Title Company to issue such a policy, naming Buyer as insured, in a policy amount equal to the Purchase Price, showing title to the Property to be vested in Buyer, subject only to (a) non-delinquent taxes and assessments (provided that the lien of all current and future assessments for the Wasco Assessment District 1992-2 (Valley Rose Estates) ("Assessment Liens") shall be released concurrently with the Closing), and (b) the exceptions contained in the Title Documents approved or deemed approved by Buyer pursuant to Paragraph 5.1, above. Buyer shall have the right to elect to receive an ALTA owner's extended coverage policy of title insurance with the same liability amount and subject only to the exceptions described in (a) and (b), above in this Paragraph 5.2, in lieu of such CLTA policy, provided that Buyer pays the difference in premium and any costs of required new surveys attributable to such policy and provided further that the procurement of such policy shall not result in an extension of the Closing Deadline. Notwithstanding the foregoing, the Seller shall have no obligation to remove or eliminate any lien or encumbrance affecting title to the Property, including but not limited to the assessment liens.

6.    Buyer's Conditions.  The following shall constitute conditions to the obligations of Buyer under this Agreement:

6.1    Title Insurance.  Receipt by Buyer of a title insurance policy in the manner provided in Paragraph 5.2, above.

6.2    Inspections.  Approval by Buyer, on or before the date ten (10) business days after the Opening (the "Inspection Period"), of all conditions of, and other matters related to, the Property, specifically including the following matters, which shall be deemed approved unless Seller receives written notice of disapproval on or before the last day of the Inspection Period:

(a)    The physical condition of the Property, including without limitation soil conditions, the absence from the Property of asbestos and other hazardous and toxic materials, compliance of the Property with all applicable laws, including any laws relating to hazardous and toxic materials. Seller shall cause the Owners to allow Buyer and/or its agents access to the Property to perform any and all investigations and inspections desired by Buyer, provided that

Buyer shall indemnify and hold Seller and the Owners harmless from and against any and all claims, demands, losses, obligations, costs and expenses (including attorneys' fees and costs) resulting from such entry; and

(b)    All applicable government ordinances, rules and regulations and evidence of Seller's compliance therewith, including without limitation zoning and building regulations, and all licenses, permits and other governmental approvals and/or authorizations relating to the Property, including the suitability of the Property for Buyer's intended use and/or development; and

(c)    All costs and economic feasibility of Buyer's use and/or intended development of the Property.

The foregoing indemnity in Section 6.2(a) by Buyer shall survive the Close of Escrow and the recordation of the Grant Deed, or the earlier termination of this Agreement.

6.3    AS-IS Transaction. Buyer hereby acknowledges and agrees that Seller has made no representations or warranties, express or implied, as to the Property or improvements or contract rights or entitlements relating thereto, or as to the condition, state of repair or fitness for use of the Property or such improvements or appurtenances, and (ii) Buyer shall, following satisfaction of the conditions contained in this Paragraph 6 , accept title to the Property and any improvements thereon or appurtenances thereto "AS IS" and without warranty, express or implied. Buyer acknowledges that Seller has not induced Buyer to execute and deliver this Agreement based upon any representations or warranties of Seller and that Buyer is relying upon Buyer's own independent investigation of the Property in entering into this Agreement and purchasing the Property.

6.4    Subdivision Site. Seller and Buyer acknowledge that the Property is in a blighted condition and is an old subdivision site that has not been completed which contains infrastructure improvements that have been constructed and Buyer accepts the responsibility for taking any and all actions necessary regarding security and maintenance of the improvements. Buyer further acknowledges that the Subdivision Map has not been finalized and that the time for finalizing said Map has expired and it is Buyer's responsibility to obtain a new subdivision map or maps for the Property.

7.    Seller's Condition. The obligations of the Seller under this Agreement shall be conditioned upon the Seller obtaining all appropriate releases of the Assessment Liens from all interested parties thereto, including, without limitation, obtaining any court orders or other instructions with respect to such Assessment Liens or any related public financing that it may determine necessary, in its sole discretion. Failure of Seller to obtain releases of the Assessment Liens or court orders will not be considered an event of default by Seller.

7.1    CONDITIONS PRECEDENT TO CITY CONVEYANCE. Prior to, and as conditions to the City Conveyance, the following conditions shall be completed:

(a)    Prior to April 15th, 2004, the Buyer shall submit to the Seller evidence that the Buyer has obtained sufficient equity capital and firm and binding

commitments for interim and/or permanent financing necessary for the purchase of the Property in accordance with this Agreement. Such evidence of financing shall include copies of all conditional and firm financing commitments and any permanent financing commitments or other documents that indicate Buyer's ability to finance the purchase of the Property. Conditional commitments shall be firm and binding commitments subject only to standard conditions required by the lender. Proof of funding, acceptance of each loan commitment by Buyer and proof of payment of all loan commitment fees required to fund the financing commitments and proof of funding of equity capital contributions shall also be required.

(b)     Material Default.     Buyer shall not be in material default of any provision of this Agreement.

(c)     Settlement Agreement and Mutual Release.     The Seller shall enter into a Settlement Agreement and Mutual Release with Michael Richardson and Badger Technology, Inc. and all the terms and conditions of said Agreement shall be satisfied by May 21st, 2004.

(d)     Workout Agreement. The Seller shall enter into a satisfactory agreement with U.S. Bank National Association in its capacity as the Trustee for the Wasco Public Financing Authority 1989 Local Agency Revenue Bonds, Series A and the Assessment District No. 1992-2 Assessment District Bonds, Michael Richardson and Badger Technology, Inc, and all the terms and conditions of said agreement shall be satisfied by May 21st, 2004.

8.     Buyer's Indemnity/Release.     Buyer hereby agrees, following the Closing, to indemnify and hold Seller harmless from and against any and all claims, demands, losses, obligations, costs and expenses (including without limitation attorneys' fees and court costs) which arise out of (a) the ownership or operation of the Property after the Closing, or (b) any alleged presence upon the Property of, or any required remediation of, any hazardous or toxic materials. In addition, Buyer hereby waives, releases and forever discharges Seller of and from any and all claims of any kind whatsoever, at law or in equity, known or unknown, which Buyer has ever had, now has, or hereafter can have arising out of any condition of or matter related to the Property, specifically including the alleged presence upon the Property of, or any required remediation of, any hazardous or toxic materials. Buyer hereby agrees to waive the benefits of Section 1542 of the Civil Code of the State of California, which provides as follows:

"A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him, must have materially affected his settlement with the debtor."

9.     Possession.     Upon the Closing, Seller shall cause possession of the Property to be delivered to Buyer.

10.   Representations and Warranties of Buyer.   Buyer hereby represents and warrants to Seller as follows:

(a)   Buyer has full authority to enter into this Agreement and all documents executed by Buyer which are to be delivered to Seller at the Closing are or at the time of Closing will be duly authorized, executed and delivered by Buyer and do not and at the time of Closing will not violate any provisions of any agreement or judicial order to which Buyer is a party or to which Buyer or the Property is subject.

(b)   The Buyer does not have any material contingent obligations or any material contractual agreements which could materially adversely affect the ability of the Buyer to carry out its obligations in this Agreement.

(c)   There are no material pending or, so far as is known to the Buyer, threatened legal proceedings to which the Buyer is or may be made a party or to which any of its property is or may become subject, which has not been fully disclosed in the material submitted to the Seller which could materially and adversely affect the ability of the Buyer to carry out its obligations in this Agreement.

(d)   Buyer has the full financial where with all to secure financial commitments to be able to purchase the Property on the terms and conditions set forth in this Agreement.

(e)   The Buyer shall maintain the improvements on the Property and shall keep the Property free from any accumulation of debris, weeds, or waste materials.

(f)   The Buyer covenants and agrees for itself, its successors, its assigns and every successor-in-interest to the Property or any part thereof, there shall be no discrimination against or segregation of any person, or group of persons, on account of sex, marital status, race, color, religion, creed, national origin, ancestry or handicap in the sale, lease, sublease, transfer, use, occupancy, tenure or enjoyment of the Property, nor shall the Buyer, itself or any person claiming under or through it, establish or permit any such practice or practices of discrimination or segregation with reference to the selection, location, number, use or occupancy of tenants, lessees, subtenants, sublessees or employees.

11.   Liquidated Damages on Buyer Default.   AS USED IN THIS AGREEMENT, "BUYER DEFAULT" SHALL MEAN THE FAILURE OF BUYER TO COMPLY WITH ANY PROVISION HEREOF AND SHALL INCLUDE ANY FAILURE OF THE CLOSING TO OCCUR (AFTER SATISFACTION OF THE CONDITIONS SET FORTH IN PARAGRAPH 6, ABOVE) AT THE TIME AND IN THE MANNER PROVIDED IN THIS AGREEMENT FOR ANY REASON OTHER THAN THE MATERIAL FAILURE OF SELLER TO COMPLY WITH ANY OF ITS OBLIGATIONS UNDER THIS AGREEMENT. BUYER AND SELLER HEREBY ACKNOWLEDGE AND AGREE THAT, IN THE EVENT OF A BUYER

DEFAULT, SELLER WILL SUFFER DAMAGES IN AN AMOUNT WHICH WILL, DUE TO THE SPECIAL NATURE OF THE TRANSACTION CONTEMPLATED BY THIS AGREEMENT AND THE SPECIAL NATURE OF THE NEGOTIATIONS WHICH PRECEDED THIS AGREEMENT, BE IMPRACTICAL OR EXTREMELY DIFFICULT TO ASCERTAIN. IN ADDITION, BUYER WISHES TO HAVE A LIMITATION PLACED UPON THE POTENTIAL LIABILITY OF BUYER TO SELLER IN THE EVENT OF A BUYER DEFAULT, AND WISHES TO INDUCE SELLER TO WAIVE OTHER REMEDIES WHICH SELLER MAY HAVE IN THE EVENT OF A BUYER DEFAULT. BUYER AND SELLER, AFTER DUE NEGOTIATION, HEREBY ACKNOWLEDGE AND AGREE THAT THE AMOUNT OF THE DEPOSIT, TOGETHER WITH INTEREST EARNED THEREON IN ESCROW, REPRESENTS A REASONABLE ESTIMATE OF THE DAMAGES WHICH SELLER WILL SUSTAIN IN THE EVENT OF SUCH BUYER DEFAULT. BUYER AND SELLER HEREBY AGREE THAT SELLER MAY, IN THE EVENT OF A BUYER DEFAULT, TERMINATE THIS AGREEMENT AND THE ESCROW BY WRITTEN NOTICE TO BUYER AND RETAIN THE DEPOSIT, TOGETHER WITH INTEREST EARNED THEREON IN ESCROW, AS LIQUIDATED DAMAGES. SUCH RETENTION OF THE DEPOSIT AND INTEREST EARNED THEREON IN ESCROW BY SELLER IS INTENDED TO CONSTITUTE LIQUIDATED DAMAGES TO SELLER PURSUANT TO SECTIONS 1671, 1676 AND 1677 OF THE CALIFORNIA CIVIL CODE, AND SHALL NOT BE DEEMED TO CONSTITUTE A FORFEITURE OR PENALTY WITHIN THE MEANING OF SECTION 3275 OR SECTION 3369 OF THE CALIFORNIA CIVIL CODE, OR ANY SIMILAR PROVISIONS. FOLLOWING THE TERMINATION OF THIS AGREEMENT, CANCELLATION OF THE ESCROW AND RETENTION OF THE DEPOSIT AND INTEREST EARNED THEREON IN ESCROW AS LIQUIDATED DAMAGES PURSUANT TO THIS SECTION 10, ALL OF THE RIGHTS AND OBLIGATIONS OF BUYER AND SELLER UNDER THIS AGREEMENT SHALL BE TERMINATED. RETENTION OF THE DEPOSIT AND INTEREST EARNED THEREON IN ESCROW AND TERMINATION OF THIS AGREEMENT AND THE ESCROW AS PROVIDED HEREIN SHALL BE SELLER'S SOLE AND EXCLUSIVE REMEDY IN THE EVENT OF BUYER DEFAULT, AND SELLER EXPRESSLY WAIVES ITS RIGHT TO SPECIFIC ENFORCEMENT OF THIS AGREEMENT IN SUCH EVENT.

BUYER AND SELLER ACKNOWLEDGE THAT THEY HAVE READ AND UNDERSTAND THE PROVISIONS OF THIS SECTION 9 AND BY THEIR INITIALS IMMEDIATELY BELOW AGREE TO BE BOUND BY ITS TERMS.

"Seller":                                          "Buyer":

City of Wasco

12.    Seller Default.    If there is a material default by Seller under this Agreement (which remains uncured ten (10) days after notice from Buyer to Seller), then Buyer may, at its sole remedy hereunder, terminate this Agreement upon written notice to Seller and Escrow Holder, in which case the Deposit shall be paid to Buyer and each party shall be released from all obligations hereunder, provided, however, Buyer shall be entitled to receive reimbursement from Seller for its actual "out-of-pocket" costs and expenses incurred in connection with its investigation of the Property, in no event to exceed $10,000.00. The foregoing remedies are the.

W02-LA:LYL:70363279.1

-9-

only remedies of Buyer hereunder in the event of Seller's default under this Agreement, and Buyer shall not be entitled to, and hereby waives all right to seek any other damages, specific performance, or any other remedies that otherwise may be available at law or in equity to it. Under no circumstances shall Buyer have the right to file a lis pendens against the Property.

13.    Notices.  All notices, approvals, disapprovals or elections required or permitted to be given under this Agreement shall be in writing and shall be delivered personally, or mailed, certified or registered mail, return receipt requested, or sent by Federal Express or other professional courier, to the parties at the following addresses:

If to Buyer:  WASCO PROJECT LLC
              PO BOX 17268
              MILL CREEK WA 98082

Attention:    MEL RADFORD
Telephone:    425 - 297 - 8426
Fax:          425 - 297 - 7970
Email:        MEL RADFORD@ ATT NET

If to Seller:  City of Wasco
               P.O. Box 190
               Wasco, CA 93280
               Attention: Dan G. Good, City Clerk
               Telephone:    (661) 758-7200
               Fax:          (661) 758-5411
               Email: NGGIBSON@CI.WASCO.CA.US

And a copy to:

               Wall, Wall & Peake
               1601 "I" Street
               P.O. Box 2307
               Bakersfield, CA 93303
               Attention:    Alan J. Peake, Esq.
               Telephone:    (661) 327-8461
               Fax:          (661) 327-8363
               Email: ajpesq@pacbell.net

Personally delivered and courier-delivered notices shall be deemed given upon actual personal delivery or tender of delivery to the intended recipient. Mailed notices shall be deemed given upon the date of actual delivery or tender of delivery as evidenced by the return receipt.

14.    Attorneys' Fees.  In the event of any action between Buyer and Seller for enforcement or interpretation of any of the terms or conditions of this Agreement, the prevailing party in such action shall be entitled to recover its reasonable costs and expenses, including without limitation court costs and attorneys' fees actually incurred, as awarded by a court of competent jurisdiction.

W02-J:\LYL\70\42079.1                        -10-

15.   Brokers.   Except for   RADFORD & ASSOCIATES INC., A WASHINGTON CORP. ("Broker"), who shall be paid Three Hundred Thousand   ($ 300,000.00)   by Buyer when the Property is transferred, each party represents and warrants to the other that no broker or real estate agent has been engaged by it in connection with this Agreement or the subject transaction.   Buyer shall be solely responsible for any commission due to Broker.   Buyer and Seller each hereby indemnify and hold the other harmless from and against all costs, expenses or liabilities (including without limitation attorneys' fees and court costs, whether or not taxable and whether or not any action is prosecuted to judgment) incurred by the indemnified party in connection with any claim or demand by any person or entity for any broker's, finder's or other commission or fee in connection with the indemnifying party's entry into this Agreement and the transactions contemplated hereby.

16.   Effect and Duration Covenants, Conditions and Obligations which are for Seller's Benefit.   The covenants established in this Agreement and the Grant Deed shall, without regard to technical classification and designation, be binding for the benefit and in favor of the Seller, its successors, and assigns, as to those covenants which are for its benefit.   The covenants contain in this Agreement and the Grant Deed (Attachment No. 3) shall remain in perpetuity.

The Seller is deemed the beneficiary of the terms and provisions of this Agreement and of the covenants running with the land, for and in its own rights and for the purposes of protecting the interests of the community and other parties, public or private, in whose favor and for whose benefit this Agreement and the covenants running with the land have been provided. The Agreement and the covenants shall run in favor of the Seller without regard to whether the Seller has been, remains or is an owner of any land or interest therein in the Property.   The Seller shall have the right, if the Agreement or covenants are breached, to exercise its rights and remedies, and to maintain any actions or suits at law or in equity or other proper proceedings to enforce the curing of such breaches to which it or any other beneficiaries of this Agreement and covenants may be entitled.

17.   Continuation and Survival of Representations, Warranties and Covenants.   All representations and covenants by the respective parties contained herein or made, in writing pursuant to this Agreement are intended to and shall remain true and correct as of the Close of Escrow, shall be deemed to be material, and shall survive the execution and delivery of this Agreement, the delivery of the Grant Deed and transfer of title.

18.   Conflict of Interest.   No member, official or employee of the Seller shall have any personal interest, direct or indirect, in this Agreement nor shall any such member, official or employee participate in any decision relating to the Agreement which affects his or her personal interests or the interests of any corporation, partnership or association in which he or she is directly or indirectly interested.

19.   Non-Liability of Seller Officials and Employees.   No member, official, employee, consultant, Attorney, or independent contractor of the Seller shall be personally liable to the Buyer, or any successor-in-interest, in the event of any default or breach by the Seller or for any amount which may become due to the Buyer, or to its successor, or on any obligations under the terms of this Agreement.

WI2-LA:LYLY70552279.1

-11-

20. **INVALIDITY OF TERMS.** It is hereby declared to be the intention of the parties that the sections, paragraphs, sentences, clauses and phrases of this Agreement are severable, and if any phrase, clause, sentence, paragraph or section of this Agreement shall be declared unconstitutional, invalid or unenforceable by a judgment or decree of a court of competent jurisdiction, such unconstitutionality, invalidity or unenforceability shall not affect any of the remaining clauses, sentences, paragraphs and sections of this Agreement.

21. **TIME FOR ACCEPTANCE OF AGREEMENT BY SELLER.** This Agreement, when executed by the Buyer and delivered to the Seller must be authorized, executed and delivered by the Seller within thirty (30) days after the date of signature by the Buyer or this Agreement may be terminated by the Buyer on written notice to the Seller. The date of this Agreement shall be the date when the Agreement shall have been signed by the Seller.

/ / /

/ / /

/ / /

/ / /

22.   **Miscellaneous.** This Agreement, together with the documents described and referred to herein, contains all of the agreements of Buyer and Seller with regard to the transactions contemplated hereby, and supersedes all prior agreements, understandings and negotiations, whether written or oral. This Agreement shall not be modified or amended except by an instrument in writing duly executed by both Buyer and Seller. This Agreement may be executed in counterparts either by original signature or facsimile thereof, each of which shall be deemed to be an original, and all counterparts shall together constitute the Agreement. The provisions of this Agreement shall be binding upon and shall inure to the benefit of the successors in interest and assigns of Buyer and Seller; provided, however, that Buyer shall have no right to assign its rights or obligations hereunder without the express prior written consent of Seller. This Agreement shall be governed by and construed in accordance with the laws of the State of California. The paragraph headings and captions in this Agreement are for convenience only and shall not limit or define the contents of this Agreement. This Agreement shall survive the Closing, and shall not merge into the Grant Deed upon recordation. Time is of the essence of this Agreement. As used in this Agreement, "business day" shall mean any day except Saturday, Sunday or a day on which banking institutions in California are required or allowed to close for business.

IN WITNESS WHEREOF, Seller and Buyer have caused this Agreement to be duly executed as of the date first above written.

"Buyer"

WASCO   PROJECT   LLC

By: _____ (NEIL RADFORD)
                              (JAMES COUNARD)

Its: _____ MANAGING MEMBERS

"Seller"

CITY OF WASCO

By: _____
        Danny Espitia
Its:   Mayor

ATTEST:

_____
City Clerk

## ASSIGNMENT OF PURCHASE AND SALE AGREEMENT

This Assignment of Purchase and Sale Agreement (the "Agreement") is entered into as of May 18th, 2004 by and between the City of Wasco, a municipal corporation ("City"), Wasco Project, LLC. ("Assignor") and Northern California Universal Enterprises, a California Limited Partnership ("Assignee") with reference to the following facts:

A.   The City and Assignor have entered into that certain Purchase and Sale Agreement dated April 6th, 2004 ("Purchase Agreement") with respect to property commonly known as Valley Rose Estates as more specifically described in the Purchase Agreement ("Property").

B.   Assignor is not able to obtain financing to complete the purchase of the Property as required under the Purchase Agreement and Assignor is currently in default under the Purchase Agreement.

C.   Assignor desires to assign all of its rights and obligations under the Purchase Agreement to avoid liability for being in default under the Purchase Agreement.

D.   Assignee desires to purchase the Property and is willing to accept assignment of Assignor's rights and obligations under the Purchase Agreement so long as certain amendments to the Purchase Agreement are made.

E.   Assignor has entered into other agreements in which the City is a party, which Assignor will not be able to meet the terms and conditions of and which will also need to be assigned to Assignor.

NOW THEREFORE, in consideration of the foregoing, of the mutual promises of the parties hereto and for other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, the parties mutually agree as follows:

1.   Assignment by Assignor.  The Assignor hereby assigns and delegates to the Assignee, and the Assignee hereby accepts from the Assignor, all of the Assignor's rights, title and interest in and any and all obligations under the Purchase Agreement.

2.   Acceptance of Assignment.  The Assignee hereby accepts the above assignment and hereby assumes, agrees and undertakes to perform all of the obligations, covenants and promises of the Assignors pursuant to the Purchase Agreement.  Any reference to the Assignor, in the Purchase Agreement shall be deemed a reference to the Assignee.  The Assignee shall reimburse the Assignor for any amount paid by the Assignor under any of the agreements, contracts and proposals described above.

3.   Release of Assignor.  The City hereby consents to the assignment by Assignor to Assignee and to the release of the Assignor from all obligations imposed under the Purchase Agreement.

4.    Effective Date. The assignment set forth above shall be effective as of the date of this Agreement.

5.    Additional Assignments. As additional consideration of the execution of this Agreement, the parties will execute the Assignment of the Supplemental Golf Course Bonds Agreement attached hereto as Exhibit "1" and the assignment of the Workout Agreement attached hereto as Exhibit "2".

6.    Amendment to Purchase Agreement. The City and Assignee agree to amend the Purchase Agreement as set forth in Exhibit "3".

7.    Cooperation. The Parties acknowledge that it may be necessary to execute additional documents or take additional actions other than those specifically referred to herein in order to complete the assignment contemplated by this Agreement. Therefore, each party hereto agrees to cooperate with each other by executing such other documents or taking such other action as may be reasonably necessary to complete the transactions contemplated by this Agreement in accordance with the intent of the parties as evidenced in this Agreement.

8.    Amendment. This Agreement may be amended only by a written instrument executed by the parties hereto or their successors in interest.

9.    Integration. This Agreement constitutes the entire agreement between the parties hereto pertaining to the subject matter hereof and all prior and contemporaneous agreements, representations, negotiations and understandings of the parties hereto, oral or written are hereby superseded and merged herein.

10.   Representations and Warranties. Each of the parties hereto represents and warrants to each other party hereto that the execution and delivery of this Agreement and the performance of their obligations hereunder have been duly authorized and that this Agreement is a valid and legal agreement binding on him, her or it and enforceable in accordance with its terms. Each of the parties hereto each also represents and warrants to each other party hereto that he, she or it has not assigned any rights or claims against any of the other parties hereto to any third party.

11.   Interpretation: The provisions of this Agreement shall be construed and interpreted neutrally, as if drafted by all parties, and shall not be construed or interpreted as against any party hereto.

12.   Counterparts: The Agreement may be executed in counterparts, each of which, when executed and delivered, shall be deemed to be an original, but such counterparts together constitute one and the same document.

13.   Facsimile. Except for documents that must be recorded on real property title records, facsimile copies of signed documents shall be deemed originals for all purposes.

14.   Governing Law.  California law shall apply for purposes of enforcement and interpretation of this Agreement.

15.   Time is of the Essence.  Time is of the essence with regard to each covenant, condition and provision of this Agreement.

16.   Attorneys' Fees.  In any proceeding brought by any party to this Agreement regarding the terms, conditions, obligations, and/or covenants of this Agreement, the prevailing party shall be entitled to recover its reasonable attorney's fees and costs of litigation in addition to any other relief awarded in such proceeding.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first written above.

**ASSIGNOR**

Wasco Project, LLC

By:_____
Name:_____
Its:_____

By:_____
Name:_____
Its:_____

**ASSIGNEE**

Northern California Universal Enterprises

By:_____
Name:_____
Its:_____

**CITY**

City of Wasco

By:_____
Name: DANNY ESPITIA
Its:_____ Mayor

C:\files\wasco\agreements\vreassignmentpurchase.agr

14. <u>Governing Law.</u> California law shall apply for purposes of enforcement and interpretation of this Agreement.

15. <u>Time is of the Essence.</u> Time is of the essence with regard to each covenant, condition and provision of this Agreement.

16. <u>Attorneys' Fees.</u> In any proceeding brought by any party to this Agreement regarding the terms, conditions, obligations, and/or covenants of this Agreement, the prevailing party shall be entitled to recover its reasonable attorney's fees and costs of litigation in addition to any other relief awarded in such proceeding.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first written above.

**ASSIGNOR**

Wasco Project, LLC

By:_____
Name:_____
Its:_____

By:_____
Name:_____
Its:_____

**ASSIGNEE**

Northern California Universal Enterprises

By:_____
Name:_____
Its:_____

**CITY**

City of Wasco

By:_____
Name:_____
Its:_____

O:\files\wasco\agreements\vroassignmentpurchase.agr

<u>AMENDMENT TO PURCHASE AND SALE AGREEMENT</u>

This Amendment Agreement ("Agreement") is entered into as of May 18th, 2004 by and between the City of Wasco, a municipal corporation ("City") and Northern California Universal Enterprises, a California limited partnership ("Northern") with reference to the following facts:

A.    The City and Wasco Project, LLC. entered into that certain Purchase and Sale Agreement ("Purchase Agreement") dated as of April 6th, 2004.

B.    The Purchase Agreement was assigned to Northern on the condition that certain amendments were made to the Purchase Agreement.

C.    Section 22 of the Purchase Agreement provides that it can be modified in writing.

NOW THEREFORE, based upon the foregoing, the parties agree that Sections 2, 3.1, 4.3, 7.1(a) (c) and (d), 13 and 15, shall be modified as follows:

2.    <u>"Purchase Price.</u> The purchase price for the Property (the "Purchase Price") shall be $1,605,000.00."

"3.1    <u>Deposit.</u>  Buyer shall deposit into the Escrow, at the Opening, the sum of $160,500.00 (10% of the Purchase Price) (the "Deposit). Escrow Holder (as defined in Paragraph 4.1 below) shall invest the Deposit in an interest-bearing account and the interest earned on such account shall be applied as provided in this Agreement." As part of the consideration for this Agreement, the Deposit shall be non-refundable and retained by Seller if Buyer does not purchase the Property by the Closing Deadline.

"4.3    <u>Closing Deadline</u>.  The Grant Deed (as defined in Paragraph 4.4, below) shall be recorded and the Escrow shall close (the "Closing") as soon as possible after the satisfaction of all of the conditions contained in this Agreement, including but not limited to Section 7.1, but in no event later than  November 1st, 2004 (the "Closing Deadline"). Time is specifically of the essence as to the Closing Deadline, and the Closing Deadline shall not be extended except by the mutual written agreement of Buyer and Seller."

"7.1(a)    <u>Financing</u>.  Prior to June 1st, 2004, the Buyer shall submit to the Seller evidence that the Buyer has obtained sufficient equity capital and firm and binding commitments for interim and/or permanent financing necessary for the purchase of the Property in accordance with this Agreement. Such evidence of financing shall include copies of all conditional and firm financing commitments and any permanent financing commitments or other documents that indicate Buyer's ability to finance the purchase of the Property. Conditional commitments shall be firm and binding commitments subject only to standard conditions required by the lender. Proof of funding acceptance of each loan commitment by Buyer and proof of payment of all loan commitment fees required to fund the financing commitments and proof of funding of equity capital contributions shall also be required."

"7.1(c)    <u>Settlement Agreement and Mutual Release.</u>  The Seller shall enter into a Settlement Agreement and Mutual Release with Michael Richardson and Badger Technology, Inc. and all the terms and conditions of said Agreement shall be in full force and effect for the duration of this Agreement"

"7.1(d)    <u>Workout Agreement</u> The Seller shall enter into a satisfactory agreement with U.S. Bank National Association in its capacity as the Trustee for the Wasco Public Financing Authority 1989 Local Agency Revenue Bonds Series A and the Assessment District No. 1992-2 Assessment District Bonds, Michael Richardson and Badger Technology, Inc. and all

the terms and conditions of said agreement shall be in full force and effect for the duration of this Agreement."

13.        "....

> If to Buyer:    Northern California Universal Enterprises
>
> _____  2278 Trade Zone Blvd._
>
> _____  San Jose, CA  95131_
>
> Attention:_____ Mr. Joe Wu___
>
> Telephone:  (408) 946-7856  "

"15.     Brokers. Except for Darrell Sousa of Sperry Van Ness Commercial Real Estate, ("Broker"), who shall be paid One Hundred Thousand Dollars ($100,000) by Buyer when the Property is transferred, each party represents and warrants to the other that no broker or real estate agent has been engaged by it in connection with this Agreement or the subject transaction.  Buyer shall be solely responsible for any commission due to Broker.  Buyer and Seller each hereby indemnify and hold the other harmless from and against all costs, expenses or liabilities (including without limitation attorneys' fees and court costs, whether or not taxable and whether or not any action is prosecuted to judgment) incurred by the indemnified party in connection with any claim or demand by any person or entity for any broker's, finder's or other commission or fee in connection with the indemnifying party's entry into this Agreement and the transactions contemplated hereby."

All other terms and provisions of the Purchase Agreement, which are not expressly modified by this amendment shall remain in full force and effect.

NORTHERN CALIFORNIA
UNIVERSAL ENTERPRISES

By:_____ _attached_____
_____

APPROVED AND RECOMMENDED

By:_____ _Larry Pennell_____
Larry Pennell, City Manager

APPROVED AS TO FORM

By:_____
Alan J. Peake, City Attorney

CITY OF WASCO

By:_____
Danny Espitia, Mayor

c:\files\wasco\agreements\vrepurchase0521clean.amd

05/17/2004  16:19    3279568                          WA                    PAGE  02/03
04/04/1999  21:06    2095933010                       SPERRY  VAN  NESS      PAGE  02

04/04/1999  03:30    2095933010               SPERRY  VAN  NESS         PAGE  01

## AMENDMENT TO PURCHASE AND SALE AGREEMENT

This Amendment Agreement ("Agreement") is entered into as of May 15th, 2004 by and between the City of Wasco, a municipal corporation ("City") and Northern California Universal Enterprise, a California limited partnership ("Northern") with reference to the following facts:

A.   The City and Wasco Project, LLC, entered into that certain Purchase and Sale Agreement ("Purchase Agreement") dated as of April 6th, 2004.

B.   The Purchase Agreement was assigned to Northern on the condition that certain amendments were made to the Purchase Agreement.

C.   Section 22 of the Purchase Agreement provides that it can be modified in writing.

NOW THEREFORE, based upon the foregoing, the parties agree that Sections 2, 3.1, 4.3, 7.1(a) (c) and (d), 13 and 15, shall be modified as follows:

2.       "Purchase Price. The purchase price for the Property (the "Purchase Price") shall be $1,605,000.00."

"3.1      Deposit. Buyer shall deposit into the Escrow, at the Opening, the sum of $160,500.00 (10% of the Purchase Price) (the "Deposit). Escrow Holder (as defined in Paragraph 4.1 below) shall invest the Deposit in an interest-bearing account and the interest earned on such account shall be applied as provided in this Agreement."

"4.3      Closing Deadline. The Grant Deed (as defined in Paragraph 4.4, below) shall be recorded and the Escrow shall close (the "Closing") as soon as possible after the satisfaction of all of the conditions contained in this Agreement, including but not limited to Section 7.1, but in no event later than  November 1, 2004 (the "Closing Deadline").  Time is specifically of the essence as to the Closing Deadline, and the Closing Deadline shall not be extended except by the mutual written agreement of Buyer and Seller."

"7.1(a)   Financing.  Prior to June 1st, 2004, the Buyer shall submit to the Seller evidence that the Buyer has obtained sufficient equity capital and firm and binding commitments for interim and/or permanent financing necessary for the purchase of the Property in accordance with this Agreement.  Such evidence of financing shall include copies of all conditional and firm financing commitments and any permanent financing commitments or other documents that indicate Buyer's ability to finance the purchase of the Property.  Conditional commitments shall be firm and binding commitments subject only to standard conditions required by the lender.  Proof of funding acceptance of each loan commitment by Buyer and proof of payment of all loan commitment fees required to fund the financing commitments and proof of funding of equity capital contributions shall also be required."

"7.1(c)   Settlement Agreement and Mutual Release.  The Seller shall enter into a Settlement Agreement and Mutual Release with Michael Richardson and Badger Technology, Inc. and all the terms and conditions of said Agreement shall be in full force and effect for the duration of this Agreement"

"7.1(d)   Workout Agreement. The Seller shall enter into a satisfactory agreement with U.S. Bank National Association in its capacity as the Trustee for the Wasco Public Financing Authority 1999 Local Agency Revenue Bonds Series A and the Assessment District No.

*3d*

I  P.  NO. 446                                                               MAY. 13, 2004  4:30PM

05/17/2004  16:19  3278568                          WA                      PAGE  03/03
05/04/1999  21:06  2095933010                       SPERRY VAN NESS         PAGE  04

04/04/1999  03:26  2095933010                       SPERRY VAN NESS         PAGE  03


1992-2 Assessment District Bonds, Michael Richardson and Badger Technology, Inc. and all
the terms and conditions of said agreement shall be in full force and effect for the duration of
this Agreement."

13.     "....

        If to Buyer:    Northern California Universal Enterprises

                        3278 Trade Zone Blvd.

                        San Jose, CA  95131

        Attention:      Mr. Joe Wu

        Telephone:  (408) 945-7858  "


"16.    Brokers. Except for Darrell Souza of Sperry Van Ness Commercial Real Estate,
("Broker"), who shall be paid One Hundred Thousand Dollars ($100,000) by Buyer when the
Property is transferred, each party represents and warrants to the other that no broker or real
estate agent has been engaged by it in connection with this Agreement or the subject
transaction. Buyer shall be solely responsible for any commission due to Broker. Buyer and
Seller each hereby indemnify and hold the other harmless from and against all costs,
expenses or liabilities (including without limitation attorneys' fees and court costs, whether or
not taxable and whether or not any action is prosecuted to judgment) incurred by the
indemnified party in connection with any claim or demand by any person or entity for any
broker's, finder's or other commission or fee in connection with the indemnifying party's entry
into this Agreement and the transactions contemplated hereby."

All other terms and provisions of the Purchase Agreement, which are not expressly modified by
this amendment shall remain in full force and effect.

NORTHERN CALIFORNIA
UNIVERSAL ENTERPRISES

By:_____        5-24-04



APPROVED AND RECOMMENDED


By:_____
    Larry Pennell, City Manager


APPROVED AS TO FORM                         CITY OF WASCO


By:_____                By:_____
    Alan J. Peake, City Attorney                Danny Espitia, Mayor


NO. 446   P. 5                              MAY. 13. 2004  4:32PM

MAY. 24. 2004  4:16PM    NOR CAL UFC                                    NO. 901    P.  1

## AMENDMENT TO PURCHASE AND SALE AGREEMENT



This Amendment Agreement ("Agreement") is entered into as of May 18th, 2004 by and between the City of Wasco, a municipal corporation ("City") and Northern California Universal Enterprises, a California limited partnership ("Northern") with reference to the following facts:

A.   The City and Wasco Project, LLC, entered into that certain Purchase and Sale Agreement ("Purchase Agreement") dated as of April 6th, 2004.

B.   The Purchase Agreement was assigned to Northern on the condition that certain amendments were made to the Purchase Agreement.

C.   Section 22 of the Purchase Agreement provides that it can be modified in writing.

NOW THEREFORE, based upon the foregoing, the parties agree that Sections 2, 3.1, 4.3, 7.1(a) (c) and (d), 13 and 15, shall be modified as follows:

2.   "Purchase Price.   The purchase price for the Property (the "Purchase Price") shall be $1,605,000.00."

"3.1   Deposit.   Buyer shall deposit into the Escrow, at the Opening, the sum of $160,500.00 (10% of the Purchase Price) (the "Deposit"). Escrow Holder (as defined in Paragraph 4.1 below) shall invest the Deposit in an interest-bearing account and the interest earned on such account shall be applied as provided in this Agreement." As part of the consideration for this Agreement, the Deposit shall be non-refundable and retained by Seller if Buyer does not purchase the Property by the closing deadline.

"4.3   Closing Deadline.   The Grant Deed (as defined in Paragraph 4.4, below) shall be recorded and the Escrow shall close (the "Closing") as soon as possible after the satisfaction of all of the conditions contained in this Agreement, including but not limited to Section 7.1, but in no event later than   November 1st, 2004 (the "Closing Deadline"). Time is specifically of the essence as to the Closing Deadline, and the Closing Deadline shall not be extended except by the mutual written agreement of Buyer and Seller."

"7.1(a)   Financing.   Prior to June 1st, 2004, the Buyer shall submit to the Seller evidence that the Buyer has obtained sufficient equity capital and firm and binding commitments for interim and/or permanent financing necessary for the purchase of the Property in accordance with this Agreement. Such evidence of financing shall include copies of all conditional and firm financing commitments and any permanent financing commitments or other documents that indicate Buyer's ability to finance the purchase of the Property. Conditional commitments shall be firm and binding commitments subject only to standard conditions required by the lender. Proof of funding acceptance of each loan commitment by Buyer and proof of payment of all loan commitment fees required to fund the financing commitments and proof of funding of equity capital contributions shall also be required."

"7.1(c)   Settlement Agreement and Mutual Release.   The Seller shall enter into a Settlement Agreement and Mutual Release with Michael Richardson and Badger Technology, Inc. and all the terms and conditions of said Agreement shall be in full force and effect for the duration of this Agreement"

"7.1(d)   Workout Agreement   The Seller shall enter into a satisfactory agreement with U.S. Bank National Association in its capacity as the Trustee for the Wasco Public Financing Authority 1989 Local Agency Revenue Bonds Series A and the Assessment District No. 1992-2 Assessment District Bonds, Michael Richardson and Badger Technology, Inc. and all

MAY. 24. 2004  4:17PM      NOR CAL UEC                                    NO. 901   P. 2

the terms and conditions of said agreement shall be in full force and effect for the duration of this Agreement."

13.      "....

If to Buyer:    Northern California Universal Enterprises

            2278 Trade Zone Blvd.

            San Jose, CA  95131

Attention:    Mr. Joe Wu

Telephone:  (408) 946-7856  "

"15.      Brokers. Except for Darrell Sousa of Sperry Van Ness Commercial Real Estate, ("Broker"), who shall be paid One Hundred Thousand Dollars ($100,000) by Buyer when the Property is transferred, each party represents and warrants to the other that no broker or real estate agent has been engaged by it in connection with this Agreement or the subject transaction. Buyer shall be solely responsible for any commission due to Broker. Buyer and Seller each hereby indemnify and hold the other harmless from and against all costs, expenses or liabilities (including without limitation attorneys' fees and court costs, whether or not taxable and whether or not any action is prosecuted to judgment) incurred by the indemnified party in connection with any claim or demand by any person or entity for any broker's, finder's or other commission or fee in connection with the indemnifying party's entry into this Agreement and the transactions contemplated hereby."

All other terms and provisions of the Purchase Agreement, which are not expressly modified by this amendment shall remain in full force and effect.

NORTHERN CALIFORNIA
UNIVERSAL ENTERPRISES

By:_____  5/24/09

APPROVED AND RECOMMENDED

By:_____
    Larry Pennell, City Manager

APPROVED AS TO FORM

By:_____
    Alan J. Peake, City Attorney

c:files\wasco\agreements\vrepurchase0521clean.amd

CITY OF WASCO

By:_____
    Danny Espitia, Mayor