# EXHIBIT Z    Okadigbo Dec

# Title 13 PUBLIC SERVICES

Chapters:
13.04  Underground Utility Districts
13.06  Sanitation Impact Fee
13.08  Water Rates
13.10  Water System Impact Fee
13.12  Sewers
13.14  Sewer Service Charges
13.16  Sewer Connection Charges
13.18  Southside Infrastructure Sewer Facility Fee
13.19  Northside Infrastructure Sewer and Water Facility Fees
13.21  Valley Rose Estates Infrastructure Sewer and Water Facility Fees
13.24  Traffic Impact Fee Ordinance

## Chapter 13.04  UNDERGROUND UTILITY DISTRICTS*

Sections:
13.04.010  Definitions.
13.04.020  Hearing--Procedure.
13.04.030  Creation--Requirements.
13.04.040  Compliance required--Exceptions.
13.04.050  Emergency or unusual circumstances--Exception to provisions.
13.04.060  Applicability of provisions.
13.04.070  Notice to property owners and utility companies.
13.04.080  Utility company responsibility.
13.04.090  Property owner responsibility.
13.04.100  City responsibility.
13.04.110  Extension of time limit.
13.04.120  Violation--Penalty.

* For statutory provisions on conversion of utility facilities to underground locations, see Str. and Hwys. Code §5896.1 et seq. and Gov. Code §38733.

## 13.04.010 Definitions.

Whenever in this chapter the words or phrases defined in this section are used, they shall have the respective meanings assigned to them in the following definitions:

A.  "Commission" means the Public Utilities Commission of the state of California.

B.  "Person" means and includes individuals, firms, corporations, partnerships, and their agents and employees.

C.  "Poles, overhead wires and associated overhead structures" means poles, towers, supports, wires, conductors, guys, stubs, platforms, crossarms, braces, transformers, insulators, cutouts, switches, communication circuits, appliances, attachments and appurtenances located aboveground within a district and used or useful in supplying electrical, communication or similar or associated service.

D.  "Underground utility district" or "district" means that area in the city within which poles, overhead wires and associated overhead structures are prohibited, as such area is described in a resolution adopted pursuant to the provisions of Section 13.04.030 of this chapter.

E.  "Utility" includes all persons or entities supplying electrical, communication or similar or associated service by means of electrical materials or devices.

(Ord. 141 § 1, 1968).

## 13.04.020 Hearing--Procedure.

The council may from time to time call public hearings to ascertain whether the public necessity, health, safety or welfare requires the removal of poles, overhead wires and associated overhead structures within designated areas of the city and the under-ground installation of wires and facilities for supplying electrical, communication or similar or associated service. The city clerk shall notify all affected property owners, as shown on the last equalized assessment roll, and utilities concerned, by mail, of the time and place of such hearings at least fifteen days prior to the date thereof. Each such hearing shall be open to the public and may be continued from time to time. At each such hearing all persons interested shall be given an opportunity to be heard. The decision of the council shall be final and conclusive.

(Ord. 78 § 1(B), 1978; Ord. 141 § 2, 1968).

## 13.04.030 Creation--Requirements.

A. If after any public hearing the council finds that the public necessity, health, safety or welfare requires removal and underground installation within a designated area, the council shall initiate proceedings for a conversion, by either a petition or a determination by the council. In order to initiate these proceedings the council shall describe the proposed assessment district, as provided for in Section 5181 of the Streets and Highways Code of the state of California, request that the proceedings: for such conversion be taken pursuant to this section, generally describe the proposed conversion, and make a determination that the city or public utility has voluntarily agreed to pay over fifty percent of all costs of conversion, excluding costs of user's connections to underground electrical or communication facilities.

B. Upon meeting all of the requirements of said proceedings the council shall, by resolution, declare such designated area an underground utility district and order such removal and underground installation. The resolution should include a description of the area comprising such district, and shall fix the time within which such removal and underground installation shall be accomplished and within which affected property owners must be ready to receive underground service. A reasonable time shall be allowed for such removal and underground installation, having due regard for the availability of labor, materials and equipment necessary for the removal and/or installation of such underground facilities as may be occasioned thereby.

(Ord. 78-236 § 1(A), 1978: Ord. 141 § 3, 1968).

## 13.04.040 Compliance required--Exceptions.

Whenever the council creates an underground utility district and orders the removal of poles, overhead wires and associated overhead structures, as provided in Section 13.04.030, it is unlawful for any person or utility to erect, construct, place, keep, maintain, continue, employ or operate poles, overhead wires and associated overhead structures in the district after the date when the overhead facilities are required to be removed by such resolution, except as the overhead facilities may be required to furnish service to an owner or occupant of property prior to the performance by such owner or occupant of the underground work necessary for such owner or occupant to continue to receive utility service, as provided in Section 13.04.090, and for such reasonable time required to remove the facilities after the work has been performed, and except as otherwise provided in this chapter.

(Ord. 141 § 4, 1968).

**13.04.050 Emergency or unusual circumstances--Exception to provisions.**

Notwithstanding the provisions of this chapter, overhead facilities may be installed and maintained, for a period not to exceed ten days, without authority of the council in order to provide emergency service. The council may grant special permission, on such terms as the council may deem appropriate, in cases of unusual circumstances, without discrimination as to any person or utility, to erect, construct, install, maintain, use or operate poles, overhead wires and associated overhead structures.

(Ord. 141 § 5, 1968).

**13.04.060 Applicability of provisions.**

This chapter and any resolution adopted pursuant to Section 13.04.030 shall, unless otherwise provided in such resolution, not apply to the following types of facilities:

A.   Any municipal facilities or equipment installed under the supervision and to the satisfaction of the city engineer;

B.   Poles or electroliers used exclusively for street lighting;

C.   Overhead wires, exclusive of supporting structures, crossing any portion of a district within which overhead wires have been prohibited, or connecting to buildings on the perimeter of a district, when such wires originate in an area from which poles, overhead wires and associated overhead structures are not prohibited;

D.   Poles, overhead wires and associated overhead structures used for the transmission of electric energy at nominal voltages in excess of thirty-four thousand five hundred volts.

E.   Overhead wires attached to the exterior surface of a building by means of a bracket or other fixture and extending from one location on the same building or to an adjacent building without crossing any public street;

F.   Antennae, associated equipment and supporting structures used by a utility for furnishing communication services;

G.   Equipment appurtenant to underground facilities, such as surface-mounted transformers, pedestal-mounted terminal boxes and meter cabinets, and concealed ducts;

H.   Temporary poles, overhead wires and associated overhead structures used or to be used in conjunction with construction projects.

(Ord. 141 § 6, 1968).

**13.04.070 Notice to property owners and utility companies.**

A.   Within ten days after the effective date of a resolution adopted pursuant to Section 13.04.030, the city clerk shall notify all affected utilities and all persons owning real property within the district created by said resolution of the adoption thereof. The city clerk shall further notify such affected property owners of the necessity that, if they or any person occupying such property desires to continue to receive electrical, communication, or similar or associated service, they or such occupant shall provide all necessary facility changes on their premises so as to receive such service from the lines of the supplying utility or utilities at a new location,

subject to applicable rules, regulations and tariffs of the respective utility or utilities on file with the commission.

B. Notification by the city clerk shall be made by mailing a copy of the resolution adopted pursuant to section 13.04.030, together with a copy of the ordinance codified in this chapter, to affected property owners, as such are shown on the last equalized assessment roll, and to the affected utilities.

(Ord. 141 § 7, 1968).

## 13.04.080  Utility company responsibility.

If under-ground construction is necessary to provide utility service within a district created by any resolution adopted pursuant to Section 13.04.030, the supplying utility shall furnish that portion of the conduits, conductors and associated equipment required to be furnished by it under its applicable rules, regulations and tariffs on file with the commission.

(Ord. 141 § 8, 1968).

## 13.04.090  Property owner responsibility.

A. Every person owning, operating, leasing, occupying or renting a building or structure within a district shall perform construction and provide that portion of the service connection on his property between the facilities referred to in Section 13.04.080, and the termination facility on or within the building or structure being served, all in accordance with applicable rules, regulations and tariffs of the respective utility or utilities on file with the commission.

B. In the event any person owning, operating, leasing, occupying or renting the property does not comply with the provisions of subsection A above within the time provided for in the resolution enacted pursuant to Section 13.04.080, the city engineer shall post written notice on the property being served and thirty days thereafter shall have the authority to order the disconnection and removal of any and all overhead service wires and associated facilities supplying utility service to said property.

(Ord. 141 § 9, 1968).

## 13.04.100  City responsibility.

The city shall remove, at its expense, all city-owned equipment from all poles required to be removed under this chapter in ample time to enable the owner or user of such poles to remove the same within the time specified in the resolution enacted pursuant to Section 13.04.030.

(Ord. 141 § 10, 1968).

## 13.04.110  Extension of time limit.

In the event that any act required by this chapter or by a resolution adopted pursuant to Section 13.04.030 cannot be performed within the time provided, on account of shortage of materials, war, restraint by public authorities, strikes, labor disturbances, civil disobedience, or any other circumstances beyond the control of the actor, then the time within which such act will be accomplished shall be extended for a period equivalent to the time of such limitation.

(Ord. 141 § 11, 1968).

## 13.04.120 Violation--Penalty.

It is unlawful for any person to violate any provision or to fail to comply with any of the requirements of this chapter. Any person violating any provision of this chapter or failing to comply with any of its requirements shall be deemed guilty of a misdemeanor and, upon conviction, shall be punished by a fine not exceeding five hundred dollars, or by imprisonment not exceeding six months, or by both such fine and imprisonment. Each such person shall be deemed guilty of a separate offense for each day during any portion of which any violation of any of the provisions of this chapter is committed, continued or permitted by such person, and shall be punishable therefor as provided for in this chapter.

(Ord. 141 § 12, 1968).


## Chapter 13.06   SANITATION IMPACT FEE

Sections:
13.06.010  Application and definitions.
13.06.020  Findings.
13.06.030  Imposition of sanitation impact fee.
13.06.040  Schedule of sanitation impact fee.
13.06.050  Payment of sanitation impact fee.
13.06.060  Disposition of sanitation impact fee.
13.06.070  Annual review.
13.06.080  Repeal of inconsistent prior actions.
13.06.090  Right of appeal to city council.

## 13.06.010  Application and definitions.

As the city of Wasco develops, there is an increased demand placed on the sanitation services that the city must supply. Revenues generated from monthly sanitation rates are only for operational and maintenance expenses, and do not cover the cost of capital improvements to keep pace with the added demand that new development puts on the overall sanitation system. The fees established by this chapter shall apply to any development project to be built in the city.

"Capital improvements" means either a refuse disposal truck or street sweeping vehicle required to service new developments and which are more fully described in the engineering study.

"Development project" means any project undertaken for the purpose of development. Development project includes a project involving the issuance of a permit for construction or reconstruction, but not a permit to operate.

"Engineering study" means that certain document entitled "Sanitation Impact Fee Engineering Study - City of Wasco" prepared for the city by Helt Engineering, Inc.

(Ord. 511 §1 (Exh. A (part)), 2006).


## 13.06.020  Findings.

The city council creates and establishes a development impact fee for the sanitation department ("Sanitation Impact Fee") for the city which shall be used by the city for capital improvements as described in the engineering study to serve the city of Wasco.

A. The imposition of a sanitation impact fee is an essential method of ensuring that adequate sanitation capital improvements are provided and that the cost of capital improvements are apportioned based on a reasonable relationship between the fee and

the type of development and the capital improvements necessary to accommodate such development. This must be done in order to promote and protect the public health, safety and welfare.

B. The fees established by this chapter are derived from, are based upon, and do not exceed the costs of providing capital improvements necessitated by the new development projects for which the fees are levied.

C. The engineering study, as may be revised from time to time, sets forth a reasonable methodology and analysis for the determination of the unfunded portion of new capital improvements and the need for and costs for new capital improvements in the city and the need for new development projects to pay their appropriate share of same.

(Ord. 511 §1 (Exh. A (part)), 2006).

## 13.06.030 Imposition of sanitation impact fee.

A. Any person who, after the effective date of the ordinance codified in this chapter, seeks approval of a development project to develop land within the city; an extension of a building permit issued prior to that date; a permit for mobilehome installation; or an extension of a permit for mobilehome installation issued prior to that date, to make an improvement to land which will generate additional requirements on the city's sanitation system, is required to pay a sanitation impact fee in the manner and amount prescribed by this chapter.

(Ord. 511 §1 (Exh. A (part)), 2006).

## 13.06.040 Schedule of sanitation impact fee.

A. The city council shall establish by resolution, a schedule of sanitation impact fees calculated to provide sufficient revenue necessary to pay the estimated total cost for the capital improvements based on new development projects.

(Ord. 511 §1 (Exh. A (part)), 2006).

## 13.06.050 Payment of sanitation impact fee.

The sanitation impact fees created by this chapter for residential development projects shall be paid to the city pursuant to the time frames set forth in Government Code Section 66007, et seq. Sanitation impact fees for nonresidential development projects shall be paid at the time of issuance of the building permit for that particular project.

(Ord. 511 §1 (Exh. A (part)), 2006).

## 13.06.060 Disposition of sanitation impact fee.

A. Pursuant to Government Code Section 66006, there is established a separate reserve account within the sanitation enterprise account. Any fee paid pursuant to the provisions of this chapter shall be placed into the reserve account established for such fees and used solely for the purpose of implementation of the applicable public purpose for which the reserve account was established. All moneys in the reserve account shall be credited to that account.

B. All moneys and interest in the reserve account established by this chapter shall be expended on the implementation of the applicable public purpose for which the fee was established, in the following order of priority:

1.  The reimbursement to the city for all direct and indirect costs incurred by the city for the implementation of this chapter, including but not limited to, planning, legal costs, and engineering.

2.  The city shall use the balance of the funds so deposited into these special accounts (along with interest earnings thereon) for the costs of future public capital improvements as specified herein and only for the category of capital improvements for which the funds were deposited in that particular account.

C.  For the fifth fiscal year following the first deposit into the account or fund, and every five years thereafter, the city shall make all of the following findings with respect to that portion of the account or fund remaining unexpended, whether committed or uncommitted:

1.  Identify the purpose to which the fee is to be put;

2.  Demonstrate a reasonable relationship between the fee and the purpose for which it is charged;

3.  Identify all sources and amounts of funding anticipated to complete financing of capital improvements;

4.  Designate the approximate dates on which the funding is expected to be deposited into the appropriate account or fund.

When findings are required by this subsection, they shall be made in connection with the public information required by subdivision (b) of Section 66006. The findings required by this subsection need only be made for moneys in possession of the local agency, and need not be made with respect to letters of credit, bonds, or other instruments taken to secure payment of the fee at a future date. If the findings are not made as required by this subsection, the city shall refund the moneys in the account or fund as provided in Government Code Section 66001.

(Ord. 511 §1 (Exh. A (part)), 2006).

## 13.06.070 Annual review.

A.  Each year, pursuant to Government Code Section 66006, the city council will review the status of compliance with this chapter and the degree to which fees collected pursuant to this chapter are mitigating the impacts of new industrial, commercial and residential development projects on the city's sanitation system.

B.  For each of the accounts established by this chapter, the city shall, within one hundred eighty days after the close of each fiscal year, make available to the public all of the following information:

1.  A brief description of the type of fee in the account or fund;

2.  The beginning and ending balance for the fiscal year in that account;

3.  The fee, interest and other income to that account for the fiscal year;

4.  The amount of expenditure for public capital improvements by line item category from that account during the fiscal year identifying the capital improvements for which expenditures were made;

5.  An identification of an approximate date by which the capital improvements be purchased if the city determines that sufficient funds have been collected to complete financing on a capital improvement;

6.  A description of each interfund transfer or loan made from the account or fund,

including the capital improvement on which the transferred or loaned fees will be expended, and, in the case of an interfund loan, the date on which the loan will be repaid, and the rate of interest that the account or fund will receive on the loan;

7.    The amount of refunds made pursuant to Section 66001(e) of the Government Code out of that account during the fiscal year and any allocation pursuant to Section 66001(f) of the Government Code.

C.    The city council shall review the information described in subsection B of this section, at the next regularly scheduled public meeting of the council, not less than fifteen days after the information required by that subsection is made available to the public.

(Ord. 511 §1 (Exh. A (part)), 2006).


## 13.06.080  Repeal of inconsistent prior actions.

Any provision of previously adopted ordinances or resolutions of the city inconsistent with the provisions of this chapter, to the extent of such inconsistency and no further, is repealed or modified to the extent necessary to effect the provisions of this chapter.

(Ord. 511 §1 (Exh. A (part)), 2006).


## 13.06.090  Right of appeal to city council.

Any person subject to a fee required by this chapter may apply to the city council for a reduction, adjustment or waiver of that fee based upon the absence of a reasonable relationship between the impact of that person's development project and the amount of the fee charged or the type of facilities to be provided.

(Ord. 511 §1 (Exh. A (part)), 2006).


## Chapter 13.08  WATER RATES*

Sections:
13.08.010  Definitions.
13.08.020  Schedule of rates.
13.08.025  Temporary water use.
13.08.026  Temporary water use permit.
13.08.030  Service--Requirements.
13.08.040  Service charges--Responsibility.

* For statutory provisions on municipal water systems, see Gov. Code §38730 et seq.


## 13.08.010  Definitions.

As used in this chapter, the following terms have the following meanings:

A.    "Person" includes any person, firm or corporation, also any of the places of business, as enumerated in this chapter, using water furnished on the premises they own or occupy through connections with the water mains of the city.

B.    "Water user" includes any person, as defined in this section, who does not have water piped on the premises owned or occupied by him, and regularly draws water from the pipes of any "person," as above specified, either daily or otherwise, and whether residing within or without the area served by the city.

(Ord. 143 §1, 1968).

## 13.08.020 Schedule of rates.

A.  The following schedule of rates shall govern all charges for water supplied by the city through its distribution system to any person and water user as defined in this chapter:

    1.  Bakeries, a minimum charge of twenty-six dollars and eighty-six cents per month;

    2.  Barbershops and/or barbershops in conjunction with beauty shops, a minimum charge of twenty-two dollars and thirty-nine cents per month;

    3.  Beauty shops, separate from barbershops, a minimum charge of twenty-six dollars and eighty-six cents per month;

    4.  Churches and public halls, a minimum charge of twenty-two dollars and thirty-nine cents per month;

    5.  Fountains, lunchrooms, cafes, restaurants and pool halls, a minimum charge of twenty-six dollars and eighty-six cents per month;

    6.  Garages and service stations, with washracks, a minimum charge of forty-four dollars and seventy cents per month;

    7.  Garages and service stations, without washracks, a minimum charge of thirty-one dollars and eighty-nine cents per month;

    8.  Hotels, motels, rooming or lodging houses, a minimum charge of twenty-five dollars and forty-one cents per month, with an additional charge of four dollars and fifty-eight cents per guest room;

    9.  Laundries, a minimum charge of forty-four dollars and seventy cents per month;

    10.  Machine shops, a minimum charge of twenty-two dollars and thirty-nine cents per month;

    11.  Offices, a minimum charge of twenty-two dollars and thirty-nine cents per month;

    12.  Dry goods, hardware, and furniture stores, a minimum charge of twenty-two dollars and thirty-nine cents per month;

    13.  Doctors and dentists, a minimum charge of twenty-six dollars and eighty-six cents per month;

    14.  Markets, grocery and/or butcher shops, a minimum charge of twenty-six dollars and eighty-six cents per month;

    15.  Post office, a minimum charge of thirty-one dollars and eighty-nine cents per month.

B.  The charge and/or rate for water supplied to and for places not herein specifically mentioned and for users outside the city boundaries, shall be determined by the director of public works based on empirical data supplied by the new business and/or by widely used engineering reference manuals, and further consistent with other rates herein approved by the council. The director of public works shall then be responsible to notify the city council of such new water rate at its next regularly scheduled meeting.

C.  Single dwellings on lots having one to fifty feet frontage, a minimum charge of twenty-two dollars and thirty-nine cents per month; fifty-one to seventy-five feet of frontage, twenty-five dollars and twenty-one cents per month; seventy-six to one hundred feet frontage, twenty-six dollars and eighty-six cents per month; frontage greater than one hundred feet shall be fixed by

resolution of the city council.

D.  When more than one dwelling is situated on resident's property, a minimum charge of twenty-two dollars and thirty-nine cents per month for each dwelling.

E.  The foregoing minimum rates for resident's property covers a lot of depth from one to one hundred fifty feet; lots of a depth in excess of one hundred fifty feet shall be specifically rated in the same manner as prescribed in subsection B of this section.

F.  Each cabin, house trailer and/or rental, if on a separate property from a resident's property, shall have a minimum charge of ten dollars and seventeen cents per month each; if the same property with a dwelling, the charge shall be the same and in addition to the minimum charge applying to the dwelling.

G.  For each dwelling and/or apartment in courts, the minimum charge shall be twenty-one dollars and seventy-two cents per month for each housekeeping unit.

H.  For trees and shrubs only, on vacant lots having a maximum of fifty feet frontage and one hundred fifty feet in depth, there shall be a charge of ten dollars and seventeen cents per month. Vacant lots of a larger size or for other use shall be specially rated in the same manner as prescribed in subsection B of this section. When user has more than one connection, he shall be charged five dollars and seventy cents for each additional connection.

I.  When and if water furnished to any person and/or user is run through and measured by a water meter, then the monthly charge for water so measured and furnished shall be as follows:

> 1. For the first five hundred cubic feet, two dollars and seven cents per one hundred cubic feet;
>
> 2. For the next one thousand five hundred cubic feet, one dollar and twenty-three cents per one hundred cubic feet;
>
> 3. For the next two thousand cubic feet, one dollar and seventeen cents per one hundred cubic feet;
>
> 4. For all amounts in excess of four thousand cubic feet, ninety-nine cents per one hundred cubic feet;
>
> 5. When water is so measured and furnished, a minimum charge shall be made of twenty-two dollars and thirty-nine cents per month or twelve dollars and eighty-one cents for each living unit.

J.  All new water services installed shall be metered, and the costs of the water services installed shall be metered, and the costs of the meter and installation thereof shall be borne by the owner or subdivider of the premises served.

K.  On all commercial uses, other than multifamily residential, in addition to the minimum charge, when property exceeds fifty feet in frontage, there shall be an additional charge for parcels fifty-one to seventy-five feet frontage of five dollars and seventy cents per month, and for seventy-six to one hundred feet frontage, an additionally charge of eleven dollars and fourteen cents per month.

L.  For businesses or uses whether identified in, or not provided for, in this chapter, and whom do not have an existing water meter the city herein reserves the right to install, or have installed by its contracting agent a water meter to measure the water furnished. If such a meter is installed, the charge of the meter may be placed on the users monthly water bill, and thereby provide reimbursement to the city.

M.  In addition to the foregoing rates, every person or water user who has upon his premises an evaporative water cooler shall pay, in addition to the regular monthly bill, four dollars and forty-seven cents per three thousand five hundred cubic feet of air per minute, which is being operated or set up to operate without suitable return pump or satisfactorily arranged so that the

Case 1:07-cv-01080-LJO-GSA   Document 135   Filed 09/30/09   Page 12 of 54

water used in conjunction with the cooler is not recirculated in the cooler. For every cooler which size exceeds three thousand five hundred cubic feet of air per minute, which is separate or set up to operate without a suitable return pump or satisfactorily arranged so that the cooling water is not recirculated, there shall be an additional charge of six dollars and sixty-nine cents per month.

N. For every heating pump, air conditioning system or refrigeration-type air cooler which requires water in its operation, which the heating pump, air conditioning system or refrigeration-type cooler does not have a suitable return pump or satisfactory water return system, there shall be a charge of fifteen dollars and sixty-one cents per month for each unit ton capacity.

(Ord. 498 §1 Exh. A, 2005: Ord. 462 §1, 2002: Ord. 454 Exh. A, 2001: Ord. 449 §1(part), 2000; Ord. 418 §1, 1997: Ord. 389 §1, 1993: Ord. 386 §1, 1993: Ord. 375 §1, 1992: Ord. 360 §1, 1991: Ord. 325 §1, 1987: Ord. 143 §2, 1968).

## 13.08.025 Temporary water use.

A. Fire hydrants are provided for the main purpose of extinguishing fires and shall only be opened and used by city employees, agents of the city, County Fire Department employees, or by a water user with a valid permit issued by the city.

(Ord. 449 §1 (part), 2000).

## 13.08.026 Temporary water use permit.

Water users intending to take water from a fire hydrant shall first obtain a valid permit from the city and shall only extract water through a fire hydrant in compliance with the city's regulations and policies.

A. An applicant for a temporary water permit shall submit his application to the city water department on forms to be furnished by the city.

B. An applicant shall provide a one thousand dollars security deposit to the city to obtain the required meter which is to be hooked up to the fire hydrant. The water user shall be responsible for any and all damages to the meter or the loss thereof, until returned to the city.

C. A water user shall be charged a rental fee of twenty-five dollars per day, or a portion thereof, that the water meter is under the possession or control of the water user and the water user shall prepay the rental fee for the time that the temporary water permit will be in effect.

D. A water user with a valid permit, hooking up to a fire hydrant, shall have in place, an air gap back flow prevention device so that there is no contamination of the city's water supply.

E. The city may reject an application for a temporary water use permit if the applicant has not complied with any of the city's regulations or policies regarding such permit, the applicant is not going to use the water within the city or the city's sphere of influence, or it has been determined that issuance of such a permit will jeopardize the health, safety or general welfare of the citizens.

F. The city may suspend or revoke a temporary water permit if the water user is not in compliance with the city's regulations or policies regarding same, or if it is in the best interests of the city to revoke or suspend a temporary water permit in order to protect the health, safety and general welfare of the citizens.

G.  In addition to any other penalty as set forth in Chapter 1.08, any person taking water from a fire hydrant in violation of this chapter, shall be subject to a five hundred dollar per day penalty charge in addition to any other charges, fees or deposits that are required under this chapter.

(Ord 449 §1(part), 2000)

## 13.08.030  Service--Requirements.

A.  Before any water supply service is made by an employee of the city from the water mains of the city, an application must be made to the city, or its contracting agent, for such service and, in case the applicant is not owner of the premises or does own real property within the city's service area, a deposit of an amount equal to the minimum monthly water service rate applying to the premises must be made by the party applying for such service. In case of nonpayment of water service bills, the deposit shall be forfeited to the city as part payment, or otherwise, as the deposit equals service charges as provided for in this chapter and so understood by the party making such deposit. An application and deposit not to exceed the minimum monthly service rate shall also be made by any party not a property owner in the city service area coming under the term water user, before taking any water from the mains of the city or pipes on the premises of any person. In case service is discontinued, the deposit shall be returned to such person or water user, less any sum due the city or its servicing agent.

B.  In case water service is supplied between the first and fifteenth of the month, charge shall be made for a full month. When service is supplied after the fifteenth of the month, the charge shall be for one-half a month and shall equal one-half the monthly rate applying to the premises, payable in advance to the first of the following month, from the time such service is furnished from the water mains.

C.  All service charges required by this chapter shall be due and payable in advance on the first day of each and every month, and payable at the office of the city, or its contracting agent, regardless of whether or not a bill is rendered by the city or its agent to the person or water user, and shall become delinquent on the tenth day of each month. Should such delinquency continue for a period of five days, service shall be discontinued without notice, and will only be resumed on payment of a charge of five dollars in addition to the monthly charge and all delinquent bills, if any.

D.  The size of taps for general service shall not exceed three-fourths inch, and it is unlawful for any person to tap or interfere in any way with the mains or pipes of the city without permission of the city first had and obtained. Service connections of pipes of the person from the property line to the water mains will be made by the city or its agents only, for which a charge of not less than fifteen dollars will be made.

E.  The supplying of water by the city to any and all persons and water users is declared to be mainly and principally for domestic and business use and to eliminate so far as possible the hazard of fire, and the use of an open hose or faucet for irrigation purposes is prohibited, and all outside faucets or openings shall be closed whenever attention is called by the siren, or other appropriate signal, to a fire hazard. The irrigating or sprinkling of lawns, or gardens, shrubs or trees, is prohibited between the hours of ten p.m. and four a.m.

(Ord. 143 §3, 1968).

## 13.08.040  Service charges--Responsibility.

A.  All water services furnished to private users from one service connection shall be deemed one service and not separate services. Where multiple users are serviced from one service

connection the full service charge for each of the users shall be chargeable to one primary user who shall sign and be responsible for the full service, except as provided to the contrary in State of California Public Utilities Code Section 10009 and 10009.1.

B.   All units of a multiple user connection shall be fully charged for services furnished until a disconnection or termination request has been made for said connection. There will be no prorations or refunds made for any claimed unused monthly services to any one or more of the multiple service users when the service has not been disconnected or terminated.

C.   In those instances where a prior tenant has a non-payment account for payment of charges, the city may require that subsequent tenants be furnished on the account of the landlord or property owner as the user.

(Ord. 405 §§1--3, 1995).

## Chapter 13.10  WATER SYSTEM IMPACT FEE

Sections:

13.10.010  Application and definitions.
13.10.020  Findings.
13.10.030  Imposition of water system impact fee.
13.10.040  Schedule of water system impact fees.
13.10.050  Payment of water system impact fee.
13.10.060  Disposition of water system impact fee.
13.10.070  Annual review.
13.10.080  Repeal of inconsistent prior actions.
13.10.090  Right of appeal to city council.

## 13.10.010  Application and definitions.

As the city of Wasco develops, there is an increased demand placed on the amount of water that the city must supply and distribute. Revenues generated from monthly water rates are only for operational and maintenance expenses, and do not cover the cost of building new infrastructure to keep pace with the added demand that new development puts on the overall water system. The fees established by this chapter shall apply to any development project to be built in the city.

A.   "Development project" means any project undertaken for the purpose of development. Development project includes a project involving the issuance of a permit for construction or reconstruction, but not a permit to operate.

B.   "Engineering study" means that certain document entitled "Water System Impact Fee Engineering Study--City of Wasco" prepared for the city by Helt Engineering, Inc.

C.   "Water infrastructure projects" means the public improvements which include water wells, trunk lines, rights-of-way acquisition, and other related improvements required to service new development and which are more fully described in the engineering study.

(Ord. 509 §1 (Exh. A (part)), 2006).

## 13.10.020  Findings.

The city council hereby creates and establishes a development impact fee for the water system ("Water System Impact Fee") for the city which shall be used by the city for water infrastructure improvements to the city's water system as described in the engineering study to serve the city of Wasco.

A.   The imposition of a water system impact fee is an essential method of ensuring that

adequate water facilities are provided and that the cost of capital facilities are apportioned based on a reasonable relationship between the fee and the type of development and the water infrastructure projects necessary to accommodate such development. This must be done in order to promote and protect the public health, safety and welfare.

B.   The fees established by this chapter are derived from, are based upon, and do not exceed the costs of providing water infrastructure projects necessitated by the new development projects for which the fees are levied.

C.   The engineering study, as may be revised from time to time, sets forth a reasonable methodology and analysis for the determination of the unfunded portion of new infrastructure projects and the need for and costs for new water infrastructure projects in the city and the need for new development projects to pay their appropriate share of same.

(Ord. 509 §1 (Exh. A (part)), 2006).

## 13.10.030  Imposition of water system impact fee.

A.   Any person who, after the effective date of the ordinance codified in this chapter, seeks approval of a development project to develop land within the city; or by an extension of a building permit issued prior to that date; a permit for mobilehome installation; or an extension of a permit for mobilehome installation issued prior to that date, to make an improvement to land which will generate additional requirements on the city's water system, is required to pay a water system impact fee in the manner and amount prescribed by this chapter.

(Ord. 509 §1 (Exh. A (part)), 2006).

## 13.10.040  Schedule of water system impact fees.

A.   The city council shall establish by resolution, a schedule of water system impact fees calculated to provide sufficient revenue necessary to pay the estimated total cost for the water infrastructure projects based on new development projects.

(Ord. 509 §1 (Exh. A (part)), 2006).

## 13.10.050  Payment of water system impact fee.

The water system impact fees created by this chapter for residential development projects shall be paid to the city pursuant to the time frames set forth in Government Code Section 66007, et seq. Water system impact fees for nonresidential development projects shall be paid at the time of issuance of the building permit for that particular project.

(Ord. 509 §1 (Exh. A (part)), 2006).

## 13.10.060  Disposition of water system impact fee.

A.   Pursuant to Government Code Section 66006, there is established a separate reserve account within the water enterprise account. Any fee paid pursuant to the provisions of this chapter shall be placed into the reserve account established for such fees and used solely for the purpose of implementation of the applicable public purpose for which the reserve account was established. All moneys in the reserve account shall be credited to that account.

B. All moneys and interest in the reserve account established by this chapter shall be expended on the implementation of the applicable public purpose for which the fee was established, in the following order of priority:

1. The reimbursement to the city for all direct and indirect costs incurred by the city for the implementation of this chapter, including but not limited to, planning, legal costs and engineering.

2. The city shall use the balance of the funds so deposited into these special accounts (along with interest earnings thereon) for the costs of future public water infrastructure projects as specified herein and only for the category of improvements for which the funds were deposited in that particular account.

C. For the fifth fiscal year following the first deposit into the account or fund, and every five years thereafter, the city shall make all of the following findings with respect to that portion of the account or fund remaining unexpended, whether committed or uncommitted:

1. Identify the purpose to which the fee is to be put;

2. Demonstrate a reasonable relationship between the fee and the purpose for which it is charged;

3. Identify all sources and amounts of funding anticipated to complete financing of incomplete improvements;

4. Designate the approximate dates on which the funding is expected to be deposited into the appropriate account or fund.

When findings are required by this subsection, they shall be made in connection with the public information required by subdivision (b) of Section 66006. The findings required by this subsection need only be made for moneys in possession of the local agency, and need not be made with respect to letters of credit, bonds, or other instruments taken to secure payment of the fee at a future date. If the findings are not made as required by this subsection, the city shall refund the moneys in the account or fund as provided in Government Code Section 66001.

(Ord. 509 §1 (Exh. A (part)), 2006).

## 13.10.070 Annual review.

A. Each year, pursuant to Government Code Section 66006, the city council will review the status of compliance with this chapter and the degree to which fees collected pursuant to this chapter are mitigating the impacts of new industrial, commercial and residential development projects on the city's water system.

B. For each of the accounts established by this chapter, the city shall, within one hundred eighty days after the close of each fiscal year, make available to the public all of the following information:

1. A brief description of the type of fee in the account or fund;

2. The beginning and ending balance for the fiscal year in that account;

3. The fee, interest and other income to that account for the fiscal year;

4. The amount of expenditure for public improvements by line item category from that account during the fiscal year identifying the public improvements for which expenditures were made;

5. An identification of an approximate date by which the construction of the public

improvement will commence if the city determines that sufficient funds have been collected to complete financing on an incomplete public improvement, as identified in paragraph (2) of subdivision (1) of Section 66001, and the public improvement remains incomplete;

6.  A description of each interfund transfer or loan made from the account or fund, including the public improvement on which the transferred or loaned fees will be expended, and, in the case of an interfund loan, the date on which the loan will be repaid, and the rate of interest that the account or fund will receive on the loan.

7.  The amount of refunds made pursuant to Section 66001(e) of the Government Code out of that account during the fiscal year and any allocation pursuant to Section 66001(f) of the Government Code.

C.  The city council shall review the information described in subsection B of this section, at the next regularly scheduled public meeting of the council, not less than fifteen days after the information required by that subsection is made available to the public.

(Ord. 509 §1 (Exh. A (part)), 2006).

## 13.10.080  Repeal of inconsistent prior actions.

Any provision of previously adopted ordinances or resolutions of the city inconsistent with the provisions of this chapter, to the extent of such inconsistency and no further, is repealed or modified to the extent necessary to effect the provisions of this chapter.

(Ord. 509 §1 (Exh. A (part)), 2006).

## 13.10.090  Right of appeal to city council.

Any person subject to a fee required by this chapter may apply to the city council for a reduction, adjustment or waiver of that fee based upon the absence of a reasonable relationship between the impact of that person's development project and the amount of the fee charged or the type of facilities to be provided.

(Ord. 509 §1 (Exh. A (part)), 2006).

## Chapter 13.12  SEWERS

Sections:

13.12.010  Definitions.
13.12.020  Permit--Required--Application--Issuance--Exceptions.
13.12.030  Fees--Amount.
13.12.040  Fees--Accounting--Disposition.
13.12.050  Permit--Expiration.
13.12.060  Inspection--Requirements.
13.12.070  Inspection--Certificate--Issuance--Contents.
13.12.080  Construction--Compliance with standards required.
13.12.090  Connection--Required when.
13.12.100  Connections--Permit--Standards and procedures.
13.12.110  Taps--Standards and procedures.
13.12.120  Certain wastes and solids--Deposit prohibited.
13.12.130  Acids and corrosive liquids--Dilution and neutralization.
13.12.140  Stormwater prohibited in sewers.
13.12.150  Swimming pool--Connection prohibited.
13.12.160  Sand trap--Required when--Standards.
13.12.170  Grease traps--Required when--Standards.
13.12.180  Safe waste piping--Direct connection prohibited.

Case 1:07-cv-01080-LJO-GSA   Document 135   Filed 09/30/09   Page 18 of 54

13.12.190  Blowoff and exhaust steam--Direct connection prohibited.
13.12.200  Additions and alterations--Conformance required.
13.12.210  Removal or injury prohibited.
13.12.220  Pipelayer--License--Requirements.
13.12.230  Violation--Penalty.

## 13.12.010  Definitions.

For the purpose of this chapter, the following terms shall have the meanings accorded to them by this section, unless it is apparent from the context that they are used with a different meaning:

A.  "Alterations" means any change or addition.

B.  "Council" means the City Council of the City of Wasco.

C.  "House connection sewer" means that part of the horizontal piping beginning twelve inches from the exterior wall of the building and extending to its connection with the public sewer.

D.  "Lot" means any piece or parcel of land bounded, defined or shown upon a plat or deed recorded in the office of the county recorder, and in accordance with the boundaries of such lot as bounded, defined or shown upon such recorded map, plat, or deed; provided, however, that in the event any building or structure covers more area than a lot, as defined in this section, the term lot shall be deemed to be and include all such pieces or parcels of land upon which said buildings are wholly or partly located.

E.  "Public sewer" means any sewer, other than a house connection sewer, which has been accepted by the city.

F.  "Repairs" means the reconstruction or renewal of any existing part of a structure, or of its fixtures or appurtenances.

(Ord. 199 § 1, 1975).

## 13.12.020  Permit--Required--Application--Issuance--Exceptions.

A.  It is unlawful for any person, firm or corporation to commence, or do, or cause to be done, or to construct or cause to be constructed, or to use or cause to be used, or to alter or cause to be altered any public or house connection sewer in the city without first obtaining a permit from the city clerk.

B.  Any person, firm or corporation desiring a permit for any of the purposes enumerated in this section shall make application, in writing, to the city clerk, giving such information as the clerk may require, on blanks to be furnished for that purpose, and if it appears therefrom that the work to be performed is to be done according to the regulations contained in this chapter governing the construction of such work, a permit shall be issued upon payment of the fees as fixed by Section 13.12.030.

C.  Nothing contained in this section shall be deemed or construed to require the application for, or the issuance of, a permit for the purpose of removing stoppages or repairing leaks in any public or house connection sewer, except when it is necessary to replace any or all of such sewer with other or different material.

D.  The provisions of this section shall not be construed to apply to contractors constructing sewers and appurtenances under contracts awarded and entered into under proceedings had or taken pursuant to any of the special procedure statutes of this state providing for the construction of sewers and the assessing of the expenses thereof against the lands benefited thereby.

(Ord. 199 § 2, 1975).

### 13.12.030 Fees----Amount.

A. The city clerk shall, before granting any permit, upon an application filed in accordance with the provisions of Section 13.12.020, require payment by the applicant of a connection fee of two hundred forty-eight dollars. If the applicant desires, the sewer permit fee may be paid in monthly installments of two dollars and sixty cents per month for a period of one hundred twenty months, which shall be billed in conjunction with the sewer service charge. In the event the sewer service connection is made at a later date, the installments for the sewer service charge connection may still be made by paying two dollars and sixty cents per month from the date the ordinance codified in this chapter became effective to the requested date of connection, and thereafter at the rate of two dollars and sixty cents per month for the remainder of the one hundred twenty months.

B. There shall be a sewer service charge for sewer service facilities furnished at the rate of one dollar and fifty cents per month per sewer service connection.

(Ord. 199 § 3, 1975).

### 13.12.040 Fees--Accounting--Disposition.

The city clerk shall keep an accurate account of all fees received under this chapter, giving the names and residences of the persons upon whose accounts the same were paid, and the date and amount thereof, which record shall be open for public inspection. The city clerk shall pay all fees received into the city treasury the following business day.

(Ord. 199 § 4, 1975).

### 13.12.050 Permit--Expiration.

If the work authorized by a permit is not commenced within sixty days from the date of its issuance, or if the work authorized by such permit and commenced thereunder is suspended or abandoned for a period of sixty days, such permit shall thenceforth be null and void, and before such work can be recommenced a new permit shall be taken out, and the same fees shall be paid as fixed for the original permit.

(Ord. 199 § 5, 1975).

### 13.12.060 Inspection--Requirements.

All work done under the provisions of this chapter shall be subject to inspection, and notice must be given, in writing, to the city clerk by the person, firm or corporation doing the work, or causing the same to be done, immediately after the work is ready for inspection. Up to the time of the inspection, all work must be uncovered and convenient for the inspector's examination and every facility must be given the inspector to make a thorough examination. If any pipes are enclosed or covered in any way whatsoever, so as to tend to obstruct a thorough inspection of the sewer system, the obstruction must be removed, upon notice to do so from the city clerk, before an inspector shall be required to inspect the work. When upon examination by the inspector, it appears that any such work is defective either in its construction or material, the same shall be removed or repaired to conform to the requirements set forth in this chapter.

(Ord. 199 § 6, 1975).

### 13.12.070 Inspection--Certificate--Issuance--Contents.

When it appears to the satisfaction of the city clerk that any work mentioned in this chapter has been constructed according to, and meets the requirements of all provisions of this chapter, and that all fees for the inspection thereof have been paid, the city clerk shall cause to be issued to the person, firm or corporation constructing such work a certificate of final inspection, which certificate shall recite that such work as is covered by the permit has been constructed according to ordinance and that the work is in a sanitary condition. The city clerk shall not issue such certificate of inspection unless the requirements of this chapter have been adhered to.

(Ord. 199 § 7, 1975).

### 13.12.080 Construction--Compliance with standards required.

The material used shall be equal in quality to, and the manner of construction shall meet, all the requirements prescribed by the specifications for public sewers in the city, which may be adopted from time to time as standard specifications for the construction of sanitary sewers and appurtenances thereto by the city council, and all such work must be constructed or installed in accordance therewith before a certificate of final inspection shall be granted by the city clerk.

(Ord. 199 § 8, 1975).

### 13.12.090 Connection--Required when.

A.   All plumbing affecting the sanitary condition of any building or other structure located within the boundaries of any lot not already adequately serviced by a cesspool or septic tank shall, within thirty days immediately following the time when such sewer is constructed and available for use to such building or structure, be connected with and drained into a public sewer in the public street, alley, right-of-way or other public place abutting upon the lot.

B.   Any cesspool or septic tank which becomes unserviceable from any cause shall be abandoned and the premises theretofore served by such cesspool or septic tank shall be connected with and drained into a public sewer within not to exceed ten days from the time such cesspool or septic tank becomes unserviceable, wherever sewers are available.

C.   No connection from any building or structure shall hereafter be made to any public sewer, which connection or any portion thereof shall be in, under or upon any lot other than the lot on which such building or structure is located.

D.   For the purpose of this section, "structure" includes the group of buildings of a house court, which is defined to be a parcel or area of land upon which are grouped three or more habitations used or designed to be used for occupancy by families, and upon which parcel or area the vacant or unoccupied portion thereof surrounding or abutting upon said habitations is used or intended to be used in common by the inhabitants thereof. "Habitation" is defined to be a room or combination of rooms used or designed to be used for the occupancy of human beings.

E.   All buildings constituting a house court, as defined above, may be connected to the public sewer by means of one private sewer located upon the lot or parcel of land upon which the house court is situated.

(Ord. 199 § 22, 1975).

## 13.12.100  Connections--Permit--Standards and procedures.

A.  It is unlawful for any person, firm or corporation to make or to maintain, or to cause to be made or maintained, any connection with any public sewer of the city until a permit therefor shall have first been obtained from the city clerk, or to make, or cause to be made, any such connection pursuant to any such permit at any place other than that designated in the permit.

B.  Every connection made with any public sewer of the city shall be made in the following manner:

1.  A cleanout shall be placed in every house connection sewer at the junction with the soil pipe, at the building and at all changes in alignment and grade. The cleanout shall be made by inserting a "Y" branch in the line with a cap of the same material as the house connection sewer pipe tightly cemented in the bell end of the portion of the "Y" branch which will be used to gain access to the connection.

2.  When the condition of the trench is such that it is impossible to secure a watertight cement mortar joint, a sewer joint compound which meets the requirements of the standard specifications for public sewers referred to in Section 13.12.080, shall be used.

3.  The grade shall be straight from the property line to the public sewer and shall have a fall of not less than one foot in fifty feet towards the public sewer, except where otherwise permitted by special permit, in writing, from the city clerk.

4.  Where laid within the limits of a public street, no connection shall be laid less than three feet below the established grade of the same, or below the surface where no grade is established, except by special permit, in writing, from the city clerk.

5.  No sewer connection shall be covered or concealed in any way until it has been inspected and approved by the inspector.

6.  Every house connection sewer outside of any building shall be constructed in such a manner as to withstand a pressure of not less than four pounds per square inch without leaking at any point when filled with water.

7.  Every house connecting sewer shall be tested before being approved, in that portion extending from the property line to the upper terminus thereof, by a pump test which shall consist of filling the line or lines with water, capping or sealing each upper terminus thereof, and applying an air pump at the property line in such manner as to furnish an aggregate pressure of four pounds per square inch in the sewer at the lower terminus.

8.  In the event that any joints of any house connecting sewer are cemented with Portland cement mortar, no test shall be made until the expiration of not less than twenty-four hours after the cement joints are made.

9.  No house connecting sewer shall be approved if any portion thereof, including any fitting, material, work or construction, fails to withstand the test provided for in this section without leaking at any point.

10.  It is unlawful for any person, firm or corporation to connect or cause to be connected any sewer which has been or may hereafter be constructed in any street, alley, right-of-way or other public place by the city on behalf of the public, with any public sewer of the city, unless such sewer shall have been laid under the supervision and to the satisfaction of the inspector, and in accordance with the standard specifications referred to in Section 13.12.080, and in accordance with plans and profiles approved by the city engineer.

(Ord. 199 § 9, 1975).

## 13.12.110  Taps--Standards and procedures.

Whenever it becomes necessary to connect a house sewer to a public sewer at a point where no special "Y" or "T" branch has been installed in the public sewer, the connection must be made in the presence of an inspector and in the following manner:

A.  In all public sewers of twelve inches or less in internal diameter and of ten feet or less in depth, the connection must be made by removing a section of the existing sanitary sewer and inserting a "Y" branch.

B.  In public sewers of from eight inches to twelve inches, inclusive in internal diameter, and not more than ten feet in depth, or of fourteen inches or more in internal diameter at any depth, it will be permissible to cut the existing pipe and insert a standard saddle. The saddle must be fitted snugly against the exterior wall of the public sewer pipe and fastened in place by heavy galvanized asphalt-coated wire which shall be bound around the main line pipe. A foundation of cement concrete shall then be placed under and around the saddle in the manner required and directed by the inspector.

(Ord. 199 § 10, 1975).

## 13.12.120  Certain wastes and solids--Deposit prohibited.

A.  It is unlawful for any person, firm or corporation to place, throw or deposit, or cause or permit to be placed, thrown or deposited in any public or house connection sewer, any dead animal or offal, or to place, throw, deposit or discharge, or cause or permit to be placed, thrown, deposited or discharged in any such sewer, any fish, fruit or vegetable waste or other solid matters, or materials or obstructions of any kind whatever of such nature as will clog, obstruct or fill such sewer, or which interfere with or prevent the effective use or operation thereof.

B.  It is likewise unlawful for any person, firm or corporation to cause or permit to be deposited or discharged into any such sewer any water or sewage, or liquid waste of any kind containing chemicals, greases, oil, tar or other matters in solution which may, by reason of precipitation, clog, obstruct or fill the same, or which may in any way interfere with or prevent the effective use thereof, or which may necessitate or require frequent repair, cleaning out or flushing of such sewer to render it operative.

C.  No wash waters from the washing of vegetables shall be put directly into the sewer without passing through a suitably sized settling basin.

(Ord. 199 § 11, 1975).

## 13.12.130  Acids and corrosive liquids--Dilution and neutralization.

In no case shall acids or corrosive liquids liable to destroy or injure be discharged into such sewer without being fully diluted and neutralized by passing through a properly constructed dilution and neutralizing sink or tank. Such sink or tank shall be automatically provided with a sufficient intake of water or neutralizing medium or substance so as to make its contents noninjurious before being discharged.

(Ord. 199 § 12, 1975).

## 13.12.140  Stormwater prohibited in sewers.

It is unlawful for any person, firm or corporation to connect any roof conductor, yard drain or other conduit used for carrying off rain or surface water with any sanitary sewer of the city or house connection sewer leading thereto.

(Ord. 199 § 13, 1975).

## 13.12.150  Swimming pool--Connection prohibited.

It is unlawful for any person, firm or corporation to connect any swimming pool or tank to any public sewer of the city or house connection sewer leading thereto, except by special permit from the city clerk.

(Ord. 199 § 14, 1975).

## 13.12.160  Sand trap--Required when--Standards.

A.  It is unlawful for any person firm or corporation owning or operating a private or public automobile or carriage wash rack to permit any water or effluent therefrom to flow into any public or house connection sewer unless such structure is trapped by a sand trap constructed of concrete.

B.  The walls and bottom of the trap shall be not less than four inches thick. The inside dimensions of the trap shall be not less than five feet long, three feet wide and three feet deep below the bottom of the outlet pipe. The inlet pipe shall be at one end and the outlet pipe at the opposite end of the trap. The pipes shall be not less than four inches in diameter and their tops shall be not less than six inches below the top of the trap.

C.  The outlet pipe shall extend into the outlet compartment of the trap as described below and shall be equipped with a four-inch "T" branch set vertically downward. A section of four--inch pipe shall extend downward from the "T" branch to a point not less than twelve inches below the bottom of the outlet pipe. The straight end of the outlet pipe in the sand trap shall be fitted with a stopper or plug.

D.  A baffle wall of concrete or wood extending entirely across the trap shall be constructed parallel to and twelve inches from the inside of the end wall at the inlet end. The bottom of this baffle wall shall be parallel to and six inches above the bottom of the trap, the top being flush with the top of the trap.

E.  Another baffle wall of concrete or wood extending entirely across the trap shall be constructed parallel to and twelve inches from the inside of the wall at the outlet end of the trap. The top of the baffle wall shall be parallel to and twelve inches below the top of the trap, and the wall shall extend down to the bottom of the trap.

F.  The compartment formed by the outlet wall and the baffle wall twelve inches therefrom in shall be covered with a solid, removable cover.

G.  The remainder of the sand trap shall be covered with a removable grating which may be in sections of any convenient size to facilitate removal for inspection and cleaning of the sand trap.

H.  Such sand traps shall be inspected daily when in use, and cleaned as often as necessary for their efficient operation.

I.  It is unlawful for any person, firm or corporation to connect any cellar drain and shower, in basements or in yards, directly with the soil or waste pipe but such cellar drain or shower shall be trapped by a sand trap of not less than twelve inches by twelve inches and constructed of concrete. The walls and floor of every such trap shall not be less than three inches thick, and each trap shall have a cast iron frame and grate cover. The water seal of such trap shall be

constructed by inverting its waste pipe. A water seal of less than four inches is prohibited, and the minimum size of the waste pipe shall be four inches where the trap is not vented. Such sand traps shall be cleaned as often as necessary for their efficient operation.

(Ord. 199 § 15, 1975).

### 13.12.170 Grease traps--Required when--Standards.

A.  It is unlawful for any person, firm or corporation operating an establishment serving fifty or more meals per day, or any person, firm or corporation owning or operating a private or public automobile or carriage wash rack, to permit the wastes from the kitchen sinks or wash rack to flow directly into any public sewer of the city, or house connection sewer leading thereto, without first passing the same through grease traps approved by the inspector.

B.  Grease traps with a guaranteed capacity of twenty pounds of pure grease shall be installed with each kitchen sink outlet wasting into any public sewer of the city for establishments serving from fifty to three hundred meals per day. Grease traps with a guaranteed capacity of sixty pounds of pure grease shall be installed for any establishment where more than three hundred meals are served per day, and for the operation of any private or public wash rack as mentioned above.

(Ord. 199 § 16, 1975).

### 13.12.180 Safe waste piping--Direct connection prohibited.

It is unlawful for any person, firm or corporation to connect any safe waste pipe from any establishment directly to any public sewer of the city or house connection sewer leading thereto, but such safe waste pipe shall discharge into a water-supplied sink of discharge outside of the building.

(Ord. 199 § 17, 1975).

### 13.12.190 Blowoff and exhaust steam--Direct connection prohibited.

It is unlawful for any person, firm or corporation to cause, suffer, allow or permit the exhaust from any engine or blowoff from any broiler to be connected directly to any public sewer of the city or house connection sewer leading thereto, but such exhaust or blowoff shall first connect with a watertight sump which may in turn be connected to the public sewer.

(Ord. 199 § 18, 1975).

### 13.12.200 Additions and alterations--Conformance required.

Upon the renewal or alteration of any public or house connection sewer, or upon the making of any repairs or additions thereto, if any new material is placed in such sewer, either in the original or in the altered, repaired or added part thereof, every such new part must be properly connected with and attached to the original part of such sewer, and if any materials are to be reset either in the old or new part of such public or house connection sewer, then both such original and such new additional parts and any altered part whatever must be made to conform in all respects to the rules and regulations prescribed in this chapter.

(Ord. 199 § 19, 1975).

### 13.12.210 Removal or injury prohibited.

It is unlawful for any person, firm or corporation to remove or cause to be removed or to injure or cause to be injured any portion of any public sewer, pumping plant, disposal plant, flush tank, flushing manhole, or manhole; or to use or cause to be used, or to take or cause to be taken any water from any flushing apparatus for any use whatever; or to trespass upon any sewage disposal site without first obtaining a permit from the city clerk.

(Ord. 199 § 20, 1975).

### 13.12.220 Pipe layer--License--Requirements.

A. It is unlawful for any person, firm or corporation to lay or to engage in or carry on the business of pipe laying on private premises within the city unless such person, firm or corporation shall have first registered at the office of the city clerk and obtained a certificate of registration from the city clerk, as provided in this section. This section shall not be construed as prohibiting an owner of any lot from making his own house connection sewer on said lot, provided he has previously paid the inspection and connection fee and secured a permit therefor from the city clerk, and complied with all the requirements as to material, laying and inspection provided in this section.

B. Every person, firm or corporation desiring to have his, its or their name registered in the "register" shall make application, in writing, to the city clerk, at the office of the city clerk, on blanks furnished for that purpose, giving the name and address of such person, firm or corporation; if a firm, the name of the members thereof, and if a corporation, the names of the officers of such corporation; together with such other information as may be deemed necessary by the city clerk. Such application shall be verified upon oath; if a corporation, by an officer thereof; if a copartnership, by a member of such copartnership or if an individual by such individual, or by the duly authorized agent of any such person, firm or corporation.

C. Every application must be accompanied by a bond for five hundred dollars, made payable to the city, executed by the applicant and a surety company whose bonds are accepted and approved by the city. Such bond shall be for the faithful performance of the work and to indemnify against mechanic1s liens, and must be joint and several and conditioned that the whole or any part of the five hundred dollars shall be paid to any person who has suffered loss or damage by reason of any violation of any ordinance of the city or the nonpayment of labor, or nonpayment for materials, or nonperformance or unworkmanlike performance of his or its contract. Such bond shall not be void upon the first recovery, but may be sued and recovered on from time to time by any person, in his own name, who has thus suffered loss or damage, until the whole of the five hundred dollars is exhausted.

D. Every applicant shall pay to the city an examination fee of one dollar.

E. Every applicant who is an individual for himself, and the constructing and supervising member of a copartnership for the copartnership, and the constructing and supervising officer of a corporation for the corporation, must take and successfully pass an examination before a committee appointed by the city council. In such examination, each applicant must give satisfactory evidence of a knowledge of, and skill in, the laying of pipe and the making of all necessary connections thereof and therewith, and the installing of necessary cleanouts, equal to that required of a journeyman plumber for the doing of the same work when using cast--iron pipe.

F. Every applicant, upon successfully passing the examination, shall pay to the city a license fee of twenty-five dollars for the first year and ten dollars a year for each annual renewal thereof.

G. Every applicant, upon successfully passing the examination, shall furnish to the city and file with the city clerk satisfactory evidence of having secured adequate public liability insurance

protecting the city from damages and liability of every kind.

H.   It is the duty of the city clerk to issue a certificate of registration, and every such certificate shall state the name and business address of the applicant and the date upon which the certificate expires, and shall certify that the person, firm or corporation named in the certificate has complied with the provisions of this chapter, and that such person, firm or corporation is deemed to be registered, and is entitled to conduct and engage in the business of laying of sewer pipe for the period specified in the certificate.

I.   Every certificate issued as provided in this section shall become null and void immediately upon the first conviction of the person, firm or corporation named in such certificate for violating any of the provisions of this chapter, and thereafter it shall be unlawful for any such person, firm or corporation to engage in or carry on the business of pipe laying or to represent himself, if a person, as being registered, or if a firm or corporation, to represent itself as a firm or corporation as being registered.

(Ord. 199 § 21, 1975).

## 13.12.230   Violation--Penalty.

A.   Any person, firm or corporation violating any of the provisions of this chapter shall be deemed guilty of a misdemeanor and, upon conviction, shall be punished by a fine of not less than ten dollars or more than three hundred dollars, or by imprisonment in the county jail for not less than five days nor more than ninety days, or by both such fine and imprisonment.

B.   Every person, firm or corporation shall be deemed guilty of a separate offense for each and every day during which any public sewer or house-connection sewer, which has been installed, constructed, moved or altered by such person, firm or corporation in violation of any of the provisions of this chapter, continued in such condition, and for every day during which any other violation of this chapter by such person, firm or corporation continues, and shall be punishable therefor as provided in this section.

(Ord. 199 § 23, 1975).

## Chapter 13.14   SEWER SERVICE CHARGES

Sections:
13.14.010   Sewer service charges.
13.14.020   Rate charges.
13.14.030   Billings.

## 13.14.010   Sewer service charges.

There is levied and imposed upon the owner or occupant of any and all parcels within the city of Wasco having any sewer connection with the sewage system of the city, or otherwise discharging sewage which ultimately passes through the sewage system of the city, a sewer service charge as hereinafter provided.

(Ord. 399 Art. I(1), 1994).

## 13.14.020   Rate charges.

A.   The charge imposed upon each residential parcel of property, dependent upon the category within which it is found in the list below, for each month, commencing the first day of the month

following thirty days after its adoption, shall be as follows:

TABLE INSET:

| Category | Units | Charge Per Unit Per Month |
|---|---|---|
| Single-family residences | Dwelling unit | $23.78 |
| Apartment/mobilehome park | Unit | 23.78 |

B.  The charge imposed upon each commercial parcel of real property, dependent upon the category within which It is found in the list below, for each month, commencing on the first day of the month following thirty days after its adoption, shall be as follows:

TABLE INSET:

| Category | Units | Charge Per Unit Per Month |
|---|---|---|
| Bakery | Each | $ 58.44 |
| Ballpark | Each | 8.71 |
| Barber and beauty shops | Each | 34.68 |
| Bars (without dining) | Each | 75.91 |
| Car wash | Each | 92.34 |
| Churches | Each | 15.29 |
| Commercial cleaners | Each | 129.96 |
| Convenience store | Each | 17.26 |
| Doctor and dentist offices | Each | 30.35 |
| Food market | Per 1,000 sq. ft. or portion thereof | 7.88 |
| Hospitals | Per Bed | 15.29 |
| Laundromats | Each | 298.70 |
| Meeting or convention halls | Each | 8.71 |
| Mortuaries | | |
| (a) with embalming facilities | Each | 86.67 |
| (b) without embalming facilities | Each | 8.71 |
| Motion picture theaters | Each | 58.44 |
| Office buildings | Office Unit | 8.71 |
| Park (w/wading pool) | Each | 15.29 |
| Pool halls | Each | 58.44 |
| Printing and publishing | Each | 13.17 |
| Auto repair shops and service stations | | |
| (a) without wash racks | Each | 30.35 |
| (b) with wash racks | Each | 69.41 |
| Restaurants | Establishment | 166.61 |
| Retail shop | Shop | 8.71 |
| Schools | | |

| (a) grammar | Pupil (a.d.a.) | 9.02 |
| (b) high school/junior high school | Pupil (a.d.a.) | 10.91 |
| Public swimming pool | Each | .83 |
| Potato shed | Each | 1.07 |
| Septage receiving station | 1,800 gallons | 91.50 |

C.   The service charge imposed upon each industrial parcel of real property, and not classified as either residential or commercial in the two proceeding divisions, shall be determined by the following formula:

TABLE INSET:

| C = | 1,548.9 V + 0.63774 B + 0.50687 S where: |
| C = | Annual service charge in dollars. |
| V = | Annual volume million gallons of wastewater discharged by user in the city of Wasco's sewage system. |
| B = | Annual pound of five-day biochemical oxygen demand discharge by the user into the city of Wasco sewage system. |
| S = | Annual pounds of suspended solids, discharged by the user into city of Wasco's sewage system. |

The city of Wasco shall examine the available data in its files on the wastewater volume and characteristics on each industrial user, and its sole decision on the quantity and loadings of the wastewater shall be final.

D.   The city shall collect besides the service charge in subsection C of this section, an additional charge known as the industrial cost recovery from those industrial users which discharge either: (a) twenty-five thousand gallons per day or more of equivalent sanitary domestic wastes; or per day or more equivalent sanitary domestic wastes; or (b) toxic materials. The industrial cost recovery shall be determined by the following formula:

TABLE INSET:

| C = | 845.4 V + 0.1205 B + 0.06443 S where: |
| C = | Annual industrial cost recovery in dollars and V.B and S are defined in subsection C of this section. |

E.   Notwithstanding anything to the contrary in this chapter contained, any premises within the city of Wasco boundaries having a sewer connection, but for which a specific category or classification for sewer service charges has not been set forth above, or for any vehicle that discharges sewage or wastes to the city's sewage treatment plant, the city shall charge such premises or vehicle at a rate based on the formula shown in subsection C of this section. The quantity and characteristics of wastewater discharged shall be estimated by the city of Wasco in its sole discretion and its determination shall be final.

(Ord. 533 § 3 (Exh. A), 2007: Ord. 454 Exh. B, 2001: Ord. 435 §§ 1, 2, 1999; Ord. 417 § 1, 1997; Ord. 399 Art. I(2), 1994).

## 13.14.030  Billings.

The city clerk shall bill each of the users monthly for the charge herein established and the charge shall be imposed upon the firm or person who subscribes for the water services for the premises and the said sewer services charge shall be coupled with the monthly water service billing. For nonpayment of either services, the water service and/or sewer service, same is subject to disconnection or turnoff.

(Ord. 399 Art. III, 1994).

## Chapter 13.16 SEWER CONNECTION CHARGES*

Sections:

13.16.010 Purpose.
13.16.030 Sewer trunk line charges.
13.16.040 Treatment plant charges.

* Prior ordinance history: Ords. 420, 426 and 509.

## 13.16.010 Purpose.

Residential, commercial, and industrial sewer connection charges for household, commercial and industrial facilities are adopted as set out in this chapter.

(Ord. 530 § 1 (Exh. A (part)), 2007: Ord. 510 § 1 (Exh. A (part)), 2006).

## 13.16.030 Sewer trunk line charges.

A.  Charges.

1.  The trunk line charges shall be determined and based upon the water service line size:

TABLE INSET:

| | |
|---|---|
| a.  With 3/4-inch water line | $ 480.00 PDU |
| b.  With 1-inch water line for two or less units | 480.00 PDU |
| c. 1- 1/2 inch water service line for four units or less | $ 1,395.00 |
| d. 2-inch water service line for five units or less | 1,740.00 |
| e. 3 or 4-inch water service lines for 15 units or less for each unit in excess of 15, an additional $290.00 per unit | 5,220.00 |
| f. Motels | 175.00 PB |

B.  Implementation. Charges enumerated hereinabove for water availability and for sewer trunk lines shall be charged and collected at the time the building plans and specifications have been approved by the proper governmental agency and building permit is requested. If charges have prior hereto been collected under prior ordinances on an acreage basis, the amount of the prior charges collected shall be credited against the charges determined herein.

(Ord. 530 § 1 (Exh. A (part)), 2007: Ord. 510 § 1 (Exh. A (part)), 2006).

## 13.16.040  Treatment plant charges.

The city finds that demands for sewer service generated by new development and redevelopment will require expansion of the wastewater treatment plant, and the facilities appurtenant thereto, and the costs for the improvements are to be borne by the developments as follows:

A.  Applicability. Immediately upon adoption, charges would apply at the building permit stage on any vacant land where no prior sewer connection existed. However, where prior sewer connection existed but the land use will be changed to more units or increased sewage discharge, the treatment plant charges would apply on a pro-rata basis. Therefore, there are no exempt units.

B.  Charges.

TABLE INSET:

| 1. Single-family residential and multiple-family units | $3,400.00 per unit |
| 2. Mobilehomes in mobilehome parks and apartments | 3,400.00 per unit |
| 3. Motels | 1,224.00 per unit |
| 4. Commercial and industrial | 13.60 per GPD of effluent |

C.  Implementation. Charges for the expansion of the treatment plant shall be collected upon issuance of building permits for new construction lots. If the sewage flow per day is used as a basis for calculating charges, the owner shall install an accurate flow-measuring device with totalizer and recorder to monitor the flow to the sewer.

An agreement between the city and owner shall provide for additional payment at the then-current rates wherever the total daily flow exceeds the previously acquired capacity.

(Ord. 530 § 1 (Exh. A (part)), 2007: Ord. 510 § 1 (Exh. A (part)), 2006).

## Chapter 13.18  SOUTHSIDE INFRASTRUCTURE SEWER FACILITY FEE

Sections:
13.18.010  Application and definitions.
13.18.020  Findings.
13.18.030  Payment of fee required when.
13.18.040  Amount of fees.
13.18.050  Disposition of development fees.
13.18.060  Annual review.
13.18.070  Repeal of inconsistent prior actions.
13.18.080  Right of appeal to city council.

## 13.18.010  Application and definitions.

The fee established by this chapter shall apply to an applicant for approval of any "development project" which is to be constructed on the "benefited properties", as those terms are defined in this section. The city council has determined that certain properties which are within the city limits as well as certain other properties which are not yet within the city limits but which are within the city's sphere of influence, are benefited by the improvements described in this chapter. The fees established by this chapter shall apply to any approval of any development project to be built on any of the benefited properties, so defined, whether or not the owners at the time of the application for approval of the development project are the current owners of the benefited property upon which the development project is to be built.

A.   "AD 93-1" and "AD 91-2". A portion of the cost of the construction of the Southside Infrastructure Project Improvements was paid by means of the proceeds of the sale of Wasco Assessment District 1991-2 limited obligation improvement bonds and another portion was paid by means of the proceeds of the sale of Wasco Assessment District 1993-1 limited obligation improvement bonds, which are hereinafter referred to as AD 91-2 and AD 93-1, respectively.

B.   "Benefited properties" means each of the parcels which, on the effective date of the ordinance codified in this chapter, bears one or more of the following assessor's parcel numbers:

TABLE INSET:

| 490-010-11-00-8 (POR) | 490-020-10-00-8 |
|---|---|
| 490-010-09-00-3 | 490-020-11-00-1 |
| 488-020-08-00-6 | 489-020-01-00-2 |
| 488-020-09-00-9 | 489-020-02-00-5 |
| 488-050-01-00-4 | 489-020-03-00-8 |
| 488-050-02-00-7 | 489-020-04-00-1 |
| 488-050-03-00-0 | 489-020-06-00-7 |
| 488-050-05-00-6 | 489-020-07-00-0 |
| 488-050-06-00-9 | 489-020-08-00-3 |
| 488-050-07-00-2 | 489-020-09-00-6 |
| 488-050-08-00-5 | 489-020-10-00-8 |
| 488-050-09-00-8 | 489-020-11-00-1 |
| 490-010-01-00-9 | 489-020-13-00-7 |
| 490-010-02-00-2 | 489-020-14-00-0 |
| 490-010-03-00-5 | 489-020-16-00-6 |
| 490-020-01-00-2 | 489-020-17-01-8 |
| 490-020-02-00-5 | 071-060-05-00-1 |
| 490-020-03-00-8 | 071-123-03-00-2 (POR) |
| 490-020-04-00-1 | 071-120-14-00-1 |
| 490-020-07-00-0 | 072-120-15-00-0 |
| 490-020-08-00-3 | 072-170-01-00-8 (POR) |

Lands in AD 93-1 and AD 91-2 which hereafter develop at a level of intensity of development greater than was projected in the engineer's report for their respective assessment district, are also in the definition of "benefited properties" to the extent, but only to the extent that they develop at a level of intensity of use which is greater than paid for by means of the assessment district process. Lands in one or the other of the two assessment districts, which were assessed but whose assessments were deferred by the city are also included in the definition of "benefited properties" whether or not they are listed by assessor's parcel number above.

C.   "Development project" means zone change, general plan amendment, approval of a parcel map, site plan or tentative subdivision map or issuance of a building permit for land which includes any part or parcel of the benefited properties or any of them, as determined by the resolution of the council which sets the rate for the fees established by this chapter.

D.   "Engineering study" means that certain document entitled "Engineering Study - City of

Case 1:07-cv-01080-LJO-GSA    Document 135    Filed 09/30/09    Page 32 of 54

Wasco Southside Zone of Benefit Southside Infrastructure Improvements" prepared for the City by QUAD Engineering, Inc. and lodged with the City Clerk on or before Friday, December 6, 1996.

E.  "Southside infrastructure project" means the public improvements which included sewer mains and other related improvements, which benefit the Southside Infrastructure Project Area and which are more fully described in the engineering study.

F.  "Southside Infrastructure Project Area" means all of the benefited properties listed herein.

(Ord. 415 § 1(part), 1997).

## 13.18.020  Findings.

The city council creates and establishes a separate development impact fee for the Southside Infrastructure Project Area which shall be used to reimburse the costs incurred by the city for sanitary sewer improvements as described in the engineering study to serve the Southside Infrastructure Project Area.

A.  The city council has already established and affirms its development facility fees for sewage treatment facilities and sewage collection facilities, were adopted by Ordinance 91-370 which are more fully set forth in Chapter 13.12 of Title 13 of this code. The development fees for the Southside Infrastructure Project Area established pursuant to this chapter are in addition to and not instead of the development facility fees already so established. For convenience, the Southside Infrastructure Project development fees established by this chapter shall, for the balance of this chapter, be referred to by the singular term, "the fee."

B.  The purpose of the fee set forth in this chapter is to reimburse the city's enterprise funds' capital accounts for the costs incurred by the city in constructing the public Southside Infrastructure Project, (including but not limited to reimbursing the Wasco redevelopment agency for the six hundred sixty-five thousand dollars which it contributed to these accounts for these public improvements) and shall be used by the city in conformity with the limitations placed upon those accounts. A fair and just cost distribution between the benefited properties for each of these improvements would be to base the distribution upon the following criteria:

1.  Based upon the land use designated for the property in the city's general plan, and assuming build-out to maximum capacity, the projected number of residential units per acre for residential property, assuming: (a) five residential units per acre for low-density residential property which would result in three hundred gallons of sewage per day, per unit, for an average daily flow of one thousand five hundred gallons per day per acre; and (b) sixteen residential units per acre for medium-density residential property which would result in two hundred fifty gallons per day per unit, for an average daily flow of four thousand gallons per day per acre;

2.  For sewer, based upon the land use designated for the property in the city's general plan, and assuming build-out to maximum capacity, assuming: (a) for commercial property an average rate of flow of three thousand five hundred ninety gallons per day per acre with a peak flow of six thousand four hundred sixty gallons per day per acre; and (b) for industrial property an average rate of flow of four thousand eight hundred fifty gallons per day per acre with a peak flow of nine thousand six hundred ninety-five gallons per day per acre.

C.  There is a reasonable relationship between the purpose of these fees and the benefited properties because the benefited properties will benefit from the public improvements and the development of the benefited properties would necessitate the

construction of these public improvements at that time.

D.  The size of the fees shall be determined by the council of the city by resolution. No such fee shall be set unless it is determined by the council to bear a reasonable relationship to the cost of the public facilities attributable to the development on which the fee is imposed. Each such resolution which set the amount of the fees shall identify the public improvement for which the fee is charged and the method of determining the amount of the fee.

(Ord. 415 § 1(part), 1997).

## 13.18.030  Payment of fee required when.

Each of the benefited properties shall be assessed for a proportional share of the costs to the city of constructing the public improvements. The proportion shall be determined by the council by resolution but shall be based on the level of benefit which the council determines is applicable to that parcel of benefited property compared to the level of benefit received by the other benefited properties. The level of benefit to a property may be higher for more intense uses, such that a fee for a single-family use on one property would be lower than a multifamily use on that same property. The city council may determine that each of the parcels are benefited equally from the public improvements, in which case the fraction shall be one divided by the total number of properties which are determined to be benefited properties. The fee shall be payable at the time of the application for approval of a development project on the benefited property as more fully identified in the resolution setting the amount of the fee.

(Ord. 415 § 1(part), 1997).

## 13.18.040  Amount of fees.

A.  The fees set forth in this chapter shall be adjusted from time to time, but at least once every five years (or more frequently if required by changes in state law subsequent to the effective date of the ordinance codified in this chapter,) after a public hearing, subject to city council review and approval, to reflect changes in the project costs of construction, adjusted for inflation, less the cost of the improvements to serve the assessment district properties. The city council finds that there is a reasonable relationship between the amount of the fee set by resolution of the city council and the cost of the public facilities or portions thereof attributable to the development on which the fee is imposed. The basis for such determination is set out in reports to the city council from the city manager, the city planner and the city engineer and such consultants as the city council determines are necessary, if any, to develop accurate costs and fees to cover such costs.

B.  The method for the determination of the amount of these fees for each parcel, based upon the factors set forth in Section 13.18.020B, would be as follows: The costs would be spread proportionally based upon the land area served, based on the number of single-family residential equivalent dwelling units, (EDU). The service area would be based upon the design capacity of the sewer trunk line. Capacity would be assigned to each EDU based on the city's design standard criteria at an average flow of three hundred gallons per residential unit per day multiplied by a peaking factor. The total number of EDU's would be calculated by dividing the design capacity of the trunk line by the peak flow per EDU. The cost allocated to the benefited area would be the costs of the Southside Infrastructure Project sewer system improvements multiplied by the percentage of capacity remaining in the new trunk sewer line after subtracting the capacity attributable to the nonbenefited properties served.

(Ord. 415 § 1(part), 1997).

### 13.18.050  Disposition of development fees.

A.  Pursuant to Government Code Section 66006, there is established a separate reserve account within the sewer enterprise account. Any fee paid pursuant to the provisions of this chapter shall be placed into the reserve account established for such fees and used solely for the purpose of implementation of the applicable public purpose for which the reserve account was established. All moneys in the reserve accounts established by this chapter shall be held separate and apart from other city funds. All interest or other earnings of each such reserve account shall be credited to that account.

B.  All moneys and interest in the reserve account established by this chapter shall be expended on the implementation of the applicable public purpose for which the fee was established, in the following order of priority:

1.  The reimbursement to the Wasco redevelopment agency for all direct and indirect costs incurred by the Wasco redevelopment agency for such implementation pursuant to this chapter, including but not limited to, the costs of right-of-way acquisition, planning, legal advice, engineering, design, construction and equipment, as well as the actual cost of construction of the subject improvements.

2.  The reimbursement to the city for all direct and indirect costs incurred by the city, (not including that portion of the costs of the subject improvements which was paid by the proceeds of the sale of either the AD 91-2 or the AD 93-1 bonds, described earlier in this chapter) for such implementation pursuant to this chapter, including but not limited to, the costs of right-of-way acquisition, planning, legal advice, engineering, design, construction and equipment, as well as the actual cost of construction of the subject improvements.

3.  The city shall use the balance of the funds so deposited into these special accounts (along with interest earnings thereon) for the costs of additional, future public facilities as specified in this chapter and only for the category of improvements for which the funds were deposited in that particular account.

C.  If a fee paid by an owner or developer for a particular development has been retained by the city for five or more years, and city has not committed that fee to costs for public facilities, then the city council shall make findings describing the continuing need to retain the fee each fiscal year thereafter. The city council does not make such findings, then the city shall refund the collected fees as appropriate, along with the interest, if any, which those funds have generated since they were collected.

(Ord. 415 § 1(part), 1997).

### 13.18.060  Annual review.

A.  Each year, during the budget review process, the city council shall review the status of compliance with this chapter and the degree to which fees collected pursuant to this chapter are mitigating the impacts of new industrial, commercial and residential development projects and new development entitlements.

B.  For each of the accounts established by this chapter, the city shall, within sixty days after the close of each fiscal year, make available to the public all of the following information:

1.  The beginning and ending balance for the fiscal year in that account;

2.  The fee, interest and other income to that account for the fiscal year;

3.  The amount of expenditure by line item category from that account during the fiscal year;

4.  The amount of refunds made pursuant to Section 66001(e) of the Government Code out of that account during the fiscal year.

C.  The city council shall review the information described in subsection B of this section at the next regularly scheduled public meeting of the council, not less than fifteen days after the information required by that subsection is made available to the public.

D.  Five years after the effective date of the ordinance codified in this chapter, the city council shall consider a report by the city manager reviewing the fee formulae established to implement the provisions of this chapter to determine whether any adjustments in the fee formulae are warranted.

E.  Once all of the benefited properties have developed and paid the fees associated with them have been paid, the city council shall determine whether there is any further need for this chapter. If there is none, the council may rescind the ordinance codified in this chapter and provide a final accounting of the reserve accounts created pursuant to the ordinance codified in this chapter.

(Ord. 415 § 1(part), 1997).


## 13.18.070  Repeal of inconsistent prior actions.

Any provision of previously adopted ordinances or resolutions of the city inconsistent with the provisions of this chapter, to the extent of such inconsistency and no further, is repealed or modified to the extent necessary to effect the provisions of this chapter.

(Ord. 415 § 1(part), 1997).


## 13.18.080  Right of appeal to city council.

Any person subject to a fee required by this chapter may apply to the city council for a reduction, adjustment or waiver of that fee based upon the absence of a reasonable relationship between the impact of that person's development project and the amount of the fee charged or the type of facilities to be provided.

(Ord. 415 § 1(part), 1997).


## Chapter 13.19  NORTHSIDE INFRASTRUCTURE SEWER AND WATER FACILITY FEES

Sections:
13.19.010  Application and definitions.
13.19.020  Findings.
13.19.030  When payment of fee is required.
13.19.040  Amount of fees.
13.19.050  Disposition of development fees.
13.19.060  Annual review.
13.19.070  Repeal of inconsistent prior actions.
13.19.080  Right of appeal to city council.


## 13.19.010  Application and definitions.

The fees established by this chapter shall apply to an applicant for any "development project" which is to be constructed on the "benefited properties," as those terms are defined in this section. The city council has determined that certain properties which are within the city limits, as well as certain other properties which are not yet within the city limits but which are within the city's sphere of influence, are benefited by the improvements described in this chapter. The fees established by this chapter shall apply to any approval of any development project to be built on any of the benefited properties, so defined, whether or not the owners at the time of the application for approval of the development project are the current owners of the benefited property upon which the development project is to be built.

   A.   "Benefited Properties" means each of the parcels which, on the effective date of the ordinance codified in this chapter, bears one or more of the following assessor's parcel numbers:

TABLE INSET:

| | | |
|---|---|---|
| 488-010-03-00-8 | 488-010-07-00-0 | 487-010-42-00-4 |
| 487-010-41-00-1 | 488-010-10-00-8 | 488-010-11-00-1 |
| 487-010-09-00-9 | 487-010-19-00-8 | 487-010-23-00-9 |
| 487-010-26-00-8 | 487-010-27-00-1 | 487-010-44-00-0 |
| 488-010-12-00-4 | 487-010-18-01-4 | 487-040-08-00-5 |
| 487-040-13-00-9 | 487-040-15-00-5 | 487-040-16-00-8 |
| 487-040-17-00-1 | 487-040-09-00-8 | 487-250-01-00-5 |
| 487-250-02-00-8 | 487-250-03-00-1 | 487-250-04-00-4 |
| 487-250-05-00-7 | 487-250-06-00-0 | 487-250-07-00-3 |
| 487-250-08-00-6 | 487-250-09-00-9 | 487-250-10-00-1 |
| 487-250-11-00-4 | 487-250-12-00-7 | 487-020-08-00-9 |
| 487-020-20-00-3 | 487-020-19-00-1 | 487-020-21-00-6 |
| 487-020-22-00-9 | 487-020-07-00-6 | 487-040-02-00-7 |
| 488-040-07-00-2 | 487-040-10-00-0 | 487-040-05-00-6 |
| 488-010-18-00-2 | | |

   B.   "Development Project" means approval of a parcel map, site plan or tentative subdivision map or issuance of a building permit for land which includes any part or parcel of the benefited properties or any of them, as determined by the resolution of the council which sets the rate for the fees established by this chapter.

   C.   "Engineering study" means that certain document entitled "Impact Fee Engineering Study - City of Wasco Northside Zone of Benefit Northside Infrastructure Improvements" prepared for the city by Helt Engineering, Inc. and lodged with the city clerk on or before September 14, 2000.

   D.   "Northside infrastructure project" means the public improvements which included sewer mains and other related improvements and water pipelines and other related improvements, which benefit the northside infrastructure project area and which are more fully described in the engineering study.

   E.   "Northside infrastructure project area" means all of the benefited properties listed herein.

(Ord. 446 § 1(part), 2000).

## 13.19.020 Findings.

The city council creates and establishes a separate development impact fee for the northside infrastructure project area which shall be used to reimburse the costs incurred by the city for sanitary sewer improvements and water system improvements as described in the engineering study to serve the northside infrastructure project area.

A.   The city council has already established and affirms its development facility fees for sewage treatment facilities and sewage collection facilities and for water system facilities which are more fully set forth in Chapter 13.12 of this code. The development fees for the northside infrastructure project area established pursuant to this chapter are in addition to and not instead of the development facility fees already so established. For convenience, the northside infrastructure project development fees established by this chapter shall, for the balance of this chapter, be referred to by the singular term, "the fee."

B.   The purpose of the fee set forth in this chapter is to reimburse the city's enterprise funds' capital accounts for the costs incurred by the city in constructing the public northside infrastructure project and shall be used by the city in conformity with the limitations placed upon those accounts. A fair and just cost distribution between the benefited properties for each of these improvements would be to base the distribution on the following criteria:

1.   The fees attributable to any property will be based on the number of "equivalent dwelling units" (EDU) each development will generate. Based upon the land use designated for the property in the city's general plan, and assuming build out to maximum capacity, the projected number of residential units per acre for residential property, assuming (a) five residential units (EDU)/acre for low density residential property and; (b) fifteen residential units (EDU)/acre for high density residential property.

2.   Nonresidential properties are to be charged at (a) 11.96 EDU/acre for commercial properties; and (b) 16.16 EDU/acre for industrial or M zoned properties.

C.   There is a reasonable relationship between the purpose of these fees and the benefited properties because the benefited properties will benefit from the public improvements and the development of the benefited properties would necessitate the construction of the public improvements at that time.

(Ord. 446 § 1(part), 2000).

## 13.19.030 When payment of fee is required.

Each of the benefited properties shall be charged for a proportional share of the costs to the city of the construction the public improvements. The fee shall be payable at the time of the application for approval of a development project on a benefited property.

(Ord. 446 § 1(part), 2000).

## 13.19.040 Amount of fees.

A.   The fees set forth herein shall be adjusted from time to time, but at least once every five years (or more frequently if required by changes in state law subsequent to the effective date of the ordinance codified in this chapter) after a public hearing, subject to city council review and approval, to reflect changes in the uses of the benefited properties. The city council finds that

there is a reasonable relationship between the amount of the fee set herein and the public facilities or portions thereof attributable to the development project on which the fee is imposed. The basis for such determination is set out in that report titled "Impact Fee Engineering Study - City of Wasco Northside Zone of Benefit - Northside Infrastructure Improvements," dated August, 2000, on file with the city clerk of the city. Based on the report, the fees to be set forth are as follows:

    1.  Sewer Fees. One hundred twenty nine dollars and twenty-three cents per EDU;

    2.  Water Fees. Fifty-six dollars and seven cents per EDU.

(Ord. 446 § 1(part), 2000).


## 13.19.050 Disposition of development fees.

A. Pursuant to Government Code Section 66006, there is established separate reserve accounts within the sewer and water enterprise accounts. Any fee paid pursuant to the provisions of this chapter shall be placed into the reserve account established for such fees and used solely for the purpose of implementation of the applicable public purpose for which the reserve account was established. All moneys in the reserve account shall be credited to that account.

B. All moneys and interest in the reserve account established by this chapter shall be expended on the implementation of the applicable public purpose for which the fee was established, in the following order of priority:

    1.  The reimbursement to the city for all direct and indirect costs incurred by the city for such implementation pursuant to this chapter, including but not limited to, the costs of right-of-way acquisition, planning, legal advice, engineering, design, construction and equipment, as well as the actual cost of construction of the subject improvements;

    2.  The city shall use the balance of the funds so deposited into these special accounts (along with interest earnings thereon) for the costs of additional, future public facilities as specified herein and only for the category of improvements for which the funds were deposited in that particular account.

C. If a fee paid by an owner or developer for a particular development has been retained by the city for five or more years, and the city has not committed that fee to costs for public facilities, then the city council shall make findings describing the continuing need to retain the fee each fiscal year thereafter. If the city council does not make such findings, then the city shall refund the collected fees as appropriate, along with the interest, if any, which those funds have generated since they were collected.

(Ord. 446 § 1(part), 2000).


## 13.19.060 Annual review.

A. Each year, during the budget review process, the city council will review the status of compliance with this chapter and the degree to which fees collected pursuant to this chapter are mitigating the impacts of new industrial, commercial and residential development projects and new development entitlements.

B. For each of the accounts established by this chapter, the city shall, within sixty days after the close of each fiscal year, make available to the public all of the following information:

    1.  The beginning and ending balance for the fiscal year in that account;

    2.  The fee, interest and other income to that account for the fiscal year;

3.  The amount of expenditure by line item category from that account during the fiscal year;

4.  The amount of refunds made pursuant to Section 66001(e) of the Government Code out of that account during the fiscal year.

C.  The city council shall review the information described in subsection B of this section, at the next regularly scheduled public meeting of the council, not less than fifteen days after the information required by that subsection is made available to the public.

D.  Five years after the effective date of the ordinance which adopted this chapter, the city council will consider a report by the city manager reviewing the fee formulae established to implement the provisions of this chapter to determine whether any adjustments in the formulae are warranted.

E.  Once all of the benefited properties have developed and the fees associated with them have been paid, the city council will determine whether there is any further need for this chapter. If there is none, the council may rescind the ordinance codified in this chapter and provide a final accounting of the reserve accounts created pursuant to the ordinance codified in this chapter.

(Ord. 446 §1(part), 2000).

## 13.19.070  Repeal of inconsistent prior actions.

Any provision of previously adopted ordinances or resolutions of the city inconsistent with the provisions of this chapter, to the extent of such inconsistency and no further, is repealed or modified to the extent necessary to effect the provisions of this chapter.

(Ord. 446 §1(part), 2000).

## 13.19.080  Right of appeal to city council.

Any person subject to a fee required by this chapter may apply to the city council for a reduction, adjustment or waiver of that fee based upon the absence of a reasonable relationship between the impact of that person's development project and the amount of the fee charged or the type of facilities to be provided.

(Ord. 446 §1(part), 2000).

## Chapter 13.21  VALLEY ROSE ESTATES INFRASTRUCTURE SEWER AND WATER FACILITY FEES

Sections:
13.21.010  Application and definitions.
13.21.020  Findings.
13.21.030  When payment of fee is required.
13.21.040  Amount of fees.
13.21.050  Disposition of development fees.
13.21.060  Annual review.
13.21.070  Repeal of inconsistent prior actions.
13.21.080  Right of appeal to city council.

## 13.21.010  Application and definitions.

The fees established by this chapter shall apply to an applicant for any "development project" which is to be constructed on the "benefited properties," as those terms are defined in this section. The city council has determined that certain properties which are within the city limits as well as certain other properties which are not yet within the city limits but which are within the city's sphere of influence, are benefited by the improvements described in this chapter. The fees established by this chapter shall apply to any approval of any development project to be built on any of the benefited properties, so defined, whether or not the owners at the time of the application for approval of the development project are the current owners of the benefited property upon which the development project is to be built.

"Benefited properties" means each of the parcels which, on the effective date of the ordinance codified in this chapter, bears one or more of the following assessor's parcel numbers:

487-050-46-0;
487-050-47-8;
487-050-48-6;
487-050-40-3.

"Development project" means approval of a parcel map, site plan or tentative subdivision map or issuance of a building permit for land which includes any part or parcel of the benefited properties or any of them, as determined by the resolution of the council which sets the rate for the fees established by this chapter.

"Engineering study" means that certain document entitled "Impact Fee Engineering Study - City of Wasco Valley Rose Estates Zone of Benefit Valley Rose Estates Infrastructure Improvements" prepared for the city by Helt Engineering, Inc. and lodged with the city clerk on or before December 7, 2004.

"Valley Rose Estates infrastructure project" means the public improvements which included sewer mains and other related improvements and water pipelines and other related improvements, which benefit the Valley Rose Estates infrastructure project area and which are more fully described in the engineering study.

"Valley Rose Estates infrastructure project area" means all of the benefited properties listed in this chapter.

(Ord. 493 § 1 (Exh. A(part)), 2004).


## 13.21.020 Findings.

The city council creates and establishes a separate development impact fee for the Valley Rose Estates infrastructure project area which shall be used to reimburse the costs incurred by the city for sanitary sewer improvements and water system improvements as described in the engineering study to serve the Valley Rose Estates infrastructure project area.

A.  The city council has already established and affirms its development facility fees for sewage treatment facilities and sewage collection facilities and for water system facilities which are more fully set forth in Chapter 13.12 of this title. The development fees for the Valley Rose Estates infrastructure project area established pursuant to this chapter are in addition to and not instead of the development facility fees already so established. For convenience, the Valley Rose Estates infrastructure project development fees established by this chapter shall, for the balance of this chapter, be referred to by the singular term, "the fee."

B.  The purpose of the fee set forth in this chapter is to reimburse the city's enterprise funds' capital accounts for the costs incurred by the city in constructing the public Valley Rose Estates infrastructure project and shall be used by the city in conformity with the

limitations placed upon those accounts. A fair and just cost distribution between the benefited properties for each of these improvements would be to base the distribution on the following criteria:

1.  The fees attributable to any property will be based on the number of "equivalent dwelling units" (EDU) each development will generate. Based upon the land use designated for the property in the city's general plan, and assuming build out to maximum capacity, the projected number of residential units per acre for residential property, assuming (a) 5.5 residential units (EDU)/acre for low density residential property, nonresidential properties are to be charged at (a) 7.5 EDU/acre for neighborhood commercial properties and (b)11.96 for commercial retail properties.

C.  There is a reasonable relationship between the purpose of these fees and the benefited properties because the benefited properties will benefit from the public improvements and the development of the benefited properties would necessitate the construction of the public improvements at that time.

(Ord. 493 § 1 (Exh. A(part)), 2004).

## 13.21.030  When payment of fee is required.

Each of the benefited properties shall be charged for a proportional share of the costs to the city of the construction of the public improvements. The fee shall be payable at the time of the application for approval of a development project on a benefited property.

(Ord. 493 § 1 (Exh. A(part)), 2004).

## 13.21.040  Amount of fees.

A.  The fees set forth in this chapter shall be adjusted from time to time, but at least once every five years (or more frequently if required by changes in state law subsequent to the effective date of the ordinance codified in this chapter), after a public hearing, subject to city council review and approval, to reflect changes in the uses of the benefited properties. The city council finds that there is a reasonable relationship between the amount of the fee set in this chapter and the public facilities or portions thereof attributable to the development project on which the fee is imposed. The basis for such determination is set out in that report titled "IMPACT FEE ENGINEERING STUDY - City of Wasco VALLEY ROSE ESTATES Zone of Benefit - VALLEY ROSE ESTATES Infrastructure Improvements," dated December 2004, on file with the city clerk of the city of Wasco. Based on the report, the fees to be set forth are as follows:

1.  Sewer Fees. Nine hundred fifty-two dollars and thirty-nine cents per EDU;

2.  Water Fees. One thousand six hundred nineteen dollars and fourteen cents per EDU.

(Ord. 493 § 1 (Exh. A(part)), 2004).

## 13.21.050  Disposition of development fees.

A.  Pursuant to Government Code Section 66006, there is established separate reserve accounts within the sewer and water enterprise accounts. Any fee paid pursuant to the provisions of this chapter shall be placed into the reserve account established for such fees and used solely for the purpose of implementation of the applicable public purpose for which the reserve account was established. All monies in the reserve account shall be credited to that

account.

B.  All monies and interest in the reserve account established by this chapter shall be expended on the implementation of the applicable public purpose for which the fee was established, in the following order of priority:

    1.  The reimbursement to the city of Wasco for all direct and indirect costs incurred by the city for such implementation pursuant to this chapter, including but not limited to, the costs of right-of-way acquisition, planning, legal advice, engineering, design, construction and equipment, as well as the actual cost of construction of the subject improvements.

    2.  The city shall use the balance of the funds so deposited into these special accounts (along with interest earnings thereon) for the costs of additional, future public facilities as specified in this chapter and only for the category of improvements for which the funds were deposited in that particular account.

C.  If a fee paid by an owner or developer for a particular development has been retained by the city for five or more years, and city has not committed that fee to costs for public facilities, then the city council shall make findings describing the continuing need to retain the fee each fiscal year thereafter. If the city council does not make such findings, then the city shall refund the collected fees as appropriate, along with the interest, if any, which those funds have generated since they were collected.

(Ord. 493 § 1 (Exh. A(part)), 2004).


## 13.21.060  Annual review.

A.  Each year, during the budget review process, the city council will review the status of compliance with this chapter and the degree to which fees collected pursuant to this chapter are mitigating the impacts of new industrial, commercial and residential development projects and new development entitlements.

B.  For each of the accounts established by this chapter, the city shall, within sixty days after the close of each fiscal year, make available to the public all of the following information:

    1.  The beginning and ending balance for the fiscal year in that account;

    2.  The fee, interest and other income to that account for the fiscal year;

    3.  The amount of expenditure by line item category from that account during the fiscal year;

    4.  The amount of refunds made pursuant to Section 66001(e) of the Government Code out of that account during the fiscal year.

C.  The city council shall review the information described in subsection B of this section, at the next regularly scheduled public meeting of the council, not less than fifteen days after the information required by that subsection is made available to the public.

D.  Five years after the effective date of the ordinance which adopted this chapter, the city council will consider a report by the city manager reviewing the fee formulae established to implement the provisions of this chapter to determine whether any adjustments in the formulae are warranted.

E.  Once all of the benefited properties have developed and the fees associated with them have been paid, the city council will determine whether there is any further need for this chapter. If there is none, the council may rescind the ordinance codified in this chapter and provide a final accounting of the reserve accounts created pursuant to the ordinance codified in this chapter.

(Ord. 493 § 1 (Exh. A(part)), 2004).

## 13.21.070 Repeal of inconsistent prior actions.

Any provision of previously adopted ordinances or resolutions of the city inconsistent with the provisions of this chapter, to the extent of such inconsistency and no further, is repealed or modified to the extent necessary to effect the provisions of this chapter.

(Ord. 493 § 1 (Exh. A(part)), 2004).

## 13.21.080 Right of appeal to city council.

Any person subject to a fee required by this chapter may apply to the city council for a reduction, adjustment or waiver of that fee based upon the absence of a reasonable relationship between the impact of that person's development project and the amount of the fee charged or the type of facilities to be provided.

(Ord. 493 § 1 (Exh. A(part)), 2004).

## Chapter 13.24  TRAFFIC IMPACT FEE ORDINANCE

Sections:
13.24.010  Legislative findings.
13.24.020  Short title, authority and applicability.
13.24.030  Intents and purposes.
13.24.040  Rules of construction.
13.24.050  Definitions.
13.24.060  Imposition of transportation impact fee.
13.24.070  Fee schedule.
13.24.080  Computation of the amount of transportation impact fee.
13.24.090  Payment of fee.
13.24.100  Timing of fee payment.
13.24.110  Transportation impact fee trust fund established.
13.24.120  Use of funds.
13.24.130  Refund of fees paid.
13.24.140  Exemption and credits.
13.24.150  Exemptions.
13.24.160  Penalty provisions.
13.24.170  Severability.

## 13.24.010  Legislative findings.

The city council of the city finds, determines and declares that:

A. The city must implement its circulation element in order to maintain adopted levels of service, and to ensure that there is correlation of the land use and circulation element of the general plan. This must be done in order to promote and protect the public health, safety and welfare;

B. The California Legislature through the enactment of California statutes has sought to encourage the city to enact impact fees;

C. The imposition of impact fees is an essential method of ensuring that adequate circulation facilities are provided and that the cost of capital facilities are apportioned based on a reasonable relationship between the fee and the type of development

necessary to accommodate such development. This must be done in order to promote and protect the public health, safety and welfare;

D. Each of the types of land development described in Section 13.24.470, will generate traffic necessitating the acquisition of rights-of-way, street construction and street improvements;

E. The fees established by Section 13.24.070 are derived from, are based upon, and do not exceed the costs of providing additional rights-of-way, street construction and street improvements necessitated by the new land developments for which the fees are levied;

F. The report entitled "City of Wasco Future Conditions Report," as may be revised from time to time, sets forth a reasonable methodology and analysis for the determination of the unfounded portion of new facilities and the need for and costs for additional rights-of-way, street construction and street improvements in the city.

(Ord. 469 § 1(part), 2002).

## 13.24.020 Short title, authority and applicability.

A. This chapter shall be known and may be cited as the "City of Wasco Transportation Impact Fee Ordinance."

B. The city council of the city has the authority to adopt this chapter pursuant to Article XI of Section 7 of the Constitution of the state of California, and pursuant to Government Code Sections 65300 et seq. 66000 et seq. and 66470 et seq. of California statutes.

C. This chapter shall apply in the incorporated area of the city to the extent permitted by Article XI of Section 7 of the Constitution of the state of California.

(Ord. 469 § 1(part), 2002).

## 13.24.030 Intents and purposes.

A. This chapter is intended to assist in the implementation of the circulation element of the general plan.

B. The purpose of this chapter is to regulate the use and development of land so as to assure that circulation facilities needed to service land uses are constructed.

(Ord. 469 § 1(part), 2002).

## 13.24.040 Rules of construction.

A. The provisions of this chapter shall be liberally construed so as to effectively carry out its purpose in the interest of the public health, safety and welfare.

B. For the purpose of administration and enforcement of this chapter, unless otherwise stated in this ordinance, the following rules of construction shall apply to the text of this chapter:

1. In case of any difference of meaning or implication between the text of this chapter and any caption, illustration, summary table, or illustrative table, the text shall control.

2. The word "shall" is always mandatory and not discretionary; the word "may" is permissive.

3. Words used in the present tense shall include the future; and words used in the singular number shall include the plural, and the plural the singular, unless the context clearly indicates the contrary.

4. The phrase "used for" includes "arranged for," "designed for," "maintained for" or "occupied for."

5. The word "person" includes an individual, a corporation, a partnership, an incorporated association, or any other similar entity.

6. Unless the context clearly indicates the contrary, where a regulation involves two or more items, conditions, provisions, or events connected by the conjunction "and," "or" or "either...or," the conjunction shall be interpreted as follows:

a. "And" indicates that all the connected terms, conditions, provisions or events shall apply.

b. "Or" indicates that the connected items, conditions, provisions or events may apply singly or in any combination.

c. "Either...or" indicates that the connected items, conditions, provisions or events shall apply singly but not in combination.

7. The word "includes" shall not limit a term to the specific example but is intended to extend its meaning to all other instances or circumstances of like kind or character.

8. "City engineer" means the city engineer or city officials he/she may designate to carry out the administration of this chapter.

9. A street right-of-way used to define transportation impact fee district boundaries may be considered within any district it bounds.

(Ord. 469 § 1(part), 2002).

## 13.24.050 Definitions.

As used in this chapter, the following terms are defined in this section:

"Arterial street" shall have the same meaning as set forth in the Wasco circulation element.

A "capital improvement" includes transportation planning, preliminary engineering, engineering design studies, land surveys, right-of-way acquisition, engineering, permitting and construction of all the necessary features for any street construction project including, but not limited to:

1. Construction of new through lanes;

2. Construction of new turn lanes;

3. Construction of new bridges or culverts;

4. Construction of new drainage facilities in conjunction with new street construction;

5. Purchase and installation of traffic signalization (including new and upgraded signalization);

6. Construction of curbs, medians, and shoulders; and

7. Relocating utilities to accommodate new street construction.

"Collector street" shall have the same meaning as set forth in the Wasco circulation element.

"Development permit" means a regulatory approval by the city, including ministerial and discretionary actions.

"Engineer" is the city engineer of the city of Wasco.

"Expansion" of the capacity of a road applies to all street and intersection capacity enhancements and includes, but is not limited to, extensions, widening, intersection improvements, upgrading signalization and expansion of bridges or culverts.

"Fee payer" means a person commencing a land development activity which generates traffic and which requires the issuance of a building permit or permit for mobile home installation.

"Independent fee calculation study" means the traffic engineering and/or economic documentation prepared by a fee payer to allow the determination of the impact fee other than by the use of the schedule referenced in Section 13.24.070(A).

"Land development activity generating traffic" means any change in land use or any construction of buildings or structures or any change in the use of any structure that attracts or produces vehicular trips.

"Level of service" has the same meaning as set forth in the Wasco circulation element.

"Major arterial" has the same meaning as set forth in the Wasco circulation element.

"Mandatory or required right-of-way dedication and/or street improvements" means such noncompensated dedications and/or street improvements required by the city.

"Site-related improvements" means capital improvements and right-of-way dedications for direct access improvements to and/or within the development in question. Direct access improvements include, but are not limited to, the following: (1) access streets leading to the development; (2) driveways and streets within the development; (3) acceleration and deceleration lanes, and right and left turn lanes leading to those streets and driveways; and (4) traffic control measures for those streets and driveways.

"Street" has the same meaning as set forth in the municipal code.

"Trip" means a single or one direction vehicle movement with either the origin or destination (exiting or entering) inside the study site.

"Trip ends" means the total of all trips entering plus all trips leaving a designated land use or building type over a period of time.

(Ord. 469 § 1(part), 2002).


## 13.24.060 Imposition of transportation impact fee.

A. Any person who, after the effective date of this chapter, seeks to develop land within the city by applying for: a building permit; an extension of a building permit issued prior to that date; a permit for mobile home installation; or an extension of a permit for mobile home installation issued prior to that date, to make an improvement to land which will generate additional traffic, is required to pay a transportation impact fee in the manner and amount set forth in this chapter.

B. No new building permit or new permit for mobile home installation for any activity requiring payment of an impact fee pursuant to Section 13.24.070 shall be issued unless and until the transportation impact fee required has been paid.

C. No extension of a building permit or permit for mobile home installation issued prior to the effective date of this chapter, for any activity requiring payment of an impact fee pursuant to Section 13.24.070 shall be granted unless and until the transportation impact fee required has been paid. This subsection shall not apply if the applicant applying for an extension of a building permit or permit for mobile home installation can demonstrate that a good faith effort has been applied to begin construction or that substantial completion has occurred in conformance with the approved building permit or permit for mobile home installation.

(Ord. 469 § 1(part), 2002).

### 13.24.070 Fee schedule.

A.  The council shall establish by resolution, a schedule of transportation impact fees calculated to provide the sum of money necessary to pay the estimated total cost, as set forth in the report entitled "City of Wasco Future Conditions Report." Such schedule shall be conditional and based on the following findings by the council:

　1.  That the planned transportation facilities are in conformity with the circulation element of the general plan of the city;

　2.  That the development of property will require construction or acquisition of planned transportation facilities and that the fees are fairly apportioned on the basis of benefits conferred on property developed or to be developed or on the need for planned transportation facilities created by proposed or existing development of property;

　3.  That transportation facilities planned are in addition to any existing transportation facilities serving the city at the time of adoption of the circulation element of the general plan are necessary to complete the planned transportation facilities.

B.  The schedule of fees shall be those amounts as established by a resolution of the council and shall remain in effect until subsequently amended. If not explicitly amended by resolution, each July 1st thereafter, the schedule of fees shall be adjusted in accordance with the following criteria:

　1.  On April 1st of each year the city engineer shall review the current Engineering News Record Construction Cost Index (ENRCCI) for the cities of Los Angeles and San Francisco, CA. When the average of such indices differs from the average of the indices for the preceding April 1st, the factor of increase or decrease shall be applied to the schedule of fees. Such factor shall be computed by dividing the average ENRCCI for the current April 1st by that pertaining to the previous April 1st. The individual transportation impact fee rates may be multiplied by the factor to determine the adjusted schedule of fees. The engineer shall present the new fee schedule for adoption by resolution of council after at least one public hearing.

　2.  If new improvements are added by an amendment of the circulation element, the engineer shall add to the schedule of fees the transportation impact fee rates for the new planned transportation facilities established by the council concurrently with the amendment of the circulation element adding thereto such new planned transportation facilities.

　3.  If in the determination of the engineer the adjustment of the schedule of fees produced by the procedure in subdivision 1 of this subsection is not representative of the actual change in costs of the planned transportation facilities, the engineer may, in lieu of the procedures set forth in said paragraph, compute a new schedule of fees for adoption by resolution of the council after at least one public hearing.

　4.  In the event of the adoption of a new schedule of fees by resolution of the council, such new schedule shall become effective sixty days after the adoption thereof by the council. The adjustment of such schedule provided in subdivision 1 of this subsection shall begin the April 1st next occurring after adoption of the new schedule.

(Ord. 469 § 1(part), 2002).

### 13.24.080 Computation of the amount of transportation impact fee.

A. At the option of the fee payer, the amount of the transportation impact fee may be determined from the fee schedule established pursuant to Section 13.24.070.

    1.  If a building permit is requested for mixed uses, then the fee shall be determined by using the applicable schedule by apportioning the space committed to uses specified on the applicable schedule.

    2.  For applications for an extension of a building permit or an extension of a permit for mobile home installation, the amount of the fee is the difference between that fee then applicable and any amount already paid pursuant to this chapter.

    3.  If the type of development activity that a building permit is applied for is not specified on the applicable fee schedule, the engineer shall use the fee applicable to the most nearly comparable type of land use on the fee schedule. The engineer shall be guided in the selection of a comparable type by the report titled "Trip Generation" (latest edition) prepared by Institute of Transportation Engineers. If the engineer determines that there is no comparable type of land use on the applicable fee schedule, then the engineer shall determine the fee by:

        a.  Using traffic generation statistics contained in a report titled "Trip Generation" (latest edition) prepared by Institute of Transportation Engineers; and

        b.  Applying the formula set forth in Section 13.24.070(B).

    4.  In the case of change of use, redevelopment or expansion or modification of an existing use which requires the issuance of a building permit or permit for mobile home installation, the impact fee shall be based upon the net increase in the number of trips compared to the previous use. The engineer shall be guided in this determination by traffic generation statistics contained in a report titled "Trip Generation" (latest edition) prepared by Institute of Transportation Engineers.

B. If a fee payer elects not to have the impact fee determined according to subsection A of this section, then the fee payer shall prepare and submit to the engineer an independent fee calculation study for the land development activity for which a building permit or permit for mobile home installation is sought. The independent fee calculation study shall follow professionally accepted methodologies and formats for a study of this type. The traffic engineering and/or economic documentation submitted shall show the basis upon which the independent fee calculation was made, including, but not limited to, the following:

    1.  Traffic Engineering Studies.

        a.  Documentation of trip generation rates appropriate for the proposed land development activity.

        b.  Documentation of any other trip data appropriate for the proposed land development activity.

    2.  Economic Documentation Studies.

        a.  The engineer shall consider the documentation submitted by the fee payer but is not required to accept documentation that is deemed to be inaccurate or not reliable and may, in the alternative, require the fee payer to submit additional or different documentation for consideration. If an acceptable in-dependent fee calculation study is not presented, the fee payer shall pay transportation impact fees based upon the schedules referenced in subsection A of this section. Determinations made by the engineer pursuant to this paragraph may be appealed to the city council by filing a written request with the city clerk within ten days of the engineer's determination.

C.  Upon acceptance of an independent fee calculation study, the engineer shall determine the impact fee pursuant to the formula cost per trip established by resolution of the city council.

(Ord. 469 § 1(part), 2002).

## 13.24.090  Payment of fee.

A.  The fee payer shall pay the transportation impact fee required by this ordinance to the city prior to the issuance of a building permit or a permit for mobile home installation.

B.  All funds collected shall be properly identified and promptly transferred for deposit in the transportation impact fee fund as determined in Section 13.24.110 and used solely for the purposes specified in this chapter.

(Ord. 469 § 1(part), 2002).

## 13.24.100  Timing of fee payment.

A.  Notwithstanding the requirements of Section 13.24.090, the city council may, by resolution, authorize the payment of the fee at a time other than that identified in Section 13.24.090.

B.  In adopting the resolution identified in subsection A of this section, the city council shall make the following findings:

1.  That the state of the economy in the city is such that the deferment of the fee required by this chapter will stimulate the economy and enhance the provision of jobs; and

2.  That the deferment of the fee required by this chapter will not materially affect the ability of the city to deliver its capital improvement program.

C.  In adopting the resolution identified in subsection A of this section, the city council shall:

1.  Identify the point in time at which the fee shall be paid;

2.  Identify to which major land use category (i.e., residential, commercial, office and/or industrial) industrial section or industry the resolution applies;

3.  Identify whether or not a contract shall be entered into by and between the property owner, or lessee if the lessee's interest appears of record, and the city prior to the issuance of the building permit. If a contract is required to be executed, it shall be processed and recorded in accordance with Government Code Section 66007(c). In lieu of entering into a contract, if one is required, the fee payer may provide such other form of surety instrument guaranteeing payment of the fee as may be acceptable to the city engineer or his/her designee and the city attorney;

4.  Impose a penalty, equal to one hundred percent of the amount of the fees deferred, on any party who fails to pay the deferred fee by the point in time specified in such resolution; and

5.  Provide that a party who fails to pay such deferred fees by the point in time specified in such resolution shall further forfeit the future right to defer such fees on parcels in which such party has a financial interest.

D.  Companies classified within the following standard industrial codes shall be able to pay their development impact fees over five years without interest or administrative fee. The first installment of twenty percent shall be due upon occupancy and the balance shall be paid in five equal annual installments thereafter and shall be collected on the property tax roll. The

collection of the balance due on the property tax roll shall not preclude the earlier payment of any outstanding balance.

TABLE INSET:

| 2000-2099 | Food processing |
| 2200-3999 | Certain other manufacturers |
| 4200-4299 | Trucking and warehousing |
| 4500-4599 | Air transportation |
| 4700-5199 | Transportation services and warehouse trade |

(Ord. 469 § 1(part), 2002).

## 13.24.110 Transportation impact fee trust fund established.

A.  There is established a separate transportation impact fee fund.

B.  Funds withdrawn from this account must be used in accordance with the provisions of Section 13.24.120.

(Ord. 469 § 1(part), 2002).

## 13.24.120 Use of funds.

A.  Funds collected from transportation impact fees shall be used for the purpose of capital improvements to and expansion of transportation facilities associated with the major arterial, arterial and collector street network as designated by the city and any other transportation projects identified in the circulation element of the general plan.

B.  No funds shall be used for periodic or routine maintenance.

C.  Funds shall be expended in the order in which they are collected.

D.  In the event that bonds or similar debt instruments are issued for advance provision of capital facilities for which transportation impact fees may be expended, impact fees may be used to pay debt service on such bonds or similar debt instruments to the extent that the facilities provided are of the type described in subsection A of this section.

E.  At least once each fiscal year, the engineer shall present to the city council a proposed capital improvement program for roads, assigning funds, including any accrued interest, from the transportation impact fee to specific road improvement projects and related expenses. Monies, including any accrued interest, not assigned in any fiscal year shall be retained in the transportation impact fee fund until the next fiscal year except as provided by the refund provisions of this chapter.

F.  Funds may be used to provide refunds as described in Section 13.24.130.

G.  The city shall be entitled to retain not more than five percent of the funds collected as compensation for the expense of collecting the fee and administering this chapter.

(Ord. 469 § 1(part), 2002).

## 13.24.130 Refund of fees paid.

A.  If a building permit or permit for mobile home installation expires without commencement of

construction, then the fee payer shall be entitled to a refund, without interest, of the impact fee paid as a condition of its issuance; except, that the city shall retain five percent of the fee to offset a portion of the costs of collection and refund. The fee payer must submit an application for such refund to the city engineer within thirty days of the expiration of the permit.

B.   Any funds not expended or encumbered by the end of the calendar quarter immediately following six years from the date the transportation impact fee was paid shall, upon application of the then current landowner, be returned to such landowner with any interest incurred thereon; provided, that the landowner submits an application for a refund to the city engineer within one hundred eighty days of the expiration of the six year period.

(Ord. 469 § 1(part), 2002).

## 13.24.140   Exemption and credits.

A.   The following shall be exempted from payment of the impact fee:

1.   Alterations or expansion of an existing building where no additional vehicular trips will be produced over and above those produced by the existing or historic use of structure.

2.   The construction of accessory buildings or structures which will not produce additional vehicular trips over and above those produced by the principal building or use of the land.

3.   The replacement of a destroyed or partially destroyed building or structure with a new building or structure of the same size and use provided that no additional trips will be produced over and above those produced by the original use of the land.

4.   The installation of a replacement mobile home on a lot or other such site when a transportation impact fee for such mobile home site has previously been paid pursuant to this ordinance or where a mobile home legally existed on such site on or prior to the effective date of this chapter.

5.   Any claim of exemption must be made no later than the time of application for a building permit or permit for mobile home installation. Any claim not so made shall be deemed waived.

B.   Credits.

1.   No credit shall be given for site-related improvements or right-of-way dedication.

2.   All mandatory or required right-of-way dedications and/or street improvements made by a fee payer, subsequent to the effective date of this chapter, except for site-related improvements, shall be credited on a pro rata basis against transportation impact fees otherwise due or to become due for the development that prompted the city to require such dedications or street improvements. Such credits shall be determined and provided as set forth in Sections 13.24.140(B)(3)(a), (b), (c) and (d).

3.   A fee payer may obtain credit against all or a portion of transportation impact fees otherwise due or to become due by offering to dedicate offsite improvements. This offer must specifically request or provide for a transportation impact fee credit. Such construction must be in accordance with city, county or state design standards, whichever is applicable. If the engineer accepts such an offer, whether the acceptance is before or after the effective date of this chapter, the credit shall be determined and provided in the following manner:

a.   Credit for the dedication of offsite right-of-way shall be valued at (i) one hundred fifteen percent of the most recent assessed value by the county

assessor, or (ii) by such other appropriate method as the city council may have accepted prior to the effective date of this chapter for particular right-of-way dedications and/or roadway improvements, or (iii) at the option of the fee payer, by fair market value established by a certified appraiser. Credit for the dedication of right-of-way shall be provided when the property has been conveyed at no charge to, and accepted by, the city in a manner satisfactory to the city council.

b.   Applicants for credit for construction of non-site-related street improvements shall submit acceptable engineering drawings and specifications, and construction cost estimates to the engineer. The engineer shall determine credit for street construction based upon either these cost estimates or upon alternative engineering criteria and construction cost estimates if the city engineer determines that such estimates submitted by the applicant are either unreliable or inaccurate. The engineer shall provide the applicant with a letter or certificate setting forth the dollar amount of the credit, the reason for the credit, and the legal description or other adequate description of the project or development to which the credit may be applied. The applicant must sign and date a duplicate copy of such letter or certificate indicating his agreement to the terms of the letter or certificate and return such signed document to the city engineer before credit will be given. The failure of the applicant to sign, date, and return such document within sixty days shall nullify the credit.

c.   Except as provided in subsection (B)(3)(d) of this section, credit against impact fees otherwise due will not be provided until:

　　i.   The construction is completed and accepted by the city;

　　ii.   A suitable maintenance and warranty bond is received and approved by the engineer, when applicable; and

　　iii.   All design, construction, inspection, testing, bonding and acceptance procedures are in strict compliance with the then current city standards.

d.   Credit may be provided before completion of specified roadway improvements if adequate assurances are given by the applicant that the standards set out in subsection (B)(3)(c) of this section will be met and if the fee payer posts security as provided below for the costs of such construction. Security in the form of a performance bond, irrevocable letter of credit or escrow agreement shall be posted with and approved by the engineer in an amount determined by the engineer consistent with the then current subdivision ordinance. If the street construction project will not be constructed within one year of the acceptance of the offer by the city engineer, the amount of the security shall be increased by ten percent compounded, for each year of the life of the security. The security shall be reviewed and approved by the engineer prior to acceptance of the security by the city clerk. If the road construction project is not to be completed within five years of the date of the fee payer's offer, the city council must approve the road construction project and its scheduled completion date prior to the acceptance of the offer by the engineer.

4.   Any claim for credit must be made no later than the time of application for a building permit or permit for mobile home installation. Any claim not so made shall be deemed waived.

5.   Credits shall not be transferable from one project or development to another without the approval of the city engineer.

6.   In the event fee schedules are subsequently changed to reflect increases or decreases in construction costs or other relevant factors, then a fee payer may request a recalculation of credits to fairly reflect such changed circumstances.

7.   Determinations made by the engineer pursuant to the credit provisions of this section may be appealed to the city council by filing a written request with the city clerk within ten days of the city engineer's determination.

(Ord. 469 § 1(part), 2002).

## 13.24.150 Exemptions.

A.   The city council may, from time to time, authorize whole or partial exceptions to the payment of the transportation impact fee required by Section 13.24.090.

B.   If the city council determines to authorize exceptions pursuant to subsection A of this section, the city council shall adopt a resolution to that effect which shall:

1.   State the findings made to support the decision to authorize exceptions to the payment of the transportation impact fee required by Section 13.24.090;

2.   Determine which classification(s) of land development activity generating traffic (residential, commercial, office or industrial) to which they will authorize exceptions to the payment of the transportation impact fee required by Section 13.24.090;

3.   Determine the percentage of the transportation impact fee for each classification of land development activity generating traffic to which they will authorize exceptions to the payment of the transportation impact fee required by Section 13.24.090;

4.   Make a budget appropriation from the general fund to the transportation impact fee fund, or such other discretionary fund, equal to the value of the exception;

5.   Set a date upon which the resolution expires. If no date is identified, such resolution shall expire at the end of the then current fiscal year.

C.   Upon the issuance of a building permit for a land development activity generating traffic classification which has been determined to be excepted from payment of the transportation impact fee pursuant to this section, the finance director shall transfer from the general fund, or such other discretionary fund as deemed appropriate by the city council, to the transportation impact fee fund an amount equal to the excepted portion of the transportation impact fee.

D.   The city council may, by the adoption of a resolution, amend any exceptions or approvals granted pursuant to any resolution adopted consistent with subsection B of this section.

E.   It is the intent of this section to provide the city council with a tool to promote the economic development of the city, while at the same time insuring sufficient revenue in the transportation impact fee fund to fund the projects that have been identified as a result of growth and development in the community. It is not the intent of this section to exempt the fee payer from having to construct or pay for site related improvements.

(Ord. 469 § 1(part), 2002).

## 13.24.160 Penalty provisions.

A violation of this chapter shall be prosecuted in the same manner as misdemeanors are prosecuted and upon conviction, the violator shall be punishable according to law; however, in addition to or in lieu of any criminal prosecution the city shall have the power to sue in civil court to enforce the provisions of this chapter.

(Ord. 469 § 1(part), 2002).

## 13.24.170  Severability.

If any section, phrase, sentence or portion of this chapter is for any reason held invalid or unconstitutional by any court of competent jurisdiction, such portion shall be deemed a separate, distinct and independent provision, and such holding shall not affect the validity of the remaining portions thereof.

(Ord. 469 § 1(part), 2002).