# EXHIBIT AA

**Okadigbo Dec**

# Title 16  SUBDIVISIONS

Chapters:

16.04 General Provisions
16.08 Definitions
16.12 Administration and Enforcement
16.16 Tentative Maps
16.20 Final and Parcel Maps
16.26 Vesting Tentative Maps
16.28 Design Standards
16.32 Improvements
16.36 Exceptions
16.40 Appeals
16.44 Storm Drainage Fees
16.46 Park Land Dedication
16.48 Violation--Penalty
Appendix A

## Chapter 16.04  GENERAL PROVISIONS

Sections:

16.04.010  Title.
16.04.020  Purpose.

## 16.04.010  Title.

This title shall be known as the subdivision ordinance of the city.

(Ord. 474 (part), 2002).

## 16.04.020  Purpose.

This title is adopted to supplement and implement the Subdivision Map Act of the state and shall apply to all subdivision within the city.

(Ord. 474 (part), 2002).

## Chapter 16.08  DEFINITIONS

Sections:

16.08.010  Generally.
16.08.020  Advisory agency.
16.08.030  Alley.
16.08.040  Appeals board.
16.08.050  Arterial street.
16.08.060  Block.
16.08.070  Collector street.
16.08.080  Commission.
16.08.090  Cul-de-sac street.
16.08.100  Designated city official.
16.08.110  Distribution line.
16.08.120  Frontage street or frontage road.
16.08.130  Legislative body.
16.08.140  Local street.
16.08.150  Lot.

16.08.155  Improvement.
16.08.157  Project area.
16.08.160  Sidewalk.
16.08.170  Standards.
16.08.180  Stubbed street.
16.08.190  Subdivision Map Act or Map Act.
16.08.200  Subdivision Map Act terms.
16.08.210  Transmission line.

## 16.08.010  Generally.

The words and phrases in this chapter shall have the meanings respectively ascribed to them in Sections 16.08.020 through 16.08.210.

(Ord. 474 (part), 2002).

## 16.08.020  Advisory agency.

"Advisory agency" means the planning commission of the city.

(Ord. 474 (part), 2002).

## 16.08.030  Alley.

"Alley" means a public way permanently reserved primarily for vehicular service access to the rear or side of properties otherwise abutting on a street.

(Ord. 474 (part), 2002).

## 16.08.040  Appeals board.

"Appeals board" means the city council of the city.

(Ord. 474 (part), 2002).

## 16.08.050  Arterial street.

"Arterial street" means a street designated as an arterial street in the general plan which, because of its design and location with respect to other streets and other sources of traffic, is used or designed to carry relatively heavy volumes of traffic through an urban area or between urban area or between urban areas, which serves as approach to a highway or freeway.

(Ord. 474 (part), 2002).

## 16.08.060  Block.

"Block" means the distance, measured along a street centerline between the centerlines of intersecting streets, between the centerline of an intersecting street and a railroad right-a-way, or between the centerline of an intersecting street and the end of said street.

(Ord. 474 (part), 2002).

## 16.08.070  Collector street.

"Collector street" means a street designated as a collector street in the general plan which, because of its location with respect to other streets and other sources of traffic, is used or designed to carry moderately heavy volumes of traffic between portions of urban areas or between arterial streets.

(Ord. 474 (part), 2002).


## 16.08.080  Commission.

"Commission" means the planning commission of the city.

(Ord. 474 (part), 2002).


## 16.08.090  Cul-de-sac street.

"Cul-de-sac street" means a street having only one outlet for vehicular traffic and which is not intended to be extended or continued to serve future development on adjacent lands.

(Ord. 474 (part), 2002).


## 16.08.100  Designated city official.

"Designated city official" means any employee or other representative of the city appointed by ordinance, resolution, or minute order of the city council who is qualified in accordance with state and city statutes to perform the specific functions as set forth in this title.

(Ord. 474 (part), 2002).


## 16.08.110  Distribution line.

"Distribution line" means an electrical power line of 20 kV or less which is located on the project site.

(Ord. 474 (part), 2002).


## 16.08.120  Frontage street or frontage road.

"Frontage street or frontage road" means a local street which is parallel to and adjacent to an arterial street or limited access highway and which provides access to abutting properties while relieving them of the effects of heavy volumes of fast through traffic.

(Ord. 474 (part), 2002).


## 16.08.130  Legislative body.

"Legislative body" means the city council of the city.

(Ord. 474 (part), 2002).

## 16.08.140 Local street.

"Local street" means a street which, because of its design and location with respect to other streets, is used primarily for access to the abutting properties.

(Ord. 474 (part), 2002).

## 16.08.150 Lot.

"Lot" means a parcel or subdivided land under one ownership used, or susceptible to being used, in accordance with the provisions of this title and in accordance with the zoning regulations applicable to the district in which the parcel is located.

(Ord. 474 (part), 2002).

## 16.08.155 Improvement.

"Improvement" refers to any street work and utilities to be installed or agreed to be installed, by the subdivider on the land to be used for public or private streets, highways, ways, and easements, as are necessary for the general use of the lot owners in the subdivision and the local neighborhood traffic and drainage needs as a condition precedent to the approval and acceptance of the final map thereof. "Improvement" also refers to any other specific improvements or types of improvements, the installation of which, either by the subdivider, by the public agencies, by the private utilities, by any other entity approved by the local agency, or by a combination thereof, is necessary to ensure consistency with, or implementation of, the general plan or any applicable specific plan.

(Ord. 474 (part), 2002).

## 16.08.157 Project area.

"Project area" shall refer to the entire site being developed or proposed to be developed including all property to the centerline of all adjacent streets.

(Ord. 474 (part), 2002).

## 16.08.160 Sidewalk.

"Sidewalk" means a way designed for use by pedestrians, which is located within a street right-of-way.

(Ord. 474 (part), 2002).

## 16.08.170 Standards.

"Standards" means standard drawings, specification, and design criteria for the design and construction of public improvements in the city as adopted by the city council.

(Ord. 474 (part), 2002).

## 16.08.180  Stubbed street.

"Stubbed street" means a street having only one outlet for vehicular traffic and which is intended to be extended or continued to serve future development on adjacent lands.

(Ord. 474 (part), 2002).

## 16.08.190  Subdivision Map Act or Map Act.

"Subdivision Map Act" or "Map Act" means the Subdivision Map Act of the state, being Division 2 of Title 7 (commencing with Section 66410) of the Government Code.

(Ord. 474 (part), 2002).

## 16.08.200  Subdivision Map Act terms.

All terms unless defined in this section, which are defined in the Subdivision Map Act shall have the same meaning as ascribed thereto in said act and as said act may hereafter be amended.

(Ord. 474 (part), 2002).

## 16.08.210  Transmission line.

"Transmission line" means an electrical power line which is in excess of 20 kV and is located on the project site.

(Ord. 474 (part), 2002).

## Chapter 16.12  ADMINISTRATION AND ENFORCEMENT

Sections:

16.12.010  Commission responsibility.
16.12.020  Executive Secretary.
16.12.030  Tentative, final and parcel maps required.
16.12.040  Waiver of parcel map.
16.12.050  Limitations on issuance of permits.
16.12.060  Unlawfulness of certain transactions.
16.12.070  Voidability of certain transactions.
16.12.080  Severability.

## 16.12.010  Commission responsibility.

The planning commission shall constitute the advisory agency and is authorized to approve, conditionally approve, or disapprove tentative maps. In addition to all other responsibilities assigned to the advisory agency by the Map Act, the agency is assigned the responsibilities referred to in Section 66474.7 of the Map Act and all other responsibilities set forth in this title.

(Ord. 474 (part), 2002).

### 16.12.020 Executive Secretary.

The planning director is designated as the Executive Secretary to the advisory agency with the authority to receive preliminary and tentative maps of proposed subdivisions according to the Subdivision Map Act.

(Ord. 474 (part), 2002).

### 16.12.030 Tentative, final and parcel maps required.

A tentative, final and parcel map shall be required for all subdivisions of land authorized or required by the Subdivision Map Act. Any division of lands not subject to a parcel map or final map procedure by the provision of the Subdivision Map Act shall be exempt from the provisions of this title.

(Ord. 474 (part), 2002).

### 16.12.040 Waiver of parcel map.

A.  Pursuant to Section 66428 of the Map Act, the planning commission may waive the requirements of a parcel map imposed by Section 66426 of said act. The planning director may also waive the requirements of a parcel map for the minor adjustment of property lines (lot line adjustments) between two or more adjacent parcels which do not create an additional parcel.

B.  The planning commission shall not approve the waiver of the parcel map unless it makes the following findings:

1.  The proposed division is in compliance with all requirements of the zoning ordinance;

2.  That all improvements for the proposed division of land have been completed in accordance with the requirements for a final map as set forth in Chapter 16.32 of this title excluding survey markers and/or monuments which must be bonded or paid for before planning commission approval;

3.  The proposed division of land is in compliance with all requirements imposed by the California Environmental Quality Act (CEQA) of 1970 and the city EIR guidelines;

4.  That no additional dedications for the purpose of public facilities or improvements are necessary for the public safety and welfare;

5.  The proposed division of land is in conformance with the general plan.

C.  The planning director may approve a lot line adjustment after responsible agency consultation with the following findings:

1.  The proposed division is in compliance with all requirements of the zoning ordinance;

2.  The proposed division of land is in compliance with the Subdivision Map Act and all the requirements imposed by the California Environmental Quality Act (CEQA) of 1970 and the city EIR guidelines;

3.  The proposed division of land is in conformance with the general plan;

4.  Upon making these findings, the planning director shall issue a certificate of compliance for recording in accordance with Section 66499.35 of the Map Act.

D.  A tentative map subject to the requirements of this title or other additional information deemed necessary by the commission for waiver consideration may be required with the request for waiver. In addition, a preliminary title report in accordance with Section 16.24.040(A) will be required. Fees for filing, checking, and processing the waiver and notice of compliance

shall be in the amount prescribed by resolution of the city council.

(Ord. 474 (part), 2002).

## 16.12.050  Limitations on issuance of permits.

A.   No permit shall be granted for the construction, installation or placement of any building for sale, lease, or financing on any lot or parcel, except for model homes, or to allow occupancy thereof, for which a final map or parcel map is required by this chapter until such map thereof, in full compliance with the provisions of this title and the Map Act, has been filed for record by the county recorder.

B.   Any permit issued contrary to the provisions of this section shall be void.

(Ord. 474 (part), 2002).

## 16.12.060  Unlawfulness of certain transactions.

It is unlawful to offer to sell or lease, to contract to sell or lease, to sell or lease, to finance any lot or parcel of real property or commence construction of any building for sale or lease or financing thereon except for model homes for which a final map or parcel map is required by this title until such map thereof, in full compliance with the provisions of this title and the Map Act, has been filed for record with the county recorder.

(Ord. 474 (part), 2002).

## 16.12.070  Voidability of certain transactions.

Any deed of conveyance, sale or contract to sell real property which has been divided, or which has resulted from a division, in violation of the provisions of the Map Act or this title, is voidable to the extent and in the same manner provided in Section 66499.32 of the Map Act.

(Ord. 474 (part), 2002).

## 16.12.080  Severability.

If any section, subsection, paragraph, sentence, clause, or phrase of this title is, for any reason, held to be unconstitutional or invalid, such decision shall not be deemed to affect the validity of the remaining portions of this chapter, which remaining portions the city council declares it would have adopted, notwithstanding.

(Ord. 474 (part), 2002).

## Chapter 16.16  TENTATIVE MAPS

Sections:
16.16.010  Preparation and processing procedure requirements.
16.16.020  Form.
16.16.030  Information required.
16.16.040  Preliminary review.
16.16.050  Filing.
16.16.060  Environmental review.
16.16.070  Transmittal to public agencies and utilities.

16.16.080  Report and recommendations of planning director--Service on subdivider.
16.16.090  Public hearing.
16.16.100  Commission review of tentative map.
16.16.110  Commission action of tentative map.
16.16.120  Expiration of maps and extensions.
16.16.130  Modifications or revisions of maps.
16.16.140  Fees.

## 16.16.010  Preparation and processing procedure requirements.

The tentative map for which approval is sought for any subdivision which requires a final or parcel map shall be prepared and processed in accordance with the provisions of the Map Act and this title.

(Ord. 474 (part), 2002).

## 16.16.020  Form.

Tentative map shall be clearly and legibly drawn on one or more eighteen by twenty-six inch sheet at a scale of not less than one hundred feet to the inch. If more than one sheet is required, the total number of sheets comprising the tentative map shall be stated on each of the sheets its relationship to each adjoining sheet shall be clearly shown.

(Ord. 474 (part), 2002).

## 16.16.030  Information required.

A.  Each tentative map shall contain the following information:

1.  Number of proposed subdivision as secured from the county planning department proceeded by the word "tentative" and date of preparation;

2.  Name and address of record owner or owners;

3.  Name and address of registered engineer or land surveyor preparing the map and his registration number;

4.  The name and address of the subdivider;

5.  Sufficient description to define the location and boundaries of the proposed subdivision and its relation to existing, adjacent subdivision maps, north point, scale and approximate acreage;

6.  The name, location and width of adjacent streets and alleys; and the location of buildings and other improvements within fifty feet of the boundary of the proposed subdivision;

7.  The location, names and width of proposed streets and alleys within the boundary of the proposed subdivision;

8.  The boundary of the proposed subdivision as delineated by a colored border;

9.  Lot or parcel layout and dimension and square footage of each lot or parcel; with the square footage of each lot or parcel noted in the lot;

10.  Lots or parcel shall be numbered consecutively;

11.  Topographic contours (one-foot minimum contour interval);

12. Proposed direction of drainage flow in streets and alleys;

13. Boundaries of areas subject to inundation or stormwater overflow and the locations, width and direction of flow of all watercourses, drainage channels and existing drainage structures;

14. All physical structures including, but not limited to, buildings, trees, fences, curb and gutter, sidewalks, power poles, etc., shall be shown on the property being subdivided; such structure shall be dimensioned and accurately located by dimension in relation to lot or parcel lines or boundary lines of the proposed subdivision;

15. The existing use of all buildings located on the proposed subdivision or other uses of property;

16. Zoning district proposed subdivision lies within;

17. Land use designation as shown on land use element of the general plan;

18. Assessor's parcel number;

19. Proposed method of water supply;

20. Proposed method of sewage and sewage disposal;

21. Proposed public areas, if any;

22. Proposed method of storm drainage disposal for each phase; and, drainage calculations to support the proposed method of disposal;

23. Location of street lights and fire hydrants to be installed;

24. The width and location of all existing and proposed public or private easements;

25. The location, size, and description of any underground facilities such as wells, pipelines, telephone lines, septic tanks, etc.;

26. Radius of each curve;

27. Statement of improvements and utilities proposed to be made or installed;

28. Show all dedications and irrevocable offers of dedication on the tentative map or to be made by separate instrument;

29. A typical cross section on each side of the project that abuts a public street starting from a point fifteen feet inside the rear property line and ending fifteen feet on the street side from the edge of curb. The location of any proposed perimeter wall, any planting area and sidewalk area adjacent to the perimeter wall, curb and gutter, and bicycle paths shall be shown on the cross section. Additional cross sections may be required depending on the presence of any physical feature that may be located adjacent to the project.

B. Other Requirements. Some of the information specified in subsection A of this section may not practically be shown on the map and shall be contained in a statement accompanying the tentative map.

(Ord. 521 § 1 (Exh. A (part)), 2006; Ord. 474 (part), 2002).

## 16.16.040 Preliminary review.

Prior to the filing of a tentative map, the subdivider or his authorized representative shall file with the planning director five copies of the tentative map and one copy of the preliminary title report. The planning director shall review the proposed subdivision for conformity with the Map Act and this title.

The director shall confer with city staff as necessary to make such determinations. Within ten working days of receipt, the planning director shall complete the preliminary review and in writing notify the subdivider of any necessary corrections or modifications. The subdivider may, at his option, request a conference with the planning director for clarification of any determination made by the planning director and/or staff in preliminary review.

(Ord. 474 (part), 2002).

### 16.16.050  Filing.

Each subdivider or his authorized representative shall file or cause to be filed with the planning director at the City Hall, Wasco, California, the required documents as follows:

A.  Thirty full size copies and one eight and one-half inch by eleven-inch reduced copy of the tentative map;

B.  Two copies of the preliminary title report issued in accordance with Section 16.24.040(A);

C.  Two copies of a preliminary soils report; a preliminary soils report shall be required for all tentative maps which require a final map; a preliminary soils report may be required as a condition of approval for a tentative map which requires a parcel map; in any case, such report shall be prepared in accordance with the Map Act requirements;

D.  Two copies of the initial study for the proposed subdivision on city forms;

E.  Any other required or pertinent information not shown on the map or elsewhere;

F.  A letter of transmittal specifying all documents above in this section.

(Ord. 474 (part), 2002).

### 16.16.060  Environmental review.

When divisions of land are subject to the environmental review process in accordance with the California Environmental Quality Act (CEQA) of 1970, Public Resources Code 2100 et seq., and the city EIR guidelines, the planning director shall complete the process within the time limits set forth in Section 66452.1 of the Map Act for action or tentative maps may be extended to coincide with environmental review process. Tentative map and environmental review shall be processed concurrently to assure minimum time delay.

(Ord. 474 (part), 2002).

### 16.16.070  Transmittal to public agencies and utilities.

A.  Within five working days after reviewing tentative map and other required documents, the planning director shall transmit the tentative map to each of the following:

1.  City of Wasco Engineer (two copies);

2.  City of Wasco Building Department/Water Department Superintendent;

3.  Kern County Fire Department;

4.  Office of Intergovernmental Management when required under Section 12037 of the Government Code;

5.  City of Wasco Public Works Department;

6. Southern California Gas Company;

7. Pacific Gas and Electric Company;

8. Pacific Bell Telephone Company;

9. Warner Cable Television Company;

10. Other public agencies or utilities as affected by the subdivision;

11. School districts affected by the subdivision.

B. Such entities may review the tentative map and transmit any comments, recommendations, or requirements thereon to the planning director who shall incorporate them into his report and recommendations to the commission. Should no comments be received by the planning director within the time set forth in the Map Act, it shall be presumed that the tentative map is approved by the entities as submitted.

(Ord. 474 (part), 2002).

## 16.16.080 Report and recommendations of planning director--Service on subdivider.

The planning director shall prepare a report and recommendations which will include all comments received on the tentative map, a copy of which will be served on the subdivider three days prior to any action on the tentative map by the commission. Service may be personally or by mail. Service shall be deemed complete two days after depositing such report and recommendations in the U.S. mail.

(Ord. 474 (part), 2002).

## 16.16.090 Public hearing.

Pursuant to Section 66451.3 of the Map Act, a public hearing shall be held for all proposed divisions of land which require a parcel or final map. In addition to published notice prescribed by Section 66451.3, all property owners as shown on the city's last equalized assessment roll within three hundred feet of the proposed subdivision shall be given notice of such hearing by direct mail. Public hearing shall be held before any commission action on tentative map.

(Ord. 474 (part), 2002).

## 16.16.100 Commission review of tentative map.

The commission shall review the tentative map considering the following:

A. Environmental findings;

B. Project's consistency with the city of Wasco general plan and any applicable community plan and/or specific plan;

C. All applicable provisions of this title;

D. All applicable provisions of the Map Act;

E. All applicable provisions of the zoning ordinance;

F. Planned unit developments. Where, in accordance with the provisions of the zoning ordinance, and any applicable combining districts, a planned unit development has been approved subject to the approval of a tentative map, the commission shall find that the

tentative map conforms to such plans;

    G.  Report and recommendation of the planning director;

    H.  Comments received by the public in conjunction with the required public hearing.

(Ord. 521 § 1 (Exh. A (part)), 2006; Ord. 474 (part), 2002).

## 16.16.110  Commission action of tentative map.

A.  The planning commission shall approve, disapprove, or approve with conditions the tentative map and report its action in writing to the subdivider and city engineer within one calendar week after the date of decision.

B.  At the same time the commission shall designate the improvements which will be required under the provisions of this title, the dedications, and irrevocable offers of dedication and the form thereof, which will be required under the provisions of this title and shall designate any other requirements lawfully authorized to be made.

C.  At the discretion of the planning commission, areas of real property within the subdivision may be reserved for future need for schools, fire stations, libraries, recreational facilities, or other public uses, pursuant to the applicable provisions of the Subdivision Map Act as a condition of approval of the tentative map.

D.  The decision of the commission shall be final, subject to appeal by the subdivider or any other interested persons as provided in this title and the Map Act.

E.  Nothing contained herein shall be construed to prohibit the filing of different tentative maps for the same property regardless of whether the first one has been approved, provided when such subsequent map is filed, the first on file is deemed completely rescinded and of no further force or effect. Optional tentative maps may be filed at the same time but action of commission shall be related only to one such map.

(Ord. 474 (part), 2002).

## 16.16.120  Expiration of maps and extensions.

The approval or conditional approval of a tentative map shall expire in accordance with Subdivision Map Act requirements. Extensions of the tentative or conditional approval shall be in accordance with the provisions of the Map Act. In granting an extension, the planning commission may impose new or revise existing conditions of approval.

(Ord. 474 (part), 2002).

## 16.16.130  Modifications or revisions of maps.

The modification or revision of an approved tentative map shall not extend the time limits imposed by the Map Act and this title. If the modification or revision requires action by the planning commission, the subdivider shall pay fifty percent of the original tentative map filing fee. The planning commission may impose new and revise existing conditions of approval.

(Ord. 474 (part), 2002).

## 16.16.140  Fees.

Fees for environmental review and tentative map processing, appeals, requested extensions of time for tentative maps, and requests for modifications of an approved tentative map as described in this title shall be in the amount prescribed by resolution of the city council.

(Ord. 474 (part), 2002).

## Chapter 16.20  FINAL AND PARCEL MAPS

Sections:
16.20.010  Filing with the city.
16.20.020  Map processing fees.
16.20.050  Size format and materials of the map.
16.20.060  Form and content of map.
16.20.065  Reversion to acreage--Title sheet information.
16.20.070  Approval of the city engineer.
16.20.080  Action by the city council.
16.20.090  Taxes and assessments.
16.20.100  Improvement security and agreement.
16.20.110  Cash payment for drainage fees.
16.20.120  Subdivision guarantee.
16.20.130  Transmittal to county.
16.20.140  Subdivision improvement security.

## 16.20.010  Filing with the city.

Any time after the approval or conditional approval of the tentative subdivision map and prior to the expiration thereof the subdivider may file with the city engineer, or designated city official, the original and three prints of the final or parcel map completed in accordance with the Subdivision Map Act and this title. Such map shall be accompanied by:

A.   One eight and one-half inches by eleven inches cronar reduction of the map;

B.   One eighteen inches by twenty-four inches cronar of the map;

C.   Three AutoCAD (or compatible) on three separate three and one-half inch floppy disks, three readable CD's or three e-mail copies (IBM readable) of the map shall be provided to the city. This data is for government use and is not available to the general public in electronic format;

D.   Five complete sets of improvement plans, (if necessary) including utility composites;

E.   Current engineer's estimate (estimated cost of all improvements);

F.   Preliminary title report dated within thirty days of map submittal issued by a title insurance company with offices in the county in the name of the owner of the land, issued to or for the benefit and protection of the city, showing all parties whose consent is necessary and their interest therein, except where the land included in such subdivision is registered under the Land Registration Act; if the land is so registered, a copy of the certificate of title shall be furnished, certified;

G.   Mathematical traverses, in a form acceptable to the city engineer, of the boundary of the division of land, block boundaries, not a part areas, centerline loops, each lot and parcel shown on the map, and all closures used in computing the distances, angles, and courses with ties to existing and proposed monuments. Closures shall be within the allowable limits specified in this title;

H.   Other documents and design calculations as may be required or referenced on the map;

I.  Two copies of the proposed deed restriction, if applicable;

J.  Fee(s) for checking and processing the map and related documents as set forth in this title;

K.  Complete copies of all deeds, recorded easements, and other maps referenced on the map or required for the interpretation of deeds referenced on the map;

L.  Complete copies of all field-book pages referenced on the map;

M.  A print of the most recent Assessor Map Book page or pages covering the proposed division of land. (If needed);

N.  A preliminary soils report.

(Ord. 474 (part), 2002).


## 16.20.020  Map processing fees.

A.  Where the city engineer processes a final or parcel map under the provisions of the Subdivision Map Act, the subdivider shall pay a map processing fee to the city engineer in addition to all other fees and charges required by law. This fee, payable upon submission of the map, or a print thereof, for review by the city engineer or determination of compliance with Section 66492 of the Subdivision Map Act by the city, shall be the total of the following applicable fees:

Fees for checking and processing maps, improvement plans and related documents shall be in the amount prescribed by resolution of the city council. Such fees shall be based on actual time spent by the city engineer and/or city staff in checking such plans and documents. At the time of subdivision filing of the final map, parcel map, improvement plans, and other related documents, the subdivider shall deposit one percent of the estimated cost of improvements which sum shall be deposited toward the cost of checking such map, plans and documents and an additional one percent that shall be deposited toward the cost of inspection of said improvements. Should no improvements be required and subsequently no estimated cost of improvements necessary the deposited amount shall be set by resolution of the city council.

If any deposit made is less than sufficient to pay all of the costs of plan checking inspection, the subdivider, upon demand of the city engineer, shall pay to the officer making the demand an amount equal to the deficiency. If the subdivider fails or refuses to pay such deficiency upon demand, the city may recover the same by action in any court of competent jurisdiction. Until such deficiency is paid in full the improvement shall be considered uncompleted.

B.  Where the city engineer is required to check street improvement plans for a parcel or final map under the provisions of the Subdivision Map Act, the subdivider shall pay a plan checking fee to the city engineer in addition to all other fees and charges required by law. These fees, payable upon completion of the plans for checking by the city engineer, shall be based on estimated construction costs and number of resubmittals, and are based on the fee schedule as approved by resolution of the city council.

C.  Recording fees and mileage of the officer making the recording shall be paid by the subdivider.

(Ord. 474 (part), 2002).


## 16.20.050  Size format and materials of the map.

The map which is filed shall be in full accord with the Subdivision Map Act.

(Ord. 474 (part), 2002).

**16.20.060  Form and content of map.**

A.   General. The map shall be accurately and legibly drawn in a professional manner in keeping with standard engineering practices. The map shall be prepared in conformance with the Map Act. Scale shall not be less than one hundred feet to the inch. When the commission has waived improvements in accordance with Section 16.32.030 of this code, the following certificate shall be ascribed on the map:

Pursuant to Section 66411.1 of the Subdivision Map Act, all improvements have been waived. Notice is hereby given that no building permit shall be issued until such time as improvements are completed in accordance with Chapter 16.32 of the Wasco Municipal Code.

B.   When more than three sheets are used an index shall show the entire subdivision.

1.   The title sheet of each map shall contain a title consisting of the words "Tract No." and the number of the division of land on a final map, or the words "Parcel Map No." and the number of division of land on a parcel map; also the words "in the City of Wasco"; also except as provided in the section of this chapter, a subtitle consisting of a description of all the property being divided, by reference to such map or maps of the property shown thereon, as shall have been previously filed or recorded in the office of the county recorder or shall have been previously filed with the city clerk pursuant to a final judgment in an action in partition, or shall have been previously filed in the office of the county recorder under authority of Division 3 of Title 7 of the Government Code or by reference to the plat of any United States survey. When necessary for greater clarity or definiteness, supplemental reference may be made to any other map on file in the office of the county recorder.

2.   Each reference, in such description, to any division of land shall be spelled out and worded identically with the original record thereof, and must show a complete reference to a book and page of records of the county.

3.   Upon such title sheet the certificate of the surveyor or engineer referred to in Section 66449 or 66441 of the Subdivision Map Act shall appear. Also upon such title sheet, or upon at least one map sheet shall appear the basis of bearings, marking reference to a recorded subdivision map, county surveyor's map or other record acceptable to the city engineer, or to a solar or polaris observation.

4.   Pursuant to Sections 66434 and 66445 of the Subdivision Map Act, certificates, affidavits and acknowledgments may be legibly stamped or printed upon the title sheet of the final map or parcel map with opaque ink. All stamped or written matter, including signatures, shall be so made with opaque ink that legible blue-line prints may be obtained therefrom.

D.   The names without abbreviations of all:

1.   Proposed streets;

2.   Adjoining streets;

3.   Proposed public areas;

4.   Adjacent tracts, records of survey or parcel maps.

E.   North Arrow and Scale.

1.   North arrow and graphic scale used shall be shown on each sheet except the title sheet. The graphic scale used shall not be less than one hundred feet to the inch.

2. The map on each sheet and the lettering thereon shall be so oriented that, with the North direction away from the reader, the map may be read most conveniently from the bottom or lower right corner of such sheet, the binding edge to be at the left and lengthwise of the sheet, keeping in mind that the sheets are always on the right page of the map book, the left page being always blank.

3. Each sheet of a final map or parcel map, excepting the title sheet or sheets thereof, shall bear the main title of the map, the scale of the map, North point and street number together with a designation of the relation, if any, between each sheet and each other sheet thereof.

4. Additional information which does not affect record title interests shall be placed on a separate document or additional map sheet which shall indicate that it is for informational purposes and is not intended to affect record title interests. Such additional information may include without limitation, building setback lines, flood hazard zones, seismic lines and setbacks, geologic mapping and archaeological sites. The final or parcel map shall contain a notation of reference to the separate document or additional map sheet.

F.   Lot Data.

1. All lots shall be numbered consecutively beginning with the number one with no omissions or duplications; provided however, where the subdivision is a continuation of or an addition to an existing subdivision being the same tract number, the lot number shall commence with the number immediately following the last highest number of the existing subdivision and in all other respects conform to the proceeding requirements. Each lot shall be shown entirely on one sheet. No block numbers shall be used. The dimension of each lot shall be used. Lots shall show net acreage to the nearest hundredth or net square footage to the nearest square foot. The last lot number shall be circled.

G.   Survey Data.

1. All survey data shown on the map shall be determined by a field survey made in accordance with standard practices and principles for land surveying.

2. A traverse of the boundaries of the tract and all blocks must close within a limit of error not to exceed one foot in twenty thousand feet. A traverse of the interior lots of the tract must close within a limit of error not to exceed one foot in ten thousand feet.

3. The bearing and length of each lot line, block line and boundary line shall be shown on the final map or parcel map; provided, that when bearings and lengths of lot lines in any series of lots are the same, either the bearings or lengths may be omitted from each interior parallel lot line of such series. Each required bearing and length shall be shown in full, and no ditto mark or other designation of repetition shall be used. Bearings shall be shown to the nearest second and distances shall be shown to the nearest 1/100 of a foot.

4. Each map shall use the California Coordinate system for its "basis of bearings" and shall express all measured and calculated bearing values in terms of said system. The angle of grid divergence from a true meridian (theta or mapping angle) and the North point of said map shall appear on each sheet thereof. Establishment of said basis of bearings may be by use of existing horizontal control stations or astronomic observations.

5. The length, radius and total central angle or bearings of terminal radii of each curve and the bearing of each radial line to each lot corner on each curve, or the central angle of each segment within each lot, shall be shown thereon.

6. Upon each lot containing an area of three-fourths of an acre or more shall be

designated the acreage of such lot shown to the nearest 1/100 of an acre.

7.   Upon the final map or parcel map shall be shown on each city boundary line crossing or adjoining the division of land, and such line shall be clearly designated and tied in.

8.   There shall be shown upon each final map or parcel map the centerline of each highway, street or way, the total width thereof, the width of that portion, if any, to be dedicated and, in the case of any existing highways, streets, or ways, the width thereof, and the width of each highway, street or way on each side of the centerline thereof. On each such centerline shall be shown the bearing and length of each tangent and radius, central angle and length of each curve.

9.   The final map or parcel map shall show the width of each railroad right-of-way, flood control or drainage easement and each other easement appearing on such map, whether previously of record or offered for dedication on such map.

H.   Flood and Geological Hazards.

1.   If any portion of a lot or parcel of a division of land is subject to flood hazard, inundation or geological hazard, such fact and portion shall be clearly shown on a separate document or additional map sheet. A dedication of building-restriction rights over the flood hazard, inundation or geological hazard area may be required.

2.   In the event that a dedication of right-of-way for storm drainage purposes is not required, the location of any watercourse, channel, stream or creek, flood hazard area or floodway shall be shown on a separate document or additional map sheet to the satisfaction of the city engineer.

I.   Monuments.

1.   The map shall clearly describe and show the locations of stakes, monuments or other evidence found on the ground to determine the boundaries of the tract. The map shall identify and show the locations of all new monuments as required by Section 16.32.230 of this code.

J.   Record of Easements.

1.   The map shall show the location, width, and side lines of all easements to which the lots are subject. If an existing easement is not definitely located of record, a statement as to the easement shall appear on the title sheet. Public utility easement for storm drains, sewers, utilities, and other purposes shall be denoted by broken lines. Distance and bearings on the side lines of the lots which are cut by an easement shall be shown as to indicate clearly the actual lengths of the lot lines. The width of the easements, the lengths of the lot lines. The width of the easement shall be clearly labeled and identified, and, if already of record, proper reference to the records shall be given. Easements being dedicated shall be so indicated in the certificate of dedication.

K.   Dedications.

1.   All streets, alleys, access rights, drainage easements, public utility easements, and other easements and parcels of land shown on the map as intended for public use shall be offered for dedication for public use in accordance with the Subdivision Map Act and shall be properly set out in the owner's certificate of dedication on the map.

L.   Reservations.

1.   All property reserved for schools, fire stations, libraries, recreation facilities or other public uses shall be shown on the map.

M.   Certificates.

1.   In addition to the certificates required by the Subdivision Map Act a certificate by the

planning director shall be required on the map as follows:

I hereby certify that this map substantially conforms to the tentative map as conditionally approved by the Planning Commission on _____, 20_____.

TABLE INSET:

| | |
|---|---|
| Planning Director | Date |
| City of Wasco | |

(Ord. 474 (part), 2002).

## 16.20.065  Reversion to acreage--Title sheet information.

A.  Upon the title sheet of each map filed for the purpose of reverting subdivided land to acreage, the subtitle shall consist of the words "A Reversion of Acreage of..." (insert a legal description of the land being reverted.)

B.  A parcel map may be used to revert to acreage land previously subdivided and consisting of four or less contiguous parcels under the same ownership.

(Ord. 474 (part), 2002).

## 16.20.070  Approval of the city engineer.

A.  The city engineer shall examine all the documents as to conformity with the tentative map, as to the sufficiency of affidavits and acknowledgments, correctness of surveying data, mathematical data and computations, and such other matters as require checking to insure compliance with the provisions of the Subdivision Map Act and of this title.

B.  Within twenty working days after date of receipt of the map, the city engineer shall either approve or return one copy of the map, improvement plans or other documents to the subdivider or his engineer showing the necessary corrections. On subsequent resubmittals to the city engineer, the subdivider shall submit corrected documents and plans in duplicate. The city engineer shall respond within ten working days approving or showing required corrections. At such time as the map, improvement plans, and other required documents are found to be in correct form and the matters shown thereon are sufficient, the city engineer shall endorse his approval thereon and transmit it to the city council for approval.

(Ord. 474 (part), 2002).

## 16.20.080  Action by the city council.

Within the time limits set forth in the Map Act, the city council shall approve the map if it conforms to all the requirements of this title and the Map Act applicable at the time of approval or conditional approval of the tentative map and any rulings made thereunder, or, if it does not so conform, disapprove the map. If the city council does not approve or disapprove the map within the time prescribed in the Map Act, or any authorized extension thereof, and the map conforms to all the requirements and rulings, it shall be deemed approved, and the clerk of the city council shall certify its approval thereon.

(Ord. 474 (part), 2002).

## 16.20.090  Taxes and assessments.

Prior to the filing of the map with the city council, the owner or subdivider shall file such certificates and such security and make sure payments as are required by Sections 66492, 66493 and 66494 of the Map Act shall comply fully with such provisions of law.

(Ord. 474 (part), 2002).

## 16.20.100  Improvement security and agreement.

A.  The city council, as a condition precedent to the approval of the final map, shall require the subdivider to enter into a subdivision improvement completion agreement upon mutually agreeable terms to thereafter complete such improvements at the subdivider's expense.

B.  The city shall require that performance of such agreement be guaranteed by the security in accordance with Sections 16.32.260, 16.32.270 and 16.32.280.

(Ord. 474 (part), 2002).

## 16.20.110  Cash payment for drainage fees.

Prior to filing of the map, the subdivider shall make a cash payment for fees as provided for in Chapter 16.44 of this title.

(Ord. 474 (part), 2002).

## 16.20.120  Subdivision guarantee.

Before recording of the map, the subdivider shall obtain a dated subdivision guarantee from a company authorized to issue title insurance which shall guarantee the county and the city in a designated sum that according to public records of matters affecting the title to the land contained in the subdivision, the only parties having any record title interest in the land whose signatures are necessary under the Map Act on the certificates consenting to the recordation of the map of the land and offering for dedication any streets, roads, avenues, and other easements offered for dedication of the map are as stated in the subdivision guarantee.

(Ord. 474 (part), 2002).

## 16.20.130  Transmittal to county.

When the subdivider has filed the subdivision improvement agreement and bond or other security with the city clerk and has made the deposits and cost payments required by the provisions of this title and Subdivision Map Act and when such agreement, deposits, and/or security has been approved by the city attorney and as to form and by the city engineer as to sufficiency, the map shall be transmitted by the city clerk of the county board of supervisors for ultimate transmittal to the county recorder.

(Ord. 474 (part), 2002).

### 16.20.140 Subdivision improvement security.

Upon the furnishing by the contractor of the faithful performance and labor and material bonds required as part of an assessment proceedings, the improvement security of the subdivision may be reduced by an amount corresponding to the amount of such bonds so furnished by the contractor constructing/installing the improvements.

(Ord. 474 (part), 2002).

## Chapter 16.26   VESTING TENTATIVE MAPS

Sections:
16.26.010  Authority.
16.26.020  Filing and processing.
16.26.030  Rights conferred.
16.26.040  Consistency with zoning and general plan.

### 16.26.010 Authority.

This chapter is enacted pursuant to the authority granted by Chapter 4.5 (commencing with Section 66598.1 of Division 2 of Title 7 of the Government Code of the State of California - Subdivision Map Act) and is intended to implement to provisions of this chapter.

(Ord. 488 § 1 (Exh. A (part)), 2004: Ord. 474 (part), 2002).

### 16.26.020 Filing and processing.

A.   Whenever this title requires the filing of a tentative map or a tentative parcel map for a residential development the subdivider may file a vesting tentative map or vesting tentative parcel map subject to the provisions of this chapter.

B.   At the time a vesting tentative map is filed, it shall have printed conspicuously on its face, "vesting tentative map." If the map is a vesting tentative parcel map, the words "vesting tentative parcel map" shall appear conspicuously on its face.

C.   In addition to the other information required by this title to be shown on or provided with a tentative map or tentative parcel map a vesting tentative map or vesting tentative parcel map shall show or be accompanied by the following information in a form satisfactory to the city engineer and planning director:

1.   Detailed lot lines and dimensions;

2.   Detailed design and specifications for all public facilities, including but not limited to, on-site and off-site sewer, water and drainage facilities; roads including final grades and alignment; and other on-site and off-site improvements;

3.   Detailed geological, drainage, flood control, soils, traffic, or other reports deemed necessary by the city engineer or planning director to permit a complete review of the design and improvements for the subdivision. The subdivider, for subdivisions over five units shall also submit a fiscal impact report prepared by an independent economic analyst, analyzing the projected impacts the development will have on public facilities and services; the report shall include marketing information and a cost benefit analysis for the project;

4.   Detailed final grading plans showing existing and proposed finished grades at two-foot intervals;

    5. Detailed environmental information sufficient to permit assessment of all environmental effects of the project including cumulative and long-term efforts.

D. All vesting tentative maps regardless of the number of lots shall be considered by the city planning commission pursuant to Section 16.12.010.

E. All vesting tentative parcel maps shall be referred to the planning commission for consideration pursuant to the provisions of Section 16.16.100. The decision of the planning commission concerning a tentative parcel map shall be final unless the decision is appealed to the city council pursuant to the provisions of Section 16.40.020 of this code.

F. Notwithstanding the provisions of Section 16.16.120 of this code, the time for filing a final map for a vesting tentative map shall not be extended except for subdivisions on one hundred or more units where an extension is necessary to accomplish an approved phasing program. Failure to file a final map within the time period established by Section 16.20.010 of this code shall terminate all proceedings and no final map or parcel map for all or any part of the property included within the vesting tentative map shall be filed without first processing a new map pursuant to this title.

G. The time for filing a parcel map for a vesting tentative parcel map shall not be extended. Failure to file a parcel map within the time period established by Section 16.24.040 of this code shall terminate all proceedings and no final map or parcel map for all or any part of the property included within the vesting tentative map shall be filed without first processing a new map pursuant to this title.

H. A vesting tentative map or vesting tentative parcel map shall not be approved or conditionally approved unless the planning commission, finds on the basis of the studies and reports submitted by the subdivider that all public facilities necessary to serve the subdivision or mitigate any impacts created by the subdivision will be available for the entire time that the vesting tentative map or vesting tentative parcel map is valid plus any time during which the rights conferred by Section 17.26.030 of this code exist.

(Ord. 488 § 1 (Exh. A (part)), 2004: Ord. 474 (part), 2002).


## 16.26.030 Rights conferred.

A. Approval or conditional approval of a vesting tentative map or vesting tentative parcel map shall confer a right to proceed with residential development in substantial compliance with the ordinances, policies and standards described in Section 66474 of the Government Code. However, if Section 66474.20 is repealed the approval shall confer a vested right to proceed with development in substantial compliance with the ordinances, policies and standards in effect at the time the vesting tentative map or vesting tentative parcel map was approved or conditionally approved. Any disputes whether a development substantially complies with the approved or conditionally approved map, or with the ordinances, policies or standards described in this subsection, shall be resolved by the city council.

B. Notwithstanding subsection A of this section, a permit or entitlement for development may be conditionally approved or denied if at the time of the issuance of the permit approval or entitlement it is determined by the issuing authority or the city council on appeal:

    1. A failure to condition or deny the permit or entitlement would place the residents of the subdivision or of the immediate community or both in a condition dangerous to their health or safety or both; or

    2. The condition or denial is required in order to comply with state or federal law.

C. The rights conferred by a vesting tentative map or vesting tentative parcel map shall expire if:

1.  A final map or parcel map is not approved prior to the expiration of the vesting tentative map or the vesting tentative parcel map;

2.  The applicant has requested and the city has approved a change in the type, density, bulk or design of the development unless amendment to the vesting tentative map or vesting tentative parcel map has been approved.

D.  Upon the filing of a final map or parcel map for a vesting tentative map or vesting tentative parcel map the rights conferred by subsection A of this section shall continue for one year. Where several final maps or parcel maps are recorded on various phases of a project covered by a single vesting tentative map or vesting tentative parcel map this period shall begin for each phase when the final map or parcel map for that phase is recorded.

E.  The time period set forth in subsection D of this section shall be automatically extended by any time used for processing a complete application for a grading permit if such processing exceeds thirty days from the date a complete application is accepted.

F.  A subdivider may apply to the city council for a one year extension of the rights conferred by subsection D of this section at any time before the time period set forth in subsection D of this section expires. An extension may be granted only if the council finds that the map still complies with the requirements of this title. The city council may approve, conditionally approve or deny an extension in its sole discretion.

G.  If the subdivider submits a complete application for a building permit during the periods of time set forth in subsections D through F of this section, the rights referred to therein shall continue until the expiration of that building permit or any extension of that permit.

H.  Upon the expiration of the time limits specified in subsections A, D, E, F, or G of this section all right conferred by this section shall cease and the project shall be considered as the same as any subdivision which was not processed pursuant to this chapter.

I.  Notwithstanding subsection A of this section the amount of any fees which are required to be paid either as a condition of the map approval or by operation of any law shall be determined by application of the law or policy in effect at the time the fee is paid. The amounts of the fees are not vested upon approval of the vesting tentative map or tentative parcel map.

(Ord. 488 § 1 (Exh. A (part)), 2004: Ord. 474 (part), 2002).


## 16.26.040  Consistency with zoning and general plan.

No vesting tentative map or vesting tentative parcel map shall be approved if the proposed map or the design or improvement of the proposed development are not consistent with the applicable general, specific or master plans or with the applicable provisions of Title 17. If development of the project for which a vesting tentative map or vesting tentative parcel map. A vesting tentative map or vesting tentative parcel map shall not be approved if all other discretionary permits or approvals have not been approved either prior to or concurrently with approval of the map.

(Ord. 488 § 1 (Exh. A (part)), 2004: Ord. 474 (part), 2002).


## Chapter 16.28  DESIGN STANDARDS

Sections:
16.28.010  General requirements.
16.28.020  Conformance to plans.
16.28.030  Streets.
16.28.040  Alleys.
16.28.050  Blocks.

16.28.060  Lots.
16.28.070  Pedestrian way or walkways.
16.28.080  Commercial and industrial areas.
16.28.090  Reserve strips for controlling access.
16.28.100  Easements.

## 16.28.010  General requirements.

Each subdivision and the map thereof shall be in conformity to the standards contained in this chapter.

(Ord. 474 (part), 2002).

## 16.28.020  Conformance to plans.

All subdivision maps shall conform to any specific plans of streets, public areas or other projects or plans adopted or approved by the council. There shall be conformance to the principal and standards of the general plan and to the city zoning regulations.

(Ord. 474 (part), 2002).

## 16.28.030  Streets.

A.  General. All streets shall conform to the city of Wasco improvement standards in Appendix A.

B.  Local Streets. Local streets shall conform to the city of Wasco improvement standards in Appendix A.

C.  Collector Streets. Collector streets shall conform to the city of Wasco improvement standards in Appendix A.

D.  Arterial Streets. Arterial streets shall conform to the city of Wasco improvement standards in Appendix A. Medians or fees in lieu in the amount of an engineer's estimate will be required at the time of development for all arterial streets.

E.  Cul-de-Sacs. Cul-de-sacs shall conform to the city of Wasco standards. Cul-de-sacs street shall be not exceed block lengths as described in Section 16.28.050.

F.  Dead end or Stubbed Streets. Where a street is extended to the edge of the subdivision and is intended to be continued to serve future subdivisions a one foot reserve strip shall be offered for dedication for future street purposes. No stubbed streets shall be permitted unless a part of a phased and vested project for a subsequent phase. A fifty-foot radius turnaround shall be provided when determined by the planning commission to be necessary for the movement of emergency vehicles.

G.  Private Streets. Private streets shall not be permitted.

H.  Frontage Streets.

   1.  Frontage streets shall conform to the city of Wasco standards.

   2.  Frontage streets shall be required for residential lots of a subdivision fronting on a freeway, major highway, secondary highway, or arterial.

I.  Planned unit development streets shall conform to the standards and guidelines set forth in the city of Wasco Zoning Ordinance and any applicable combining districts.

J.  Partial Width Streets. Where a partial width street is required at the edge of a subdivision the width of such street shall not be less than one-half the full width required. The traveled way shall not be less than twenty-eight feet. A one foot reserve strip will be provided for and shall be offered for dedication to the city.

K.  Street Curves and Tangents. A minimum centerline radius of at least five hundred feet shall be used on all streets except local streets shall have minimum radii of two hundred fifty feet.

L.  Street Corner Property Line Radii. Street corner radii shall be twenty feet.

M.  Street Intersections. Street intersection shall be as near right angles as is feasible.

N.  Alignment of Continuation of Streets. Streets which are a continuation of streets in contiguous territory shall be so aligned as to assure that their centerlines will coincide. In cases where straight line continuations are not physically possible, such centerlines shall be continued by curves. In cases where such streets cannot be continued or aligned, a minimum distance of one hundred fifty feet between the centerlines shall be maintained.

O.  Street Grades. No street shall be a grade of more than seven percent or less than two-tenths percent.

(Ord. 474 (part), 2002).

## 16.28.040 Alleys.

A.  General. All alleys where approved or required shall conform to the city of Wasco standards.

B.  Maintenance District Required. All new alleys and/or extensions of existing alleys shall be subject to annexation into a maintenance district.

C.  Alley Required. Alleys may be required by the commission for lots used or intended to be used for commercial, industrial, or multifamily residential purposes.

D.  Alley Optional. Alleys in single-family residential subdivisions shall be optional and subject to the commission's approval.

E.  Alley Width. The width of alleys shall be thirty feet minimum except alleys in single-family residential subdivisions shall be twenty feet minimum.

F.  Alley Intersections. Where two alleys intersect, the corner shall be cut on a straight line connecting points on both lot lines ten feet from the projected intersection of the alleys.

(Ord. 474 (part), 2002).

## 16.28.050 Blocks.

A.  Residential Block Lengths. The design of residential blocks, including but not limited to, block length, street design, and pedestrian access shall comply with the policies and standards of the general plan.

TABLE INSET:

| | Max. Blk. Length (in feet) |
|---|---|
| R-1 Zone 6,000 sq. ft. min. lot | 800 |

| R-1-8 Zone 8,000 sq. ft. min. lot | 1,100 |
| R-1-10 Zone 10,000 sq. ft. min. lot | 1,320 |

The planning commission may approve exceptions to the above block lengths if existing conditions merit such an exception.

B.  Residential Block Widths. The width of each residential block shall be sufficient to allow two tiers of lots therein of a depth referred by the provisions of the zoning ordinance except where access to lots is limited to one street frontage only.

(Ord. 521 § 1 (Exh. A (part)), 2006; Ord. 474 (part), 2002).

## 16.28.060 Lots.

A.  Access. Each lot of a subdivision shall have direct access to a street maintained by a public agency.

B.  Divided Lots. No lot shall be divided by the boundary line of the city, a school district or any other taxing district.

C.  Residential Lot Size. The minimum lot sizes within the subdivision shall conform to the standards as set forth in the zoning ordinance as shown in Table 17-4.

D.  Double Frontage Lots Shall be Avoided Where Possible. Where such lots are unavoidable due to geographic locations, existing layout or other adverse conditions such lots will be permitted under the following conditions:

1.  The dedication or irrevocable offer of dedication of the street on which double frontage occurs shall include a waiver, of direct access rights to such street from any property abutting thereon.

E.  Cul-de-Sac Lots. Minimum frontage on a cul-de-sac lot shall be as shown in Table 17-4 of the zoning ordinance.

(Ord. 521 § 1 (Exh. A (part)), 2006; Ord. 474 (part), 2002).

## 16.28.070 Pedestrian way or walkways.

The subdivider may be required to dedicate and improve walkways through long blocks or to provide access to schools, parks, or other public areas.

(Ord. 474 (part), 2002).

## 16.28.080 Commercial and industrial areas.

When property is designated for commercial or industrial use either in the general plan or the zoning regulations, the plan of the subdivision shall be appropriate for such uses. Streets shall be adequate capacity to handle the anticipated traffic which will utilize them. As far as practicable, streets shall be laid out so that there will be direct access to the commercial or industrial area from arterial or collector streets without utilizing local streets traversing residential areas. Lot areas and dimensions shall be adequate to accommodate the yard spaces, off-street parking facilities, and off-street loading facilities required by the zoning regulations.

(Ord. 474 (part), 2002).

## 16.28.090 Reserve strips for controlling access.

A one foot reserve strip controlling the access to street or other public rights-of-way from adjoining property shall be approved where such strips are necessary for the protection of the public welfare or for a substantial property right. The control and disposal within the jurisdiction of the city under conditions approved by the commission. The reserve strips shall be specifically referred to in the dedication certificate.

(Ord. 474 (part), 2002).

## 16.28.100 Easements.

Distribution lines shall be placed underground within the public right-of-way. On all street rights-of-way less than sixty feet in width an additional five feet on each side and parallel to the street right-of-way will be required. Easements for equipment enclosures shall be required as needed.

(Ord. 474 (part), 2002).

## Chapter 16.32 IMPROVEMENTS

Sections:

16.32.001  Definitions.
16.32.010  General requirements.
16.32.020  In subdivisions for which a final map is required.
16.32.030  In subdivisions for which a parcel map is required.
16.32.040  Standards and design criteria.
16.32.050  Plans.
16.32.060  Required improvements--Generally.
16.32.070  Required improvements--Grading.
16.32.080  Required improvements--Street improvements.
16.32.090  Required improvements--Storm drain.
16.32.100  Required improvements--Sanitary sewer.
16.32.110  Required improvements--Water system.
16.32.120  Required improvements--Street signs.
16.32.130  Required improvements--Access barricade.
16.32.140  Required improvements--Street lights.
16.32.150  Required improvements--Public utilities.
16.32.160  Required improvements--Railroad crossings.
16.32.170  Required improvements--Fences or walls.
16.32.180  Required improvements--Trees.
16.32.190  Required improvements--Street striping.
16.32.200  Required improvements--Stop signs, stop lights or any other traffic safety device.
16.32.210  Required improvements--Solid waste containers.
16.32.220  Supplemental improvements and reimbursement agreements.
16.32.230  Monuments and lot corners.
16.32.240  Completion of subdivision improvements.
16.32.250  Subdivision agreement.
16.32.260  Security--Type.
16.32.270  Security--Form of bonds.
16.32.275  Alternative to faithful performance bond described--Procedures.
16.32.280  Security--Amount.
16.32.290  Security--Release.
16.32.300  Security--Forfeiture.
16.32.310  Notice to commence work.
16.32.315  Required permits.
16.32.320  Inspection--Required.
16.32.330  Inspection--Fees.
16.32.340  Inspections and tests--Required.

16.32.350  Final inspection.
16.32.360  As-built plans.
16.32.370  Insurance requirements.

## 16.32.001  Definitions.

"Improvement" refers to any street work and utilities to be installed, or agreed to be installed, by the subdivider on the land to be used for public or private streets, highways, ways, and easements, as are necessary for the general use of the lot owners in the subdivision and the local neighborhood traffic and drainage needs as a condition precedent to the approval and acceptance of the final map thereof. "Improvement" also refers to any other specific improvements or types of improvements, the installation of which, either by the subdivider, by the public agencies, by private utilities, by any other entity approved by the local agency, or by a combination thereof, is necessary to ensure consistency with, or implementation of, the general plan or any applicable specific plan.

(Ord. 474 (part), 2002).

## 16.32.010  General requirements.

All improvements shall be constructed at the subdivider's expense in accordance with the requirements of this chapter and in accordance with the city of Wasco improvement standards as shown in Appendix A.

(Ord. 474 (part), 2002).

## 16.32.020  In subdivisions for which a final map is required.

As a condition of approval of a tentative map for which a final map is required, all improvements as set forth in this chapter shall be required.

(Ord. 474 (part), 2002).

## 16.32.030  In subdivisions for which a parcel map is required.

As a condition of approval of a tentative map for which a parcel map is required, improvements as set forth in the chapter may be required. The extent of such improvements shall be determined by the planning commission pursuant to Section 66411.1 of the Map Act. The planning commission may waive improvements until development of proposed division of land occurs. Improvements shall not be waived in any developed area.

(Ord. 474 (part), 2002).

## 16.32.040  Standards and design criteria.

The criteria and standards used for the design and construction of improvements shall be in accordance with the following:

A.  City of Wasco "standards," copies of which are for sale or available for examination by the public in the offices of the city clerk, city planning department, or city engineer;

B.  All the applicable provisions of Chapter 16.28 entitled "Design Standards";

C.  All other requirements set forth in this chapter;

D. Exceptions. The city engineer or other designated city official may make minor changes in typical sections and details if unusual conditions pertain to the subdivision or arise during construction to warrant such change.

1. Fees in lieu of certain improvements may be recommended by the city engineer to the city council upon the making the following findings:

E. All utilities shall be extended as necessary to meet the definition of "improvement" (Section 16.32.001).

(Ord. 474 (part), 2002).

## 16.32.050  Plans.

A.  Improvement plans shall include all drawings and specifications necessary for the orderly construction of improvements for the subdivision.

B.  All such plans shall be prepared in a professional manner in keeping with standard engineering practices.

C.  All such plans shall be drawn on polyester base film in ink capable of producing a legible print.

D.  All sheets shall be twenty-four inches by thirty-six inches and shall be incorporated into one complete set of plans. All such sheets shall be of the same size. When more than three sheets of drawings are required, an index to drawings shall be ascribed on the first sheet of the set.

E.  Plans, profiles and specifications for such improvements shall be furnished to the city engineer or other designated city official for checking, and such plans, profiles and specifications shall be subject to the approval of the city engineer or other designated city official before any such map shall be approved or certified. Such plans, profiles and improvements shall be in accordance with the standards of the city, as adopted by the council.

F.  Three Auto CAD (or compatible) copies (IBM readable) of the map shall be provided on three separate three and one-half inch floppy disks. This data is for government use and is not available to the general public in electronic format.

(Ord. 474 (part), 2002).

## 16.32.060  Required improvements--Generally.

The improvements set out in Sections 16.32.070 through 16.32.210 as required shall be clearly set forth in the improvement plans and constructed or installed in accordance therewith.

(Ord. 474 (part), 2002).

## 16.32.070  Required improvements--Grading.

Grading shall include all excavation, embankment and fill necessary to produce the surface on which the lowest layer of improvement or structure is placed. Such grading shall be constructed to the lines and grades approved by the city engineer or other designated city official for all surface improvements in the subdivision including streets, alleys, sidewalks, curbs and gutters, building pads, and surface drainage facilities. All building pads shall be graded to provide eighteen inches minimum from finished floor of building to finish gutter flow line.

(Ord. 474 (part), 2002).

## 16.32.080 Required improvements--Street improvements.

Street improvements shall include curb and gutter, valley gutters, sidewalks, structural street and alley sections which includes subbase, base and paving as required.

(Ord. 474 (part), 2002).

## 16.32.090 Required improvements--Storm drain.

Drainage facility improvements shall include storm drain lines, catch basins, manholes or other improvements that may necessitate the drainage of stormwater from the subdivision. On site ponding basins as a method of disposal of stormwater may be permitted upon approval of the city engineer or other designated city official. The maximum distance permitted for surface drainage shall be one thousand three hundred feet.

(Ord. 474 (part), 2002).

## 16.32.100 Required improvements--Sanitary sewer.

Sanitary sewer improvements shall include the main line connected to the existing system, manholes and a lateral stubbed to the property line of each lot. Such laterals shall be marked on the top of the curb with the letter "S" at such time as concrete is placed. No septic tanks, cesspools, or leach fields, will be permitted except in documented findings of hardship to be determined by the planning commission. Permanent force mains will not be permitted unless otherwise approved by the city council with written recommendation by the city engineer or other designated city official.

(Ord. 474 (part), 2002).

## 16.32.110 Required improvements--Water system.

Water system improvements shall include water mains, fire hydrants, valves and services to property line of each lot. Location of water services shall be marked on the top of the curb with the letter "W" at such time concrete is placed. Fire hydrants shall be of the size and type approved by the Kern County fire department and city engineer or other designated city official; provided, however, that such hydrants shall not be less than any hydrant required by the city as set forth in the city of Wasco standards and adopted Uniform Fire Code. The following criteria shall be used for placement of fire hydrants:

A. Single-Family Residential Development. One hydrant shall be placed for each six hundred lineal feet of residential frontage. No development shall be less than two hydrants or as required by the planning commission.

B. Multiple-Family or Mobilehome Park Residential Development. One fire hydrant shall be placed for each four hundred fifty lineal feet of residential development frontage. No development shall have less than two hydrants or as required by the planning commission.

C. Commercial and Industrial Development. One fire hydrant shall be placed for each three hundred lineal feet of commercial or industrial frontage. No development shall have less than two fire hydrants or as required by the planning commission.

D. Combined Type Development. When combined type developments are developed, fire hydrants shall be placed in accordance with the most restrictive of the above criteria

as approved by the city engineer or other designated city official.

(Ord. 474 (part), 2002).

## 16.32.120  Required improvements--Street signs.

All street signs shall be provided by the subdivider. Street signs shall be of the type approved by the city. Street signs shall be placed at each intersection in accordance with the city of Wasco standards.

(Ord. 474 (part), 2002).

## 16.32.130  Required improvements--Access barricade.

Any required barricade to protect access at dead-end streets shall be provided by the subdivider.

(Ord. 474 (part), 2002).

## 16.32.140  Required improvements--Street lights.

Street lights, conduits and wiring shall be installed at the expense of the subdivider. No direct burial of wiring will be permitted. Conduit will be required for all underground wiring. Light poles shall be provided by and installed by the subdivider and dedicated to the city as part of improvements. No point along any collector or arterial street shall be more than two hundred fifty feet from a mast arm type street light and no point along any residential street shall be less than two hundred feet from a post type street light. Street lights shall be placed in the following numbers at exact locations to be determined by the city of Wasco city engineer or designee:

Number of Street Lights Required

TABLE INSET:

| Type of Intersection | Arterial/Collector Street | Residential Street |
|---|---|---|
| Four-way intersection | 4 (each corner) | 2 |
| Three-way intersection | 2 | 1 |
| Two-way intersection | 1 | 1 |
| End of a cul-de-sac | 1 | 1 |

(Ord. 474 (part), 2002).

## 16.32.150  Required improvements--Public utilities.

The subdivider shall provide public utilities to each lot of the subdivision including electric, communications (telephone), street lighting, natural gas, and cable television. Existing and new utility distribution facilities, and lines, shall be placed underground in any residential, commercial or industrial subdivision. The subdivider shall be responsible for complying with the requirements of this section, and the subdivider shall make the necessary arrangements with the utility companies for the installation and access to such facilities. Such facilities shall be installed underground before any permanent street facilities are placed. For the purpose of this chapter, appurtenances and associates equipment such as,

but not limited to, surface-mounted transformers, pedestal-mounted terminal boxes and meter cabinets may be placed aboveground where below ground or ground level units are not feasible or possible. If above ground boxes or pedestals are required, they shall have a minimum amount of surface area, be aesthetically pleasing and be covered with an anti-graffiti coating. The provisions of this section shall not apply to utility distribution facilities and lines which do not provide services to the area being subdivided. Utility plans shall be incorporated into the improvement plans.

(Ord. 474 (part), 2002).

## 16.32.160 Required improvements--Railroad crossings.

Provisions shall be made for any and all railroad crossings necessary to provide access to, or circulation with, the proposed subdivision, including the preparation of all documents necessary for application to the public utilities commission of the state for the establishment and improvement of such crossing. Costs for such establishment and improvement shall be the responsibility of the subdivider.

(Ord. 474 (part), 2002).

## 16.32.170 Required improvements--Fences or walls.

Fences or walls shall be constructed by the subdivider of the size and type and in the locations as may be required by the planning commission. Block walls shall be installed per city of Wasco improvement standards. Design guideline policies may be added by the planning commission to assist developers with this section.

(Ord. 474 (part), 2002).

## 16.32.180 Required improvements--Trees.

Trees shall be planted by the subdivider of the size and type and in the locations as may be required by the planning commission for screening purposes or as required pursuant to the city of Wasco Zoning Ordinance. Street trees shall be planted along all public rights-of-way in all new development.

(Ord. 474 (part), 2002).

## 16.32.190 Required improvements--Street striping.

Street striping shall be required in accordance with the currently approved CalTrans Standards.

(Ord. 474 (part), 2002),

## 16.32.200 Required improvements--Stop signs, stop lights or any other traffic safety device.

Stop signs, stop lights or any other traffic safety device shall be as required by the planning commission and shall be installed in accordance with CalTrans Standards. (See traffic impact analysis for fees).

(Ord. 474 (part), 2002).

## 16.32.210 Required improvements--Solid waste containers.

Containers used for the collection of solid waste and recycling by the city shall be furnished at the subdivider's expense. The city staff shall determine the number of containers required. The cost of each container shall be paid prior to recordation of the subdivision map. Containers shall be purchased from the city of Wasco and remain the property of the city of Wasco.

(Ord. 474 (part), 2002).

## 16.32.220 Supplemental improvements and reimbursement agreements.

The subdivider may be required to install improvements for the benefit of the subdivision which may contain supplemental size capacity or number for the benefit of property not within the subdivision and thereafter to dedicate such improvements to the public. The subdivider may be reimbursed for a portion of his costs as provided in Sections 66486 and 66487 of the Subdivision Map Act, or other reimbursement enabling acts. The subdivider's engineer shall submit to the city engineer or other designated city official an engineer's estimate for approval.

In order to pay the costs as required by the reimbursement agreement, the city may:

A. Collect from other persons, including public agencies, using such improvements for the benefit of real property not within the subdivision, a reasonable charge for such use;

B. Contribute to the subdivider that part of the cost of the improvements that is attributable to the benefit of real property outside the subdivision and levy a charge upon the real property benefited to reimburse the city for such cost, together with interest thereon, of any, paid to the subdivider;

C. Establish and maintain local benefit districts for the levy and collection of such charge or costs from the property benefited.

(Ord. 474 (part), 2002).

## 16.32.230 Monuments and lot corners.

A. Permanent Monuments.

1. Permanent monuments in accordance with the city of Wasco standards shall be set by the subdivider's engineer or land surveyor at the following locations:

a. At all angle points and at the beginning and ending of all curves on the exterior boundaries of the subdivision;

b. At all intersections of street centerlines;

c. At the beginning and ending of all curves on the street centerlines within the tract;

d. At all the intersections of street centerlines and the exterior boundary of the subdivision.

2. All such monuments shall be set as to insure an unobstructed site between adjacent monuments.

3. All such monuments shall be set as required by the Subdivision Map Act. The city engineer or other designated city official may check such monuments by field survey and

verify that the positions of such monuments are correct. At such time as structural street sections are completed, frames and covers in accordance with city of Wasco standards shall be constructed.

B. Lot Corners.

1. The subdivider's engineer or land surveyor shall monument all lot corners including each angle point, the beginning of each curve and the end of each curve. Such monument shall not be less substantial and enduring than a half inch iron pipe eighteen inches long with a noncorrosive registered engineer's or licensed surveyor's marker on the head thereof.

(Ord. 474 (part), 2002).

## 16.32.240 Completion of subdivision improvements.

A subdivision map which requires a final or parcel map shall not be approved and subsequently recorded until improvements required as a condition of approval of the tentative map have been completed or a subdivision agreement to complete the improvements has been entered into pursuant to Section 66462 of the Map Act. Such agreement to complete improvements shall be guaranteed by security in the amount, type, form, and content as set forth in this chapter.

(Ord. 474 (part), 2002).

## 16.32.250 Subdivision agreement.

A. The subdivision agreement to complete required improvements shall contain such stipulations as may be required to assure completion of the subdivision in accordance with the requirements of the city. Such stipulations shall specify that the subdivider shall complete the improved work within twelve months and providing that if he fails to complete such work within such period, the city may complete the same and recover the full cost and expense thereof from the subdivider. The subdivision agreement shall provide for inspection of all improvements by the city. The form and content of such agreement shall be approved by the city attorney.

B. The subdivision agreement shall be secured by a bond or security in the amount, type, form and content as set forth in this chapter.

C. Except for assessments authorized after tentative map approval for the financing and completion of improvements required of the subdivider, all outstanding or remaining assessments on the land of the subdivision established for improvements contracted under special assessment district proceedings shall be paid by the subdivider.

(Ord. 474 (part), 2002).

## 16.32.260 Security--Type.

Improvement security shall be of the type as provided for in Section 66499 of the Map Act subject to review by the city attorney an approval of the city council.

(Ord. 474 (part), 2002).

## 16.32.270 Security--Form of bonds.

When a bond is used to secure the faithful performance of the agreement for subdivision

improvements it shall be in substantially the same form as provided for in Section 66499.1 of the Map Act, subject to review by the city attorney and approval by the city council. The form of bond for the security of laborers and materialmen shall be in substantially the same form as provided for in Section 66499.2 of the Map Act subject to review by the city attorney and approval by the city council. Appropriate modifications shall be made in such form if the bond is being furnished for the performance of an act not provided for by agreement. All bonds shall be furnished by a surety company authorized to write the same in the state of California.

(Ord. 474 (part), 2002).

## 16.32.275 Alternative to faithful performance bond described--Procedures.

In lieu of any faithful performance bond required by this chapter, the subdivider may deposit with the city engineer, on behalf of the city council one of the following: (1) a deposit, either with the city or a responsible escrow agent or trust company, selected by the city, of cash or negotiable bonds of the kind approved for securing deposits of public moneys, or (2) an irrevocable instrument of credit from one or more responsible financial institutions regulated by state or federal government and pledging that the funds are on deposit and guaranteed for payment on demand by the city. The forms of all documents relating to such security shall be subject to approval by the city attorney.

(Ord. 474 (part), 2002).

## 16.32.280 Security--Amount.

The improvement security shall be provided in the amount as follows:

A. Performance Security. One hundred percent of the total estimated cost of the improvements or act to be performed securing payment to the contractor, the subcontractors and to persons furnishing labor, materials or equipment to them for the improvement of the performance of the required act.

B. Labor and Material Security. Fifty percent of the total estimated cost of the improvement or act to be performed securing payment to the contractor, the subcontractors and to persons furnishing labor, materials or equipment to them for the improvement or the performance of the required act.

(Ord. 474 (part), 2002).

## 16.32.290 Security--Release.

A. Security for performance may be reduced as work progresses only for the work satisfactorily completed. Upon written request from the subdivider, the city engineer or other designated city official shall determine the value of work completed satisfactorily and submit it to the city council for approval. In no event shall such security be reduced more than ninety percent. Upon final completion and acceptance of the work as determined by the city engineer or other designated city official, a notice of completion shall be filed with the county recorder. Ten percent of such security shall be retained for one year after the filing of such notice.

B. Security for labor and material shall be released six months after such notice of completion is filed; provided, that no claims are filed, the amount of such security shall be reduced equal to the amount of such claims. The balance of the security will be released on the satisfactory settlement of such claims. No security given for the guarantee or warranty of work shall be released until the expiration of the period thereof.

(Ord. 474 (part), 2002).

## 16.32.300  Security--Forfeiture.

Upon the failure of the subdivider to complete any improvement, acts, or obligations within the time specified, or an approved extension thereof the city council may, upon notice in writing of not less than ten days, served upon the person responsible for the performance thereof, or upon notice in writing of not less than twenty days, served by certified mail addressed to the last known address of such person, determine that the subdivider is in default and may cause the improvement security of such portion thereof as is necessary to complete the work or act or other obligation of the subdivider secured thereby to be forfeited to the city.

(Ord. 474 (part), 2002).

## 16.32.310  Notice to commence work.

Improvement work shall not commence until the city engineer or other designated city official has been given twenty-four hours notice. If the work is discontinued for any reason, it shall not be commenced until such notice is given.

(Ord. 474 (part), 2002).

## 16.32.315  Required permits.

All permits required to commence work including but not limited to CalTrans encroachment permits and city of Wasco encroachment permits must be obtained prior to commencement of work.

(Ord. 474 (part), 2002).

## 16.32.320  Inspection--Required.

The construction of all required improvements shall be inspected by the city engineer or other designated city official for conformance with improvement plans.

(Ord. 474 (part), 2002),

## 16.32.330  Inspection--Fees.

Inspection fees shall be in the amount prescribed by resolution of the city council.

(Ord. 474 (part), 2002).

## 16.32.340  Inspections and tests--Required.

A.  Grading. All embankments and excavation shall be compacted in accordance with the city standards. There shall be a sufficient number of tests at sufficient depths to insure proper compaction and moisture content. At such time as the grading is completed, a summary report of such tests shall be submitted to the city engineer or other designated city official for review and approval.

B.  Concrete Work. Prior to the placement of any concrete in public right-of-way, the subdivider or his contractor shall notify the city. The city shall inspect the forms and base for compaction.

The city engineer or other designated city official may require additional compaction tests to assure proper compaction and moisture content. The city engineer or other designated city official may take concrete cylinder samples as he may deem necessary. The breaking of such samples shall be at the subdivider's expense. The city shall check all curb and gutter to assure proper drainage. The contractor shall remove any curb and gutter which fails to meet required tolerances as set forth in the city of Wasco standards.

C.  Underground Utilities. All trench backfill shall be compacted to city requirements. The contractor may use any method approved by the city to obtain required compaction. There shall be sufficient number of tests at sufficient depths to assure proper compaction and moisture content. At such time as the underground improvements have been completed, a summary report of such tests shall be submitted to the city engineer or other designated city official for review and approval.

D.  Streets and Alleys.

1.  Prior to placement of any required base, the subbase shall be prepared and a sufficient number of compaction tests taken at sufficient depths to assure proper compactions and moisture content. The subdivider shall submit such tests to the city engineer or other designated city official for review and approval. No base shall be placed until such approval is obtained.

2.  After the placement of base and prior to placement of pavement, the city engineer or other designated city official may require additional compaction tests to be taken to assure proper compaction. The subdivider shall submit such tests to the city for review and approval. The city engineer or other designated city official may require additional tests or require additional information as deemed necessary to assure proper construction in compliance with the improvement plans. A summary report of such tests shall be submitted to the city engineer or other designated city official.

3.  After the pavement is placed, the subdivider or contractor shall submit all weight slips to the city engineer or other designated city official.

4.  The city engineer or designated city official shall inspect the installation of all sewer and water facilities except for backfill requirements as classified in this title. In addition to the above tests and requirements, the city engineer or other designated city official may require additional testing or other information necessary to assure proper construction in compliance with the improvement plans.

(Ord. 474 (part), 2002).


## 16.32.350  Final inspection.

At such time as all improvements are completed, the subdivider shall arrange a meeting with the city engineer or other designated city official for an inspection of the work. The subdivider's engineer or land surveyor or their representative shall be present during the time of inspections. All required monuments as required in this chapter shall be exposed including all street monuments and not corner monuments. The city engineer or other designated city official may survey or cause to be surveyed the subdivision for assurance that all such monuments satisfy the final map or parcel within allowable tolerances. No deferment of monuments shall be allowed. When all improvements are completed, the city engineer or other designated city official shall proceed to release security as provided for in this chapter.

(Ord. 474 (part), 2002).


## 16.32.360  As-built plans.

At such times as the improvement work has been satisfactorily completed and approved as set forth in this chapter, before filing the notice of completion, the subdivider shall submit a complete set of as-built improvement plans capable of being reproduced. Such plans shall clearly show any changes that were made during construction. As-built improvement plans shall include the stamp and signature of the subdivider's engineer and permanent elevation bench mark based upon the city datum on each centerline of street monument and any other location as may be required by the city engineer or other designated city official. Bench mark elevations bench mark based upon the city datum (data) on each centerline of street monument and any other location as may be required by the city engineer or other designated city official. Bench mark elevations shall be set to the nearest one hundredth of a foot.

(Ord. 474 (part), 2002).

## 16.32.370  Insurance requirements.

Construction shall not commence, or continue, until or unless there is in full force and effect all required insurance. The owner shall not permit any work to be done unless and until the worker's compensation insurance and liability insurance requirements have been complied with.

The type of insurance the owner's contractor shall obtain and maintain are worker's compensation insurance and liability insurance, all as set forth herein.

Worker's compensation insurance and liability insurance shall be maintained in full force and effect for the full warranty period of one year from the date of final acceptance of the work.

Insurers must be authorized to do business and have an agent for service of process in California and have an "A" policyholder's rating and a financial rating of at least Class XI in accordance with the most current best's rating.

As evidence of specified insurance coverage, the owner shall provide certificates of insurance and endorsements to the city on the forms provided as a part of these improvement standards. No alteration or substitution of said forms will be allowed.

Coverage amounts and limits to be provided for worker's compensation and liability insurance shall be as specified in the contract.

A.  Worker's Compensation Insurance. The owner shall provide a certificate(s) of insurance to the city certifying that his contractor has obtained for the period of the contract full worker's compensation insurance coverage for all persons whom the contractor employs or may employ in carrying out the work under the contract. This insurance shall be in strict accordance with the requirements of the most current and applicable state worker's compensation insurance laws.

B.  Liability Insurance. The owner shall provide a certificate(s) of insurance to the city showing his contractor has the liability insurance coverage stated in the contract.

Included in such insurance shall be a "cross liability" or "severability of interest" clause.

As applicable, the liability insurance coverage shall include each of the following types of insurance:

1.  General Liability.

    a.  Comprehensive form;

    b.  Premises--Operations;

    c.  Explosion and collapse hazard;

    d.  Underground hazard;

    e.  Products/completed operations hazard;

       f.  Contractual insurance;

       g.  Broad form property damage including completed operations;

       h.  Independent contractors;

       i.  Personal injury.

    2.  Automobile Liability.

       a.  Comprehensive form including loading and unloading;

       b.  Owned;

       c.  Hired;

       d.  Non-owned.

The liability insurance shall include as additional insureds: the city, the city engineers, their consultants, all other city consultants and each of their directors, officers, agents and employees. The insurance afforded to these additional insureds shall be primary insurance. If the additional insureds have other insurance which might be applicable to any loss, the amount of the insurance provided under this section on liability insurance shall not be reduced or prorated by the existence of such other insurance.

(Ord. 474 (part), 2002).

## Chapter 16.36 EXCEPTIONS

Sections:

16.36.010  Purpose.
16.36.020  Exceptions permitted.
16.36.030  Memorandum of justification.
16.36.040  Planning commission review and decision.
16.36.050  Planned unit developments.
16.36.060  Appeals.
16.36.070  Final map.

## 16.36.010 Purpose.

The purpose of this chapter is to allow the planning commission to approve or conditionally approve exceptions to any of the requirements and regulations set forth in this title in accord herewith.

(Ord. 474 (part), 2002).

## 16.36.020 Exceptions permitted.

Exceptions to the regulations and requirements of this title may be allowed for the following conditions:

A.  When property is impossible or impractical to develop in accordance with any of the provisions of this title because of special circumstances or conditions which affect such property.

B.  When a subdivider proposes to develop property using modern site planning techniques in a manner which does not conform or literally comply to the design standards or regulations set forth in this title but would serve to facilitate the ultimate development of the land in manner that will be commensurate with contemporary living

patterns and technical progress.

(Ord. 474 (part), 2002).

## 16.36.030  Memorandum of justification.

Under normal circumstances, at no time later than the time of filing of the tentative map the subdivider shall submit a memorandum in writing containing the following information:

A.  A complete list of all exceptions requested and justification for such exceptions;

B.  Tentative plans, plan of development or any other material necessary to support justification of such exception;

C.  If applicable, any decision previously made by the planning commission on the proposed property with respect to the zoning regulations, complete with all material and information required therewith.

(Ord. 474 (part), 2002).

## 16.36.040  Planning commission review and decision.

A.  At such time as the planning commission reviews the tentative map it shall review the memorandum of justification. The commission shall approve, approve with conditions or disapprove the requested exceptions. The decision and findings of the commission shall be transmitted to the subdivider and city engineer with the tentative map. In making their decision the planning commission shall make the following findings of fact:

1.  That there are special circumstances or conditions affecting the property;

2.  That the exception is necessary for the preservation and enjoyment of a substantial property right;

3.  That the total development of the property with the exceptions shall in the aggregate be at least equivalent to standard requirements set forth in this title and be in harmony with other developed areas in the immediate vicinity;

4.  That such exceptions will not be detrimental to the public health, safety, convenience and public welfare;

5.  That such exceptions conform to the requirements of the zoning ordinance or any approved exception thereof.

B.  The findings of fact described in subsections (A)(1) and (A)(2) of this section may not be necessary when a subdivider files for an exception based on the condition described in Section 16.36.020(B).

(Ord. 474 (part), 2002).

## 16.36.050  Planned unit developments.

Where in accordance with the provisions of the zoning ordinance a planned unit development has been tentatively approved subject to the approval of exceptions required in these regulations the commission shall find that the tentative map conforms to such plan.

(Ord. 474 (part), 2002).

### 16.36.060 Appeals.

The subdivider or any interested person may appeal any action or decision of the planning commission with respect to granting or denying any exception as set forth in this chapter. All appeals shall be filed and processed in accordance with Section 66452.5 of the Map Act.

(Ord. 474 (part), 2002).

### 16.36.070 Final map.

A copy of such exceptions and all required findings shall be transmitted to the city council with the final map.

(Ord. 474 (part), 2002).

## Chapter 16.40 APPEALS

Sections:
16.40.010  Board.
16.40.020  Requirements.

### 16.40.010 Board.

The city council is designated the appeals board.

(Ord. 474 (part), 2002).

### 16.40.020 Requirements.

The subdivider or any interested person may appeal any action or decision of the advisory agency with respect to the tentative map to the appeals board. All appeals shall be filed and processed in accordance with Section 66452.5 of the Map Act.

(Ord. 474 (part), 2002).

## Chapter 16.44 Storm Drainage Fees

Sections:
16.44.010  Adoption.
16.44.020  Fees--Required.
16.44.030  Fees--Calculation and payment.
16.44.040  Fees--Amount.

### 16.44.010 Adoption.

Pursuant to Section 66483-B of the Map Act, the city council does adopt as one complete drainage area that are within the urban improvement boundary as delineated on the land use element of the general plan.

(Ord. 474 (part), 2002).


## 16.44.020 Fees--Required.

Pursuant to Section 66483 of the Map Act, the subdivider shall pay fees prior to issuance of grading permits for the purpose of defraying the estimated cost of constructing planned drainage facilities for the removal, transportation, and disposal of storm water from the city.

(Ord. 474 (part), 2002).


## 16.44.030 Fees--Calculation and payment.

Drainage fees shall be calculated on a per acre basis for the project area and be paid prior to issuance of grading permits. The project area shall be defined as the entire project site being developed or proposed to be developed including all property to the centerline of all adjacent streets.

(Ord. 474 (part), 2002).


## 16.44.040 Fees--Amount.

Fees shall be in the amount prescribed by resolution of the city council. All such fees shall be determined and administered in accordance with the Map Act.

(Ord. 474 (part), 2002).


## Chapter 16.46  PARK LAND DEDICATION

Sections:
16.46.010  Definitions.
16.46.020  General.
16.46.030  Requirements.
16.46.040  Standards and formula for dedication of land.
16.46.050  Fees in lieu of land dedication.
16.46.060  Criteria for requiring both dedication and fee.
16.46.070  Credit for private recreation or open space.
16.46.080  Credit for public facilities and/or open space.
16.46.090  Procedure.
16.46.100  Conveyance of land and payment of in lieu fee to the district.
16.46.101  Commencement of development.
16.46.102  Exemptions.


## 16.46.010 Definitions.

The definitions contained in this section apply to this chapter.

"District" means the Wasco Recreation and Parks District, a local public agency separate and distinct from the city of Wasco.

All other words and phrases shall have the meanings set forth in the Subdivision Map Act (Government Code Section 66410 et seq.) and this chapter.

(Ord. 474 (part), 2002).

## 16.46.020  General.

This section is enacted pursuant to the authority granted by Section 66477 of the Government Code of the state of California. The park and recreational facilities for which dedication of land and/or payment of a fee is required by this chapter are in accordance with the city of Wasco general plan, the recreational element of the general plan, and the master park and recreation plan of the district.

(Ord. 474 (part), 2002).

## 16.46.030  Requirements.

As a condition of approval of a tentative subdivision map or residential parcel map within the jurisdiction of the district, the subdivider shall dedicate land, pay a fee in lieu thereof, or both, as set forth in this chapter, for park or recreational purposes at the time and according to the standards and formula contained in this chapter.

(Ord. 474 (part), 2002).

## 16.46.040  Standards and formula for dedication of land.

A.  If the dedication of land is required, the amount of land to be provided shall be determined pursuant to the following standards and formula:

TABLE INSET:

| AVERAGE PERSONS PER DWELLING UNIT | X | NUMBER OF DWELLING UNITS | X | 2.5 ACRES 1,000 PERSONS = # ACRES |
|---|---|---|---|---|

B.  Unless there is evidence to the contrary, federal census tract averages for the district will be used for determining the average number of persons per dwelling unit. Separate standards for single-family and multiple-family zoned land divisions may be used.

C.  Prior to recordation of a single-family zoned subdivision map or residential parcel map or prior to obtaining a building permit for multiple-family zoned residential subdivisions or parcel maps, land dedication shall be calculated based on the existing zoning. When the number of dwelling units/lots are shown, land dedication will be based on the actual density proposed.

(Ord. 474 (part), 2002).

## 16.46.050  Fees in lieu of land dedication.

A.  When a fee is to be paid in lieu of land dedication, the amount of such fee shall be calculated using the following formula:

TABLE INSET:

| AVERAGE PERSONS PER DWELLING UNIT* | X | NUMBER OF DWELLING UNITS | X | .0025 | X | FAIR MARKET VALUE PER ACRE = FEE |
|---|---|---|---|---|---|---|

\* Determined from latest census data

Determination of Fair Market Value - A determination of fair market value as of the time prior to approval of the proposed land division shall be based on comparable sales data from the area being subdivided and shall be as accepted by the district. In the event that the subdivider and the district cannot agree to the fair market value of the property being subdivided, the fair market value shall be determined by the city, at the expense of the subdivider.

B. Later modifications would be subject to fee adjustments as outlined in the applicable portions of this chapter.

C. Only the payment of fees may be required in subdivisions containing fifty parcels or less or for a condominium project, stock cooperative, or community apartment project containing fifty or fewer dwelling units.

Nothing in this section shall prohibit the dedication and acceptance of land for park and recreation purposed in subdivisions of fifty or fewer lots, or condominium projects, stock cooperatives, or community apartment projects containing fifty or fewer dwelling units, where the subdivider proposed each dedication voluntarily, and the land otherwise meets the requirements of this chapter.

(Ord. 474 (part), 2002).

## 16.46.060  Criteria for requiring both dedication and fee.

In a tract of over fifty lots or in a condominium project, stock cooperative, or community apartment project with over fifty dwelling units, the subdivider shall both dedicate land and pay a fee in lieu of dedication in accordance with the following:

A. When only a portion of the land to be subdivided is proposed in the district master plan as the site for a local park, such portion shall be dedicated for local park purposes and a fee, computed pursuant to the provisions of Section 16.46.050 shall be paid for the value of any additional land that would have been required to be dedicated pursuant to Section 16.46.040.

B. When a major part of the local park or recreational site has already been acquired by the district and only a small portion of land is needed from the subdivision to complete the site, the remaining portion shall be dedicated and a fee, computed according to Section 16.46.050 shall be paid in an amount equal to the value of the land which would otherwise have been required to be dedicated.

(Ord. 474 (part), 2002).

## 16.46.070  Credit for private recreation or open space.

Where private area for park and recreation purposes is provided in a development, and such area is for active recreational use and is to be privately owned and maintained by the future owner(s) of the development, such area may be credited against up to fifty percent of the requirement of land dedication or fee payment, if the city determines that it is in the public interest to do so and that all of the following standards either have been or will be met prior to the approval of the final map:

A. That yards, court areas, setbacks, and other open spaces, required to be maintained by the zoning ordinance and the building code and other regulations shall not be included in the computation of such private areas;

B. Evidence is provided that the private ownership and maintenance of the area will be adequately provided for by recorded written agreement, covenants, or restrictions;

C.  That the use of the private area is restricted for park and recreational purposes by an open space easement or other acceptable instrument;

D.  That the proposed private area is reasonably adaptable for use for park and recreational purposes, taking into consideration such factors as size, shape, topography, geology, access, and location; and

E.  That the facilities proposed: (1) are consistent with the plans of the district master plan and recreation plan, (2) are appropriate to the recreation needs of the future residents of the development, and (3) will substitute for the park lands otherwise required to be dedicated in meeting the recreation needs of the residents.

Planned developments, real estate developments, stock cooperatives, and community apartment projects, as defined in Sections 11003, 11003.2, 11003.4, and 11004, respectively, of the California Business and Professions Code, and condominium projects as defined in Section 783 of the California Civil Code shall be eligible to receive a credit as determined by the city against the amount of land and development required to be dedicated, or the amount of the fee imposed, pursuant to this section, for the value of private open space within the development which is for active recreational uses.

(Ord. 474 (part), 2002).

## 16.46.080  Credit for public facilities and/or open space.

If the subdivider within the district provides park or recreational improvements to the park site required by Section 16.46.040, the value of such improvements together with any equipment thereon shall be a credit, as determined by the district, against the payment of fees or dedication of land required by this chapter.

(Ord. 474 (part), 2002).

## 16.46.090  Procedure.

A.  At the time of filing of the tentative tract map or tentative parcel map, a subdivider shall, as part of such filing indicate whether he desires to dedicate land for park and recreational purposes or to pay a fee in lieu thereof, or a combination of both. If he desires to dedicate land for park and recreational purposes, he shall designate the area thereof on the tentative tract or tentative parcel map which is submitted and coordinate with the city and district as to the appropriate location and size of the area proposed to be dedicated. The city shall determine prior to the time the city approves a subdivider's tentative tract map, or tentative parcel map, whether land is to be dedicated or in lieu fees are to be paid by the subdivider or any combination of land and fees.

The recommendation and action of the city and the district shall include the following:

1.  That land is required;

2.  That a fee be charged in lieu of land;

3.  That land and a fee be required; and/or

4.  That a stated amount of credit be given.

B.  Land dedication, or payment of fee in lieu thereof, or a combination of both, shall be determined by consideration of the following:

1.  The city of Wasco general plan or district master plan;

Case 1:08-cv-01080-LJO-GSA    Document 136    Filed 09/30/09    Page 46 of 53

2. Topography, geology, access, and location of land in the subdivisions available for dedication;

3. Size and shape of the subdivision and land available for dedication;

4. Feasibility of dedication;

5. Availability of previously acquired park property;

6. Population density of the project; and

7. Suitability of the site for park needs.

The determination by the city as to whether land shall be dedicated, or whether a fee shall be charged or a combination shall be final.

C.   When the payment of fees is required, the fees shall be calculated by the district and paid as follows:

1. Single-family zoned land division -- Payment shall be made to the district prior to or concurrent with the recordation of the final tract or parcel.

2. Multiple-family zoned land division -- A condition shall be placed on the tentative approval of all tract and parcel maps requiring payment prior to the issuance of any building permits on any of the lots/parcels within the land division.

D.   When the dedication of land is required in lieu of the payment of fees, said land shall be deeded to the district in the following manner:

1. Single-family zoned land division - Dedication shall be made prior to concurrent with the recordation of the final tract or parcel map.

2. Multiple-family zoned land division - Dedication shall be made prior to the issuance of building permits for any of the lots/parcels within the land division.

(Ord. 474 (part), 2002).

## 16.46.100  Conveyance of land and payment of in lieu fee to the district.

A.   Where dedication is required, it shall be accomplished in accordance with the provisions of the Subdivision Map Act and/or the provision of this code. Real property dedicated under the provisions of this chapter shall be conveyed by grant deed in fee simple to the district by the subdivider free and clear of all encumbrances except those which will not interfere with use of the property for park and recreation purposes and which the district agrees to accept.

B.   The money collected hereunder shall be used only for the purpose of providing park or recreational facilities reasonably related to serving the subdivision by way of the purchase of necessary land or, if the city deems that there is sufficient land available for the subdivision, for improving of such land for park and recreational purposes. The money shall be committed within five years after payment or upon issuance of building permits on fifty percent of the subdivision lots whichever occurs later. If the money is not committed, it shall be distributed and paid to the then record owners of the subdivision in the same proportion the size of their lot bears to the total area of all lots in the subdivision. Such a distribution shall include all interest accrued to the collected fees from the date of collection.

(Ord. 474 (part), 2002).

## 16.46.101  Commencement of development.

At the time of recordation of the final tract map or parcel map, for single-family zoned land division or upon obtaining a building permit for multiple-family zoned land division, the district shall have adopted a schedule specifying how, when, and where it will use the fees to develop or rehabilitate park or recreational facilities to serve the residents of the subdivision. Land donations shall be accepted by the district prior to the recordation of subdivision or parcel maps and would thus designate the use of the required dedication.

(Ord. 474 (part), 2002).

### 16.46.102 Exemptions.

The provisions of this chapter do not apply to commercial or industrial subdivisions, condominium projects, or stock cooperatives which consist of the subdivision of airspace in an existing apartment building which is more than five years old when no new dwelling units are added.

(Ord. 474 (part), 2002).

## Chapter 16.48 VIOLATION--PENALTY

Sections:
16.48.010  Unlawful acts declared misdemeanor.
16.48.020  Remedies not barred.

### 16.48.010  Unlawful acts declared misdemeanor.

Any act declared by this title to be unlawful shall be a misdemeanor and any person, upon conviction thereof, shall be punishable by a fine of not more than five hundred dollars or imprisonment in the county jail for a period of not more than six months, or by both such fine and imprisonment.

(Ord. 474 (part), 2002).

### 16.48.020  Remedies not barred.

This title does not bar any legal, equitable or summary remedy to which the city of any aggrieved public agency or person may otherwise be entitled, and the city or any aggrieved public agency or person may file a suite in the superior court to restrain or enjoin any attempted or proposed division of land or other act which is in violation of this title.

(Ord. 474 (part), 2002).

## Appendix A  CITY OF WASCO
## CONSTRUCTION STANDARDS

TABLE OF CONTENTS

TABLE INSET:

| ROADS | |
|-------|--|
|  |  |

| R1 | Street Sections |
|---|---|
| R2 | Curb, Gutter and Sidewalk |
| R3 | Alley Sections |
| R4 | Cross Gutter |
| R5 | Cul-de-sac and Knuckle Treatments |
| R6 | Pavement Tie-In |
| R7 | Residential Drive Approach |
| R8 | Commercial Drive Approach |
| R9 | Wheelchair Ramp |
| R10 | Street Signage/Light Pole Locations |
| R11 | Street Signage |
| R12 | Street Sign |
| R13 | Street Light |
| R14 | Street Lights--General Notes |
| R15 | Street Light--Post Type |
| R16 | Survey Monument |
| | |
| WATER | |
| | |
| W1 | Water Service |
| W2-A | Fire Hydrant |
| W2-B | Fire Hydrant Installation Policy |
| W3-A | Valve Box |
| W3-B | Water Valve Installation |
| W4 | Thrust Blocks |
| W5 | Backflow Prevention Device Installation |
| W6 | Vacuum Breaker Device Installations |
| | |
| SEWER | |
| | |
| S1 | Manhole Type "A" |
| S2 | Manhole Frame and Cover |
| S3 | Manhole Type "B" |
| S4 | Drop Manhole |
| S5 | Eight Inch (8&Prime;) Cleanout |
| S6 | Sewer Pipe Connection |
| S7-A | Sewer Design Standards |
| S7-B | Sewer Design Standards (Continued) |
| | |
| DRAINAGE | |
| | |
| D1 | Catch Basin |

| D2 | Junction Box |
|---|---|
| D3 | Storm Drain Manhole |
| D4 | Sidewalk Underdrain |
| D5 | Drainage Basin |
| D6 | Drainage Basin Outlet Structure |
| D7 | Chainlink Fence |
| D8 | Chainlink Gates |
| | |
| **BACKFILL** | |
| | |
| B1-A | Standard Trench Backfill |
| B1-B | Standard Trench Backfill Notes |
| B2-A | One Sack Slurry Trench Backfill |
| B2-B | One Sack Slurry Trench Backfill Notes |
| | |
| **MISCELLANEOUS** | |
| | |
| M1 | Retaining Wall--5&prime; High Maximum |
| M2 | Retaining Wall--Over 5&prime; High to 8&prime; High |
| M3 | Trash Bin Enclosures |
| | |
| **LANDSCAPING** | |
| | |
| L1 | Bike Path |
| L2 | Belt Park |
| L3-A | Tree Placement |
| L3-B | Tree Placement |
| L4 | Block Wall |

## GENERAL NOTES

1. Class "A" concrete is defined as 6 sack per cubic yard with slump 2.5&Prime; to 4&prime; maximum.

2. Class "B" concrete is defined as 5 sack per cubic yard with slump 3&prime; to 5.5&Prime; maximum.

TABLE INSET:

| ABBREVIATIONS | DEFINITIONS |
|---|---|
| AB | Aggregate Base |
| AB | Asphalt Concrete |
| B.W. | Both Ways |
| BCR | Begin Curb Return |
| C | Clearance |

| CL | Centerline |
|---|---|
| CLR | Clear |
| CONC. | Concrete |
| CONT. | Continuous |
| CORP. | Corporation |
| D | Distance |
| D.F. | Douglas Fir Tree |
| DIA. | Diameter |
| E.W. | Each Way |
| ECR | End Curb Return |
| ELEC. | Electrical |
| FL | Curb and Gutter Flowline |
| FPS | Feet Per Second |
| FT. | Foot (Feet) |
| GAL. | Gallon(s) |
| GALV. | Galvanized |
| GPD | Gallons Per Day |
| I.D. | Inner Diameter |
| IRRG. | Irrigation |
| L | Length |
| LB(S). | Pound(s) |
| MAX. | Maximum |
| MIN. | Minimum |
| O.C. | On Center |
| O.D. | Outer Diameter |
| P.S.I. | Pounds Per Square Inch |
| PL | Property Line |
| PUE | Public Utility Easement |
| R | Radius |
| RAD. | Radius |
| ROW | Right-of-Way |
| S | Slope |
| SHT. | Sheet |
| SPECS. | Specifications |
| SQ. FT. | Square Foot (Feet) |
| STD(S) | Standard(s) |
| T.I. | Traffic Index |
| TW | Travel Width |
| TYP. | Typical |
| V-GUTTER | Valley Gutter |
| W | Width |
| W/ | With |

(Ord. 550 (Exh. A), 2007; Ord. 549 (Exh. A), 2007; Ord. 474 (part), 2002).

GRAPHIC LINK:Click here

GRAPHIC LINK:Click here

GRAPHIC LINK:Click here

GRAPHIC LINK:Click here

GRAPHIC LINK:Click here

GRAPHIC LINK:Click here

GRAPHIC LINK:Click here

GRAPHIC LINK:Click here

GRAPHIC LINK:Click here

GRAPHIC LINK:Click here

GRAPHIC LINK:Click here

GRAPHIC LINK:Click here

GRAPHIC LINK:Click here

GRAPHIC LINK:Click here

GRAPHIC LINK:Click here

GRAPHIC LINK:Click here

GRAPHIC LINK:Click here

GRAPHIC LINK:Click here

GRAPHIC LINK:Click here

GRAPHIC LINK:Click here

**GRAPHIC LINK:Click here**

**GRAPHIC LINK:Click here**

**GRAPHIC LINK:Click here**

**GRAPHIC LINK:Click here**

**GRAPHIC LINK:Click here**

**GRAPHIC LINK:Click here**

**GRAPHIC LINK:Click here**

**GRAPHIC LINK:Click here**

**GRAPHIC LINK:Click here**

**GRAPHIC LINK:Click here**

**GRAPHIC LINK:Click here**

**GRAPHIC LINK:Click here**

**GRAPHIC LINK:Click here**

**GRAPHIC LINK:Click here**

**GRAPHIC LINK:Click here**

**GRAPHIC LINK:Click here**

**GRAPHIC LINK:Click here**

**GRAPHIC LINK:Click here**

**GRAPHIC LINK:Click here**

**GRAPHIC LINK:Click here**

**GRAPHIC LINK:Click here**

**GRAPHIC LINK:Click here**

GRAPHIC LINK:**Click here**

GRAPHIC LINK:**Click here**

GRAPHIC LINK:**Click here**

GRAPHIC LINK:**Click here**

GRAPHIC LINK:**Click here**

GRAPHIC LINK:**Click here**

GRAPHIC LINK:**Click here**

GRAPHIC LINK:**Click here**

GRAPHIC LINK:**Click here**