1  GARCIA CALDERON RUIZ, LLP
   Bonifacio Bonny Garcia (SBN 100761)
2  Chaka C. Okadigbo (SBN 224547)
   500 South Grand Avenue, Suite 1100
3  Los Angeles, CA  90071
   (213) 347-0210; Fax (213) 347-0216
4

5
   Attorneys for Defendant CITY OF WASCO.
6

7                 UNITED STATES DISTRICT COURT

8        EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

9

10  ROGER McINTOSH,                        Case No:  1:07-CV-01080LJO-GSA

11            Plaintiff,
                                           **DEFENDANT CITY OF WASCO'S**
12       vs.                               **SEPARATE STATEMENT OF**
                                           **UNDISPUTED FACTS IN SUPPORT OF**
13  NORTHERN CALIFORNIA UNIVERSAL          **MOTION FOR SUMMARY JUDGMENT**
    ENTERPRISES COMPANY, INC., *et al.*,   **AND MOTION FOR SUMMARY**
14                                         **ADJUDICATION AGAINST PLAINTIFF**
            Defendants.                    **ROGER McINTOSH**
15

16  CITY OF WASCO.,                        Date:      October 28, 2009
                                           Time:      8:30 a.m.
17            Cross-Complainant,           Judge:     Hon. Lawrence J. O'Neill
                                           Department:  4
18       vs.

19  NORTHERN CALIFORNIA UNIVERSAL
    ENTERPRISES COMPANY, INC.,
20
            Cross-Defendant.
21

22

23       Moving Defendant CITY OF WASCO ("City"), submits the following Separate

24  Statement of Undisputed Facts in Support of its Motion for Summary Judgment:

25  / / /

26  / / /

27  / / /

28  / / /

1

2

| **UNDISPUTED MATERIAL FACTS** | **SUPPORTING EVIDENCE** |
|---|---|

3

4

1.      Plaintiff, Roger McIntosh, is a civil engineer doing business as McIntosh & Associates, a sole proprietorship.

1.      Para 4, Chaka C. Okadigbo Decl. and Exhibit "C" thereto. (Complaint, ¶ 2.)

5

6

2.      Defendant City of Wasco ("City") is a municipal corporation formed and organized under the laws of the State of California.

2.      Para 4, Chaka C. Okadigbo Decl. and Exhibit "C" thereto. (Complaint, ¶ 5.)

7

8

9

3.      Defendants Northern California Universal Enterprises Company and Lotus Developments, LP are California companies engaged in the business of developing land and, in particular, subdivisions.

3.      Para 10, Chaka C. Okadigbo Decl. and Exhibit "I" thereto. (Wu Deposition, 5:20-22, 8:15-17, 9:25-2.)

10

11

12

4.      Defendant Dennis W. DeWalt, Inc. ("DeWalt") is a company that, among other services, performs topographical and land surveys and prepares tentative and final maps for subdivisions of land.

4.      Paras 15 and 16, Chaka C. Okadigbo Decl. and Exhibits "N" and "O" thereto. (Gutierrez Deposition, Exhibits 3 and 4 attached thereto.)

13

14

15

5.      During the period 1992 through 1994, the Legacy Group, Ltd. ("Legacy") owned the Valley Rose Estates and made efforts to develop it as a subdivision.

5.      Para 4, Chaka C. Okadigbo Decl. and Exhibit "C" thereto. (Complaint, ¶¶ 7, 15, 28; Michael Brown Decl., ¶ 3 [NCUE UMF1].)

16

17

6.      Michael S. Brown ("Brown") was a general partner at Legacy and served as the point person for Legacy's plans to develop the Valley Rose Estates.

6.      Para 5, Chaka C. Okadigbo Decl. and Exhibit "D" thereto.  (McIntosh Deposition, 64:14; Michael Brown Decl., ¶ 2.)

18

19

20

7.      In April 1992, Legacy set out to create a master planned community for the Valley Rose Estates, which at the time consisted of 480 acres.

7.      Para 7, Chaka C. Okadigbo Decl. and Exhibit F attached thereto

21

22

8.      Martin-McIntosh created a "draft guidance package" that provided direction and clarified expectations between the Legacy, the City and Martin-McIntosh.

8.      Para 7, Chaka C. Okadigbo Decl. and Exhibit F attached thereto

23

24

25

26

9.      The City's acceptance of the package was intended as a commitment to expeditious and efficient processing of the Valley Rose Estates master plan.  The City did not guarantee that it would approve Legacy's project.

9.      Para 7, Chaka C. Okadigbo Decl. and Exhibit F attached thereto.

27

28

10.      Of note, the Package clarifies that Martin-McIntosh was to serve as the "representative of the Legacy Group Limited" with respect to the City's review and

10.      Para 7, Chaka C. Okadigbo Decl. and Exhibit F attached thereto.

**DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

| | | | |
|---|---|---|---|
| 1 | processing of its master plan. (p.4). | | |
| 2 | 11.      Ron Staub was mentioned as the point of contact for Martin-McIntosh in connection with the vision to create a master planned community in the Valley Rose Estates. | 11. | Para 7, Chaka C. Okadigbo Decl. and Exhibit F attached thereto. |
| 3 | | | |
| 4 | | | |
| 5 | 12.      The guidance package called for Martin-McIntosh to produce master plans, tentative maps and improvement plans and to share it with the City and the public as part of the City's review and approval process. | 12. | Para 7, Chaka C. Okadigbo Decl. and Exhibit F attached thereto. |
| 6 | | | |
| 7 | | | |
| 8 | 13.      On March 18, 1992, Martin-McIntosh prepared a written contract ("The Contract") which set forth the work it would perform for the entire 480 acres of the Subdivision.  Under The Contract, Martin-McIntosh would prepare a conceptual plan for $15,200, prepare master plans for water, sewer and drainage and other utilities for $54,800 and conduct a survey of the Subdivision for $19,100. Altogether, Martin-McIntosh's services would cost $89,100. | 13. | Para 7, Michael Brown Declaration and Exhibit B attached thereto, including Martin-McIntosh's March 18, 1992 letter [NCUE UMF 11] |
| 9 | | | |
| 10 | | | |
| 11 | | | |
| 12 | | | |
| 13 | | | |
| 14 | 14.      The contract was expanded to include preparation of Parcel Map No. 9752 for $5,000, preparation of improvement plans and a final map for Tract No. 5472 for $57,900 and additional work that is not relevant to this case. | 14. | Para 7, Declaration of Michael Brown and Exhibit C attached thereto [NCUE UMF 12] |
| 15 | | | |
| 16 | | | |
| 17 | 15.      On July 21, 1992, Martin-McIntosh recorded Parcel Map 9572, which divided the 480 acres into six separate parcels of property ranging from 26.54 to 154.31 acres each. | 15. | Para 11, Steven J. Hassing Decl. and Exhibit F attached thereto [NCUE UMF 18] |
| 18 | | | |
| 19 | 16.      Parcel 1, the parcel at issue in this lawsuit (and which subsequently became Tract No. 5472 and then Tract No. 6451), contains 33.51 acres. | 16. | Para 12, Steven J. Hassing Decl. and page 3 of Exhibit F attached thereto [NCUE UMF 19] |
| 20 | | | |
| 21 | | | |
| 22 | 17.      Parcel Map 5472 sought to further subdivide Parcel 1 into 69 lots, 68 for single family residential homes and 1 for 96 apartments. | 17. | Para 3, Steven J. Hassing Decl. and Exhibit B attached thereto; Para 8, Jeff Gutierrez Decl [NCUE UMF 20] |
| 23 | | | |
| 24 | 18.      In 2007, the Final Map for Tract No. 6451 divided Parcel 1 into 68 family lots | 18. | Para 14, Steven J. Hassing Decl. and Exhibit G attached thereto [NUCE UMF 21] |
| 25 | | | |
| 26 | 19.      On January 28, 1993, the City and Legacy, aided by Martin-McIntosh, executed an Acquisition Agreement whereby the City agreed to purchase Martin-McIntosh's improvement plans and specifications as well | 19. | James Zervis Decl. ¶ 4 and Exhibit A attached thereto. |
| 27 | | | |
| 28 | | | |

**DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

1    as the infrastructure improvements to be
     constructed on Parcel 1 (Tract No. 5472).

2

3    20.    Ron Staub, Martin-McIntosh's project          20.    McIntosh Deposition, at 156:11-13,
     manager, prepared the engineering cost                     156:17-19; Paras 9 and 10, Michael
     summary for the Acquisition Agreement,                     Brown Decl. and Exhibit G attached
4    which established the amounts Martin-                      thereto (see pages 2 and 3) [NCUE
     McIntosh would receive from the City.                      UMF 23].

5

6    21.    The City paid at least $98,000 for the        21.    Robert Wren Decl. ¶ 8 and Exhibit A
     Martin-McIntosh improvement plans for Parcel              attached thereto.
     1, as evidenced by an engineer's report
7    prepared by Terry Schroepfer, then of Quad
     Engineering, for the City.

8

9    22.    The City paid Martin-McIntosh over           22.    Para 9, Steven J. Hassing Decl. and
     $800,000 for services rendered for the                    Exhibit D attached thereto (see 3:1-6.)
     Subdivision.                                               [NCUE UMF 25]

10

11   23.    On or about April 21, 1992, Martin-          23.    Para 3, Chaka C. Okadigbo Decl. and
     McIntosh prepared a tentative map for the                Exhibit B attached thereto.
     Subdivision (Revised Tentative Map for Tract
12   No. 5472).

13   24.    In 1993, Martin-McIntosh prepared            24.    Para 4, Chaka C. Okadigbo Decl. and
     improvement plans (streets, sidewalks, curb              Exhibit C attached thereto (Complaint,
14   and gutter, storm drain, sewer, water and              ¶ 26.)
     utilities) for the Subdivision.

15

16   25.    Martin-McIntosh submitted both the           25.    Para 4, Chaka C. Okadigbo Decl. and
     improvement plans and Revised Tentative Map            Exhibit C attached thereto (Complaint,
     for Tract No. 5472 to the City.                         ¶ 26.)

17

18   26.    The City approved the Revised                26.    Para 4, Chaka C. Okadigbo Decl. and
     Tentative Map for Tract No. 5472 and                    Exhibit C attached thereto (Complaint,
     construction commenced on the subdivision              ¶ 6.)
19   created.

20   27.    In or after 1994, the Legacy Group           27.    Para 4, Chaka C. Okadigbo Decl. and
     declared bankruptcy, and construction on the            Exhibit C attached thereto (Complaint,
21   subdivision ceased. The City purchased the             ¶ 28.)
     property with the partially constructed
22   subdivision at a tax sale.

23   28.    All or substantially all improvements in     28.    Para 5, Chaka C. Okadigbo Decl. and
     the Valley Rose Estates Subdivision were                Exhibit D attached thereto (McIntosh
24   constructed by 1994 in accordance with the             Deposition at, 81:1-2, 81:21-34, 82:3-
     Martin-McIntosh improvement plans.                      11, 278:25-279:7, 279:14-21.)

25

26   29.    Thus, the streets, sidewalks, curbs,         29.    Paras 10,17,19, Chaka C. Okadigbo
     gutters, storm drain, and driveway approaches          Decl. and Exhibit I attached thereto
27   were constructed during that time period.             (Wu Deposition, at 48:4-12; Helt
                                                            Deposition, at 39:7-11, 41:8-16; Pennell
28                                                          Deposition, at 19:18-21).

4825-9339-0084

**DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT**

| | | |
|---|---|---|
| 30. | In 1999, McIntosh purchased Martin's share of Martin-McIntosh and contends that he became the owner of Martin-McIntosh's copyright interests in the Revised Tentative Map for Tract No. 5472 and the Martin-McIntosh improvement plans. | 30. Para 4, Chaka C. Okadigbo Decl. and Exhibit C attached thereto (Complaint, ¶¶ 12, 25.) |
| 31. | The Revised Tentative Map for Tract No. 5472 expired on May 11, 2001. | 31. Para 11, Chaka C. Okadigbo Decl. and Exhibit J attached thereto (Schroepfer Deposition, at 14:8-21.) |
| 32. | Following Legacy's bankruptcy, the Subdivision lay dormant until April 26, 2002 when the City purchased parcels 1 and 3 through a tax sale. | 32. Para 5, Chaka C. Okadigbo Decl. and Exhibit D attached thereto (McIntosh Deposition, at 178:14-17.) |
| 33. | On or about May 18, 2004, the City sold the Valley Rose Estates Subdivision to Northern California Universal Enterprises Company ("NCUE"), a California corporation owned and operated by Joe Wu. | 33. Para 10, Chaka C. Okadigbo Decl. and Exhibit "I" thereto. (Wu Deposition, at 8:15-17; 29:25-30:16; Zervis Decl. ¶ 6.) |
| 34. | Mr. Wu also directs the activities of Lotus Developments, LP and, in his dealings with the City to develop the Subdivision, has used NCUE and Lotus Developments interchangeably. | 34. Para 4, Joe Wu Declaration [filed with NCUE SJ Motion]; Dennis McNamara Declaration, ¶ 4. |
| 35. | NCUE bought the Valley Rose Estates, knowing that improvements had already been constructed in the Subdivision and intending to take advantage of the existing improvements to develop the property. | 35. Para 10, Chaka C. Okadigbo Decl. and Exhibit "I" thereto. (Wu Deposition, at 13:25-14:5) |
| 36. | Indeed, Mr. Wu is experienced in purchasing and completing subdivisions in which improvements have already been constructed but the development of the subdivision remains incomplete. | 36. Para 10, Chaka C. Okadigbo Decl. and Exhibit "I" thereto. (Wu Deposition, at 11:1-7; 17:24-18:6.) |
| 37. | The purchase agreement between the City and NCUE did not require NCUE to complete the development of the Valley Rose Estates as a subdivision. | 37. James Zervis Decl. ¶ 6; Exhibit B attached thereto. |
| 38. | Following the sale of the Subdivision, the City's ownership interests in the Subdivision ceased. | 38. James Zervis Decl. ¶ 7. |
| 39. | The City and NCUE have not entered into any joint venture, partnership, co-ownership or other such arrangement with respect to owning or developing the | 39. James Zervis Decl. ¶ 8. |

**DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

1    Subdivision.

2    40.   Similarly, the City has not entered into
     any such arrangement with Lotus          40.   James Zervis Decl. ¶ 9.
3    Developments.

4    41.   The decision to continue developing the
     Subdivision was made by NCUE and/or Lotus   41.   Paras 9, 10, and 11, Chaka C. Okadigbo
5    Developments, not the City. The City's role          Decl. and Exhibits "H", "I" and "J"
     was merely to perform routine municipal              thereto. (Woodcock Deposition, at
6    functions -- (1) review, comment on and              26:19-25; 26:23-25; Wu Deposition, at
     approve or disprove NCUE and/or Lotus                38:24-39:21; 40:9-13; Terry Schroepfer
7    Development's tentative and final maps based          Deposition, at 15:15-20; McNamara
     on whether they complied with the Subdivision        Decl. ¶ 3; Wren Decl. ¶¶ 3, 4.)
8    Map Act and/or the City's Municipal Code and
     (2) process any additional requests from
9    NCUE/Lotus Developments associated with
     finalizing the development of the Subdivision.
10

11   42.   Beyond the tentative map approval
     stage, the City's dealings with NCUE and   42.   Wren Decl. ¶ 10.
12   Lotus Developments has consisted of requiring
     these entities to perform lift station
13   improvements and repair and maintenance in
     connection with NCUE and/or Lotus
14   Developments' sustained interests in
     completing the Subdivision and recording a
15   final map.

16   43.   The City informed NCUE and/or Lotus
     Developments that the Revised Tentative Map   43.   Paras 10 and 11, Chaka C. Okadigbo
17   for Tract No. 5472 had expired and, thus,          Decl. and Exhibits "I" and "J" thereto.
     NCUE and/or Lotus Developments were               (Wu Deposition, at 37:19-38:2:
18   required to submit a new tentative and final      Schroepfer Deposition, at 14:8-21; see
     map to proceed with its plans to develop the      also Government Code § 66452.6(e)
19   Subdivision.                                       (providing for a five year maximum life
                                                        for tentative maps)
20   44.   Consequently, NCUE and/or Lotus
     Developments retained DeWalt to prepare and   44.   Paras 10 and 13, Chaka C. Okadigbo
21   submit a new tentative Map (Tentative Map        Decl. and Exhibits "I" and "L" thereto.
     for Tract No. 6451) and a final map (Final Map    (Greg Black Deposition, at 32:15-18;
22   for Tract No. 6451) for the Valley Rose Estates.   Wu Deposition at 52:4-8.)

23   45.   The City provided a copy of the
     Martin-McIntosh improvement plans to Greg   45.   Paras 13 and 14, Chaka C. Okadigbo
24   Black, the person at DeWalt who supervised      Decl. and Exhibits "L" and "M"
     other employees responsible for conducting the    thereto. (Black Deposition, at 18:14-
25   land surveys and for preparing the Tentative     18; Gutierrez Deposition, at 15-17.)
     Map for Tract No. 6451 and the Final Map for
26   Tract No. 6451.

27   46.   Plaintiff contends that the City also
     provided a copy of the Revised Tentative Map   46.   Para 14, Chaka C. Okadigbo Decl. and
28   for Tract No. 5472 to DeWalt, based on the        Exhibit "M" thereto. (Gutierrez
     deposition testimony of Jeffrey Gutierrez,       Deposition, at 35:15-17.)

1    DeWalt's President.

2    47.    DeWalt prepared the Tentative Map for          47.    Para 10, Chaka C. Okadigbo Decl. and
     Tract No. 6451 and the Final Map for Tract                  Exhibit "P" thereto.  (Wu Deposition, at
3    No. 6451 and submitted these maps to the City.               36:17-37:1-2; 52:6-16.)

4

5    48.    DeWalt conducted its own land survey,          48.    Para 14, Chaka C. Okadigbo Decl. and
     which provided the basis for the information                 Exhibit M attached thereto (Gutierrez
6    depicted in its tentative and final maps.                     Deposition, at 14:15-20, 14:23-8, 19:4-
                                                                   20:1); Gutierrez Decl. ¶¶ 4,5 [submitted
7                                                                   concurrently with NCUE SJ Motion];
                                                                   Black Decl. ¶ ¶ 10, 11 [submitted
8                                                                   concurrently with NCUE SJ Motion]

9    49.    Plaintiff's expert, James K. Delmarter,        49.    Para 22, Chaka C. Okadigbo Decl. and
     concedes that DeWalt conducted its own land                 Exhibit "U" thereto.  (Delmarter
10   surveys.                                                     Deposition, at 55:2-6; 64:7-3.;
                                                                  Gutierrez Declaration, ¶¶4, 6.)

11   50.    The employees at DeWalt responsible           50.    Paras 13, 14, 17, and 18, Chaka C.
     for performing the surveying work for the                    Okadigbo Decl. and Exhibits "L", "M",
12   Tentative Map for Tract No. 6451 and the                    "P" and "Q" thereto. (Helt Deposition,
     Final Map for Tract No. 6451 testified during                at 21:11-15, 35:19-25, 36:1-4; Black
13   depositions that they did not copy the Revised               Deposition, at 54:10-12; 56:4-9;
     Tentative Map for Tract No. 5472.                            Gutierrez Deposition, at 18:3; 47:22;
14                                                                48:17-20; Burgi Deposition, at 7:24-
                                                                  8:49:5-9; 9:20-23,12:2-12, 24:16-20,
15                                                                24:25-25:3; Black Decl., ¶¶ 7, 8;
                                                                  Gutierrez Decl., ¶¶ 7, 11.)
16
17   51.    At no point in time did any persons          51.    Para 13, Chaka C. Okadigbo Decl. and
     from the City advise, inform or suggest to                 Exhibit "L" thereto.  (Black Deposition,
18   DeWalt, NCUE or Lotus Developments that                    at 67:21-25, 58:20-25, 67:21-25, 68:1,
     they copy, rely upon or use the Martin-                    68:2-10, 69:2. 69:10, 69:19-23, 81:14-
19   McIntosh improvement plans or tentative map                21; Wren Decl. 11; McNamara Decl. 9;
     in infringing ways to perform any of the work              Zervis Decl. ¶ 1.)
20   required to finalize the development of the
     Subdivision.

21   52.    Upon submitting the Tentative Map for        52.    Dennis McNamara Declaration, ¶ 7.
     Tract No. 6451, the Subdivision became
22   identified as Tract No. 6451 and ceased being
     identified as Tract No. 5472.
23
24   53.    The City approved the Tentative Map          53.    Dennis McNamara Declaration, ¶ 8.
     for Tract No. 6451 on March 14, 2005 and the
25   Final Map for Tract No. 6451 on February 20,
     2007.

26   54.    During its review of the tentative and       54.    Paras 17 and 20, Chaka C. Okadigbo
     final maps for Tract No. 6451, the City never             Decl. and Exhibits "P" and "S" thereto.
27   compared the old and new tentative maps for              (Helt Deposition, at 39:14-19, 41:8-16,
     the Subdivision and never used or relied upon            McNamara Deposition, at 8:13-17,
28   the old tentative map for any purpose when                15:13-14; McNamara Decl., ¶ 6.)

**DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT**

1   processing the new tentative and final maps for
    the Subdivision.

2

3   55.   Similarly, the City did not consult the          55.   Paras 9 and 20, Chaka C. Okadigbo
    Martin-McIntosh improvement plans because                    Decl. and Exhibits "H" and "S" thereto.
    improvement plans are not considered during                  (Woodcock Deposition, at 15:15-18;
4   the tentative map review and approval process.               McNamara Deposition, at 15:13-15.)

5   56.   Indeed, Municipal Code §§ 16.16.050               56.   Para 28, Chaka C. Okadigbo Decl. and
    through 16.16.110 and 16.20.010 through                       Exhibit AA attached thereto.
6   16.20.140 reveal that improvement plans are
    neither required nor considered during the
7   City's tentative or final map review process

8   57.   The City did not require NCUE to                  57.   Paras 9, 13, 17, and 19, Chaka C.
    submit improvement plans because the                         Okadigbo Decl. and Exhibits "H", "L",
9   improvements for the Subdivision had already                 "P" and "R" thereto. (Black
    been constructed.                                            Deposition, at 33:15; 67:21-25; 66:19-
10                                                               25; 68:1; Woodcock Deposition, at
                                                                 33:4-16: Helt Deposition, at 39:7-11,
11                                                               41:8-16, 42:5-8; Pennell Deposition, at
                                                                 19:18-21.)
12

13  58.   Neither NCUE nor Lotus                            58.   Paras 13 and 14, Chaka C. Okadigbo
    Developments prepared or submitted any                       Decl. and Exhibits "L" and "M"
14  improvement plans for the Valley Rose                        thereto. (Black Deposition, at 17:1-8,
    Estates.                                                     48:11-20, 49:11-12, 49:21-23, 66:19-
15                                                               25, 67:21-25, 68:1, 76:5-7; Wu
                                                                 Deposition, at 46:4-11; Gutierrez Decl.,
16                                                               ¶11.)

17  59.   Similarly, neither NCUE nor Lotus                 59.   Para 13, Chaka C. Okadigbo Decl. and
    Developments prepared any "as-built" plans in                Exhibit "L" thereto. (Black Deposition,
18  connection with developing the Valley Rose                   at 37:2.)
    Estates as a subdivision.

19  60.   Neither NCUE nor Lotus                            60.   Paras 13, 14, 17, and 18, Chaka C.
    Developments relied upon, used, or copy the                  Okadigbo Decl. and Exhibits L, M, P
20  Martin-McIntosh improvement plans to                         and Q attached thereto (Helt
    perform any work required to complete the                    Deposition, at 21:11-15, 35:19-25,
21  Subdivision.                                                 36:1-4; Black Deposition, at 54:10-12,
                                                                 56:4-9; Gutierrez Deposition, at 18:3,
22                                                               47:22, 48:17-20; Burgi Deposition, at
                                                                 7:24-8:4, 9:5-9, 9:20-23, 24:25-25;3;
23                                                               Black Deposition, at 54:10-12, 68:20-
                                                                 23; Gutierrez Deposition, at 16;6-19;
24                                                               Black Decl. ¶ 7, 8; Gutierrez Decl. ¶¶ 7,
                                                                 11.)
25

26  61.   Plaintiff is aware of no facts suggesting        61.   Para 8, Chaka C. Okadigbo Decl. and
    that Joseph Wu and/or NCUE and/or Lotus                      Exhibit "G" thereto. (McIntosh
27  Developments and/or DeWalt copied the                        Deposition, at 298:11-14, 299:5-10,
    Martin-McIntosh improvement plans, besides                   299:14-20, 299:24-300:6, 302:16-303:2,
28  Plaintiff's allegation that the Tentative Map for          303:17-24, 303:25-304:7, 304:8-12,
    Tract No. 6451 looks "substantially similar" to             304:13-17, 305:24-306:19, 306:20-

| | | | |
|---|---|---|---|
| 1 | the Martin-McIntosh improvement plans. | | 307:4; 307:5-9 307:10-23; 307:24-308:1.) |
| 2 | | | |
| 3 | 62.   On or about February, 2007, the City and Lotus Developments entered into a Subdivision Agreement. | 62. | Para 10, Chaka C. Okadigbo Decl. and Exhibit I attached thereto  (Wu Deposition, at 27:17-20; Zervis Decl. ¶ 9; Exhibit C attached thereto) |
| 4 | | | |
| 5 | 63.   The purpose of the Subdivision Agreement was to ensure that NCUE and/or Lotus Developments completed all necessary repairs and maintenance of the improvements in the Subdivision in exchange for the City's approval of the Final Map for Tract No. 6451. | 63. | Para 10, Chaka C. Okadigbo Decl. and Exhibit I attached thereto  (Wu Deposition, at 53:19-54:6; Wren Decl. ¶ 9.) |
| 6 | | | |
| 7 | | | |
| 8 | | | |
| 9 | 64.   Although the Subdivision Agreement references the construction of improvements, such work had already been performed, as Plaintiff acknowledges. | 64. | Paras 5, 9, and 17, Chaka C. Okadigbo Decl. and Exhibits "D", "H" and "P" thereto. (Keith Woodcock Deposition, at 11:13-19, 14-19-15:3, 22:5-18, 33:4-16; Helt Deposition, at 42:5-8; McIntosh Deposition, at 82:3-11; Wren Decl., ¶ 9.) |
| 10 | | | |
| 11 | | | |
| 12 | | | |
| 13 | 65.   The Agreement referenced the construction of improvements only because the City initially insisted that NCUE or Lotus Developments post a bond for the improvements.  The Agreement, therefore, listed the improvements that were to be bonded. | 65. | Paras 9 and 17, Chaka C. Okadigbo Decl. and Exhibits "H" and "P" thereto. (Woodcock Deposition, at 14:19-15:3; Helt Deposition, at 43:18-25) |
| 14 | | | |
| 15 | | | |
| 16 | | | |
| 17 | 66.   However, the City later dropped this requirement, after concluding that it was unnecessary because the improvements had already been constructed and inspected during the Legacy era and that they conformed to the improvement plans. | 66. | Paras 9, 17, and 21, Chaka C. Okadigbo Decl. and Exhibits "H", "P" and "T" thereto.  (Woodcock Deposition, at 13:18-14:12; 15:7-14, 22:5-18, 30:23-33:25; Helt Deposition at 45:5-10, 45:14-17; Wren Deposition, at 8:16-18.) |
| 18 | | | |
| 19 | | | |
| 20 | | | |
| 21 | 67.   No City inspection of the improvements since the Legacy era has involved comparing the improvements with the Martin-McIntosh improvement plans. | 67. | Para 21, Chaka C. Okadigbo Decl. and Exhibit T attached thereto . (Wren Deposition, at 13:6-10.) |
| 22 | | | |
| 23 | 68.   On or about November 6, 2007 and April 23, 2009, the City sent Mr. Wu a list of punch list items summarizing all required repairs and maintenance that NCUE and/or Lotus Developments needed to complete in the Valley Rose Estates to complete the recording of the Final Map for Tract No. 6451. | 68. | Wren Decl. ¶ 4. |
| 24 | | | |
| 25 | | | |
| 26 | | | |
| 27 | 69.   The only work that NCUE and/or Lotus Developments have performed in connection with the improvements in the Valley Rose | 69. | Paras 5 and 10, Chaka C. Okadigbo Decl. and Exhibits "D" and "I" thereto. (Wu Deposition, at 48:13-49:5; 68:3-8; |
| 28 | | | |

4825-9339-0084

**DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

| | | | |
|---|---|---|---|
| 1 | Estates has been repair and maintenance work, such as repairing cracks in concrete, fixing street lights, repaving streets and performing landscaping work. | | McIntosh Deposition, at 81:1-2, 81:21-24, 82:1-11.) |

70.     On or about July, 2007, Plaintiff filed the instant lawsuit against NCUE and Lotus Developments.

70.     Para 29, Chaka C. Okadigbo Decl. and Exhibit "BB" attached thereto.  (Civil Docket for Case #: 1:07-cv-01080-LJO-GSA.)

71.     Plaintiff subsequently amended his complaint three times to add the City and DeWalt as additional defendants.

71.     Para 29, Chaka C. Okadigbo Decl. and Exhibit "BB" attached thereto.  (Civil Docket for Case #: 1:07-cv-01080-LJO-GSA.)

72.     Plaintiff alleges that Defendants have infringed upon his copyright interests by copying and/or using the Martin-McIntosh improvement plans and the Revised Tentative Map for Tract No. 5472 as part of their efforts to complete the development of the Subdivision

72.     Para 4, Chaka C. Okadigbo Decl. and Exhibit "C" attached thereto (Complaint, ¶ 6.)

73.     Specifically, Plaintiff contends that NCUE's tentative map (Tentative Map for Tract No. 6451) and the Martin-McIntosh tentative map (Revised Tentative Map for Tract No. 5472) look "substantially similar."

73.     Para 23, Chaka C. Okadigbo Decl. and Exhibit V attached thereto (Expert Witness Disclosure of James K. Delmarter)

74.     Plaintiff also contends that improvement plans are required to complete the Subdivision and, thus, Defendants must have used or relied upon the Martin-McIntosh improvement plans since they did not prepare their own improvement plans.

74.     Para 8, Okadigbo Decl. and Exhibit G attached thereto (McItosh Deposition, at 265:8-11.)

75.     Plaintiff maintains that the Tentative Map for Tract No. 6451 is "substantially similar" to the Revised Tentative Map for Tract No. 5472 in that the street names, lot configuration, numbering system and tract boundaries appear to be identical.

75.     Paras 5 and 23, Chaka C. Okadigbo Decl. and Exhibits "D" and "V" thereto. (McIntosh Deposition, at 204:1-4; Delmarter Deposition; Expert Witness Disclosure of James K. Delmarter by Plaintiff; Exhibit A attached thereto).

76.     As additional evidence of copying, Plaintiff also alleges that (1) both maps contain the same number of lots; (2) the legends in the Tentative Map for Tract No. 6451 reference existing centerline monuments and lot corner tags, and (3) a note on the map acknowledges the construction of improvements per the Martin-McIntosh improvement plans and tentative map (Revised Tentative Map for Tract No. 5472).

76.     Para 5, Chaka C. Okadigbo Decl. and Exhibit D attached thereto (McIntosh Deposition, at 205:20-25, 206:11-7, 206:15-16.)

| | |
|---|---|
| 77.   The lot corner tags and monuments, however, are physical objects observable in the Subdivision, facts which Plaintiff acknowledges. | 77.   Para 5, Chaka C. Okadigbo Decl. and Exhibit D attached thereto (McIntosh Deposition, at 206:10-14.) |
| 78.   Plaintiff also admits that Legacy, not Martin-McIntosh, generated the street names for the Subdivision. | 78.   Para 5, Chaka C. Okadigbo Decl. and Exhibit D attached thereto (McIntosh Deposition, at 165:166:2) |
| 79.   As for lot configuration, Plaintiff claimed that Martin-McIntosh maximized the number of lots in the Subdivision after considering the City requirements, such as minimum street widths, zoning, lot dimensions and setbacks, the size of the Subdivision, and the developer's interests in increasing profits. | 79.   Para 5, Chaka C. Okadigbo Decl. and Exhibit D attached thereto (McIntosh Deposition, at 163:164:24.) |
| 80.   Based on the construction of the improvements and on NCUE's desire to leave the existing improvements in place and to maximize profits by creating as many lots as possible within the Subdivision, however, DeWalt was left with no choice but to configure the lots, design the Subdivision similarly to Martin-McIntosh's design and create approximately the same number of lots. | 80.   Para 8, Chaka C. Okadigbo Decl. and Exhibit "G" thereto. (McIntosh Deposition, at 265:8-11.) |
| 81.   Plaintiff's direct infringement cause of action against the City is premised on the City's distribution of the Martin-McIntosh tentative map and improvement plans to NCUE and/or its agents (DeWalt). | 81.   Para 5, Chaka C. Okadigbo Decl. and Exhibit 4 attached thereto (McIntosh Deposition, at **105:21-106:12**) |
| 82.   The City concedes that Dennis McNamara provided the improvement plans to Greg Black, then NCUE's Director of Engineering, via electronic mail on April 13, 2005. | 82.   Para 5, Chaka C. Okadigbo Decl. and Exhibit "D" thereto. (McIntosh Deposition, at 205:20-25, 206:1-7, 206:15-16.) |
| 83.   It is unclear whether the City provided the Revised Tentative Map for Tract No. 5472 to DeWalt. However, Jeffrey Gutierrez, DeWalt's President, contends that he received this map from the City. | 83.   Para 14, Chaka C. Okadigbo DEcl. and Exhibit M attached thereto (Gutierrez Deposition, at 35:15-17.) |
| 84.   For statutory reasons (e.g. California Public Records Act, CEQA, Brown Act), the City treats tentative maps and improvement plans as public records.  The City also paid for the plans. | 84.   Robert Wren Decl. ¶ 8; Exhibits A and B attached thereto. |
| 85.   Plaintiff's contributory copyright infringement claim against the City, alleges | 85.   Para 4, Chaka C. Okadigbo Decl. and Exhibit C attached thereto (Complaint, |

**DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT**

1    that the City: (1) controlled the development of        at ¶¶ 41-46.)
the Valley Rose Estates as a subdivision; (2)
2    financially benefited from the allegedly
infringing activities described in the Plaintiff's
3    Second Amended Complaint; and (3) induced
the infringing activities described in Plaintiff's
4    Second Amended Complaint by copying,
distributing and recording Plaintiff's "plans."

5

6    86.    When asked, during his deposition,      86.    Para 8, Chaka C. Okadigbo Decl. and
about the bases for his contention that the City               Exhibit "G" thereto. (McIntosh
7    "controlled" the development of the                      Deposition, at 270-272, 282:5-15,
Subdivision, Plaintiff alluded to the alleged                285:19-22).
8    facts that the City entered into a development
agreement with Legacy, funded the
9    construction of the improvements during the
Legacy era, inspected the improvements,
10    bought the Subdivision at a tax sale and then
sold it to NCUE, "obtained the benefit" of the
11    improvement plans, and collected impact fees
from the Subdivision. With the exception of
12    impact fee collection, each of these alleged
events occurred before the City sold the
13    Subdivision to NCUE.

14    87.    Plaintiff states that he told Mr. Wu that     87.    Para 8, Chaka C. Okadigbo Decl. and
he expected Mr. Wu to pay him for work                 Exhibit "G" thereto. (McIntosh
15    Martin-McIntosh performed for Legacy and for           Deposition, at 310:24-311:17.)
which Martin-McIntosh was not paid, 15 years
16    ago!

17    88.    The Revised Tentative Map for Tract       88.    Paras 3 and 24, Chaka C. Okadigbo
No. 5472 is substantially different from the               Decl. and Exhibits "A", "B" and "W"
18    Tentative Map for Tract No. 6451.                       thereto. (Stephen Wong Deposition, at
                                                                 67-69, 103-120.)

19

20    Dated: September **30**, 2009            Respectfully submitted,

21

22                                       **GARCIA CALDERON RUIZ, LLP**

23

24                                       By: _____
                                      Chaka C. Okadigbo
25                                      Attorneys for Defendant/Cross-Complainant,
                                     CITY OF WASCO

26

27

28

**DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT**