Steven J. Hassing
California SBN 152125
LAW OFFICES OF STEVEN J. HASSING
425 Calabria Court
Roseville, CA  95747
Telephone:  (916) 677-1776
Facsimile:   (916) 677-1770

Attorney *for Defendant, Northern California Universal Enterprise Company and Lotus Developments, L.P.*

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROGER MCINTOSH,<br><br>                              Plaintiff(s);<br>v.<br><br>NORTHERN CALIFORNIA UNIVERSAL ENTERPRISES COMPANY, ET AL.,<br><br>                              Defendant(s). | No.  1:07-CV-01080-LJO-GSA<br><br>**NORTHERN'S POINTS AND AUTHORITIES IN OPPOSITION TO THE CITY OF WASCO'S MOTION FOR SUMMARY JUDGMENT**<br><br><br>**JUDGE: Lawrence J. O'Neill** |

# I
# INTRODUCTION

In April of 2004, The City of Wasco, ("Wasco"), entered into a sales agreement, ("The Purchase Agreement"), to sell Parcel 1 of the Valley Rose Estates Subdivision. The purchaser couldn't perform and assigned The Purchase Agreement to Northern which

1

assumed the buyers' obligations.  The Purchase Agreement, drafted by Wasco, had a limited indemnification clause.

After close of escrow, Northern entered into a separate written agreement with Wasco, ("The Subdivision Agreement").  This agreement had an even more narrowly drafted indemnification clause.

Having now been sued by McIntosh for copyright infringement and contributory copyright infringement, Wasco asks this Court to summarily determine that one or both contracts require Northern to defend and indemnify it from McIntosh's TAC.  However, neither contract requires Northern to indemnify Wasco under the facts of this case because neither agreement requires Northern to indemnify or defend Wasco for claims resulting from Wasco's own intentional acts, some of which were committed <u>prior to</u> Northern's purchase.

## II
## THE INDEMNIFICATION CLAUSES

**A.     The Purchase Agreement**

Paragraph 8 of The Purchase Agreement is deceptively entitled "Buyer's Indemnity Release".  As Wasco points out in its brief, the relevant language provides that the Buyer, (Northern) agrees to indemnify and hold Seller, (Wasco) harmless from and against any and all claims, demands, losses, obligations, costs and expenses, including, without limitation, attorneys fees and court costs which arise out of the ownership or operation of the property.

Accordingly, the language of concern is **"which arise out of the ownership or operation of the property".**

B.	The Subdivision Agreement

The Subdivision Agreement was stipulated to become effective on February 20, 2007.  It was executed by Northern on February 27, 2007.  It is a classic adhesion contract.  The indemnification clause is found at provision 10.  The relevant language, as pointed out by Wasco in its brief, provides; The Subdivider, (Northern), shall, and does hereby agree to hold harmless and indemnify the City from every liability, claim, suit or demand which may arise or may be made by reason of any act, omission or neglect of the Subdivider, its engineers, agents, or contractor.

Here, the determinative language is, **<u>"which may arise or may be made by reason of any act, omission or neglect of the Subdivider, its engineers, agents, or contractor"</u>**

### III
### FACTS

In November of 2003, in an attempt to market for profit, land obtained by tax deed, The City published and distributed to developers and Realtors, a " Developer Information Package" which contained copies of Martin-McIntosh's Map 5472. (Northern's Separate Statement # 1).  Clearly, The City had copied and included Map 5472 in the information package as an aid in its attempt to market the land for profit. These Information Packages were circulated and distributed by Wasco until Northern purchased the property in May, 2004.

The City knew that Martin-McIntosh claimed a copyright interest in Map 5472 by virtue of prior litigation in which they were embroiled between 1994 and 2001.  In fact, the Complaint filed by Martin-McIntosh against The City in that litigation even had

attached to it, the contract between Martin-McIntosh and Legacy Group which contains the language that McIntosh now relies upon in asserting copyright. (NSS # 2). Wasco failed to disclose or warn Northern that Wasco copied and distributed map 5472 without McIntosh's permission.

In his Third Amended Complaint filed in this action, McIntosh sues The City for direct and contributory infringement, alleging that The City committed its own independent wrongful acts, separate and apart from anything that Northern is accused of. McIntosh's evidence in support of its summary adjudication motion makes clear that it intends to offer the Developer Information Package in evidence at trial. Certainly, Northern did not intend to indemnify or defend Wasco from the seemingly intentional infringement which occurred between November, 2003 and May, 2004.

## IV
## RELEVANT LAW

**A.     Indemnification Agreements**

Indemnity is a contract by which one engages to save another from a legal consequence of the conduct of one of the parties, or of some other person. (Civ. Code Section 2772). Express indemnity refers to an obligation that arises by virtue of express contractual language establishing a duty in one party to save another harmless upon the occurrence of specified circumstances. *Bay Development Ltd. v. Superior Court* (1990) 50 Cal.3d at p. 1029. It is enforced in accordance with the terms of the contracting parties' agreement. *Markley v. Beagle* (1967) 66 Cal.2d 951, 961.

In general, such an agreement is construed under the same rules as govern the interpretation of other contracts. Effect is to be given to the parties' mutual intent (CC

1636), as ascertained from the contract's language if it is clear and explicit.  (CC 1638).  Unless the parties have indicated a special meaning, the contract's words are to be understood in their ordinary and popular sense.  (CC 1644; *Continental Heller Corp. v. Amtech Mechanical Services, Inc. (1997) 53 Cal.App 4th 500*, 504.

The Courts have determined that in non insurance contexts, like the contracts between Wasco and Northern, the indemnitee has the superior bargaining power, and may use this power unfairly to shift to another a disproportionate share of the financial consequences of its own legal fault.  *Regan Roofing Co. v. Superior Court* (1994) 24 Cal.App. 4th 425, 436.  This public policy concern influences the manner in which non insurance indemnity agreements are construed.  For example, it has been said that if one seeks, in a non insurance agreement, to be indemnified for his or her own active negligence, or regardless of the indemnitor's fault **language on the point must be particularly clear and explicit, and will be construed strictly against the indemnitee.** (emphasis added)  *Crawford v. Weather Shield Mfg, Inc.,* (2008) 44 Cal. 4th 541, 552.

## V
## LEGAL ARGUMENT

One must first look at the acts giving rise to the litigation.  Why is Wasco being sued?  One must then look to the language of the indemnity clause and determine if the parties intended that the act or acts which gave rise to the complaint be covered by the clause.  In this case, there can be no doubt that infringement by Wasco was not intended to be covered.

In this case, The City was sued because, it is alleged, it infringed Plaintiff's copyright <u>and</u> also contributed, by separate wrongful acts, to Northern's alleged

5

infringement. Obviously, direct infringement by The City has nothing to do with Northern and Northern cannot be obligated to defend or indemnify The City for its own separate <u>intentional</u> wrongful acts. Nothing contained in either contract can be so interpreted. As for contributory infringement, one must look at the elements of that cause of action to see if the indemnifying language was intended to be triggered thereby.

Contributory infringement occurs when one, "with knowledge of the infringing activity, induces, causes or materially contributes to the infringing activity of another..." *Gershwin Publishing Corp. v. Columbia Artists Management, Inc*., 443 F2d 1159, 1162 (2d Cir. 1971). As with McIntosh's claim of direct infringement against Wasco, its claim of contributory infringement involves <u>intentional acts</u> and cannot be said to have been contemplated by Northern (or Wasco) when either contract was entered into.

<u>The Purchase Agreement</u>

The Purchase Agreement calls for Northern to indemnify and defend The City for claims "which arise out of the ownership or operation of the property". In analyzing Northern's obligation, the language of the indemnity clause must be "particularly clear and explicit" and "construed strictly against the indemnitee". (*Crawford* @552). Clearly, The City's infringement which took place over a year prior to Northern's purchase does not "arise out of Northern's ownership or operation of the property".

Further, The City's acts complained of in the Third Amended Complaint are intentional acts undertaken by The City. The City is not being sued for anything that Northern or its engineer allegedly did. Those acts of The City which McIntosh claims constitute infringement or contributory infringement are separate and apart from any

wrong of which Northern is accused. Wasco is sued for what it did, not what Northern did. In construing the indemnity clause strictly against The City it is not "clear and explicit" that Northern intended to indemnify and defend The City from these infringement claims now pending against The City. (NSS # 3 and 4).

In fact, Danny Espitia, the mayor of Wasco at the time the property was sold to Northern who executed the assignment of The Purchase Agreement on behalf of The City testified in his deposition that he did not consider the potential effect of any copyright claims to documents associated with the subdivision. (NSS # 5).

The Subdivision Agreement

The Subdivision Agreement requires Northern to defend and indemnify The City for claims "which may arise or may be made by reason of any act, omission or neglect of the Subdivider, its engineers, agents, or contractor". Like The Purchase Agreement, The Subdivision Agreement of 2007 does not require Northern to indemnify or defend Wasco for Wasco's acts committed in 2003 and 2004.

Strictly construing the language above against The City, it cannot be said that the parties intended the indemnity clauses to apply to McIntosh's infringement claims, made directly against Wasco, for Wasco's own independent acts. There are no "acts, omissions or neglect" on the part of Northern that resulted in McIntosh suing Wasco. While Wasco argues (wrongly under the clauses at issue) that its negligent acts must be covered by Northern, McIntosh does not allege negligence, only intentional acts. These intentional acts of Wasco cannot be said to be "acts, omissions or neglect" on the part of Northern.

At the time The Subdivision Agreement was signed, Larry Pennell, the Wasco City Manager, executed the agreement on behalf of Wasco. (NSS # 6). In his deposition, Pennell testified that until late 2008, he had no knowledge of any copyright claim. (NSS # 7). Accordingly, he certainly didn't consider copyright in February, 2007.

## V
## CONCLUSION

Wasco's infringing acts began in 2003. Northern did not agree to purchase the property until mid 2004. Northern did not enter into The Subdivision Agreement until February of 2007. The language of both indemnity clauses limits Northern's indemnification obligations to claims "which arise out of the ownership or operation of the property" or "which may arise or may be made by reason of any act, omission or neglect of the Subdivider, its engineers, agents, or contractor".

Acts committed by Wasco prior to these agreements do not arise from Northern's ownership or operation nor are they Northern's acts, omissions or neglect. Likewise, Wasco's subsequent independent wrongful acts cannot fall within the purview of The Subdivision Agreement's indemnity clause because they are not acts, omissions or neglect on the part of Northern. They cannot be said to fall within the terms of The Purchase Agreement because they did not arise out of the ownership or operation of the property.

McIntosh's claims against Wasco have nothing to do with "the operation of the property". The requirement that the indemnity language be strictly construed against Wasco and the requirement that the language be particularly clear and explicit in

indicating an intent to require Northern to indemnify against Wasco's own intentional and wrongful act, prevents a finding of obligation on the part of Northern to indemnify or defend under The Purchase Agreement.

Dated this 18 day of October, 2009         /s/ Steven J. Hassing, Esq.
                                            Steven J Hassing, Attorney for
                                            Northern

## CERTIFICATE OF SERVICE

1. On October 19, 2009, I served the following document:

   - **NORTHERN'S POINTS AND AUTHORITIES IN OPPOSITION TO THE CITY OF WASCO'S MOTION FOR SUMMARY JUDGMENT**

2. The above-named document was served by the following means to the persons as listed below:

__XX__  United States Mail, first class postage fully prepaid and addressed to:

James Braze
Jeffrey Travis
Borton, Petrini, LLP
1600 Truxtun Avenue
Bakersfield, CA  93301


Chaka Okadigbo
Garcia Calderon Ruiz, LLP
500 South Grand Avenue, Ste. 1100
Los Angeles, CA  90071


William L. Alexander
Alexander & Associates
1925 G Street
Bakersfield, CA  93301


By fax transmission. I faxed the document to the persons at the fax number listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission is attached.

I declare under penalty of perjury that the foregoing is true and correct.
Dated this  19th day of October, 2009.


/s/ Kimberley A. Hassing
Kimberley A. Hassing