## Agreement Between Client and Consultant

This form of agreement is distributed by the:
**California Council of Civil Engineers & Land Surveyors**

Form A was developed by the California Council of Civil Engineers and Land Surveyors, is intended primarily for the use of Council members, and may not be reproduced without the permission of the California Council of Civil Engineers and Land Surveyors. Copyright 1991, 1989, 1987, 1984, 1982, 1979, 1978, 1975, 1973, 1970 and 1967.

Client Initials / Consultant Initials

Project No. __92-22__  Billing

Agreement entered into at _____Bakersfield, California_____
made this __18th__ day of __March__, 19__92__, by and between

| Client: | Consultant: |
|---|---|
| Name  Mr. Michael S. Brown | Name  Martin-McIntosh |
| Address  16255 Ventura Blvd., Suite 1000 | Address  4130 Ardmore Avenue |
| Encino, CA  91436 | Bakersfield, California  93309 |
| Phone | Phone  (805) 834-4814 |
| FAX | FAX  (805) 834-0972 |

### Client And Consultant Agree As Follows:

Client intends to:

See letter dated March 18, 1992, attached and made a part hereof.

hereinafter called "project."

A. Consultant agrees to perform the following scope of services:

Design Services, broken down into three (3) phases:

1) Conceptual Plan
2) Develop Master Plans for water, sewer and drainage, etc.
3) Survey

as stated in letter dated March 18, 1992, attached and made a part hereof.

B. Client agrees to compensate consultant for such services as follows:

Phase 1 - $ 15,200.00, Phase 2 - $54,800.00, Phase 3 - $19,100.00 plus costs of printing and reproductions to be billed at cost plus 10%, as stated in letter dated March 18, 1992, attached and made a part hereof.

\* Martin-McIntosh will proceed with each Phase upon written authorization.

C. This Agreement is subject to provisions 1 through 48 contained herein, and the terms and conditions contained in initialed exhibits attached herewith and made a part hereof. (List exhibits below.)

### Provisions of Agreement

Client and consultant agree that the following provisions shall be part of their agreement:

1. This agreement shall be binding upon the heirs, executors, administrators, successors and assigns of client and consultant.
2. This agreement shall not be assigned by either client or consultant without the prior written consent of the other.
3. This agreement contains the entire agreement between client and consultant relating to the project and the provision of services to the project. Any prior agreements, promises, negotiations or representations not expressly set forth in this agreement are of no force or effect. Subsequent modifications to this agreement shall be in writing and signed by both client and consultant.
4. Consultant's waiver of any term, condition, or covenant, or breach of any term, condition, or covenant, shall not constitute the waiver of any other term, condition, or covenant, or the breach of any other term, condition, or covenant.
5. If any term, condition, or covenant of this agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remaining provisions of this agreement shall be valid and binding on client and consultant.

6. This agreement shall be governed and construed in accordance with the laws of the State of California.

7. Consultant shall only act as an advisor in all governmental relations.

8. All original papers, documents, drawings and other work product of consultant, and copies thereof, produced by consultant pursuant to this agreement shall remain the property of consultant and may be used by consultant without the consent of client. Upon request and payment of the costs involved, client is entitled to a copy of all papers, documents and drawings provided client's account is paid current.

9. Client acknowledges that its right to utilize the services and work product provided pursuant to this agreement will continue only so long as client is not in default pursuant to the terms and conditions of this agreement and client has performed all obligations under this agreement. Client further acknowledges that consultant has the unrestricted right to use the services provided pursuant to this agreement as well as all work product provided pursuant to this agreement.

10. Client and consultant agree to cooperate with each other in every way on the project.

11. Upon request, client shall execute and deliver, or cause to be executed and delivered, such additional instruments, documents, governmental fees and charges which are necessary to perform the terms of this agreement.

12. Consultant makes no representations concerning soil conditions unless specifically included in writing in this agreement, and he is not responsible for any liability that may arise out of the making or failure to make soil surveys, or sub-surface soil tests, or general soil testing.

13. Client agrees not to use or permit any other person to use plans, drawings, or other work product prepared by consultant, which plans, drawings, or other work product are not final and which are not signed, and stamped or sealed by consultant. Client agrees to be liable and responsible for any such use of nonfinal plans, drawings, or other work product not signed and stamped or sealed by consultant and waives liability against consultant for their use. Client further agrees that final plans, drawings or other work product are for the exclusive use of client and may be used by client only for the project described on the face hereof. Such final plans, drawings or other work product may not be changed nor used on a different project without the written authorization or approval by consultant. If consultant's work product exists in electronic or computerized format, or is transferred in electronic or computerized format, the stamp, seal and signature shall be original and may not be a computer-generated copy, photocopy, or facsimile transmission of the original.

14. Consultant has a right to complete all services agreed to be rendered pursuant to this contract. In the event this agreement is terminated before the completion of all services, unless consultant is responsible for such early termination, client agrees to release consultant from all liability for services performed. In the event all or any portion of the services or work product prepared or partially prepared by consultant be suspended, abandoned, or terminated, client shall pay consultant for all fees, charges, and services provided for the project, not to exceed any contract limit specified herein. Client acknowledges if the project services are suspended and restarted, there will be additional charges due to suspension of the services which shall be paid for by client as extra services.

15. If the scope of services to be provided by consultant pursuant to the terms of this agreement include an ALTA survey, client agrees that consultant may sign one of the two ALTA Survey Statements attached hereto and incorporated herein by reference. In the event that consultant is required to sign a statement or certificate which differs from the ALTA Survey Statements contained in the attachment, client hereby agrees to indemnify and hold consultant harmless from any and all liability arising from or resulting from the signing of any statement which differs from those statements contained in the attachment.

| Client Initials | Consultant Initials |
|---|---|
|  |  |

16. If the scope of services to be provided by consultant pursuant to the terms of this agreement include the preparation of grading plans but exclude construction staking services, client acknowledges that such staking services normally include coordinating civil engineering services and the preparation of as-built drawings pursuant to Uniform Building Code Chapter 70 or local grading ordinances and client will be required to retain such services from another consultant or pay consultant pursuant to this agreement for such services as extra work in accordance with Provision 26.

17. Consultant shall be entitled to immediately, and without notice, suspend the performance of any and all of its obligations pursuant to this agreement if client files a voluntary petition seeking relief under the United States Bankruptcy Code or if there is an involuntary bankruptcy petition filed against client in the United States Bankruptcy Court, and that petition is not dismissed within fifteen (15) days of its filing. Any suspension of services made pursuant to the provisions of this paragraph shall continue until such time as this agreement has been fully and properly assumed in accordance with the applicable provisions of the United States Bankruptcy Code and in compliance with the final order or judgment issued by the Bankruptcy Court.

18. This agreement shall not be construed to alter, affect or waive any lien or stop notice right which consultant may have for the performance of services pursuant to this agreement. Client agrees to separately provide to consultant the present name and address of the record owner of the property on which the project is to be located. Client also agrees to separately provide consultant with the name and address of any and all lenders who would loan money on the project and who are entitled to receive a preliminary notice.

19. If payment for consultant's services is to be made on behalf of client by a third-party lender, client agrees that consultant shall not be required to indemnify the third-party lender, in the form of an endorsement or otherwise, as a condition of receiving payment for services.

20. If client fails to pay consultant within thirty (30) days after invoices are rendered, client agrees consultant shall have the right to consider such default in payment a material breach of this entire agreement, and, upon written notice, the duties, obligations, and responsibilities of consultant under this agreement are suspended or terminated. In such event, client shall promptly pay consultant for all fees, charges, and services provided by consultant.

21. All fees and other charges will be billed monthly and shall be due at the time of billing unless otherwise specified in this agreement.

22. Client agrees that the periodic billings from consultant to client are correct, conclusive, and binding on client unless client, within ten (10) days from the date of receipt of such billing, notifies consultant in writing of alleged inaccuracies, discrepancies, or errors in billing.

23. Client agrees to pay a monthly late payment charge, which will be the lesser of, one and one-half percent (1 1/2%) per month or a monthly charge not to exceed the maximum legal rate, which will be applied to any unpaid balance commencing thirty (30) days after the date of the original billing.

| Client Initials | Consultant Initials |
|---|---|
|  | 1 |

23. Client agrees to pay a monthly late payment charge, which will be the lesser of, one and one-half percent (1 1/2%) per month or a monthly charge not to exceed the maximum legal rate, which will be applied to any unpaid balance commencing thirty (30) days after the date of the original billing.

24. If consultant, pursuant to this agreement, produces plans, specifications, or other documents and/or performs field services, and such plans, specifications, and other documents and/or field services are required by one or more governmental agency, and one or more such governmental agency changes its ordinances, policies, procedures or requirements after the date of this agreement, any additional office or field services thereby required shall be paid for by client as extra services.

25. In the event consultant's fee schedule changes due to any increase of costs such as the granting of wage increases and/or other employee benefits to field or office employees due to the terms of any labor agreement, or rise in the cost of living, during the lifetime of this agreement, a percentage increase shall be applied to all remaining compensation.

26. Client agrees that if client requests services not specified pursuant to the scope of services description within this agreement, client agrees to pay for all such additional services as extra work.

27. In the event that any staking or record monuments are destroyed, damaged or disturbed by an act of God or parties other than consultant, the cost of restaking shall be paid for by client as extra services.

28. Client acknowledges that the design services performed pursuant to this agreement are based upon field and other conditions existing at the time these services were performed. Client further acknowledges that field and other conditions may change by the time project construction occurs and clarification, adjustments, modifications and other changes may be necessary to reflect changed field or other conditions.

If the scope of services pursuant to this agreement does not include construction staking services by consultant for this project, or if subsequent to this agreement client retains other persons or entities to provide such staking services; or if the scope of services pursuant to this agreement does not include on-site construction review, construction management, observation of construction of engineering structures, or other construction services for this project, or if subsequent to this agreement client retains other persons or entities to provide such construction services, then client acknowledges that such services will be performed by others and that client will defend, indemnify, and hold consultant harmless from any and all claims arising from or resulting from the performance of such services by other persons or entities except claims caused by the sole negligence or willful misconduct of consultant; and from any and all claims arising from or resulting from clarifications, adjustments, modifications or other changes which may be necessary to reflect changed field or other conditions except claims caused by the sole negligence or willful misconduct of consultant.

29. Client shall pay the costs of checking and inspection fees, zoning and annexation application fees, assessment fees, soils engineering fees, soils testing fees, aerial topography fees, and all other fees, permits, bond premiums, applicable taxes on professional services, title company charges, blueprints and reproductions, and all other charges not specifically covered by the terms of this agreement.

30. Client acknowledges and agrees that if consultant provides surveying service which services require the filing of a Record of Survey in accordance with Business and Professions Code Section 8762, that all of the costs of preparation, examination and filing for the Record of Survey will be paid by client as extra work in accordance with Provision 26.

31. Consultant is not responsible for delay caused by activities or factors beyond consultant's reasonable control, including but not limited to, delays by reason of strikes, lockouts, work slowdowns or stoppages, accidents, acts of God, failure of client to furnish timely information or approve or disapprove of consultant's services or work product promptly, faulty performance by client or other contractors or governmental agencies. When such delays beyond consultant's reasonable control occur, client agrees consultant is not responsible in damages nor shall consultant be deemed to be in default of this agreement.

32. Consultant shall not be liable for damages resulting from the actions or inactions of governmental agencies including, but not limited to, permit processing, environmental impact reports, dedications, general plans and amendments thereto, zoning matters, annexations or consolidations, use or conditional use permits, project or plan approvals, and building permits. The client agrees that it is the responsibility of the client to maintain in good standing all government approvals and permits and to apply for any extensions thereof.

33. Consultant makes no representation concerning the estimated quantities and probable costs made in connection with maps, plans, specifications, reports or drawings other than that all such costs are estimates only and actual costs will vary. It is the responsibility of client to verify costs.

34. Client acknowledges that consultant is not responsible for the performance of work by third parties including, but not limited to, the construction contractor and its subcontractors.

35. Consultant makes no warranty, either expressed or implied, as to his findings, recommendations, plans, specifications, or professional advice except that the services or work product were performed pursuant to generally accepted standards of practice in effect at the time of performance.

36. Estimates of land areas provided under this agreement are not to be considered precise unless consultant specifically agrees to provide the precise determination of such areas.

37. In the event the client agrees to, permits, authorizes, constructs or permits construction of changes in the plans, specifications, and documents or does not follow recommendations or reports prepared by consultant pursuant to this agreement, which changes are not consented to in writing by consultant, client acknowledges that the changes and their effects are not the responsibility of consultant and client agrees to release consultant from all liability arising from the use of such changes and further agrees to defend, indemnify and hold harmless consultant, its officers, directors, principals, agents and employees from and against all claims, demands, damages or costs arising from the changes and their effects.

38. Client agrees that in accordance with generally accepted construction practices, construction contractor will be required to assume sole and complete responsibility for job site conditions during the course of construction of the project, including safety of all persons and property; that this requirement shall be made to apply continuously and not be limited to normal working hours.

further acknowledges that field and other conditions may change by the time project construction occurs and clarification, adjustments, modifications, discrepancies or other changes may be necessary to reflect changed field or other conditions. If the scope of services pursuant to this agreement does not include on-site construction review, construction management, supervision of construction of engineering structures, or other construction supervision for this project, or if subsequent to this agreement client retains other persons or entities to provide such services, client acknowledges that such services will be performed by others and client will defend, indemnify and hold consultant harmless from any and all claims arising from or resulting from the performance of such services by other persons or entities except claims caused by the sole negligence or willful misconduct of consultant; and from any and all claims arising from or resulting from clarifications, adjustments, modifications, discrepancies or other changes necessary to reflect changed field or other conditions, except claims caused by the sole negligence or willful misconduct of consultant.

42. Client agrees that in accordance with generally accepted construction practices, construction contractor will be required to assume sole and complete responsibility for job site conditions during the course of construction of the project, including safety of all persons and property; that this requirement shall be made to apply continuously and not be limited to normal working hours, and client further agrees to defend, indemnify and hold consultant harmless from any and all liability, real or alleged, in connection with the performance of services on this project, excepting liability arising from the sole negligence of consultant.

43. In the event client discovers or becomes aware of changed field or other conditions which necessitate clarification, adjustments, modifications or other changes during the construction phase of the project, client agrees to notify consultant and engage consultant to prepare the necessary clarifications, adjustments, modifications or other changes to consultant's services or work product before construction activities commence or further activity proceeds. Further, client agrees to have a provision in its construction contracts for the project which requires the contractor to notify client of any changed field or other conditions so that client may in turn notify consultant pursuant to the provisions of this paragraph.

44. Client agrees to limit the liability of consultant, its principals and employees, to client and to all contractors and subcontractors on the project, for any claim or action arising in tort or contract, to the sum of $50,000 or consultant's fee, whichever is greater. However, if consultant's fee exceeds $250,000, liability to client and to all contractors and subcontractors shall not exceed $250,000.

45. Client agrees to purchase and maintain, during the course of construction, builder's risk "all risk" insurance which will name consultant as an additional insured as their interest may appear.

46. Consultant hereby states and client hereby acknowledges that consultant has no professional liability insurance for claims arising out of the performance of or failure to perform professional services, including, but not limited to the preparation of reports, designs, drawings and specifications, related to the investigation, detection, abatement, replacement, use or specification, or removal of products, materials or processes containing asbestos, asbestos cement pipe, and/or hazardous waste materials. Accordingly, the client hereby agrees to bring no claim for negligence, breach of contract, indemnity or otherwise against the consultant, its principals, employees, and agents if such claim, in any way, would involve the consultant's services for the investigation, detection, abatement, replacement, use or specification, or removal of products, materials or processes containing asbestos, asbestos cement pipe, and/or hazardous waste materials. Client further agrees to defend, indemnify and hold harmless consultant, its officers, directors, principals, employees and agents from any asbestos and/or hazardous waste material related claims that may be brought by third parties as a result of the services provided by the consultant pursuant to this agreement except claims caused by the sole negligence or willful misconduct of the consultant.

47. Client acknowledges that consultant's scope of services for this project do not include any services related in any way to asbestos and/or hazardous waste. Should consultant or any other party encounter such materials on the job site, or should it in any other way become known that such materials are present or may be present on the job site or any adjacent or nearby areas which may affect consultant's services, consultant may, at its option, terminate work on the project until such time as client retains a specialist contractor to abate and/or remove the asbestos and/or hazardous waste materials and warrant that the job site is free from any hazard which may result from the existence of such materials.

48. (a) Notwithstanding any other provision of this Agreement and except for the provisions of (b) and (c), if a dispute arises regarding consultant's fees pursuant to this contract, and if the fee dispute cannot be settled by discussions between client and consultant, both client and consultant agree to attempt to settle the fee dispute by mediation through the American Arbitration Association [or other mediation service] before recourse to arbitration.

If mediation does not resolve the fee dispute, such dispute shall be settled by binding arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof.

(b) Subdivision (a) does not preclude or limit consultant's right to elect to file an action for collection of fees if the amount in dispute is within the jurisdiction of the small claims court.

(c) Subdivision (a) does not preclude or limit consultant's right to elect to perfect or enforce applicable mechanics lien remedies.

IN WITNESS WHEREOF, the parties hereby execute this agreement dated _____ upon the terms and conditions stated above.

Client __MICHAEL S. Brown__
       Print or Type
By __[signature]__
   Signature
Name/Title _____
Date Signed __3/25/92__
Project Number __92-22__

Consultant __Martin-McIntosh – Eugene P. Martin__
           Print or Type
By __[signature]__
   Signature
Name/Title __Eugene P. Martin – Partner__
Date Signed __3/24/92__
Project Number __92-22__

Client should mail completed contract to the address shown for consultant

Form A 91                                                      Page 4 of 4

# EXHIBIT 'B' TO REQ FOR J.N.

Steven J. Hassing
California SBN 152125
LAW OFFICES OF STEVEN J. HASSING
425 Calabria Court
Roseville, CA 95747
Telephone: (916) 677-1776
Facsimile: (916) 677-1770

Attorney *for Defendant, Northern California Universal Enterprise Company*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROGER MCINTOSH,<br><br>Plaintiff(s);<br>v.<br><br>NORTHERN CALIFORNIA UNIVERSAL ENTERPRISES COMPANY, ET AL.,<br><br>Defendant(s). | No. 1:07-CV-01080-LJO-GSA<br><br>**DECLARATION OF MICHAEL BROWN IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>DATE: OCTOBER 28, 2009<br>TIME: 8:30 A.M.<br>PLACE: COURTROOM 4<br><br>JUDGE: Lawrence J. O'Neill |

I, Michael Brown, declare:

1.  I am over 18 years of age and competent to testify to the facts set forth below.

2.  I am the general partner of The Legacy Group, L.P. and have actual knowledge of each fact stated herein.

3.  In around January of 1992, John Hendrikson, Wasco City Manager, encouraged Legacy to purchase approximately 480 acres adjacent to the Wasco Valley Rose Golf Course and develop the property utilizing City financing.

4. In early 1992, Legacy, Martin-McIntosh and The City of Wasco joined together in a loose association to develop a guidance package for the purpose of providing direction and to clarify expectations of those three parties regarding development of the 480 acres. A true and correct copy of the guidance package is attached hereto as **Exhibit "A"**.

5. Eugene Martin of Martin-McIntosh, John Hendrikson and I referred to The City of Wasco, Martin-McIntosh and Legacy Group as the "project team".

6. The "project team" agreed to collaborate and agree upon project objectives for the 480 acre parcel.

7. Martin-McIntosh and Legacy operated under a written contract originally entered into in March of 1992 but which was expanded over time by written addendums. A true and correct copy of the contract with addendums is attached as;

**Exhibit "B"** - March 18, 1992 contract

**Exhibit "C"** - May 11, 1992 addendum

**Exhibit "D"** - June 24, 1992 addendum

**Exhibit "E"** - March 8, 1993 "cost update"

8. Martin-McIntosh prepared tentative map 5472 for Legacy, intended to divide parcel 1 of parcel map 9572 into 68 residential lots and a 96 unit apartment lot with a remainder.

9. On January 28, 1993, The City and Legacy executed an Acquisition Agreement, a true and correct copy of which is attached as **Exhibit "F"**.

## CERTIFICATE OF SERVICE

1. On September 28, 2009, I served the following document:

   - **DECLARATION OF MICHAEL BROWN IN SUPPORT OF DEFENDANT'S SUMMARY JUDGMENT MOTION**

2. The above-named document was served by the following means to the persons as listed below:

__XX__   Overnight service via UPS and addressed to:

James Braze
Jeffrey Travis
Borton, Petrini, LLP
1600 Truxtun Avenue
Bakersfield, CA  93301

Chaka Okadigbo
Garcia Calderon Ruiz, LLP
500 South Grand Avenue, Ste. 1100
Los Angeles, CA  90071

William L. Alexander
Alexander & Associates
1925 G Street
Bakersfield, CA  93301

By fax transmission. I faxed the document to the persons at the fax number listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission is attached.

I declare under penalty of perjury that the foregoing is true and correct.
Dated this 28th Day of September, 2009.

/s/ Kimberley A. Hassing
Kimberley A. Hassing

EXIBIT  F   BROWN DEC

BOOK 6816 PAGE 2317

RECORDED BY
GALE S. ENSTAD
KERN COUNTY RECORDER

Recording Requested by:     038134      9C MAR 17 PM 12: 45

City of Wasco

When recorded please mail to:

City of Wasco (DRU)
746 Eighth Street
Wasco, California 93280

## ACQUISITION AGREEMENT

### FOR CERTAIN IMPROVEMENTS TO VALLEY ROSE ESTATES TRACT NOS. 5472 AND 5618

WHEREAS, the Legacy Group, L.P., a California limited partnership (hereinafter referred to as the "Subdivider") is the legal owner of all of that real property in the City of Wasco, County of Kern, commonly known as Tract Numbers 5472 and 5618, or Valley Rose Estates Subdivision, which is more fully described in Exhibit "A," which is attached hereto and incorporated by this reference (hereinafter referred to as the "Property");

WHEREAS, the City of Wasco proposes to conduct proceedings pursuant to the Municipal Improvement Act of 1913, with bonds to represent the unpaid assessments to be issued under the Improvement Bond Act of 1915, to pay the cost of acquisition of improvements including, but not limited to, such acquisition as provided herein;

WHEREAS, the parties desire to agree upon the terms and conditions of construction by the Subdivider and acquisition by the City of Wasco of the Improvements as hereinafter defined and described in Exhibit "B," attached hereto and by this reference

1

incorporated herein.                                BOOK 6816 PAGE 2318

WHEREAS, Sections 10010 and 10311.5 of the California Streets and Highways Code contemplate the acquisition by a public agency of subdivision public improvements;

NOW, THEREFORE, based upon the foregoing Recitals and in consideration of the mutual covenants set forth herein, the parties agree as follows:

Section 1. <u>Entire Agreement</u>. This Agreement contains the entire agreement and understanding between the parties with respect to the matters pertaining to the process of acquisition by the City of Wasco of the Improvements. Insofar as any pre-existing agreement between the parties hereto is inconsistent with the terms of this Agreement, but only insofar as any such pre-existing agreement is inconsistent with the terms of this Agreement, such preexisting agreement is amended by this Agreement. In interpreting any existing agreement between the parties and this Agreement, to the extent there is an inconsistency between the terms of this Agreement and any existing agreement, the terms of this Agreement shall be given greater weight and shall prevail.

Section 2. <u>Construction of Improvements</u>. The Subdivider, at the Subdivider's own expense, shall cause to be constructed the improvements more particularly described in Exhibit "B" hereto (the "Improvements"). Exhibit "B" also identifies the approved plans and specifications for such Improvements and incorporates them by reference. The Total Project Cost for the Improvements does not include: (i) Permit fees; (ii) Utility

2

BOOK 6816 PAGE 2319

relocations; (iii) the cost of site grading; and (iv) Permits and inspections by other governmental agencies and any agreement fees and bonds that are required by them.

Section 3. Acquisition of Improvements. The City of Wasco shall acquire the Improvements from the Subdivider, as follows:

Subsection (a). Total Project Cost. For the purpose of this Agreement, the term "Total Project Cost" is defined in Exhibit "B," under which all of the Improvements are eligible and authorized under the applicable statutes of the State of California and the Municipal Code of the City of Wasco. The Improvements and work provided for in Exhibit "B," including but not limited to any incidental work and Improvements not specifically set forth in said Exhibit "B" but normal and pertinent to such work and Improvements, or necessary to coordinate and connect the Improvements with other improvements of the City of Wasco, are the responsibility of the Subdivider. The maximum amount of the Total Project Cost shall be FIVE MILLION TWO HUNDRED THOUSAND DOLLARS ($5,200,000.00).

The construction management and administration fees identified in each phase in Exhibit "B," shall, in the aggregate, constitute full compensation to the Subdivider for all costs of construction management and administration, attorney, accountant and other professional services and overhead incurred by the Subdivider in connection with the construction of the Improvements. Any such costs exceeding the amounts set forth in Exhibit "B" shall

3

BOOK 6816 PAGE 2320

not be paid out of District funds, but shall be borne solely by the Subdivider.

Subsection (b). Acquisition of Improvements. The Improvements in this particular project are set forth in Exhibit "B" in the following phases: sewer acquisition; water acquisition; storm drain acquisition; streets acquisition; and street light acquisition costs. Each of these phases is a discrete system which is capable of being completed and accepted by the City for general public use whether or not other portions of the Improvements are completed and accepted by the City, and which the City, in its sole discretion, may consider, determine complete, and accept, for the City Purposes in accordance with the list of Improvements set forth in Exhibit "B." Such consent shall not be unreasonably withheld. The phases need not be completed in any given sequence nor does there need to be the completion of one phase before the beginning of another or any given period of time between the acquisition of one phase and the acquisition of another phase. The process of acquisition consists of:

(i) Acceptance of one particular phase of the Improvements must be in writing by the City of Wasco as issued by Department of Public Works of the City of Wasco. Each phase shall be subject to approval for payment by the City, but such approval shall not be unreasonably withheld; such approval shall be made on behalf of the City by the Director of the Department of Public Works. The Department of Public Works will not issue the letter of

4