6

A true copy of the written agreement is attached hereto as "Exhibit A" and is incorporated herein by reference. A true copy of the legal description for the subject real property is attached hereto as "Exhibit B" and is incorporated herein by reference.

10. Pursuant to the written agreement, plaintiff furnished the civil engineering services requested by defendants and fully performed all things on its part to be done under the written agreement. The civil engineering services were hired for the purpose of the permanent improvement of the real property described in the preceding paragraph, and were actually used for the permanent improvement of such real property.

11. Defendants MICHAEL S. BROWN, THE LEGACY GROUP, L. P., and DOES 1 through 100, and each of them, promised to pay plaintiff for the aforesaid civil engineering services at specified rates. These rates were the reasonable amount for the civil engineering services furnished to defendants, MICHAEL S. BROWN, THE LEGACY GROUP, L. P., and DOES 1 through 100, inclusive.

12. On or about March 20, 1993, defendants, and each of them, breached the written agreement by failing to pay the sum due on that date.

13. As a result of the defendants' breach of the written agreement, plaintiff has been damaged in the sum of $330,309.30, together with interest thereon at the rate of 18% per annum from March 20, 1993.

ARRACHE, CLARK
& POTTER
ATTORNEYS AT LAW
5401 CALIFORNIA AVE.
SUITE 301
BAKERSFIELD,

4

7

14.    By the terms of the written agreement ("Exhibit A"), defendants, and each of them, agreed to pay reasonable attorney's fees incurred in collecting any amount due under the written agreement.  Plaintiff alleges that the amount of $100,000.00, or as further proved this Court, is a reasonable sum as and for attorney's fees.

### SECOND CAUSE OF ACTION

(FOR FORECLOSURE OF MECHANIC'S LIEN AGAINST DEFENDANTS, MICHAEL S. BROWN, THE LEGACY GROUP, L. P., THE CITY OF WASCO, AND DOES 1 THROUGH 100, INCLUSIVE)

15.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 14, inclusive, of its First Cause of Action, and by this reference thereto incorporates the same as though fully set forth herein.

16.    Plaintiff is informed and believes, and based thereon alleges, that the defendants, MICHAEL S. BROWN, THE LEGACY GROUP, L. P., THE CITY OF WASCO, and DOES 1 through 50, inclusive, are the owners or reputed owners, or assert some claim of interest in the real property described in this paragraph, each as purchasers, owners, judgment claimants, lienholders, trustees or beneficiaries under Deeds of Trust or otherwise.  Said property is commonly known as the "Valley Rose" subdivision, located near the City of Wasco, County of Kern, State of California.  This real property is more specifically described on "Exhibit B" attached hereto and incorporated herein by reference.

17.    Plaintiff duly served a Preliminary 20-Day Notice in the manner required by Section 3097 of the Civil Code, for all of the civil engineering services hired by defendants,

ARRACHE, CLARK
& POTTER
ATTORNEYS AT LAW
1401 CALIFORNIA AVE.
SUITE 301
BAKERSFIELD,

5

8

1  and each of them, under the written agreement.

2

3

4      18.    After providing the civil engineering services and fully performing under the

5  written agreement, plaintiff duly filed and recorded with the County Recorder's Office of

6  Kern County, California, its Mechanic's Lien describing with sufficient particularity the

7  subject real property and the reputed owners and the amount of plaintiff's unpaid claim

8  as of said recording date, a true copy of which is attached hereto, marked "Exhibit C" and

9  incorporated herein by reference.

10

11

12      19.    No Notice of Non-Responsibility has been posted or recorded by any of the

13  defendants relating to the subject real property.

14

15

16      20.    No Notice of Completion or Cessation of Labor upon the subject real

17  property had been recorded or posted at the construction project prior to the date of

18  recordation of plaintiff's Mechanic's Lien Claim.

19

20

21      21.    Ninety (90) days have not elapsed between the plaintiff's recordation of its

22  Mechanic's Lien and the commencement of these proceedings.

23

24      22.    All of the services and materials furnished by plaintiff were furnished with

25  the knowledge and consent of the defendants, and each of them.

26

27

28

ARRACHE, CLARK
& POTTER
ATTORNEYS AT LAW
5401 CALIFORNIA AVE.
SUITE 301
BAKERSFIELD,

6

9

23.    In its Claim of Lien ("Exhibit C"), plaintiff claimed a Mechanic's Lien on the work of improvement and the real property for the unpaid contract price, the sum of $330,309.30, which is the reasonable value of the services and materials which plaintiff has furnished.    Plaintiff has further incurred indebtedness which was necessary for the recording and verification of the Claim of Lien.

24.    By reason of the foregoing, plaintiff is entitled to a decree of foreclosure upon the whole of the above-described real property and requests that a judicial foreclosure sale be ordered for said real property to satisfy plaintiff's Mechanic's Lien.

25.    Defendants THE CITY OR WASCO and DOES 1 through 100, inclusive, and each of them, claim to have some right, title or interest in the above-described real property, the exact nature of which is unknown to plaintiff, which claims are subject and subordinate to the Mechanic's Lien of plaintiff.

## THIRD CAUSE OF ACTION

### (FOR COMMON COUNTS AGAINST ALL DEFENDANTS, AND DOES 1 THROUGH 100, INCLUSIVE)

26.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 14, inclusive, of its First Cause of Action, and Paragraphs 16 through 25, inclusive, of its Second Cause of Action, and by this reference thereto incorporates the same as though fully set forth herein.

ARRACHE, CLARK
& POTTER
ATTORNEYS AT LAW
5401 CALIFORNIA AVE.
SUITE 301
BAKERSFIELD.

7

10

27.    Within the four years immediately preceding the filing of this Complaint, in the County of Kern, State of California, defendants herein, and each of them, became indebted to plaintiff in the sum of $330,309.30 for engineering services and materials furnished by plaintiff, at the special instance and request of defendants.  The reasonable value for the engineering services and materials furnished was, and now is, the sum of $330,309.30, which defendants agreed to pay to plaintiff.

28.    No part of this sum has been paid.  Therefore, there is now due, owing and unpaid the sum of $330,309.30, with interest thereon at the rate of 18% per annum from March 20, 1993.

WHEREFORE, plaintiff prays judgment as follows:

1.    For the principal sum of $330,309.30, together with interest at the rate of 18% per annum from March 20, 1993.

2.    For costs of suit incurred herein;

3.    For reasonable attorney's fees in the sum of $100,000.00, or according to proof;

4.    For an order adjudging that the Mechanic's Lien be foreclosed and that the usual judgment be made for the sale of the property by the court, the Sheriff of the County of Kern, or by a commissioner to be appointed by the court; that the proceeds of the sale be applied and payment of the amounts including interest and costs herein; that each defendant and all persons claiming under each of them be banned and foreclosed from all rights, claims, interest or equity of redemption in the property;

ARRACHE, CLARK
& POTTER
ATTORNEYS AT LAW
401 CALIFORNIA AVE.
SUITE 301
BAKERSFIELD,

8

5.   For an order that plaintiff may have judgment and execution against defendants, and each of them, for any deficiency that may remain after applying all the proceeds of the sale of the premises wherever applicable to the satisfaction of said judgment;

6.   For an order that the court permit plaintiff or any other parties to this suit to be a purchaser at the foreclosure sale; that the court, commissioner or Sheriff execute a deed to the purchaser of the property at the sale; that the purchaser be let into possession of the property on production of the commissioner's, court's or Sheriff's deed;

7.   For such other and further relief as the court may deem just and proper.


DATED:  December 29, 1994.          ARRACHE, CLARK & POTTER


                                    By: _David B. Potter_
                                        DAVID B. POTTER
                                        Attorneys for Plaintiff,
                                        MARTIN-McINTOSH

ARRACHE, CLARK
& POTTER
ATTORNEYS AT LAW
401 CALIFORNIA AVE.
SUITE 301
BAKERSFIELD,

9

*12*

# Agreement Between Client and Consultant

This form of agreement is distributed by the:

**California Council of Civil Engineers & Land Surveyors**

Form A was developed by the California Council of Civil Engineers and Land Surveyors, is intended primarily for the use of Council members, and may not be reproduced without the permission of the California Council of Civil Engineers and Land Surveyors. Copyright 1991, 1989, 1987, 1984, 1982, 1979, 1978, 1975, 1973, 1970 and 1967.

| Client Initials | Consultant Initials |
|---|---|

Project No. __92-22__ *Billing*

Agreement entered into at _____ Bakersfield, California _____

made this _____ 18th _____ day of ____ March _____ ,19 92 _____ , by and between

| Client: | Consultant: |
|---|---|
| Name  Mr. Michael S. Brown | Name  Martin-McIntosh |
| Address  16255 Ventura Blvd., Suite 1000 | Address  4130 Ardmore Avenue |
| Encino, CA  91436 | Bakersfield, California  93309 |
| Phone | Phone  (805) 834-4814 |
| FAX | FAX  (805) 834-0972 |

## Client And Consultant Agree As Follows:

Client intends to:

See letter dated March 18, 1992, attached and made a part hereof.

hereinafter called "project."

A. Consultant agrees to perform the following scope of services:

Design Services, broken down into three (3) phases:

1) Conceptual Plan
2) Develop Master Plans for water,sewer and drainage, etc.
3) Survey

as stated in letter dated March 18, 1992, attached and made a part hereof.

B. Client agrees to compensate consultant for such services as follows:

Phase 1 – $ 15,200.00 , Phase 2 – $54,800.00 , Phase 3 – $19,100.00 plus costs of printing and reproductions to be billed at cost plus 10%, as stated in letter dated March 18, 1992, attached and made a part hereof.

* Martin-McIntosh will proceed with each Phase upon written authorization.

C. This Agreement is subject to provisions 1 through 48 contained herein, and the terms and conditions contained in initialed exhibits attached herewith and made a part hereof. (List exhibits below.)

## Provisions of Agreement

Client and consultant agree that the following provisions shall be part of their agreement:

1. This agreement shall be binding upon the heirs, executors, administrators, successors and assigns of client and consultant.

2. This agreement shall not be assigned by either client or consultant without the prior written consent of the other.

3. This agreement contains the entire agreement between client and consultant relating to the project and the provision of services to the project. Any prior agreements, promises, negotiations or representations not expressly set forth in this agreement are of no force

or effect. Subsequent modifications to this agreement shall be in writing and signed by both client and consultant.

4. Consultant's waiver of any term, condition, or covenant, or breach of any term, condition, or covenant, shall not constitute the waiver of any other term, condition, or covenant, or the breach of any other term, condition, or covenant.

5. If any term, condition, or covenant of this agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remaining provisions of this agreement shall be valid and binding on client and consultant.

13

6. This agreement shall be governe      and construed in accordance with the laws of the State of California.

7. Consultant shall only act as an advisor in all governmental relations.

8. All original papers, documents, drawings and other work product of consultant, and copies thereof, produced by consultant pursuant to this agreement shall remain the property of consultant and may be used by consultant without the consent of client. Upon request and payment of the costs involved, client is entitled to a copy of all papers, documents and drawings provided client's account is paid current.

9. Client acknowledges that its right to utilize the services and work product provided pursuant to this agreement will continue only so long as client is not in default pursuant to the terms and conditions of this agreement and client has performed all obligations under this agreement. Client further acknowledges that consultant has the unrestricted right to use the services provided pursuant to this agreement as well as all work product provided pursuant to this agreement.

10. Client and consultant agree to cooperate with each other in every way on the project.

11. Upon request, client shall execute and deliver, or cause to be executed and delivered, such additional instruments, documents, governmental fees and charges which are necessary to perform the terms of this agreement.

12. Consultant makes no representations concerning soil conditions unless specifically included in writing in this agreement, and he is not responsible for any liability that may arise out of the making or failure to make soil surveys, or sub-surface soil tests, or general soil testing.

13. Client agrees not to use or permit any other person to use plans, drawings, or other work product prepared by consultant, which plans, drawings, or other work product are not final and which are not signed, and stamped or sealed by consultant. Client agrees to be liable and responsible for any such use of nonfinal plans, drawings, or other work product not signed and stamped or sealed by consultant and waives liability against consultant for their use. Client further agrees that final plans, drawings or other work product are for the exclusive use of client and may be used by client only for the project described on the face hereof. Such final plans, drawings or other work product may not be changed nor used on a different project without the written authorization or approval by consultant. If consultant's work product exists in electronic or computerized format, or is transferred in electronic or computerized format, the stamp, seal and signature shall be original and may not be a computer-generated copy, photocopy, or facsimile transmission of the original.

14. Consultant has a right to complete all services agreed to be rendered pursuant to this contract. In the event this agreement is terminated before the completion of all services, unless consultant is responsible for such early termination, client agrees to release consultant from all liability for services performed. In the event all or any portion of the services or work product prepared or partially prepared by consultant be suspended, abandoned, or terminated, client shall pay consultant for all fees, charges, and services provided for the project, not to exceed any contract limit specified herein. Client acknowledges if the project services are suspended and restarted, there will be additional charges due to suspension of the services which shall be paid for by client as extra services.

15. If the scope of services to be provided by consultant pursuant to the terms of this agreement include an ALTA survey, client agrees that consultant may sign one of the two ALTA Survey Statements

attached hereto a    icorporated herein by reference. In the event that consultant is required to sign a statement or certificate which

| Client Initials | Consultant Initials |
| --- | --- |
|  |  |

differs from the ALTA Survey Statements contained in the attachment, client hereby agrees to indemnify and hold consultant harmless from any and all liability arising from or resulting from the signing of any statement which differs from those statements contained in the attachment.

16. If the scope of services to be provided by consultant pursuant to the terms of this agreement include the preparation of grading plans but exclude construction staking services, client acknowledges that such staking services normally include coordinating civil engineering services and the preparation of as-built drawings pursuant to Uniform Building Code Chapter 70 or local grading ordinances and client will be required to retain such services from another consultant or pay consultant pursuant to this agreement for such services as extra work in accordance with Provision 26.

17. Consultant shall be entitled to immediately, and without notice, suspend the performance of any and all of its obligations pursuant to this agreement if client files a voluntary petition seeking relief under the United States Bankruptcy Code or if there is an involuntary bankruptcy petition filed against client in the United States Bankruptcy Court, and that petition is not dismissed within fifteen (15) days of its filing. Any suspension of services made pursuant to the provisions of this paragraph shall continue until such time as this agreement has been fully and properly assumed in accordance with the applicable provisions of the United States Bankruptcy Code and in compliance with the final order or judgment issued by the Bankruptcy Court.

18. This agreement shall not be construed to alter, affect or waive any lien or stop notice right which consultant may have for the performance of services pursuant to this agreement. Client agrees to separately provide to consultant the present name and address of the record owner of the property on which the project is to be located. Client also agrees to separately provide consultant with the name and address of any and all lenders who would loan money on the project and who are entitled to receive a preliminary notice.

19. If payment for consultant's services is to be made on behalf of client by a third-party lender, client agrees that consultant shall not be required to indemnify the third-party lender, in the form of an endorsement or otherwise, as a condition of receiving payment for services.

20. If client fails to pay consultant within thirty (30) days after invoices are rendered, client agrees consultant shall have the right to consider such default in payment a material breach of this entire agreement, and, upon written notice, the duties, obligations, and responsibilities of consultant under this agreement are suspended or terminated. In such event, client shall promptly pay consultant for all fees, charges, and services provided by consultant.

21. All fees and other charges will be billed monthly and shall be due at the time of billing unless otherwise specified in this agreement.

22. Client agrees that the periodic billings from consultant to client are correct, conclusive, and binding on client unless client, within ten (10) days from the date of receipt of such billing, notifies consultant in writing of alleged inaccuracies, discrepancies, or errors in billing.

23. Client agrees to pay a monthly late payment charge, which will be the lesser of, one and one-half percent (1 1/2%) per month or a monthly charge not to exceed the maximum legal rate, which will be applied to any unpaid balance commencing thirty (30) days after the date of the original billing.

23. Client agrees to pay a monthly late payment charge, which will be the lesser of, one and one-half percent (1 1/2%) per month or a monthly charge not to exceed the maximum legal rate, which will be applied to any unpaid balance commencing thirty (30) days after the date of the original billing.

24. If consultant, pursuant to this agreement, produces plans, specifications, or other documents and/or performs field services, and such plans, specifications, and other documents and/or field services are required by one or more governmental agency, and one or more such governmental agency changes its ordinances, policies, procedures or requirements after the date of this agreement, any additional office or field services thereby required shall be paid for by client as extra services.

25. In the event consultant's fee schedule changes due to any increase of costs such as the granting of wage increases and/or other employee benefits to field or office employees due to the terms of any labor agreement, or rise in the cost of living, during the lifetime of this agreement, a percentage increase shall be applied to all remaining compensation.

26. Client agrees that if client requests services not specified pursuant to the scope of services description within this agreement, client agrees to pay for all such additional services as extra work.

27. In the event that any staking or record monuments are destroyed, damaged or disturbed by an act of God or parties other than consultant, the cost of restaking shall be paid for by client as extra services.

28. Client acknowledges that the design services performed pursuant to this agreement are based upon field and other conditions existing at the time these services were performed. Client further acknowledges that field and other conditions may change by the time project construction occurs and clarification, adjustments, modifications and other changes may be necessary to reflect changed field or other conditions.

If the scope of services pursuant to this agreement does not include construction staking services by consultant for this project, or if subsequent to this agreement client retains other persons or entities to provide such staking services; or if the scope of services pursuant to this agreement does not include on-site construction review, construction management, observation of construction of engineering structures, or other construction services for this project, or if subsequent to this agreement client retains other persons or entities to provide such construction services, then client acknowledges that such services will be performed by others and that client will defend, indemnify, and hold consultant harmless from any and all claims arising from or resulting from the performance of such services by other persons or entities except claims caused by the sole negligence or willful misconduct of consultant; and from any and all claims arising from or resulting from clarifications, adjustments, modifications or other changes which may be necessary to reflect changed field or other conditions except claims caused by the sole negligence or willful misconduct of consultant.

29. Client shall pay the costs of checking and inspection fees, zoning and annexation application fees, assessment fees, soils engineering fees, soils testing fees, aerial topography fees, and all other fees, permits, bond premiums, applicable taxes on professional services, title company charges, blueprints and reproductions, and all other charges not specifically covered by the terms of this agreement.

30. Client acknowledges and agrees that if consultant provides surveying service which services require the filing of a Record of Survey in accordance with Business and Professions Code Section 8762, that all of the costs of preparation, examination and filing for the Record of Survey will be paid by client as extra work in accordance with Provision 26.

31. Consultant is not responsible for delay caused by activities or factors beyond consultant's reasonable control, including but not limited to, delays by reason of strikes, lockouts, work slowdowns or stoppages, accidents, acts of God, failure of client to furnish timely information or approve or disapprove of consultant's services or work product promptly, faulty performance by client or other contractors or governmental agencies. When such delays beyond consultant's reasonable control occur, client agrees consultant is not responsible in damages nor shall consultant be deemed to be in default of this agreement.

32. Consultant shall not be liable for damages resulting from the actions or inactions of governmental agencies including, but not limited to, permit processing, environmental impact reports, dedications, general plans and amendments thereto, zoning matters, annexations or consolidations, use or conditional use permits, project or plan approvals, and building permits. The client agrees that it is the responsibility of the client to maintain in good standing all government approvals and permits and to apply for any extensions thereof.

33. Consultant makes no representation concerning the estimated quantities and probable costs made in connection with maps, plans, specifications, reports or drawings other than that all such costs are estimates only and actual costs will vary. It is the responsibility of client to verify costs.

34. Client acknowledges that consultant is not responsible for the performance of work by third parties including, but not limited to, the construction contractor and its subcontractors.

35. Consultant makes no warranty, either expressed or implied, as to his findings, recommendations, plans, specifications, or professional advice except that the services or work product were performed pursuant to generally accepted standards of practice in effect at the time of performance.

36. Estimates of land areas provided under this agreement are not to be considered precise unless consultant specifically agrees to provide the precise determination of such areas.

37. In the event the client agrees to, permits, authorizes, constructs or permits construction of changes in the plans, specifications, and documents or does not follow recommendations or reports prepared by consultant pursuant to this agreement, which changes are not consented to in writing by consultant, client acknowledges that the changes and their effects are not the responsibility of consultant and client agrees to release consultant from all liability arising from the use of such changes and further agrees to defend, indemnify and hold harmless consultant, its officers, directors, principals, agents and employees from and against all claims, demands, damages or costs arising from the changes and their effects.

38. Client agrees that in accordance with generally accepted construction practices, construction contractor will be required to assume sole and complete responsibility for job site conditions during the course of construction of the project, including safety of all persons and property; that this requirement shall be made to apply continuously and not be limited to normal working hours.

further acknowledges that field and other conditions may change by the time project construction occurs and clarification, adjustments, modifications, discrepancies or other changes may be necessary to reflect changed field or other conditions. If the scope of services pursuant to this agreement does not include on-site construction review, construction management, supervision of construction of engineering structures, or other construction supervision for this project, or if subsequent to this agreement client retains other persons or entities to provide such services, client acknowledges that such services will be performed by others and client will defend, indemnify and hold consultant harmless from any and all claims arising from or resulting from the performance of such services by other persons or entities except claims caused by the sole negligence or willful misconduct of consultant; and from any and all claims arising from or resulting from clarifications, adjustments, modifications, discrepancies or other changes necessary to reflect changed field or other conditions, except claims caused by the sole negligence or willful misconduct of consultant.

42. Client agrees that in accordance with generally accepted construction practices, construction contractor will be required to assume sole and complete responsibility for job site conditions during the course of construction of the project, including safety of all persons and property; that this requirement shall be made to apply continuously and not be limited to normal working hours, and client further agrees to defend, indemnify and hold consultant harmless from any and all liability, real or alleged, in connection with the performance of services on this project, excepting liability arising from the sole negligence of consultant.

43. In the event client discovers or becomes aware of changed field or other conditions which necessitate clarification, adjustments, modifications or other changes during the construction phase of the project, client agrees to notify consultant and engage consultant to prepare the necessary clarifications, adjustments, modifications or other changes to consultant's services or work product before construction activities commence or further activity proceeds. Further, client agrees to have a provision in its construction contracts for the project which requires the contractor to notify client of any changed field or other conditions so that client may in turn notify consultant pursuant to the provisions of this paragraph.

44. Client agrees to limit the liability of consultant, its principals and employees, to client and to all contractors and subcontractors on the project, for any claim or action arising in tort or contract, to the sum of $50,000 or consultant's fee, whichever is greater. However, if consultant's fee exceeds $250,000, liability to client and to all contractors and subcontractors shall not exceed $250,000.

45. Client agrees to purchase and maintain, during the course of construction, builder's risk "all risk" insurance which will name consultant as an additional insured as their interest may appear.

46. Consultant hereby states and client hereby acknowledges that consultant has no professional liability insurance for claims arising out of the performance of or failure to perform professional services, including, but not limited to the preparation of reports, designs, drawings and specifications, related to the investigation, detection, abatement, replacement, use or specification, or removal of products, materials or processes containing asbestos, asbestos cement pipe, and/or hazardous waste materials. Accordingly, the client hereby agrees to bring no claim for negligence, breach of contract, indemnity or otherwise against the consultant, its principals, employees, and agents if such claim, in any way, would involve the consultant's services for the investigation, detection, abatement, replacement, use or specification, or removal of products, materials or processes containing asbestos, asbestos cement pipe, and/or hazardous waste materials. Client further agrees to defend, indemnify and hold harmless consultant, its officers, directors, principals, employees and agents from any asbestos and/or hazardous waste material related claims that may be brought by third parties as a result of the services provided by the consultant pursuant to this agreement except claims caused by the sole negligence or willful misconduct of the consultant.

47. Client acknowledges that consultant's scope of services for this project do not include any services related in any way to asbestos and/or hazardous waste. Should consultant or any other party encounter such materials on the job site, or should it in any other way become known that such materials are present or may be present on the job site or any adjacent or nearby areas which may affect consultant's services, consultant may, at its option, terminate work on the project until such time as client retains a specialist contractor to abate and/or remove the asbestos and/or hazardous waste materials and warrant that the job site is free from any hazard which may result from the existence of such materials.

48. (a) Notwithstanding any other provision of this Agreement and except for the provisions of (b) and (c), if a dispute arises regarding consultant's fees pursuant to this contract, and if the fee dispute cannot be settled by discussions between client and consultant, both client and consultant agree to attempt to settle the fee dispute by mediation through the American Arbitration Association [or other mediation service] before recourse to arbitration.

If mediation does not resolve the fee dispute, such dispute shall be settled by binding arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof.

(b) Subdivision (a) does not preclude or limit consultant's right to elect to file an action for collection of fees if the amount in dispute is within the jurisdiction of the small claims court.

(c) Subdivision (a) does not preclude or limit consultant's right to elect to perfect or enforce applicable mechanics lien remedies.

IN WITNESS WHEREOF, the parties hereby execute this agreement dated _____ upon the terms and conditions stated above.

Client   MICHAEL S. Brown
             _____ Print or Type
By _____
             Signature
Name/Title _____
Date Signed   3/25/92
Project Number   92-22

Consultant   Martin-McIntosh - Eugene P. Martin
                _____ Print or Type
By _____
             Signature
Name/Title   Eugene P. Martin - Partner
Date Signed   3/24/92
Project Number   -92-22

Client should mail completed contract to the address shown for consultant.

Form A 91                                    Page 4 of 4