4.  **Abandonment**

The City paid MM over $800,000 for MM's services, including preparing the plans and specifications. (SS # 25). Further, McIntosh testified that he never planned on using those plans (or Map 5472) on any other project. (SS # 67).

5.  **Merger**

Again, McIntosh completely misses the thrust of Northern's merger defense. Northern freely admits that it had no interest in tearing out the sewer, water, storm drain, paving, curbs, sidewalks, and other improvements that Legacy had constructed using MM's plans. Northern does not deny that it would have cost a lot of money to do so. Northern would never have purchased the property had it been expected to commit such mindless waste.

Northern's merger defense is based on the fact that Northern <u>did</u> want to use the improvements that Legacy had constructed. To do that, Northern had to go through the subdivision mapping process all over again. He could have paid McIntosh $800,000 or hire DeWalt to create a new map for $26,000. When DeWalt surveyed the site, the overall layout of the 68 residential lots, (the 69th lot for 96 apartments being eliminated) and streets necessarily resembled the layout from Map 5472. (SS # 71). That is because the subdivision had been built pursuant to Map 5472. This is exactly why merger does apply here. There is no way to survey the improvements built under Map 5472 without the layout of the new map resembling the old map.

But the layout of the subdivision is based on MM's "idea". Ideas are not copyrightable. The protection that a map receives extends only to its original expression, and neither the facts nor the idea embodied in the map is protected. *Mason v. Montgomery Data, Inc.*, 967 F. 2d 135, 140 (5th Cir. 1992). Had DeWalt copied Map 5472, there could have been infringement. But DeWalt didn't do that. Map 6451 was based on DeWalt's survey of what was existing on the ground. (SS # 47 and 68). When the "idea" and its "expression" are inseparable, even copying the expression will not be barred, since the expression in such circumstances would confer a monopoly of the idea. *Baker v. Selden*, 101 U.S. 99, 103 (1879). Also see *Herbert Rosenthal Jewelry Corp v. Kalpakian* 446 F.2d 738 (9th Cir. 1971).

Again, McIntosh's reliance on Del Madera is misplaced. There, the developer admittedly used the copyrighted map and argued that he had no choice but to do so. Here, Northern did not use MM's map. It paid DeWalt to independently create a new one. Which, by the way, is substantially different than MM's. (SS # 70 and Exs "A" and "B" to Hassing Dec.).

6.  **Statute of Limitations**

Northern concedes that has no facts which indicate that McIntosh knew of the alleged infringement more than three years prior to the date the lawsuit was filed.

7.  **Latches**

McIntosh's claim that he had no idea that his copyright was being infringed until 2006 is disingenuous at best. Northern contracted to purchase Parcel 1 in May of 2004.

(Ex L1, Travis Dec in Support of McIntosh's Summary Adjudication Motion). McIntosh and Wu spoke by phone prior to Northern's purchase. (SS # 34). McIntosh knew of his copyright claim at the time of the phone call and did not tell Wu. (SS # 36). McIntosh believed, at the time of the phone call that Wu was going to infringe. (SS # 39, 40 and 41). Right after the phone call, McIntosh submitted a request to The City to provide him with all future agendas so that he could follow Wu's progress. (SS # 38). McIntosh considered suing Northern as soon as he learned that DeWalt was processing the tentative map. (40). DeWalt submitted the Tentative 6451 to The City on November 10, <u>2004</u>. (SS # 73). Northern spent $3,855,000 between the time McIntosh knew DeWalt was processing Map 6451 and the time McIntosh sued. (SS # 76). During that time, McIntosh intentionally stayed quiet. (SS # 75).

The facts, taken from McIntosh's depositions alone, support latches.

8. **Independent Creation**

McIntosh correctly claims that proof of copyright infringement without direct evidence of copying requires proof of opportunity and substantial similarity. He offers evidence of opportunity but fails to make any argument of substantial similarity.

On the other hand, Northern offers considerable evidence of independent creation in the form of testimony from Jeff Gutierrez, Greg Black and Josh Woodard. They describe how DeWalt conducted its own survey and created its independent and totally different map without copying anything from McIntosh's work. (SS # 47, 48, 51, 52, 54 and 55).

Steve Wong provides extensive testimony on the major differences between May 5472 and 6451. (SS # 70). The Hassing declaration and exhibits "A" and "B" thereto substantiate over 250 differences, not the least of which is that Map 5472 was a 69 lot map providing for 96 apartments in addition to 68 homes and that Map 6451 was a 68 lot map.

Even where expressions turn out to be identical, though created through independent efforts, there is no infringement. *Kunycia v. Melville Realty Co. Inc.*, 755 F. Supp. 566, 576 (S.D.N.Y. 1990). That is because copyright infringement requires copying. *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Also see *Mazer v Stein*, 347 U.S. 201, 218.

Finally, while McIntosh points to a supplemental interrogatory response and claims that Jeff Gutierrez "admitted" "using" Map 5472 in creating Map 6451, Gutierrez's declaration, filed in support of this opposition, makes it clear that in including reference to Map 5472 in responding to Plaintiff's interrogatory number 2, requiring that he identify each document "used" to assist in preparing Tentative Map No. 6451, that by "use" he was only referring to <u>comparing</u> the two maps to see if there were any major surveying differences which would have required DeWalt to recheck their work to find out why there was a major difference since DeWalt had only surveyed what was on the site. (Gutierrez Declaration in Support of Opposition, para 3).

Northern has objected to Plaintiff's reference to Gutierrez's supplemental responses to requests for admissions because the requests were not included in any exhibit, only responses. Further, neither the responses to the request for admissions or to

the interrogatories were signed or verified by Gutierrez or any DeWalt employee and are therefore hearsay.

### III
### CONCLUSION

Northern has presented material facts which, with the exception of statute of limitation, prevents McIntosh from regarding in striking any affirmative defense.

Dated this 19th day of October, 2009         /s/ Steven J. Hassing, Esq.
                                                                                       Steven J Hassing, Attorney for Northern and Lotus

## CERTIFICATE OF SERVICE

1. On October 21, 2009, I served the following document:

   - **NORTHERN'S OPPOSITION TO MCINTOSH'S CROSS-MOTION FOR SUMMARY ADJUDICATION**

2. The above-named document was served by the following means to the persons as listed below:

__XX__  United States Mail, first class postage fully prepaid and addressed to:

James Braze
Jeffrey Travis
Borton, Petrini, LLP
1600 Truxtun Avenue
Bakersfield, CA  93301

Chaka Okadigbo
Garcia Calderon Ruiz, LLP
500 South Grand Avenue, Ste. 1100
Los Angeles, CA  90071

William L. Alexander
Alexander & Associates
1925 G Street
Bakersfield, CA  93301

By fax transmission. I faxed the document to the persons at the fax number listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission is attached.

I declare under penalty of perjury that the foregoing is true and correct.
Dated this 21st day of October, 2009.

/s/ Kimberley A. Hassing
Kimberley A. Hassing