nr:st

James J. Braze, Esq.; SBN 75911
Jeffrey A. Travis, Esq.; SBN 235507
BORTON PETRINI, LLP
5060 California Avenue, Suite 700 (93309)
Post Office Box 2026
Bakersfield, CA 93303
Telephone (661) 322-3051
email: jbraze@bortonpetrini.com
email: jtravis@bortonpetrini.com

Attorneys for Plaintiff, Roger McIntosh dba McIntosh & Associates

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| ROGER McINTOSH,<br><br>               Plaintiff,<br><br>v.<br><br>NORTHERN CALIFORNIA UNIVERSAL ENTERPRISES COMPANY, a California corporation; LOTUS DEVELOPMENTS, LLP; THE CITY OF WASCO, a municipal corporation; DEWALT CM, INC., a California corporation also doing business as DEWALT CORPORATION; and DOES 1 through 10, inclusive<br><br>               Defendants. | Case No.  1:07-CV- 01080 LJO-GSA<br><br>PLAINTIFF'S OPPOSITION TO DEFENDANT WASCO'S MOTION FOR SUMMARY JUDGMENT<br><br><br>DATE:  October 28, 2009<br>TIME:   OFF CALENDAR<br>DEPT.: 4<br>JUDGE: Lawrence J. O'Neill |
| CITY OF WASCO,<br><br>               Cross-Complaint,<br><br>    vs.<br><br>NORTHERN CALIFORNIA UNIVERSAL ENTERPRISES COMPANY, INC.,<br><br>               Cross-Defendant. | |

COMES NOW Plaintiff, Roger McIntosh dba McIntosh & Associates and submits its Opposition to defendants' Motion for Summary Judgment, as follows:

# I.

## FACTUAL OVERVIEW

Plaintiffs agree with most of the facts recited in Wasco's moving papers.  However, there are a few facts that need clarification.

It is undisputed that Martin-McIntosh entered into a Consultant agreement with Michael Brown and the Legacy Group to perform engineering services for their development project. *Wasco's UMF No. 13*. However, the invoices under that agreement were sent to Legacy Group and then Wasco would then pay on these invoices pursuant to their agreement with the Legacy Group. *Declaration of Roger McIntosh in Opposition to Northern and Wasco's Summary Judgment Motions ¶ 6, Exhibit "A"*. Further, it is undisputed that MM never entered into a written contract with the City of Wasco for any services it provided to Legacy.

Legacy defaulted on the agreement between it and MM and was unable to pay MM over $300K because bond notes fell through. *Id., ¶ 7.*MM later attempted to collect this money in state court through a tax lien. *Id.*  MM also sued Wasco for this money, but MM was unable to collect from Wasco because, according to Wasco, there was no agreement between them per state and local law. *Id., Exhibit "B"*. The Agreement between Wasco and Legacy Group which Wasco uses as the sole basis to establish an implied license never gave away any rights to the improvement plans but only gave Wasco the rights to complete the improvements themselves. *See, Acquisition Agreement, Section 3*.  Since the Legacy Group was the party who signed the Agreement, they did not own the copyrighted works but only owned the subdivision land itself and could not give away what it did not own.

# II.

## OPPOSITION

**A.**     **There Was No Implied License Because McIntosh Never Intended to Give Up His Rights to the Copyrighted Work**.

      **1.**     **On Identical Facts, Courts in This District and Abroad Have Refused to Grant An Implied License For a City To Copy Engineering Maps and Plans.**

A copyright owner has the exclusive rights to reproduce the work, prepare derivative

1    works, and distribute copies. *17 U.S.C. §106; Danielson, supra, at 9-10*. The Copyright Act also

2    invalidates a purported transfer of ownership unless it is in writing. *17 U.S.C. 204(a)*.  The exception

3    to this is that of a nonexclusive, implied license. (*Effects Assoc. Inc. v. Cohen, 908 F.2d 555, 558-*

4    *559 (9th Cir. 1990)*.  As the *Effects* court noted however, this exception is a narrow one. *Id*.

5            If a copyright owner never intends for the alleged licensee to copy and distribute its

6    work, there is no implied license. *Effects Assoc. Inc. v. Cohen, 908 F.2d 555, 558-559 (9th Cir.*

7    *1990)*; *3 Melville B. Nimmer & David B. Nimmer, Nimmer on Copyright, §10.03[A][7](2001)*; *John*

8    *G. Danielson, Inc. v. Winchester-Conant Properties, Inc.*, *186 F.Supp.2d 1, 18 (D. Mass. 2002)*; *See*

9    *Also, Johnson v. Jones (6th Cir.)* (holding that  there was no implied license where the standard

10   architectural form contract contained express provisions retaining the author's right to his drawings

11   and that they could not be used by others without his written consent).

12           The *Danielson* case is particularly instructive here.  In *Danielson*, the Court, relying

13   on the Ninth Circuit holding in *Effects*, held that plans submitted to a planning board did <u>not</u> grant

14   an implied license to the town.  In deciding this, they relied on three primary facts.

15           First, the original contract for services was between the copyright holder and an

16   original developer, not the town; Second, the copyright holder retained control over the rights to the

17   work under the contract; and finally, the town of the later developer never retained the plans directly

18   from the copyright holder but indirectly through the foreclosure of the properties.  *(Danielson, supra,*

19   *at 18-23, following similar facts in Johnson v. Jones, 149 F.3d 494, 500 (6th Cir. 1998).*

20           The *Danielson* Court followed the rationale of the Northern District of California in

21   *Del Madera Properties v. Rhodes& Gardner, Inc* holding that just because a copyright holder

22   submits its work to a city for approval does not mean that it is creating an implied license.  *Id., at*

23   *21, citing  Del Madera Properties v. Rhodes& Gardner, Inc., 637 F.Supp. 262 (N.D. Cal. 1985)*. As

24   the Court explained, it was <u>not the map</u> that was adopted by the city <u>but the conditions</u> that required

25   construction in conformity with the plans.  *Id*.  The *Danielson* Court also was careful to weigh the

26   competing concerns of the public in reviewing documents and the right of authors in protecting their

27   works, finding that copyright interests outweigh. *Danielson*, at 22.

28           Here, McIntosh entered into a contract with Legacy Group in which he would create

1    works for them and retain all rights to those works. *See, Plaintiff's Sep. Stmnt. Nos. 1-2*

2    *accompanying his Motion for Partial Summary Judgment* . Further, the contract between plaintiff

3    and the Legacy Group specifically stated that the works were only to be used by the Legacy Group

4    and in connection with the specific project identified by that contract. *Id., Sep. Stmnt. Nos.*

5    *2,(provisions 12-13)*. The Project was defined in the contract as Project No. 92-22 for the

6    preparation by Martin-McIntosh of a conceptual plan for the Valley Rose subdivision; a Draft

7    Guidance Package; tentative and final maps; improvement plans; and surveys.

8    The work prepared by MM was <u>only</u> for Legacy Group's use and could not be used

9    by any other developer and on any other project "without the written authorization (Agreement

10    between Martin-McIntosh and Michael Brown) or approval" of McIntosh. *Id.* Furthermore, the

11    Contract specifically provided that the "right to utilize the services and work product" of McIntosh

12    continued only as long as Legacy was not in default. *Contract, par. 9*. Legacy defaulted in the early

13    1990's which led to MM filing a mechanic's lien in state court also suing Wasco for monies owed.

14    *McIntosh Decl.in Opposition to Northern and Wasco's Summary Judgment Motions, ¶¶ 7-8.*

15    At no time were Northern, Wasco, or DeWalt given authorization by plaintiff to use

16    his work. *Plaintiff's Sep. Stmnt. Nos. 7-12*. In fact, Northern's president, Joe Wu, admitted that he

17    was told by McIntosh that he could not use McIntosh's work. *Id. No. 12*. The other defendant's were

18    also never given permission to use them. *Id., Sep. Stmnt. Nos.9-12*.

19    Like *Danielson* and *Johnson*, the original contract between McIntosh and Legacy

20    Group was a standard form contract from the California Council of Civil Engineers and Land

21    Surveyors. (See, "CELSOC" contract between Martin-McIntosh and Richard Brown attached as

22    Exhibit "A" to McIntosh Decl.) Other than this contract, there is no writing that gave Wasco or

23    anyone else the rights to the copyrighted works. In fact, Wasco's own municipal code provides that

24    electronic versions of the map and plans are for government use and not available to the general

25    public. *Request for Judicial Notice accompanying Plaintiff's Motion for Partial Summary Judgment,*

26    *Exhibit "B", Wasco Mun. Code §16.32.050.*

27    At a minimum, this creates a disputed factual issue precluding summary judgment

28    on this issue but should allow MM to prevail on its own motion on this issue.

1    **2.      By Statute, the City Of Wasco Cannot Enter Into an Implied Agreement.**

2          The argument that an implied agreement was created between MM and Wasco for

3    unspecified works is contrary to the provisions of the Government Code which provides that:

4          The mayor shall sign:
           (b) All written contracts and conveyances made or entered into by the city.
5          (c) All instruments requiring the city seal. The legislative body may provide
     by ordinance that the instruments described in (a), (b) and (c) be signed by an officer
6    other than the mayor. (Government Code§ 40602)

7          This means that a contract is enforceable <u>only</u> if the contract is in writing,

8    approved by the city council, and signed by the mayor or by another city officer designated by the

9    city council in an ordinance. *(Authority for California Cities Excess Liability v. City of Los Altos*

10   (App. 6 Dist. 2006) 39 Cal.Rptr.3d 571, 136 Cal.App.4th 1207)  This government code provision

11   ensures that any agreement between the City and any other entity or person is in writing to ensure

12   that decisions that affect the City are not made in haste or for other purposes subversive to the city.

13   See, *City of Orange v. San Diego County Employees Retirement Assn*. (App. 2 Dist. 2002) 126

14   Cal.Rptr.2d 405, 103 Cal.App.4th 45

15         Wasco argues that the "Contract"[1] authorized Wasco to complete improvements

16   on Valley Rose, and because McIntosh knew about the Acquisition Agreement, therefore, McIntosh

17   must have, by implication, intended for Wasco to have use of his works. They also argue that Wasco

18   paid for the works under the Acquisition Agreement and therefore, they had an implied license to

19   use them.

20         The City of Wasco is well aware of the above statute and case law that precludes

21   this type of arrangement.  They know because they used it to <u>avoid</u> an oral agreement by their City

22   Manager in 1993 wherein he, in recorded form, agreed to pay for engineering services provided by

23   McIntosh for the Valley Rose estates. *See, McIntosh Decl. in Opposition to Wasco and Northern's*

24   *Motions for Summary Judgment*, ¶ 8) In fact, Wasco wrote an extensive trial brief on this issue and

25   how they were not obligated to pay for McIntosh's services based only on a verbal promise by its

26   city manager. *Id.*, ¶ 8, Exhibit "B".  Wasco wants it both ways, arguing against an implied agreement

27

28   _____

1 We think they mean the Acquisition Agreement between Wasco and Legacy Group because they are not a party to the contract between MM and the Legacy Group and refer to two "contracts" somewhat interchangeably.

1  in the 1990's to avoid payment to McIntosh and now, arguing for an implied agreement through an

2  agreement in which Martin-McIntosh was not even in privity, to avoid copyright infringement.

3      Beyond that, the Acquisition Agreement between it and Legacy Group does not say what

4  Wasco wants it to say.  It only says that Wasco could complete building the improvements in the

5  subdivision but it never gives them the rights to the copyrighted works.

6      Wasco's additional claims that they paid for services are also false.  The City lent money

7  to the Legacy Group through bond notes, they then created a lien against the property with the hopes

8  of collecting money from the homeowners to repay those notes and also obtain impact fees.  MM

9  submitted its invoices to Legacy not to Wasco. *Id., ¶¶ 6-7, Exhibit "A".* As a matter of convenience

10  between the parties, Wasco paid these invoice directly to Martin-McIntosh, on account of Legacy.

11  *Id.* This arrangement is similar to a bank disbursing funds for a construction loan, except here,

12  Wasco is arguing that they have a "sale" for the work between the subcontract and the developer.

13      In reality, Wasco's claim is an indemnification claim against The Legacy Group

14  since Legacy was required to seek approval from each contractor and subcontractor to name Wasco

15  as a beneficiary to the Acquisition Agreement, an act which never occurred. (See, Acquisition

16  Agreement, Section 2(g).)

17      Finally, Wasco concedes that McIntosh was never completely paid for the

18  copyrighted works and was left owed a substantial sum. Even if Wasco's claims are correct and the

19  Acquisition Agreement was somehow an implied license because it purchased the copyrighted

20  works, then the sale was never completed.  Legacy defaulted and MM was never paid full value for

21  the work.  Without payment, a sale was never actually consummated and the argument fails.

22      For all of the above reasons, plaintiff requests that summary judgment be denied

23  on this issue and that this Court weigh against Wasco as to this affirmative defense on its motion.

24  **A.**     **There Is Ample Proof that Wasco Contributed to the Infringing Activity**.

25      Before McIntosh can prevail on contributory infringement, he must first show that

26  there was infringement.  *See, Perfect 10, Inc. v. Amazon.com, Inc. 487 F.3d 701 (9th Cir. 2007).*

27  Direct infringement is shown either by direct evidence or by indirect evidence of infringing activity.

28  *Transgo Inc. v. Ajac Transmission Parts Corp., 768 F.2d 1001, 1018 (9th Cir. 1985).*  Indirect

1 infringement of copying is shown by access to the work by defendants and that the works are

2 substantially similar. *Id.* Then, after infringement is shown as to one or more defendants, plaintiff

3 can then proceed to proving contributory infringement. *Id.*

4    A defendant can be held liable for contributory infringement if the infringer knew

5 or should have known of the infringing activity, and induced, caused, or materially contributed to

6 the infringing conduct. *Arista Records Inc. v. Flea World, Not Reported in F.Supp.2d, 2006 WL*

7 *842883 \*13; See also, Fonovisa, Inc. v. Cherry Auction, Inc., 76 F.3d 259, 261-263 (9th Cir. 199).*

8    Here, Wasco argues only the elements of contributory infringement. Therefore,

9 this Court need only look to the standard for contributory infringement in deciding this motion.

10 Wasco makes two arguments. First, that they did not know of the infringing activity, and did not

11 intend to induce or encourage the infringing activity.

12    The infringing activity in this case is the distribution in electronic form of

13 McIntosh's copyrighted plans by Wasco, Northern, and DeWalt;  and also the preparation of an

14 infringing map which Wasco approved so that Northern could build and sell homes.  As a result,

15 Wasco could collect impact fees and taxes and pay off any monies on the bond notes it used to

16 finance the subdivision.

17    Wasco claims it did not, "know that these Defendants harbored any designs to

18 use, copy, or otherwise infringe upon any (sic) Plaintiff's alleged copyright interests…"

19 *Memorandum, page 24, lines 26-27*. Yet, Wasco equivocates on the word "know."  Their position

20 is that because they did not know that the work was protected by copyright and did not know how

21 DeWalt would prepare the 6451 Map, therefore, they did not have the requisite knowledge to satisfy

22 the elements of this claim.  This interpretation of what "knowledge" means is not correct.

23    The 9th Circuit in *Perfect 10 v. Amazon* ruled that the common law principles

24 incorporated into copyright law, "establish that intent may be imputed. 'Tort law ordinarily imputes

25 to an actor the intention to cause the natural and probable consequences of his conduct.'" *Perfect 10*

26 *v. Amazon,* 487 F.3d 701, 727 (9th Cir. 2007).  The standard is not that Wasco knew of an existing

27 copyright, or how the defendants would infringe, or even that they intended to infringe but, that

28 Wasco knew of the "infringing activity."  In this case, the infringing activity is the act of DeWalt

preparing a substantially similar map to McIntosh's.  The facts supporting this claim are undisputed:

- • Wasco approved the subdivision layout in  the 1992 Tentative Map No. 5472 and again, for the 2004 6451 Map.; *Wasco's UMF Nos. 26, 47 and 53*
- • McIntosh created improvement plans that conformed to the 5472 Map; *Wasco's UMF No. 25*
- • Wasco marketed the Valley Rose subdivision through a Developer Information Package that touted the fact the improvements were already in place and a tentative map had already been approved; *Plaintiff's Sep. Stmnt. No. 34*
- • The Subdivision map for 6451 was required to conform to the improvement plans;  *Wasco Mun. Code, Section 16.28.010; UMF No.74; McNamara Dep., Opp. to UMF No. 56*
- • DeWalt never created any improvement plans; *Wasco, UMF Nos. 57 58, and 66*
- • Wasco gave electronic copies of the copyrighted work to DeWalt, the engineer who had contracted with Northern to prepare new 6451 Tentative Map that replaced the 5472 Map; *UMF No. 82*
- • Wasco gave final approval for the 6451 Map; *Wasco's UMF No. 53*
- • DeWalt conformed the 6451 Map to the improvement plans and the previous map; *See, Tentative Map No. 6451, Exhibit "C" attached to Travis Decl. in Opp. to Motions*
- • The City of Wasco has final authority over whether to approve or disapprove of the 6451 Map. *Dep. Of Dennis McNamara, City of Wasco Planning Dept., 20:19-23*

Wasco was an integral part of the approval process and knew that a similar map had to be created or else a new map would have to be submitted meaning a lengthy, new approval process, and a potential redesign of the subdivision would have to be started.  This would take time and money for both Wasco and Northern, something neither wanted to spend.

Wasco claims that despite its public approval of the infringing 6451 Map; despite its continued oversight of the development project; despite the fact that it emailed DeWalt the copyrighted work, and despite the fact that finally approved the 6451 Map, it had no knowledge of the infringing activity.  This lack of ignorance of the infringing activity is akin to "turning a blind eye to infringement" which is the equivalent of knowledge. *In re Aimster Copyright Litig.*, 334 F.3d 643,646 (7th Cir.2003).  There is certainly enough here to create a disputed factual issue necessary to survive summary judgment.

Finally, Wasco attempts to argue that the map could be used for "commercially significant non-infringing uses" and likening themselves to mere distributors of the copyrighted work, making this claim inapplicable. *See, Memorandum, page 27, lines 14-18*.

In response, there was only one reason for distributing McIntosh's work to DeWalt and the other defendants - ensuring the new map could conform to the old map and improvement plans which they understood had to be so.  Without their similarity, there would have been no

approval by Wasco.  At a minimum, this becomes a factual issue sufficient to defeat a summary judgment motion.

**C.**     **Wasco Profited From The Infringement And Was The One Ultimately Responsible For Overseeing And Controlling The Infringing Activity**.

If the defendant profited directly from the infringing activity and had the ability to supervise and control the infringing activity but failed to so, they can be held liable as vicarious infringers. *Ellis v. Robertson 357 F.3d 1072, 1076 (9ᵗʰ Cir. 2004)*.

17 U.S.C. §504(b) "creates a two-step framework for recovery of indirect profits: 1) the copyright claimant must first show a causal nexus between the infringement and the [infringer's] gross revenue; and 2) once the causal nexus is shown, the infringer bears the burden of apportioning the profits that were not the result of infringement." *Polar Bear Productions, Inc. v. Timex Corp., 384 F.3d 700, 711, 714 n.10 (9th Cir.2004)*

Wasco profited from the Northern's development in several ways.

First, they marketed the existing improvements of the Valley Rose subdivision as a bonus to developers in its Developer Information Package. *See, Plaintiff's Sep. Stmnt. No. 34, Exhibit "S"*.  The deal would have been nowhere near as attractive if the new developer had to start from scratch.  *See, Deposition of Stephen Wong, 50:9-25;51; 52:1-20; 54:8-25; 55; 56:1-5*.  This is why Wasco attached the 5472 Tentative Map to their promotional materials.  Therefore, by copying McIntosh's work and promoting the development because of it, Wasco profited through the sale of the subdivision of $1.6 million. *See, Northern's Sep. Stmnt. UMF No. 76.*

Wasco also profited because without an approved final map, they would not be able to collect impact fees.  *See, Gov. Code,  § 66499.30(a)-(b) and Deposition of James L. Zervis, October 28, 2008, 8:19-25, 9:1-17 and exhibit 3 attached thereto*.  By latest count, and according to the deposition and exhibits, Wasco has benefitted over $520,000 in fees so far and expects to collect more.

Wasco also argues that although it, admittedly, regulates and controls the development of its subdivisions, it does so only because it is required to do so under the Subdivision Map Act and this should not count against it for purposes of infringement. *Memorandum, Section VIII*.  This argument is irrelevant and is a straw man argument.  Nowhere do they cite any authority

1  for the proposition that because they have to perform municipal functions, they can ignore copyright

2  laws.  Just the opposite is true and the copyright holder's rights must be weighed and upheld unless

3  they have been waived.  *See, Danielson, supra, at 22*.

4        Here, Wasco creates at least a factual issue, if not an outright admission of the first

5  element of vicarious infringement.

6  **D.**    **Wasco and the Other Defendants have All Admitted the Similarity of the 6451 Map
   With the 5472 Map and Plans Sufficient to Defeat Their Request for Summary

7  Judgment on Substantially Similarity**.

8        Wasco argues in a summary judgment motion that the infringing 6451 Map and the

9  5472 Map and improvement plans are "substantially dissimilar."  *Memorandum, Section IX*.

10  Summary judgment is only appropriate in copyright infringement cases if, after viewing the evidence

11  and drawing every inference in the light most favorable to the nonmoving party, the court concludes

12  that no reasonable jury could find substantial similarity of both ideas and expression between the

13  works at issue. *Litchfield v. Spielberg, 736 F.2d 1352, 1356 (9th Cir.1984)*.  "Weighing evidence,

14  determining credibility, and drawing inferences from facts remain jury functions which may not be

15  undertaken by the trial judge." *See, Anderson v. Liberty Lobby, Inc. 477 U.S.. 242, 106 (1986)*.

16        Aside from the access and substantial similarity elements necessary for indirect

17  evidence of copyright infringement cited in *Section II.B, supra*, there is also an 'inverse ratio' rule

18  in the 9th Circuit where if the plaintiff establishes a high degree of access to the work, a lesser

19  showing of substantial similarity is required. *Three Boys Music Corp. v. Bolton, 212 F.3d 477, 486*

20  *(9th Cir. 2000)*.

21        All defendant freely admit access to McIntosh's work. *See, Opp. to Wasco's UMF*

22  *No. 50 (access)*. Mr. Wren, the director at the Deputy Director of Public Works, testified that Wasco

23  places no restrictions on who can access maps and plans; Wasco attached the 5472 Map to a

24  Developer Information Package it made available to prospective developer purchasers of the Valley

25  Rose subdivision; Wasco admits it gave McIntosh's plans to Dewalt;  DeWalt admits it had access

26  to the map and plans and even compared and used the prior map to prepare the new map.

27        Wasco argues they gave DeWalt the plans after the map was finally prepared but we

28  see no evidence of this and assumes when the 6451 Map was finally completed.  We know a survey

1    was done in 2004 but this would not preclude DeWalt from making sure at a later time that the 6451

2    Map conformed to the prior map and plans.  Finally, this avoids the fact that DeWalt, in its

3    admissions, has already conceded it used the 5472 Map to prepare the 6451 Map. *Travis Decl., ¶21,*

4    *Exhibit "W" (Supplemental Response to Request for Admissions Nos. 1, 4, and 6 wherein DeWalt*

5    *admits it requested information from the City of Wasco which may have included the 5472 Map, and*

6    *it used and saw Tentative Map No. 5472 in assisting in the preparation of Tentative Map No. 6451.*

7        Access has been clearly established to such a degree that there is a much lower

8    showing of proof needed for a showing of substantial similarity under *Three Boys*.

9        Finally, every party to this suit has admitted that the copyrighted works and the 6451

10   Maps are similar – even Wasco's own expert.  *See, Opp. to Wasco's UMF No. 50 (substantial*

11   *similarity)*. This includes Northern; Keith Woodcock, former planning director for the City when the

12   6451 Map was prepared; Stephen Wong; Jeff Gutierrez and Greg Black of DeWalt; and plaintiff's

13   expert James Delmarter.

14       Wasco does point to some differences in the work but misses the point.  If the

15   differences are inconsequential and not qualitative differences and the copied portion be a small

16   portion of the entire work, the trier of fact can still find substantial similarity. *Baxter v. MCA, Inc.*

17   *812 F.2d 421, 425 (9th Cir. 1987)*

18       Ironically, Wasco's own expert testified in plaintiff's favor when he pointed to many

19   inconsequential differences between the 6451 Map and the 5472 Map and plans that were non-

20   essential elements.  See, facts opposing UMF No. 88.  Mr. Wong testified that many of the elements

21   on the 6451 Map such as shading topography, lot dimensions, the legend, notes, and monument

22   markers were not necessary for approval.  *Opp. to Wasco's UMF No. 88 (Wong Dep. Testimony on*

23   *non-essential elements)*  What was necessary was the overall layout and that it conformed to the

24   improvement plans and the layout of the subdivision.

25       Wasco has not met its burden in showing that the two works are so dissimilar that no

26   reasonable jury could find otherwise.  Summary judgment should be denied.

27   / / /

28   / / /

**III.**

**CONCLUSION**

In the several cases identical the facts here, courts have decidedly weighed in favor of copyright holders.  In those cases, defendants, like Wasco attempted to get around the inherent rights given to copyright holders by arguing implied license.  Each time, courts refused to grant an implied license.  Further, Wasco controlled each stage of development and could have stopped it at any time.  They didn't because they had an interest in the outcome and profited from it.  The works had to be similar or else the newer map would not have been able to "identify the intent of what the map is supposed to create" to quote from Stephen Wong.  Any substantial changes and the developer and Wasco would have had to start all over again meaning more time and money, something neither wanted to spend.

DATED:   October 21, 2009

Respectfully submitted,

BORTON PETRINI, LLP

By: _____/s/ Jeffrey A. Travis_____
        Jeffrey A. Travis, Attorney for Plaintiff,
        Roger McIntosh dba McIntosh & Associates

**PROOF OF SERVICE**
**(FRCP No. 5(b)(2)(E))**

**STATE OF CALIFORNIA,  COUNTY OF KERN**

I, Vanessa J. Claridge, declare:

I am a citizen of the United States. I am employed in the County of Kern, State of California. I am over the age of 18 and not a party to the within action; my business address is 5060 California Avenue, Suite 700, Bakersfield, California 93309.

On **October 21, 2009**, I served the foregoing document described as **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** on the other party(ies) in this action as follows:

| | |
|---|---|
| Steven John Hassing, Esq. | Attorneys for Attorneys for Defendants, |
| Law Offices of Steven J. Hassing | Northern California Universal Enterprises |
| 425 Calabria Court | Company and Lotus Developments |
| Roseville, CA 95747 | Tel:    916/677-1776 |
| email address: **stevehassing@yahoo.com** | **Fax:   916/677-1770** |
| | |
| Chaka Okadigbo | Attorneys for Defendant, City of Wasco |
| **Garcia Calderon Ruiz, LLP** | |
| 500 South Grand Ave Suite 1100 | Tel: 213/347-0210 |
| Los Angeles, CA 90071 | **Fax: 213/347-0216** |
| email address: **cokadigbo@gcrlegal.com** | |
| | |
| William L. Alexander, Esq. | Attorneys for Defendant, DeWalt CM, Inc. |
| Alexander & Associates | |
| 1925 "G" Street | Tel: 661/316-7888 |
| Bakersfield, CA 93301 | **Fax: 661/316-7890** |
| email address: **walexander@alexander-law.com** | |

X   **BY ELECTRONIC SERVICE:**  Pursuant to Fed. R. Civ. P. 5(b)(2)(E) and Local Court Rule(s), the foregoing document will be served by the court via CM/ECF.  Pursuant to the CM/ECF docket for this case proceeding the following person(s) are on the Electronic Mail Notice List to receive ECF transmission at the email address(es) indicated below:

X   **BY MAIL:**   As follows:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at , California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on **October 21, 2009**, at Bakersfield, California.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

**Vanessa J. Claridge**                                   /s/ Vanessa J. Claridge