nr:st

1  James J. Braze, Esq.; SBN 75911
   Jeffrey A. Travis, Esq.; SBN 235507
2  BORTON PETRINI, LLP
   5060 California Avenue, Suite 700
3  Post Office Box 2026
   Bakersfield, CA 93303
4  Telephone (661) 322-3051
   email: jbraze@bortonpetrini.com
5  email: jtravis@bortonpetrini.com

6  Attorneys for Plaintiff, Roger McIntosh dba
   McIntosh & Associates

7

8              UNITED STATES DISTRICT COURT

9       EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

10

11  ROGER McINTOSH,                        Case No.  1:07-CV- 01080 LJO-GSA

12              Plaintiff,                  PLAINTIFF'S OPPOSITION TO
                                            DEFENDANTS NORTHERN
13  v.                                      CALIFORNIA UNIVERSAL
                                            ENTERPRISES COMPANY'S AND
14  NORTHERN CALIFORNIA UNIVERSAL           LOTUS DEVELOPMENTS'  MOTION
    ENTERPRISES COMPANY, a California       FOR SUMMARY JUDGMENT
15  corporation; LOTUS DEVELOPMENTS,
    LLP; THE CITY OF WASCO, a municipal
16  corporation; DEWALT CM, INC., a California   DATE: October 28, 2009
    corporation also doing business as DEWALT    TIME:  OFF CALENDAR
17  CORPORATION; and DOES 1 through 10,     DEPT.: 4
    inclusive                               TRIAL: Lawrence J. O'Neill

18
                Defendants.
19

20  CITY OF WASCO,

21              Cross-Complaint,

22       vs.

23  NORTHERN CALIFORNIA UNIVERSAL
    ENTERPRISES COMPANY, INC.,
24

25              Cross-Defendant.

26              COMES NOW  plaintiff Roger McIntosh dba McIntosh & Associates and submits

27

28

1   its Opposition to defendants' Motion for Summary Judgment, as follows:[1]

2   **I.**

3   **PLAINTIFF HAS PLEADED TWO CAUSES OF ACTION:  (1) COPYRIGHT
    INFRINGEMENT OF TECHNICAL DRAWINGS BY DEFENDANTS, AND
4   (2) CONTRIBUTORY COPYRIGHT INFRINGEMENT OF TECHNICAL DRAWINGS
    BY DEFENDANTS**

5

6           Plaintiff claims that defendants' infringed on plaintiff's copyrighted technical

7   drawings for Tentative Map 5472 (a proposed residential subdivision in the City of Wasco).  The

8   documents that have been copyrighted are attached as Exhibit "A" to plaintiff's third amended

9   complaint and consist of Tentative Tract Map 5472, technical drawings for said tract including wall

10  plans, sewer plans, painting design, construction plans, street and lot layouts.

11          Tentative Maps can by copyrighted (17 U.S.C. 102(a)(5); *Del Madera Properties v.*

12  *Rhodes& Gardner, Inc.*, 637 F.Supp. 262, 263(N.D. Cal. 1985); *John G. Danielson, Inc. v.*

13  *Winchester-Conant Properties, Inc.*, 186 F.Supp.2d 1, 18 (D. Mass. 2002).)  Additionally, "efforts

14  expended to create the Tentative Map and supporting documents is effort expended to create the

15  tangible works of authorship.  As such, this effort is within the scope of copyright protection." (*Del*

16  *Madera Properties v. Rhodes & Gardner, Inc.,* 820 F.2d 973, 976-977 (9th Cir. 1987).)  Therefore,

17  not just the Map, but also its corresponding Improvement Plans are also protected.

18          In order to prove copyright infringement, plaintiff must prove:  (1) That the plaintiff

19  is the owner of a valid copyright; and (2) the defendant copied original elements from the

20  copyrighted work. (*Feist Publications, Inc. v. Rural Telephone Service Company, Inc.*, 499 U.S.

21  340, 361 (1991).)

22          Attached to plaintiff's third amended complaint as Exhibit "A" is a copy of the

23  Certificate of Registration, issued by the Register of Copyrights of the United States of America,

24  dated February 22, 2007.  The Certificate number for that copyright is No. VAU-721-180.  A copy

25  of that Certificate is also attached to the Request for Judicial Notice filed with papers in support of

26  _____

27          [1]Rather than burden the Court with duplicative filings and exhibits, Plaintiff will refer to his
    own Separate Statement and declarations supporting his motion for partial summary judgment, the
28  declarations already on file, and deposition transcripts he has filed with the Court.

1   plaintiff's motion for partial summary judgment.  The Certificate constitutes prima facie evidence

2   of the validity of the copyright and facts stated in the Certificate.  (*Lamp Plus, Inc. v. Seattle Lighting*

3   *Fixture Company*, 345 F.3d 1140, 1144-1145 (9th Cir. 2003).)  Tentative Tract 5472 and all the

4   Improvement Plans for that tract were submitted to the copyright office to obtain the Certificate.

5   (See Deposition of Roger McIntosh, p. 281, lns. 8-15.)

6            Furthermore, Mr. McIntosh claims to have a copyright interest in Tentative Map

7   5472, as well as the Improvement Plans for that Map.  (Deposition of Roger McIntosh, p. 19, lns. 12-

8   15 and p. 35, lns. 16-19)

9            The second element of a copyright infringement cause of action is that the defendant

10  copied the original elements from a copyrighted work.  The plaintiff may show that the defendant

11  copied the work by showing by a preponderance of the evidence that the defendant had access to the

12  plaintiff's copyrighted work and that there are substantial similarities between the defendants' work

13  and the original elements of the plaintiff's work.  If a plaintiff shows that a defendant had access to

14  the plaintiff's work and that there is a substantial similarity between the infringed and infringing

15  work, a presumption of copying arises.  (*Three Boys Music Corp. v. Bolton*, 2112 F.3d, 477, 485-486

16  (9th Cir. 2000).)

17           McIntosh was told by the City of Wasco Public Works Director that the plans for

18  Tract Map 5472 were used for Tract 6451, a Map which was virtually identical to 5472.  (Deposition

19  of McIntosh, p. 105, ln. 21 through 106, ln. 9.)  Mr. McIntosh knew that Mr. Wu (a representative

20  of defendant Northern California Universal) or someone representing Mr. Wu was copying

21  Mr. McIntosh's Tentative Tract Map 5472.  Mr. McIntosh was able to figure this out in November

22  of 2006 by comparing Map 5472 with Map 6451 and he noticed they were largely the same.

23  (Deposition of McIntosh, p. 112, lns. 4-15.)  Additionally, in response to a public records request

24  made by Mr. McIntosh for the Plans for the new Tract Map, he obtained copies from the City of

25  Wasco.  By reviewing these, Mr. McIntosh could tell that they were his Plans for Tract 5472.

26  (Deposition of McIntosh, p. 118, lns. 10-22.)  Specifically, Mr. McIntosh asked for copies of the

27  Improvement Plans for Tract 6451.  The Plans Mr. McIntosh received from the City of Wasco for

28  Tract 6451 were in fact the Improvement Plans for Tract 5472. (Deposition of McIntosh, p. 121, ln.

1  20 through p. 122, ln. 17.)

2        Mr. McIntosh also claims contributory copyright infringement by the City of Wasco.

3  Mr. McIntosh testified in his deposition that the City of Wasco gave DeWalt the Tentative Tract and

4  Improvement Plans for Tract 5472 so that DeWalt could prepare the Tentative Tract and final Map

5  for Tract 6451.   (Deposition of McIntosh, p. 126, lns. 11-25.)   In addition, pursuant to

6  Mr. McIntosh's request for the Plans for the new Tract, he received a disk from the City of Wasco

7  marked "City of Wasco Scanned Documents, Tract 6451, formerly Tract 5472." (Deposition of

8  McIntosh, p. 127, lns. 16-22.)

9        Additionally, the As-built Plans for Tract 6451 were, in Mr. McIntosh's opinion, the

10  same as the Plans for 5472.  This was further confirmed when McIntosh spoke to a representative

11  from the City of Wasco who told him that his copy of Plans for 6451 were not good and asked if he

12  could have a copy of Mr. McIntosh's Plans (those for Tract 5472). (Deposition of McIntosh, p. 131,

13  lns. 2-14.)

14        As to the issue of substantial similarity, Mr. McIntosh testified that the Plans prepared

15  by DeWalt Corporation for Tentative Tract 6451 were substantially similar to those prepared by

16  McIntosh for Tract 5472.  Substantial similarity between the tracts was further evidenced by the

17  number of lots, numbering system from the tracts, a note on Tract Map 6451 that refers to Tract Map

18  5472, existing centerline monuments, and existing front lot corner tags.  All these show that DeWalt

19  copied McIntosh's original Tentative Map.  (Deposition of McIntosh, p. 204 through p. 206.)

20        Further evidence that Tract 5472 was copied to produce Tract 6451 was the fact that

21  defendant Northern California Universal Enterprises provided copies of McIntosh's Plans to the

22  contractors who in turn called McIntosh with questions they had in order to complete the

23  Improvements.  McIntosh was also told by an employee of the City of Wasco that Wasco utilized

24  Tracts 5472 Improvement Plans for Tract 6451. (Deposition of McIntosh, p. 263, lns. 17-25 through

25  p. 264, ln. 3.)  McIntosh contends that Northern California Universal Enterprises finished the

26  subdivision based on McIntosh's Improvement Plans.  (Deposition of McIntosh, p. 265, lns. 9-13.)

27  McIntosh also believes that the construction of the Improvements for the subdivision conformed to

28  the specifications in McIntosh's original Improvement Plans.  (Deposition of McIntosh, p. 278,

1  ln. 25 through p. 279, ln. 7.)

2  **II.**

3  **THE UNDISPUTED FACTS CLEARLY DEMONSTRATE THAT DEFENDANTS
4  WERE NOT GRANTED AN IMPLIED LICENSE FOR THE MAP AND PLANS FOR
   TRACT 5472**

5  **A.      There Are No Facts to Suggest That McIntosh Gave an Implied License for Northern
           to Use  His Maps and Plans**

6
7           A copyright owner has the exclusive rights to reproduce the work, prepare derivative

8  works, and distribute copies. *17 U.S.C. §106*; *John G. Danielson, Inc. v. Winchester-Conant*

9  *Properties, Inc.*, 186 F.Supp.2d 1, 18 (D. Mass. 2002). The Copyright Act also invalidates a

10 purported transfer of ownership unless it is in writing. (17 U.S.C. 204(a).)  The narrow exception

11 to this is that of a nonexclusive, implied license.  *Effects Assoc. Inc. v. Cohen*, 908 F.2d 555, 558-

12 559 (9th Cir. 1990). The burden of proving an implied license is on the party claiming its protection.

13 *See*, *Danielson*, *supra, citing Bourne v. Walt Disney Co.*, 68 F.3d 621, 631 (2nd Cir. 1995).

14          If a copyright owner never intends for the alleged licensee to copy and distribute its

15 work, there is no implied license.  *Effects Assoc. Inc. v. Cohen*, 908 F.2d 555, 558-559 (9th Cir.

16 1990); *3 Melville B. Nimmer & David B. Nimmer*, *Nimmer on Copyright*, §10.03[A][7](2001); *John*

17 *G. Danielson, Inc. v. Winchester-Conant Properties, Inc.*, 186 F.Supp.2d 1, 18 (D. Mass. 2002).  As

18 the Court in *Danielson* explained, whether an implied license has been granted is determined by

19 looking at the intent of the parties. *Danielson*, at 18.

20          Joe Wu called McIntosh before he purchased the subdivision to ask about McIntosh

21 preparing the new tentative map. *UMF No. 34*.  McIntosh said that he wanted to get paid for the

22 work and Joe Wu never called him back. *Id.; and McIntosh Dep.181:25; 182-183; 184:1-19; and*

23 *Dep. of Joe Wu, Vol. 1, 33:5-25; 34:1-4*.  Joe Wu also had his office call again for use of the

24 improvement plans and, again, McIntosh's office refused because they had not been paid. *Dep. of*

25 *Joe Wu, Vol. 1, 40:14-25, 41:1-10*.  From the beginning, and before infringement occurred, McIntosh

26 demonstrated a very clear intent to reserve his right to his works.

27          Also, the contract between plaintiff and the Legacy Group specifically stated that the

28 works produced by plaintiff would only be used by the Legacy Group and in conjunction with the

1    specific project identified by that contract.  *See Statements 12 and 13 of Plaintiff's Statement of*

2    *Undisputed Material Facts in Support of Plaintiff's Motion for Partial Summary Judgment.*  The

3    work prepared by plaintiff was only for the Legacy Group's use and could not be used by any other

4    party or on any other project without the written authorization of McIntosh.   At no time were

5    Northern, Wasco or DeWalt given authority by plaintiff to use his work. (*See Plaintiff's Statement*

6    *of Undisputed Material Facts accompanying its Motion for Partial Summary Judgment Nos. 7-12.*)

7            The *Danielson* case, *supra,* is particularly of note here.   In *Danielson*, the court held

8    that the plans submitted to a Planning Board did not grant an implied license to the town.   First, the

9    original contract for services was between the copyright holder and an original developer, not the

10   municipality.   Second, the copyright holder retained control over the rights to the work under the

11   contract.   Third, the municipality never obtained the plans directly from a copyright holder but

12   indirectly through foreclosure of properties.  *Danielson, supra, at 18.*  The *Danielson* court followed

13   the rationale of the Northern District of California in *Del Madera*, *I and II, infra*, holding that just

14   because a copyright holder submits its work to a city for approval does not mean it is creating an

15   implied license.   As the court *Danielson* explained, it was not the map that was adopted by the city

16   but the conditions that required construction and conformity with the plans.  *Danielson, at 21.*  The

17   Danielson Court weighed the competing interests at stake, the copyright holder and the right of the

18   public to use the plans, and found the rights of the copyright holder outweighed. *Id., at 22.*

19           As in the *Danielson* case, the original contract here was between MM and the Legacy

20   Group and no one else.   Despite what Northern argues, McIntosh never entered into an agreement

21   with anyone other than Legacy Group.   The contract between McIntosh and Legacy  was a standard

22   form contract from the California Council of Civil Engineers and Land Surveyors which limited the

23   right of the client to the use of works.   Other than this contract, there is no writing that gave anyone

24   else the right to the copyrighted works.

25           To paraphrase *Danielson*, "at no point did [McIntosh's] conduct (or lack of conduct)

26   demonstrate a willingness to allow use of the drawings without [McIntosh's] permission.   In fact,

27   the only parties with whom [McIntosh] was in privity [Legacy Group] was expressly forbidden to

28   do so." *Danielson, supra*, p. 20. McIntosh's Statement of Undisputed Material Facts in Support of

1  Plaintiff's Motion for Partial Summary Judgment (*Nos. 1, 2, and 17-16*) all support the proposition

2  that there is no implied license to use the Plans.

3        Defendants spend a great deal of time discussing the case of *Foad Consulting Corp.*

4  *Group v. Azzalino*, 270 F.3d 821 (9th Cir. 2001).  That case stands for the proposition that an implied

5  non-exclusive copyright license can be granted if the facts support it.  Whether an implied license

6  is granted is solely determined by the intent of the parties.  *Id.*

7        The facts of *Foad* are distinguishable.  In *Foad*, the original developer hired *Foad* to

8  create a concept development plan for a shopping center as well as engineering drawings for the

9  project.  After it obtained the city's approval, the original developer transferred its rights to develop

10  the project to another developer, hired a different architectural and engineering services firm creating

11  the final site plan, and the new firm copied much of *Foad's* plan.  The original developer paid Foad

12  according to the contract.

13        Concerned that its copyright was being infringed, *Foad* sent a letter of admonition

14  to the new architectural firm informing them that *Foad's* plan was copyrighted.  *Foad* subsequently

15  filed a complaint in federal district court for copyright infringement, The court there ended up

16  granting the defendant's motion for summary judgment based on evidence that the contract contained

17  no language indicating the intent of the parties on the rights to the work and using parol evidence

18  to find an implied license.

19        Such is not the case here.  The specific contractual provisions referenced above in the

20  original contract between MM and Legacy make it very clear that the work created by MM is only

21  to be used only by Legacy, only for the project specified in the contract, and only in the event Legacy

22  is not in default.  Unlike Foad, there is clear intent to preclude use.  In *Foad*, the original developer

23  transferred his rights, something which was not allowed by the contract between MM. *See, Clause*

24  *9.* In *Foad* the contract was so unclear as to intent it forced the Court to examine parol evidence to

25  determine the intent of the parties.  However, the interpretation suggest by Northern contradicts the

26  express terms of the contract between MM and Legacy which states in Clause 3 that, "any prior

27  agreements, promises, negotiations, or representations not expressly set forth in this agreement are

28  of no force and effect."

1    Defendants cite two other cases, *I.A.E., Inc. v. Shaver*, 74 F.3d 768 (7th Cir. 1996)

2   and *Effects Associates, Inc. v. Cohen,* 908 F.2d 555 (9th Cir. 1990).  The support of their proposition

3   was that they were granted an implied license.  These two cases, as with the *Foad* case, do not deal

4   with improvement plans or tract maps.   In the case at bar, the Tentative Tract Map and the

5   development agreement between Legacy and Wasco, for which McIntosh prepared his map and

6   plans, expired in 2001.  Defendants have cited no cases that stand for the proposition that a future

7   developer is granted an implied license in a Tentative Tract Map and Improvement Plans which have

8   expired.

9   **B.      There Are No Facts to Suggest That McIntosh Gave an Implied License for Wasco to**

10  **Use  His Maps and Plans**

11    Northern also relies on an argument that there was an implied license with the City

12  of Wasco.  In support of their proposition defendants cite their own Statement of Undisputed Fact

13  No. 22 which refers to the Acquisition Agreement. *Exh. "F" to Michael Brown's Declaration*. The

14  Acquisition Agreement was an agreement between the City of Wasco and the Legacy Group.

15  Neither MM nor McIntosh was a party to that agreement.  Further, Undisputed Statement No. 22 is

16  inaccurate in that no where in the agreement does it state that the City of Wasco agreed to purchase

17  MM's plans and specifications.  The Acquisition Agreement only provides for Wasco to acquire

18  constructed improvements and nowhere refers to the purchase of MM or McIntosh's  Plans.

19    Instead, Northern argues that the Acquisition Agreement authorized Wasco to

20  complete improvements on Valley Rose "by necessity and implication" and McIntosh must have

21  intended for Wasco to have ultimate ownership of his works. *Memorandum*, Page 13, Lines 12-15.

22    To support this argument, Northern relies exclusively on its interpretation of the

23  Acquisition Agreement.  *UMF No. 22*. Yet, as stated above, MM was never a party to that contract

24  but was only referred to in the contract as Legacy's Consultant who would assist them in the

25  engineering on the site.  Further, MM sent all invoices for its consulting work to Legacy who, in turn

26  submitted them to Wasco on account of MM, and wherein Wasco would pay MM from money it

27  received from bond notes. *See, Declaration of Roger McIntosh In Opposition to Wasco and*

28  *Northern's Motion for Summary Judgment, ¶6, Exhibit "A"*.

1    The argument that an implied agreement was created between MM and Wasco for
2    unspecified works is also contrary to the provisions of Government Code § 40602 which provides
3    that:

> The mayor shall sign:
> (b) All written contracts and conveyances made or entered into by the city.
> (c) All instruments requiring the city seal. The legislative body may provide
> by ordinance that the instruments described in (a), (b) and (c) be signed by an officer
> other than the
> mayor.

8    This means that a contract is enforceable <u>only</u> if the contract is in writing,
9    approved by the city council, and signed by the mayor or by another city officer designated by the
10   city council in an ordinance. *(Authority for California Cities Excess Liability v. City of Los Altos*
11   (App. 6 Dist. 2006) 39 Cal.Rptr.3d 571, 136 Cal.App.4th 1207)  This Government Code provision
12   ensures that any agreement between the City and any other entity or person is in writing to ensure
13   that decisions that affect the City are not made in haste or for other purposes subversive to the city.
14   See, *City of Orange v. San Diego County Employees Retirement Assn*. (App. 2 Dist. 2002) 126
15   Cal.Rptr.2d 405, 103 Cal.App.4th 45

16   The City of Wasco is well aware of the above statute that precludes this type of
17   arrangement.  They know because they used it to <u>avoid</u> an oral agreement by their City Manager
18   around 1993 wherein he agreed to pay for engineering services provided by McIntosh or Valley
19   Rose. *See, McIntosh Decl. in Opposition to Wasco and Northern's Motions for Summary Judgment*,
20   *¶8.* In fact, Wasco wrote an extensive trial brief on how they were not obligated to pay for
21   McIntosh's services based on the verbal promise by its city manager. Northern (and Wasco) now
22   argue there was an agreement - by implication.  However, this is directly contrary to what Wasco
23   argued in the trial brief in its civil suit to avoid such an oral agreement. *Id.,Exhibit "B".*

24   Beyond that, the Acquisition Agreement between Wasco and Legacy Group does
25   not say what Northern wants it to say.  It only says that Wasco could complete building the
26   improvements in the subdivision but it never gives them the rights to the copyrighted works.

27   The conversations between McIntosh and Northern before they began work on
28   the new map, the contract between MM and Legacy, and the fact that Wasco could not have entered

1   into an implied agreement with MM contains sufficient factual details necessary to defeat a motion

2   for summary judgment.  Even more, all these facts demonstrate a clear intent by plaintiff that he

3   never intended for the works to be used by defendants. Therefore, plaintiff would ask this Court to

4   deny this motion and rule in favor of its motion and grant summary judgment in his favor on the

5   affirmative defense of implied license.

6                                         **III.**

7              **MAP 6451 WAS NOT AN INDEPENDENT CREATION**

8   **A.      The Facts Show That Defendants Had Sufficient Access to the Copyrighted Works
            To Defeat Summary Judgment For Defendants and Allow Adjudication for Plaintiff**

9   **on Independent Creation**

10                  To prove copying under the Copyright Act, a plaintiff must offer either direct or

11   indirect evidence.  As most every court explains when analyzing possible copyright infringement,

12   direct evidence is rarely if ever found. *Baxter v. MCA Inc.*, 812 F.2d 421, 423 Therefore, courts will

13   almost always apply a test for indirect infringement.  *Lanard Toys Limited v. Novelty, Inc.,* 511

14   F.Supp.2d 1020, (C.D. Ca 2007); See Also, *Kamar Int'l. v. Russ Berrie and Co.,* (9th Cir. 1982) 657

15   F.2d 1059, 1962. As stated, indirect infringement is shown by demonstrating that the defendant 1)

16   had access to the copyrighted work and that the defendant's work is 2) "substantially similar" to the

17   plaintiff's work.  (*Id.*)

18                  Proof of access requires only an, "opportunity to view or to copy plaintiff's

19   work." *Kamar International Inc. v. Russ Berrie & Co,* 657 F.2d 1059, 1062 (9th Cir. 1981), citing,

20   *Sid & Marty Krofft Television v. McDonald's Corp.*, 562 F.2d 1157, 1162 (9th Cir. 1977) (underline

21   added). Assuming that plaintiff has proven access and substantial similarity, the burden would then

22   shift to the defendant to prove the work was not copied but independently created.  *Transgo, Inc. v.*

23   *Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1018-1019 (9th Cir. 1985).

24                  Every defendant has admitted they had an opportunity to view the copyrighted

25   work during the infringing period:  Wasco used a copy of the 5472 Tentative map to market the

26   Valley Rose subdivision to potential developers and attached it to a "Developer Information

27   Package"; Wasco also admitted that it freely gives out works of this type if asked; Wasco gave the

28   5472 improvement plans to DeWalt early in 2005 in emails from Dennis McNamara to Greg Black

1  of DeWalt with copies of the 5472 map and improvement plans attached;  DeWalt's principal, Jeff

2  Gutierrez, admitted his office compared the 5472 Map with the 6451 Map while preparing the new

3  6451 Map; DeWalt's employee at the time, Sarah Burgi, admitted that while overseeing Josh

4  Woodard, who she claims actually drew the map under her supervision, he had asked to see the

5  improvement plans while preparing the 6451 Map;[2] Northern admitted it had asked for and received

6  copies of the improvement plans from the City of Wasco.; and finally, DeWalt admitted that it used

7  Tentative Map No. 5472 to assist it in preparing Tentative Map No. 6451. *See, Opposition to*

8  *Northern's UMF No. 70 and supporting evidence.* (This latter admission is also direct evidence of

9  copyright infringement)

10            Northern argues through declarations of DeWalt and City employees that they did

11  not need to look at the previous map and plans and only relied on the survey performed by DeWalt

12  to create the 6451 Map.  Northern argues that rather than referring to the previous works DeWalt

13  went out to the site and obtained all the necessary information. *Memorandum*, page 18. Essentially,

14  Northern is pointing to the fact that there is no direct evidence of copyright infringement to make

15  the case for its motion.  Yet, this exhibits a fundamental misunderstanding of how infringement is

16  proven.  It is an oft-repeated mantra in copyright cases that there is almost always no evidence of

17  direct infringement so courts apply the standard for indirect infringement. *See, Baxter, supra, at 423*.

18  Under Northern's interpretation of copyright law, defendants would only have to file declarations

19  saying they did not "copy" and the case would resolve in their favor.

20            Plaintiff has presented this Court with overwhelming evidence of access and even

21  direct evidence sufficient to defeat summary judgment without going any further.

22  **B.    The Two Maps Show Enough Similarity that Summary Judgment On The Issue of
         Substantial Similarity Is Inappropriate**

23

24            As stated above, a plaintiff can prove infringement by showing indirect evidence

25  (circumstantial evidence) of copyright infringement. *See, Baxter, supra, at 423*. Courts in this Circuit

26  also apply an "inverse ratio" rule where a lesser showing of substantial similarity is required where

27

28  _____

            [2]Josh Woodard was deposed on September 11, 2009, but claims he does not remember
    anything about his preparation of the 6451 Map.

H:\PUBLIC\054493\060971
McIntosh v.
Northern\Pleadings\P'S&A'S
IN OPP DFS MOJ (2).wpd

PL'S OPP TO DEFENDANTS NORTHERN'S AND LOTUS DEVELOPMENTS' MOTION FOR SUMMARY JUDGMENT

1    greater access to the works by the defendants is shown. *Thee Boys Music*, *212 F.3d at 486*. Beyond

2    that, even if access cannot be proven, plaintiffs can still prove infringement if the works have a

3    "striking similarity." *Baxter, at 423*.

4                Every party admits that the overall layout of the two maps are similar.  Greg

5    Black, former employee of DeWalt and the one in charge of the project at the time admitted this fact

6    *Dep. of Greg Black, 27:4-25; 28:1-18*; Northern admitted this fact, (*Northern's and Lotus'*

7    *Responses to Request for Admission No. 7, Set No. One attached to Travis Decl. in Support of*

8    *Plaintiff's Motion for Partial Summary Judgment, Exhibit L and M*); Keith Woodcock, former

9    planning director for the City of Wasco admitted this fact; *Dep. of Keith Woodcock, 19:18-25; 20:1-*

10   *10.* and so did Wasco's expert, Stephen Wong. *Dep. of Stephen Wong, 78:6-14*.

11               Further the 6451 Map had to be similar to plaintiff's original map because it had

12   to conform to the prior improvement plans.  *See, Dep. of Greg Black, 30:20-25; 31:1-8; Deposition*

13   *of Gerald Helt., fmr. City Engineer, 11:17-25; 12:1-5, 10-18; and Deposition of Sarah Burgi, 12:8-*

14   *12; 13:1-22.*

15               Northern points to over 200 "differences" to show the two maps are not

16   substantially similar.  This misses the point for several reasons.  First, this is attorney argument that

17   the differences make the two maps not substantially similar which is an issue for the trier of fact.

18   Second, many of these are minor differences in surveys which are off by seconds.  Further Northern

19   points to differences that are non-essential components of the copyrighted works.  Wasco's expert,

20   Stephen Wong, explained this quite well.

21               After extensive cross-examination Mr. Wong conceded that many of the

22   "differences" Northern points to between Maps 5472 and 6451 were not significant. *See, Deposition*

23   *of Stephen Wong, 80:13-16 (legends are not necessary for approval); 82:8-15 (notes are not*

24   *necessary for approval); 86:21-25; 87:1-11(monuments are not necessary for approval); 87:12-14*

25   *(shading is not necessary for approval); 87:17-19 (topography is not necessary for approval);*

26   *87:20-25; 88:1-5 (lot areas not necessary).* The layout, street design, street names, boundaries, lot

27   configuration were all that was needed for Northern to get approval and this is what McIntosh will

28   argue makes the two maps substantially similar.

1   Because there was such a high degree of access to the works by defendant, the

2   standard for substantial similarity is lessened.  The essential components needed for approval were

3   identical on both maps and every party admits this.  This is more than is needed to defeat summary

4   judgment.

5

6   **IV.**

7   **BECAUSE THE SUBDIVISION COULD HAVE BEEN REDESIGNED, DEFENDANTS'**
    **ARGUMENT WITH REGARD TO MERGER IS INAPPLICABLE**

8

9   In general, the merger doctrine will not protect a <u>copyrighted work</u> from

10  infringement if the idea can be expressed in only one way, unless there be a monopoly on the

11  underlying idea.  *See, CDN, Inc. v. Kapes, 197 F.3d 1256, 1261 (9th Cir. 1999)*.  The fact that a

12  governmental entity adopts a particular design scheme for the potential development of property does

13  not cause that scheme to merge with the unprotected idea of developing the property in the form of

14  a Tentative Map.  *John G. Danielson, Inc. v. Winchester-Conant Properties, Inc., 186 F.Supp.2d 1,*

15  *24 (D. Mass. 2002; Del Madera Properties v. Rhodes and Gardner, Inc., 637 F.Supp. 262, 263 (N.D.*

16  *Cal. 1985); ("Del Madera I"); and  (Del Madera Properties v. Rhodes and Gardner, Inc., 820 F.2d*

17  *973, 976-977 (9th Cir. 1987) rev'd on other grounds.)  ("Del Madera II")*.

18  Northern cites to no facts in support of its argument on this point. Instead it

19  opines on numerous cases which are inapplicable to the facts of this case and ignores the cases cited

20  above.  Northern's basic argument is that because the improvement were already in the ground, and

21  the previous conditions of those improvements were already set in place by Wasco, DeWalt could

22  have drawn no other map because they had to draw what was there.  Again, this misses the point.

23  Merger is only applicable when there is no other way of expressing an idea. *See,*

24  *Kern River Gas Transmission Co. v. Coastal Corp. 899 F.2d 1458 (5th Cir. 1990)*. Yet, there were

25  an infinite number of ways to express a tentative map for the area occupied by the subdivision

26  occupied by Valley Rose Estates.

27  Defendants could have redesigned the subdivision if they had wanted. *See,*

28  *Plaintiff's   Sep.  Stmnt.  No.24 in Support of his Motion for Partial Summary Judgment*.  This

1 admission comes from plaintiff and his expert, numerous Wasco employees and Wasco's expert,

2 Stephen Wong. *Id.* In fact, the only impediment to redesigning the subdivision was that it would be

3 impractical because of the money involved in doing so. *See, Id.*, *Defendant's Expert, Deposition of*

4 *Stephen Wong*, 50:9-25;51; 52:1-20; 54:8-25; 55; 56:1-5. The fact that the Valley Rose Subdivision

5 already had most of the improvements in the ground is not what prevented the defendants from

6 redesigning the subdivision, money did.

7        The City of Wasco's former managers admitted they really wanted Northern to

8 redesign the subdivision into something more "upscale." *See, Id., Sep. Stmnt. No. 24, Depositions*

9 *of Alan Peake, Larry Pennell, and Keith Woodcock.* As Wasco's expert aptly stated, the design

10 possibilities of the Valley Rose subdivision were "almost infinite." *Wong Dep.*, *52:1-20*. But, and

11 as he went on to testify, it would be impractical because, "tearing out improvements and actually

12 having to reinstall them costs money." *Wong Dep.*, *54:21-25; 55:1.* This was something the

13 defendants avoided by using McIntosh's previous map and plans.

14        In *Del Madera I*, the defendants complained they had no choice but to develop

15 the subdivision according to the previous map because the conditions for approval were already

16 made by the city and they had already developed the property in accordance with the Tentative Map.

17 *See*, *Del Madera I*, *at 265, and Del Madera II at 975*. The Court rejected these complaints and

18 responded that their choices were simple, they could have either submitted modifications to the map

19 or, they could have paid the plaintiff and developed according to the map. *Del Madera I*, *at 265.*

20 Like the defendants in the *Del Madera* cases, the defendants here did neither.

21        Therefore, summary adjudication should be denied to defendants on this issue and

22 should be granted in favor of plaintiff on this defense.

23                                **V.**

24 **NORTHERN KNEW ABOUT MCINTOSH'S CLAIMS BUT IGNORED THEM, WENT**
**AHEAD AND INFRINGED WITHOUT TELLING MCINTOSH, MAKING LACHES**
25 **INAPPLICABLE**

26        Laches is an equitable time limitation on a party's right to bring suit. To obtain

27 a judgment on this affirmative defense, a defendant must prove both: (1) An unreasonable delay by

28

H:\PUBLIC\054493\060971
McIntosh v.
Northern\Pleadings\PS&A'S
IN OPP DFS MOJ (2).wpd

1  the plaintiff and, (2) prejudice to itself.  (*Couveau v. American Airlines*, 218 F.3d 1078, 1083  (9th

2  Cir. 2002).)

3                    Since the facts presented here as to laches also directly attack the estoppel,

4  unclean hands, and misuse defenses ( When McIntosh knew of the infringing activity) this section

5  will address these similar issues simultaneously with laches.

6                    At his deposition, McIntosh testified that he was unaware of any infringing

7  activity until late 2006 when he received notice from the City of Wasco that a map had been

8  prepared for the subdivision. *See, Sep. Stmnt. No. 29 attached to Plaintiff's Separate Statement in*

9  *Support of his Motion for Partial Summary Judgment*  The notice did not say what the map

10 contained so he drove by the Valley Rose subdivision sometime around November of 2006 and saw

11 homes being erected and that the subdivision  had not been altered or redesigned. *Id*. From these

12 observations he concluded the defendants were probably using his map and plans or else the

13 developer would have had to have redesigned the subdivision.  *Id*.  He then went to the City of

14 Wasco's planning department and spoke with a person at the counter who told him that there were

15 no improvement plans for Tract No. 6451 because they were using the improvement plans for Tract

16 No. 5472. (McIntosh's plans) *Id., Sep. Stmnt. No. 29*. It was at this point that he realized his works

17 had been infringed.

18                   McIntosh sought counsel in December of 2006, filed his copyright in February

19 of 2007, and brought his suit in July of 2007 after waiting for the work to be registered.

20                   There was no prejudice brought about by plaintiff's actions since Wasco had

21 already approved the subdivision by Northern and DeWalt had already prepared the map. *Id., Sep.*

22 *Stmnt. Nos. 30-32*  Further, the homes were already built or in the process of being built with most

23 of the homes completed in 2007. *Id., Sep. Stmnt. No, 32, (Kern County records showing Northern's*

24 *certification that homes were completed in 2007*).  In fact, Northern admits in its memorandum that

25 the first twelve homes were already being built in 2007.  Since the process for starting the homes had

26 already begun and were completed shortly after McIntosh filing the complaint, there was no

27 prejudice to defendants because of plaintiff's actions since the work in completing the subdivision

28 was mostly done before McIntosh was aware of the infringement in late 2006.

1          Northern's righteous indignation as to laches in its memorandum is misplaced.

2   Northern admits it knew of McIntosh's desire to be paid because its principal, Joe Wu, called

3   McIntosh on this very point before they purchased the subdivision. (*See, UMF No. 34*) Northern

4   never called McIntosh back as they had discussed, never bothered to tell McIntosh they were going

5   ahead with preparing a similar map and now, wants to place the burden on McIntosh for discovering

6   something only Northern, DeWalt, and Wasco knew was happening.  Northern would have this

7   Court reward an alleged infringer for covertly infringing because he did not want to pay a copyright

8   holder.  Northern then cries, "foul" when the infringement was discovered much later.

9          At the time Wu called him, McIntosh had no reason to believe that Wu would go

10  ahead and infringe.  Northern cites to Learned Hand's famous quote about a copyright holder

11  sleeping on their rights but, as courts have explained, this was before there was a federal statute of

12  limitations which was enacted in 1957 thereby presenting different questions today.  *See, Peter*

13  *Letterese And Associates, Inc. v. World Institute Of Scientology Enterp. Int'l., 533 F.3d 1287, 1320,*

14  *(11th Cir. 2008).* In fact, there is a split among the circuits between precluding laches as a defense

15  entirely and allowing it only in the most "extraordinary" cases because of the statute of limitations.

16  *Id*.  Even where the circuits where laches is allowed, it is a bar to certain recovery, not relief. *Id*.

17  Further, under the federal copyright statute of limitations defense which has virtually replaced laches

18  as a defense, there is no duty of a copyright holder to inquire into possible future wrongdoing.

19  *William A. Graham Co. v. Haughey, 568 F.3d 425 (3rd Cir. 2009).*

20         McIntosh acted quickly to file a complaint within months of discovering the

21  infringement and filed suit shortly thereafter. It was Northern's own greed and unwillingness to

22  negotiate a fair price for the works that caused Northern to spend so much money and time on

23  development and it cannot blame anyone but itself.

24                          **VI.**

25                   **CONCLUSION**

26         Defendants must show that there is no triable issue as to any material fact.  (Fed.

27  Rules Civ. Proc., § 56(c).)

28

1    As can be seen from these points and authorities as well as plaintiff's opposition

2  to defendants Northern California Enterprise's and Lotus Developments' Statement of Undisputed

3  Material Facts submitted concurrently herewith, defendants have failed to meet their burden under

4  Rule 56 because there are triable issues of fact with regard to each of the above-referenced elements

5  concerning copyright infringement.

6    First, all evidence indicates an intent by McIntosh to retain rights to his work

7  from when he signed the contract in 1992 up to when Joe Wu twice called him to prepare and use

8  his work. Both times, McIntosh refused. Northern cannot also rely on an implied license that was

9  given to Wasco because, by law, that could not have occurred under the Government Code and

10 Wasco's own arguments to avoid such an agreement ten years ago.

11    Second, independent creation cannot be supported by any facts because the

12 defendant cannot rebut the presumption of access and even direct evidence their Consultant, DeWalt,

13 used the copyrighted map to prepare the new map for them.

14    Third, substantial similarity is a question for the trier of fact and not appropriate

15 for summary judgment. This is supported by every party to the case testifying under oath that the

16 works are similar, especially in the layout. Further, because of the high degree of access, a lesser

17 standard of similarity is required.

18    Fourth, merger is only appropriate when the alleged infringer would have no other

19 choice to create the work other than identical to the copyrighted work because the idea and the

20 expression merged. Yet, on identical facts, courts have explained that Northern did have a choice,

21 it could have redesigned the subdivision but didn't because of money. This is not merger under the

22 law. Every party admitted the subdivision could have been modified.

23    Fifth, laches is inapplicable in that it is either rejected entirely as a defense or only

24 in the most extraordinary cases. McIntosh never knew infringement had occurred until late in 2006

25 and it was not his duty to inquire about potential infringement as Northern suggests. Laches should

26 be precluded entirely.

27

28

1        Based on all of the above, plaintiff respectfully requests that defendants Northern

2   California Universal Enterprise's and Lotus Developments' Motion for Summary Judgment be

3   denied.

4   DATED:   October 21, 2009

5                                          Respectfully submitted,

6                                          BORTON PETRINI, LLP

7

8                                          By:    /s/ Jeffrey A. Travis

9                                               Jeffrey A. Travis, Attorney for Plaintiff,
                                                Roger McIntosh dba McIntosh & Associates
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**PROOF OF SERVICE**
**(FRCP No. 5(b)(2)(E))**

2

**STATE OF CALIFORNIA,  COUNTY OF KERN**
3
I, Vanessa J. Claridge, declare:

4
I am a citizen of the United States. I am employed in the County of Kern, State of California. I am over the age of 18 and not a party to the within action; my business address is 5060 California Avenue, Suite 700, Bakersfield, California 93309.
5

6
On **October 21, 2009**, I served the foregoing document described as **PLAINTIFF'S POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS NORTHERN CALIFORNIA UNIVERSAL ENTERPRISES COMPANY'S AND LOTUS DEVELOPMENTS' MOTION FOR SUMMARY JUDGMENT** on the other party(ies) in this action as follows:
7

8

9
Steven John Hassing, Esq.       Attorneys for Attorneys for Defendants,
 Law Offices of Steven J. Hassing    Northern California Universal Enterprises
10
425 Calabria Court              Company and Lotus Developments
Roseville, CA 95747             Tel:    916/677-1776
11
email address: **stevehassing@yahoo.com**    **Fax:   916/677-1770**

12
Chaka Okadigbo                Attorneys for Defendant, City of Wasco
**Garcia Calderon Ruiz, LLP**
13
500 South Grand Ave Suite 1100      Tel: 213/347-0210
Los Angeles, CA 90071          **Fax: 213-347-0216**
14
email address: **cokadigbo@gcrlegal.com**

15
William L. Alexander, Esq.        Attorneys for Defendant, DeWalt CM, Inc.
Alexander & Associates
16
1925 "G" Street                 Tel: 661/316-7888
Bakersfield, CA 93301          **Fax: 661/316-7890**
17
email address: **walexander@alexander-law.com**

18
X    **BY ELECTRONIC SERVICE:**  Pursuant to Fed. R. Civ. P. 5(b)(2)(E) and Local Court
19
Rule(s), the foregoing document will be served by the court via CM/ECF.  Pursuant to the CM/ECF docket for this case proceeding the following person(s) are on the Electronic Mail Notice List to receive ECF transmission at the email address(es) indicated below:
20

21
X    **BY MAIL:**   As follows:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at , California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.
22
23

24
Executed on **October 21, 2009**, at Bakersfield, California.

25
I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.
26

27
_____Vanessa J. Claridge_____       _____/s/ Vanessa J. Claridge_____

28