RMS:st

James J. Braze, Esq.; SBN 75911
Jeffrey A. Travis, Esq.; SBN 235507
BORTON PETRINI, LLP
5060 California Avenue, Suite 700
Post Office Box 2026
Bakersfield, CA 93303
Telephone (661) 322-3051
email: jbraze@bortonpetrini.com
email: jtravis@bortonpetrini.com

Attorneys for Plaintiff, Roger McIntosh dba McIntosh & Associates

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| ROGER McINTOSH,<br><br>Plaintiff,<br><br>v.<br><br>NORTHERN CALIFORNIA UNIVERSAL ENTERPRISES COMPANY, a California corporation; LOTUS DEVELOPMENTS, LLP; THE CITY OF WASCO, a municipal corporation; DEWALT CM, INC., a California corporation also doing business as DEWALT CORPORATION; and DOES 1 through 10, inclusive<br><br>Defendants. | Case No.  1:07-CV- 01080 LJO-GSA<br><br>PLAINTIFF'S OPPOSITION TO DEFENDANTS NORTHERN CALIFORNIA UNIVERSAL ENTERPRISE'S AND LOTUS DEVELOPMENT'S STATEMENT OF UNDISPUTED MATERIAL FACTS<br><br>DATE:  October 28, 2009<br>TIME:  OFF CALENDAR<br>DEPT:  4<br>JUDGE: Lawrence J. O'Neill |

| ALLEGED UNDISPUTED MATERIAL FACTS | ALLEGED SUPPORTING EVIDENCE | DISPUTED OR UNDISPUTED | SUPPORTING EVIDENCE FOR DISPUTED FACTS |
|---|---|---|---|
| 1.  In around January of 1992, John Hendrikson, then Wasco City Manager, encouraged Legacy to purchase approximately 480 acres adjacent to the Wasco Valley Rose Golf Course and | 1.  Para 3, Michael Brown Declaration. | Undisputed | |

| | | | |
|---|---|---|---|
| develop the property utilizing City financing. | | | |
| 2.  In early 1992, Legacy, Martin-McIntosh and The City of Wasco joined together in a loose association for the purpose of providing direction and to clarify expectations of those parties regarding development of the 480 acres adjacent to the golf course. | 2.  Para 4, Michael Brown Declaration and page 2 of Exhibit "A" thereto. | Disputed | Vague and Ambiguous Terms:  The statement is objected to as vague and ambiguous as to the use of the term "loose association."<br><br>Irrelevant: Additionally, the statement is irrelevant with regard to whether there are no triable issues of material fact as to plaintiff's causes of action for copyright infringement. Nor is this statement material as to any of the affirmative defenses raised by defendants Northern California Universal Enterprises ("NCUE") and Lotus Developments.<br><br>Without waiving said objections, Martin-McIntosh ("MM") prepared the "Draft Guidance Package" for the 480 acre development as shown on the Exhibit "A" to Michael Brown's declaration and entered into an agreement with Mr. Brown (Exh.  "B" to the Declaration) wherein all of MM's design services were specifically made the sole work product and property of MM (¶¶ 8 & 9 of Exb. "B"). |
| 3.  On or around April 13, 1992, Martin-McIntosh prepared a "draft guidance package" for the | 3.  Para 4, Declaration of Michael Brown and Exhibit "A" thereto. | Undisputed | |

| | | | |
|---|---|---|---|
| "Valley Rose Estates Master Planned Community". | | | |
| 4. The guidance package was prepared to provide direction and clarify expectations regarding development of the 480 acres. | 4. Para 4, Michael Brown Declaration and page 2 of Exhibit "A" thereto. | Undisputed | |
| 5. The guidance package required Martin-McIntosh to prepare a Master Development Plan in close cooperation with The City. | 5. Para 5, Steven J Hassing Declaration PP 4 and 5 of Exhibit "A" to the Declaration of Michael Brown. | Undisputed, but only as to the fact that MM would have to obtain approval of the development project from the City of Wasco. | Vague and ambiguous: The term is objected to as to the use of the term "close cooperation." See response in previous column.<br><br>Legal Conclusion: The statement is also objected to insofar as the statement attempts to draw a legal conclusion as to the relationship of the parties. |
| 6. The City, Martin-McIntosh and Legacy comprised what MM referred to as the "project team" which was to collaborate and agree upon project objectives. | 6. Paras 5 and 6, Michael Brown Declaration Page 4 of Exhibit "A" attached to the Declaration of Michael Brown. | Undisputed, but only to the extent that MM was hired by Legacy to perform planning and engineering services for the subdivision. | See Exhibits "B","C","D", and "E" to the Declaration of Michael Brown. |
| 7. Under the terms of the draft guidance package, MM was to serve as the planner, engineer and consultant. | 7. Para 6, Declaration of Steven J Hassing, Page 4 of Exhibit "A" to the Declaration of Michael Brown. | Undisputed, but only to the extent that MM was hired by Legacy to perform planning and engineering services for the subdivision. | See Exhibits "B","C","D", and "E" to the Declaration of Michael Brown. |
| 8. MM was also to supervise the development and construction of the | 8. Para 7, Declaration of Steven J Hassing, | Undisputed | |

PLF'S OPP TO DEFENDANTS NORTHERN'S AND LOTUS' STATEMENT OF UNDISPUTED MATERIAL FACTS

| | | | |
|---|---|---|---|
| subdivision. | Para 15 Third Amended Complaint attached to Steven J Hassing Declaration as Exhibit "C". | | |
| 9. Legacy was to serve as the project applicant. | 9. Para 8, Declaration of Steven J Hassing, Page 4 of Exhibit "A" to the Declaration of Michael Brown. | Undisputed | |
| 10. MM received all its directions related to the performance of the engineering services from The City with The City paying MM's bills. | 10. Para 9, Steven J Hassing Declaration and Exhibit "D" thereto. (see pg 3, lines 16-27). | Disputed. | MM did not have an agreement with the City of Wasco. Instead, the Legacy Group (the developer) had an Acquisition Agreement with the City whereby the City was to pay for the improvements and related costs, including professional services, incurred by Legacy. (Said agreement is attached as Exh. "F" to the Declaration of Michael Brown). |
| | | | Additionally, plaintiff McIntosh was only paid by Legacy through moneys paid under the acquisition agreement by the City of Wasco (see Exh. "F" referenced above, and see the Deposition of Roger McIntosh, December 18, 2008, 80:16-81:7) See Also, Declaration of Roger McIntosh filed with this opposition, and Exhibit A attached thereto. |
| | | | When Wasco quit paying Legacy, McIntosh was no longer paid and, therefore, McIntosh did not finalize the map for the |

| | | |
|---|---|---|
| | | project (see above referenced deposition). |
| 11. On March 18, 1992, MM prepared a written contract which addressed the entire 480 acres adjacent to the Valley Rose Golf Course. It provided that MM would prepare a conceptual plan for $15,200, prepare master plans for water, sewer and drainage, and other utilities for $54,800 and conduct a survey of the area for $19,100, a total of $89,100. | 11. Para 7, Michael Brown Declaration and Exhibit "B" thereto including MM's March 18, 1992 letter. | Undisputed |
| 12. On May 11, 1992, MM and Brown expanded the terms of The Contract to include preparation of Parcel Map No. 9572 for $5,000, preparation of improvement plans and final map for Tract 5472 for $57,900. | 12. Para 7, Declaration of Michael Brown and Exhibit "C" thereto. | Undisputed |
| 13. On June 24, 1992, The Contract was again expanded, increasing certain fees and adding $12,100 for the preparation of a tentative map for Tract 5472. | 13. Para 7, Declaration of Michael Brown and Exhibit "D" thereto. | Undisputed |
| 14. In 1993, MM submitted The Plans to The City so that Legacy could obtain a building permit for construction of the Tract 5472 improvements. | 14. Para 26, Third Amended Complaint attached to Steven J Hassing Declaration as Exhibit "C" | Undisputed |

PLF'S OPP TO DEFENDANTS NORTHERN'S AND LOTUS' STATEMENT OF UNDISPUTED MATERIAL FACTS

| | | | |
|---|---|---|---|
| 15. The City approved The Plans and the improvements were constructed in 1993 and 1994 | 15. Paras 26, 27 and 28 Third Amended Complaint attached to Steven J Hassing Declaration as Exhibit "C". | Undisputed | |
| 16. Even though the subdivision improvements were constructed in conjunction with Map 5472, legal lots within Parcel 1 or Tract 5472 were not created by MM because MM stopped working on the project before the final map was approved. | 16. Para 10, Steven J Hassing Declaration and Exhibit "E" thereto. (McIntosh depo, p 80; 1-25). | Undisputed | |
| 17. On March 8, 1993, MM issued a memorandum of "cost update" advising of $174,400 in additional costs, none of which directly related to Tract 5472. | 17. Para 7, Michael Brown Declaration, and Exhibit "D" thereto. | Disputed. | The memorandum of "cost update" is Exhibit "E" to the Declaration of Michael Brown (not Exhibit "D"). Includes, among other things, offsite improvements which were necessary for the development of Tract 5472 and, under item 13, specifically refers to plot plans for Tract 5472. In addition, work done on Parcel Map 9572 was also related to Tentative Tract 5472 in that Parcel Map 9572 encompassed not only the area covered by Tract 5472, but by a much larger area (see pp 69-70 of the deposition of Roger McIntosh, December 18, 2008). |
| 18. On July 21, 1992, MM recorded Parcel Map 9572 which divided the 480 acres into 6 separate parcels of | 18. Para 11, Steven J Hassing Declaration and Exhibit "F" thereto. | Undisputed | |

H:\PUBLIC\054493\060971 McIntosh v. Northern\OPP TO STMT MAT FACTS.wpd

PLF'S OPP TO DEFENDANTS NORTHERN'S AND LOTUS' STATEMENT OF UNDISPUTED MATERIAL FACTS

| | | | |
|---|---|---|---|
| between 27.64 and 154.31 acres. | | | |
| 19. Parcel 1, the parcel at issue in this lawsuit, contains 33.51 acres. | 19. Para 12, Steven J Hassing Declaration and page 3 of Exhibit "F" thereto. | Undisputed | |
| 20. Map 5472 sought to further divide Parcel 1 into 69 lots for single family residential and 1 for ninety six apartments. | 20. Para 3, Steven J Hassing Declaration, Exhibit "B" thereto. | Undisputed | |
| 21. In 2007, DeWalt's Final Map 6451 divided Parcel 1 in 68 single family lots. | 21. Para 14, Steven J Hassing Declaration, Exhibit "G" thereto. Para 8, Jeff Gutierrez Declaration. | Undisputed | |
| 22. On January 28, 1993, The City and Legacy, aided by MM, executed an Acquisition Agreement whereby The City agreed to purchase MM's plans and specifications as well as the infrastructure improvements to be constructed in Tract 5472. | 22. Paras 9 and 10, Michael Brown Declaration and Exhibit "F" thereto. (See pages 2 and 3). | Disputed. | MM was not a party to the Acquisition Agreement (Exh. "F" to the Declaration of Michael Brown). The agreement provides for the acquisition of the completed improvements by the City of Wasco from Legacy Group. The Acquisition Agreement does not address the purchase of MM's Tract 5472 nor MM's improvement plans for 5472. In addition, the Acquisition Agreement did not address what would happen to MM's plans in the event of a default by the Legacy Group. This information, however, was addressed in ¶¶ 8 and 9 of McIntosh's agreement with the Legacy Group (Exh. "B" to the Declaration of Michael |

| | | | |
|---|---|---|---|
| | | | Brown). In the event of such default, the work product of MM was to remain with MM. |
| 23. Ronald Staub, MM's project manager, prepared the engineering cost summary for the acquisition agreement which established the amounts MM was to received from The City. | 23. Para 10, Michael Brown Declaration.<br><br>Para 7, Steven J. Hassing declaration and Exhibit "U" thereto. (McIntosh Dec. 18, 2008 declaration, page 156; 2-22). | Undisputed, except that the words "cost summary" should be "cost estimates" | |
| 24. The City paid for The Plans as well as the improvements. | 24. Para 20, Third Amended Complaint attached Steven J Hassing Declaration as Exhibit "C". | Disputed | This allegation fails to take into account the fact that MM had a contract with Legacy and that MM's work product, or the plans and map for Tract 5472, could be used only so long as the Legacy Group was not in default. (Exh. "B" to the Declaration of Michael Brown) |
| 25. The City paid MM over $800,000 for its Services. | 25. Para 9, Steven J Hassing Declaration and Exhibit "D" thereto. (see 3: 1-6). | Undisputed for purposes of this motion. | Irrelevant. This information is irrelevant for purposes of defendants' Motion for Summary Judgment. |
| 26. On April 26, 2002, The City acquired parcels 1 and 3 via tax sale. | 26. Para 15, Steven J Hassing Declaration and Exhibits "H" and "I" thereto.<br><br>Para 28, Third Amended Complaint attached to Steven J Hassing Declaration as Exhibit "C". | Undisputed | |
| 27. The City circulated a Developer Information Package, | 27. Para 5, Joe Wu Declaration and Exhibit "A" thereto. (see page 5). | Undisputed | |

| | | |
|---|---|---|
| one of which reached Northern's real estate agent, which touted Tract 5472 as having "infrastructure". | Para 4, Darrell Souza Declaration and Exhibit "A" thereto. (see page 5). | |
| 28.  The Developer Information Package included a copy of Map 5472 as well as a sewer and water map. | 28. Para 6, Joe Wu Declaration.  (see Appendix "C"). | Undisputed |
| 29.  The Developer Information Package noted that there were several plan documents developed in the early 1990's currently on file with The City which The City would make available to interested parties. | 29. Para 7, Joe Wu Declaration.  (see pages 6 and 11). | Undisputed |
| 30.  The Developer Information Package also contained an executive summary which noted in two places that, "infrastructure, including roadways and water lines, were developed on the 34 acre parcel within the City-owned land". | 30. Para 8, Joe Wu Declaration.  (see Appendix "B", pp 1 and 5). | Undisputed |
| 31.  On May 18, 2004, The City and Northern entered into an agreement whereby Northern would purchase Parcel 1 which contained Tract 5472 (33.51 acres) and Parcel 3, which contained Tract 5618 (64.06 acres). | 31. Para 9, Joe Wu Declaration.<br><br>Para 15, Steven J. Hassing declaration and Exhibits "H: and "I" thereto. | Undisputed |
| 32.  Later, but prior to close of escrow, Norther assigned its | 32. Para 10, Joe Wu Declaration. | Undisputed |

| | | | |
|---|---|---|---|
| purchase rights to Lotus and Lotus was the actual purchaser of Parcels 1 and 3. | | | |
| 33. Tentative Map 5472 expired on May 11, 2001 and even though the subdivision improvements had been installed, The City required that Lotus prepare and submit a new tentative map. | 33. Para 11, Joe Wu Declaration<br><br>Para 32, Steven J Hassing Declaration and Exhibit "Z" thereto. (January 28, 2009 deposition of Roger McIntosh, pp 310; 24-311; 17). | Undisputed | |
| 34. Prior to Lotus's purchase, Wu and McIntosh spoke by telephone about the intended purchase of Parcel 1 from The City. Wu asked McIntosh if he would be interested in preparing the new tentative map that The City was requiring. McIntosh stated that he would have to be paid the $800,000 left owing by the previous developer and The City. | 34. Para 12, Joe Wu Declaration and Exhibit "J" thereto. (Jan. 28, 2009 deposition of Roger McIntosh, pp 310; 24- 311; 17). | Undisputed except for the last sentence. | During Mr. McIntosh's telephone conversation with Mr. Wu, Mr. McIntosh indicated that he was owed over $300,000 and that if Wu wanted McIntosh to reprocess the map and use the plans, then McIntosh would need to be paid that amount. (December 18, 2008, Deposition of Roger McIntosh pp 28 and 176). The previous price paid was only relevant insofar as helping to establish current value of the work. |
| 35. On July 21, 2004, Wu hired DeWalt to survey the existing improvements and prepare and process the new tentative map for the sum of $26,000.00. | 35. Para 13, Joe Wu Declaration<br><br>Para 3, Jeff Gutierrez Declaration. | Disputed. | Wu, representing NCUE, entered into a contract with DeWalt in September 2004 (see Declaration of Jeffrey A. Travis in support of Motion for Partial Summary Judgment, referencing Exb. 4 to the deposition of Jeff Gutierrez showing that a contract between DeWalt and NCUE was signed in September of 2004) |
| 36. Mr. McIntosh | 36. Para 17, Steven | Undisputed | Objection: This fact is |

| | | | |
|---|---|---|---|
| knew, at the time he participated in a telephone call with Mr. Wu in which he told Mr. Wu that he would prepare a new tentative map for the amount still owed by the prior developer, that he held a copyright interest in Map 5472 and The Plans and he did not tell that to Mr. Wu. | J Hassing Declaration and Exhibit "K" thereto. (January 28, 2009 depo of Roger McIntosh, p 312; 2-22).<br><br>Paras 14 and 15, Joe Wu declaration. | | irrelevant in that it only shows McIntosh had knowledge of a copyright interest in his own work but not actual knowledge of any infringement by Northern/Wu |
| 37. Mr. McIntosh kept the information regarding his copyright interests to himself because he didn't feel it was his duty to tell Mr. Wu. | 37. Para 18, Steven J Hassing Declaration and Exhibit "L" thereto. (January 28, 2009 deposition of Roger McIntosh, pp 312; 23-314; 17.) | Undisputed | |
| 38. Right after his telephone conversation with Mr. Wu, Mr. McIntosh requested that The City send him all future City agendas so he could follow Mr. Wu's progress at Valley Rose. | 38. Para 19, Steven J Hassing Declaration and Exhibit "M" thereto. (December 18, 2008 deposition of Roger McIntosh, pp 186; 8-188; 13). | Undisputed | |
| 39. Mr. McIntosh believed that if Mr. Wu used a different engineer, one besides Mr. McIntosh, that Mr. Wu would be infringing and that Mr. McIntosh could sue. | 39. Para 20, Steven J Hassing Declaration and Exhibit "N" thereto. (December 18, 2008 deposition of Roger McIntosh, pp 191; 12- 192; 12). | Disputed | Mr. McIntosh testified that if Mr. Wu had hired the new engineer, DeWalt, to re-do the plans, he would not have sued him. The reason McIntosh sued Mr. Wu's company (NCUE) for copyright infringement was that he later found out that Wu had hired DeWalt to prepare a similar map based on his previous plans. (December 18, 2008 Deposition of Roger McIntosh, 198:22-199:5). |

| | | | | |
|---|---|---|---|---|
| 40. McIntosh considered suing Wu when he first learned that he wasn't being hired to prepare the new map. | 40. Para 21, Steven J Hassing Declaration and Exhibit "O" thereto.. (December 18, 2008 deposition of Roger McIntosh, p 198; 12-16.) | Disputed | | See response to No. 39. |
| 41. Although McIntosh suspected that his work would be copied he failed to warn DeWalt, Wu or The City that he intended to sue for infringement. | 41. Para 22, Steven J Hassing Declaration and Exhibit "P".. (December 18, 2008 deposition of Roger McIntosh, pp 196;22- 197; 22.)

Para 14, Joe Wu Declaration

Para 9, Jeff Gutierrez Declaration. | Disputed. | | See response to No. 39. |
| 42. All the time that DeWalt's tentative and final maps were being processed, McIntosh knew that Northern was spending money. | 42. Para 23, Steven J Hassing Declaration and Exhibit "Q" thereto. (January 28, 2009 deposition of Roger McIntosh, 315; 3-8.) | Undisputed | | Objection: The fact is irrelevant since it does not show what McIntosh knew Northern was spending money on. |
| 43. In early 2006 when Final Map 6451 was recorded, McIntosh began driving by the subdivision to see if anything was happening. | 43. Para 24, Steven J Hassing Declaration and Exhibit "R" thereto. (January 28, 2009 deposition of Roger McIntosh, 9 197; 17-22.) | Undisputed | | |
| 44. McIntosh did not warn Wu about copyright infringement because "he didn't feel it was his position to tell Joe what the law says". | 44. Para 25, Steven J Hassing Declaration and Exhibit "S" thereto. (January 28, 2009 deposition of Roger McIntosh, pp 314; 10-315; 1.) | Undisputed | | |
| 45. Joe Wu's first knowledge of McIntosh's belief that infringement was occurring was | 45. Para 15, Joe Wu Declaration. | Disputed | | Jo Wu testified that he had seen copies of McIntosh's plans prior to the suit with his name and markings on |

| | | | |
|---|---|---|---|
| when Wu was served with the summons and complaint in this action. | | | it. (See, Deposition of Jo Wu, October 28, 2008, page 70)<br><br>Jo Wu testified that he considered technical drawings he had done, like McIntosh's, the ownership of the author. (See, Deposition of Jo Wu, October 28, 2008, 73:20-74:22) |
| 46.  The first time Wu ever heard anything regarding McIntosh's alleged copyright was when he was served with the summons and complaint in this action. By that time Lotus and Northern had spent over $1,250,000 in hard construction costs on twelve homes then being constructed on Parcel 1 and $979,403.86 for 68 building permits. | 46.  Para 15, Joe Wu Declaration. | Disputed. | Move to strike allegations made in No. 46 due to the fact that, during his deposition, Mr. Wu was asked specifically if he had documents reflecting the costs, engineering, developing and improving the subdivision, and he was not allowed to answer by his attorney. Mr. Wu should not be allowed now to respond to this inquiry by way of a declaration without the benefit of cross-examination (see October 28, 2008, Deposition of Joe Wu 27:25-28:4).<br><br>See Also, Response to No. 45 above. |
| 47.  De Walt surveyed the streets, curbs, gutters, manhole covers, block walls and all visible improvements which had been constructed within Tract 5472. | 47.  Para 11, Greg Black Declaration<br><br>Para 4, Jeff Gutierrez Declaration. | Undisputed | |
| 48.  DeWalt then processed the survey information and created a map which depicted all observed site improvements | 48.  Para 12, Greg Black Declaration<br><br>Para 6, Jeff Gutierrez Declaration. | Undisputed | |

H:\PUBLIC\054493\060971
McIntosh v. Northern\OPP
TO STMT MAT
FACTS.wpd

| | | | |
|---|---|---|---|
| and conditions. | | | |
| 49. In 1993, MM submitted The Plans for Tract 5472 to The City so that Legacy could obtain building permits and begin constructing improvements. | 49. Para 26, Third Amended Complaint attached to Steven J Hassing Declaration as Exhibit "C". | Undisputed | |
| 50. Greg Black was the lead engineer/project manager for DeWalt regarding Map 6451. | 50. Para 3, Greg Black Declaration.<br><br>Para 10, Jeff Gutierrez Declaration. | Undisputed | |
| 51. Greg Black testified that although he does not deny receiving emailed copies of The Plans from The City, he has no recollection of ever having requested them and that it was his practice to try and obtain any and all documents in any way related to a parcel of land on which he is working. | 51. Para 6, Greg Black Declaration. | Undisputed | |
| 52. Greg Black did not reproduce anything from, or otherwise make any use of any improvement plans The City provided to him in connection with his work on Tentative Map 6451 and has no knowledge of any DeWalt employee reproducing improvement plans prepared by Martin-McIntosh. | 52. Paras 7 and 8, Greg Black Declaration. | Disputed. | Irrelevant: This statement is objected to as irrelevant in that the facts alleged do not disprove copyright infringement. As set forth in the plaintiff's points and authorities accompanying this opposition, plaintiff needs to show that defendant copied the original elements from a copyrighted work. However to show that the plaintiff "copied" the work through indirect infringement, plaintiff must only establish that the |

14

| | | | |
|---|---|---|---|
| | | | defendant had <u>access</u> to the plaintiff's copyrighted work and that there are <u>substantial similarities</u> between the defendant's work and the original elements of the plaintiff's work.<br><br>Furthermore, DeWalt admitted that it used the 5472 Map in helping them to prepare the 6451 Map. (See, Supplemental Responses to Request for Admissions and Special Interrogatories by Dennis W. De Walt, Inc., attached to Travis Decl. in Plaintiff's motion, ¶¶20-21, Exhibits "V" and "W") |
| 53. Sara Burgi was another DeWalt employee that did some work on Tentative Map 6451. | 53. Para 2, Sara Burgi Declaration. | Undisputed | |
| 54. Sara Burgi never even saw The Plans or Map 5472 prior to this litigation. | 54. Para 3, Sara Burgi Declaration. | Disputed | Sara Burgi admitted in her deposition that Josh Woodard, another engineer for DeWalt, had asked for the prior improvement plans for Map 5472 (the ones prepared by McIntosh) in his preparation of the Tentative Map prepared by DeWalt (Deposition of Sara Burgi pp. 12 & 13). |
| 55. Josh Woodard does not recall ever working on Map 6451 but knows for a fact that he has never copied from another engineer's work while working on any map for DeWalt. | 55. Paras 4 and 7, Josh Woodard Declaration. | Disputed | See above response to No. 54. |
| 56. Prior to this | 56. Para 16, Joe Wu | Undisputed | |

PLF'S OPP TO DEFENDANTS NORTHERN'S  AND LOTUS' STATEMENT OF UNDISPUTED MATERIAL FACTS

| | | | | |
|---|---|---|---|---|
| lawsuit being filed Wu obtained copies of the landscape plans and pump station plans so that he could make repairs ordered by The City. | Declaration. | | | |
| 57.  Neither Wu, Lotus nor Northern obtained any other portions of The Plans prior to the filing of this lawsuit nor did they make any copies of The Plans. | 57.  Para 17, Joe Wu Declaration. | Disputed | | Objection.  Move to strike ¶ 17 of the Declaration of Joe Wu on the following grounds: 1.  The statement contains a legal conclusion with regard to the use of the word "copies"; 2.  Mr. Wu's declaration in ¶ 17 is directly contradicted by his deposition testimony (see pp. 46 & 47 of the Declaration of Joe Wu) where Mr. Wu responded that the preparation of the Map for Tract 6451 and plans for the same were not something he could answer because "that's a civil engineer question" (October 28, 2008, deposition of Mr. Wu 47:5) 3.  Mr. Wu has previously testified that he received copies of the pump station plans from Mr. McIntosh's office prior to the filing of the lawsuit. (Deposition of Mr. Wu, October 28, 2008, p 70) |
| 58.  The City waived the requirement that Lotus prepare or submit improvement plans. | 58.  Para 19, Joe Wu Declaration<br><br>Para 13, Greg Black Declaration<br><br>Para 26, Steven J Hassing Declaration and Exhibit "T" | Disputed | | Objection.  Move to strike reference to ¶ 26 of the Declaration of Steve Hassing, as that declaration refers to the deposition of Keith Woodcock, and not Roger McIntosh. |

PLF'S OPP TO DEFENDANTS NORTHERN'S  AND LOTUS' STATEMENT OF UNDISPUTED MATERIAL FACTS

| | | | |
|---|---|---|---|
| | thereto.  (January 28, 2009 deposition of Roger McIntosh, 29; 2-8.) | | |
| 59.  Lotus was able to have its final map approved without submitting any improvement plans. | 59.  Para 19, Joe Wu Declaration<br><br>Para 13, Greg Black Declaration<br><br>Para 11, Jeff Gutierrez Declaration<br><br>Para 27, Steven J Hassing Declaration and Exhibit "T" thereto.  (January 29, 2009 deposition of Keith Woodcock, p 29; 2-8.) | Disputed | Prior to the construction of any improvements, improvement plans are required to be prepared and submitted prior to recordation of a final map (deposition of Roger McIntosh 218:22-219:4).<br><br>For the 6451 Tract, Wasco required improvement plans in this case in order to impose taxes (Deposition of Dennis McNamara, 15:2-8)<br><br>Additionally, McIntosh asked for copies of the improvement plans at the City for 6451.  When an employee said he could not find them, McIntosh suggested that the plans for 5472 were used.  The employee confirmed that this is probably what happened (deposition of Roger McIntosh, 121:24-122:3).<br><br>The 6451 Map states on it that it is based in McIntosh's "Associative Improvement Plans" (See, 6451 Tentative Map attached to Declaration of Jeffrey A. Travis) |
| 60.  The City did not "use" MM's old improvement plans for any purpose in conjunction with the approval of Lotus's Map. | 60.  Para 28, Steven J Hassing Declaration and Exhibit "V" thereto. (January 29, 2009 deposition of Keith Woodcock, P 15; 7- | Disputed | The City did, in fact, use MM's old improvement plans for approval of the Lotus map.  This was confirmed by Roger McIntosh when he |

| | | | |
|---|---|---|---|
| | 18.) | | made a public documents request for the improvement plans for Tract 6451 (the Lotus map) and received a copy of the plans McIntosh had made for Tract 5472 (December 18, 2008, Deposition of Roger McIntosh 126:23-25). |
| 61.  The Acquisition Agreement gave The City the right to complete any improvements which were not completed by the developer. | 61. Para 9, Michael Brown Declaration and Exhibit "F" thereof at page 9. | Undisputed | While this statement is undisputed, it is irrelevant because the Acquisition Agreement does not address the copyright works of MM and MM is not a party to the Acquisition Agreement. |
| 62.  Section 6 of the Acquisition Agreement provided that it would inure to the benefit of the parties' heirs, executors, administrators, successors and assigns. | 62. Para 9, Michael Brown Declaration and Exhibit "F" thereof at page 10. | Undisputed | See response to No. 61 above. |
| 63.  All the directions to MM for the performance of the engineering services for the subdivision came from The City which paid all the bills. | 63. Para 9, Steven J Hassing Declaration and Exhibit "D" thereto.  (3; 16-27). | Disputed | This statement is not true because MM had a contract with Legacy to perform engineering services for Legacy, not the City of Wasco. (See Exhibit "B" to the Declaration of Michael Brown).<br><br>McIntosh submitted his bills to Legacy Group and they, in turn submitted them to Wasco on account of McIntosh (See, Declaration of Roger McIntosh attached to this opposition  and Exhibit A, invoices submitted to Legacy Group) |

H:\PUBLIC\054493\060971 McIntosh v. Northern\OPP TO STMT MAT FACTS.wpd

PLF'S OPP TO DEFENDANTS NORTHERN'S  AND LOTUS' STATEMENT OF UNDISPUTED MATERIAL FACTS

| | | | |
|---|---|---|---|
| 64. The Contract between Legacy/Brown and MM does not prohibit The City from using The Plans for the specific purpose for which they were intended. | 64. Para 7, Michael Brown Declaration and Exhibit "B" thereto. | Disputed | ¶ 13 of the agreement between MM and Legacy (see Exh. "B" to the Declaration of Michael Brown) provides that the "final plans, drawings or other work product are for the exclusive use of client [Legacy] and may be used by client only for the project described on the face hereof." |
| 65. Paragraph 13 of The Contract between Legacy/Brown and MM specifically spells out that the plans, drawings or other work product may be used for the project described on the face hereof. | 65. Para 7, Michael Brown Declaration and Exhibit "B" thereto. (see para 13). | Disputed | The Contract also stated that the works are only to be used by Client (Legacy Group), See, Response to No. 64.<br><br>While the contract spells out that the plans, drawings and other work product may be used for the project, ¶ 9 of that agreement provides that Legacy's right to continue to use the work product will continue only so long as Legacy is not in default.<br><br>McIntosh had to file a judgment against Legacy because they were not able to pay (deposition of Roger McIntosh p.181). |
| 66. Improvement plans are kept by the public works department. | 66. Para 12, Jeff Gutierrez Declaration<br><br>Para 32, Steven J Hassing Declaration and Exhibit "Z" thereto. (January 29, 2009 deposition of Keith Woodcock, Pp 13; 18-14; 12.) | Undisputed | |
| 67. MM had no intention of using Map 5472 or The Plans on any other | 67. Para 30, Steven J Hassing Declaration and Exhibit "X" thereto. | Undisputed | |

| | | | |
|---|---|---|---|
| subdivision. | (December 18, 2008 deposition of Roger McIntosh, pp 210; 21-211; 9.) | | |
| 68. DeWalt surveyed all of the parcels in which Tract 6451 us located. It then surveyed the existing improvements within Tract 6451, including existing streets, curbs and gutters, building pads, any visible utilities, block walls and previously set street monuments. | 68. Paras 10 and 11, Greg Black Declaration<br><br>Para 4, Jeff Gutierrez Declaration. | Undisputed | |
| 69. DeWalt processed the survey information and created a map which depicted all observed site improvements and conditions. | 69. Para 12, Greg Black Declaration<br><br>Para 6, Jeff Gutierrez Declaration. | Undisputed | |
| 70. Pages 67 through 79 and pages 103 through 120 of the deposition transcript of Steven Wong are filled with differences between maps 5472 and 6451. | 70. Para 31, Steven J Hassing Declaration and Exhibit "Y" thereto. | Disputed | Objection. Vague and ambiguous as to the word "differences".<br><br>(For purposes of copyright infringement, copying is determined by access to the work and substantial similarity (see case law set forth in Plaintiff's Opposition to Northern's Motion for Summary Judgment.))<br><br>Access:<br><br>Northern Had Access to The 5472 Tentative Map and Plans from Wasco (Deposition of Bob Wren, 10:14-25, 11:1-6; Dep. of Joe Wu, Vol. 1, 69:20-25; 70:1-13; 71:1-12) |

H:\PUBLIC\054493\060971 McIntosh v. Northern\OPP TO STMT MAT FACTS.wpd

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

All Defendants Had Access to The 5472 Tentative Map and Plans (Travis Decl. attached to Roger McIntosh's Motion for Partial Summary Judgment, ¶10, Exhibit "S", (Tentative Map No. 5472 attached as an appendix to Developer Information Package given by Wasco to purchasing developers))

Wasco Made the 5472 Map Available to Defendants (Dep. of Bob Wren, 10:14-25; 11:1-6.)

DeWalt Had Access to The 5472 Tentative Map and Plans (Exhibit 7 attached to Deposition of Jeff Gutierrez, November 24, 2008 (cd of emails sent from Wasco to DeWalt with the 5472 improvement plans attached).

Travis Decl. attached to McIntosh's Motion for Partial Summary Judgment, ¶20, Exhibit "V" (Supplemental Response No. 2 wherein DeWalt admits it used Tentative Map No. 5472 in assisting in the preparation of Tentative Map No. 6451) ("TTM 5472" or, Tentative Tract Map 5472)

Travis Decl. attached to McIntosh's Motion for Partial Summary Judgment, ¶21, Exhibit "W" (Supplemental Response to Request for Admissions Nos. 1,

H:\PUBLIC\054493\060971
McIntosh v. Northern\OPP
TO STMT MAT
FACTS.wpd

PLF'S OPP TO DEFENDANTS NORTHERN'S AND LOTUS' STATEMENT OF UNDISPUTED MATERIAL FACTS

1         4, and 6 wherein
DeWalt admits it

2         requested information
from the City of Wasco

3         which may have
included the 5472 Map,

4         and, admits it used
Tentative Map No.

5         5472 in assisting in the
preparation of Tentative

6         Map No. 6451)

7         DeWalt Admitted it
Compared the 6451

8         Tentative Map with the
5472 Map and Plans

9         (Deposition of Sarah
Burgi. 8:2-4; 9:5-12;

10        12:5-12; 13:1-16;
Deposition of Jeff

11        Gutierrez Dep.,
November 24, 2008;

12        17:20-25; 18; 19:1-7)

13        <u>Substantial Similarity:</u>

14        The overall layout of
the two maps are the

15        same
(Dep. of Keith

16        Woodcock Dep. 19:18-
25; 20:1-10; Dep. of

17        Greg Black, 27:4-25;
28:1-18; Northern's and

18        Lotus' Responses to
Request for Admission,

19        Set One, No. 7, attached
as Exhibits "L" and "M"

20        to Travis Decl.;
Deposition of Stephen

21        Wong; 78:11-15)

22        The lots are identical
(Dep. of Jeff Gutierrez,

23        November 24, 2008,
40: 21-24; 41:20-25 42:

24        1-10
43: 2-13; Northern's

25        and Lotus' Responses
to Request for

26        Admissions, Set One,
Nos. 27-28, attached as

27        Exhibits "L" and "M" to
Travis Decl. in support

28        of McIntosh's Motion

| | | | |
|---|---|---|---|
| | | | for Partial Summary Judgment) |
| | | | The 6451 Map was based on McIntosh's Improvement Plans (Dep. Of Stephen Wong 34:22-25; 35, 36:1-19; 38:15-24 (and Exhibit 2 attached to Wong Dep.);  76:15-25; 77:1-3) |
| 71.  The "idea" of a 68 lot subdivision with streets running through it in the same manner as in MM's "idea" was employed by DeWalt because all of the improvements were in and that was the only way of drawing a map to take advantage of those expensive improvements. | 71.  Para 13, Jeff Gutierrez Declaration. | Undisputed | |
| 72.  McIntosh did not warn anyone of his intended infringement lawsuit before filing it on July 21, 2007. | 72.  Para 25, Steven J Hassing Declaration and Exhibit "S" thereto<br><br>Para 15, Joe Wu Declaration<br><br>Para 9, Jeff Gutierrez Declaration. | Undisputed | |
| 73.  DeWalt submitted Tentative Map 6451 to The City on November 10, 2004. | 73.  Para 14, Greg Black Declaration<br><br>Para 14, Jeff Gutierrez Declaration. | Undisputed | |
| 74.  McIntosh's decision to sue Lotus and Northern for copyright infringement was made when DeWalt started processing Map 6451. | 74.  Para 21, Steven J Hassing Declaration and Exhibit "O" thereto. | Disputed | McIntosh did not decide to sue Lotus and Northern for copyright infringement when DeWalt started processing Map 6451 (deposition of McIntosh 198:17-21).  Instead, |

| | | | |
|---|---|---|---|
| | | | McIntosh decided to bring the lawsuit when he discovered that Mr. Wu had hired another engineer to do the same map and based on the same plans that McIntosh had previously done. DeWalt went to the City of Wasco in late 2006, reviewed the new map, got copies of McIntosh's plans on which the new map was based and then consulted counsel to review a case for copyright (deposition of McIntosh 198:22-199:5). |
| 75.  McIntosh kept his true intentions regarding copyright infringement secret from Wu, DeWalt, and The City. | 75.  Para 25, Steven J Hassing Declaration and Exhibit "S" thereto.<br><br>Para 15, Joe Wu Declaration<br><br>Para 9, Jeff Gutierrez Declaration. | Disputed | Irrelevant:  This statement is objected to as irrelevant in that there is no duty by McIntosh to warn of potential infringement.<br><br>In addition, see response to No. 74 above. |
| 76.  Between the time McIntosh first considered suing and the time he did sue, Northern and Lotus had spent $1,605,000 in purchasing the land, $979,403.86 on building permits, $26,000 on engineering, and over $1,250,000 in hard construction costs. | 76.  Para 20, Joe Wu Declaration. | Disputed | Objection, and move to strike ¶ 20 of Wu Declaration: Wu did not answer the question about the money he spent during his deposition when he would have been subjected to cross-examination.<br><br>Irrelevant:  The statement is further objected to as irrelevant in that this statement is immaterial to the lawsuit for copyright infringement. It does not address any of the elements of a cause of action for copyright infringement. |

PLF'S OPP TO DEFENDANTS NORTHERN'S  AND LOTUS' STATEMENT OF UNDISPUTED MATERIAL FACTS

| | | | |
|---|---|---|---|
| 77. Wu believed that his conduct in hiring DeWalt to survey Parcel 1 and create a new subdivision map was innocent. He was ignorant of McIntosh's intent to sue is Northern hired a new engineer. Wu would not have proceeded with the purchase of the land had he known of McIntosh's intention to sue for infringement. | 77. Paras 21, 22, and 23, Joe Wu Declaration. | Disputed | Irrelevant: This statement is objected to as irrelevant. There is no law, and defendants have sited no law, that would compel McIntosh to inform defendants of their copyright infringement prior to bringing a lawsuit. |
| 78. On September 8, 1993, MM received a promissory note from Legacy in the amount of $250,000. | 78. Para 11, Michael Brown Declaration and Exhibit "G" thereto. | Undisputed | |
| 79. In October of 1993, MM secured the $250,000 with a deed of trust. | 79. Para 12, Michael Brown Declaration and Exhibit "H" thereto. | Undisputed | |
| 80. On January 26, 2001, MM and Legacy entered into a Settlement Agreement and Mutual Release and obtained a stipulated judgment in the amount of $341,487.01. | 80. Paras 13 and 14, Michael Brown Declaration and Exhibits "I" and"J" thereto. | Disputed | Statement is incomplete in that it fails to mention that McIntosh was never able to collect on his judgment (deposition of Roger McIntosh p.181).<br><br>Irrelevant: The statement is also objected to as irrelevant in that whether McIntosh ever got paid by the Legacy Group in the late nineties has no bearing on the copyright infringement that occurred years later. |
| 81. DeWalt had no need to copy The Plans and did not copy them. | 81. Para 13, Greg Black Declaration<br><br>Paras 5 and 7, Josh Woodard Declaration | Disputed | Objection. statement is a legal conclusion that DeWalt did not "copy" McIntosh's plans. |

H:\PUBLIC\054493\060971 McIntosh v. Northern\OPP TO STMT MAT FACTS.wpd

Para 7, Jeff Gutierrez
Declaration

Para 6, Sarah Burgi
Declaration

Paras 26 and 27,
Steven J Hassing
Declaration and
Exhibit "T" thereto.

See Also, Objections
and Opposition to No.
70 above.

For the 6451 Map,
improvement plans
were required.
(Deposition of Dennis
McNamara, 15:2-25;
26:1)

On its face, DeWalt's
6451 Map was based on
McIntosh's
"Associative
Improvement Plans"
(See, 6451 Map
attached as Exhibit "C"
to Jeffrey A. Travis'
Declaration in Opp. to
Wasco and Northern's
Motions)

DATED:   OCTOBER 21, 2009

BORTON PETRINI, LLP

By:_____/s/ Jeffrey A. Travis_____
      Jeffrey A. Travis, Attorney for Plaintiff,
      Roger McIntosh dba McIntosh & Associates

H:\PUBLIC\054493\060971
McIntosh v. Northern\OPP
TO STMT MAT
FACTS.wpd

PLF'S OPP TO DEFENDANTS NORTHERN'S  AND LOTUS' STATEMENT OF UNDISPUTED MATERIAL FACTS

**PROOF OF SERVICE**
**(FRCP No. 5(b)(2)(E))**

**STATE OF CALIFORNIA, COUNTY OF KERN**

I, Vanessa J. Claridge, declare:

I am a citizen of the United States. I am employed in the County of Kern, State of California. I am over the age of 18 and not a party to the within action; my business address is 5060 California Avenue, Suite 700, Bakersfield, California 93309.

On **October 21, 2009**, I served the foregoing document described as **PLAINTIFF'S OPPOSITION TO DEFENDANTS NORTHERN CALIFORNIA UNIVERSAL ENTERPRISE'S AND LOTUS DEVELOPMENT'S STATEMENT OF UNDISPUTED MATERIAL FACTS** on the other party(ies) in this action as follows:

| | |
|---|---|
| Steven John Hassing, Esq. | Attorneys for Attorneys for Defendants, |
| Law Offices of Steven J. Hassing | Northern California Universal Enterprises |
| 425 Calabria Court | Company and Lotus Developments |
| Roseville, CA 95747 | Tel:   916/677-1776 |
| email address: **stevehassing@yahoo.com** | **Fax:   916/677-1770** |
| | |
| Chaka Okadigbo | Attorneys for Defendant, City of Wasco |
| **Garcia Calderon Ruiz, LLP** | |
| 500 South Grand Ave Suite 1100 | Tel: 213/347-0210 |
| Los Angeles, CA 90071 | **Fax: 213-347-0216** |
| email address: **cokadigbo@gcrlegal.com** | |
| | |
| William L. Alexander, Esq. | Attorneys for Defendant, DeWalt CM, Inc. |
| Alexander & Associates | |
| 1925 "G" Street | Tel: 661/316-7888 |
| Bakersfield, CA 93301 | **Fax: 661/316-7890** |
| email address: **walexander@alexander-law.com** | |

X   **BY ELECTRONIC SERVICE:** Pursuant to Fed. R. Civ. P. 5(b)(2)(E) and Local Court Rule(s), the foregoing document will be served by the court via CM/ECF. Pursuant to the CM/ECF docket for this case proceeding the following person(s) are on the Electronic Mail Notice List to receive ECF transmission at the email address(es) indicated below:

X   **BY MAIL:** As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at , California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on **October 21, 2009,** at Bakersfield, California.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

_____          _____
        Vanessa J. Claridge                                  /s/ Vanessa J. Claridge

H:\PUBLIC\054493\060971
McIntosh v. Northern\OPP
TO STMT MAT
FACTS.wpd

PLF'S OPP TO DEFENDANTS NORTHERN'S  AND LOTUS' STATEMENT OF UNDISPUTED MATERIAL FACTS