BONIFACIO BONNY GARCIA (SBN 100761)
EVA M. PLAZA (SBN 250321)
CHAKA C. OKADIGBO (224547)
GCR, LLP
520 SOUTH GRAND AVENUE, SUITE 695
LOS ANGELES, CA 90071
(213) 347-0210; Fax (213) 347-0216

Attorneys for Defendant CITY OF WASCO

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| ROGER McINTOSH<br><br>Plaintiff,<br><br>vs.<br><br>NORTHERN CALIFORNIA UNIVERSAL ENTERPRISES COMPANY, INC., *et al.*,<br><br>Defendants. | Case No: 1:07-CV-01080-LJO-WMV<br><br>**DEFENDANT CITY OF WASCO'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Judge:          Hon. Lawrence J. O'Neill<br>Department:   4 |

4825-3488-2564 v2

## MEMORANDUM OF POINTS AND AUTHORITIES

I.   **INTRODUCTION**

Plaintiff's Motion for Partial Summary Judgment seeks to dismiss eight of the City's affirmative defenses to his complaint.  Plaintiff oversimplifies and mischaracterizes issues of fact and law towards this end.  Nowhere is this more apparent than in Plaintiff's rationale for why the independent creation defense allegedly does not apply.  There, Plaintiff brazenly declares that Defendants can produce no evidence that the Tentative Map for Tract No 6451 was independently created even though: (1) the City's expert identified numerous differences between the two tentative maps at issue[1]; (2) Plaintiff's own expert conceded that Dennis W. DeWalt, Inc. ("DeWalt") performed its own land surveys that informed its creation of the Tentative Map for Tract No. 6451[2] and (3) Defendants NCUE, Lotus Developments, LP ("Lotus") and DeWalt testified that they did not copy Plaintiff's tentative map (Revised Tentative Map for Tract No. 6451).[3]  In the face of all this evidence, Plaintiff asserts that because he can establish that Defendants had access to his tentative map, Defendants cannot possibly prove that the Tentative Map for Tract No. 6451 was independently created.  This is crazy, particularly when Plaintiff himself references the two part test for infringement, which includes the element of determining whether the defendant's work is "substantially similar" to the plaintiff's work.

Similarly, Plaintiff attacks the City's implied license defense by declaring that his permission was never sought or given for the use of the Martin-McIntosh improvement plans, conveniently ignoring the facts that (a) the City paid the predecessor owner of the plans, Martin-McIntosh, $98,000 for the plans and $800,000 overall for work done by Martin-McIntosh on the Subdivision[4] and (b) Martin-McIntosh provided the plans to the City as part of an Acquisition

---

[1] *Defendant City of Wasco's Separate Statement of Controverted Facts* (hereinafter "SS") 36.
[2] Defendant City of Wasco's Separate Statement of Undisputed Facts in Support of Motion for Summary Judgment and Motion for Summary Adjudication Against Plaintiff Roger McIntosh ("UMF") 49.
[3] SS 29-33; UMF50.
[4] SS 3-5; UMF 21, 22.

1  Agreement under which the City purchased the improvements.[5] All of these facts were adduced

2  during discovery and, therefore, were in Plaintiff's plain view, yet ignore them he does.

3      Again, in the area of merger, Plaintiff unashamedly implies that Defendants Northern

4  California Universal Enterprises Company ("NCUE"), Lotus and DeWalt were required to

5  redesign the Subdivision and tear out the existing infrastructure improvements merely to avoid

6  their map depicting existing physical facts observable in the Subdivision. Copyright law

7  provides no such protection to Plaintiff.

8      These examples of Plaintiff's mischaracterizations of law and fact underscore the

9  meritless nature of his claims and highlight why the Court must deny Plaintiff's *Motion for*

10  *Summary Judgment*. The City explains in fuller detail below why the Court should deny

11  Plaintiff's Motion as to all but one affirmative defense (statute of limitations).

12  **II.   STATEMENT OF FACTS**

13      Much of facts relevant to the instant litigation have been stated in the City's *Motion for*

14  *Summary Judgment* against Plaintiff and brief and *Statement of Undisputed Facts* accompanying

15  its *Motion*. The City thus restates briefly facts relevant only to disputing Plaintiff's Motion for

16  Partial Summary Judgment. In doing so, the City relies upon facts and evidence asserted not

17  only in its *Separate Statement of Controverted Facts* but also on facts and evidence contained in

18  the both the and NCUE's separate statements of undisputed facts filed in support of the parties'

19  summary judgment motions against Plaintiff.

20      **a.   Facts Regarding Ownership of the Martin-McIntosh Improvement Plans**

21            **and/or the Granting of an Implied License.**

22      Plaintiff claims that the Martin-McIntosh contract with Legacy provided that Martin-

23  McIntosh "retained ownership" over all original papers and documents.[6] However, Martin-

24  McIntosh subsequently participated in the formation of an *Acquisition Agreement* that provided

25  for the sale of the improvement plans to the City.[7] Ronald Staub, Martin-McIntosh's project

26

27  _____
   [5] SS 3-5; UMF 19, 20.
   [6] *Plaintiff's Memorandum of Points and Authorities*, p.4)

28     [7] SS 3, 4;UMF 19-22; *Declaration of Jim Zervis in Support of City's Motion for Summary Judgment*, ¶ 4; Exhibit A attached thereto.)

1   manager, prepared the engineering cost exhibit that was attached to the Acquisition Agreement

2   and which set forth the costs of acquiring the improvement plans.[8]   Through this *Acquisition*

3   *Agreement*, Martin-McIntosh obtained $800,000 from the City for engineering services rendered

4   and at least $98,000 for the Martin-McIntosh improvement plans.[9]   Plaintiff's claim that Martin-

5   McIntosh retained ownership of the improvement plans is, thus, refuted by these facts.

6       In any event, the Martin-McIntosh/Legacy contract itself betrays Plaintiff's

7   representations about the type of ownership Martin-McIntosh exercised over the plans.   It

8   provides that Martin-McIntosh had the right to use the documents however it chose, but it did not

9   prohibit Legacy or the City from using the plans for the purpose for which they were created and

10  sold.  (Paragraph 9).[10]   In fact, paragraph 13 of the contract specifically provides that the plans

11  are to be used for the project noted on the face thereof, i.e., Parcel 1 of Valley Rose.[11]   It is

12  undisputed that they were not used any place else.   Page 9 of the *Acquisition Agreement* even

13  gives the City the right to complete any of the improvements not completed by Legacy.[12]   The

14  City submits that such completion necessarily entails using the Martin-McIntosh improvement

15  plans.   Thus, even the Martin-McIntosh/Legacy contract upon which Plaintiff relies for his

16  contention that the implied license argument is inapplicable does not undisputedly support

17  Plaintiff's contention that the City was prohibited from using the Martin-McIntosh improvement

18  plans.

19          **b.**    **Statutes Requiring Public hearing and Dissemination of Subdivision Maps**

20                 **and Improvement Plans to the Public.**

21      The California Subdivision Map Act, the California Environmental Quality Review Act

22  ("CEQA"), the California Public Records Act, the Ralph M. Brown Act and the City of Wasco's

23  Municipal Code all require the City to conduct a public hearing as part of the process for

24  reviewing and approving a tentative map and/or to make available to the public tentative maps

25

---

26  [8] SS 4, UMF 20; *Declaration of Jim Zervis in Support of City's Motion for Summary Judgment*, ¶ 4; Exhibit  A
   attached thereto.)

27  [9] UMF 21-22.
   [10] Plaintiff's Exhibit 1, *Declaration of Roger McIntosh*, ¶ 6; Exhibit A attached thereto.)

28  [11] Plaintiff's Exhibit 1, *Declaration of Roger McIntosh*, ¶ 6; Exhibit A attached thereto.)
   [12] Plaintiff's Exhibit 1, *Declaration of Roger McIntosh*, ¶ 6; Exhibit A attached thereto.)

1   and improvement plans that have been submitted to the City for review and/or processing.[13]  The

2   requirements of each of these statutes have been set forth more fully in the moving papers

3   accompanying the City's *Motion for Summary Judgment against Plaintiff*.  The City, thus, refers

4   the parties and the Court to the facts and arguments raised therein.  In spite of the above-

5   referenced statutes and ordinance, Martin-McIntosh submitted the tentative map it prepared for

6   the Valley Rose Estates Subdivision ("Subdivision") to the City.[14]  Furthermore, Plaintiff's only

7   evidence that he attempted to prevent any distribution of the Martin-McIntosh tentative map and

8   improvement plans consists of an agreement between Martin-McIntosh and Legacy, which

9   Plaintiff contends restricted any copying or use of his plans by persons or entities other than

10  Legacy.[15]  The Agreement, however, did not involve the City.[16]  These facts relate to the City's

11  publication and implied license affirmative defenses.

12        c.    **Construction of improvements during Legacy Era.**

13        The Subdivision improvements were substantially completed using Martin-McIntosh's

14  improvement plans during the time period Legacy owned the Subdivision.[17]   This is an

15  undisputed fact and is relevant to show that (1) there were observable physical facts on the

16  ground which NCUE's tentative map (Tentative Map for Tract No. 6451) was required to reflect

17  and which would cause its map to resemble the Martin-McIntosh tentative map (Revised

18  Tentative Map for Tract No. 4562) in some respects for reasons unrelated to copyright

19  infringement;[18] (2) that the construction of the improvements prior to NCUE's purchase of the

20  Subdivision controlled the design and layout of the Subdivision, assuming that NCUE did not

21  wish to rip out the existing improvements.[19]  These facts and points are more fully set forth in the

22  City's *Motion for Summary Judgment against Plaintiff* and in the accompanying *Statement of*

23

---

24  [13] UMF 84; *Memorandum of Points and Authorities in Support of Defendant City of Wasco's Motion for Summary Judgment, or, In the Alternative, Summary Adjudication*, at 16-19.

25  [14] UMF 25.

     [15] Exhibit 1, Declaration of Roger McIntosh,  6; Exhibit A attached thereto.; Third Amended Complaint, ¶ 15-17;

26  Plaintiff UMF 1.

     [16] Exhibit 1, Declaration of Roger McIntosh,  6; Exhibit A attached thereto.

27  [17] SS 19, 20; UMF 28-29.

     [18] UMF 28-29, 77, 79, 80.

28  [19] Northern California Universal Enterprises Co.'s *Statement of Undisputed Material Facts in Support of Summary judgment* (hereinafter "NCUE UMF") 47, 48, 68-69, 71.

     4825-3488-2564 v2                                     4

1    *Undisputed Material Facts* and *Memorandum of Points and Authorities*.  They are relevant to the

2    City's merger and independent creation affirmative defenses.

3           **d.    Facts Concerning the Substantial Differences Between the Martin-McIntosh
                    Tentative Map (Revised Tentative Map for Tract No. 5472) and Defendant**

4    **Northern California Universal Enterprises Company's Tentative Map
     (Tentative Map for Tract No.  6451).**

5

6           Exhibits A and B to the *Declaration of Chaka C. Okadigbo* and *Declaration of Steven J.*

7    *Hassing* in support of the City and NCUE's summary judgment motions, respectively, against

8    Plaintiff *Motion* highlight the numerous differences between the Martin-McIntosh tentative map

9    and NCUE's tentative map.[20]  The deposition testimony of Steven Wong[21], the City's *Separate*

10   *Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment,*

11   NCUE's *Separate Statement of Undisputed Material Facts,* and the City's *Memorandum of*

12   *Points and Authorities in Support of its Motion for Summary Judgment* similarly discuss the

13   differences between these two sets of works and the significance thereof.[22]  Furthermore, DeWalt

14   employees involved in preparing the Tentative Map for Tract No. 6451 have testified that they

15   did not copy or use the Martin-McIntosh tentative map or improvement plans to perform the

16   work informing their preparation of the Tentative Map for Tract No. 6451.[23]  The differences and

17   the testimonies of DeWalt employees that they did not copy or use the Martin-McIntosh

18   improvement plans and/or tentative map are relevant to the merger and independent creation

19   defenses.

20   **III.   THE CITY IS NOT LIABLE FOR COPYRIGHT INFRINGEMENT UNDER 17
            U.S.C. § 101 BECAUSE THE TENTATIVE MAP AND IMPROVEMENT PLANS**

21   **WERE PUBLISHED WORKS FOR PURPOSES OF THE CITY'S
     DISTRIBUTION OF THE MAP AND PLANS.**

22

23          **a.    The Martin-McIntosh Subdivision Map and Improvement Plans Were
                    Published and, Therefore, Are Not Protected By Copyright.**

24          Federal statutes provide that if a work has been published and dedicated to the public, it

25   is not protected by copyright.  17 U.S.C. § 101.  To constitute a publication, there must be a

26   _____

27   [20] SS 36, UMF 88.
     [21] SS 36; UMF 88; NCUE UMF 70.
28   [22] UMF 88; NCUE UMF 70.
     [23] SS 29-35.

4825-3488-2564 v2                                   5

1   dissemination of the work to the public in such a way as to engender the belief that it was
2   intended to make it common property. A limited publication of a work does not divest the holder
3   of the common law copyright. *American Tobacco Co. v. Werckmeister*, 207 U.S. 284, 299-300,
4   28 S. Ct. 72, 77, 52 L.Ed. 208 (1907). If a general publication occurs, any common law
5   copyright protection is lost. If, at the point a general publication occurs, a party has not obtained
6   a statutory copyright to protect its work, then the work can be copied, distributed or sold to
7   anyone. *Certified Engineering, Inc. v. First Fidelity Bank, N.A.*, 849 F.Supp. 318, 323 (D. N.J.
8   1994). "A general publication occurs when a work is made available to members of the public
9   regardless of who they are or what they will do with it." *Id.*

10       Through its nineteenth affirmative defense, the City maintains that, by submitting the
11   subdivision map and improvement plans to the City for approval and comment pursuant to a
12   review and approval process that requires making the map and plans available to the general
13   public, Martin-McIntosh published the map and plans and, therefore, no longer retains any
14   copyright interests in these works. Because these plans and the tentative map were not
15   statutorily copyrighted at the time of general publication, the City maintains that it was, and is,
16   entitled to (1) reproduce and distribute the map and plans to the public; and (2) copy and use the
17   maps and plans without violating any copyright interests.

18       The seminal case on this point is *Certified Engineering*, a case with facts mirroring those
19   in this case, where the court concluded that the submission of subdivision improvement plans
20   constituted publication. There, a civil engineering firm prepared subdivision plans that depicted
21   the layout and configuration of lots and the public improvements to be installed on a property. In
22   a lawsuit resulting after plaintiff's failure to receive final payment for the plans' preparation, the
23   defendants contended that the plans were "published" before the plaintiff registered its copyright
24   interests. The defendants' publication defense relied upon the fact that the plaintiff had
25   submitted the plans to governmental agencies which in turn made them available to the public
26   for review and comment and conducted public hearings as part of the review process. 849
27   F.Supp. at 320.

28

1    The *Certified Engineering* court accepted defendants' position, concluding that "plaintiff
2    allowed its work to enter into the public domain . . . [because it] did not make any attempt to
3    restrict the right of the general public to have access to or to copy or distribute the plans
4    submitted to the governmental agencies." *Id.* at 323.  The court found particularly persuasive
5    that plaintiff failed to have the plans "distributed only to a 'definitely selected group' or that the
6    distribution was without the right of further reproduction or distribution." *Id.*  Additionally,
7    because of subdivision improvement plans' widespread public distribution during the approval
8    and permit process and also the fact that subdivision plans are site specific, the court in *Certified*
9    *Engineering* specifically rejected the notion that subdivision plans were analogous to
10    architectural plans for the purpose of publication analysis. *Engineering, supra,* 849 F.Supp. at
11    324 (rejecting *Intown Enterprises, Inc. v. Bairns,* 721 F. Supp. 1263 (N.D. Ga. 1989) and
12    *Kunycia v. Melville Realty Co., Inc.,* 755 F. Supp. 566 (S.D.N.Y. 1990)).

13    In spite of the foregoing, Plaintiff might point to commentary from *Danielson* suggesting
14    that *Certified Engineering* was wrongly decided. *John G. Danielson, Inc. v. Winchester Conant*
15    *Properties, Inc.,* 186 F. Supp. 2d 1 (D. Mass. 2002).  However, *Danielson* never ruled on the
16    issue of whether or not the submission of **subdivision maps or improvement plans** to a
17    governmental agency in instances where the maps and plans are, in turn, made available to the
18    general public for copying and inspection constitutes a publication.  Additionally, no widespread
19    public dissemination of the architectural plans in *Danielson* was required, whereas subdivision
20    maps and improvement plans were required to be made available to the public under various
21    California statutes.  Regardless, *Danielson* dealt only with the facts before it, the submission of
22    architectural plans to a government agency, <u>not</u> subdivision maps and/or improvement plans.
23    Therefore, statements by the *Danielson* court suggesting that, had it been presented with
24    improvement plans and not architectural plans, as was the case in *Certified Engineering,* it might
25    have ruled differently are dicta and, hence, nonbinding.

26    Under *Certified Engineering,* Martin-McIntosh clearly made a general publication of the
27    tentative map and subdivision improvement plans, resulting in the Plaintiff's lack of any
28    copyright interests in these works. The facts here are identical to those presented in *Certified*

1   *Engineering* in that Plaintiff is seeking to prevent Defendants from copying, using and/or

2   distributing the Martin-McIntosh improvement plans and tentative map despite the facts that (1)

3   these were subdivision improvement plans and maps, not architectural ones; (2) the plans and

4   map were submitted to various governmental agencies and were required to be made available to

5   the public pursuant to various California statutes (California Environmental Quality Review Act,

6   the California Subdivision Map Act, the Ralph M. Brown Act, the California Public Records Act

7   and City ordinance);[24]  (3) the plans and map were submitted to the City and other governmental

8   agencies more than ten years after a certificate of copyright registration was obtained;[25] and (4)

9   Plaintiff made no attempt to prevent the City from distributing the plans and map to the general

10  public or to limit the public's right of access to the work, besides his allegation that the Martin-

11  McIntosh/Legacy contract constituted such an attempt.   Moreover, Plaintiff's argument that

12  neither he nor Martin-McIntosh lost any copyright interests merely by submitting these plans to a

13  governmental agency relies on cases that each fail to squarely address the issues presented in this

14  case and contain utterly distinct facts.  *Del Madera Properties v. Rhodes & Gardner, Inc.*, 637 F.

15  Supp. 262 (N.D. Cal. 1985) (failing to state that the publication defense is inapplicable to

16  subdivision maps and improvement plans submitted to governmental agencies); *Danielson*

17  (involving architectural not subdivision plans); *Smith v. Paul*, 174 Cal.App.2d 744 (1959)

18  (same).  Accordingly, any reproduction, distribution to the public, or copying of the map and

19  plans by the City fails to violate any copyright interest of Plaintiff as copyright law does not

20  protect the tentative map and subdivision improvement plans at issue in this case.

21      b.    <u>**The City Was Not Barred from Distributing the Martin-McIntosh**</u>
            <u>**Improvement Plans And Tentative Map.**</u>
22

23      Insofar as Plaintiff complains that the City unlawfully distributed the Martin-McIntosh

24  improvement plans and tentative map to Defendants NCUE, Lotus and/or DeWalt, the City's

25  publication defense defeats such a claim.   The cases that Plaintiff cited do not support any

26  argument that the defense is inapplicable to copyright <u>distribution</u> claims.   In fact, Plaintiff

27

28  [24] SS 2; UMF 84; *Memorandum of Points and Authorities in Support of Defendant City of Wasco's Motion for Summary Judgment*, at 16-20.
    [25] SS 1;UMF 23, 24, 26; NCUE UMF 14, 15; *Plaintiff's Separate Statement of Undisputed Material Facts* 27.

4825-3488-2564 v2                                                   8

1   curiously relies on *Danielson*, a case that specifically states that distribution, as distinct from

2   copying of architectural plans, is permitted once such plans have been turned over to a

3   government agency.  186 F.Supp. at 58-59  (stating that once a copyright owner makes a work

4   available to the government, "the issue is no longer whether the people will have access to the

5   work, but rather whether they may copy the work.")

6       *Danielson* involved the use of the plaintiff's architectural plans and drawings to complete

7   a condominium project without his permission.  Among other defenses, the defendant owner of

8   the condominium project asserted that the plaintiff "published" the plans and drawings by

9   submitting them to the Town of Winchester.  186 F. Supp. 2d at 8.  The court ruled that the

10  plaintiff retained the right to prohibit the copying and use of his plans and drawings, but noted

11  that the issue of whether or not the plans could be distributed was a different matter altogether

12  "because it would be completely contrary to the copyright owner's interest to prevent broad

13  dissemination of the work, as this is presumably the way the copyright owner will attract new

14  consumers of the work."  *Id.*.  Furthermore, because *Danielson* did not rule specifically on

15  whether governmental agencies may distribute maps and plans to the public, its ruling cannot be

16  construed as barring such a distribution in instances where the maps and plans have already been

17  broadly disseminated to the public.

18      Plaintiff's cited cases do not contradict *Danielson*'s essential lesson; that copyright law

19  does not proscribe a public agency's distribution of a subdivision improvement plan and map.

20  For example, while *Del Madera* affirmed that a subsequent developer of property was not

21  permitted **to copy and/or use** a map that a prior developer prepared, it not only did not address

22  the issue of publication in the context of reproduction and distribution of copyrighted works by

23  public agencies, but simply noted the jury had decided the issue on substantial evidence.  637 F.

24  Supp. at 264.  Similarly, the other cases that Plaintiff cited involved instances in which a plaintiff

25  was suing a defendant for <u>using or copying</u> **architectural** plans and/or drawings instead of

26  <u>distributing</u> them.  As such, besides *Danielson*, Plaintiff's cited cases fail to provide any

27  guidance to the extent to which access to plans and drawings that have already been submitted to

28  public agencies and provided to the general public may be restricted, if at all.

1    Based on the foregoing and on the above-quoted language from *Danielson*, the City may

2    rely upon the defense of publication to defeat any claim by Plaintiff that the City unlawfully

3    distributed copies of the improvement plans and tentative map to NCUE, Lotus Developments

4    and/or DeWalt.   Martin-McIntosh lost the right to prohibit the public's **access** to the Martin-

5    McIntosh improvement plans and tentative map once they were submitted to the City for review

6    and processing and thereafter made available to the public.

7    **IV.    THE CITY ACQUIRED THE MARTIN-MCINTOSH IMPROVEMENT PLANS**
     **IN CONNECTION WITH ITS ACQUISITION OF PUBLIC IMPROVEMENTS**
8    **AND, THEREFORE, THE PLANS WERE DEDICATED TO THE PUBLIC.**

9    In addition to the City's publication based arguments above, the City further submits that,

10   under the *Acquisition Agreement*, the Martin-McIntosh improvement plans were sold to the

11   City.[26]  Martin-McIntosh participated in and acquiesced to the terms of the *Agreement*.[27]  Those

12   improvements are public improvements undeniably intended to be owned by the City.

13   Accordingly, the plans from which they were built and for which the City paid were dedicated to

14   the public and, therefore, at least for all purposes related to the City's use concerning the

15   Subdivision, published.

16   As such, the City must be able to use the plans for any purpose related to the

17   improvements which were constructed thereunder.   Any conclusion to the contrary would be

18   absurd.   For example, if a developer wished to develop an adjacent parcel, the developer would

19   have to connect to the Parcel 1 improvements.   Would the City be infringing on a copyright if it

20   were to distribute the plans to the new developer to enable the developer to design infrastructure

21   compatible with the existing improvements? Certainly not.

22   **V.    MARTIN-MCINTOSH GRANTED THE CITY AN IMPLIED NONEXCLUSIVE**
     **LICENSE TO DISTRIBUTE ITS IMPROVEMENT PLANS**
23

24   Plaintiff erroneously contends that the Court should look to the Martin-McIntosh-Legacy

25   agreement in determining the existence of an implied license.   The difficulty with Plaintiff's

26   argument is that the barometer of whether or not an implied license was granted is not Martin-

27

28   [26] SS 3, 4.
     [27] SS 4.

**DEFENDANT CITY OF WASCO'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT**

1    McIntosh's contract with Legacy - in which the City did not participate – but rather the City's

2    dealings with Martin-McIntosh. *Foad Consulting Group v. Musil Govan Azzalino*, 270 F.2d 821

3    (9th Cir. 2001) (holding that nonexclusive copyright licenses may be granted orally or by

4    implication); *Effects Associates, Inc. v. Cohen*, 908 F.2d 555, 558 (9th Cir. 1990).  Here, the

5    evidence is clear that Martin-McIntosh had knowledge and participated in forming the

6    *Acquisition Agreement* under which it received at least $98,000 for its improvement plans

7    specifically and $800,000 for services rendered in connection with the Subdivision.[28]  Moreover,

8    Martin-McIntosh submitted the tentative maps to the City, fully aware that they would be treated

9    as public records and disseminated to the public under various California statutes.  Based on

10   these facts, Martin-McIntosh certainly granted the City an implied nonexclusive license to use

11   and distribute the plans and the tentative map.[29]

12       Plaintiff's false characterization of *John G. Danielson v. Winchester-Conant Properties,*

13   *Inc.*, 186 F.Supp.2d 1 (D. Mass. 2002) as holding that "plans submitted to a planning board did

14   not grant an implied license to the town"  fails to save his argument that the City holds no

15   implied license. *Plaintiff's Memorandum of Points and Authorities*, p. 10, lines 19-20.  Neither

16   did the *Danielson* court make any such ruling, nor was the town even a party.  In fact, the court

17   indicated that had the City been sued for distribution of plans and drawings, the plaintiff would

18   not have prevailed. *Danielson*, 186 F. Supp. at 58-59 (stating that upon the submission of plans

19   and drawings to a public agency, "the issue is no longer whether the people will have access to

20   the work but rather whether they may copy the work").

21       Moreover, Plaintiff relies on cases that are blatantly distinguishable from this case for his

22   assault on the City's implied license defense. (*Plaintiff's Memorandum of Points and*

23   *Authorities*, pp. 10-11) (citing *Danielson*; *Johnson v. Jones*, 149 F.3d 494 (6th Cir. 1998) (failing

24

---

[28] SS 3, 4, 5.

25   [29] Plaintiff's contention that the City never sought his permission, as distinct from Martin-McIntosh's permission, is
     not only irrelevant and misleading, but is also unsupported by any facts.  Since the City already obtained the
26   improvement plans from Martin-McIntosh and, by Martin-McIntosh's conduct, an implied nonexclusive license to
     use and distribute the plans, it did not need to obtain any further approval from Plaintiff.  Moreover, although
27   Plaintiff may point to the Martin-McIntosh/Legacy contract as evidence of Martin-McIntosh's intent to prevent the
     distribution of the Martin-McIntosh plans and map to the public, these dealings did not involve the City.  Plaintiff
28   has provided no evidence that Martin-McIntosh communicated to the City any expectation that the improvement
     plans not be distributed to the public or that the City distribute them under limited circumstances only.

1   to involve a claim against a public agency for providing the plans to the infringer))   In

2   *Danielson*, the "clear intent of the parties . . . was that [the Plaintiff] owned *all* of the documents

3   prepared in connection with the [p]roject." *Id.* at 19, n. 3.   This intent was manifested in the

4   contract between the parties which specifically provided that: (a) the drawings produced in

5   connection with the project "are and shall remain the property of [Plaintiff]"; (b)"the Drawings .

6   . . shall not be used . . . on other projects, for additions to this Project, or for completion of this

7   Project by others"; and (c) that Plaintiff owned the drawings prepared in anticipation of "filing

8   documents required for the approval of governmental authorities having jurisdiction over the

9   Project." *Danielson* at \*19 & n. 3.   Similarly, the Court in *Johnson* noted that "almost every

10  objective fact . . . point[ed] away from the existence of an implied license" including: (a) the fact

11  that the plaintiff submitted two contracts that contained express provisions allowing the plaintiff

12  to retain ownership of the drawing; (b) said provisions would not allow others to use the drawing

13  for completion of the project without the Plaintiff's written permission; and (c) that the plaintiff

14  there was not paid. *Johnson* at 499-501.

15      Here, the closest analogous agreement, namely the *Acquisition Agreement*, is utterly

16  devoid of any provision giving Martin-McIntosh the right to retain ownership over the plans.

17  While the agreements in *Danielson* and *Johnson* forbade the completion of the project there by

18  others, the *Acquisition Agreement* here specifically authorized the City to complete any

19  improvements that the Developer failed to complete.[30]   Most importantly, unlike in *Danielson* or

20  *Johnson*, the Plaintiff received at least $98,000.00 of cold, hard cash specifically for his plans.[31]

21  Had it been the parties' intent that Martin-McIntosh receive approximately $98,000.00 of the

22  City's funds yet retain the right to require that the City seek its permission before using the plans

23  for anything other than a wall hanging or placemat, "one would expect to see the requirement

24  spelled out explicitly in the agreement." *Foad, supra*, 270 F.3d at 829.[32]

25

26

---

27  [30] SS 6.

    [31] SS 5.

28  [32] Also, while the Defendants in this case contest that they used or copied Plaintiff's plans, in *Johnson* a defendant
    admitted copying and using plans. *Johnson* at 499-500.

4825-3488-2564 v2
                                        12

1   In the end, Plaintiff's contention that the City never sought his permission to use the

2   Martin-McIntosh improvement plans is a red herring.  The City did not need his permission,

3   having obtained an implied nonexclusive license from Martin-McIntosh through the purchase of

4   the improvement plans and the publication of both plans and Tentative Map for Tract No. 5472

5   to the public.

6   **VI.    THE CITY WAS PERMITTED TO USE AND DISTRIBUTE THE MARTIN-**

7   **MCINTOSH IMPROVEMENT PLANS PURSUANT TO THE ABANDONMENT DOCTRINE.**

8   The defense of abandonment is invoked in instances where an owner of copyrighted

9   works intends to surrender his work and carries out an overt act evidencing such intent.  4

10   Melville B. Nimmer & David B. Nimmer, *Nimmer on Copyright*, § 13.06 (2001); *Micro Star v.*

11   *Formgen, Inc.*, 154 F.3d 1107, 1114 (9th Cir. 1998).   Thinking that the City's abandonment

12   defense is supported solely by the fact that Martin-McIntosh submitted its tentative map and

13   improvement plans to a governmental agency, Plaintiff concludes that this fact does not

14   constitute an overt act of abandonment.  Again, however, Plaintiff omits or misunderstands the

15   facts supporting the City's abandonment defense.

16   The City paid Martin-McIntosh for and acquired the improvement plans from Martin-

17   McIntosh when it purchased the Subdivision improvements.  Martin-McIntosh's delivery of the

18   plans to the City in exchange for payment constitutes an overt act of abandonment.

19   *Danielson*, *Del Madera* and *Smith v. Paul*, (erroneously cited in Plaintiff's brief as *Paul*

20   *v. Pederson*) are inapposite to the facts before this Court.  None of these cases remotely suggest

21   that an owner of plans and drawings who receives payment for them and subsequently turns

22   them over to another party pursuant to contract does not thereby abandon these plans and

23   drawings.

24   Furthermore, these cases have ruled on the issue of abandonment only in the context of

25   clarifying whether or not plans and drawings submitted to a governmental agency may be **copied**

26   by persons or entities seeking to spare themselves or itselves the expense or trouble of creating

27   original drawings and/or plans.  None of these cases state that the submission of plans and

28   drawings to a governmental agency does not constitute abandonment from the perspective of

1   permitting the governmental agency to distribute the plans and drawings.  Since *Danielson* states

2   that "the issue is no longer whether the people will have access to the work but rather whether

3   they may copy the work," it stands to reason that submitting plans and drawings to a

4   governmental agency, while knowing that they will be made available to the public under

5   various governmental statutes, constitutes an overt act of abandonment.

6   **VII.   THE CITY WAS PERMITTED TO USE AND DISTRIBUTE THE MARTIN-
         MCINTOSH IMPROVEMENT PLANS PURSUANT TO THE FIRST SALE
7        DOCTRINE.**

8          The first sale doctrine allows the purchaser of a copyrighted work to transfer (*i.e.,* sell or

9   give away) a particular lawfully-made copy of the copyrighted work without permission once it

10  has been obtained.   17 U.S.C.  § 109.   Plaintiff baldly declares that the Martin-McIntosh

11  improvement plans were never sold and, thus, the first sale doctrine is inapplicable.   This

12  statement is demonstrably false, as it is clear that the City paid Martin-McIntosh for the

13  improvement plans and Martin-McIntosh intended for the City to acquire them as part of the

14  Acquisition Agreement.[33]   Having paid Martin-McIntosh for the plans, therefore, the City was

15  permitted to provide a copy of the plans to NCUE, Lotus Developments and/or DeWalt

16  engineering under the first sale doctrine.

17  **VIII.   THE MERGER DEFENSE IS A VIABLE DEFENSE IN THIS ACTION**

18         The City's merger defense remains a viable defense based on the facts adduced during

19  discovery.   The merger doctrine states that where an idea and its expression are inseparable, the

20  courts will not grant copyright protection.  *Johnson Controls, Inc. v. Phoenix Control Systems,*

21  *Inc.,* 886 F.2d 1173, 1175 (9th Cir. 1971).  Plaintiff contends that the Subdivision improvements

22  could have been torn out and the Subdivision redesigned differently and, thus, the merger

23  doctrine is inapplicable.

24         Plaintiff's contention that the merger doctrine does not apply demonstrates a profound

25  misunderstanding of the effect Legacy's work had on the Subdivision had, pursuant to the

26  Martin-McIntosh improvement plans and with Martin-Mcintosh's blessing.   Contrary to

27  Plaintiff's framing of the argument, the issue is not whether the City's adoption of a design

28

---

[33] SS 3-5.

4825-3488-2564 v2                                          14

**DEFENDANT CITY OF WASCO'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

1   scheme caused the merger doctrine to apply – rather it is whether Legacy's substantial physical

2   work on the property that left objective facts in the ground – sewer, water, storm drain, paving,

3   curbs, sidewalks, and other improvements – caused its application.  Unlike the Plaintiffs in *Del*

4   *Madera* and *John G. Danielson*, Plaintiff not only designed a tentative map, but also allowed

5   Legacy to use it to **develop the Subdivision**.  *John G. Danielson, Inc. v. Winchester-Conant*

6   *Properties, Inc.*, 186 F. Supp. 2d 1, 24 (D. Mass. 2002); *Del Madera Properties v. Rhodes and*

7   *Gardner*, 637 F. Supp. 262, 264 (N.D. Cal. 1985).  Because copyright law does not protect

8   drawing what exists, any incorporation in subsequent maps of property improvements that were

9   previously developed in accordance with the Martin-McIntosh improvement plans and with

10  Martin-McIntosh's permission cannot violate Plaintiff's copyright.  *Satava v. Lowry*, 323 F.3d

11  805, 810 (9th Cir. 2003) holding that objective "facts" and ideas are not copyrightable).

12       As such, the inquiry as to the merger doctrine's applicability becomes whether, based on

13  the condition of the Subdivision at the time Legacy stopped developing it, there were effective

14  manners of creating plans distinct from Plaintiff's allegedly copyrighted map.  *Kern River Gas*

15  *Transmission Co. v. Coastal Corp.*, 899 F.2d 1458, 1464 (5th Cir. 1990) (finding that where a

16  plaintiff's map contained the only effective way to express a pipeline's location, the "idea" of the

17  location and the expression of that idea embodied in a map were inseparable and not subject to

18  protection).  The evidence clearly shows that there was not and Plaintiff has not disputed this.  At

19  Legacy's completion of work on the property, the water, sewer, storm drain, streets lighting,

20  block walls and landscaping improvements that were designed for 68 lots were already in

21  place.[34]  A map incorporating these facts, such as the same lot and street layout idea as shown on

22  Tentative Map for Tract No. 5472, was the only effective way to express the idea of a

23  subdivision containing 68 lots arranged in a manner to take advantage of the existing

24  improvements that Legacy put in place.[35]  Accordingly, the merger doctrine applies to bar

25  Plaintiff's copyright claims.

26

27

28  [34]SS 19-20;  UMF 28-29.
    [35] SS 37.

1    Once more, McIntosh's reliance on *Del Madera* is misplaced. There, the developer

2  admittedly used the copyrighted map and argued that he had no choice but to do so. Here,

3  NCUE did not use the Martin-McIntosh tentative map. It paid DeWalt to independently create a

4  new one, which, as a matter of fact, is substantially different from Martin-McIntosh's map.[36]

5  **IX.    THE FACTS ADDUCED DURING DISCOVERY SUPPORT THE CITY'S
           DEFENSE OF INDEPENDENT CREATION.**

6

7    Because Plaintiff apparently confuses the word "and" for the word "or," its contention

8  that the City can show "no evidence that the Tentative Map for Tract No. 6451 was

9  independently created" is fatally flawed. As Plaintiff notes in its Motion, to prove copyright

10  infringement, this Court will likely apply a test for indirect infringement, which is that "the

11  defendant 1) had access to the copyrighted work **and** that the defendant's work is 2)

12  'substantially similar' to the [P]laintiff's work." (*Plaintiff's Memorandum of Points and*

13  *Authorities*, at 16) (citing *Lanard Toys Ltd. v. Novelty, Inc.*, 511 F. Supp. 2d 1020, 1031 (C.D.

14  Cal. 2007)) (emphasis added). As noted in *Lanard*, **which Plaintiff specifically cited**, the

15  indirect test for copyright infringement is a **two-part test;** in other words, Plaintiff must show

16  not only that Defendants had "access," **but also** that the Tentative Map for Tract No. 6451 is

17  substantially similar to the Revised Tentative Map for Tract No. 5472. Yet Plaintiff bases its

18  entire argument that Defendants can show no evidence that the Tentative Map for Tract No. 6451

19  was independently created on evidence that the Defendants had access to the Revised Tentative

20  Map for Tract No. 5472; Plaintiff completely fails to address the *Lanard*'s second requirement of

21  substantial similarity.

22    In fact, the City and the other Defendants have already presented significant evidence on

23  the absence of substantial similarity. Specifically, Steve Wong's deposition, from pages 67 to 79

24  and 103 to 120, is replete with extensive examples on the major differences between Revised

25  Tentative Map for Tract No. 5472 and Tentative Map for Tract No. 6451.[37] Further, the exhibits

26  "A" and "B" to the Okadigbo and Hassing declarations in support of the City and NCUE's

27

28  [36] NCUE UMF SS 35.
    [37] SS 36; UMF  88; NCUE UMF 70.

**DEFENDANT CITY OF WASCO'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

1  summary judgment motions substantiate over 250 differences, not the least of which is that

2  Revised Tentative Map for Tract No. 5472 was a 69 lot map providing for 96 apartments in

3  addition to 68 homes and that Tentative Map for Tract No. 6451 was a 68 lot map.[38]  To aid the

4  Court in discerning the differences between the Tentative Map for Tract No. 6451 and the

5  Revised Tentative Map for Tract No. 5472, the City previously submitted color-coded versions

6  exhaustively indicating the differences between the two maps.[39]  With these facts in the record, it

7  is perhaps no mystery why Plaintiff neglected *Lanard's* second prong; it is not possible to

8  massage the above-listed differences away.  Because Plaintiff not only failed to, but also cannot,

9  demonstrate that Tentative Map for Tract No. 6451 and Revised Tentative Map for Tract No.

10  5472 are substantially similar, he cannot meet his burden to show that the City cannot establish

11  its independent creation affirmative defense.   Accordingly, Plaintiff's Motion for Summary

12  Judgment must fail as to the City's eighth affirmative defense.[40]

13  **X.    CONCLUSION**

14  Based on the foregoing arguments and on all other documents accompanying the City's

15  *Opposition to Plaintiff's Motion for Summary Judgment*, the City requests that the Court deny

16  Plaintiff's *Motion for Summary Judgment*.

17  DATED:  October 21, 2009                     GCR, LLP

20  By: _____
                                              CHAKA C. OKADIGBO
21                                            Attorneys for Defendant
                                              CITY OF WASCO

---

[38] UMF 88; *Declaration of Chaka C. Okadigbo in Support of Defendant City of Wasco's Summary Judgment Motion*, ¶ 3; Exhibits A and B attached thereto; *Declaration of Steven J. Hassing in Support of Defendant's Summary Judgment Motion*, ¶ 3; Exhibits A and B attached thereto.
[39] *Declaration of Chaka C. Okadigbo in Support of Defendant's Summary Judgment Motion*, ¶ 3; Exhibits A and B attached thereto; Declaration of *Steven J. Hassing in Support of Defendants' Summary Judgment Motion*, ¶ 3; Exhibits A and B attached thereto.
[40] McIntosh's argument that Jeff Gutierrez "admitted" "using" the Revised Tentative Map for Tract No. 5472 in creating the Tentative Map for Tract No. 6451, Gutierrez's declaration, filed in support of NCUE's opposition, makes it clear that by "use" he was only referring to utilizing McIntosh's map as a reference to see if the nearly-completed Map 6451 was missing any items. *Declaration of Jeff Gutierrez in Opposition in Support of Opposition to McIntosh's Summary Judgment Motion*, ¶¶ 3, 4.

4825-3488-2564 v2                                17

**PROOF OF SERVICE**
**(FRCP No. 5(b)(2)(E)**

I declare that I am over the age of eighteen (18) and not a party to this action. My business address is 500 South Grand Avenue, Suite 1100, Los Angeles, California 90071.

On **October 21, 2009**, I served the following documents: **DEFENDANT CITY OF WASCO'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** on the interested parties in this action by placing a true and correct copy of such document, enclosed in a sealed envelope, addressed as follows:

Jeffrey Travis
Borton Petrini, LLP
1600 Truxtun Ave.
Bakersfield, CA 93301
jtravis@bortonpetrini.com

Steven J. Hassing
Law Offices of Steven J. Hassing
425 Calabria Court
Roseville, CA 95747
stevehassing@yahoo.com

William L. Alexander
Alexander & Associates
1925 G Street
Bakersfield, CA 93301
walexander@alexander-law.com

( X )  **BY MAIL**: I am readily familiar with the business' practice for collection and processing of correspondence for mailing with the United States Postal Service. I know that the correspondence was deposited with the United States Postal Service on the same day this declaration was executed in the ordinary course of business. I know that the envelope was sealed and, with postage thereon fully prepaid, placed for collection and mailing on this date in the United States mail at Los Angeles, California.

( X )  **BY ELECTRONIC SERVICE:** Pursuant to Fed. R. Civ. P. 5(b)(2)(E) and Local Court Rules(s), the foregoing document will be served by the court via CM/ECF. Pursuant to the CM/ECF docket for this case proceeding the following person(s) are on the Electronic Mail Notice List to receive ECF transmission at the email address(es) indicated above.

( )  (State)  I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

( X )  (Federal)  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed **October 21, 2009**, Los Angeles, California.

**Carolyn Dominguez**