**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

ROGER McINTOSH,

Plaintiff,

vs.

NORTHERN CALIFORNIA UNIVERSAL ENTERPRISES, INC., et al,

Defendants.
_______________________________________/

AND RELATED CROSS-ACTION.
_______________________________________/

CASE NO. CV F 07-1080 LJO GSA

**DECISION ON WASCO'S SUMMARY JUDGMENT MOTION ON INDEMNITY**
(Doc. 140.)

**INTRODUCTION**

Defendant/cross-complainant City of Wasco ("Wasco") seeks summary judgment that defendant/cross-defendant Northern California Universal Enterprises, Inc. ("NCUE") is contractually obligated to indemnify Wasco's defense of plaintiff Roger McIntosh's copyright infringement claims against Wasco. NCUE responds that the indemnity provisions at issue do not require NCUE to indemnify Wasco's intentional acts, in particular, those committed prior to the indemnity provisions'

effectiveness. This Court considered Wasco's summary judgment motion on the record[1] and without oral argument, pursuant to Local Rule 78-230(h). For the reasons discussed below, this Court DENIES Wasco summary judgment on its indemnity claims against NCUE.

## BACKGROUND

### Original Subdivision Development

In 1992, Mr. McIntosh, through his former partnership, prepared a tentative map and improvement plans for the Valley Rose Estates subdivision ("subdivision") in Wasco. After Wasco approved the tentative map and improvement plans, construction of subdivision improvements started but ceased after a decline in the real estate market.

In 2002, Wasco purchased the subdivision at a tax sale and sought a developer to complete the subdivision's development. In November 2003, Wasco circulated a developer information package which included the tentative map.

### Subdivision Purchase And Indemnity Obligations

Wasco entered into an April 6, 2004 Purchase and Sale Agreement with Wasco Project, LLC ("Wasco Project") to purchase the subdivision. The Purchase and Sale Agreement obligated Wasco Project to "accept the Property and any improvements thereon or appurtenances thereto 'AS IS.'" Pursuant to the Purchase and Sale Agreement, Wasco Project acknowledged "that the Property is in a blighted condition and is an old subdivision site that has not been completed which contains infrastructure improvements that have been constructed and Buyer [Wasco Project] accepts the responsibility for taking any and all actions necessary regarding security and maintenance of the improvements. Buyer further acknowledges that the Subdivision Map has not been finalized and the time for finalizing said Map has expired and it is Buyer's responsibility to obtain a new subdivision map or maps for the Property."

The Purchase and Sale Agreement included an indemnity clause by which Wasco Project agreed

---

[1] This Court carefully reviewed and considered all arguments, points and authorities, declarations, testimony, statements of undisputed facts and responses thereto, objections and other papers filed by the parties. Omission of reference to an argument, document, objection or paper is not to be construed to the effect that this Court did not consider the argument, document, objection or paper. This Court thoroughly reviewed, considered and applied the evidence it deemed admissible, material and appropriate for summary judgment. This Court does not rule on objections in a summary judgment context.

"to indemnify and hold Seller [Wasco] harmless from and against any and all claims, demands, losses, obligations, costs and expenses (including without limitation attorneys' fees and court costs) which **arise out of (a) the ownership or operation of the Property after Closing** . . ." (Bold added.)

Pursuant to a May 18, 2004 assignment, Wasco Project assigned to NCUE all "rights, title and interest in and any and all obligations" under the Purchase and Sale Agreement. NCUE notes that when it acquired its subdivision interest, Wasco knew that Mr. Martin's former partnership claimed a copyright interest in the tentative map due to litigation between Wasco and Mr. Martin's former partnership.

During fall 2006, NCUE renewed subdivision construction.

Wasco and NCUE entered into a February 20, 2007 Subdivision Agreement which included the following "Indemnification Provisions":

> The Subdivider [NCUE] shall and it does agree to hold harmless and indemnify the City and its Council, officers and employees from every liability, claim, suit or demand which may arise or may be made by reason of:
>
> (1) **Any act, omission or neglect of the Subdivider**, its engineers, employees, agents or contractor . . .
>
> The Subdivider at its own cost, expense and risk shall defend all legal proceedings which may be brought against the City, its Council, officers and employees on any liability suit, claim or demand which it has agreed [to] indemnify them against herein, and shall satisfy any resulting judgment that may be rendered against any of them.[2] (Bold added.)

**<u>Mr. McIntosh's Claims</u>**

On July 26, 2007, Mr. McIntosh filed his original complaint to allege that NCUE infringed on his copyright by developing the subdivision with his copyright protected tentative map and subdivision plans. On June 12, 2008, Mr. McIntosh filed a first amended complaint to add Wasco as a defendant and to allege direct and contributory infringement claims against Wasco.

Mr. McIntosh proceeds on his third-amended complaint ("TAC") against NCUE, Wasco and other defendants to allege "Defendants' construction of the Subdivision is based on landscape and subdivision designs substantially similar to the subdivision and landscape design conceived and created by McIntosh that is represented in the plans and that is the subject of Copyright Registration Certificate

[2] The indemnity provisions in the Purchase and Sale and Acquisition Agreements will be referred to collectively as the "indemnity provisions."

No. VAU-721-180." The TAC's (first) direct infringement claim alleges that the "copying of the Plans by defendants constitutes infringement of McIntosh's registered copyright and the technical drawings depicted in the Plans, in violation of the Copyright Act." The TAC's (second) contributory infringement claim alleges that Wasco "knowingly and materially contributed to and induced the infringing conduct" of NCUE.

The TAC seeks a declaration "that the defendants have willfully infringed McIntosh's exclusive rights in the copyrighted material" and an injunction to "[t]ake all steps necessary to remove any structures or design elements that have been copied from the Plans or built based on the Plans." The TAC further seeks actual and statutory damages and a "portion of the profits earned by Defendants from the creation and commercial exploitation of the copied Plans."

**Wasco's Cross-Claim**

Wasco notes that NCUE has denied Wasco's requests to defend Mr. McIntosh's claims against Wasco and that Wasco has incurred defense costs. Wasco proceeds on its Second Amended Cross-Complaint ("SACC") to allege that Mr. McIntosh's claims against Wasco triggers NCUE's obligations to indemnify and defend Wasco given that Wasco is sued as a result of NCUE's unpermissive use of Mr. McIntosh's tentative map and improvement plans. The SACC seeks indemnification for contributory copyright infringement and defense costs to resolve Mr. McIntosh's contributory infringement claim.

**DISCUSSION**

**Summary Judgment/Adjudication Standards**

Wasco seeks summary judgment in that NCUE's obligations to indemnify and defend Wasco raise "a question of law" of interpretation of the indemnity provisions in the Purchase and Sale and Subdivision Agreements. NCUE challenges summary judgment in that Wasco's alleged copyright infringement is beyond the indemnity provisions' scope.

F.R.Civ.P. 56(a) permits a "party claiming relief" to seek "summary judgment on all or part of the claim." Summary judgment is appropriate when there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. F.R.Civ.P. 56(c); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The purpose of summary judgment

is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec.,* 475 U.S. at 586, n. 11, 106 S.Ct. 1348; *International Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985).

On summary judgment, a court must decide whether there is a "genuine issue as to any material fact," not weigh the evidence or determine the truth of contested matters. F.R.Civ.P. 56(c); *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598 (1970); *Poller v. Columbia Broadcast System*, 368 U.S. 464, 467, 82 S.Ct. 486 (1962); *Loehr v. Ventura County Community College Dist.*, 743 F.2d 1310, 1313 (9th Cir. 1984). The evidence of the party opposing summary judgment is to be believed and all reasonable inferences that may be drawn from the facts before the court must be drawn in favor of the opposing party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986); *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-252, 106 S.Ct. 2505.

To carry its burden of production on summary judgment, a moving party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990). "[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." *Nissan Fire*, 210 F.3d at 1102; *see High Tech Gays*, 895 F.2d at 574. "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

"If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1102-1103; *see Adickes*, 398 U.S. at 160, 90 S.Ct. 1598. "If, however, a moving party carries its burden of production, the nonmoving party must produce

evidence to support its claim or defense." *Nissan Fire*, 210 F.3d at 1103; *see High Tech Gays*, 895 F.2d at 574. "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make the showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.")

"But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion." *Nissan Fire*, 210 F.3d at 1103; *see Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-289, 88 S.Ct. 1575, 1592 (1968)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

As discussed below, Wasco fails to establish that it is entitled to summary judgment on its indemnity claims as a matter of law.

**Interpretation Of Indemnity Provisions**

Wasco contends that under contract interpretation rules, the indemnity provisions obligate NCUE to indemnify and defend Wasco. Wasco notes that NCUE "clearly intended to indemnify the City for activities related to NCUE's acquisition of a new subdivision map."

NCUE responds that Wasco "committed its own independent wrongful acts, separate and apart from anything that Northern [NCUE] is accused of" and that NCUE "did not intend to indemnify Wasco from the seemingly intentional infringement which occurred between November, 2003 and May, 2004."

An indemnity obligation "may arise by virtue of express contractual language establishing a duty in one party to save another harmless upon the occurrence of specified circumstances." *Bay Development, Ltd. v. Superior Court*, 50 Cal.3d 1012, 1029, 269 Cal.Rptr. 720 (1990). An indemnity claim based on an express contract to indemnify is "an express contractual indemnity claim." *Bay Development*, 50 Cal.3d at 1029, 269 Cal.Rptr. 720. When parties expressly contract for indemnity, "the

extent of that duty must be determined from the contract." *Markley v. Beagle*, 66 Cal.2d 951, 961, 59 Cal.Rptr. 809 (1967).

An indemnity provision "is construed under the same rules as govern the interpretation of other contracts. Effect is to be given to the parties' mutual intent ([Cal. Civ. Code,] § 1636), as ascertained from the contract's language if it is clear and explicit ([Cal. Civ. Code,] § 1638). Unless the parties have indicated a special meaning, the contract's words are to be understood in their ordinary and popular sense. ([Cal. Civ. Code,]§ 1644)." *Crawford v. Weather Shield Mfg. Inc.*, 44 Cal.4th 541, 552, 187 P.3d 424 (2008).

The California Supreme Court has further explained:

> Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. (Civ.Code, § 1636.) Such intent is to be inferred, if possible, solely from the written provisions of the contract. ( *Id.*, § 1639.) The "clear and explicit" meaning of these provisions, interpreted in their "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage" ( *Id.*, § 1644), controls judicial interpretation. ( *Id.*, § 1638.) Thus, if the meaning a layperson would ascribe to contract language is not ambiguous, we apply that meaning.

*Santisas v. Goodin*, 17 Cal.4th 599, 608, 951 P.2d 399 (1998).

"When the parties knowingly bargain for the protection at issue, the protection should be afforded." *Rossmoor Sanitation, Inc. v. Pylon, Inc.*, 13 Cal.3d 622, 633, 119 Cal.Rptr. 449 (1975).

However, in noninsurance contexts, the indemnitee "may often have the superior bargaining power" and "may use this power unfairly to shift to another a disproportionate share of the financial consequences of its own legal fault." *Crawford*, 44 Cal.4th at 552, 187 P.3d 424. In *Crawford*, 44 Cal.4th at 552, 187 P.3d 424, the California Supreme Court further explained:

> This public policy concern influences to some degree the manner in which noninsurance indemnity agreements are construed. For example, it has been said that if one seeks, in a noninsurance agreement, to be indemnified for his or her own active negligence, or regardless of the indemnitor's fault – protections beyond those afforded by the doctrines of implied or equitable indemnity – language on the point must be particularly clear and explicit, and will be construed strictly against the indemnitee.

Wasco argues that the indemnity provisions' "plain meaning" is "clear" and that there is no indication that the indemnity provisions "are to be understood other than by the plain meaning of their words." Wasco contends that Mr. McIntosh's claims invoke the indemnity provisions in that the claims

relate to NCUE's "ownership or operation" of the subdivision and NCUE's "act, omission or neglect," including "alleged use of McIntosh's drawings to develop a new subdivision map." Wasco attributes NCUE to have contemplated that NCUE "would be obligated to indemnify the City for disputes stemming from NCUE's actions arising from ownership of the Subdivision, including the need to obtain a new subdivision map." Wasco further attributes to NCUE knowledge that the subdivision was incomplete and responsibility to obtain a new subdivision map.

Wasco continues that NCUE does not escape indemnity liability based on Wasco's alleged negligence. "Recent cases have embraced the rule that the intent of the parties controls and have found indemnity agreements apply to the indemnitee's active negligence even where the indemnity agreement does not expressly address the issue of the indemnitee's negligence." *Rooz v. Kimmel*, 55 Cal.App.4th 573, 584, 64 Cal.Rptr.2d 177 (1997). "[I]ndemnity should be afforded under any circumstances where to do so furthers the manifest intent of the parties to the contract and where the loss sustained would not have occurred without the indemnitor's negligence." *Morton Thiokol, Inc. v. Metal Building Alteration Co.*, 193 Cal.App.3d 1025, 1029, 238 Cal.Rptr. 722 (1987). Wasco characterizes NCUE's alleged negligence as "the source of liability" against Wasco.

NCUE responds that Mr. McIntosh sues Wasco because Wasco "infringed Plaintiff's copyright <u>and</u> also contributed, by separate wrongful acts, to Northern's [NCUE's] alleged infringement." (Underlining in original.) NCUE argues that it is not obligated to defend or indemnify Wasco "for its own separate <u>intentional</u> wrongful acts." (Underlining in original.) NCUE notes that there are no "acts, omissions or neglect" of NCUE "that resulted in McIntosh suing Wasco" given that Mr. McIntosh alleges "only intentional acts."

The indemnity provisions obligate NCUE to indemnify Wasco for claims arising from "the ownership or operation of the Property after Closing" and for "[a]ny act, omission or neglect" of NCUE. Wasco appears to claim that its potential liability arises solely from NCUE's wrongs, not Wasco's wrongs. Wasco appears to seek to shift all of its potential liability to NCUE. Wasco conveniently ignores the thrust of McIntosh's claims. The TAC's (first) direct infringement claim alleges that the "copying of the Plans by defendants constitutes infringement of McIntosh's registered copyright and the technical drawings depicted in the Plans." The claim does not single out NCUE and accuses Wasco with

the other defendants of direct copyright infringement. No evidence suggests that Wasco and NCUE agreed that NCUE would indemnify Wasco for Wasco' direct infringement, especially since such infringement arose prior to the Purchase and Sale and Acquisition agreements. As such, Wasco fails to establish that it is entitled to summary judgment that NCUE is obligated to indemnify Wasco as to Mr. McIntosh's direct infringement claim. Moreover, the SACC appears to address only Mr. McIntosh's (second) contributory infringement claim to further warrant denial of summary judgment for indemnity as to the (first) direct infringement claim.

The TAC's (second) contributory infringement claim alleges that "Wasco controlled the development of the Valley Rose Estates subdivision project" and "obtained a direct financial benefit." The claim further alleges that "Wasco knowingly and materially contributed to and induced the infringing conduct" of NCUE. The TAC alleges that Wasco is liable for its acts which contributed to infringement of Mr. McIntosh's tentative map and improvement plans.

"[O]ne who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer." *Gershwin Pub. Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1162 (2nd N.Y. 1971). Contributory copyright infringement liability "may be predicated on actively encouraging (or inducing) infringement through specific acts . . . or on distributing a product [which] distributees use to infringe copyrights, if the product is not capable of 'substantial' or 'commercially significant' noninfringing uses." *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 942, 125 S.Ct. 2764 (2005) (Ginsburg, J. concurring) (citing *Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417, 442, 104 S.Ct. 774 (1984)).

Wasco fails to substantiate indemnity for the contributory infringement claim. Like the direct infringement claim, the contributory infringement claim covers Wasco's alleged wrongs prior to the indemnity provisions' effectiveness. NCUE correctly notes that Wasco's alleged infringement occurred more than a year prior to NCUE's subdivision purchase and does not arise out of NCUE's subdivision ownership or operation. The contributory infringement claim addresses Wasco's direct actions, not liability for NCUE's alleged wrongs. Factual issues arises whether Wasco's alleged wrongs are an "act, omission or neglect" of NCUE. Although NCUE's efforts to obtain a subdivision map arise from

"operation" of the subdivision, the contributory copyright claim does not tie Wasco's liability solely to NCUE's efforts to obtain a subdivision map. The scope of Wasco's potential liability exceeds operation of the subdivision after closing of the subdivision sale to preclude summary judgment for Wasco.

**Defense Costs**

Wasco notes that the indemnity provisions obligate NCUE to cover Wasco's defense costs. Wasco takes the position that no grounds exist to delay NCUE's duty to defend. However, such contentions are premised on invocation of the indemnity provisions. As noted above, Wasco fails to substantiate that Mr. McIntosh's claims trigger the indemnity provisions to trigger NCUE to indemnify and in turn to defend Wasco. In the absence of undeniable application of the indemnity provisions to Mr. McIntosh's claims, Wasco is not entitled to summary judgment that NCUE is not obligated to cover Wasco's defense costs.

**CONCLUSION AND ORDER**

For the reasons discussed above, this Court DENIES Wasco summary judgment on its indemnity claims against NCUE.

IT IS SO ORDERED.

**Dated: October 26, 2009**

**/s/ Lawrence J. O'Neill**
UNITED STATES DISTRICT JUDGE