JAT:st

James J. Braze, Esq.; SBN 75911
Jeffrey A. Travis, Esq.; SBN 235507
BORTON PETRINI, LLP
5060 California Avenue, Suite 700
Post Office Box 2026
Bakersfield, CA 93303
Telephone (661) 322-3051
email: jbraze@bortonpetrini.com
email: jtravis@bortonpetrini.com

Attorneys for Plaintiff, Roger McIntosh dba McIntosh & Associates

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| ROGER McINTOSH,<br><br>             Plaintiff,<br><br>v.<br><br>NORTHERN CALIFORNIA UNIVERSAL ENTERPRISES COMPANY, et al.,<br><br>             Defendants. | Case No. 1:07-CV- 01080 LJO-GSA<br><br>REPLY TO DEFENDANT'S, WASCO, NORTHERN'S AND DENNIS W. DE WALT'S, OPPOSITIONS TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| CITY OF WASCO,<br><br>          Cross-Complaint,<br><br>    vs.<br><br>NORTHERN CALIFORNIA UNIVERSAL ENTERPRISES COMPANY, INC.,<br><br>           Cross-Defendant. | |

## I.
## INTRODUCTION

The defenses of implied license, first sale, publication, and abandonment all fall because of the Consultant Contract which limits use of the Copyrighted Works to Legacy. The Acquisition Agreement, the only other fact in dispute, is a red herring because McIntosh/MM were never parties to that Agreement and it was for the sale of subdivision improvements and never talked about the acquisition of the copyrighted works.

1   Merger is completely misunderstood by the parties. Because the subdivision was
2   susceptible to a number of different designs, a fact which is undisputed, merger is inapplicable.

3   Northern argues laches and points to the sole fact that McIntosh received Wasco
4   agendas giving him actual knowledge of infringement. They don't show us these agendas but
5   plaintiff does in this Reply and they show no such thing. The only way he could have known is to
6   do what he testified - go to the subdivision or Wasco and look at the maps and plans.

7   Defendants point to no fact which they could present which would show that the
8   infringing works were independently created. Defendants admit access and that they reviewed and
9   "compared" the copyrighted works but no one knows how the missing information, other than
10  boundary lines, was determined in the infringing map.

11  **A.    PUBLICATION**

12  All parties concede that McIntosh created the copyrighted works; that they were
13  submitted by Legacy for the development of Valley Rose; that this submission was an act required
14  by the subdivision Map Act; that the development ceased because of Legacy's default; and that the
15  5472 tentative map and development agreement expired. Thus, everything Legacy had done
16  disappeared except for the improvements which were still in the ground. It is only left for this Court
17  to determine whether the submission by McIntosh was a "publication" under 17 USC Sec. 101.[1]

18  McIntosh cites controlling cases in this district and to similar cases in other districts
19  which all stand for the proposition that a work submitted to a public agency is not, *per se*, a
20  publication. *See, Smith v. Paul (1st District 1959) 174 Cal.App.2d 744*.[2]; *Del Madera Properties v.*
21  *Rhodes & Gardner, 637 F.Supp. 262, 264 (N.D. Ca. 1985); John G. Danielson, Inc. v. Winchester-*
22  *Conant Properties, Inc., 186 F.Supp.2d 1, 18 (D. Mass. 2002); and Johnson v. Jones, 149 F.3d 494,*
23  *500 (6th Cir. 1998).* Defendants attempt to distinguish these cases and then cite to a New Jersey
24  district court case to support theirs. *See, Certified Engineering Inc. v. First Fidelity, 849 F.Supp. 318*

---

[1] Defendants, separately but similarly, point to one additional fact, that of the Acquisition Agreement between Legacy Group on this point but which is addressed in Section B below.

[2] In his moving papers, Plaintiff had the correct citation to this case but incorrectly stated this case as *Paul v. Pederson.*

H:\PUBLIC\054493\060971
McIntosh v.
Northern\Pleadings\MSJ -
McIntosh\REPLY\REPLY
TO DEF OPP TO MSJ.wpd

2
REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

1  *(D.N.J. 1994)*.  Either way, the issue is one of law not fact.

2  In California, the forced filing of a copyrighted work is not demonstrative of an intent
3  to publish or abandon the work. *Smith v. Paul*, 174 Cal.App.2d at 751.  As the Court in *Smith*
4  explained, "The purpose of the requirement of filing the plans in a government office is to protect
5  the public from unsafe construction-not to take away from the architect his common law property
6  rights." *Id*. The defendant's interpretation completely ignores this intellectual property right. This
7  rule has been applied consistently since Smith. *See, Read v. Turner, (4th 1966) 239 Cal.App.2d 504,*
8  *512-513, following Smith v. Paul. See Also, Zachary v. Western Publishing Co. (1st Dist. 1977) 75*
9  *Cal.App.3d 911 ; Read v. Turner, (Cal.App. 4 Dist. Jan 20, 1966) 239 Cal.App.2d 504.*

10  All defendant's cite to *Certified Engineering* which distinguished architectural plans
11  from improvement plans. (and presumably maps as well) The *Certified* Court reasoned that
12  architectural plans were more limited in scope, process, and more susceptible to pirating than were
13  improvement plans and therefore, would be considered a limited publication when submitted to a
14  public entity and improvement plans would not. *Certified, 849 F.Supp. 318, 323-324 (D.N.J. 1994)*.
15  The *Danielson* Court, following what they believed was the majority position, disagreed and held
16  that improvement plans were not less susceptible to copyright protection because they just so
17  happened to go through a more extensive public approval process. *Id. at 17*.  As they explained, the
18  holding in Certified "trivializes" the purposeful nature and contribution made by the copyright
19  holder. *Id. See Also,  Kunycia, supra, at 574 (holding that just because copyrighted works were*
20  *widely distributed per requirements of the building process did not divest the copyright holder of*
21  *its rights).*

22  Northern additionally argues that "when public improvements are actually built
23  according to those plans, they must be deemed published." *Northern Opp., page 4, lines 20-23.,citing*
24  *Kunycia, supra*. This rule is nowhere found in *Kunycia*.

25  In *Danielson*, the Court, rather than creating a per se rule in abolishing a copyright
26  holder's intellectual property rights, held that the submission of plans to the city was not a
27  publication. *Danielson, at 18*. They joined with what they believed was the weight of authority that
28  submitting a work to a public entity, even improvement plans and maps, does not constitute a

H:\PUBLIC\054493\060971
McIntosh v.
Northern\Pleadings\MSJ -
McIntosh\REPLY\REPLY
TO DEF OPP TO MSJ.wpd

3
REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

1 publication under the Copyright Act. *Danielson, at 16 and 18; citing to Codespoti & Assocs., P.C.
2 v. Bartlett*, 51 F.Supp.2d 125, 128 (D.Conn.1999); *Intown Enters., Inc. v. Barnes*, 721 F.Supp.1263,
3 1266 (N.D.Ga.1989); 1 Melville B. Nimmer & David Nimmer, Nimmer on Copyright Sec. 410 (2001)
4 ("Placing a work in a public file ... clearly does not constitute an act of publication."); and *Edgar
5 H. Wood Associates, Inc. v. Skene*, 347 Mass. 351, 197 N.E.2d 886 (1964).

6 Along similar lines, the Court in *Del Madera I* in the Northern District, refused to
7 apply the rule that when a work is approved per a municipal act, it becomes law and removes that
8 work from copyrighted protection. *Del Madera I, at 264*. The Northern District held that the work
9 was approved but not transformed into law, rejecting the notion that it became available to the public
10 through a legislative enactment. *Id.*

11 The majority of courts, including the Northern District, properly weigh the intellectual
12 property rights of the copyright holder and find their interest is not outweighed by the public.
13 Defendants want to destroy this right and make required submissions of maps and plans a
14 publication, per se.

15 **B.   IMPLIED LICENSE**

16 The Facts are not in dispute and both sides seem to be arguing back and forth as to
17 how to interpret the intent embodied in the Consultant Contract between Michael Brown/Legacy and
18 McIntosh.

19 *1.   Consultant Contract*

20 All parties conceded Legacy defaulted. Northern and DeWalt do not dispute they
21 were not given permission by McIntosh to use his works. *Objs. to Sep. Stmnt. No. 9*. The 5472 Map
22 expired as did the development agreement between Legacy and Wasco; Therefore, the only issue to
23 determine is the interpretation of the Consultant Contract and whether that language demonstrated
24 an intent by McIntosh to limit/allow Wasco to use his works.

25 Implied license looks to the intent of the copyright holder. The express language of
26 the Consultant Contract limits any further use to Legacy only and only so long as it was not in
27 default. A new project (the 6451 Mapping process) was begun and Northern proceeded with
28 development despite being told twice that McIntosh expected to be paid and that Northern could not

H:\PUBLIC\054493\060971
McIntosh v.
Northern\Pleadings\MSJ -
McIntosh\REPLY\REPLY
TO DEF OPP TO MSJ.wpd

4

REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

1  use the improvement plans without paying McIntosh.

2        All defendants argue that the "Project" was the development of Valley Rose in general
3  and transcended the 5472 Project. However, the "Project" was identified by Michael Brown and MM
4  as Project No. 92-22 on the face of the contract and the contract addendums for the work performed
5  by Martin-McIntosh. *See, Exhibit E to Okadigbo Decl. and Exhibits B through E attached to the*
6  *Declaration of Michael Brown*.

7        *2.    Acquisition Agreement*

8        Defendant's do not understand the Acquisition Agreement and it is one giant red
9  herring. The Agreement allowed Wasco to acquire the subdivision and its improvements. *Agreement,*
10 *Section 3*. However, Wasco could not acquire the improvements in excess of what was actually paid
11 by Legacy for the improvements and associated costs and expenses and in excess of the total
12 proceeds from the sale of the bonds. *Agreement, Sections 3(a) par. 2 and 3(c)*. Therefore, Legacy
13 had to produce evidence of what they had paid for the improvements, which included costs to
14 McIntosh. As a result, McIntosh was required to submit to Legacy the amount that Legacy had paid
15 to compensate McIntosh. The "Acquisition of Master Plans" referred to in Exhibit "B" does not to
16 refer to Wasco purchasing the plans, but instead, reflects what Legacy had already paid for them.

17       Nowhere in the Agreement is there any mention of Wasco purchasing McIntosh's
18 copyrighted works.

19       The Acquisition Agreement was between Legacy and Wasco. McIntosh was a
20 Consultant on the 5472 project for Legacy. Looking at the Consultant Contract and its
21 corresponding project addendums, it was expected that McIntosh would be doing work pursuant to
22 that Contract. *See, Exhibit E to Okadigbo Decl. and Exhibits B through E attached to the*
23 *Declaration of Michael Brown*. Defendants confuse the subdivision itself with the copyrighted
24 works that supported the subdivision. This is the same mistake that defendants made in *Del Madera*
25 where defendants argued that the "Tentative Map constituted a land use decision that benefitted all
26 present and future owners..." *Del Madera, 637 F. Supp. 262, 264*. The Court rejected this argument
27 and reminded defendants that they could have redesigned the subdivision or paid the engineer. *Id.*
28       Under defendants' interpretation, no Consultant could do any work on a project and

H:\PUBLIC\054493\060971
McIntosh v.
Northern\Pleadings\MSJ -
McIntosh\REPLY\REPLY
TO DEF OPP TO MSJ.wpd

5

REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

1  retain ownership of their copyrighted works since any knowledge of agreements by the engineer
2  between their Client and other parties would potentially create an implied license between the
3  engineer and the other third party who happens to be in privity with the Client.

4  What defendants also fail to point out is that Legacy's default was not a fact when the
5  Acquisition Agreement was signed. Presumably, if everything had worked out, the development
6  would have been finished, Wasco would have paid on the bond notes, a 5472 final map would have
7  been processed the improvement plans would have eventually been accepted, and McIntosh paid.
8  Yet, none of this occurred and Legacy defaulted. Even implied licenses require performance..

9  Wasco also argues that page 9 of the Acquisition Agreement allows the City to
10 complete the subdivision if Legacy defaulted. Reading on, however, this was only allowed as
11 "provided by law." McIntosh's federal right trumps Wasco's claim to ignore that right.

12 All defendants claim McIntosh "sold" his plans to Wasco thereby opening the door
13 to all of them to create a similar map and use of the plans. The fact is, Wasco paid McIntosh on
14 Legacy's behalf because of the work it was doing for Legacy. *See, McIntosh Decl., ¶6 , and Exhibit*
15 *"A", invoices sent to Legacy and payments, accompanying McIntosh's Opp. to Defendant's Motions.*
16 There are no facts to suggest that this "payment" was for the sale of the copyrighted works. Wasco
17 must do more than just declare they paid for McIntosh's works in light of evidence produced by
18 McIntosh to the contrary.

19 Finally, DeWalt (based on the Declaration of Michael Brown) makes the argument
20 that the Acquisition Agreement creates a dispute of a material fact about an alleged "loose
21 association" between McIntosh and Wasco. What this means is entirely unclear since Michael
22 Brown declares that the only agreement between Legacy and McIntosh was the Consultant Contract.
23 The "association" between the parties is determined by the facts and the facts demonstrate a clear
24 intent by McIntosh as expressed in that Contract. McIntosh is nowhere mentioned in the Acquisition
25 Agreement and there are no facts presented that in any way suggest McIntosh was anything other
26 than a Consultant.

27   **3.   *Wasco Was Unable to Enter into an Implied License***

28   It is important to point out that the only argument defendants make for an implied

H:\PUBLIC\054493\060971
McIntosh v.
Northern\Pleadings\MSJ -
McIntosh\REPLY\REPLY
TO DEF OPP TO MSJ.wpd

6
REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

license is for one between McIntosh and Wasco. Therefore, summary judgment on this issue should be granted in favor of Plaintiff as to Northern and DeWalt.

A contract between a City and a third party is enforceable <u>only</u> if the contract is in writing, approved by the city council, and signed by the mayor or by another city officer designated by the city council in an ordinance. *Government Code § 40602; Authority for California Cities Excess Liability v. City of Los Altos (App. 6 Dist. 2006) 39 Cal.Rptr.3d 571, 136 Cal.App.4th 1207).* Section 40602 ensures that any agreement between the City and any other entity or person is in writing to ensure that decisions that affect the City are not made in haste or for other purposes subversive to the city. *See*, *City of Orange v. San Diego County Employees Retirement Assn. (App. 2 Dist. 2002) 126 Cal.Rptr.2d 405, 103 Cal.App.4th 45. See Also, Plaintiff's Opp. to Wasco's Motion for Summary Judgment, Sec. A.2*. In sum there are no such thing as an implied license with the City of Wasco. According to Wasco's trial brief, such an agreement is unenforceable. *See, Wasco's Trial Brief attached as Exhibit "B" to the McIntosh Decl. in Opp. to Wasco's MSJ.*

**C.     FIRST SALE/ABANDONMENT**

Based on the above analysis of implied license, the first sale and abandonment defenses are also inapplicable.

**D.     MERGER**

Defendants argue for a merger defense because the idea of the layout, design, lot configuration, streets, and everything else contained in the 5472 Map were already in the ground and therefore inseparable from expression in the map. They rely on *Kern River Gas Co. v. Coastal Corp., 899 F.2d 1458 (5th Cir. 1990)* in support. *Kern River* says just the opposite. In that case, it was the <u>location</u> of the pipeline which Kern River was trying to protect so that a competitor could not submit a competing map and bid. *Id. at 1464*. *Kern River* would be applicable if McIntosh had created a map of the boundaries of the Valley Rose subdivision and then attempted to prevent anyone from creating a similar map with those boundary lines. McIntosh is attempting to enforce a copyright as to an original design embodied in his tentative map, not the location of the subdivision.

Defendants interpretation of merger would preclude any building or development where a previous design had been approved. This is not a correct interpretation of the law. "To

H:\PUBLIC\054493\060971
McIntosh v.
Northern\Pleadings\MSJ -
McIntosh\REPLY\REPLY
TO DEF OPP TO MSJ.wpd

7

REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

properly determine whether the doctrine is applicable a court must focus on <u>whether the idea is capable of various modes of expression</u>." *Mason v. Montgomery Data, Inc.*, 967 F.2d 135, 138 (5th Cir. 1992).(underline added)  The layout of the subdivision could be expressed in an "infinite" number of ways and is in no way limited to McIntosh's designs.  No one disputes this fact. *Sep. Stmnt No. 24 and related Responses*.

The Court rejected this same argument in *Del Madera*, holding that the developer had two choices, modify the subdivision, or pay the developer. Similarly, in *Danielson*, the Court held that the fact that "a government entity adopts a particular design scheme for a property does not cause that scheme to 'merge' with the unprotected idea of developing the property." *Id.*, at .

Consider also a case cited by Defendants, *Mason v. Montgomery Data*, which centered around a map comprised of a host of facts already in the public domain.  The court found that because the idea of the type of map created by Mason was capable of a variety of expressions, it was not susceptible to the merger defense. *Mason, supra*, at 139. As the Court explained, "the differences between Mason's maps and those of his competitors are the natural result of each map maker's selection of sources, interpretation of those sources, discretion in reconciling inconsistencies among the sources, and skill and judgment in depicting the information." *Id*.

E.   **STATUTE OF LIMITATIONS**

The Defendant's do not argue and Northern expressly concedes the facts on this issue.

F.   **LACHES**

Northern is the only party that opposes Plaintiff's motion on this point.

The infringing 6451 Map was not even started until September of 2004 according to the contract and invoices between Northern and DeWalt.  This is why defendants do not argue a defense on the three-year statute of limitations.  Therefore, it is only left to determine whether a laches defense is applicable to the period falling within that time frame.

Whether McIntosh knew of his copyright claim in 2004; whether he knew that Northern wanted to develop the subdivision; and whether he knew that Northern could potentially infringe are all irrelevant facts to this defense since a copyright holder does not have a duty to monitor potential infringement. *William A. Graham Co. v. Haughey, 568 F.3d 425 (3rd Cir. 2009)*.

H:\PUBLIC\054493\060971
McIntosh v.
Northern\Pleadings\MSJ -
McIntosh\REPLY\REPLY
TO DEF OPP TO MSJ.wpd

8
REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

1. What is important is when he knew that actual infringement was taking place.

2. Northern points to one fact, that McIntosh "submitted a request to the City to provide him with all future agendas so that he could follow Wu's progress." *Northern's Sep. Stmnt. No. 38*. This does not show evidence of actual knowledge of infringement. The deposition testimony shows that McIntosh asked for agendas but it is not clear if he ever got them and Northern never provides them.

Regardless, Wasco makes those agendas available to the public. *See, RJN attached to this Reply, Exhibit "A"*. There was no mention in any of those agendas of what was being constructed at Valley Rose estates. These agendas fall in line with McIntosh's deposition testimony that he went to the subdivision in or around November of 2006 after learning of a final map being processed. *See, the August 15, 2006 Agenda*.

The only way anyone could have known what was happening at Valley Rose was to go there and look at the new map, go to the site to see if it had been redesigned, or look at the improvement plans to see if they were identical to the previous plans. McIntosh testified he went to the site in late 2006, and which is undisputed. He filed his copyright in February of 2007, and after he received it back, filed a lawsuit in July of 2007. By the time McIntosh went out to the site, Northern had already spent its money purchasing the subdivision and building lots. *Northern's Opp. page 13, Lines 11-15*.

### G. INDEPENDENT CREATION

To defeat summary judgment on this issue, defendants must be able to present some material fact to create a dispute that the works were independently copied.

In Response to McIntosh's discovery requests, DeWalt made the following responses:

- DeWalt admits it asked for all documents from Wasco "which would reveal pertinent information" about the subdivision. *Response to Request for Admission No. 1, Exhibit "W" attached to Travis Decl.*

- DeWalt admits that it saw and reviewed the 5472 Map before preparing the 6451 Map; *Id., Response Nos. 4 and 6*.

- DeWalt does not know if it used the improvement plans in assisting in its

H:\PUBLIC\054493\060971
McIntosh v.
Northern\Pleadings\MSJ -
McIntosh\REPLY\REPLY
TO DEF OPP TO MSJ.wpd

9

REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

   preparation of the 6451 Tentative Map; *Response to Special Interrogatory No. 3, Exhibit "V" attached to Travis Decl.*

- DeWalt used the 5472 Map to assist it in preparing the 6451 Map; *Id., Response No. 2.*
- Neither Greg Black, Sarah Burgi, and Josh Woodard, the ones who worked on the project, recall how specific information in the map was determined; *Black Dep., 24:6-11 and 26:1-8; Burgi Dep., 11:17-22; Woodard Dep., 20-28*
- Jeff Gutierrez admitted he was unaware of how the 6451 Map had been prepared. *Gutierrez Dep., Nov. 24, 2008, 15:12-18*; 16:6-13
- Sarah Burgi admitted that Josh Woodard asked to see the 5472 improvement plans when preparing the 6451 Map. *Dep. of Sarah Burgi. 8:2-4; 9:5-12; 12:5-12; 13:1-16.*
- Josh Woodard, the one who actually drew the 6451 Map, cannot recall anything about his work on the 6451 Map after being presented with the 6451 Maps and 5472 Map and plans. *Woodard Dep., 20-28.*

Here, defendants present only the declaration of Jeff Gutierrez of DeWalt to support this defense but he, admittedly, had no idea how the map was actually prepared and everyone who did could not say how any of the missing information was supplied.

For the reasons stated above, McIntosh requests this Court grant summary adjudication on the defense of independent creation and the other defenses asserted herein.

DATED: October 28, 2009

            BORTON PETRINI, LLP


            By: /s/ Jeffrey A. Travis
              Jeffrey A. Travis, Attorney for Plaintiff,
              Roger McIntosh dba McIntosh & Associates

H:\PUBLIC\054493\060971
McIntosh v.
Northern\Pleadings\MSJ -
McIntosh\REPLY\REPLY
TO DEF OPP TO MSJ.wpd

10
REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

# PROOF OF SERVICE
### (FRCP No. 5(b)(2)(E))

**STATE OF CALIFORNIA, COUNTY OF KERN**

I, Vanessa J. Claridge, declare:

I am a citizen of the United States. I am employed in the County of Kern, State of California. I am over the age of 18 and not a party to the within action; my business address is 5060 California Avenue, Suite 700, Bakersfield, California 93309.

On **October 28, 2009**, I served the foregoing document described as **REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT** on the other party(ies) in this action as follows:

| | |
|---|---|
| Steven John Hassing, Esq.<br>Law Offices of Steven J. Hassing<br>425 Calabria Court<br>Roseville, CA 95747<br>email address: **stevehassing@yahoo.com** | Attorneys for Attorneys for Defendants,<br>Northern California Universal Enterprises<br>Company and Lotus Developments<br>Tel:    916/677-1776<br>**Fax:    916/677-1770** |
| Chaka Okadigbo<br>**GCR, LLP**<br>520 S. Grand Ave Suite 695<br>Los Angeles, CA 90071<br>email address: **cokadigbo@gcrlegal.com** | Attorneys for Defendant, City of Wasco<br><br>Tel: 213/347-0210<br>**Fax: 213-347-0216** |
| William L. Alexander, Esq.<br>Alexander & Associates<br>1925 "G" Street<br>Bakersfield, CA 93301<br>email address: **walexander@alexander-law.com** | Attorneys for Defendant, DeWalt CM, Inc.<br><br>Tel: 661/316-7888<br>**Fax: 661/316-7890** |

X  **BY ELECTRONIC SERVICE:** Pursuant to Fed. R. Civ. P. 5(b)(2)(E) and Local Court Rule(s), the foregoing document will be served by the court via CM/ECF. Pursuant to the CM/ECF docket for this case proceeding the following person(s) are on the Electronic Mail Notice List to receive ECF transmission at the email address(es) indicated below:

X  **BY MAIL:**  As follows:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at , California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on **October 29, 2009**, at Bakersfield, California.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

|  |  |
|---|---|
| _____Vanessa J. Claridge_____ | _____/s/ Vanessa J. Claridge_____ |