and subconsultants from all damages, liabilities or costs, including reasonable attorneys' fees and costs, arising from or related to Client's failure to timely notify Consultant.

20. Consultant shall be entitled to immediately, and without notice, suspend the performance of any and all of its obligations pursuant to this agreement if Client files a voluntary petition seeking relief under the United States Bankruptcy Code or if there is an involuntary bankruptcy petition filed against Client in the United States Bankruptcy Court, and that petition is not dismissed within fifteen (15) days of its filing. Any suspension of services made pursuant to the provisions of this paragraph shall continue until such time as this agreement has been fully and properly assumed in accordance with the applicable provisions of the United States Bankruptcy Code and in compliance with the final order or judgment issued by the Bankruptcy Court. If the suspension of performance of Consultant's obligation pursuant to this agreement continues for a period in excess of ninety (90) days, Consultant shall have the right to terminate all services pursuant to this agreement.

21. This agreement shall not be construed to alter, affect or waive any design professional's lien, mechanic's lien or stop notice right which Consultant may have for the performance of services pursuant to this agreement. Client agrees to provide to Consultant the present name and address of the record owner of the property upon which the project is to be located. Client also agrees to provide Consultant with the name and address of any and all lenders who may loan money on the project and who are entitled to receive a preliminary notice.

If payment for Consultant's services is to be made on behalf of Client by a third-party lender, Client agrees that Consultant shall not be required to indemnify the third-party lender, in the form of an endorsement or otherwise, as a condition to receiving payment for services.

23. The Consultant shall not be required to execute any documents subsequent to the signing of this Agreement that in any way might, in the judgment of the Consultant, increase the Consultant's contractual or legal obligations or risk, or adversely affect the availability or cost of its professional or general liability insurance. Nor shall Consultant be required to sign any documents, requested by any party, including Client, that would result in the Consultant's having to certify, guarantee, warrant or state the existence of conditions whose existence the Consultant cannot ascertain. The Client also agrees not to make resolution of any dispute with the Consultant or payment of any money due to the Consultant, in any way contingent upon the Consultant's signing any such certification, guarantee, warranty or statement.

24. All fees and other charges due Consultant will be billed monthly and shall be due at the time of billing unless specified otherwise in this agreement. If Client fails to pay Consultant within thirty (30) days after invoices are rendered, Consultant shall have the right in its sole discretion to consider such default in payment a material breach of this entire agreement, and, upon written notice, Consultant's duties, obligations and responsibilities under this agreement may be suspended or terminated. In such event, Client shall promptly pay Consultant for all outstanding fees and charges due Consultant at the time of suspension or termination. If Consultant elects to suspend or terminate Consultant's services pursuant to this provision, Consultant is entitled to reasonable suspension or termination costs or expenses.

25. Client agrees that all billings from Consultant to Client are correct and binding on Client unless Client, within ten (10) days from the date of receipt of such billing, notifies Consultant in writing of alleged inaccuracies, discrepancies, or errors in billing.

26. Client agrees to pay a monthly late payment charge, which will be the lesser of one and one-half percent (1-1/2%) per month or a monthly charge not to exceed the maximum legal rate, which will be applied to any unpaid balance commencing thirty (30) days after the date of the billing.

27. If Consultant, pursuant to this agreement, produces plans, specifications, or other documents and/or performs field services, and such plans, specifications, or other documents and/or field services are required by any governmental agency, and such governmental agency changes its ordinances, codes, policies, procedures or requirements after the date of this agreement, any additional office or field services thereby required shall be paid for by Client as extra services in accordance with paragraph 29.

Client Initials / Consultant Initials

28. In the event Consultant's fee schedule changes due to any increase of costs such as the granting of wage increases and/or other employee benefits to field or office employees due to the terms of any labor agreement, or increase in the cost of living, during the lifetime of this agreement, a percentage increase shall be applied to all remaining fees and charges to reflect the increased costs.

29. Client agrees that if Client requests services not specified in the scope of services described in this agreement, Client will pay for all such additional services as extra services, in accordance with Consultant's billing rates utilized for this agreement.

30. In the event that any staking or record monuments are destroyed, damaged or disturbed by an act of God or parties other than Consultant, the cost of restaking shall be paid for by Client as extra services in accordance with paragraph 29.

31. Client acknowledges that the design services performed pursuant to this agreement are based upon field and other conditions existing at the time these services were performed. Client further acknowledges that field and other conditions may change by the time project construction occurs and clarification, adjustments, modifications and other changes may be necessary to reflect changed field or other conditions. Such clarifications, adjustments, modifications and other changes shall be paid for by Client as extra services in accordance with paragraph 29.

32. Client shall pay the costs of all checking and inspection fees, zoning and annexation application fees, assessment fees, soils or geotechnical engineering fees, soils or geotechnical testing fees, aerial topography fees, and all other fees, permits, bond premiums, applicable taxes on professional services, title company charges, blueprints and reproductions, and all other similar charges not specifically covered by the terms of this agreement.

33. Client acknowledges and agrees that if Consultant provides surveying services, which services require the filing of a Record of Survey in accordance with Business and Professions Code section 8762, or a Corner Record pursuant to Business and Professions Code section 8773, all of the costs of preparation, examination and filing for the Record of Survey or Corner Record will be paid by Client as extra services in accordance with paragraph 29.

34. Consultant is not responsible for delay caused by activities or factors beyond Consultant's reasonable control, including but not limited to, delays by reason of strikes, lockouts, work slowdowns or stoppages, accidents, acts of God, failure of Client to furnish timely information or approve or disapprove of Consultant's services or instruments of service promptly, faulty performance by Client or other contractors or governmental agencies. When such delays beyond Consultant's reasonable control occur, Client agrees Consultant shall not be responsible for damages nor shall Consultant be deemed to be in default of this agreement. Further, when such delays occur, Client agrees that, to the extent such delays cause Consultant to perform extra services, such services shall be paid for by Client as extra services in accordance with paragraph 29.

35. Notwithstanding any other provision of this Agreement, and to the fullest extent permitted by law, neither the Client nor the Consultant, their respective officers, directors, partners, employees, contractors or subconsultants shall be liable to the other or shall make any claim for any incidental, indirect or consequential damages arising out of or connected in any way to the Project or to this Agreement. This mutual waiver of consequential damages shall include, but is not limited to, loss of use, loss of profit, loss of business, loss of income, loss of reputation or any other incidental, indirect or consequential damage that either party may have incurred from any cause or action.

36. Consultant shall not be liable for damages resulting from the actions or inactions of governmental agencies including, but not limited to, permit processing, environmental impact reports, dedications, general plans and amendments thereto, zoning matters, annexations or consolidations, use or conditional use permits, project or plan approvals, and building permits. Client agrees that it is the responsibility of Client to maintain in good standing all governmental approvals or permits and to timely apply for any necessary extensions thereof.

37. If the scope of services requires Consultant to estimate quantities, such estimates are made on the basis of Consultant's experience and qualifications and represent Consultant's best judgment as a professional generally familiar with the industry. However, such estimates are only estimates and shall not constitute representations,

Form A                                    Page 6 of 9

L 028

Client Initials / Consultant Initials

warranties or guarantees of the quantities of the subject of the estimate. If the scope of services requires Consultant to provide its opinion of probable construction costs, such opinion is to be made on the basis of Consultant's experience and qualifications and represents Consultant's best judgment as to the probable construction costs. However, since Consultant has no control over costs or the price of labor, equipment or materials, or over the contractor's method of pricing, such opinions of probable construction costs do not constitute representations, warranties or guarantees of the accuracy of such opinions, as compared to bid or actual costs.

38. Estimates of land areas provided under this agreement are not intended to be, nor should they be considered to be, precise. The estimate will be performed pursuant to generally accepted standards of professional practice in effect at the time of performance.

39. Client acknowledges that Consultant is not responsible for the performance of work by third parties including, but not limited to, the construction contractor and its subcontractors.

40. Consultant makes no warranty, either express or implied, as to its findings, recommendations, plans, specifications, or professional advice except that the services were performed pursuant to generally accepted standards of professional practice in effect at the time of performance.

41. In the event (1) Client agrees to, authorizes, or permits changes in the plans, specifications or documents prepared by Consultant, which changes are not consented to in writing by Consultant, or (2) Client agrees to, authorizes or permits construction of unauthorized changes in the plans, specifications or documents prepared by Consultant, which changes are not consented to in writing by Consultant, or (3) Client does not follow recommendations prepared by Consultant pursuant to this agreement, which changed recommendations are not consented to in writing by Consultant: Client acknowledges that the unauthorized changes and their effects are not the responsibility of Consultant and Client agrees to release Consultant from all liability arising from the use of such changes, and further agrees to defend, indemnify and hold harmless Consultant, its officers, directors, agents, employees and subconsultants from and against all claims, demands, damages or costs, including attorneys' fees, arising from the unauthorized changes.

42. Client agrees that in accordance with generally accepted construction practices, the construction contractor and construction subcontractors will be required to assume sole and complete responsibility for job site conditions during the course of construction of the project, including safety of all persons and property, and that this requirement shall apply continuously and not be limited to normal working hours. Neither the professional activities of Consultant nor the presence of Consultant or his or her employees or subconsultants at a construction site shall relieve the contractor and its subcontractors of their obligations, duties and responsibilities including, but not limited to, construction means, methods, sequence, techniques or procedures necessary for performing, superintending or coordinating all portions of the work of construction in accordance with the contract documents and applicable health or safety requirements of any regulatory agency or of state law.

43. Client agrees to require its contractor and subcontractors to review the plans, specifications and documents prepared by Consultant prior to the commencement of construction-phase work. If the contractor and/or subcontractors determine there are deficiencies, conflicts, errors, omissions, code violations, improper uses of materials, or other deficiencies in the plans, specifications and documents prepared by Consultant, contractors and subcontractors shall notify Client so those deficiencies may be corrected by Consultant prior to the commencement of construction-phase work.

44. If during the construction phase of the project Client discovers or becomes aware of changed field or other conditions which necessitate clarifications, modifications or other changes to the plans, specifications, estimates or other documents prepared by Consultant, Client agrees to notify Consultant and retain Consultant to prepare the necessary changes or modifications before construction activities proceed. Further, Client agrees to require a provision in its construction contracts for the project which requires the contractor to promptly notify Client of any changed field or other conditions so that Client may in turn notify Consultant pursuant to the provisions of this paragraph. Any extra work performed by Consultant pursuant to this paragraph shall be paid for as extra services pursuant to paragraph 29.

Client Initials / Consultant Initials

45. Client agrees to purchase and maintain, or cause Contractor to purchase and maintain, during the course of construction, builder's risk "all risk" insurance which will name Consultant as an additional named insured as its interest may appear.

46. Client acknowledges that Consultant's scope of services for this project does not include any services related in any way to asbestos and/or hazardous or toxic materials. Should Consultant or any other party encounter such materials on the job site, or should it in any other way become known that such materials are present or may be present on the job site or any adjacent or nearby areas which may affect Consultant's services, Consultant may, at its option, suspend or terminate work on the project until such time as Client retains a qualified contractor to abate and/or remove the asbestos and/or hazardous or toxic materials and warrant that the job site is free from any hazard which may result from the existence of such materials.

47. Client hereby agrees to bring no cause of action on any basis whatsoever against Consultant, its officers and directors, principals, employees, agents and subconsultants if such claim or cause of action in any way would involve Consultant's services for the investigation, detection, abatement, replacement, use or specification, or removal of products, materials or processes containing asbestos, asbestos cement pipe, and/or any hazardous or toxic materials. Client further agrees to defend, indemnify and hold harmless Consultant, its officers, directors, principals, employees and subconsultants from any asbestos and/or hazardous or toxic material related claims that may be brought by third parties as a result of the services provided by Consultant pursuant to this agreement, except claims caused by the sole negligence or willful misconduct of Consultant.

48. Client agrees to defend, indemnify and hold harmless Consultant, its officers, directors, principals, employees and subconsultants from and against all claims, losses, damages and cost caused by, arising out of, or relating to, the presence of any fungus, mildew, mold or resulting allergens, provided that such claim, loss, damage or cost is not due to the sole negligence or willful misconduct of Consultant.

49. In the event of any litigation arising from or related to the services provided under this agreement, the prevailing party will be entitled to recovery of all reasonable costs incurred, including staff time, court costs, attorneys' fees, experts' fees and other related expenses.

50. Client agrees that in the event Consultant institutes litigation to enforce or interpret the provisions of this agreement, such litigation is to be brought and adjudicated in the appropriate court in the county in which Consultant's place of business is located, and Client waives the right to bring, try or remove such litigation to any other county or judicial district.

51. (a) Except as provided in subdivisions (b) and (c), in an effort to resolve any conflicts that arise during the design or construction of the project or following completion of the project, Client and Consultant agree that all disputes between them arising out of or relating to this agreement shall be submitted to nonbinding mediation, unless the parties mutually agree otherwise.

Client and Consultant further agree to include a similar mediation provision in all agreements with independent contractors and consultants retained for the project and to require all independent contractors and consultants also to include a similar mediation provision in all agreements with subcontractors, subconsultants, suppliers or fabricators so retained, thereby providing for mediation as the primary method for dispute resolution between the parties to those agreements.

(b) Subdivision (a) shall not preclude or limit Consultant's right to file an action for collection of fees if the amount in dispute is within the jurisdiction of the small claims court.

(c) Subdivision (a) shall not preclude or limit Consultant's right to record, perfect or enforce applicable mechanic's lien or stop notice remedies.

52. Client agrees to limit the liability of Consultant, its principals, employees and subconsultants, to Client and to all contractors and subcontractors on the project, for any claim or action arising in tort, contract, or strict liability, to the sum of $50,000 or Consultant's fee, whichever is greater. Client and Consultant acknowledge that this provision was expressly negotiated and agreed upon.

Client Initials / Consultant Initials

IN WITNESS WHEREOF, the parties hereby execute this agreement upon the terms and conditions stated above.

Client __Northern California Universal Enterprise__ Consultant __DeWalt Corporation__

By _____    By __Jeffrey A. Gutierrez__ (signature)

Name _____    Name __Jeffrey A Gutierrez__

Title _____    Title __President__

Date Signed _____    Date Signed __9-8-04__

**Client should mail completed contract to the address shown for Consultant.**

Form A                      Page 9 of 9                              L 031