1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                   **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11  ROGER McINTOSH,                         CASE NO. CV F 07-1080 LJO GSA

12                Plaintiff,                **PRETRIAL ORDER**

13      vs.                                 Motions in Limine
                                            Filing Deadline:      January 29, 2010
14  NORTHERN CALIFORNIA
    UNIVERSAL ENTERPRISES                   Motions in Limine
15  COMPANY, et al.,                        Response Deadline:  February 5, 2010

16                                          Motions in Limine
                                            Hearing:            Date:   February 12, 2010
17                                                              Time:   1:30 p.m.
                                                                Dept.:  4 (LJO)
18
                                            Jury Trial:         Date:   March 1, 2010
19  _____/       (5-10 days est.)    Time:   8:30 a.m.
                                                                Dept.:  4 (LJO)
20

21          This Court conducted a January 7, 2010 pretrial conference. Plaintiff Roger McIntosh

22  ("McIntosh") appeared by counsel James Braze and Jeffrey Travis.  Defendants Northern California

23  Universal Enterprises ("Northern") and Lotus Developments, LLP ("Lotus") appeared by counsel Steven

24  Hassing.  Defendant City of Wasco ("City") appeared by counsel Chaka Okadigbo.  Defendant Dennis

25  W. DeWalt, Inc. ("DeWalt") appeared by counsel Tenielle Cooper.  Pursuant to F.R.Civ.P. 16(e), the

26  Court issues this final pretrial order.

27  **A.      Jurisdiction and Venue**

28          This court has subject matter jurisdiction over the claims in this action, pursuant to 28 U.S.C.

                                            1

§1331, 28 U.S.C. §1338(a), (b), and 28 U.S.C. § 1367.  Venue in this judicial district is also proper under 28 U.S.C. §1391(b).  No parties dispute the jurisdiction or venue.

**B.      Jury/Court Trial**

Trial will be before a jury.

**C.      Estimated Length of Trial**

The parties estimate trial will be 5-10 days.

**D.      Trial Date**

Trial will be **March 1, 2010 at 8:30** a.m. in Department 4 of this Court before United States District Judge Lawrence J. O'Neill.

**E.      Undisputed Facts**

1.      McIntosh is a civil engineer doing business as "McIntosh & Associates," a sole proprietorship.

2.      Prior to 1999, McIntosh was a partner with Eugene Martin, in the firm Martin-McIntosh. That firm dissolved in 1999 and Martin-McIntosh assigned its assets to McIntosh, the individual.

3.      Northern is a California corporation engaged in real estate acquisition and development.

4.      Lotus is a California limited partnership engaged in real estate development and sales.

5.      Northern is the general partner of Lotus.

6.      The City is a city located in Kern County, California.

7.      DeWalt is a California corporation that performs civil engineering work in Kern County, California.

8.      In 1992 The Legacy Group (which is not a party to this case) owned land in Wasco, California known as the "Valley Rose Estates Subdivision."

**F.      Disputed Facts**

**McIntosh's Disputed Facts**

1.      Martin-McIntosh created an original work embodied in the Map 5472 and plans.

2.      Martin-McIntosh received a copyright certificate for the Map 5472 and improvement plans.

3.  The Map 5472 and plans were to be used only by Legacy Group in connection with the 5472 tract project and which even Legacy Group did not have the right to use if it was in default to Martin-Mcintosh.

4.  The ownership of the copyrighted work was later transferred to McIntosh in 1999.

5.  Defendants infringed McIntosh's copyrighted work.

6.  The defendants were partners or "practically partners" in the development of the Valley Rose Estates.

7.  The Valley Rose subdivision could have been re-designed by the developer.

8.  The City has received fees from the Valley Rose Estates in the amount of $529,058.11.

9.  Defendants had access to the copyrighted works.

10. The 6451 Tentative and Final Map were substantially similar to the copyrighted work.

11. DeWalt's survey was based on McIntosh's map and work.

12. Defendants copied relevant portions of the 5472 map and/or plans to prepare the 6451 map.

13. McIntosh has suffered actual damages by being prevented from obtaining the value of his map and plans.

14. Defendants' have profited from the copying of the copyrighted work.

15. Defendants had the right and ability to control the infringing activity.

16. Defendants failed to exercise their ability to control the infringing activity.

17. Defendants intentionally induced or materially contributed to the infringing activity of the other defendants.

**Northern, Lotus and DeWalt'S Disputed Facts**

1.  Whether DeWalt, Northern or Lotus copied any protected element of Map 5472.

2.  Whether DeWalt, Northern or Louts copied any protected element of the Tract 5472 Improvement Plans.

3.  Whether Northern copied or used the pump station plans.

4.  Whether Northern copied or used the landscape plans.

5.  Whether Map 5472 and Map 6451 are substantially similar.

3

6.  Whether DeWalt independently created Map 6451.

7.  Whether McIntosh has a valid copyright and what documents does that copyright protect.

**The City's Disputed Facts**

1.  The Revised Tentative Map for Tract 5472 contained in the Disclosure Package did not in any way influence Northern's decision to purchase the Subdivision.

2.  DeWalt conducted its own land survey, which constituted the basis for the information conveyed and/or in depicted in DeWalt's tentative and final maps.

3.  DeWalt's maps depicted observable physical facts in the Subdivision, such as existing street signs, all above-ground improvements (e.g. curb, gutter, sidewalks), stakes, lot corner tags and monuments.

4.  The City never entered into any joint venture or business partnership of any type with Northern, Lotus Developments or DeWalt for purposes of developing the Subdivision.

5.  The City never had an employer-employee relationship or an independent contractor relationship with Northern, Lotus or DeWalt.

6.  The City has had no conversations with any of the other defendants about using the Revised Tentative Map for Tract 5472 and/or the Martin-McIntosh improvement plans for any purpose in connection with developing the Subdivision.

7.  The City has had no conversations with other defendants regarding the processes or methodology each or all of them would use to prepare the Tentative Map for Tract 6451 or the Final Map for Tract 6451.

8.  The City treated the Subdivision improvement plans and Revised Tentative Map for Tract 5472 as public records, believing that it could disseminate them to the public.

9.  By providing the Martin-McIntosh improvement plans to DeWalt, the City never intended to encourage DeWalt, Northern or Lotus to infringe upon McIntosh's alleged copyright interests.

10.  The City did not intend to violate any copyright interests or encourage infringement by distributing the Developer Information Package to Northern.

11.  Northern, Lotus or DeWalt have not used or relied upon the Subdivision improvement

4

1  plans in any infringing manner in connection with the work performed in the

2  Subdivision.

12. The City has not used or relied upon the Subdivision improvement plans for any purpose in connection with approving the DeWalt tentative and final maps.

13. None of the defendants (Northern, Lotus, DeWalt, and the City) have copied any protectable copyright elements of the Revised Tentative Map for Tract 5472.

14. The Revised Tentative Map for Tract 5472 and the Tentative Map for Tract 6451 are not substantially similar.

15. Thus far, the only work the Northern and/or Lotus Developments have performed in connection with the improvements in the Valley Rose Estates has been repair work and maintenance work, such as repairing cracks in concrete, fixing street lights, repaving streets and performing landscaping work and lift station repairs.

16. The City ultimately paid for the construction, installation and acquisition of the Subdivision improvement plans.

17. Eugene Martin, McIntosh's former business partner, acknowledges receiving payments from the City to the tune of $800,000 for work performed by Martin-McIntosh in connection with developing the Subdivision.

18. The City has made no profits from the allegedly infringing activities of which McIntosh complains.

19. McIntosh cannot establish that he has a copyright interest in the Revised Tentative Map for Tract 5472 or the improvement plans at issue in this litigation.

20. The City did not know, or have reason to know, of any allegedly infringing activities engaged in by Northern, Lotus or DeWalt within the context of contributory infringement.

21. The City did not have the right and ability to supervise and/or control any of the allegedly infringing activities such that it may be found liable for vicarious infringement.

22. The City did not require Northern or Lotus to submit improvement plans.

23.   The City provided the improvement plans to DeWalt after the City had already approved the Tentative Map for Tract 6451.

**G.   Special Factual Information**

The parties reference no special factual information.

**H.   Claims and Relief Sought**

**McIntosh seeks:**

1.   A declaration for willful infringement.

2.   Injunctive relief against defendants and all persons acting in concert or participation with them or persons acting or purporting to act on their behalf, directing defendants to cease and desist from infringing McIntosh's copyright, the destruction of all copies of the copyrighted plans.

3.   Impounding any copies of the copyrighted works and any other materials derived from the copyrighted works either in whole or in part.

4.   A compliance report.

5.   Monetary damages equal to the actual damages suffered by McIntosh as a result of the infringement and any profits earned by defendants from the creation and commercial exploitation of the copyrighted works.

6.   Costs of suit.

**Defendants seek:**

1.   Judgment in favor of defendants, and each of them individually, on all issues.

2.   An award of costs and attorney fees.

**I.   Disputed Evidentiary Issues**

**McIntosh's Disputed Evidentiary Issues**

1.   **Exclusion of the expert deposition testimony of Steven Wong:** Steven Wong ("Mr. Wong") has been designated by the City of Wasco as a Civil Engineering expert. During his deposition, Mr. Wong testified as to the standard for substantial similarity based upon his knowledge of the copyright laws and his review of a website on copyright law. McIntosh will argue that this is not the appropriate subject for an expert to testify to as

6

to substantial similarity and will seek to exclude such testimony through an appropriate motion in limine.

2. **Exclusion of Evidence of a lawsuit filed by McIntosh against the City in the early 1990's**: McIntosh had previously filed a lawsuit against the City, among others, in an attempt to collect monies owed to him by the Legacy Group.  Evidence that McIntosh filed suit against the City and the result is irrelevant.

3. **Exclusion of All Evidence by Defendants Relating to Deductible Expenses:** McIntosh will argue that because infringement, if found, was willful and deliberate, expenses relating to deductions from overall gross sales should be excluded.

4. **Exclusion of Certain Profit and Loss Documents Related to the Valley Rose Estates by Northern and Lotus:**   Northern has previously produced roughly 6,000 pages of documents in an attempt to show deductions for any profits made, however, most of this documentation takes place well after the actual infringement occurred.  Therefore, McIntosh will be filing an appropriate motion in limine to exclude most of this documentation.

5. **Exclusion of Certain Evidence Relating to Defenses Already Adjudicated:** There are numerous factual issues which McIntosh believes defendants will attempt to introduce with no relevance to the issues of infringement, damages, or any non-adjudicated defenses such as: Evidence about whether McIntosh knew he had a copyright interest in the map prior to and while Northern was having it prepared; Evidence about McIntosh's duty to tell defendants about the copyright; Evidence related to the Acquisition Agreement between the City and Legacy Group; Evidence that the copyrighted work was in the public domain; and other evidence relevant to the excluded defenses.

6. **Exclusion of any Testimony from Eric Heath James:** Defendants previously identified at deposition and in a response to discovery responses the identity of "Heath James" as a person who had provided additional information as to the preparation of Tentative Map No. 6451.  After requests were made, this was the name given and no address was provided.  McIntosh was unable to subpoena this person.  Now, it is suspected

7

Defendants intend to produce this person as "Eric Heath James" with an address provided.

7. **Exclusion of any Testimony Other than Jeff Gutierrez, Sarah Burgi, and Greg Black Relating to the Preparation of Tentative Map No. 5472, Exclusive of Survey Information:** At the depositions of Jeff Gutierrez, Greg Black, and Sarah Burgi, each identified themselves as the only persons responsible for designing the map along with Josh Woodard, and exclusive of survey information provided by Heath James.   It is expected defendants will attempt to introduce additional persons to avoid the admissions of these persons.

8. **Exclusion of Evidence By The City Relating to Bond Debt:** It is believed the City will attempt to introduce evidence of bond debts to try and use this as a deductible expense to any potential award of lost profits.  However, bond debts that are over a decade old are not believed to be related to the infringement and therefore should be excluded.

9. **Requests to Have Certain Matters Deemed Admitted by all Defendants based on Responses to Request for Admissions by Plaintiff**

10. **Exclusion of Evidence Denying Review of Improvement Plans For the Preparation of Tentative Map No. 6451:** During depositions and in responses to written discovery, DeWalt has consistently denied having sufficient information to conclude that it did not review the 5472 improvement plans while preparing the 6451 Tentative or Final Map and should be precluded from introducing same at trial.

### Northern, Lotus And DeWalt's Disputed Evidentiary Issues

Northern, Lotus and DeWalt anticipate to file motions in limine:

1. To preclude McIntosh from offering into evidence, DeWalt's Supplemental Response to Plaintiff's Request for Admission Number 4 on the basis that the request contained an inappropriate "definition" by which McIntosh sought to completely change the true meaning of the work "reviewed".  Further, the response was not an unqualified admission, is ambiguous and non-responsive in stating that documents DeWalt reviewed "likely" included Map No. 5472 which suggests speculation rather than admission.

Finally, the request for admission and the response are misleading and more prejudicial than probative.

2.  To preclude McIntosh from commenting during voir dire or contending during opening statement that street names, lot numbers or boundaries are protected by copyright or provide evidence of copying.

3.  To preclude McIntosh from commenting during voir dire or contending during opening statement that Northern, Lotus or DeWalt infringed McIntosh's copyright in the improvement plans unless McIntosh can first convince the Court that there is any admissible evidence of copying.

4.  To preclude McIntosh from commenting during voir dire or contending during opening statement that Northern or Lotus infringed McIntosh's copyright by simply having possession of the pump station plans or landscape plans unless McIntosh can first convince the Court that simply possessing those plans is evidence of infringement.

5.  To preclude comment or testimony that "someone" at the City "told" McIntosh that the City was using 5472 plans in conjunction with the 6451 Map Application based on hearsay and on the fact that McIntosh was pressed during deposition and in written discovery to provide the name of the City employee who made the statement to him and could not do so.

6.  To preclude James DelMarter from testifying as an expert on substantial similarity on the basis of lack of qualification and that his entire testimony will focus upon non-copyrightable elements of the maps.

7.  Defendants have been advised by McIntosh's counsel on December 10, 2009, for the very first time, that McIntosh intends to seek damages for contributory infringement against them by an amendment according to proof at trial.  Defendants will seek, via a motion in limine, to prevent McIntosh from offering evidence of contributory infringement against these Defendants, or seeking or obtaining judgment for contributory infringement.

8.  Another matter on which that may be an evidentiary dispute involves independent

9

creation.  During this case, independent creation has been referred to as an affirmative defense.  Independent creation is actually a denial of copying.  As such, the burden of persuasion remains with McIntosh and does not shift to defendants.  McIntosh always has the burden of persuasion or burden of proof on copying and initially bears the burden of production.

**The City's Disputed Evidentiary Issues**

1.    The expert deposition testimony of James K. Delmarter, whom McIntosh designated as a civil engineering expert. Mr. Delmarter testified on the issue of substantial similarity, even though he lacked any understanding as to what that terminology means in the context of copyright law. His testimony to that effect, therefore, would be irrelevant and distracting to a jury. The City also moves to bar his testimony to the extent that he proposes to testify to a similarity between the maps and plans as to non-copyrightable elements of the maps and/or plans.

2.    Evidence of damages that do not relate specifically to the fair market value of McIntosh's tentative map and/or improvement plans, lost profits, or lost opportunity to license (all of which amount to the same thing as the value of Plaintiff's plans and/or map), or to the issue of infringer profits.

3.    Evidence of damages relating to the value of McIntosh's improvement plans and costs associated with plans in that the plans were distributed after DeWalt prepared the tentative map for Tract 6451 and the City did not require Northern/DeWalt/Lotus to submit improvement plans.

4.    Evidence of McIntosh's attorney fees on the ground that McIntosh failed to timely register his copyright.

5.    Evidence concerning impact fees as infringer profits on the ground that impact fees are not profits as a matter of law.

6.    Evidence of copying/substantial similarity in maps and plans that relates to non-copyrightable elements of the maps and plans at issue in this litigation.

7.    Evidence concerning McIntosh's testimony that a City employee informed him about use

10

1    of his improvement plans on grounds that such testimony is hearsay and is based on lack

2    of personal knowledge.

3    **J.     Disputed Legal Issues And Points Of Law**

4                    **McIntosh's Disputed Legal Issues And Points Of Law**

5                                    Validity of Copyright

6    1.    Whether technical drawings are copyrightable subject matter. 17 U.S.C. §§101,

7          102(a)(5); *Del Madera Properties v. Rhodes and Gardner*, 637 F.Supp. 262 (N.D. Cal.

8          1985); and *Del Madera Properties v. Rhodes and Gardner*, 820 F.2d 973 (9th Cir. 1987).

9    2.    Whether McIntosh has proven ownership of a valid copyright. 17 U.S.C. §§201-205;

10         *Entertainment Research v. Genesis Creative Group*, 122 F.3d 1211, 1217 (9th Cir.

11         1997); *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 486 (9th Cir. 2000).

12   3.    Whether McIntosh is the assignee of the copyrighted work. 17 U.S.C. §201(d)(1);

13         *Urantia Foundation v. Maaherra*, 114 F.3d 955, 961 (9th Cir. 1997); Nimmer, Melville

14         B., Nimmer on Copyright, 3:10.10[A] (2006).

15   4.    Whether the allegedly infringing work is a derivative work. 17 U.S.C. §§ 101, 103(b),

16         106(2); *Entertainment Research v. Genesis Creative Group*, 122 F.3d 1211, 1217 (9th

17         Cir. 1997); *Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d 905 (2d Cir. 1980).

18                                    Infringement Issues

19   5.    Whether defendants copied McIntosh's copyrighted works. 17 U.S.C. §106; *S.O.S., Inc.

20         v. Payday Inc.*, 886 F.2d 1081 (9th Cir. 1989); *Transgo, Inc. v. Ajac Transmission Parts

21         Corp.*, 768 F.2d 1001 (9th Cir. 1985), *cert denied*, 474 U.S. 1059 (1986).

22   6.    Whether defendants had access to the copyrighted works. *Transgo, Inc. v. Ajac

23         Transmission Parts Corp.*, 768 F.2d 1001 (9th Cir. 1985), *cert denied*, 474 U.S. 1059

24         (1986); *Sid and Marty Krofft Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d

25         1157, 1172 (9th Cir. 1977).

26   7.    Whether the copyrighted work and the allegedly infringing work are substantially similar.

27         *Baxter v. MCA, Inc.*, 812 F.2d 421, 425 (9th Cir. 1987).

28   8.    Whether if there was infringement, the copyrighted works were independently created.

*Kamar International Inc. v. Russ Berrie and Co.*, 657 F.2d 1059 (9th Cir. 1981);

*Overman v. Loesser,* 205 F.2d 521, 523 (9th Cir. 1953).

9. Whether creating a work based on the non-copyrightable expression of a copyrighted work, is copying within the meaning of 17 U.S.C. *Donald Frederick Evans and Associates, Inc. v. Continental Homes, Inc.* ; 785 F.2d 897 (11th Cir. 1986); *Imperial Homes Corp. v. Lamont*, 458 F.2d 895 (5th Cir.1972); *Gross v. Seligman*, 212 F. 930 (2d Cir. 1914).

10. Whether there was contributory copyright infringement by any of the defendants. *Sony Corp. v. Universal City Studios*, 464 U.S. 417, 437-438 (1984); *Lewis Galoob Toys, Inc. v. Nintendo of Am. Inc.*, 964 F.2d 965, 970 (9th Cir. 1992).

11. Whether there was vicarious copyright infringement by any of the defendants. *Sony Corp. v. Universal City Studios*, 464 U.S. 417, 437-438 (1984); *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 262-263 (9th Cir. 1996).

12. Whether there was inducement of infringement by any of the defendants. *Metro -Goldwyn Mayer Studios Inc. v. Grokster, Ltd.*, 125 S.Ct. 2764 (2005).

<u>Damages</u>

13. Whether the copyrighted works has a value according to actual damages within the meaning of 17 U.S.C. § 504.

14. Whether profits can be construed to include impact fees received by a city within the meaning of 17 U.S.C. § 504.

15. Whether there is a sufficient nexus between profits received by defendants and the infringement sufficient to satisfy applicable standards for infringer's profits within the meaning of 17 U.S.C. § 504.

16. Whether any joint infringers also acted as partners or "practically partners" and are, therefore, jointly liable for infringer's profits within the meaning of 17 U.S.C. § 501. *Kamar International Inc. v. Russ Berrie and Co.*, .657 F.2d 1059 (9th Cir. 1981).

17. Whether statutory damages are applicable within the meaning of 17 U.S.C. § 504.

/ / /

12

**Northern, Lotus And DeWalt's Disputed Legal Issues And Points Of Law**

Defendants' defense centers around the concept of independent creation, that ideas and facts are not copyrightable, that when the non-protectable elements are filtered out, Map 5472 and 6451 are not substantially similar. Defendants also contend that even if the McIntosh prevails, he is not entitled to attorney fees pursuant to 17 U.S.C. § 412.

Points of law which defendants believe may be disputed by McIntosh include:

1. A copyright infringement action requires the copyright owner to prove copying of a copyrighted work by an infringer. *Weissmann v. Freeman*, 868 F.2d 1313, 1320 (2d Cir. 1989).

2. Copyright protection extends only to those components of a work that are original to the author. *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

3. Proof of copyright infringement requires that the "constituent elements of the work that are original" were copied. *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

4. Originality requires only that the work display "something irreducible, which is one man's alone". *Bleistein v. Donaldson Lithographing Co.*, 188 U.S. 239, 250.

5. Substantial similarity may often be decided as a matter of law. *Funky Films, Inc. v. Time Warner*, 462 F.3d 1072, 1076, (9th Cir. 2006); *Shaw v. Lindheim*, 919 F.2d 1353, 1355 (9th Cir. 1990); *See v. Durang*, 711 F.2d 141 (9th Cir. 1983); *Warner Bros. v. American Broadcasting Co.*, 720 F.2d 231, 240 (2nd Cir. 1983).

6. In determining substantial similarity, one must filter out and disregard the non-protectable elements and inquire only whether the "protectable elements", standing alone, are substantially similar. *Cavalier v. Random House*, 297 F.3d 815, 822 (9th Cir 2002); *Apple Computer v. Microsoft*, 35 F.3d 1435, 1442- 43, 46.

7. In determining substantial similarity, one must examine both intrinsic and extrinsic factors. The intrinsic test employs an ordinary person's subjective impression of the similarities and is the exclusive province of the jury. The extrinsic test is objective. It depends on specific criteria which can be listed and analyzed. It focuses on articulable

similarities. *Funky Films, Inc. v. Time Warner*, 462 F.3d 1072, 1077, (9th Cir. 2006).

8.  A copyright owner in a civil infringement action may elect one of two types of damages: (1) actual damages and "any additional profits of the infringer" or (2) statutory damages. (17 U.S.C. Section 504(a)).

9.  If registration is not made within three months after first publication of the work or if the copyright work was not registered prior to commencement of the infringement, the copyright owner cannot recover statutory damages. (17 U.S.C. Section 412); *Polar Bear Pools, Inc. v Timex Corp.*, 384 F.3d 700, 707 n.5 (9th Cir. 2004).

10. In addition to actual damages suffered as a result of infringement, the copyright owner is entitled to recover any profits of the infringer that are attributable to the infringement and that are not taken into account in computing the actual damages. (17 U.S.C. §§§§ 504(b)).

11. 17 U.S.C. Section 505.

12. 17 U.S.C. Section 412.

13. 17 U.S.C. Section 106.

Defendants' further body of points of law:

14. A copyright infringement action requires the copyright owner to prove copying of a copyrighted work by an infringer. *Weissmann v. Freeman*, 868 F.2d 1313, 1320 (2d Cir. 1989).

15. Copyright protection extends only to those components of a work that are original to the author. *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

16.  It is well-settled that copyright of a map does not give the author an exclusive right to the symbols and key used in delineating boundaries of and locations within the territory depicted. *United States v. Hamilton*, 583 F.2d 448, 451, (9th Cir. 1978).

17. Proof of copyright infringement requires that the "constituent elements of the work that are original" were copied. *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

18. Originality requires only that the work display "something irreducible, which is one

14

man's alone". *Bleistein v. Donaldson Lithographing Co.*, 188 U.S. 239, 250

19. Without copying, there can be no infringement. *Mazer v. Stein*, 347 U.S. 201, 218 (1954).

20. One may copyright a map by independently re-surveying an area even though the result of that work might be identical to a map already in the public domain. *Sheldon v Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, 54 (2d Cir. 1936), *aff'd*, 309 U.S. 390, 60 S.Ct. 681 (1940).

21. Independent creation of drawings based upon examination of existing improvements does not constitute infringement. *Kunycia v. Melville Co., Inc.*, 755 F. Supp. 566, 576, (S.D.N.Y. 1990).

22. Copyright law does not authorize the ownership of ideas and ideas cannot be copyrighted. *Harper & Row, Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 547, (1985); *Cooling Systems and Flexibles v. Stuart Radiator*, 777 F.2d 485, 491, (9th Cir. 1985); *Eli Attia v. Society of N.Y. Hospital*, 201 F.3d 50 (2nd Cir.1999).

23. Neither the facts nor the idea embodied in a map is protected by copyright. *Mason v. Montgomery Data, Inc.*, 967 F.2d 135, 140 (5th Cir. 1992).

24. Objective facts and ideas are not copyrightable. *Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir. 2003).

25. Even when the idea and its expression are not completely inseparable, there may still be only a limited number of ways of expressing the idea. In such a case, the burden of proof is heavy on the plaintiff who may have to show "near identity" between the works at issue. *Concrete Machinery Co., Inc. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 606 (1st Cir. 1988).

26. The idea of the geological location of a physical object (pipeline) is not copyrightable as lines depicting such on a map are the only way to express the idea of the location. *Kern River Gas Transmission Co. v. Coastal Corp*, 899 F.2d 1458, 1464 (5th Cir. 1990).

27. Constructed streets, curbs, gutters, manholes, walls, monuments and signs constructed are concrete facts within the public domain visible for all to see. Concrete facts are not subject to copyright protection. *Cooling Systems and Flexibles, Inc. v. Stuart Radiator,*

15

1         *Inc.*, 777 F.2d 485, 490 (9th Cir. 1985).

2     28.    Substantial similarity may often be decided as a matter of law. *Funky Films, Inc. v. Time*

3            *Warner*, 462 F.3d 1072, 1076, (9th Cir. 2006); *Shaw v. Lindheim*, 919 F.2d 1353, 1355

4            (9th Cir. 1990); *See v. Durang*, 711 F.2d 141 (9th Cir. 1983); *Warner Bros. v. American*

5            *Broadcasting Co.*, 720 F.2d 231, 240 (2nd Cir. 1983).

6     29.    In determining substantial similarity, one must filter out and disregard the

7            non-protectable elements and inquire only whether the "protectable elements", standing

8            alone, are substantially similar. *Cavalier v. Random House*, 297 F.3d 815, 822 (9th Cir

9            2002); *Apple Computer v. Microsoft*, 35 F.3d 1435, 1442- 43, 46.

10    30.    A compilation of random similarities scattered throughout the works is inherently

11          subjective and unreliable and do not justify a finding of substantial similarity. *Cavalier*

12          *v. Random House*, 297 F.3d 815, 825 (9th Cir 2002).

13    31.    In determining substantial similarity, one must examine both intrinsic and extrinsic

14          factors. The intrinsic test employs an ordinary person's subjective impression of the

15          similarities and is the exclusive province of the jury. The extrinsic test is objective. It

16          depends on specific criteria which can be listed and analyzed. It focuses on articulable

17          similarities. *Funky Films, Inc. v. Time Warner*, 462 F.3d 1072, 1077, (9th Cir. 2006).

18    32.    Inevitable similarity based upon a shared concept or idea results in a thin copyright which

19          protects against only virtually identical copying. *Ets-Hokin v. Skyy Spirits, Inc.,* 323 F.2d

20          763, 766 (9th Cir. 2003); *Apple Computer, Inc. v. Microsoft Corp.,* 35 F.3d 1435, 1442

21          (9th Cir. 1994).

22    33.    Where much of the similarity between forms was necessitated by the limited number

23          copyrightable expressions available under the circumstances there was no infringement.

24          *Kregos v. Associated Press*, 3 F.3d 656, 664, (2d. Cir. 1993).

25    34.    A copyright owner in a civil infringement action may elect one of two types of damages;

26          (1) actual damages and "any additional profits of the infringer" or (2) statutory damages.

27          (17 U.S.C. Section 504(a)).

28    35.    If registration is not made within three months after first publication of the work or if the

copyright work was not registered prior to commencement of the infringement, the copyright owner cannot recover statutory damages. (17 U.S.C. Section 412); *Polar Bear Pools, Inc. v Timex Corp.*, 384 F.3d 700, 707 n.5 (9th Cir. 2004).

36.    Every court to consider the issue has held that infringement commences for purposes of section 412 when the first act in a series of acts constituting continuing infringement occurs. *Derek Andrews, Inc. v. Poof Apparel*, 528 F.3d 696, 700- 701 (9th Cir. 2008).

37.    In addition to actual damages suffered as a result of infringement, the copyright owner is entitled to recover any profits of the infringer that are attributable to the infringement and that are not taken into account in computing the actual damages. (17 U.S.C. §§§§ 504(b)).

38.    Where it is clear that not all of the profits are attributable to the infringing activity, the copyright owner is not entitled to recover all of those profits merely because the infringer fails to establish with certainty the portion attributable to the non-infringing elements. Where the evidence suggests some division which may rationally be used as a springboard it is the duty of the court to make some apportionment. It would certainly be unjust to give the plaintiffs everything because defendants cannot, with certainty, compute their own share. *Cream Records, Inc. v. Jos. Schlitz Brewing Co.*, 754 F.2d 826, 828- 829, (9th Cir. 1985).

39.    17 U.S.C. Section 505; 17 U.S.C. 412.

40.    Prevailing defendants are entitled to attorneys fees in copyright infringement cases. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534.

41.    A defendant is a contributory infringer if it: (1) has knowledge of a third party's infringing activity, and (2) "induces, causes, or materially contributes to the infringing conduct." *Perfect 10, Inc. v. Visa International Service Association*, 494 F.3d 788, 795 (9th Cir. 2007).

42.    One who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a contributory infringer." *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d

17

1159, 1162 (2nd Cir. 1963).

43.   Contributory liability is predicated on either of two theories, proof that the defendant actively encouraged (or induced) infringement through specific acts or proof that the defendant distributed a product that is capable only of infringing uses. *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 942 (2005) (Ginsburg, J., concurring) (quoting *Sony Corporation v. Universal City Studios, Inc.*, 464 U.S. 417, 442 (1984)).

44.   In instances where the copyrighted work that was distributed is capable of substantial lawful (i.e. non-infringing) uses, "mere knowledge of infringing potential or of actual infringing uses would not be enough … to subject a distributor to liability.  Nor would ordinary acts incident to product distribution, such as offering customers technical support or product updates, support liability in themselves.  The inducement rule, instead, premises liability on purposeful, culpable expression and conduct." *Grokster*, *supra*, 545 U.S. at 937.

45.   The distribution of a product is considered contributory infringement only in instances where the distributor intends and encourages the use of the product for infringing uses. *Grokster, supra*, 545 U.S. at 940.

46.   Proof of direct infringement by a primary infringer is a necessary precondition to establishing both contributory and vicarious liability under the Copyright Act.  *MGM Studios Inc. v. Grokster Ltd*, 380 F.3d 1154; *Contessa Food Products v. Lockpur Fish Processing Co.*, 123 Fed.Appx. 747 (9th Cir. 2005) (contributory infringement being predicated on a finding of direct infringement against a primary infringer).

**The City's Disputed Legal Issues And Points Of Law**

<u>Direct Copyright Infringement</u>

1.   "Copyright does not prevent subsequent users from copying from a prior author's work those constituent elements that are not original, for example facts or materials in the public domain, as long as such use does not unfairly appropriate the author's original contributions." *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S.

340 (1991).

2. To establish copyright infringement, two elements must be proven: (1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original. *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340 (1991).

3. Copyright protection extends only to those components of a work that are original to the author. *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

4. It is well-settled that copyright of a map does not give the author an exclusive right to the symbols and key used in delineating boundaries of and locations within the territory depicted. *United States v. Hamilton*, 583 F.2d 448, 451, (9th Cir. 1978).

5. Proof of copyright infringement requires that the "constituent elements of the work that are original" were copied. *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

6. Originality requires only that the work display "something irreducible, which is one man's alone." *Bleistein v. Donaldson Lithographing Co.*, 188 U.S. 239, 250

7. Without copying, there can be no infringement. *Mazer v. Stein*, 347 U.S. 201, 218 (1954).

8. One may copyright a map by independently re-surveying an area even though the result of that work might be identical to a map already in the public domain. *Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, 54 (2d Cir. 1936), *aff'd*, 309 U.S. 390, 60 S.Ct. 681 (1940).

9. Independent creation of drawings based upon examination of existing improvements does not constitute infringement. *Kunycia v. Melville Co., Inc.*, 755 F. Supp. 566, 576, (S.D.N.Y. 1990).

10. Copyright law does not authorize the ownership of ideas and ideas cannot be copyrighted. *Harper & Row, Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 547, (1985); *Cooling Systems and Flexibles v. Stuart Radiator*, 777 F.2d 485, 491, (9th Cir. 1985); *Eli Attia v. Society of N.Y. Hospital*, 201 F.3d 50 (2nd Cir.1999).

11. Neither the facts nor the idea embodied in a map is protected by copyright. *Mason v.*

19

*Montgomery Data, Inc.*, 967 F.2d 135, 140 (5th Cir. 1992).

12. Objective facts and ideas are not copyrightable. *Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir. 2003).

13. Even when the idea and its expression are not completely inseparable, there may still be only a limited number of ways of expressing the idea. In such a case, the burden of proof is heavy on the plaintiff who may have to show "near identity" between the works at issue. *Concrete Machinery Co., Inc. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 606 (1st Cir. 1988).

14. The idea of the geological location of a physical object (pipeline) is not copyrightable as lines depicting such on a map are the only way to express the idea of the location. *Kern River Gas Transmission Co. v. Coastal Corp.*, 899 F.2d 1458, 1464 (5th Cir. 1990).

15. Constructed streets, curbs, gutters, manholes, walls, monuments and signs constructed are concrete facts within the public domain visible for all to see. Concrete facts are not subject to copyright protection. *Cooling Systems and Flexibles, Inc. v. Stuart Radiator, Inc.*, 777 F.2d 485, 490 (9th Cir. 1985).

16. Substantial similarity may often be decided as a matter of law. *Funky Films, Inc. v. Time Warner*, 462 F.3d 1072, 1076 (9th Cir. 2006); *Shaw v. Lindheim*, 919 F.2d 1353, 1355 (9th Cir. 1990); *See v. Durang*, 711 F.2d 141 (9th Cir. 1983); *Warner Bros. v. American Broadcasting Co.*, 720 F.2d 231, 240 (2nd Cir. 1983).

17. In determining substantial similarity, one must filter out and disregard the non-protectable elements and inquire only whether the "protectable elements", standing alone, are substantially similar. *Cavalier v. Random House*, 297 F.3d 815, 822 (9th Cir 2002); *Apple Computer v. Microsoft*, 35 F.3d 1435, 1442- 43, 46.

18. The copying of numbers is not a protected copyright interest. *Southco, Inc. v. Kanebridge Corporation*, 390 F.2d 276 (3rd Cir. 2004); *R & B, Inc. v. Needa Parts Manufacturing, Inc.*, 418 F.Supp.2d 684 (E.D. Pa. 2005).

19. A compilation of random similarities scattered throughout the works is inherently subjective and unreliable and do not justify a finding of substantial similarity. *Cavalier*

1       *v. Random House*, 297 F.3d 815, 825 (9th Cir 2002).

2   20.   In determining substantial similarity, one must examine both intrinsic and extrinsic

3         factors. The intrinsic test employs an ordinary person's subjective impression of the

4         similarities and is the exclusive province of the jury. The extrinsic test is objective. It

5         depends on specific criteria which can be listed and analyzed. It focuses on articulable

6         similarities. *Funky Films, Inc. v. Time Warner*, 462 F.3d 1072, 1077, (9th Cir. 2006).

7   21.   Inevitable similarity based upon a shared concept or idea results in a thin copyright which

8         protects against only virtually identical copying. *Ets-Hokin v. Skyy Spirits, Inc.,* 323 F.2d

9         763, 766 (9th Cir. 2003); *Apple Computer, Inc. v. Microsoft Corp.,* 35 F.3d 1435, 1442

10        (9th Cir. 1994).

11   22.   Where much of the similarity between forms was necessitated by the limited number

12         copyrightable expressions available under the circumstances there was no infringement.

13         *Kregos v. Associated Press*, 3 F.3d 656, 664, (2d. Cir. 1993).

14                             Contributory Infringement

15   23.   A defendant is a contributory infringer if it: (1) has knowledge of a third party's

16         infringing activity, and (2) "induces, causes, or materially contributes to the infringing

17         conduct." P*erfect 10, Inc. v. Visa International Service Association*, 494 F.3d 788, 795

18        (9th Cir. 2007).

19   24.   One who, with knowledge of the infringing activity, induces, causes or materially

20         contributes to the infringing conduct of another, may be held liable as a contributory

21         infringer." *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d

22         1159, 1162 (2nd Cir. 1963).

23   25.   Contributory liability is predicated on either of two theories, proof that the defendant

24         actively encouraged (or induced) infringement through specific acts or proof that the

25         defendant distributed a product that is capable only of infringing uses.

26         *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 942 (2005)

27         (Ginsburg, J., concurring) (quoting *Sony Corporation v. Universal City Studios, Inc.*, 464

28        U.S. 417, 442 (1984)).

26.    In instances where the copyrighted work that was distributed is capable of substantial lawful (i.e. non-infringing) uses, "mere knowledge of infringing potential or of actual infringing uses would not be enough … to subject a distributor to liability.  Nor would ordinary acts incident to product distribution, such as offering customers technical support or product updates, support liability in themselves.  The inducement rule, instead, premises liability on purposeful, culpable expression and conduct." *Grokster, supra*, 545 U.S. at 937.

27.    The distribution of a product is considered contributory infringement only in instances where the distributor intends and encourages the use of the product for infringing uses. *Grokster, supra*, 545 U.S. at 940.

28.    Proof of direct infringement by a primary infringer is a necessary precondition to establishing both contributory and vicarious liability under the Copyright Act. *MGM Studios Inc. v. Grokster Ltd.*, 380 F.3d 1154; *Contessa Food Products v. Lockpur Fish Processing Co.*, 123 Fed.Appx. 747 (9th Cir. 2005) (contributory infringement being predicated on a finding of direct infringement against a primary infringer).

Vicarious Infringement

29.    To state a claim for vicarious copyright infringement, a plaintiff must prove that the defendant has (1) the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity. *Perfect 10, Inc. v. Visa International Service Association*, 494 F.3d 788, 802 (9th Cir. 2007).

30.    *Deutsch v. Arnold*, 98 F.2d 686 (2nd Cir. 1938) is a landlord-tenant line of vicarious infringement case in which courts have found landlords not to be vicariously liable for the infringing acts of their tenants in instances where the landlord exercises no control over the leased premises, has no knowledge of the tenants' infringing acts, and in no way contributes to infringement.  The City contends that the facts of the instant case resemble these line of cases more than they do the "dance hall cases" such as *Buck v. Jewell-LaSalle Realty Co.*, 238 U.S. 191 (1931), in which vicarious infringement was found.

31. The City did not have the right and ability to supervise infringing conduct and, therefore, did not control the development of the Subdivision within the context of copyright law.

32. The City's performance of routine municipal functions, such as reviewing, approving or denying the approval of tentative and final maps, without more, cannot constitute vicarious infringement.

33. The City's power to review, approve or deny approval of tentative and final maps is circumscribed by California law and the City's own ordinances. *See, e.g.* California Government Code §§ 65455 (requirement that the City make findings in support of its decision to approve or disprove a tentative or final map), 66473 (in determining whether to approve or disprove a tentative map, a city can apply only those ordinances, policies and standards which were in effect at the time the application was determined to be complete), 66473.1, 66474 (requiring that local agencies deny tentative maps if it makes any of the findings stated in California Government Code § 66474), 66474.1; City of Wasco Municipal Code § 16.20.080 (requirement that the City approve the final map if it substantially complies with the tentative map), 16.16.110 (requirement that the City make findings in support of its decision to approve or disprove a tentative or final map).

34. The approval of a final map is a ministerial act. *Anthony v. Snyder*, 116 Cal.App.4th 643 (2004).

35. Applicants for tentative and/or final maps may challenge a city's denial of a tentative map by filing a petition for a writ of mandate under California Code of Civil Procedure § 1094.5 contending that the city abused its discretion.

36. The approval or denial of a final map may be challenged through an ordinary writ of mandate under Code of Civil Procedure § 1085. *Youngblood v. Board of Supervisors*, 22 Cal.3d 644 (1978).

Cases Concerning Motive for City's Distribution of Copyright
(to rebut claims of intent to encourage infringement)

37. The City's alleged distribution of the tentative map and/or improvement plans at issue in this litigation was done pursuant to the belief that these drawings were public records

23

1    and, therefore, could be freely distributed.

2    38.   The City's rationale is supported by various California statutes and City ordinances,

3          including the Public Records Act (California Government Code § 6250 et seq.), the

4          Ralph M. Brown Act (California Government Code § 54950 et seq.), the California

5          Environmental Quality Review Act (see, e.g. Public Resources Code §§ 21092(a),

6          21092(b), 21064.5, 21092, 21092.2, CEQA Guidelines § 15072), all of which concern

7          disseminating maps to the public in connection with public hearings on the

8          environmental compliance review process), the Subdivision Map Act and City of Wasco

9          Municipal Code § 16.16.090.

10   39.   Each of these statutes either classify materials possessed by a governmental agency as

11         public records or require that these materials be disseminated to the public either as part

12         of a public hearing requirement or to ensure that the decision making of public agencies

13         are transparent.

14                                    Damages

15   40.   17 U.S.C.S. § 504(b) erects a two-prong "profits" structure, treating "direct" and

16         "indirect" profits distinctly.  "Direct profits" are those that are generated by selling an

17         infringing product; "indirect" profits, in counterpoint, are defined as revenue that has a

18         more attenuated nexus to the infringement. *Lynch v. Trendwest Resorts, Inc.*, 64 Fed.

19         Appx. 44 (9th Cir. 2003).

20   41.   The phrase "actual damages" is defined as the extent to which the market value of a

21         copyrighted work has been injured or destroyed by an infringement. To determine the

22         work's "market value" at the time of the infringement, a hypothetical approach is

23         endorsed: what a willing buyer would have been reasonably required to pay to a willing

24         seller for the owner's work. *Mackie v. Rieser*, 296 F.3d 909   (9th Cir. 2002).

25   42.   In the copyright infringement context, actual damages, and its accompanying "market

26         value" test, is essentially an objective rather than a subjective measure of damages.

27         *Mackie v. Rieser*, 296 F.3d 909   (9th Cir. 2002).

28   43.   A plaintiff seeking "indirect" profits under 17 U.S.C.S. § 504(b), is required to proffer

                                        24

some evidence to create a triable issue regarding whether the infringement at least partially caused the profits that the infringer generated as a result of the infringement. Sufficient non-speculative evidence of a connection between the infringement and the profits generated indirectly is necessary to sustain an "indirect" profits claim." *Lynch v. TrendWest Resorts, Inc.*, 64 Fed. Appx. 44, 2003 U.S. App. LEXIS 7469 (9th Cir. 2003).

44. A plaintiff in a copyright infringement action must establish a sufficient causal connection between the infringement and the infringer profits it seeks to recover. *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700 (9th Cir. 2004).

45. Actual damages are usually determined by the loss in the fair market value of the copyright, measured by the profits lost due to the infringement or by the value of the use of the copyrighted work to the infringer. *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700 (9th Cir. 2004).

46. Under 17 U.S.C. § 504(b) actual damages must be suffered "as a result of the infringement," and recoverable profits must be attributable to the infringement. From the statutory language, it is apparent that a causal link between the infringement and the monetary remedy sought is a predicate to the recovery of both actual damages and profits. *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700 (9th Cir. 2004).

47. Damages must be proved and not just dreamed. *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700 (9th Cir. 2004).

48. Because the amount of profits attributable to infringement in an indirect profits case is not always clear, the copyright holder must establish the existence of a causal link before indirect profits damages can be recovered. *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700 (9th Cir. 2004).

49. A district court can preclude recovery of a defendant's profits if they are only remotely or speculatively attributable to the infringement. In the same vein, in a copyright action, a trial court is entitled to reject a proffered measure of damages if it is too speculative. A district court must conduct a threshold inquiry into whether there is a legally sufficient causal link between the infringement and subsequent indirect profits. Such an approach

dovetails with common sense - there must first be a demonstration that the infringing acts had an effect on profits before the parties can wrangle about apportionment.

50. When an infringer's profits are only remotely and speculatively attributable to infringement, courts will deny recovery to the copyright owner. *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700 (9th Cir. 2004).

51. 17 U.S.C. creates a two step process for the recovery of indirect profits: (1) the copyright claimant must show a causal nexus between the infringement and the gross revenue; and (2) once the causal nexus is shown, the infringer bears the burden of apportioning the profits that were not the result of infringement. *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700 (9th Cir. 2004).

52. Even if it is suspected that a copyright infringer derived some quantum of profits from the infringement because its infringement was part of promotional efforts, it nevertheless remains the duty of the plaintiff to establish a causal connection between the infringement and gross revenue reasonably associated with the infringement. *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700 (9th Cir. 2004).

53. If McIntosh fails to prove its infringement claims against Northern, DeWalt or Lotus, the impact fee aspect of its damage claims against the City will fail to satisfy *Polar Bear*'s two prong test for the recovery of indirect profits.

54. A copyright owner in a civil infringement action may elect one of two types of damages; (1) actual damages and "any additional profits of the infringer" or (2) statutory damages. (17 U.S.C. Section 504(a)).

55. If registration is not made within three months after first publication of the work or if the copyright work was not registered prior to commencement of the infringement, the copyright owner cannot recover statutory damages. (17 U.S.C. § 412); *Polar Bear Pools, Inc. v Timex Corp.*, 384 F.3d 700, 707 n.5 (9th Cir. 2004).

56. 17 U.S.C. Section 505; 17 U.S.C. 412.

57. Every court that has considered the issue has held that infringement commences for purposes of section 412 when the first act in a series of acts constituting continuing

infringement occurs.  *Derek Andrews, Inc. v. Poof Apparel*, 528 F.3d 696, 700- 701 (9th Cir. 2008).

58.   In addition to actual damages suffered as a result of infringement, the copyright owner is entitled to recover any profits of the infringer that are attributable to the infringement and that are not taken into account in computing the actual damages.  (17 U.S.C. § 504(b)).

59.   Where it is clear that not all of the profits are attributable to the infringing activity, the copyright owner is not entitled to recover all of those profits merely because the infringer fails to establish with certainty the portion attributable to the non-infringing elements. Where the evidence suggests some division which may rationally be used as a springboard it is the duty of the court to make some apportionment.  It would certainly be unjust to give the plaintiffs everything because defendants cannot, with certainty, compute their own share.  *Cream Records, Inc. v. Jos. Schlitz Brewing Co.*, 754 F.2d 826, 828- 829, (9th Cir. 1985).

60.   Where a copyright owner did not register its copyright before infringement, it can recover only actual damages and profits under 17 U.S.C.S. § 504(b), not statutory damages under § 504(c).  *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700 (9th Cir. 2004).

61.   Prevailing defendants are entitled to attorneys fees in copyright infringement cases. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534.

62.   Impact fees are not profits as a matter of law.  See, e.g. Mitigation Fee Act (California Government Code § 66000 et seq.) (establishing purposes for collection of fees and conditions on use of such fees).

63.   Impact fees are: (1) levied to fund public facilities and services necessary to serve new developments; (2) levied in an amount that is proportionate to the need for the public facilities and services necessary to serve a new development; and (3) required to be spent for the purposes they are levied. (California Government Code § 66000 et seq.)

64.   The City's Municipal Code establishes the purposes for which various fees, including impact fees are collected.  See Chapters 12, 13 and 16.  None of the purposes include

1   generating "profit" as the term is defined under copyright law.

2   65.   A defendant is not jointly and severally liable for the infringer profits earned by a

3   co-defendant. *MCA, Inc. v. Wilson*, 677 F.2d 180 (2nd Cir. 1981); *Pacific Information*

4   *Systems v. Simple Communications*, 2008 U.S. Dist. LEXIS 98943  (N.D. Cal. 2008).

5   66.   The rule of several liability for profits applies, at least, where defendants do not act as

6   partners, or "practically partners." *Frank Music Corp. v. Metro-Goldwyn-Mayer*, 772

7   F.2d 505 (9th Cir. 1985).

8   67.   *Sammons v. Colonial Press, Inc.*, 126 F.2d 341, 346-47 (1st Cir. 1942) (court refused to

9   hold printer jointly liable for publisher's profits since printer was paid a fixed price for

10   work, payable whether or not infringing books made profit).

11   Fair Use

12   68.   17 U.S.C. § 106.

13   Miscellaneous

14   69.   The process the City follows in reviewing, approving or denying tentative maps is

15   specified in Chapter 16 of the Wasco Municipal Code.

16   70.   With regards to the construction of sidewalks, curbs and gutters, the City follows the

17   procedures set forth in Chapter 12 of the Wasco Municipal Code.

18   71.   The City follows the procedures set forth in Chapter 16 of the Wasco Municipal Code

19   with respect to the development of subdivisions.  The California Subdivision Map Act

20   also governs the development of subdivisions in California (California Government Code

21   § 66410 et seq.).

22   **K.    Amendments/Dismissals**

23   With stipulated dismissal of the City's cross-claim against Northern, no cross-actions remain.

24   **L.    Abandoned or Court-Removed Issues**

25   This Court granted McIntosh summary adjudication on affirmative defenses/issues of implied

26   nonexclusive license, merger, publication, first sale doctrine, abandonment, limitation period and laches.

27   The parties shall not attempt to refer to or introduce evidence on these summarily adjudicated affirmative

28   defenses/issues.

28

1  **M.     Bifurcation and Order of Trial**

2         On the parties' agreement, this Court bifurcates the issue of damages which will be tried

3  following the jury's findings on infringement.  As such, the parties shall submit separate verdict forms

4  on liability and damages.

5  **N.     Further Discovery or Motions**

6         The parties reference neither future discovery nor motions, except in limine motions.

7  **O.     Stipulations**

8         The parties will stipulate to certain undisputed facts and exhibits.

9  **P.     Settlement**

10        There have been no meaningful settlement negotiations.  This Court will set no settlement

11  conference without the parties' joint request.

12  **Q.     Witnesses**

13        Only witnesses listed in this pretrial order (including "rebuttal" and/or "impeachment" witnesses)

14  shall be allowed to testify at trial, except as may otherwise be provided by this Court's order after a

15  showing of good cause, or by stipulation of the parties and this Court's order thereon. No later than

16  **February 16, 2010**, each party shall file and serve a final witness list, including the name of each

17  witness along with the business or home address of each witness, to the extent known, and omitting

18  witnesses listed herein which the parties no longer intend to call.  Only witnesses listed in this pretrial

19  order may appear on the final witness list, and no additional witnesses will be allowed to testify.

20        During trial, the parties' counsel are obligated to provide the Court and the other counsel, no less

21  than one court day before a witness is called, with the name of the witness.  If evidentiary problems are

22  anticipated, the parties' counsel are required to notify the Court immediately that a hearing will be

23  required.

24                          **McIntosh's Witnesses**

25                          <u>Non-Expert Witnesses</u>

26        1.      Roger McIntosh

27                2001 Wheelan Court, Bakersfield CA

28  / / /

2.      Joe Wu

        300 B Street, Turlock, CA

3.      Dennis McNamara

        City of Wasco

        746 8th Street, Wasco, CA 93280

4.      Terry W. Schroepfer, P.E.

        7025 Luke Avenue, Bakersfield, CA 93308

5.      Jeff Gutierrez

        1930 22nd Street, Bakersfield

6.      Jim Zervis

        City of Wasco

        746 8th Street, Wasco, CA 93280

7.      Robert Wren

        City of Wasco

        746 8th Street, Wasco, CA 93280

8.      Greg Black

        1118 Sungro Way, Bakersfield

9.      Sarah Burgi

        3124 Bank St, Bakersfield, 93304

10.     Josh Woodard

        3550 Orion, Redding CA 96002

11.     Gerald Helt

        2930 Union Avenue, Bakersfield CA 93305

12.     Keith Woodcock

        City of Wasco

        746 8th Street, Wasco, CA 93280

13.     Alan Peake

        1601 F Street, Bakersfield, CA, 93301

1    14.    Larry Pennell

2           1101 Cypress Ave., Wasco

3    15.    Kevin V. Lam

4           Three Embarcadero Center, 24th Floor

5           San Francisco, CA 94111

6                                   Expert Witnesses

7    16.    James DelMarter (for purposes of establishing substantial similarity in accordance with

8           civil engineering standards)

9           2901 H Street

10          Bakersfield, CA 93301

11   17.    Jubin Murati (rebuttal expert for purposes of rebutting any damage calculations by

12          defendants).

13                          **Northern, Lotus And DeWalt's Witnesses**

14                                  Non-Expert Witnesses

15   1.     Roger McIntosh

16          2001 Wheelan Court, Bakersfield, California

17   2.     Eugene Martin

18          (Address unknown)

19   3.     Ron Staub

20          (Address unknown)

21   4.     Joe Wu

22          300 B Street, Turlock, California

23   5.     Darrell Souza

24          5760 American Avenue, Modesto, California

25   6.     Sam Tiang

26          7621 Clements Circle, Sacramento, California

27   7.     Jeff Gutierrez

28          1930 22nd Street, Bakersfield, California

8.    Greg Black

      1118 Sungro Way, Bakersfield, California

9.    Sara Burgi

      3124 Bank Street, Bakersfield, California

10.   Josh Woodard

      1039 Edgewater Court, Redding, California

11.   Eric Heath James

      5909 Hesketh Drive, Bakersfield, California

12.   Jeff McDonald

      1120 Beryl Drive, Bakersfield, California

13.   Joe Stormont

      5536 Nicholas Street, Bakersfield, California

14.   Mike Weller

      5451 Midsummer #C, Bakersfield, California

15.   Robert Balow

      2900 San Emidio Street, Bakersfield, California

16.   Paul Chavez

      7713 Gallup Drive, Bakersfield, California

17.   Brandon Thompson

      14008 Toluca Drive, Bakersfield, California

18.   Kevin Bedford

      P.O. Box 11898, Bakersfield, California

19.   Alberto Lopez

      5318 Vista Del Mar, Bakersfield, California

20.   Judy Higgins

      101 Lakeview Drive, Wofford Heights, California

21.   Keith Woodcock

      1015 11th Avenue, Delano, California

22. Larry Pennell

1101 Cypress Avenue, Wasco, California

23. Ted Conrad

(Address unknown)

24. Michael Brown

16601 Ventura Blvd, Encino, California

25. Gerald Helt

2930 Union Ave, Bakersfield, California

26. Bob Wren

(City employee, contact through Wasco counsel)

27. Dennis McNamera

(City employee, contact through Wasco counsel)

28. Dan Allen

(City employee, contact through Wasco counsel)

29. King Leonard

141 La Costa Lane, Lompoc, California 93436

30. Terry Schroepfer

1800 30th Street, Ste 280, Bakersfield, California

31. Fred Porter

1200 21st Street, Bakersfield, California

32. Mitch Maxey

801 8th Street, Wasco, California

<u>Expert Witnesses</u>

33. Gary Giannetta

1119 S Street, Fresno, California

34. Steve Wong

3434 Fourth Ave, San Diego, California

35. James DelMarter

2901 H Street, Ste 3, Bakersfield, California

Further, Northern, Lotus and DeWalt intend to call any and all of the witnesses (non-expert or expert) listed or called by all parties.

**The City's Witnesses**

The City plans, and reserves its right to, rely on all witnesses listed by the other parties to this case.  In addition thereto, the City plans to call:

<u>Non-Expert Witnesses</u>

1.    King Leonard

      141 La Costa Lane, Lompoc, CA  93436

2.    Marty Jones

      2200 Garden Street, Wasco, CA  93280

3.    Larry Pennell

      1109 Cypress, Wasco, CA  93280

4.    John Hendrickson

5.    Keith Marshall

      633 W. Fifth Street - 24th Floor, Los Angeles, CA  90071

6.    Budd Kopp

7.    Kari Cobb

      909 Rosewood Ave, Wasco, CA  93280

8.    John Wooner

      10814 Cypress Falls Avenue, Bakersfield, CA  93312

9.    Eddie Johnson

      1231 Pecan, Wasco, CA  93280

10.   Bill Black

11.   Ron Staub

12.   Jim Zervis, City Manager, City of Wasco

      746 8th Street, Wasco, CA 93280

13.   Dan Allen, Public Works Department, City of Wasco

1             801 8th Street, Wasco, CA 93280

2     14.    Bob Wren, Public Works Department, City of Wasco

3             801 8th Street, Wasco, CA 93280

4     15.    Jerry Helt, Helt Engineering, Inc.

5             2390 Union Avenue, Bakersfield, CA

6     16.    Mitch Maxey, Public Works Department, City of Wasco

7             801 8th Street, Wasco, CA 93280

8     17.    Dennis McNamara, Community Development Department,

9             Planning Division, City of Wasco,

10            764 E Street, Wasco, CA 93280

11     18.    Jess Marimla

12     19.    Darrell Souza

13            5760 American Avenue, Modesto, California

14     20.    Michael Brown

15            16601 Ventura Blvd, Encino, California

16     21.    Eugene Martin

17     22.    Bill Black

18     23.    Ron Staub

19     24.    Alan Peake

20            Wall, Wall & Peake

21            1601 F Street, Bakersfield, CA 93301

22     25.    Terry Schroepfer

23            Provost and Pritchard

24            7025 Luke Avenue, Bakersfield, CA 93308

25     26.    Fred West, Jr., Council Member, City of Wasco

26            746 8th Street, Wasco, CA 93280

27     27.    Vickie Hight, City Clerk ,City of Wasco

28            746 8th Street, Wasco, CA 93280

28.   C. Alan Whitten, P.E., Supervising Engineer

Cornerstone Engineering, Inc.

208 Oak Street, Bakersfield, CA 93304

29.   Brett Dawson

San Joaquin Engineering, Inc.

1801 21st Street, Ste 1, Bakersfield, CA

30.   Warren Craig, City of Wasco employee, Street Department

31.   Dru Gibson

Helt Engineering

2930 Union Avenue, Bakersfield, CA

32.   Ted Conrad

E-mail: tconrad@bak.rr.com

33.   Marlo Glaser

764 E Street, Wasco, CA 93280

34.   Greg Black

1118 Sungro Way, Bakersfield, California

35.   Sara Burgi

3124 Bank Street, Bakersfield, California

36.   Josh Woodard

1039 Edgewater Court, Redding, California

37.   Eric Heath James

5909 Hesketh Drive, Bakersfield, California

38.   Joe Wu

300 B Street, Turlock, CA

39.   Jeff Gutierrez

1930 22nd Street, Bakersfield, California

Expert Witnesses

40.   Stephen Wong

36

1               Burkett and Wong Engineers

2               3434 Fourth Avenue, San Diego, California 92103

3      41.    James DelMarter

4               2901 H Street, Ste 3, Bakersfield, California

**R.**     **Trial Exhibits**

### 1. Duty to Pre-Mark Exhibits

No later than **February 9, 2010**, the parties shall exchange their proposed exhibits to the extent they have not done so. The parties' counsel shall meet and conduct an exhibit conference no later than **February 12, 2010** to pre-mark and examine trial exhibits and to prepare exhibit lists. All joint exhibits (i.e., any documents which the parties agree should be introduced into evidence) shall be pre-marked with the prefix "J" and numbered sequentially starting with J-1. All of McIntosh's exhibits (not jointly agreed upon) shall be pre-marked with the prefix "P" and numbered sequentially starting with P-100. All of Northern, Lotus and DeWalt's exhibits (not jointly agreed upon) shall be pre-marked with the prefix "D" and numbered sequentially starting with D-200. All of the City's exhibits (not jointly agreed upon) shall be pre-marked with the prefix "D" and numbered sequentially starting with D-400.

### 2. Exhibit Lists

No later than **February 16, 2010**, the parties shall file and serve their lists of respective pre-marked exhibits.

### 3. Submission of Trial Exhibits

No later than **February 25, 2010**, the parties shall submit to the clerk's office all pre-marked trial exhibits. The parties' counsel should note that, pursuant to Local Rule 281(b)(11), only those exhibits listed in the parties' pretrial statement will be permitted to be offered into evidence. Therefore, any exhibits submitted which are not listed in the pretrial statement will not be admitted.

### 4. Objections

No later than **February 16, 2010**, the parties shall file and serve written objections to exhibits which to which they make foundational or substantive objections. Such written objections shall reference the exhibit objected to, specifically set forth the objectionable matter in the disputed exhibit, and include a citation to legal authority explaining the grounds for the objection and why the exhibit is

not admissible.  A concise argument concerning the disputed exhibit may be included.

### 5.   Discovery Documents

Only specifically-designated discovery documents will be eligible for admission into evidence. Therefore, the parties shall file and serve no later than **February 16, 2010** a list of all discovery documents intended to be used at trial, identifying the discovery by set number and indicating whether the original discovery document has been previously lodged with the Court.  If a discovery document intended to be used at trial has not been previously lodged, the parties shall also submit the original of such document along with a copy for the Court's use.  Discovery documents (or relevant portions thereof) may be either separately marked and indexed as a trial exhibit (as part of the exhibit marking process described above) or, if admissible, read directly into evidence.

### 6.   Deposition Testimony

Deposition testimony shall be designated by page and line number, with such designation to be filed and served no later than **February 16, 2010**.  Any counter-designation as to the same deposition (also set out by page and line number), along with written objections to any question and answer designated by another party, shall be filed and served no later than **February 18, 2010**.  The original certified transcript of any deposition identified in a designation or counter-designation shall be lodged with the clerk's office no later than **February 18**, **2010**, if not previously lodged with the Court.

All objections shall be in writing, shall identify by page and line number the testimony or content subject to the objection, and shall include a citation to legal authority explaining the grounds for the objection and why the testimony or content is improper.  A concise argument concerning the testimony or content may be included.

### 7.   Duty of the Parties' Counsel

During the course of trial, the parties' counsel shall meet with the Court each morning to advise as to which items of evidence will be used that day and which have not already been admitted into evidence.  The Court will rule on any objections to the extent possible prior to the commencement of trial each day out of the presence of the jury.  If such ruling depends on the receipt of testimony or other evidence, the Court will rule as appropriate upon the receipt of such testimony or evidence.  If evidentiary problems are anticipated, the parties' counsel are required to notify the Court immediately

that a hearing outside the jury's presence will be required.  During the time set for conducting the trial before the jury, the Court will not hear argument outside the jury's presence on such matters.

### 8.      Post-Trial Exhibit Retention

The party's counsel who introduced exhibits at trial shall retrieve the original exhibits from the courtroom deputy following the verdict in the case.  The parties' counsel shall retain possession of and keep safe all exhibits until final judgment and all appeals are exhausted.

### S.      Trial Briefs

Any trial briefs shall be filed and served no later than **February 19, 2010** and otherwise pursuant to this Court's Local Rule 285.

### T.      Motions in Limine

Motions in limine shall be filed and served no later than **January 29, 2010**.   Responses to motions in limine shall be filed and served no later than **February 5, 2010**.  The Court will neither accept nor consider reply papers. This Court will conduct a hearing on the motions in limine on **February 12, 2010 at 1:30 p.m.** in Department 4 (LJO) of this Court.

### U.      Joint Statement of the Case/Agreed Statements

For use during jury voir dire, the parties shall prepare a joint neutral statement of the case, which briefly describes the case, including the claims and defenses.  The joint neutral statement shall be filed and served no later than **February 16, 2010**.

The parties offer no agreed-on facts.

### V.      Proposed Jury Voir Dire

The parties shall file and serve any proposed jury voir dire no later than **February 16, 2010**. McIntosh will be limited to 20 minutes of jury voir dire.  Northern, Lotus and DeWalt will be limited to a combined 15 minutes of jury voir dire.  The City will be limited to 15 minutes of jury voir dire.

### W.      Proposed Jury Instructions and Verdict Form

The parties shall serve their proposed jury instructions and verdict forms on one another no later than **February 9, 2010**. The parties shall conduct a conference to address their proposed jury instructions and verdict forms no later than **February 12, 2010**.  At the conference, the parties SHALL reach agreement on jury instructions and a verdict form for use at trial.  The parties shall file and serve

all agreed-on jury instructions, an agreed-on verdict form for infringement liability and an agreed-on verdict form for damages no later than **February 16, 2010** and identify such as the agreed-on jury instructions and verdict form.

No later than **February 16, 2010**, McIntosh and the City each may file and serve up to 10 proposed jury instructions and identify such as jury instructions upon which all parties could not agree. No later than **February 16, 2010**, Northern, Lotus and DeWalt may file and serve up to a combined 10 proposed jury instructions among the three of them and identify such as jury instruction upon which all parties could not agree. Without a prior order, this Court will not consider additional proposed jury instructions past the first 10.

This Court expects and specifically orders the parties to file an agreed-on special verdict form on infringement liability and an agree-on special verdict form on damages no later than **February 16, 2010**. If a party seeks additions to an agreed-on verdict form, that party may file and serve, no later than **February 16, 2010**, a proposed verdict form which includes the agreed-on portions and additions which are clearly indicated on that party's proposed verdict form. This Court will strike and will not accept separately proposed verdict forms upon which the parties do not agree.

All jury instructions shall indicate the party submitting the instruction (i.e., joint/agreed-on, plaintiff's or defendants'), the number of the proposed instruction in sequence, a brief title for the instruction describing the subject matter, the text of the instruction, and the legal authority supporting the instruction.

All jury instructions and verdict forms shall be e-mailed as a WordPerfect attachment to ljoorders@caed.uscourts.gov and ggreen@caed.uscourts.gov no later than **February 16, 2010**. **Jury instructions and verdict forms will not be given or used unless they are so e-mailed to the Court. The Court will not accept a mere list of numbers of form instructions from the Ninth Circuit Model Jury Instructions, CACI, BAJI or other instruction forms. The proposed jury instructions must be in the form and sequence which the parties desire to be given to the jury. All blanks to form instructions must be completed. Irrelevant or unnecessary portions of form instructions must be omitted.**

Ninth Circuit Model Jury Instructions **SHALL** be used where the subject of the instruction is

covered by a model instruction.  Otherwise CACI or BAJI instructions **SHALL** be used where the subject of the instruction is covered by CACI or BAJI.  **All instructions shall be short, concise, understandable, and neutral and accurate statements of the law.  Argumentative or formula instructions will not be given and must not be submitted.**  The parties shall, by italics or underlining, designate any modification of instructions from statutory or case authority, or any pattern instruction, such as the Ninth Circuit Model Jury Instructions, CACI, BAJI or any other source of pattern instructions, and must specifically state the modification made to the original form instruction and the legal authority supporting the modification.

No later than **February 16, 2010**, the parties shall file and serve written objections to disputed jury instructions proposed by another party.  All objections shall be in writing, shall set forth the proposed instruction objected to in its entirety, shall specifically set forth the objectionable matter in the proposed instruction, and shall include a citation to legal authority to explain the grounds for the objection and why the instruction is improper.  A concise argument concerning the instruction may be included.  Where applicable, the objecting party shall submit an alternative proposed instruction covering the subject or issue of law.

**X.      Attorney Fees**

McIntosh requests attorney fees.

Defendants contend that if McIntosh prevails, he is precluded to seek attorney fees.  Although under 17 U.S.C. § 505 the prevailing party is entitled to attorney fees, 17 U.S.C. § 412 precludes such recovery by McIntosh.  Should Defendant(s) prevail, they may be entitled to attorney fees and costs under 17 U.S.C. § 505 and *Fogerty v. Fantasy, Inc.* 510 U.S. 517 (1994).

**Y.      Compliance with This Order**

Strict compliance with this order and its requirements is mandatory.  This Court will strictly enforce the requirements of this pretrial order, especially those pertaining to jury instructions and verdict forms.  Counsel and parties are subject to sanctions for failure to fully comply with this order and its requirements.  Disobedience of this Court's orders, as noted by this Court's prior orders and at the

/ / /

/ / /

pretrial conference, will be a predicate for sanctions.  This Court will modify this order "only to prevent manifest injustice."  F.R.Civ.P. 16(e).

**IT IS SO ORDERED.**

**Dated:**    **January 7, 2010**                          /s/ Lawrence J. O'Neill
                                                  UNITED STATES DISTRICT JUDGE