1  BONIFACIO BONNY GARCIA (SBN 100761)
   CHAKA C. OKADIGBO (224547)
2  GCR, LLP
   520 SOUTH GRAND AVENUE, SUITE 695
3  LOS ANGELES, CA  90071
   Tel: (213) 347-0210
4  Fax: (213) 347-0216

5  Attorneys for Defendant CITY OF WASCO

6

7

8              UNITED STATES DISTRICT COURT

9      EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

10

| | |
|---|---|
| 11  ROGER McINTOSH | Case No: 1:07-CV-01080-LJO-WMV |
| 12        Plaintiff, | **DEFENDANT CITY OF WASCO'S MOTION *IN LIMINE* NO. 5 TO EXCLUDE** |
| 13      vs. | **TESTIMONY AND/OR EVIDENCE RELATED TO THE CITY'S** |
| 14  NORTHERN CALIFORNIA UNIVERSAL ENTERPRISES | **COLLECTION OF IMPACT FEES; MEMORANDUM OF POINTS AND** |
| 15  COMPANY, INC., *et al.*, | **AUTHORITIES IN SUPPORT THEREOF** |
| 16        Defendants. | |

17

18

19              **MOTION *IN LIMINE***

20        Defendant CITY OF WASCO ("THE CITY"), hereby moves the Court to instruct

21  Plaintiff ROGER McINTOSH and his counsel ("Plaintiff"), before trial and selection of the jury

22  in the above-entitled case, that he may not refer to, mention, comment upon, or otherwise

23  introduce into evidence at trial any evidence or testimony related to impact fees as profits. This

24  motion is made on the grounds that the prejudicial impact of such testimony and evidence will

25  outweigh any probative value of the same, and that such evidence will confuse and mislead the

26  jury. Fed. R. Evid. 403.

27

28

4832-2285-4405                                1

1        This motion is made on the memorandum accompanying this motion, the Declaration of

2  Chaka C. Okadigbo, on the papers and records on file herein, and on such oral and documentary

3  evidence that may be presented at the hearing on this motion.

4  DATED: January 29, 2010            GCR, LLP

By: _____
     CHAKA C. OKADIGBO
     Attorneys for Defendant
     CITY OF WASCO

**DEFENDANT CITY OF WASCO'S MOTION *IN LIMINE* NO. 5 TO EXCLUDE TESTIMONY AND/OR EVIDENCE RELATED TO THE CITY'S COLLECTION OF IMPACT FEES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

1                    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.      INTRODUCTION**

3              In this litigation, Plaintiff contends that Defendants Northern California Universal

4    Enterprises Co. ("NCUE"), Lotus Developments, LP ("Lotus") and Dennis W. DeWalt, Inc.

5    ("DeWalt") copied his tentative map (Map 5472) in their efforts to finalize the development of

6    the Valley Rose Estates Subdivision ("Subdivision"). Plaintiff further contends that Defendant

7    City of Wasco ("City") encouraged and/or induced infringement and, therefore, is liable to

8    Plaintiff on vicarious and contributory copyright infringement theories. As part of his damage

9    claims, Plaintiff has signaled his intent to collect "infringe profits" pursuant to 17 U.S.C. § 504.

10   To this end, Plaintiff maintains that the fees, including impact fees, which the City has collected

11   from the Subdivision constitute "profits" under 17 U.S.C. § 504.  However, Plaintiff is

12   misguided. As a matter of law, the fees collected from the Subdivision cannot possibly be

13   construed as "profits" under the copyright statutes. This is clear from reviewing the bases for

14   the City's authority to collect fees and the limitations on the City's authority to collect fees.

15   Similarly, the definition of profits under 17 U.S.C. § 504 is not susceptible to an interpretation

16   that the fees collected from the Subdivision thus far constitute profits.

17             In recognition of the financial strain put on local governments as the result of

18   infrastructure needed to support new housing developments, the California Legislature enacted

19   the "Mitigation Fee Act."[1] Local governments are allowed to charge impact fees "for the

20   purpose of defraying all or a portion of the cost of public facilities related to the development

21   project..."[2] Before a local government can impose an impact fee, it must be able to show that

22   the impact fee is reasonably calculated to pay for the expected impact on the local

23   government's infrastructure.  The local government must also identify the purpose of the fee,

24   the reasonable relationship between the public facility being funded and the development

25   project on which the fee is imposed, and keep the impact fee funds separate accounts and

26   conduct regular audits of the accounts. If the local government determines that sufficient funds

27
     _____
     [1] California Government Code §§66000-66025.
28   [2] California Government Code §66000(b).
     4832-2285-4405                                        3

1  have been collected, it must complete the public facility and refund to the home owners any
2  unexpended funds.[3]  The local government does not keep any funds that are not used for their
3  stated purpose.

4        Based on these principles, it is clear that the City is not authorized to collect any
5  revenue that exceeds the actual or projected costs of servicing a development.  Thus, such fees
6  cannot possibly constitute profits.  Even the copyright statute distinguishes between gross
7  revenue and profits in that an alleged infringer is permitted to deduct costs and expenses from
8  gross revenue so as to reveal its profits. *See* 17 U.S.C. § 504(b).  Since impact fees address only
9  the issue of reimbursement for costs, it follows that, by definition, such fees cannot be
10 considered profits.

11 **II.    ARGUMENT**

12        **A.    The Court Has Authority to Exclude Evidence.**

13        Rule 402 of the Federal Rules of Evidence authorizes the Court to exclude irrelevant
14 evidence on the ground that it is inadmissible.  Furthermore, Rule 403 of the Federal Rules of
15 Evidence provides that "evidence may be excluded if its probative value is substantially
16 outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or
17 by considerations of undue delay, waste of time, or needless presentation of cumulative
18 evidence."[4]  Here, the presentation of evidence that impact fees are profits is irrelevant to the
19 issue of Plaintiff's damages since it does not constitute profits under 17 U.S.C. § 505.  If
20 offered at trial, such evidence will also unfairly prejudice the City and will confuse and mislead
21 the jury insofar as reference will be made to "profits" that the City did not make.

22        **B.    Impact Fees Are Not "Profits."**

23        Pursuant to 17 USC §504(a), a copyright owner is entitled to damages caused by the
24 infringement of his copyrighted work.  Damages can be either: actual damages and the ***profit***
25 made by the infringer from the infringement; or, statutory damages.[5]  Under the statute, profit is

26

---

27  [3] California Government Code §§ 66001 and 66006.
    [4] USCS Fed Rules Evid R 403
28  [5] 17 USC §504(a) (emphasis added.)

1  the gross income attributable to the infringement minus costs and any profit that can be

2  attributable to other factors.[6]  The Court in *On Davis v. The Gap, Inc.* found that "...Congress

3  means 'profits' in the lay sense of gross revenue less out-of-pocket costs..."[7]  From this

4  definition of profits, it is clear that profits mean revenues generated in excess of costs.  Here,

5  however, Plaintiff construes as "profits" all fees which the City has collected from the

6  Subdivision even though such fees may only lawfully be collected to reimburse the City for the

7  actual or projected costs to the City of providing miscellaneous services to the Subdivision.

8        The City has passed several ordinances under the Mitigation Fee Act for the collection

9  of impact fees.  Some impact fees are imposed on all new developments and others are limited

10  to the Subdivision.  The impact fees include, but are not limited, to: sanitation;[8] water system;[9]

11  traffic;[10] and, sewer and water infrastructure specifically for the Valley Rose Estates.[11]

12  Pursuant to the Map Act,[12] the City also collects storm drainage fees.  And, pursuant to the

13  Quimby Act, the City obtains either land, or fees in lieu of land, to be used for parks and

14  recreational activities as a condition for approval of a tentative subdivision map.[13]  The courts

15  have recognized that fees generated from these types of ordinances are necessary if a city is to

16  provide services to residents in new developments.

17        The ordinance clearly provides that any citizen seeking to build a

18        new home in the City would have to pay, in advance, a pro-rata

19        share of the costs of the providing of additional water and

20        sewerage capacity.  These costs reflect, of necessity, an economy

21        of scale. . . The reality of municipal management is that long-term

22        systemic costs and growth projections must be taken into

23        consideration, determined, and pursued. . . The City made long-

24

---

25  [6] 17 USC §504(b)
  [7] *On Davis v. The Gap, Inc* 246 F.3d 152, 163 (2nd Cir. 2001).
  [8] Municipal Code §13.06.

26  [9] Municipal Code §13.10.
  [10] Municipal Code §13.24.

27  [11] Municipal Code §13.21.
  [12] California Government Code §66483 and Municipal Code §16.44.

28  [13] California Government Code §66477 and Municipal Code §16.46.

4832-2285-4405     5

1                          term plans with the understanding that it would be obligated to

2                          provide additional water and sewerage service to [plaintiff], his

3                          successors in interest, and everyone else who paid the impact fee.[14]

4  The impact fees collected by the City are necessary for the "municipal management" of the

5  City.  And, as required by California law, pursuant to Government Code §66000, each City

6  ordinance relating to the collection of impact fees:

7               •  clarifies that the fees are being collected for solely purposes of defraying the

8                   costs of public facilities related to the Subdivision;

9               •  clarifies the relationship between the use of the fees and the type of development

10                  project on which the fee is imposed;

11              •  clarifies the Subdivision's need for the facilities; and

12              •  establishes a nexus between the collection of fees and the cost of the public

13                  facilities.[15]

14      Furthermore, both the Mitigation Fee Act and City ordinances prohibit the City from

15  generating more fees than are needed to offset costs and commit the City to spending these

16  monies solely for the purposes for which the fees were established.[16]  Indeed, the City is

17  required to issue a refund to homeowners if the fees are not used for its stated purpose or if any

18  unexpended funds remain.

19               [T]he local agency shall identify, within 180 days of the

20               determination that sufficient funds have been collected, an

21               approximate date by which the construction of the public

22               improvement will be commenced, or shall refund to the then

23               current record owner or owners of the lots or units, as identified on

24               the last equalized assessment roll, of the development project or

25

26  ———————————————

[14] *McNair v. City of Cedar Park, Texas* 993 F.2d 1217, 1220-1221 (5th Cir. 1993)

27  [15] *See* Municipal Code §§13.06, 13.10, 13.21, 13.24, 16.44 and 16.46.

[16] Furthermore, each impact fee is deposited into a discrete account to be used specifically for the fee's stated

28  purpose. *See* Municipal Code §13.06.060, 13.10.060, 13.24.110, and 13.21.050

1  projects on a prorated basis, the unexpended portion of the fee, and

2  any interest accrued thereon.[17]

3  Altogether, the Mitigation Fee Act and the City's ordinances unmistakably establish that

4  impact fees are not profits because they are collected to mitigate the impact of subdivisions on

5  City resources or to reimburse the City for the construction of public facilities, such as the

6  Subdivision improvements.  Not coincidentally, even Plaintiff admitted in his deposition that he

7  does not believe that impact fees are profits.

8  Q.  Is it your understanding that impact fees are profits?

9  MR. TRAVIS:  I'm going to object, that calls for a legal conclusion.

10  To the best of your understanding, you can answer it.

11  A.  No.  That would be a legal, because it wouldn't meet the nexus test.[18]

12  Plaintiff further stated that he understood that the City had passed an ordinance related to the

13  Subdivision for the purpose of collecting fees to reimburse itself.  "[T]his ordinance was passed

14  specifically for Valley Rose Estates infrastructure, and it was set up as a - - a way to collect fees

15  from whoever took the project over, or purchased the property, to reimburse the City for the

16  improvement costs."[19]

17  The unmistakable conclusion that the City has not profited from the collection of impact

18  fees is underscored by the fact the copyright statutes permit an infringer to deduct costs from an

19  infringer's gross revenue, thus clarifying that costs are not profits.[20]  And since impact fees are

20  intended only to reimburse costs, they do not constitute profits.

21  The City's costs are the costs of the public facilities being funded by the impact fees.

22  For example, the ordinance identifying the impact fees particular to Valley Rose Estates states

23  that the impact fee **shall** be used to reimburse the costs incurred by the city for sanitary sewer

24  improvements and water system improvements..."[21]  And, the funds "**shall** be used by the city

25
[17] Government Code §66001(e); *see also* Municipal Code §§13.06.060(C)(4), 13.10.060(C)(4), 13.21.050(C),
26  13.24.130(B), and 16.46.100 (b).
[18] Deposition of Roger McIntosh, January 28, 2009 (Vol. II), p. 298:15-22, *see* Okadigbo Decl. ¶3, Ex. A.
27  [19] Deposition of Roger McIntosh, December 18, 2008, (Vol. I), p. 133:14-19, *see* Okadigbo Decl. ¶3, Ex. A..
[20] *Polar Bear Productions, Inc.* at 711.
28  [21] Municipal Code §13.21.020 (emphasis added.)
4832-2285-4405  7

1   in conformity with the limitations placed upon those accounts."[22]  If, after five years, the City

2   has not used the money for its intended purpose and there are no findings that the money is still

3   needed, the money plus interest must be refunded to the homeowners.[23]  Because the impact

4   fees are specifically designed to equal the actual costs of a particular infrastructure or services

5   being serviced by the impact fee (anything in excess must be refunded to the homeowners), the

6   City never sees a financial gain from the impact fees.

7          While it is true that courts have found that financial gain is not the only measure of

8   "profit" it still requires a finding that THE CITY gained something of value.  "The crux of the

9   profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but

10  whether the user stands to profit from exploitation of the copyrighted material without paying

11  the customary price."[24]

12         In *Associated Residential Design, LLC v. Molotky*, the plaintiff, an architectural firm,

13  alleged that defendants had copied its house design and used the plans to build their own home.

14  Defendants tried to argue that plaintiff was not entitled to "profits" because they had not sold

15  their home and, therefore, had not realized a profit.  The court rejected this argument and found

16  that defendants' profit was the equity in their home – the difference between the value and the

17  cost to build it.[25]    In other words, the Molotkys had profited (equity) by exploiting the

18  copyrighted material.  That is not the case here.

19         The City has not gained any value from "exploitation of the copyrighted material."  The

20  City is required to provide services, such as water, sewerage, streets, etc. to its citizens.  The

21  funds obtained from the impact fees only serve to pay for these services.  There is no value to

22  the City and, therefore, any evidence of the impact fees as profits will only serve to prejudice

23  the City and confuse or mislead the jury.

24

25

26

---

[22] Municipal Code §13.21.020(B) (emphasis added.)

27  [23] Municipal Code §13.21.050(C).

[24] *Harper & Row, Publishers, Inc. v. Nation Enterprises* 471 U.S. 539, 562 (U.S. 1985).

28  [25] *Associated Residential Design, LLC v. Molotky,* 226 F. Supp. 2d 1251, 1256 (D. Nev. 2002).

4832-2285-4405                                    8

1

**B.** **Plaintiff Cannot Draw a Casual Link Between the Infringement and the Impact Fees.**

2

3

**1.** **The CITY Did Not Vicariously Profit As a Result of the Infringement.**

4     Plaintiff will undoubtedly contend that the impact fees which the City has collected

5     from the Subdivision are "infringer profits" under 17 U.S.C. § 404 in that they are attributable

6     to his direct, contributory and vicarious infringement claims against the City. However, the

7     City did not "profit" from any allegedly infringing activities. Regardless, however, Plaintiff

8     cannot establish a causal link between the alleged infringement at issue here and the fees that

9     the City has collected from the Subdivision.

10     The law requires that the damages and gross profits claimed by the Plaintiff be the result

11     of the infringement.

12     Under § 504(b), actual damages must be suffered "as a result of the infringement,"

13     and recoverable profits must be "attributable to the infringement." ... We take this

14     opportunity to reaffirm the principle that a plaintiff in a § 504(b) action must

15     establish this causal connection, and that this requirement is akin to tort principles

16     of causation and damages.[26]

17     17 U.S.C. § 504(b) establishes a two-prong "profits" structure, treating direct and

18     indirect profits differently. "Direct profits" are those that are generated by selling an infringing

19     product. Conversely, "indirect profits" are defined as revenue that has a more attenuated nexus

20     to infringement.[27] A plaintiff seeking indirect profits must proffer some evidence to create a

21     triable issue of fact regarding whether the alleged infringement at least partially caused the

22     profits that the infringer generated as a result of the alleged infringement. "'Sufficient, non-

23     speculative evidence [of a connection] between the infringement and the profits generated

24     indirectly,' we have noted, is necessary to sustain an 'indirect profits claim.'"[28] "When an

25     infringer's profits are only remotely and speculatively attributable to infringement, courts will

26

27     [26] *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 708 (9th Cir. Wash. 2004) (citations omitted.)
       [27] *Lynch v. Trendwest Resorts, Inc.*, 64 Fed.Appx. 44, 45 (9th Cir. 2003).

28     [28] *Id.* at 45.
       4832-2285-4405

9

1   deny recovery to the copyright owner."[29]   In this instance, indirect profits are at issue since

2   Plaintiff has not alleged that the 5472 Map and plans were sold. Plaintiff is required to produce

3   non-speculative evidence of a link between impact fees and the alleged infringement at issue.

4          Summarized, the infringement must trigger the collection of impact fees. The collection

5   of impact fees for the Subdivision, however, was not dependent on the infringement nor was it

6   dependent on the submission of a tentative and/or final subdivision map.    The collection of

7   impact fees was dependent on the finding that the development impacted the City's public

8   facilities and/or services.

9          As noted above, pursuant to the Mitigation Fee Act, local governments can collect

10  "impact fees" from a new development for the purpose of defraying the costs of providing

11  services to the new development. Before a local government can start collecting those fees

12  however, it must conduct a study to determine the actual anticipated impact of the development

13  on the public facilities. It must be able to articulate the reasonable relationship between the fee

14  being charged and the impact to the city's resources. "In any action imposing a fee as condition

15  of approval of a development project by a local agency, the local agency shall determine how

16  there is a reasonable relationship between the amount of the fee and the costs of the public

17  facility or portion of the public facility attributable to the development on which the fee is

18  imposed."[30]

19         In compliance with the Act, the City ordered a study on the impact the Subdivision

20  would have on City facilities. The study, entitled "IMPACT FEE ENGINEERING STUDY –

21  City of Wasco VALLEY ROSE ESTATES Zone of Benefit – VALLEY ROSE ESTATES

22  Infrastructure Improvements", was prepared by Helt Engineering, Inc. and is dated December 7

23  2004.[31]   The City Council, relying on this study found "that there is a reasonable relationship

24  between the amount of the fee set in this chapter and the public facilities or portions thereof

25  attributable to the development project on which the fee is imposed."[32]   As a result, the City

---

[29] *Polar Bear, supra*, 384 F.3d at 711.
[30] California Government Code §66001(b).
[31] City of Wasco Municipal Ordinance §13.21.010.
[32] City of Wasco Municipal Code § 13.21.040.

**DEFENDANT CITY OF WASCO'S MOTION *IN LIMINE* NO. 5 TO EXCLUDE TESTIMONY AND/OR
EVIDENCE RELATED TO THE CITY'S COLLECTION OF IMPACT FEES; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF**

1   Council created and established an impact fee for the Subdivision for the purpose of

2   reimbursing "the costs incurred by the city for sanitary sewer improvements and water system

3   improvements as described in the engineering study to serve the Valley Rose Estates

4   infrastructure project area."[33]  The fee only becomes payable upon "the application for approval

5   of a development project on a benefited property."[34]  In short, fees can only be collected if there

6   is an engineering study concluding there is impact on public facilities, the City Council finds a

7   reasonable relationship between the impact fees and the public facilities the fees are to pay for,

8   and then, only upon an application to begin construction on a particular unit.  Clearly, the

9   collection of impact fees is independent of any infringement or submission of maps.  The City

10  would collect impact fees from whoever decided to construct in the Subdivision, regardless of

11  whether or not that entity committed any infringement.

12          In light of Plaintiff's inability to establish a causal link between his infringement claims

13  against the City and the collection of fees from the Subdivision, the Court should bar Plaintiff

14  from introducing evidence of damages.

15                    **2.      There is No Causal Link Between Plaintiff's Direct Infringement
                              Claims Against the City and the Collection of Fees.**
16

17          In the case of Plaintiff's direct infringement claims, the City's distribution of the map

18  and plans, standing alone, did not enable the City to collect fees from the Subdivision.  Any

19  claim that the distribution enhanced the City's ability to collect fees necessarily depends on

20  Plaintiff's allegations that NCUE, Lotus and/or DeWalt prepared their subdivision maps by

21  copying or using the 5472 Map and plans and that the City encouraged such copying or

22  financially benefitted therefrom.   However, such claims are the province of Plaintiff's

23  contributory and vicarious infringement claims, not his direct infringement claims against the

24  City.  Accordingly, Plaintiff cannot establish a causal link between the collection of impact fees

25  and the distribution of the 5472 Map and plans for purposes of his direct infringement claims

26  against the City.

27  --------

[33] City of Wasco Municipal Code § 13.21.020.

28  [34] City of Wasco Municipal Code § 13.21.030.

4832-2285-4405                                    11

1     The City anticipates that Plaintiff may respond by, in part, challenging whether or not

2 the City was legally entitled to collect fees under the Mitigation Fee Act. Be that as it may, if

3 the City's collection of fees was wrongful, such a challenge is not the properly the subject of

4 this copyright case. It is the subject of a writ of mandate under California Code of Civil

5 Procedure § 1085. Furthermore, any monies deemed to have been wrongfully collected are

6 reimbursable to the persons or entities from whom they were collected, not third parties such as

7 Plaintiff.[35]

8     Because Plaintiff cannot establish a nexus between his distribution claim and the

9 collection of fees, the Court should bar Plaintiff from introducing evidence of the amount in

10 fees collected from the Subdivision as part of his damage claims on the ground that such

11 evidence is irrelevant under Rule 402 of the Federal Rules of Evidence. Furthermore, it would

12 be unduly prejudicial to the City and misleading to the jury to permit Plaintiff to introduce

13 evidence of the amount in fees the City has collected from the Subdivision when such evidence

14 is irrelevant.

15 **III.   CONCLUSION**

16     The impact fees collected by the City are not profits nor are they the result of the

17 infringement. The introduction of evidence of impact fees will only serve to confuse or mislead

18 the jury and unduly prejudice the City. The City respectfully requests that this Court instruct

19 Plaintiff that he may not refer to, mention, comment upon, or otherwise introduce into evidence

20 at trial any evidence or testimony related to impact fees as profits.

21 DATED: January 29, 2010            GCR, LLP

22

23

24                          By:

25                              CHAKA C. OKADIGBO
                             Attorneys for Defendant

26                              CITY OF WASCO

27

28 [35] California Government Code §§ 66001, 66006.

4832-2285-4405                 12