nr

1  James J. Braze, Esq.; SBN 75911
   Jeffrey A. Travis, Esq.; SBN 235507
2  BORTON PETRINI, LLP
   5060 California Avenue, Suite 700 (93309)
3  Post Office Box 2026
   Bakersfield, CA 93303
4  Telephone (661) 322-3051
   email: jbraze@bortonpetrini.com
5  email: jtravis@bortonpetrini.com

6  Attorneys for Plaintiff, Roger McIntosh dba
   McIntosh & Associates

7

8              UNITED STATES DISTRICT COURT

9       EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

10

11  ROGER McINTOSH,                    Case No.  1:07-CV- 01080 LJO-GSA

12              Plaintiff,             PLAINTIFF, ROGER MCINTOSH'S
                                       TRIAL BRIEF PURSUANT TO LOCAL
13  v.                                 RULE 16-285

14  NORTHERN CALIFORNIA UNIVERSAL
    ENTERPRISES COMPANY, a California
15  corporation; LOTUS DEVELOPMENTS,
    LLP; THE CITY OF WASCO, a municipal
16  corporation; DEWALT CM, INC., a California
    corporation also doing business as DEWALT
17  CORPORATION; and DOES 1 through 10,
    inclusive
18
                Defendants.
19

20  CITY OF WASCO,

21              Cross-Complaint,

22       vs.

23  NORTHERN CALIFORNIA UNIVERSAL
24  ENTERPRISES COMPANY, INC.,

25              Cross-Defendant.

26

27

28

**I.**

**BRIEF STATEMENT OF FACTS**[1]

Roger McIntosh was assigned a copyright interest from his prior firm, Martin-McIntosh. ("MM")  This copyright interest encompassed technical drawings in the form of a tentative map and supporting improvement plans.  These works were for a subdivision in the City of Wasco.  When the developer with whom MM went bankrupt, the subdivision lay dormant for many years and all rights to the engineering works supporting the subdivision were retained by MM and, later, McIntosh through assignment.

Wasco later marketed and touted the subdivision as a benefit because of the existing improvements and an expedited mapping process.  Northern California Universal Enterprises Co. and Lotus Developments, LP ("Northern") jumped at the chance to purchase the subdivision since all they needed to start building homes was a new map to replace expired map, 5472.  DeWalt was the engineering firm hired by Northern to prepare the new map.  No one except Northern bothered to contact McIntosh about permission to use his works and, when they did, ignored demands for payment.  Instead, DeWalt prepared an infringing map, Wasco freely gave copies of the 5472 Map and plans to whoever asked for it on the project, and Northern obtained copies so that they could repair the decay that had set in on the subdivision.

**II.**

**EXPECTED EVIDENTIARY ISSUES**

A.    **Redemption and Dissolution Agreement Assigning the Rights to the Copyrighted Work to Roger McIntosh**

When Martin-McIntosh dissolved in 1999 a Redemption and Dissolution Agreement was signed which assigned all assets in California to Roger McIntosh.   This is a large Agreement and contains sales prices, client lists, and other information which plaintiff would like to keep confidential, if possible.  There were only a few pages that address the transfer of assets issue, the

---

[1]Defendant, Dennis W. De Walt, Inc. has filed a joint stipulation of facts on behalf of all parties.

1  rest are mostly supporting documents.

2          The privacy issue was brought up to the parties in February of 2009 and all parties

3  stipulated to the document being "Attorney's Eyes Only" until this Court had a chance to review the

4  issue.  As part of the stipulation, all parties conceded to its admissibility.  The entire document has

5  been made a part of plaintiff's exhibit list.

6          **B.**     **Costs Paid to Martin-McIntosh for Its Previous Engineering Work On the**

7  **Valley Rose Estates Project**

8          All defendant's exhibits and deposition testimony contain exhibits that list how much

9  Martin-McIntosh was paid for its engineering work back in 1992-1993.  Insofar as many of these

10 exhibits and testimony are introduced solely for the purpose of showing that he was paid for the

11 work, plaintiff will object to all such testimony and evidence.  This testimony and/or evidence has

12 no bearing on the fair market value of the work nor can they be presented for any other purpose than

13 to try and influence the jury into using those payments as weight against any actual damages or

14 infringer's profits, should liability be found.

15         Plaintiff also believes that these invoices and payments should be precluded in the

16 same way that bond debts and the prior litigation were precluded pursuant to this Court's Order on

17 plaintiff's Motion in Limine Nos. 5 and 2.

18         **C.**     **Summary Report of Deductible Expenses to Infringer's Profits by Joe Wu of**

19 **Northern/Lotus**

20         Plaintiff will not object to the foundation for most of the thousands of pages of

21 exhibits presented by Northern/Lotus as to possible deductible expenses related to any profits they

22 made for the sale of homes.  However, plaintiff will object to a condensed summary of these

23 expenses insofar as Mr. Wu, the person who created these summaries, goes outside his personal

24 knowledge as a general contractor to extrapolate estimated property values and sale prices.

25 Conveniently, he is expected to testify he will likely sell at a loss.  An expert opinion is required for

26 these estimated under F.R.E. 702.

27         Further, Mr. Wu's opinion on the ultimate profit he would make is an "ultimate issue"

28 on profits that is suspect and speculative. *Hester v. BIC Corp*. 225 F.3d 178, 182 (2nd Cir. 2002).

1   In effect, Mr. Wu will be telling the jury nothing less than what decision to reach in regard to any

2   profits, and so should be excluded. *Id.*

3

4       **D.**     **Plaintiff's Rebuttal Expert Testimony of Jubin Merati**

5           Plaintiff designated Jubin Merati as a rebuttal expert in June of 2008 as to any

6   expected measure of damages .  At that time no profit and loss documents had been presented by

7   Northern/Lotus.  This documentation was supposed to have been provided pursuant to a noticed

8   deposition plaintiff sent to Northern/Lotus' counsel in June of 2009.  Counsel for Northen objected

9   to this notice.  Plaintiff filed a motion to obtain this deposition and Northern/Lotus agreed to the

10  request and this part of plaintiff's motion was withdrawn and filed with the Court in August of 2009,

11  *See, Doc. No. 93*.  This Court signed this stipulation, all parties had notice of this and no party

12  objected at any time.

13          Later, and because of counsel for Northern's scheduling issues all parties agreed to

14  produce documents related to the deposition at a time mutually agreeable to everyone in Turlock.

15  All parties were made aware of this via email and through a deposition notice that was sent on

16  December 9, 2009 for a deposition to be taken on December 17, 2009.  Again, no objections were

17  made.

18          Because of further scheduling issues for Northern's counsel and for convenience

19  because of the holiday's, all parties again agreed to continue the deposition until January 7, 2010.

20  Again, no objections were  made.

21          At the deposition on January 7, 2010, counsel for Wasco, for the first time, objected

22  that the deposition was outside the discovery deadline. *See, page 19 of January 7, 2010 deposition*

23  *of Joe Wu*. At no time before or after the deposition has any of the defendants attempted to notice

24  the deposition of Mr. Merati.  However, on February 15, 2010, less than two weeks before trial,

25  counsel for Northern sent an email to plaintiff's counsel stating in part:

26      "I need to take [Mr. Merati's] deposition to find out what opinions he has regarding

27      Lotus's costs and expenses. If not allowed to depose him, I will object to his taking the
        witness stand at trial. It is not unusual to be deposing experts within two weeks of trial, or
28      even during trial. Deny me this right to discovery at your client's peril."

PLAINTIFF ROGER MCINTOSH dba MCINTOSH & ASSOCIATES' TRIAL BRIEF

1    Plaintiff only continued the previous depositions three times at <u>Northern's</u>
2  request, not his own.  <u>At no point did any counsel ever object to this continuance nor has any</u>
3  <u>party ever noticed Mr. Merati's deposition</u>. Plaintiff will therefore, oppose any motion to exclude
4  Mr. Merati's deposition for the foregoing reasons.

5       **E.**    <u>**Evidence of Prior Litigation and Settlement**</u>
6           This Court's Order on plaintiff's Motion in Limine No. 2 excludes evidence of
7  Mr. McIntosh's prior litigation and settlement.  Plaintiff has noticed that included in each of the
8  defendant's exhibit list are documents such as declarations, settlement agreements, prior
9  complaints, and other documents that show or allude to the prior litigation and/or settlement.
10  Plaintiff will object to these at trial based on this Court's prior order.

11                    **III.**
                   **BIFURCATION**
12           At the Pre-Trial conference in January of this year, defendant proposed
13  bifurcation.  This request was premised largely on the fact that Northern/Lotus was intending on
14  introducing into evidence roughly 6,000 pages of exhibits related to deductible expenses for the
15  costs of completing the homes.  During the parties' meet and confer per this Court's order
16  relating to preparing joint exhibits, it was agreed by all parties that most of these documents,
17  except for a single volume of accounting summaries, (*See, Part II.C, supra*) would not be
18  objected to by plaintiff thereby streamlining any damages phase, if necessary, and given this
19  Court's order that Northern could present these expenses.

20           At the meet and confer, counsel for Northern joined by DeWalt proposed that we
21  request the Court remove bifurcation and try all the issues at once.  It was believed that doing so
22  would move things along considerably.  All parties except Wasco agreed with doing away with
23  bifurcation.

24           Further, and while going through the exhibits during the meet and confer and
25  beyond, it was discovered that many of the exhibits contained damages related information
26  making any attempts at separating liability from damages practically impossible.  Additionally,
27  many of the witnesses' that plaintiff intends to call have testimony that will not take much time
28  on both liability and damages and so having them make two trips seems pointless.

1    For the above reasons, plaintiff would join with Northern/Lotus/DeWalt in their

2    impression that all of these issues can be dealt with more efficiently and in the interest of all

3    witnesses' if bifurcation was removed and all issues are tried jointly.

4

5

6                                              **IV.**
                                        **COPYRIGHT VALIDITY**

7    To establish validity of a copyright, a plaintiff need only submit a copyright

8    registration certificate to shift the burden of coming forward with additional proof of plaintiff's

9    ownership of a valid copyright. *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140,

10   1144-1145 (9th Cir. 2003). A certificate constitutes prima facie evidence of the validity of the

11   copyright in fact stated in the certificate. *Ibid.*

12   Plaintiff will present evidence and testimony that he copyrighted the

13   5472 Tentative Map and Improvement Plans were the subject of a copyright registration

14   certificate and the subject of a proper assignment. If defendants can present no evidence to

15   contradict this testimony and evidence, plaintiff will request the court direct a verdict in

16   plaintiff's favor. It is a general rule that the trier of fact is required to assume the existence of a

17   presumed fact unless and until that fact supporting a presumption has been rebutted. *St. Mary's*

18   *Honor Ctr v. Hicks, 509 U.S. 502, 509-510 (1993).*

19                                              **V.**
                                            **LIABILITY**

20   **A.    Plaintiff Will Present Direct Evidence That Defendants Directly Infringed**
             **His Copyrighted Map and Plans.**

21   The copyrighted works comprise McIntosh's Tentative Map and Improvement

22   Plans for the Valley Rose Estates. The improvement plans support the 5472 Map and now also

23   support the 6451 Map. Plaintiff will present evidence that all defendants made copies of the

24   Tentative Map and Improvement Plans for their use in developing the Valley Rose Estates

25   Subdivision and without permission from Roger McIntosh. This will be evidence separate and

26   apart from indirect evidence of copying done by DeWalt.

27   **B.    Plaintiff Will Present Indirect Evidence That Defendants Created Tentative**
             **Map 6451 and Which Was a Copy of Plaintiff's Works.**

28

1        Since direct evidence of copying is usually not available, a plaintiff can also

2  establish copying through indirect evidence.  A plaintiff can establish indirect evidence of

3  copying by showing that:  (1) The defendant had access to the copyrighted works; and (2) the

4  infringing and copyrighted works are substantially similar.  *Transco, Inc. v. Ajac Transmission*

5  *Parts Corp.*, 768 F.2d 1001, 1018 (9th Cir. 1985), *cert. den.* 474, U.S. 1059, 986.  If a plaintiff

6  shows that the defendant had access to the plaintiff's work in that there was a substantial

7  similarity between the infringed and the infringing works, then a presumption of copying arises

8  which shifts the burden to the defendant to rebut or show that the alleged infringing work was

9  independently created.  *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 486 (9th Cir. 2000).

10        In the Ninth Circuit, access and substantial similarity are inextricably linked by

11  what has been termed the "inverse ratio rule" *See*, *Three Boys Music Corp.,* 212 F.3d at 486.

12  This rule states that plaintiff only has a lesser showing of substantial similarity if there is a strong

13  showing of access.  *Ibid.*  Further, and  if the two works are "strikingly similar," then access is

14  inferred.  *Three Boys Music Corp.*, *supra*, at 485.

15        At trial, plaintiff will show that there was complete access to McIntosh's works.

16  These works were then requested by each of the defendants and copies were made by each of the

17  defendants to develop the Valley Rose Estates Subdivision.

18        The two works are also substantially similar since the essential elements of the

19  original work were identically copied so that the final 6451 Map would be approved by the City

20  of Wasco so that Northern could sell lots and Wasco could collect fees.

21     **C.**    **Each of the Defendants Were Also Contributorily Liable for Infringing Plaintiff's Works**.

22        A defendant may be liable for copyright infringement engaged in by another if it

23  knew or had reason to know of the infringing activity and intentionally adduced or materially

24  contributed to that infringing activity.  *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 261-

25  263 (9th Cir. 1996).

26        It will be undisputed at trial that each of the defendants knew or had reason to

27  know the infringing activity.  In fact, it was critical that each of the parties understood that a

28

6451 Map based upon the existing improvements had to be done in order for a final map to be approved.  This is why at trial it will be shown that each of the defendants materially contributed to the infringing activity because each of them had their part to play in ensuring that the final 6451 Map met the previous conditions set out by Wasco.

   **D.**   **Each of the Defendants Were Also Vicariously Liable for Infringing Plaintiff's Works.**

A party can be vicariously liable for the infringing acts of another when that party profits directly from the infringement and also has the ability to supervise the infringing activity even if the party initially lacked knowledge of the infringement.  *Metro Goldwyn Meyer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005).

Both Wasco and Northern/Lotus enjoyed a direct financial benefit from the final approval of Map 6451.  Without such a map, Northern/Lotus could not sell lots and Wasco could not collect fees.  Further, without having the map and plans already approved and prepared, Wasco would have had to sell for a lot less and Northern/Lotus would have had to buy for a lot more, the Valley Rose subdivision.

## VI.

## AMENDMENT ACCORDING TO PROOF AT TRIAL

(Contributory Liability As to All Defendants)

Rule 15(b) of the Federal Rules of Evidence allows a party to conform a pleading to proof for an issue not specifically raised by the pleadings.  *FRCP 15(b)*.  Courts are to "freely permit" an amendment that aids in presenting the merits of a case and where there is no evidence that is to be introduced that would prejudice a defense on the merits.  *Id*.  Courts usually grant amendment unless an opposing party can show bad faith, undue delay, unfair prejudice, or futility of the amendment.  *See, e.g., FilmTec Corp. v. Hydranautics*, 67 F.3d 931, 935 (Fed. Cir. 1995).

Plaintiff filed a direct infringement claim against all defendants.  Plaintiff only filed a contributory infringement claim against the City of Wasco.  During the meet and confer process with opposing counsel before trial, defendants were given notice that plaintiff would, at the close of trial, make a motion to amend the pleadings to conform to proof for contributory

1  liability against Northern/Lotus and DeWalt.  This was discussed at length and led to an

2  agreement that the special verdict form would include only the City of Wasco but that if this

3  Court grants the motion to amend, identical language could be used to include the remaining

4  defendants for a finding of contributory liability.

5        Here, there is almost identical evidence and issues at trial that would allow the

6  same allegation of contributory liability to be imposed on the other defendants.  In this case, the

7  "four corners"of the case necessarily includes those facts which would also hold both

8  Northern/Lotus and DeWalt  liable on a theory of contributory infringement.

9  **VII.**

10  **DIRECTED VERDICTS ON LIABILITY**

11      **A.**    **Directed Verdicts Are Appropriate If There Is Insufficient Evidence to Support a Factual Controversy.**

12        Rule 50 of the Federal Rules of Civil Procedure provide that, "if a party has been

13  fully heard on an issue during a jury trial and the court finds that a reasonable jury would not

14  have a legally sufficient evidentiary basis to find for the party on that issue, the court may..grant a

15  motion for judgment as a matter of law...: *FRCP Rule 50(a)(1).*  Accordingly, such a motion may

16  be made at any time before the case is submitted to the jury.  *FRCP 50(A)(2).*

17        Although the grounds do not have to be technically precise, the moving party does

18  need to give fair notice to the court of the grounds for the motion.  *Ziegler v. Fisher Price, Inc.*,

19  302 F.Supp.2d 999, 1007 (N.D. Iowa 2004).  Furthermore, a major purpose of the motion is to

20  call a deficiency in the evidence to the attention of the court so the opposing counsel can cure any

21  alleged defects at trial.  *Laborers Pension Fund v. ANC Environmental, Inc.*, 301 F.3d 768, 775

22  (7th Cir. 2002).

23      **B.**    **Plaintiff's Notice to the Court of Their Request for a Directed Verdict on Infringements**

24

25        **1**.    **Directed Verdict on Direct Infringement**

26        It will go unrefuted during trial that the City of Wasco made copies of and gave to

27  the other defendants copies of the copyrighted works. (both the 5472 Tentative Map and

28  Improvement Plans) These copies were made so that Wasco and the other defendants could

9

1   commercially benefit from McIntosh's works.  This copying was even admitted during the

2   summary judgment phase of this litigation and these facts are not expected to change.

3

4               **2.      Directed Verdict on Indirect Infringement**

5               At the close of trial, plaintiff will have established conclusively that defendants

6   had access to and created a substantially similar 6451 Map as plaintiff's work.  There are clear

7   admissions by DeWalt, that they reviewed and compared their work with McIntosh's copyrighted

8   work.  This will be sufficient to show that there was no independent creation and plaintiff will

9   request this Court to direct the jury on this issue as to DeWalt. (Leaving open the issue of

10  contributory and vicarious liability for the jury)

11  **3.      Improvements That Were in the Ground Were Copies of Mcintosh's Original Work and Any Copies Based on That Work Are Direct Evidence of Infringement.**

12              Defendants are expected to attempt to argue that the 6451 Map was created

13  "independently" of the copyrighted works because, they only, 'drew what was on the ground.'

14  They will rely almost exclusively on a survey of the Valley Rose Estates conducted by DeWalt.

15  Yet, plaintiff will argue that, as a matter of law, even this is not "independent creation" because

16  they surveyed a work based on plaintiff's previous work and from which his work could be

17  reproduced.

18              A "copy" is defined by Title 17 U.S.C. 101, as follows:

19                      "Material objects... in which a work is fixed by any method

20  now known or later developed and <u>from which the work can be perceived, reproduced or otherwise communicated either directly</u>

21  <u>or with the aid of a machine or device.</u>  The term 'copies' includes the material object ... in which the work is first fixed."  (17 U.S.C.

22  101.) (underline added)

23              This is an incredibly broad statute and the only limitation in order to meet the

24  definition of a copy under this provision is that the work be fixed, and that it be one that can be

25  perceived, reproduced or otherwise communicated.  Thus, a copy of a copy of the copyrighted

26  material constitutes infringement.  *See, 2 Nimmer on Copyright*: 8.01[A] (2006) ("In analyzing

27  the rights available to copyright owners, we are necessarily delineating the term 'infringement.'

28  ... [T]he grant of exclusive rights to the copyright owner certainly implies that the unauthorized

1  exercise of such rights constitutes an infringement of copyright").

2        Additionally, an authorized copy of the copyrighted material may be considered a

3  "copy" to which protection extends even when the copy takes the form of a different medium

4  from the copyrighted material. *Nimmer* elucidates this principle:

5            "The fact that a work in one medium has been copied from
          a work in another medium does not render it any the less a 'copy.'
6          Thus, a motion picture copied from a play, or a novel, a sketch
          copied from a photograph, or a plaque, or a doll copied from a
7          cartoon may be an infringing copy. One court has held that a series
          of photographs of a ballet performance could violate the copyright
8          on the dance." (*Nimmer, supra*, 8.01[B] (citations omitted).)

9        That copyright protection extends to authorized copies of the copyrighted work is

10  so fundamental that there is scant case law on the subject. However, Justice Holmes, in

11  *Bleinstein v. Donaldson Lithographing Co.* (1903) 118 U.S. 239, 249), held that even where an

12  alleged infringing copy *could have been* generated by the defendant by viewing an un-

13  copyrighted original source (in this case by viewing the *actual people* depicted in the protected

14  work, as opposed to the protected work itself), if it was shown that the alleged infringing copy

15  was actually generated by copying the protected work, then there would still be an infringement.

16  As Justice Holmes famously stated, "although others are free to copy the original. *They are not*

17  *free to copy the copy*." *Id*. (underline added). A copy is thus, "the material object … in which the

18  work is first fixed." (See definition of "copies," 17 U.S.C. 101). *See also*, *Schumacher v.*

19  *Schwencke*, 30 F. 690, 691 (S.D.N.Y. 1887).

20        Here, there is nothing under statute or law to suggest that McIntosh's work, as

21  copied from his original map and plans, and as integrated into the ground was anything less than

22  a copy of the original. The layout of the subdivision was, "the material object in which the work

23  [was] first fixed." (*citing from* 15 U.S.C. §101).  Defendant's deny this principle and, instead,

24  will argue that because they went out and surveyed the existing improvements, this was not

25  copying.  This makes no sense since this would mean that anyone could simply find a

26  representation of the original in a different medium and make non-infringing copies.

27        Taken out of the context of technical drawings, this would mean that if an original

28  song was composed and submitted for copyright, that anyone would be free to listen to that song

PLAINTIFF ROGER MCINTOSH dba MCINTOSH & ASSOCIATES' TRIAL BRIEF

1  on the airwaves, (a non-copyrightable medium)  write out the notes on a sheet music and not be

2  infringing because they didn't actually <u>see</u> the original sheet music or deposit that was

3  copyrighted.  Defendants' argument is one giant straw man argument.

4        Plaintiff therefore respectfully requests this Court issue a directed verdict on the

5  issue of indirect of McIntosh's copyrighted works if defendant presents no other evidence of

6  independent creation.

7  **VIII.**

8  **<u>DAMAGES</u>**

9     A.     <u>Damages and profits for infringement under 17 U.S.C. § 504</u>.

10        Under 17 U.S.C. § 504, a copyright owner is entitled to recover actual damages

11  suffered by him or her as a result of infringement and profits of the infringer attributable to that

12  infringement.  17 U.S.C. § 504.

13        Actual damages are determined by the loss in the fair market value of the

14  copyright measured by the profits lost due to the infringement or by the value of the use of the

15  copyrighted work to the infringer.  *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700,

16  708-709 (9th Cir. 2004).  As stated in *Polar Bear Productions*, "it is not improper for a jury to

17  consider either a hypothetical loss license fee or the value of the infringing use to the infringer to

18  determine actual damages provided the amount is not based on undue speculation."  (*Ibid.*)

19        An infringer can also be held liable for any profits that they derived attributable to

20  the infringing activity.  *Polar Bear Productions, Inc.,* 384 F.3d at 711, 714 (9th Cir. 2004).  All

21  that plaintiff needs to show is the gross revenue of the infringer.  17 U.S.C. § 504(B).  This is

22  shown by the plaintiff showing that a causal nexus between the infringement and the infringer's

23  gross revenue.  *Polar Bear Productions* cited *supra,* at 711, 714 Note 10.  A causal nexus is

24  demonstrated by the plaintiff proffering some evidence that the infringement, "at least partially

25  caused the profits that the infringer generated as a result of the infringement."  *Polar Bear*

26  *Productions* cited *supra,* at 711.

27        In general, all defendants are jointly and severally liable for the plaintiff's actual

28  damages but each defendant is severally liable for the defendants' own illegal profits. *Frank*

1   *Music Corp. v. Metro Goldwyn Meyer, Inc.*, 772 F.2d 505, 519 (9th Cir. 1985).

2   / / /

3       **B.    <u>Actual Damages</u>.**

4           Plaintiff will demonstrate that his actual damages for the infringing work was the

5   fair market value of his work.  Plaintiff will show that the value of his work was the value of

6   what it cost to create the 5472  Tentative Map and Improvement Plans.  These were

7   all"supporting documents" expended in creating those works.  *See*, *Del Madera v. Rhodes and*

8   *Gardner, Inc. 820 F.2d 973, 876-977 (9th Cir. 1987)*.

9           Plaintiff will show that the value of his copyrighted works was in excess of

10   $1 million.  This was so because there was a lot of engineering work that needed to be done in

11   support of the 5472 Map.  All of this engineering work needed to be done to complete the 5472

12   Improvement Plans, the onsite and offsite improvements, support the Master Studies and

13   planning, and, ultimately, the 5472 Tentative Map. Defendants have been skeptical at the amount

14   of the fair market value demanded by plaintiff, because, after all, they only charged $27,000.

15   However, it cost DeWalt so little, because it cost plaintiff so much.

16           Defendants are also expected to equivocate on this Court's prior order to Wasco's

17   Motion in Limine No. 2 and which, in principle, went unopposed by plaintiff.  Plaintiff will

18   attempt to introduce what it cost for costs related to the 5472 Tract.  According to defendants,

19   this is not work "directly related" to Tract 5472.  Plaintiff will clearly show otherwise.

20           It is also expected that defendants will attempt to introduce evidence of any costs

21   paid to Martin-McIntosh as a way to reduce the fair market value of his works.  However,

22   whether McIntosh was ever paid is irrelevant to any determinations of value and the actual

23   damages provision of 17 U.S.C. §504 does not allow for any deductions in that amount based on

24   whether the copyright holder was previously paid for his work.  Plaintiff will object to any such

25   evidence.

26       **C.    <u>Infringer's Profits</u>.**

27           Plaintiff will also show that each of the defendants obtained gross revenues that

28   were directly attributable to the infringing activity.  DeWalt, for example, obtained a direct

1  benefit of $27,000 which should have been paid to plaintiff; Northern was able to purchase a

2  subdivision for the amount of $1.6 million which would have been substantially increased if he

3  would have had to actually put the improvements in the ground; Wasco was also able to sell the

4  subdivision for an amount that did not include having to have a developer put what they

5  estimated to be $1.9 million of improvements in the ground; Northern/Lotus was also able to

6  avoid having to post a bond of $190,000 because the improvements were in the ground; and

7  Northern was able to sell homes because a final map was approved.  Each and every one of these

8  allowed the defendants to realize profits that they would not normally have seen had they been

9  required to create new map and plans and install different improvements based on those new map

10 and plans.

11          **D.      Joint and Several Liability.**

12          As stated above, generally all defendants are jointly and severally liable for actual

13 damages and each defendant is responsible for his or her own profits related to infringement.

14 However, there is an exception where the defendants are acting as partners or "practically

15 partners." *Frank Music Corp. v. Metro Goldwyn Meyer, Inc.*, 772 F.2d 505, 519 (9th Cir. 1985).

16 In such a case, and if the jury finds that the defendants meet certain relevant factors to establish

17 that the defendants were partners or practically partners, then those defendants who were such,

18 can be held  jointly liable for each of their infringer's profits. *Ibid.*

19          Relevant factors to establish this partnership include the defendants' role in the

20 infringing activity; the degree of direction of activity; and each's financial interest in activity.

21 *See. Nelson v. Salabes, Inc. v. Morningside Development, LLC*, 284 F.3d 505, 517 (4th Cir.

22 2002).

23          Defendants have indicated that they see a more formal and rigid application of this

24 to mean a partnership as determined by partnership statutes (E.g., California Corporations Code).

25 According to them and their proposed definition,  unless each defendant is sharing in the other

26 defendants' profit, there can be, *per se*, no "partnership."   This approach is nowhere shown in

27 the copyright cases explaining this issue and, instead, there is a far more flexible approach as is

28 evidenced by this Circuit's use of the term "practically partners" because of their mutual interest

PLAINTIFF ROGER MCINTOSH dba MCINTOSH & ASSOCIATES' TRIAL BRIEF

1  in participating in infringement. Plaintiff proposes that the use of the term as maintained by the

2  9th Circuit be used and any attempts at restricting a jury as to a finding of partnership based

3  solely on shared profits be rejected.

## IX

### ATTORNEYS' FEES

6          Federal Rules of Civil Procedure provide for mandatory attorneys' fees for having

7  to prove denials to that party's request for admissions.  FRCP 37(C)(2).

8          Plaintiff believes this case has presented a clear case of copyright infringement,

9  fully supported by cases which are identical and with stronger facts than those in the same Circuit

10  and the Northern District and other Districts following the same law and policy.  There has been

11  no reasonable ground to believe that defendants could prevail on each of the matters admitted at

12  trial.   If infringement is found, plaintiff will present to this court its previous request for

13  admissions to all defendants and their denials without objection and request this court award

14  attorneys' fees for having to prosecute this action all the way to trial.

16  DATED:   February _____, 2010

17                                          Respectfully submitted,

18                                          BORTON PETRINI, LLP

20                                          By:_____

21                                              James J. Braze, Jeffrey A. Travis, Attorney for Plaintiff,
                                                Roger McIntosh dba McIntosh & Associates

**PROOF OF SERVICE**

**(FRCP No. 5(b)(2)(E))**

**STATE OF CALIFORNIA,  COUNTY OF KERN**

I, Vanessa J. Claridge, declare:

I am a citizen of the United States. I am employed in the County of Kern, State of California. I am over the age of 18 and not a party to the within action; my business address is 5060 California Avenue, Suite 700, Bakersfield, California 93309.

On **February _____, 2010**, I served the foregoing document described as **PLAINTIFF ROGER MCINTOSH dba MCINTOSH & ASSOCIATES' TRIAL BRIEF** on the other party(ies) in this action as follows:

| | |
|---|---|
| Steven John Hassing, Esq. | Attorneys for Attorneys for Defendants, |
| Law Offices of Steven J. Hassing | Northern California Universal Enterprises |
| 425 Calabria Court | Company and Lotus Developments |
| Roseville, CA 95747 | Tel:    916/677-1776 |
| | **Fax:   916/677-1770** |
| email address: **stevehassing@yahoo.com** | |
| | |
| Chaka Okadigbo | Attorneys for Defendant, City of Wasco |
| **GCR, LLP** | |
| 520 S. Grand Ave,  Suite 695 | Tel: 213/347-0210 |
| Los Angeles, CA 90071 | **Fax: 213-347-0216** |
| email address: **cokadigbo@gcrlegal.com** | |
| | |
| William L. Alexander, Esq. | Attorneys for Defendant, DeWalt CM, Inc. |

H:\PUBLIC\054493\060971
McIntosh v. Northern\TRIAL
BRF 2-16-10.wpd

PLAINTIFF ROGER MCINTOSH dba MCINTOSH & ASSOCIATES' TRIAL BRIEF

1  Alexander & Associates

2  1925 "G" Street                                    Tel: 661/316-7888

3  Bakersfield, CA 93301                              **Fax: 661/316-7890**

4  email address: **walexander@alexander-law.com**

5

6  X     **BY ELECTRONIC SERVICE:**  Pursuant to Fed. R. Civ. P. 5(b)(2)(E) and Local Court

7        Rule(s), the foregoing document will be served by the court via CM/ECF.  Pursuant to the

8        CM/ECF docket for this case proceeding the following person(s) are on the Electronic Mail

9        Notice List to receive ECF transmission at the email address(es) indicated below:

10

11 X     **BY MAIL:**   As follows:  I am "readily familiar" with the firm's practice of collection and

12        processing correspondence for mailing.  Under that practice it would be deposited with U.S.

13        postal service on that same day with postage thereon fully prepaid at , California in the

14        ordinary course of business.  I am aware that on motion of the party served, service is

15        presumed invalid if postal cancellation date or postage meter date is more than one day after

16        date of deposit for mailing in affidavit.

17

18             Executed on **February ____, 2010**, at Bakersfield, California.

19

20             I declare that I am employed in the office of a member of the bar of this court at

21        whose direction the service was made.

22

23

24        _____Vanessa J. Claridge_____          _____/s/ Vanessa J. Claridge_____

25

26

27

28