1115

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

HON. LAWRENCE J. O'NEILL


ROGER McINTOSH,                    )
                                   )   1:07-cv-1080 LJO
            Plaintiff,             )
                                   )   JURY TRIAL, DAY 7
        vs.                        )
                                   )
NORTHERN CALIFORNIA                )
UNIVERSAL ENTERPRISES              )
COMPANY, a California              )
corporation, et al.,               )
                                   )
            Defendants.            )
_____     )

Fresno, California                 Wednesday, March 10, 2010



REPORTER'S TRANSCRIPT OF PROCEEDINGS









Vol. 7, pgs. 1115 to 1148, inclusive






REPORTED BY:  PEGGY J. CRAWFORD, RDR, CRR, Official Reporter

1116

APPEARANCES OF COUNSEL:

For the Plaintiff:              LAW OFFICES OF BORTON PETRINI, LLP
                               5060 California Avenue
                               Suite 700
                               Bakersfield, CA  93309
                               BY:  **JAMES J. BRAZE**
                                    **JEFFREY A. TRAVIS**


For the Defendants:

(Northern/Lotus)               LAW OFFICES OF STEVEN J. HASSING
                               425 Calabria Court
                               Roseville, CA  95747
                               BY:  **STEVEN J. HASSING**

(DeWalt)                       ALEXANDER & ASSOCIATES, PLC
                               1925 G Street
                               Bakersfield, CA  93301
                               BY:  **WILLIAM L. ALEXANDER**

(City of Wasco)                GCR, LLP
                               520 South Grand Avenue
                               Suite 695
                               Los Angeles, CA  90071
                               BY:  **CHAKA C. OKADIGBO**
                                    **SUSAN GRAHAM BARNES**

1117

## INDEX

## EXHIBITS

**COURT'S**                                    **MARKED**

C                                              1118
D                                              1128

1118

1    Wednesday, March 10, 2010                Fresno, California

2    9:19 a.m.

3             (The following proceedings were had outside the

4             presence of the jury, to wit:)

5             THE COURT:  All right.  Back on the record.  Counsel

6    are present, the jury is not.  They sent out another question.

7    Court Exhibit C.

8             (Court's Exhibit C was marked for identification.)

9             THE COURT:  And we have provided copies of that

10   question to all counsel.

11            It says, "If and when were improvement plans approved

12   by the City?"

13            That's the first question.  Is there an agreement on

14   that answer?

15            MR. ALEXANDER:  I think everyone is in agreement

16   before the improvements were constructed in '93 or '94.

17            THE COURT:  Does everybody agree with that answer?

18            MR. TRAVIS:  It appears that some of the improvement

19   plans were approved in 1993 and 1994.  I think where we are

20   going to have a disagreement is that this issue, as far as

21   public record --

22            THE COURT:  Let's take care of the first question

23   first.  Then what are you suggesting as the answer?

24            MR. TRAVIS:  Some of the improvement plans were

25   approved in 1993 and 1994.

1      MR. ALEXANDER:  And I would suggest all of them were

2  approved, because that's the only evidence that came in during

3  trial.

4      MR. HASSING:  There was no parcelling out of which

5  were approved and which weren't.  All of the plans were

6  approved.

7      MR. TRAVIS:  Well, approval is based on looking at

8  the improvement plans themselves.  And if you look at them,

9  there is only signatures for approval on some of them.  I

10  think the pump station plans were approved.  All the others, I

11  don't believe were.

12      MR. HASSING:  Well, they were built.  And how could

13  the City allow the improvements to be built if the City

14  Engineer hadn't approved the plans?  And the testimony from

15  Mr. Helt, the engineer, I believe he testified that he had

16  approved those City plans.

17      MR. TRAVIS:  I think that he did approve some of

18  them.

19      THE COURT:  Wait.  The question is "some."  Did he

20  say "some" or did he say, "I approved the plans"?

21      MR. TRAVIS:  I don't think there is any distinction

22  between what portion of the plans were approved or not.

23      THE COURT:  Then the unrefuted testimony was the

24  plans were approved.

25      MR. TRAVIS:  If that's the Court's ruling, that's the

1    Court's ruling.

2         THE COURT:  If you disagree, I need to know why.

3         MR. TRAVIS:  I think there is going to be confusion.

4    If you look at the improvement plans themselves, some say

5    approved, and some do not.  It's a factual issue, I think, at

6    that point in time, and all you have to do is look at the

7    improvement plans.

8         MR. HASSING:  Well, the testimony from the guy who

9    was in charge of approving those plans said that the plans

10   were approved.  We also know that the improvements were

11   constructed.  How could the -- how could they be constructed

12   if the plans hadn't been approved?

13        MR. TRAVIS:  Well, your Honor, if I can comment.

14   Actually, Mr. McIntosh brings up a good point.  According to

15   the City, there were no improvement plans required for 6451.

16        THE COURT:  That's not the question.

17        MR. TRAVIS:  Well, but it does say, "if and when,

18   were improvement plans approved by the City?"

19        Improvement plans, maybe we need to clarify for which

20   tract.

21        MR. HASSING:  No.

22        MS. BARNES:  No.

23        THE COURT:  I don't think there is a big problem.

24   What's the number of the first tract?

25        MR. HASSING:  5472.

1    THE COURT:  Okay.  I don't think there is a problem

2  in responding, adding that, because there is no issue out

3  here.  In other words, just simply saying the 5472 plans, the

4  Tract 5472 plans were approved in 1993-1994.

5    MR. TRAVIS:  Okay.

6    THE COURT:  Does anybody have a problem with that

7  answer on that first question?

8    MR. HASSING:  No, your Honor.

9    MR. ALEXANDER:  That's fine.

10    MR. TRAVIS:  No.

11    THE COURT:  Let me put that in red.

12    Now, what is the issue on the question, "If they were

13  approved, did they become public record so that anyone could

14  have used or viewed them?"

15    MR. HASSING:  Your Honor, Mr. Wren, who was, at the

16  time, the Deputy Public Works Director, testified that anybody

17  from the public, once those records were approved, plans were

18  approved, anybody from the public could go into the City

19  offices and view those plans and make copies of those plans.

20  They couldn't take the plans out of the City office, but

21  anybody could go in and view and copy those plans.

22    Therefore, the City treated those plans as public

23  records, and so the answer to that would be "yes."

24    THE COURT:  No, I don't think it's that easy.

25    MR. OKADIGBO:  Your Honor, can I add, Mr. Wong

1   testified that approved plans may be used, and even

2   Mr. McIntosh himself did.  Their only dispute is whether the

3   improvements need to be constructed in order to make the

4   approved plans available.  But he certainly testified that

5   approved plans could be made available.

6         MR. TRAVIS:  Well, your Honor, regardless of what

7   Mr. Wong testified to, his expertise is civil engineer.  And

8   that issue of publication as a matter of law, which there is

9   extensive briefing on, and which this Court summarily

10   adjudicated that those plans and those works were not public

11   record.  So we rest on our briefing that we had previously

12   filed in our summary adjudication motion.

13         THE COURT:  The problem is this question has more

14   than one question within it.  When it says, "If they were

15   approved," we have gotten past that, "did they become public

16   record?"  And here is how the jury is defining "public

17   record."  "So that anyone could have used or viewed them?"

18         Is there any question but that the answer to the

19   viewed them is "yes"?

20         MR. TRAVIS:  No.  And I think that --

21         THE COURT:  No, wait a minute.  Clarify your answer.

22         MR. TRAVIS:  To view them, to viewing them.

23         THE COURT:  Is not a problem?

24         MR. TRAVIS:  Is not a problem.

25         THE COURT:  It's the use.

1     MR. TRAVIS:  It's the use, correct.

2     THE COURT:  And, see, that is the twist in their

3   definition and in their question.  Because if we just simply

4   say, "yes," the case is over.  We should have done that -- I

5   should have done that and some of you on the defense side

6   probably figures I should.  And the case would be just over.

7     But I think that perhaps a suggested way to answer

8   this is, "As you have defined public record, yes, people could

9   have viewed them at that time.  The use aspect of your

10  question is too complicated to -- is too broad to answer."

11    MR. HASSING:  We might say, "If, by 'use,' you mean

12  copied."

13    MS. BARNES:  No.

14    THE COURT:  Well, I don't feel comfortable in

15  suggesting definitions for them.  They are going to have to

16  define themselves, because otherwise, we get too involved in

17  the deliberations with them.

18    MR. HASSING:  All right.

19    THE COURT:  How do you feel about the suggested

20  answer?

21    MR. TRAVIS:  I think you were interrupted.  I wanted

22  to hear the whole answer.

23    THE COURT:  Let me just jot it out and I will tell

24  you.

25    MR. TRAVIS:  Thank you, your Honor.

1       THE COURT:  How about this:  "As your question
2   defines public record, yes, anyone could have viewed them.
3   The portion of the question asking about 'use,' quote,
4   unquote, 'use,' is too broad to answer."
5       And then I suppose I could finish by saying, "If you
6   have a more specific question, feel free to send it out."
7       MR. OKADIGBO:  We are in agreement, your Honor, with
8   that language.
9       MR. HASSING:  Yes, your Honor.
10      MR. ALEXANDER:  That's fine.  Or even if you
11  eliminated the latter part of it, that's fine, answering only
12  the view.
13      THE COURT:  I don't have a problem either way.
14      MR. TRAVIS:  The problem is it suggests "viewed them"
15  and then -- we would be comfortable with that if it said,
16  "viewed them without copying," or "viewed them" --
17      THE COURT:  Well, "viewing" doesn't mean copying.
18  What I'm doing my best to do is not to suggest things either
19  in the answer or clarifying their question.
20      I'm trying to use only what they have sent out,
21  because we have to be very careful not to be involved with the
22  deliberation process.  So if they don't ask the question we
23  want them to ask, we can't ask it for them.
24      MR. TRAVIS:  I understand.  And I guess, as I'm
25  listening to that answer, which, in general, it sounds fine to

1    me, is that "view them" fine, but view them where?

2              MS. BARNES:  Oh.

3              MR. TRAVIS:  I guess it's ambiguous.  It almost

4    suggests they could view them anywhere.

5              THE COURT:  But they didn't ask where.  I know we

6    have this almost irresistible urge to get more specific,

7    because these legal issues are popping into our minds, but

8    unless they are popping into theirs --

9              MR. TRAVIS:  Okay.

10             THE COURT:  -- we just can't inject those things.

11             MR. TRAVIS:  Okay.

12             MR. ALEXANDER:  Your Honor, as to the first line,

13   would you read that?  I'm sorry.

14             THE COURT:  I will read the whole thing again.

15             Does anybody --

16             Mr. Travis, did you have anything else?

17             MR. TRAVIS:  I did not, your Honor.

18             THE COURT:  Okay.  Let me read it once more, and if

19   you have an issue, let me know.

20                 "As your question defines 'public record,' yes, anyone

21                 could have viewed them.  The portion of the question

22                 asking about, quote, unquote, use is too broad to

23                 answer."

24             MR. ALEXANDER:  And the first one?

25             THE COURT:  Oh, the first one is, "The improvement

1126

1     plans for Tract 5472 were approved in 1993-1994."

2            MR. ALEXANDER:  That's fine.

3            MR. TRAVIS:  Okay.

4            MS. BARNES:  Yes.

5            THE COURT:  Everybody okay?

6            (All counsel stipulated.)

7            THE COURT:  Let me write this in red and, for the

8     record, my answer will be in red; theirs is in either pencil

9     or black ink.

10           All right.  I will send this in, and I will ask

11    Mr. Green to give that -- give this back to them, indicating

12    that when we have a verdict, we also need this, all the court

13    exhibits, including this one.  That way, we have an original

14    record of what they have sent to us and what we have sent back

15    to them.  Fair enough?

16           Okay.  We will be in recess.

17           (Recess)

18    1:41 p.m.

19           THE COURT:  All right.  Back on the record.  We are

20    missing Mr. Alexander?

21           MR. HASSING:  He was just here and he has agreed on

22    our answer.

23           THE COURT:  The jury is not present.

24           Okay.  Now, we have all counsel present.  The jury is

25    not present.

1    We have, and sent out, as you know, Court Exhibit D.
2  It is a question, and we have provided you with copies of it.
3  It says, "Where would we find Mr. Wu and Dr. Merati's
4  projections used as exhibits on this trial?"
5    My understanding is you have an agreement on the
6  answer?
7    MR. HASSING:  We do.  Mr. Wu's financial summary is
8  in D 217, with the first three pages being the summary of the
9  summary, basically.  His financial backup documentation is
10  found in D 201 through D 216.
11    Dr. Merati's financial statements and projections are
12  in P 111 through P 115.
13    THE COURT:  Everybody agreed?
14    MR. OKADIGBO:  Yes, your Honor.
15    MR. ALEXANDER:  Yes, your Honor.
16    MR. TRAVIS:  Yes, your Honor.
17    THE COURT:  Okay.  With your permission, I will put
18  this answer in red ink, exactly as stated, and I will write it
19  and then read it to you.  Okay.
20    I have circled "Dr. Wu" and the question, and put "1"
21  in red.  And I have circled "Dr. Merati" and put "2."  And
22  then below, where the answer is:  "1.  Mr. Wu:  D-217, first
23  three pages constitute his summary pages.  D-201 through
24  D-216, backup documents."
25    And then "Number 2.  Dr. Merati:  P 111 through P

1  115."

2          MR. BRAZE:  P 111.

3          THE COURT:  P 111 through P 115.  Everybody fine with

4  that answer?

5          (All counsel agreed.)

6          THE COURT:  We will send it in and see what they do

7  next.

8          (Court's Exhibit D was marked for identification.)

9          (Recess)

10  1:51 p.m.

11          THE COURT:  Back on the record.  Counsel are present.

12  The jury is not.  They sent out another question, Court

13  Exhibit E.  It says, "If we award money to the plaintiff

14  regarding Mr. Wu's companies, do we split the award between

15  Lotus and Northern?"

16          I don't think that the answer is quite so simple,

17  because I'm not exactly sure what they are asking.  If they

18  are asking do they just treat the companies the same as though

19  it is one, that's inconsistent with what we have told them in

20  the jury instructions; in other words, that they have to treat

21  each party, each party separately.

22          If, on the other hand, they are asking if we were to

23  award the plaintiff ten dollars, do we need to -- can we just

24  say ten dollars between the companies, or do we award ten

25  dollars to -- from Lotus and ten dollars from Northern.  I'm

1  not sure what they are asking here.

2          MR. HASSING:  I think that no matter how you slice

3  it, the answer would be "no" because if -- if they are going

4  to award money to Mr. McIntosh from one of Mr. Wu's companies,

5  they need to say how much from which -- how much from which

6  company individually.

7          It is not like I'm going to award ten dollars, so I

8  will just apportion five dollars to Lotus and five dollars to

9  Northern.  They have to treat each company separately.

10          THE COURT:  Then the answer would be "yes."

11          MR. HASSING:  Well, the answer is "no."

12          THE COURT:  It says, "Do we split the award?"  What

13  exactly does that mean?

14          MS. BARNES:  He is right.

15          THE COURT:  I'm not sure what they are asking.  I

16  understand what you think they are asking.

17          MR. HASSING:  Okay.  Okay.

18          THE COURT:  But is everybody convinced that that's

19  what they are asking?

20          MR. BRAZE:  Well, under, I guess, the way

21  Mr. Hassing -- if the award is ten dollars each, then you

22  would add the two together to come up with the award.  Lotus

23  is responsible for ten and Northern is responsible for ten.

24          THE COURT:  But let's take another scenario that this

25  question may be addressing, and that is, if they were wanting

1   to award just ten dollars, do they -- is it ten dollars from

2   each, so it would be double what they were thinking about?  Is

3   it splitting it five and five?  Is it treating them the same

4   even though they are separate defendants and entities?

5          MR. BRAZE:  Maybe the answer is, "You should indicate

6   the amount of profits to which defendant is responsible for."

7          THE COURT:  Well, it could be more than that.  I

8   think that would be too limiting an answer.

9          MR. HASSING:  They need to be told that they should

10  treat each of the companies separately, period.  Treat them

11  each separately.  If they think Northern owes money, put it

12  down.  If they think Lotus owes money, put it down, but treat

13  them separately.

14         MR. OKADIGBO:  They might also go to a joint and

15  several liability type of question on actual damages, for

16  example.  If the actual damages is one amount and they don't

17  know whether it is split or whether it is a separate amount

18  that applies to each entity, I don't know.  That's why it is

19  confusing.

20         THE COURT:  Well, that's why I think that I can't

21  just say "yes" or "no" to this question.

22         MR. BRAZE:  Well, I think the only question that

23  related to Mr. Wu's companies was profits, wasn't it?

24         THE COURT:  Well, how about this.  How about if I

25  respond something close to this.  If you decide to award money

1  to the plaintiff, you must treat each -- you must -- well,

2  see.  I don't want to answer too broadly because they are

3  not -- how about this:

4          "If you award money to the plaintiff from either or

5           both of Mr. Wu's companies, you must decide what each

6           individual company owes, if anything."

7          MR. HASSING:  That's fine with me.

8          MR. BRAZE:  Well, the problem, you are determining

9  profits.  It's not a matter of owing things.

10         THE COURT:  Awarding.  Let me write it out draft, and

11 then see if we agree.

12         MR. BRAZE:  Your Honor, in looking at the verdict, it

13 seems very clear.  It says, "What is the amount of Defendant

14 Northern's profits?"

15         THE COURT:  Can I borrow one of your verdict forms?

16 Thanks.  Take a quick look here.

17         THE CLERK:  I just printed two clean copies.

18         THE COURT:  How about this answer:

19        "If you decide that the plaintiff is due any damages

20          from one or both of Mr. Wu's companies, then you must

21          treat each company separately, both on the decision

22          to award and the amount of the award"?  That's the

23          law.

24         MR. HASSING:  I would agree with that.

25         THE COURT:  And it's general enough to encompass all

1  of the instructions and certainly the verdict form.  Everybody

2  okay with it?

3        MR. BRAZE:  Yes.

4        MR. ALEXANDER:  Yes, your Honor.

5        MR. HASSING:  Yes, your Honor.

6        THE COURT:  Let me do it in red again.  And I will

7  read it to you as written in red.  In red it reads, "If you.

8        "Decide that the plaintiff is due any damages from one

9        or both of Mr. Wu's companies, then you must treat

10       each company separately, both on the decision to

11       award and the amount of the award."  Okay?

12       MR. HASSING:  Perfect.

13       THE COURT:  All right.  Send it in.

14       (Recess)

15  2:42 p.m.

16       THE COURT:  Back on the record.  Counsel are present.

17  The jury is not.  They have indicated that they have a verdict

18  in this case.  Is there any reason I should not now bring them

19  out to take the verdict?

20       MR. HASSING:  No, your Honor.

21       MR. ALEXANDER:  No, your Honor.

22       THE COURT:  We are ready for the jury.

23       (The jury returned to the courtroom with their

24  verdict at 2:43 p.m.)

25       THE COURT:  We are still on the record and the jury

1133

1    has joined us.

2         Ladies and gentlemen, my understanding is you have a

3    verdict in this case, is that correct?

4         THE FOREMAN:  Yes.

5         THE COURT:  Who is the foreperson?

6         THE FOREMAN:  I am, sir.

7         THE COURT:  Could you please give the verdict form to

8    Mr. Green.

9         THE FOREMAN:  Yes, sir.

10        THE COURT:  Okay.  Thank you.  The verdict is in

11   proper form, in that they have filled out all of the requested

12   portions of the verdict that are applicable, and it is dated

13   and it is signed.  And, therefore, the Court will read the

14   verdict.

15        Question 1:  Did Defendant DeWalt copy plaintiff's

16   tentative map for Tract 5472?

17        The answer is, "Yes."

18        Does anybody wish the jury polled on Question 1?

19        Hearing nothing, we move to Question 2.

20        Question 2:  Did Defendant DeWalt copy plaintiff

21   Roger McIntosh's improvement plans for Tract 5472?

22        The answer is, "No."

23        Does anybody wish the jury polled on Question 2?

24        MR. BRAZE:  Yes, your Honor.

25        THE COURT:  Question 2 was answered "no" on this

1134

1     verdict form.  Is that how you personally voted, in other

2     words, you voted "No," is that how personally voted?

3          (The jurors were polled individually by the Court and

4     affirmed their verdict.)

5          THE COURT:  Question 3:  Did Defendant Northern copy

6     plaintiff's tentative map for Tract 5472?

7          The answer is, "Yes."

8          Does anybody wish the jury polled on Question -- the

9     answer to Question Number 3?

10          MR. HASSING:  Yes, your Honor.

11          THE COURT:  Okay.  Is that how you personally voted

12     in the jury room, in other words, answering Question 3 "Yes"?

13          (The jurors were polled individually by the Court and

14     affirmed their verdict.)

15          THE COURT:  Question 4:  Did Defendant Northern copy

16     plaintiff's improvement plans for Tract 5472?

17          The answer is, "No."

18          Does anybody wish the jury polled on the answer to

19     Question 4?

20          MR. BRAZE:  Yes, sir.

21          THE COURT:  Is that how you personally voted in the

22     jury room on the answer to Question number 4, in other words,

23     by voting "no"?

24          (The jurors were polled individually by the Court and

25     affirmed their verdict.)

1         THE COURT:  Question 5:  Did Defendant Lotus copy

2 plaintiff's tentative map for Tract 5472?

3         The answer on this form is, "Yes."

4         Does anybody wish the jury polled on the answer to

5 Question 5?

6         MR. HASSING:  Yes, your Honor.

7         THE COURT:  Is that how you personally voted in the

8 jury room, in other words, answering Question 5, "Yes"?

9         (The jurors were polled individually by the Court and

10 affirmed their verdict.)

11         THE COURT:  Question 6:  Did Defendant Lotus copy

12 plaintiff's improvement plans for Tract 5472?

13         The answer on the form is, "No."

14         Does anybody wish the jury polled on the answer to

15 Question 6?

16         MR. BRAZE:  Yes, your Honor.

17         THE COURT:  By this form, the answer to Question 6

18 is, "No."  Is that how you personally voted in the jury room?

19         (The jurors were polled individually by the Court and

20 affirmed their verdict.)

21         THE COURT:  Question 7:  Did the Defendant City of

22 Wasco copy the plaintiff's Tentative Map for Tract 5472?

23         The answer is, "Yes."

24         Does anybody wish the jury polled on the answer to

25 Question 7?

 1          MR. OKADIGBO:  Yes, your Honor.

 2          THE COURT:  Is that how you personally voted in the

 3   jury room to Question 7, by answering, "Yes"?

 4          (The jurors were polled individually by the Court and

 5   affirmed their verdict.)

 6          THE COURT:  Question 8:  Did Defendant City of Wasco

 7   copy the plaintiff's improvement plans for Tract 5472?

 8          The answer on the form is, "Yes."

 9          Does anybody wish the jury polled on the answer to

10   Question 8?

11          MR. OKADIGBO:  Yes.

12          THE COURT:  All right.  Is that how you personally

13   voted, in other words, answering "yes" to Question 8?

14          (The jurors were polled individually by the Court and

15   affirmed their verdict.)

16          THE COURT:  Question 9:  Did Defendant City of Wasco

17   know or have reason to know of the infringing activity by the

18   other defendants?

19          The answer on the form is, "Yes."

20          Does anybody wish the jury polled on the answer to

21   Question 9?

22          MR. OKADIGBO:  Yes, your Honor.

23          THE COURT:  Is that how you personally voted by

24   answering "yes" to Question 9?

25          (The jurors were polled individually by the Court and

1    affirmed their verdict.)

2          THE COURT:  Question 10:  Did Defendant City of Wasco

3    intentionally materially contribute to the -- to any

4    infringement by any of the other defendants?

5          The answer to Question 10 is, "Yes."

6          Does anybody wish the jury polled on the answer to

7    Question 10?

8          MR. OKADIGBO:  Yes.

9          THE COURT:  Is that how you personally voted in the

10   jury room by answering Question 10, "Yes"?

11         (The jurors were polled individually by the Court and

12   affirmed their verdict.)

13         THE COURT:  Question 11:  Did Defendant City of Wasco

14   profit directly from any copying of the plaintiff's work,

15   either the tentative map for 5472 or improvement plans for

16   5472, done by any of the other defendants?

17         The answer to this question is, "Yes."

18         Does anybody wish the jury polled on the answer to

19   Question 11?

20         MR. OKADIGBO:  Yes, your Honor.

21         THE COURT:  Is that how you personally voted by

22   answering "yes" to Question 11?

23         (The jurors were polled individually by the Court and

24   affirmed their verdict.)

25         THE COURT:  Question 12:  Did Defendant City of Wasco

1  have the right and ability to supervise or control the other

2  defendants' copying of the plaintiff's work?

3           The answer on Question 12 is, "Yes."

4           Does anybody wish the jury polled?

5           MR. OKADIGBO:  Yes, your Honor.

6           THE COURT:  Is that how you personally voted to the

7  answer to Question 12 by answering, "Yes"?

8           (The jurors were polled individually by the Court and

9  affirmed their verdict.)

10          THE COURT:  Question 13:  Did Defendant City of Wasco

11  fail to exercise the right and ability to supervise or control

12  the other defendants' copying of the plaintiff's work?

13          The answer to Question 13 on the form is, "Yes."

14          Does anybody wish the jury polled on the answer to

15  Question 13?

16          MR. OKADIGBO:  Yes.

17          THE COURT:  Is that how you personally voted as read

18  to Question 13?

19          (The jurors were polled individually by the Court and

20  affirmed their verdict.)

21          THE COURT:  Question 14:  Did Defendant DeWalt profit

22  directly from any copying of the plaintiff's McIntosh's work

23  done by any of the other defendants?

24          The answer is, "No."

25          Does anybody wish the jury polled on the answer to

1   Question 14?

2          MR. BRAZE:  Yes, your Honor.

3          THE COURT:  Is that how you personally voted in the

4   answer to Question 4, by answering "no" to it?

5          Juror 1?

6          JUROR:  No.  Oh --

7          THE COURT:  Let me ask the question again.  I have

8   read the answer to question 14 is, "No."  Is that how you

9   personally voted in the jury room?

10          (The jurors were polled individually by the Court and

11   affirmed their verdict.)

12          THE COURT:  Question 15 is unanswered, as it should

13   be, based on the answer to Question 14.

14          Question 16 is unanswered, as it should be, based on

15   the answer to Question 14.

16          Question 17:  Did Defendant Northern California

17   profit directly from any copying of the plaintiff's work done

18   by any of the other defendants?

19          The answer on the form is, "Yes."

20          Does anybody wish the jury polled on the answer to

21   Question 17?

22          MR. HASSING:  Yes, your Honor.

23          THE COURT:  The answer here is "yes" on the Question

24   to 17.  And the answer, is that how you personally voted in

25   the jury room?

1140

1    (The jurors were polled individually by the Court and

2    affirmed their verdict.)

3         THE COURT:  Question 18:  Did Defendant Northern have

4    the right and ability to supervise or control the other

5    defendants' copying of the plaintiff's work?

6         The answer to this question is, "Yes."

7         Does anybody wish the jury polled?

8         MR. HASSING:  Yes, your Honor.

9         THE COURT:  Is that how you personally voted, by

10   voting "yes," to the answer to Question 18?

11        (The jurors were polled individually by the Court and

12   affirmed their verdict.)

13        THE COURT:  Question 19:  Did Defendant Northern fail

14   to exercise that right and ability to supervise or control the

15   other defendants' copying of the plaintiff's work?

16        The answer to the question is, "Yes."

17        Does anybody wish the jury polled on that answer?

18        MR. HASSING:  Yes, your Honor.

19        THE COURT:  Is that how you personally voted in the

20   jury room to Question 19?

21        (The jurors were polled individually by the Court and

22   affirmed their verdict.)

23        THE COURT:  Question 20:  Did Defendant Lotus profit

24   directly from any copying of the plaintiff's work done by any

25   of the other defendants?

1141

1       The answer is, "Yes."

2       Does anybody wish the jury polled on the answer to

3  Question 20?

4       MR. HASSING:  Yes, your Honor.

5       THE COURT:  Is that how you personally voted, by

6  saying "yes" to Question 20?

7       (The jurors were polled individually by the Court and

8  affirmed their verdict.)

9       THE COURT:  Question 21:  Did Defendant Lotus have

10  the right and ability to supervise or control the other

11  defendants' copying of the plaintiff's work?

12       The answer is to 21 is, "Yes."

13       Does anybody wish the jury polled on the answer to

14  21?

15       MR. HASSING:  Yes, your Honor.

16       THE COURT:  Is that how you personally voted in the

17  jury room to Question 21, by saying, "Yes"?

18       (The jurors were polled individually by the Court and

19  affirmed their verdict.)

20       THE COURT:  Question 22:  Did Defendant Lotus fail to

21  exercise that right and ability to supervise or control the

22  other defendants' copying of the plaintiff's work?

23       The answer is, "Yes."

24       Does anybody wish the jury polled on the answer to

25  Question 22?

1142

1    MR. HASSING:  Yes, your Honor.

2    THE COURT:  Is that how you personally voted, that

3    being "yes," to Question 22 in the jury room?

4    (The jurors were polled individually by the Court and

5    affirmed their verdict.)

6    THE COURT:  Question 23:  What is the total amount of

7    actual damages the plaintiff is entitled to?  This is the

8    amount of money you will be awarding the plaintiff McIntosh.

9    The answer to Question 23 is, "$1.4 million."

10    Does anybody wish the jury polled on that?

11    MR. HASSING:  Yes, your Honor.

12    MR. OKADIGBO:  Yes, your Honor.

13    THE COURT:  Is that how you personally voted in the

14    jury room?

15    (The jurors were polled individually by the Court and

16    affirmed their verdict.)

17    THE COURT:  Question 24:  Did Defendant DeWalt obtain

18    a profit from its infringing activity?

19    The answer is, "No."

20    I will just ask, is that how you personally voted in

21    the jury room?

22    (The jurors were polled individually by the Court and

23    affirmed their verdict.)

24    THE COURT:  Question 25 is unanswered in light of the

25    answer to Question 24.

1143

1     Question 26:  Did Defendant Northern obtain a profit

2  from its infringing activity?

3     The answer is, "Yes."

4     Is that how you personally voted in the jury room?

5     (The jurors were polled individually by the Court and

6  affirmed their verdict.)

7     THE COURT:  Question 27:  What is the amount of

8  Defendant Northern's profit?

9     The answer on the form is, "$1,992,107.50."

10     Is that how you personally voted in the jury room?

11     (The jurors were polled individually by the Court and

12  affirmed their verdict.)

13     THE COURT:  Question 28:  Did defendant Lotus obtain

14  a profit from its infringing activity?

15     The answer is, "Yes."

16     Is that how you personally voted in the jury room?

17     (The jurors were polled individually by the Court and

18  affirmed their verdict.)

19     THE COURT:  Question 29:  What was the amount of

20  Defendant Lotus' profit?

21     Answer is, "$1,992,107.50."

22     Is that how you personally voted in the jury room?

23     (The jurors were polled individually by the Court and

24  affirmed their verdict.)

25     THE COURT:  Question 30:  Did Defendant City of Wasco

1144

1 | obtain a profit from its infringing activity?

2 |       The answer is, "Yes."

3 |       Is that how you personally voted in the jury room?

4 |       (The jurors were polled individually by the Court and

5 | affirmed their verdict.)

6 |       THE COURT:  Question 31:  Was the amount of -- what

7 | was the amount of Defendant City of Wasco's profit?

8 |       The answer is, "$1.5 million."

9 |       Is that how you personally voted in the jury room?

10 |       (The jurors were polled individually by the Court and

11 | affirmed their verdict.)

12 |       THE COURT:  Question 32:  In committing infringing

13 | activity, did Defendant Northern act as a partner or

14 | practically partner with Defendant Lotus Development?

15 |       The answer is, "Yes."

16 |       Is that how you personally voted in the jury room?

17 |       (The jurors were polled individually by the Court and

18 | affirmed their verdict.)

19 |       THE COURT:  Question 33:  In committing infringing

20 | activity, did Defendant Lotus act as a partner or practically

21 | partner with Defendant Northern?

22 |       The answer is, "Yes."

23 |       Is that how you personally voted in the jury room?

24 |       (The jurors were polled individually by the Court and

25 | affirmed their verdict.)

1145

1    THE COURT:  It is dated today, and it is signed by

2  the foreperson.

3    Juror 003, and I ask you collectively, ladies and

4  gentlemen, is the verdict, as I have just read it in its

5  entirety, your verdict in this case?

6    (The jury affirmed the foregoing was its verdict.)

7    THE COURT:  The Court orders the Clerk of the Court

8  to record the verdict.

9    Before I ask that question, is a reading of the

10  recorded verdict waived?

11    MR. HASSING:  Yes, your Honor.

12    MR. BRAZE:  Yes, your Honor.

13    MR. ALEXANDER:  Yes, your Honor.

14    MS. BARNES:  Yes, your Honor.

15    THE COURT:  All right.  Is there any reason I should

16  not now excuse this jury?

17    MR. BRAZE:  No, your Honor.

18    MS. BARNES:  No, your Honor.

19    MR. ALEXANDER:  No, your Honor.

20    MR. HASSING:  No, your Honor.

21    THE COURT:  All right.  Ladies and gentlemen, you are

22  now done with this case and you are done with your federal

23  jury service.

24    I want to thank you for being willing to serve.  You

25  could have figured out how to answer questions so that you

1   wouldn't have had to serve.  It is obvious what we are looking

2   for, and you didn't play that game to try to get out of jury

3   duty, and we appreciate that very much.  That's the only way

4   the jury system works, is when people are willing to serve.

5       Your notes will be destroyed without anyone ever

6   having read those notes, just like I promised you they would.

7   You may now talk to anybody you want to about this case.

8       The reverse is also true.  If you don't want to talk,

9   don't.  If you do, do.  It's just totally your decision.

10      In just a moment, I'm going to ask you to go back

11  into the jury room and leave your badges on the table along

12  with your notes.

13      And at that point, then, you may leave.

14      Are there any questions at all?  Okay.  Thank you

15  very much, and you are now discharged as the jury.

16      (The jury left the courtroom.)

17      THE COURT:  Let the record reflect that the jury has

18  left the courtroom.  Any issues?

19      MR. BRAZE:  Well, your Honor, I think there is a

20  certain amount of equitable relief sought in the complaint as

21  a result of the infringement.  And it's probably best to just

22  schedule a conference to discuss how we are going to proceed

23  on the injunctive relief.

24      MR. HASSING:  I have nothing further, your Honor.

25      THE COURT:  Anybody?

1147

1    MR. ALEXANDER:  Nothing else, your Honor.

2    MS. BARNES:  Nothing else, your Honor.

3    THE COURT:  All right.  What I'm going to ask you to

4    do, then, I'm going to ask you to meet and confer.  And

5    obviously, there can be no judgment entered until the entirety

6    of the case is disposed of, and there are equitable issues.

7    So I would like you to meet and confer, come up with

8    a date.  And any documents you wish to file, come up with a

9    scheduling.  And unless you want me to do it right now, if you

10   don't think you can agree.

11   MR. ALEXANDER:  I think we should be able to agree,

12   your Honor.

13   MR. HASSING:  I think so, your Honor.

14   MS. BARNES:  Yes, your Honor.

15   MR. BRAZE:  Yeah.  The only one involved in that

16   might be Northern and Wasco, anyway.  We might be able to

17   reach a stipulation on some of the issues regarding copies and

18   the like.

19   THE COURT:  All right.  Then let us know.  Understand

20   that there are posttrial motions.  You know what the procedure

21   says on timing, so don't waste time on getting this back into

22   Court if you can't agree.  If you can agree on the equitable

23   issues, then submit your stipulation and order and we will

24   take a look at it.

25   Anything else?

1148

1    MR. BRAZE:  Thank you, your Honor.

2    MS. BARNES:  No.  Thank you, your Honor.

3    THE COURT:  Thanks.  We will be in recess.

4    (The proceedings were concluded at 3:01 p.m.)

5

6    I, PEGGY J. CRAWFORD, Official Reporter, do hereby

7    certify the foregoing transcript as true and correct.

8

9    Dated:  03/25/2010                    /s/ Peggy J. Crawford
                                           PEGGY J. CRAWFORD, RDR-CRR
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25