BONIFACIO BONNY GARCIA (SBN 100761)
CHAKA C. OKADIGBO (SBN 224547)
SUSAN GRAHAM BARNES (phv)
GCR, LLP
520 SOUTH GRAND AVENUE, SUITE 695
LOS ANGELES, CA 90071
Tel: (213) 347-0210
Fax: (213) 347-0216

Attorneys for Defendant CITY OF WASCO

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| ROGER McINTOSH<br><br>Plaintiff,<br><br>vs.<br><br>NORTHERN CALIFORNIA UNIVERSAL ENTERPRISES COMPANY, INC., *et al.*,<br><br>Defendants. | Case No: 1:07-CV-01080-LJO-GSA<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT CITY OF WASCO'S MOTION TO ALTER OR AMEND THE JUDGMENT, OR, IN THE ALTERNATIVE, FOR A NEW TRIAL PURSUANT TO RULES 59 AND 60 OF THE FEDERAL RULES OF CIVIL PROCEDURE**<br><br>Date:       June 23, 2010<br>Time:       8:30 a.m.<br>Courtroom.:  4<br>Judge:      Honorable Lawrence J. O'Neill |

# TABLE OF CONTENTS

I.  INTRODUCTION ..............................................................................................1

II.  LEGAL STANDARD TO AMEND OR ALTER JUDGMENT AND FOR
     A NEW TRIAL.............................................................................................3

III. ARGUMENT ..................................................................................................4

    A.   THE COURT SHOULD REDUCE PLAINTIFF'S ACTUAL
         DAMAGES AWARD OF $1.4 MILLION TO PREVENT A MANIFEST
         INJUSTICE AND/OR TO CORRECT A MANIFEST ERROR OF LAW
         PURSUANT TO RULE 59(E)....................................................................4

         1.   Plaintiff's Actual Damages Are Restricted, at Best, to What a
              Willing Buyer Would Pay for the Actual Use Made of Plaintiff's
              Works...........................................................................................4

         2.   Based on the Evidence Adduced At Trial, Plaintiff is Entitled to
              Recover No More Than $20,500 for His Infringement Claims
              Relating to the Revised Tentative Map for Tract 5472 and Nothing
              for the Claims Relating to the Improvement Plans for Tract 5472..........8

              a.   The Evidentiary Record Regarding Computation of Actual
                   Damages.............................................................................8

              b.   A Willing Buyer Would Pay Plaintiff No More than $20,500 .....9

              c.   Based on the Evidentiary Record and on the Law, Plaintiff
                   is not Entitled to Any Actual Damages Award for His
                   Infringement Claims Against the City Relating to the
                   Improvement Plans for Tract 5472 .............................................10

              d.   Based on the Court's Declaration that Plaintiff is Not
                   Entitled to a Double Recovery, Plaintiff Should Not
                   Receive More than $67,000 for All Work Performed
                   on Tract 5472 .................................................................12

    B.   PURSUANT TO RULE 59(e), THE COURT SHOULD AMEND
         PLAINTIFF'S INFRINGER PROFITS AWARD OF $1.5 MILLION
         AGAINST THE CITY TO PREVENT A MANIFEST INJUSTICE
         AND/OR TO CORRECT A MANIFEST ERROR OF LAW ...........................13

    C.   AS AN ALTERNATIVE, THE COURT SHOULD ORDER A NEW
         TRIAL PURSUANT TO RULE 59(a) BECAUSE THE DAMAGES
         ARE EXCESSIVE AND THE VERDICT IS AGAINST THE CLEAR
         WEIGHT OF THE EVIDENCE....................................................................19

i

D.    AS AN ALTERNATIVE, THE COURT SHOULD ORDER A NEW TRIAL PURSUANT TO RULE 59(a), BASED ON PLAINTIFF'S COUNSEL'S MISCONDUCT IN DELIBERATELY MISSTATING THE LAW DURING OPENING AND CLOSING ARGUMENT WHEN ARGUING THAT COPYING THE INFRASTRACTURE IMPROVEMENTS, WITHOUT MORE, CONSTITUTES COPYRIGHT INFRINGEMENT AND/OR DEFEATS DEFENDANTS' INDEPENDENT CREATION DEFENSE ............................................................................................20

E.    AS AN ALTERNTIVE TO ALTERING OR AMENDING THE JUDGMENT, THE COURT SHOULD ORDER A NEW TRIAL BASED ON PLAINTIFF'S COUNSEL'S MISCONDUCT IN ARGUING THAT PLAINTIFF WAS ENTITLED TO RECOVER ACTUAL DAMAGES FOR WORK THAT MARTIN-MCINTOSH COMPLETED OUTSIDE OF TRACT 5472/6451 ...............................25

F.    AS AN ALTERNATIVE, THE COURT SHOULD REVERSE ITS PRIOR RULING BARRING THE CITY FROM ASSERTING THE AFFIRMATIVE DEFENSE OF PUBLICATION AND ORDER A NEW TRIAL PURSUANT TO RULE 59(a) ......................................26

G.    AS AN ALTERNATIVE, THE COURT SHOULD ORDER A NEW TRIAL BASED ON THE GROUND THAT THE COURT COMMITTED SUBSTANTIAL ERROR IN ADMITTING EVIDENCE OF NON-COPYRIGHTABLE ELEMENTS OF MAP 5472 ............................................28

IV.   CONCLUSION.............................................................................................30

1

**TABLE OF AUTHORITIES**

2

**CASES**

3

**Case** ................................................................................................................ **Page**

4

*Calhoun v. Lillenas Publishing*
   298 F.3d 1228, 1230 (11th Cir. 2002) ................................................................23

5

6

*Cavalier v. Random House*
   297 F.3d 815, 822 (9th Cir. 1994) ......................................................................28

7

*Certified Engineering, Inc. v. First Fidelity Bank*
   849 F.Supp. 318 (D. N.J. 1994) ..........................................................................28

8

9

*County of Santa Clara v. Superior Court*
   170 Cal.App. 4th 1301, 1335 (2009) ..................................................................28

10

*Danielson, Inc. v. Winchester-Conant Properties, Inc.*
   186 F.Supp.2d 1 (W.D. Mass. 2002) ..................................................................27

11

12

*Data General Corporation, et al. v. Grumman Systems Support Corp.*
   36 F.3d 1147, 1170-1171 (1st Cir. 1994)............................................................11

13

*Del Madera Properties v. Rhodes & Gardner, Inc.*
   637 F.Supp. 262 (N.D. Cal. 1985) ......................................................................27

14

15

*Deltak, Inc. v. Advanced Systems, Inc.*
   574 F.Supp. 400, 403 (N.D. Ill. 1983)................................................................11

16

*Estate of Vane v. The Fair, Inc.*
   849 F.2d 186 (5th Cir. 1988) ..............................................................................16

17

18

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*
   499 U.S. 340, 361 (1991)....................................................................................29

19

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*
   772 F.2d 505, 512 (9th Cir. 1985) ..................................................................5, 11

20

21

*Gill v. Rollins Protective Services Co.*
   773 F.2d 592, 594  ......................................................................................19, 20

22

*Golden Eagle Distribution Corp. v. Burroughs Corp.*
   801 F.2d 1531, 1537 (9th Cir. 1986) ..................................................................25

23

24

*Gruca v. Alpha Therapeutic Corp.*
   51 F.3d 638 (7th Cir. 1995) ................................................................................25

25

*Harper & Row, Publishers, Inc. v. Nation Enterprises*
   471 U.S. 539, 567, 85 L.Ed. 2d 588, 105 S. Ct. 2218 (1985)........................11, 24

26

27

*Harper House, Inc. v. Thomas Nelson, Inc.*
   889 F.2d 197, 207-208 (9th Cir. 1989) ..............................................................29

28

*Hetzel v. Prince William County, Virginia*
  523 U.S. 208, 2111, 118 S.Ct. 1210, 1211-1212 ..................................................3

*Intown Enterprises, Inc. v. Barnes*
  721 F.Supp. 1263 (N.D. Ga. 1989) ....................................................................27

*Kodadek v. MTV Networks*
  152 F.3d 1209, 2111(9th Cir. 1998) ..................................................................12

*Kunycia v. Melville Realty Co.*
  755 F.Supp. 566 (S.D.N.Y. 1990) .....................................................................27

*Landes Construction Co., Inc. v. Royal Bank of Canada*
  833 F.2d 1365, 1371-1372 (9th Cir. 1987) .........................................................20

*Leader National Insurance Co. v. Industrial Indemnity Insurance Co.*
  19 F.3d 444, 445 (9th Cir. 1994) ........................................................................3

*Mackie v. Riser*
  296 F.3d 909, 914 (9th Cir. 2002) ................................................................14, 15

*Marcano Rivera v. Turabo Medical Center Parnership*
  415 F.3d 162, 171 (1st Cir. 2005)......................................................................19

*Masterson Marketing, Inc. v. SKL Recreation Corp.*
  495 F.Supp.2d 1044 (S.D. Cal. 2007).............................................................16, 17

*McDowell v. Calderon*
  197 F.3d 1253, 1255 n. 1 (9th Cir. 1999) ............................................................3

*Miksis v. Howard*
  106 F.3d 754, 764 (7th Cir. 1997) .....................................................................20

*Minks v. Polaris Industries, Inc.*
  546 F.3d 1364, 1371 (Fed. Cir. 2008)..................................................................3

*Mobil Oil Corp. v. Amoco Chemical Co.*
  915 F. Supp. 1333 (D. Del. 1995)....................................................................3, 12

*Molski v. M.J. Cable, Inc.*
  481 F.3d 724, 729 (9th Cir. 2007) .......................................................................3

*Montgomery Ward & Co. v. Duncan*
  311 U.S. 243, 61 S. Ct. 189, 85 L.Ed. 147 (1940)..............................................3, 20

*Morgan v. Hawthorne Homes, Inc.*
  2009 U.S. Dist. LEXIS 31456, *40-41 (W.D. Pa. 2009)........................................24

*Morgan v. Woessner*
  997 F.3d 1244, 1258 (9th Cir. 1993) ...................................................................3

*Nelson v. Equifax Information Services LLC*
  522 F.Supp.2d 1222, 1238-1239 (C.D. Cal. 2007)................................................7

*O'Connor v. Cindy Gerke & Assocs., Inc.*
    300 F.Supp.2d 759, 770-74 (W.D. Wis. 2002) ..................................................................15

*Official Airline Guides, Inc. v. Gross*
    6 F.3d 1385 (9th Cir. 1993) ...........................................................................................24

*Polar Bear Productions, Inc. v. Timex Corp.*
    384 F.3d 700, 710 (9th Cir. 2004) .............................................................................14, 15

*R & B, Inc. v. Needa Parts Manufacturing, Inc.*
    418 F.Supp.2d 684 (2005) ..............................................................................................29

*Robert R. Jones Assocs. V. Nino Homes*
    858 F.2d 274, 281 (6th Cir. 1981) ..................................................................................11

*Smith v. Paul*
    174 Cal.App.2d 744 (1959) .............................................................................................27

*Smith v. Transworld Drilling Co.*
    773 F2d 610, 613 (5th Cir. 1985) ...................................................................................20

*Southco, Inc. v. Kanebridge Corporation*
    390 F.2d 276 (3rd Cir. 2004) ..........................................................................................29

*Straus, Jr. v. DVC Worldwide, Inc.*
    484 F.Supp.2d 620 (S.D. Tex. 2007) ..............................................................................17

*Sutkiewicz v. Monroe County Sheriff*
    110 F.3d 352, 361 (6th Cir. 1977) ..................................................................................20

*Tesser v. Board of Education of City School District of City of New York*
    370 F.3d 314, 321 (2nd Cir. 2004) ..................................................................................20

*Wharf v. Burlington Northern Railroad Co.*
    60 F.3d 631, 637-638 (9th Cir. 1995) ..............................................................................25

**STATUTES**

**Statute** ................................................................................................................. **Page**

17 U.S.C. § 411a ..................................................................................................... 12

17 U.S.C. § 504(b) ............................................................................................... 4, 14

California Government Code §6250 ...................................................................... 27

California Government Code §54950 ..................................................................... 27

California Government Code §62757.5 .................................................................. 28

California Government Code §66000 ..................................................................... 13

California Government Code §66473 ..................................................................... 27

California Public Resources Code § 21000 ........................................................... 27

Federal Practice and Procedure § 2810.1 (2d ed. 1995) ........................................ 3

Federal Rules of Appellate Procedure, Rule 4(a)(4)(B)(1) ..................................... 2

Federal Rules of Civil Procedure, Rule 59(a) ................................... 3, 19, 20, 21, 30

Federal Rules of Civil Procedure, Rule 59(e) ................................... 1, 3, 4, 7, 13, 30

Federal Rules of Civil Procedure, Rule 60(b) ...................................................... 30

Wasco Municipal Code § 13.06.020 ...................................................................... 13

Wasco Municipal Code § 13.06.060 ...................................................................... 13

Wasco Municipal Code § 13.06.070 ...................................................................... 13

Wasco Municipal Code § 13.10.020 ...................................................................... 13

Wasco Municipal Code § 13.10.040 ...................................................................... 13

Wasco Municipal Code § 13.10.060 ...................................................................... 13

Wasco Municipal Code § 13.10.070 ...................................................................... 13

Wasco Municipal Code § 13.14.010 ...................................................................... 13

Wasco Municipal Code § 13.16.010 ...................................................................... 13

Wasco Municipal Code § 13.16.030 ...................................................................... 13

Wasco Municipal Code § 13.16.040 ...................................................................... 13

Wasco Municipal Code § 13.21.020 ...................................................................... 13

Wasco Municipal Code § 13.21.050 ...................................................................... 13

1  Wasco Municipal Code § 13.21.060 ...................................................................................13

2  Wasco Municipal Code § 16.16 .......................................................................................27

3  Wasco Municipal Code § 16.44.020 .................................................................................13

4  Wasco Municipal Code § 16.46.020 .................................................................................13

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.   INTRODUCTION

3      This case presents a classic instance of manifest injustice. During 1992-1994, Martin-McIntosh,

4   Plaintiff's prior firm, billed $1.1 million for all civil engineering work it completed on 480 acres of land

5   comprising Valley Rose Estates. Of this amount, Martin-McIntosh billed approximately $308,000 for all

6   work it performed on Tract 5472, which is approximately 33 acres of Valley Rose Estates. Plaintiff's

7   infringement claims relate solely to Tract 5472 in that Plaintiff contends that Defendants infringed on his

8   copyright interests in the Revised Tentative Map for Tract 5472 ("the 5472 Map") and the improvement

9   plans for Tract 5472 ("improvement plans"). Plaintiff has done no additional work on the Valley Rose

10   Estates since 1994. Shockingly, however, the jury awarded Plaintiff $1.4 million in actual damages after

11   finding that all Defendants infringed on the 5472 Map and that the City infringed on the improvement plans.

12   Plaintiff now stands to receive more money than Martin-McIntosh ever charged for all the work that it

13   completed on all 480 acres of Valley Rose Estates, not just work specific to the 33 acres comprising Tract

14   5472. The jury's actual damages award is grossly excessive, inequitable and manifestly unjust. The award

15   is a manifest error of law insofar as it was premised on recovering for work outside Tract 5472 because

16   Plaintiff is not entitled to recover for Martin-McIntosh work besides preparation of the 5472 Map and

17   improvement plans.

18      The jury also found the City liable for $1.5 million in infringer profits on the ground that the City

19   distributed a Developer Information Package containing the 5472 Map to Northern California Universal

20   Enterprises Company ("Northern") and/or Lotus Developments, LP ("Lotus") and generated profits of $1.5

21   million from selling two Valley Rose Estates parcels to Northern and/or Lotus. Plaintiff failed to establish

22   that Northern and/or Lotus based its decision to purchase on the 5472 Map and/or that the 5472 Map

23   caused the City to generate profits from the sale of these parcels. Thus, the jury's infringer profits award is

24   grossly excessive and manifestly unjust. The jury's decision to award infringer profits also constitutes a

25   manifest error of law as Plaintiff failed to establish the required nexus between infringement and profits.

26      Accordingly, pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, the City respectfully urges

27   the Court to:

28   ///

1       •   alter or amend the judgment to reduce actual damages to the amount supported by the record that

2         a willing buyer would pay for the 5472 Map and improvement plans combined; and

3       •   alter or amend the judgment so as to deny Plaintiff any recovery of infringer profits.

4   Alternatively, the City requests that the Court order a new trial pursuant to Rule 59(a) on the grounds that

5       •   the jury's damages award is excessive and/or is against the clear weight of the evidence;

6       •   Plaintiff's counsel misstated the law to the jury during opening and closing arguments insofar as

7         they argued that copying the infrastructure improvements, without more, constitutes copyright

8         infringement and/or that it defeats Defendants' defense of independent creation;

9       •   Plaintiff's counsel engaged in misconduct by misrepresenting to the Court and the jury that Plaintiff

10        was entitled to recover $1.4 million in actual damages based on the work that Martin-McIntosh

11        completed on all 480 acres of Valley Rose Estates even though (1) counsel had been directed by

12        the Court to limit evidence of actual damages to the value of the map and improvement plans for

13        Tract 5472 and (2) the law does not authorize Plaintiff to recover actual damages for work that

14        Martin-McIntosh performed outside of Tract 5472;

15       •   the Court should reverse its decision granting Plaintiff's motion for summary adjudication with

16        respect to the City's affirmative defense of publication;

17       •   the Court committed substantial error in permitting Plaintiff's counsel to contend during closing

18        argument that depicting the infrastructure improvements in the Valley Rose Estates Subdivision

19        (tract 5472/6451), without more, establishes copyright infringement and/or defeats Defendants'

20        independent creation defense; and

21       •   the Court committed substantial error in denying the City's motion in limine seeking to bar Plaintiff

22        from introducing evidence of non-copyrightable elements of the 5472 Map, the effect of which was

23        to improperly expand the features of the 5472 and 6451 Maps that the jury could consider for

24        purposes of determining whether the two maps are substantially similar.

25       As a precautionary measure, the City filed a notice of appeal within 30 days of entry of judgment to

26   preserve its opportunity to appeal if the Court found the City's motions to amend or alter the judgment

27   and/or motion for a new trial procedurally defective. However, under Rule 4(a)(4)(B)(1) of the Federal

28   Rules of Appellate Procedure, a notice of appeal filed while a motion for a new trial or to amend or alter the

2

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT CITY OF WASCO'S MOTION TO ALTER OR AMEND THE JUDGMENT,
OR, IN THE ALTERNATIVE, FOR A NEW TRIAL PURSUANT TO RULES 59 AND 60 OF THE FEDERAL RULES OF CIVIL PROCEDURE

1 judgment is pending is not effective until the final disposition of all such motions. A notice of appeal filed
2 before the disposition of a post-trial motion to amend or alter the judgment or for a new trial is held in
3 abeyance until the motion is resolved and is, therefore, sufficient to bring the underlying case to the Court
4 of Appeals. *Leader National Insurance Co. v. Industrial Indemnity Insurance Co.*, 19 F.3d 444, 445 (9th Cir.
5 1994). This Court, therefore, still retains jurisdiction to rule on the City's post-trial motions.

6 **II.    LEGAL STANDARD TO AMEND OR ALTER JUDGMENT AND FOR A NEW TRIAL**
7 Rule 59(e) of the Federal Rules of Civil Procedure permits a party to request that the trial court alter or
8 amend a judgment. The Ninth Circuit has identified the following grounds for providing relief under Rule
9 59(e): (1) to correct manifest errors of law of law or fact upon which the judgment is based; (2) to present
10 newly discovered or previously unavailable evidence; (3) to apply an intervening change in the law; and (4)
11 to prevent manifest injustice. *McDowell v. Calderon*, 197 F.3d 1253, 1255 n. 1 (9th Cir. 1999) (citing 11
12 Charles Alan Wright *et al.*, Federal Practice and Procedure § 2810.1 (2d ed. 1995). Courts have altered or
13 amended damage awards in instances where they have concluded that a manifest injustice would result if
14 left unaltered. *See, e.g. Mobil Oil Corp. v. Amoco Chemical Co.*, 915 F.Supp. 1333 (D. Del. 1995).

15 Under Rule 59(a) of the Federal Rules of Civil Procedure, a party may request that the trial court order
16 a new trial based on the following grounds: (1) the verdict is against the weight of the evidence; (2) the
17 damages are excessive; (3) the trial was unfair in some regard to the moving party; and (4) the court
18 committed substantial error in admitting or rejecting certain evidence or in the instructions to be submitted
19 to the jury. *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251, 61 S. Ct. 189, 85 L.Ed. 147 (1940).
20 This list is not viewed as exhaustive, however. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007).
21 A district court may conditionally grant a defendant's request for a new trial unless plaintiff agrees to a
22 remittitur. If plaintiff rejects the remittitur, a new trial occurs. *Hetzel v. Prince William County, Virginia*, 523
23 U.S. 208, 2111, 118 S.Ct. 1210, 1211-1212; *Morgan v. Woessner*, 997 F.3d 1244, 1258 (9th Cir. 1993).
24 However, when a jury award is premised on a legal error, a trial court may grant a remittitur without offering
25 a party the option of a new trial. *Minks v. Polaris Industries, Inc.*, 546 F.3d 1364, 1371 (Fed. Cir. 2008).
26 Two legal errors allowing for such a reduction are (1) where a portion of the judgment is for an amount not
27 permitted by law and (2) where a punitive damages award is arbitrary in violation of due process. *Id.* In
28 this instance, the Court may alter or amend the judgment as to the actual damages and infringer profits

1   award without ordering a new trial because the law does not permit Plaintiff to recover infringer profits

2   without first establishing a causal nexus between infringement and profits, nor does it permit Plaintiff to

3   recover in actual damages more than a willing buyer would pay for the 5472 Map and improvement plans.

4         III.    **ARGUMENT**

5             **A. THE COURT SHOULD REDUCE PLAINTIFF'S ACTUAL DAMAGES AWARD OF**

6                 **$1.4 MILLION TO PREVENT A MANIFEST INJUSTICE AND/OR TO CORRECT A MANIFEST ERROR OF LAW PURSUANT TO RULE 59(e).**

7               **1. <u>Plaintiff's Actual Damages Are Restricted, at Best, to What a Willing Buyer Would Pay for the Actual Use Made of Plaintiff's Works.</u>**

8

9       Plaintiff is, at best, entitled to receive in actual damages only what a willing buyer would pay for the

10   actual use made of the 5472 Map and improvement plans because his infringement claims relate only to

11   Tract 5472/6451, comprising approximately 33 acres. (RT, at 561:25-562:4; *see also* Exhibits J-10, p. 5,

12   see Okadigbo decl. ¶ 16, Ex. N, J-27 (tax deed for City's purchase of parcel 1 of the Valley Rose Estates),

13   see Okadigbo decl. ¶ 17, Ex. O). By convoluted arithmetic, however, the jury awarded Plaintiff $1.4 million

14   in actual damages, far exceeding the value of the 5472 Map and the improvement plans, and the amount

15   that Plaintiff's former engineering firm, Martin-McIntosh, originally received for all work it performed on the

16   entire 480 acres comprising Valley Rose Estates. Because the award is grossly excessive and permits

17   Plaintiff a double recovery, the Court should amend or alter the award to prevent a manifest injustice.

18       Plaintiff bore the burden of establishing actual damages attributable to his claims of infringement.

19   (Instruction 41 ("plaintiff must establish damages by a preponderance of the evidence")). Instruction 42

20   states that an owner is entitled to recover "the actual damages suffered as a result of the infringement"

21   defining actual damages as "the amount of money adequate to compensate the copyright owner for the

22   reduction of the fair market value of the <u>copyrighted work</u> caused by the infringement."

23       Furthermore, "the reduction of the fair market value of the copyrighted work is the amount a <u>willing</u>

24   <u>buyer</u> would have been reasonably required to pay a willing seller at the time of infringement for the <u>actual</u>

25   <u>use made of the plaintiff's work</u>. (Instruction 42; *see also* 17 U.S.C. § 504(b)). The language "actual use

26   made of the plaintiff's work" clearly reveals that, <u>at best</u>, the focus on actual damages award should be the

27   value of the infringed works at issue—Map 5472 and the improvement plans. (Jury Instruction 42; Trial

28   Transcript, at 1018:1-10 (Plaintiff's counsel's closing argument focused Plaintiff's claims of copying to the

1  5472 Map and plans)). The language further suggests that Plaintiff should be entitled only to the value of

2  those elements of the 5472 Map and improvement plans that were actually infringed upon. *See Frank*

3  *Music Corp. v. Metro-Goldwyn-Mayer, Inc.,* 772 F.2d 505, 512 (9th Cir. 1985) ("'actual damages' are the

4  extent to which the market value of a copyrighted work has been injured or destroyed by an infringement").

5      Instruction 42 is not susceptible to an interpretation that actual damages may be recovered for works

6  against which no claims of infringement have been made. *See* RT, at 125:11-126:5; 198:9-21; 199:3-11

7  (City's Counsel raised these concerns). Prior to trial, the City moved in limine to restrict Plaintiff's evidence

8  of actual damages to the value of the 5472 Map and improvement plans, which the Court granted. (RT, at

9  125:11-20; Order on Wasco's Motions in Limine, see Okadigbo decl. ¶ 6, Ex. D). The City's Trial Brief

10  advised the Court that Plaintiff would attempt to introduce evidence of the value of work performed outside

11  Tract 5472. (Amended Trial Brief, at 5, see Okadigbo decl. ¶ 3, Ex. A). The City again raised these points

12  during the trial. (RT, at 125:11-126:5). The City urged during closing argument that Plaintiff's actual

13  damages were limited to the value of the 5472 Map and improvement plans.   (RT, at 1072:22-1074:1).

14  Nevertheless, Plaintiff's counsel convinced the jury to award Plaintiff $1.4 million in actual damages, based

15  on 480 acres worth of work that Martin-McIntosh completed, instead of on the work relating solely to the 33

16  acres of Tract 5472/6451.

17      Instead of proving what a willing buyer would pay for the actual use made of the 5472 Map and

18  improvement plans, Plaintiff's counsel employed the following arithmetic: – (1) double the value of the work

19  Martin-McIntosh performed on the entire 480 acres, based on Plaintiff's testimony that his hourly rates for

20  civil engineering work doubled between 1992 and 2004 (the alleged period of infringement) and (2) subtract

21  the sum Martin-McIntosh was paid in 1992 for the work. (RT, at 1009:23-101:14). Under this math, the

22  value of the work done on 480 acres jumped from approximately $1.1 million to approximately $2.2 million.

23  (RT, at 170:20-171:6; 299:19-22, 301:15-21, 1009:23-1010:14; *see also* Exhibit J-4, see Okadigbo decl. ¶

24  14, Ex. L). Plaintiff's counsel then convinced the jury to subtract $800,000 in payments that Martin –

25  McIntosh received for the work, leaving a total of $1.4 million. (RT, at 1009:23-1010:14). This method of

26  calculating actual damages completely disregarded the law by permitting Plaintiff to recover more than a

27  willing buyer would have paid for the actual uses made of the 5472 Map and improvement plans.

28  / / /

1    Plaintiff admitted that the $1.1 million which his counsel used as a basis to calculate the value of the

2    5472 Map and improvement plans was actually the value of all work that Martin-McIntosh had done on the

3    entire 480 acres, not just the 33 acres consisting of Tract 6451/5472. (RT, at 299:19-300:6; see also Exhibit

4    J-4, see Okadigbo decl. ¶ 14, Ex. L).  Plaintiff further admitted, during a voir dire examination conducted by

5    the City, that DeWalt did not need to perform any work outside of Tract 5472/6451 to complete the work

6    that it was hired by Northern to perform – survey Tract 5472/6451 and prepare subdivision maps for Tract

7    6451 -- because Martin-McIntosh had already completed the work on the other 447 acres of land. (RT, at

8    199:13-200:23).

9        All together, the facts that (1) Plaintiff's claims of infringement concern only the 5742 Map and

10   improvement plans, (2) Plaintiff concedes that DeWalt did not need to perform any of the work that Martin-

11   McIntosh had already completed outside Tract 5472/6451, and (3) DeWalt never performed any work on

12   the Valley Rose Estates outside Tract 5472 (Exhibit J-16, see Okadigbo decl. ¶ 11, Ex. I, Exhibit J-18, see

13   Okadigbo decl. ¶ 10, Ex. H; Trial Transcript, at 761:24-762:14, 775:4-7) restrict Plaintiff's actual damages to

14   "the amount a willing buyer would pay the plaintiff for the actual use made of the 5472 Map and

15   improvement plans."  The Court acknowledged that evidence relating to actual damages besides the 5472

16   Map and improvement plans was irrelevant (RT, at 200:24-25; 203:9-11), but did not instruct Plaintiff's

17   counsel to limit their evidence or argument of actual damages solely to the value of the map and plans

18   specific to Tract 5472.  (RT, at 126:6-16). Because the $1.4 million actual damages award expands

19   Plaintiff's recovery to the remaining 447 acres worth of work outside Tract 5472, it is manifestly unjust.

20       Plaintiff's $1.4 million actual damages award is still inequitable even if it is assumed that Plaintiff can

21   recover actual damages for work completed on all 480 acres.  If Plaintiff had sought these unpaid amounts,

22   he would have demanded double the unpaid amounts, based on his testimony that his hourly rate work had

23   doubled between 1992 and 2004.  (RT, at 598:16-11).  Since, according to Plaintiff, Martin-McIntosh was

24   owed some $340,000 out of approximately $1.1 million that it billed for 480 acres worth of work, Plaintiff

25   should have demanded double this amount, or some $680,000.  (RT, at 312:2-6 (Plaintiff's testimony that

26   $341,487.23 was owed); Exhibit J-4, see Okadigbo decl. ¶ 14, Ex. L (subtract $808,443.31 from

27   $1,149,910.28 total); Exhibit J-100, see Okadigbo decl. ¶ 15, Ex. M)).  To be clear, the law does not

28   authorize Plaintiff to recover damages for work performed outside of Tract 5472.  Therefore, Plaintiff is not

entitled either to $340,000 or $680,000.  However, this methodology would have been a more honest means of recovering amounts owing to Martin-McIntosh for work completed on 480 acres, if this were truly Plaintiff's goal.  Not surprisingly, however, Plaintiff's counsel used a method of calculating actual damages that enabled Plaintiff to recover twice for the same work that Martin-McIntosh had already completed.

The error of Plaintiff's calculations is more apparent if one assumes that Martin-McIntosh had been paid the entire $1.1 million it billed for 480 acres worth of work.  Under Plaintiff's logic, Plaintiff would get another $1.1 million simply because Plaintiff's billing rates had doubled, although Plaintiff did no additional work since 1994.  However, if the goal is to award Plaintiff for unpaid work (the fundamental premise of Plaintiff's damages calculus), then Plaintiff should receive nothing since Martin-McIntosh had already been paid for the work under this hypothetical example.  Plaintiff's methodology for calculating actual damages insufficiently accounts for sums already been paid by (a) doubling the value of paid-for work to enable Plaintiff to recover the original amount again and (b) doubling the value of already completed work for which Martin-McIntosh was not paid even though Plaintiff will perform no additional work.

In the final analysis, however, the inequitable nature of the $1.4 million actual damages award to Plaintiff is evident if the Court focuses on the following questions.  Would a willing buyer pay Plaintiff $1.4 million for the 5472 Map and improvement plans for Tract 5472?  Would a reasonable buyer pay $1.4 million for a map and plans relating only to 33 out of 98 acres of land that the buyer purchased for $1.6 million?  The answer to both questions is clearly no and the evidentiary record does not support the verdict amount of $1.4 million in actual damages. For these reasons, a recovery of $1.4 million in actual damages is a manifest injustice under Rule 59(e).  Insofar as the jury's award was premised on the value of the work completed on 480 acres, instead of on what a willing buyer would pay for the 5472 Map and improvement plans, the award constitutes a manifest error of law under Rule 59(e) and the judgment should be altered or amended.  *See Nelson v. Equifax Information Services LLC*, 522 F.Supp.2d 1222, 1238-1239 (C.D. Cal. 2007) (granting a motion to amend a damage award when the award constituted a manifest error of law).

/ / /

/ / /

/ / /

/ / /

**2. Based on the Evidence Adduced At Trial, Plaintiff is Entitled to Recover No More Than $20,500 for His Infringement Claims Relating to the Revised Tentative Map for Tract 5472 and Nothing for the Claims Relating to the Improvement Plans For Tract 5472.**

Based on the evidence, Plaintiff is entitled to no more than $20,500 in actual damages. This sum represents the amount a willing buyer (Northern) paid DeWalt for the 6451 Map, which is more than the amount that the Legacy Group paid Martin-McIntosh for the 5472 Map ($10,000) in 1992. Plaintiff is not entitled to an award for the improvement plans for Tract 5472 because he failed to establish any harm from the City's distribution of the improvement plans for Tract 5472, especially since the jury found that Northern, Lotus and DeWalt did not unlawfully use or copy the plans. (Verdict, Nos. 2, 4, 6).

### a. The Evidentiary Record Regarding Computation of Actual Damages

The evidentiary record from which the Court may calculate Plaintiff's actual damages consists of

- The fact that Plaintiff's claims of infringement in this litigation relate only to the 5472 Map and improvement plans; Plaintiff does not claim that Defendants infringed on any other works belonging to him (Trial Transcript, at 199:13-200:23 (McIntosh testimony during voir dire by City's counsel));

- Martin-McIntosh's records establishing that the value of the Revised Tentative Map for Tract 5472 was $10,000 (Exhibit D-250, see Okadigbo decl. ¶ 9, Ex. G; RT, at 316:22-318:20, 320:4-11 (Plaintiff's testimony));

- DeWalt's estimate of $5,500.00 for preparing a tentative map for Tract 6451 (formerly 5472), $7,500 for performing a topographical survey of Tract 5472/6451, and $7,500 for additional surveying services, for a total of $20,500 (Exhibit J-18, see Okadigbo decl. ¶ 10, Ex. H, (DeWalt's proposal to Northern to prepare subdivision maps and perform antecedent survey work));

- The contract between DeWalt and Northern, which establishes that Northern paid a total of $26,000 to DeWalt for preparing both the tentative and final maps and for performing all necessary survey work on the tract (Exhibit J-16, p.1, see Okadigbo decl. ¶ 11, Ex. I);[1]

- A series of flat-fee contracts and addendums between Martin-McIntosh and the Legacy Group, establishing ultimately that Martin-McIntosh put a total value of $70,000 on preparing the tentative

---

[1] However, the preparation of a final map is not at issue in this litigation, thus the $5,500 estimate for preparing a final map must be excluded from the $26,000 that DeWalt charged Northern, thus reducing the value of tentative map related work to $20,500.

8

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT CITY OF WASCO'S MOTION TO ALTER OR AMEND THE JUDGMENT, OR, IN THE ALTERNATIVE, FOR A NEW TRIAL PURSUANT TO RULES 59 AND 60 OF THE FEDERAL RULES OF CIVIL PROCEDURE

1     map and a set of improvement plans for Tract 5472 (Exhibit J-1, see Okadigbo decl. ¶ 12, Ex. J;
2     Exhibit J-39, see Okadigbo decl. ¶ 13, Ex. K);

3   • Plaintiff's testimony on cross-examination that Martin-McIntosh charged $18,000 for preparing
4     storm drain plans, $17,000 for a sewer plan, $9,000 for a water plan and $71,000 for street
5     improvement plans, all specifically for Tract 5472, all of which totals $115,000 (RT, at 318:21-
6     319:10; Exhibit D-250, see Okadigbo decl. ¶ 9, Ex. G);

7   • Evidence that Martin-McIntosh charged $308,419.37 altogether for all work performed on Tract
8     5472, which consisted of more than the preparation of the 5472 Map and improvement plans
9     (Exhibit J-4, see Okadigbo decl. ¶ 14, Ex. L; RT, at 300:18-301:2 (Plaintiff's testimony);

10  • Evidence that Martin-McIntosh received $240,766.18 for the work it performed on Tract 5472
11    (Exhibit J-4, see Okadigbo decl. ¶ 14, Ex. L [see column 92-22.04] (Martin-McIntosh's Account
12    Summary); RT, at 300:25-301:4 (Plaintiff's testimony));

13  • Evidence that only approximately $67,000 to $68,000 was left owing to Martin-McIntosh for the
14    work it completed on Tract 5472 (RT, at 300:25-301:11, 309:10:15, 331-332:12 (Plaintiff's
15    testimony); Exhibits J-4, see Okadigbo decl. ¶ 14, Ex. L [see column 92-22.04] (subtract total paid
16    of $240,776.18 from total invoice of $308,419.37 (Martin-McIntosh's Account Summary), J-100,
17    see Okadigbo decl. ¶ 15, Ex. M [column 92-22-04]); and

18  • Plaintiff's testimony that he did not anticipate using the improvement plans for Tract 5472 or the
19    5472 Map on any other tract of land when the map and plans were prepared (RT, at 310:13-25).

20                    ***b. A Willing Buyer Would Pay Plaintiff No More than $20,500.***

21    Focusing on what a willing buyer would pay Plaintiff for the actual use made by the defendant of the
22    plaintiff's work (Jury Instruction 42), it is clear that $20,500 is the highest amount Plaintiff could be entitled
23    to for the 5472 Map (Exhibit J-18, see Okadigbo decl. ¶ 10, Ex. H). This is the amount that DeWalt
24    charged and received from Northern for performing a topographical survey ($7,500), preparing a tentative
25    subdivision map ($5,500) and providing additional surveying services ($7,500) that, for sake of argument,
26    we assume were necessary to prepare the tentative map. Martin-McIntosh billed and received from the
27    Legacy Group less than this for preparing the 5472 Map -- $10,000. (Exhibit D-250, see Okadigbo decl. ¶
28    9, Ex. G; RT, at 316:22-318:20 (Plaintiff's testimony), 1073:1212-14 (closing argument by City's counsel)).

1  There is no other evidence of what a <u>buyer</u> would pay for either the 5472 Map or any subdivision map

2  specific to Tract 6451/5471.[2]

3      Plaintiff's testimony that his hourly rate doubled from 1992 to 2004 (RT, at 598:16-11), is irrelevant

4  because it is only evidence of what he hoped to receive for his work and not what a willing buyer would pay

5  for the 5472 Map and improvement plans specifically.[3]  Northern objected to his testimony about hourly

6  rates as irrelevant, but the Court overruled the objection.  (RT, at 601:2-5).  Plaintiff presented no evidence

7  of what a willing <u>buyer</u> would pay for <u>the actual use</u> Plaintiff claims Defendants made of the 5472 Map.[4]

8  Moreover, the 5472 Map was completed in 1992 and billed out at $10,000.  (Jury Instruction 17, Fact No.

9  13; Exhibit D-250, see Okadigbo decl. ¶ 9, Ex. G; RT, at 316:22-318:20, 320:4-11 (Plaintiff's testimony)).

10      The Legacy Group's payment of $10,000 for the 5472 Map and Northern's payment of $20,500 for all

11  work necessary to prepare the 6451 Map constitute the only evidence of what a <u>willing buyer</u> would pay for

12  a tentative subdivision map for Tract 5472/6451.  What is additionally clear is that Plaintiff's total actual

13  damages award should certainly not have exceeded the $308,419.37 that Martin-McIntosh billed for all

14  Tract 5472 work.  Of course, Plaintiff is not entitled to $308,419.37 because this amount encompasses

15  work beyond the value of the 5472 Map and improvement plans.

16                 **c. Based on the Evidentiary Record and on the Law, Plaintiff is Not Entitled**

17                     **to Any Actual Damages Award for His Infringement Claims Against the**
                    **City Relating to the Improvement Plans For Tract 5472.**

18      The jury found that the City infringed on the improvement plans, but that Northern, Lotus and DeWalt

19  did not.  The only evidence supporting Plaintiff's claim that the City infringed on the improvement plans is

20  that Dennis McNamara, the City's Senior Planner, distributed electronic copies of the plans to Greg Black,

21  then DeWalt's Director of Engineering.  (RT, at 532:2-7 (testimony of Dennis McNamara regarding

22  distribution of the plans), (RT, at 1018:20-24; 1020:18-21) (Plaintiff's counsel confirms in closing argument

23

24  [2] The suggestion that a willing buyer might pay Plaintiff $20,500 for the 5472 Map credits Plaintiff for work that Martin-McIntosh did not do on
the 5472 Map (e.g. reflecting topographical contour information and depicting completely the infrastructure improvements, such as block walls,

25  curbs, and gutters, in Tract 5472), but which DeWalt completed.  In this regard, the infrastructure improvements for Tract 5472 had not been
built when the 5472 Map was prepared and, therefore, for the most part, were not depicted in the 5472 Map. (RT, at 850:12-851:13, 851:23-25,

26  852:14-15) (testimony of Stephen Wong, the City's expert, regarding improvements that were reflected in 6451 Map but not on the 5472 Map)).
[3] The Court even noted the distinction between Plaintiff's valuation of the 5472 Map and improvement plans and the valuation a willing buyer

27  might pay when it stated: "what's the relevance of that, what he believed it was worth?  We are talking about what he is entitled to as a matter
of law.  What difference does it make what he believes if his belief is false?" (RT, at 255:1-4).

28  [4] Additionally, Plaintiff presented no testimony about the amount of hours it would take him to prepare a new tentative map for Tract 5472/6451.
He also presented no testimony that he would need to devote any time at all towards revising the 5472 improvement plans.

1    that Plaintiff's copyright infringement claims against the City are rooted in distribution of the 5472 Map and

2    plans); Verdict Form No. 8). Since the jury found that Northern, Lotus and/or DeWalt did not unlawfully

3    copy or use the plans, the City's distribution of the plans caused no harm to Plaintiff who, therefore, is not

4    entitled to recover any amount in actual damages for the improvement plans.

5        Considering actual damages for alleged unlawful distribution of the improvement plans, the question

6    becomes: what would a "willing buyer pay the [P]laintiff for the actual use made by [the City] of the

7    [P]laintiff's work?" (Instruction 42). Alternatively, the question is: did Plaintiff lose any license fees as a

8    result of the City's distribution of the improvement plans to DeWalt? (Instruction 42). The answers to these

9    questions are nothing and no, respectively.

10        With regard to the willing buyer test, in *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, the Ninth

11    Circuit unequivocally ruled: "[t]he test is what a [willing] buyer would have been willing to pay for *a use of a*

12    *plaintiff's work similar to the defendant's use.*" 772 F.2d at 513 (Italics added). Here, the use of the work

13    was the City's distribution of the improvement plans to DeWalt. There is no evidence that the City charged

14    DeWalt for the plans or that the City profited from any use of the plans. Testimony at trial established that

15    the plans were not needed since the improvements for Tract 5472/6451 had already been constructed.

16    (Jury Instruction 17, Fact No. 23 (City did not require submission or preparation of plans); RT, at 505:12-21

17    (testimony of Keith Woodcock, the City's former Planning Director). Absent any identifiable harm from

18    distribution of the improvement plans, Plaintiff is not entitled to recover any actual damages for the plans,

19    as the City's counsel argued during closing argument. (RT, at 1072:22-1073:11).

20        Copyright law borrows from tort principles of causation and damages. A plaintiff must prove that he

21    suffered a loss as a result of defendant's infringement. *See, e.g. Robert R. Jones Assocs. v. Nino Homes*,

22    858 F.2d 274, 281 (6th Cir. 1981); *see also* Instruction 41 (Plaintiff's burden to establish damages); *Harper*

23    *& Row, Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 567, 85 L.Ed. 2d 588, 105 S. Ct. 2218 (1985)

24    (plaintiff bears burden of proving that infringement caused loss of revenue); *Deltak, Inc. v. Advanced*

25    *Systems, Inc.*, 574 F.Supp. 400, 403 (N.D. Ill. 1983) (referring to normal tort damages principles in

26    discussion of copyright damages), *vacated on other grounds*, 767 F.2d 357 (7th Cir. 1985). Defendant must

27    establish that a loss would not have occurred <u>but for</u> the infringement. *Data General Corp. v. Grumman*

28    *Systems Support Corp.*, 36 F.3d 1147, 1170-1171 (1st Cir. 1994). Here, there is no evidence that Plaintiff

1   suffered harm from the City's distribution of the improvement plans. To the contrary, the jury's

2   determination that Northern, Lotus and DeWalt did not infringe on the improvement plans for Tract 5472

3   necessarily means that Plaintiff suffered no harm.

4        With regards to licensing fees, Plaintiff offered no evidence that he lost any licensing fees as a result of

5   distribution of the improvement plans. In fact, the record establishes that the City did not require DeWalt,

6   Northern and/or Lotus to submit improvement plans and, therefore, none of these parties submitted any

7   plans. (Jury Instruction 17, Fact No. 23). Furthermore, Plaintiff testified that he did not anticipate using the

8   plans for any other tract of land besides Tract 5472/6451. (RT, at 310:17-25.) Therefore, there is no basis

9   in the record to award Plaintiff any lost licensing fee for the plans.[5]

10       Plaintiff's failure to identify any harm from the City's distribution of the improvement plans means that

11  Plaintiff is entitled to no actual damage recovery for the plans. A manifest injustice would result if Plaintiff

12  were permitted to collect actual damages based on the value of the improvement plans.

13              ***d. Based on the Court's Declaration that Plaintiff Is Not Entitled to a Double
                Recovery, Plaintiff Should Not Receive More than $67,000 for All Work
14              Performed on Tract 5472.***

15       At trial the Court declared that Plaintiff was prohibited from a double recovery. Plaintiff was barred from

16  attempting to recover payments for work that Martin-McIntosh had already been compensated for. (RT, at

17  251:20-252:15, 256:19-25). The evidence establishes that Martin-McIntosh was still owed some $67,000

18  for all work relating specifically to Tract 5472. The Court's prohibition of double recovery should mean that

19  Plaintiff cannot possibly recover more than $67,000 for the 5472 Map and improvement plans since this

20

21  [5] If for some reason, the Court is inclined to award Plaintiff the value of the improvement plans for Tract 5472 despite this analysis, Plaintiff may
    not recover more than $115,000 in actual damages, consistent with Plaintiff's testimony regarding amounts that Martin-McIntosh billed/received
22  for some of the improvement plans for Tract 5472. (RT, at 318:21-319:10; Exhibit D-250, see Okadigbo decl. ¶ 9, Ex. G). This amount should
    even be further reduced to $44,000 on the ground that Plaintiff did not register the street improvement plans with the U.S. Copyright Office and,
23  therefore, is not entitled to recover the $71,000 that Martin-McIntosh billed for these plans. (RT, at 319:7-9 (Plaintiff's testimony that Martin-
    McIntosh billed $71,000 for street improvement plans)). See 17 U.S.C. § 411a (requiring that a plaintiff register copyrighted works before
24  bringing suit); Kodadek v. MTV Networks, 152 F.3d 1209, 2111 (9th Cir. 1998) (copyright registration is a prerequisite to filing suit). As a result,
    if the Court were inclined to award Plaintiff the value of the 5472 improvement plans even though Plaintiff is not entitled to such recovery in
25  actual damages, the maximum that Plaintiff may recover in actual damages for the plans decreases from $115,000 to $44,000. Although the
    issue of Plaintiff's failure to register the street improvements was not raised during argument at trial, the evidentiary record indisputably
26  establishes Plaintiff's failure to register these works. Plaintiff's former counsel, Kevin Lam, testified that the documents he registered with the
    Copyright Office on Plaintiff's behalf were contained in Exhibit P-108, see Okadigbo decl. ¶ 22, Ex. T. (RT, at 370:11-371:4). Exhibit P-108
27  does not include the street improvement plans for Tract 5472. Thus, the Court may deduct the $71,000 value of the street improvement plans
    from Plaintiff's actual damage recovery to avert a manifest injustice. See Mobil Oil Corp. v. Amoco Chemical Co., 915 F.Supp. at 1377 (trial
28  court amended plaintiff's lost profits damages award in a patent case to factor in calculations of the award that plaintiff neglected to introduce at
    trial so as to prevent a manifest injustice).

1   work is only a subset of the entire work Martin-McIntosh performed for Tract 5472. <u>To be clear, the City</u>

2   <u>contends that Plaintiff is entitled to no more than $20,500.</u> The City is merely pointing out that any amount

3   more than $67,000 is truly a windfall to Plaintiff.

4       In sum, the evidence does not support an award in actual damages over $20,500 ($20,500 for the 5472

5   Map and $0 for the improvement plans for Tract 5472) or even $67,000 (what Martin-McIntosh was still

6   owed for all work it completed on Tract 5472, which, again, is more than the 5472 Map and plans). Any of

7   these amounts is a far more just award than the $1.4 million that the jury awarded.

8  

9  

10  

**B. PURSUANT TO RULE 59(e), THE COURT SHOULD AMEND PLAINTIFF'S INFRINGER PROFITS AWARD OF $1.5 MILLION AGAINST THE CITY TO PREVENT A MANIFEST INJUSTICE AND/OR TO CORRECT A MANIFEST ERROR OF LAW.**

11       Plaintiff's claim for infringer profits alleged that (1) the City distributed a copy of the 5472 Map to

12   Northern through the Developer Information Package ("Package") and later sold two parcels of the Valley

13   Rose Estates that it had purchased for approximately $100,000 to Northern for approximately $1.6 million

14   (RT, at 1012:15-18) and (2) that the City received approximately $500,000 in impact fees from

15   Northern/Lotus as a result of processing DeWalt's allegedly infringing subdivision maps. (RT, at 1028:13-

16   21). In total, Plaintiff demanded $2.0 million in infringer profits. (RT, at 1032:11-16). The jury, however,

17   awarded Plaintiff $1.5 million in infringer profits, suggesting that it did not credit Plaintiff's contention that

18   the $500,000 in impact fees were profits.[6] By law, the City could not have collected impact fees if it had not

19   anticipated any actual or projected impacts from the Valley Rose Estates Subdivision on the City. *See*

20   Government Code §66000 *et seq.* (Mitigation Fee Act). Since the jury chose to award $1.5 million in

21   infringer profits, consistent with Plaintiff's argument that the City made $1.5 million in profits from sale of the

22   Valley Rose Estates parcels to Northern/Lotus and did not award Plaintiff the extra $500,000 that Plaintiff

23   demanded, the jury clearly concluded that the City's collection of impact fees did constitute profits. This

24   analysis, therefore, focuses on the wrongfulness of the jury's infringer profits award from the perspective of

25   the $1.5 million related to the sale of the two Valley Rose Estates parcels to Northern and/or Lotus.

26  

27

28

[6] James Zervis, City Manager and former Finance Director, testified that impact fees assessed for Tract 5472 were collected to reimburse the City for actual or projected costs to the City of servicing the subdivision on Tract 5472. (RT, at 550:24-551:24, 552:13-25, 747:13-750:10, 751:22-756:6; Exhibit J-84, see Okadigbo decl. ¶ 19, Ex. Q (Wasco Municipal Code §§13.06.020, 13.06.060, 13.06.070, 13.10.020, 13.10.040, 13.10.060, 13.10.070, 13.14.010, 13.16.010, 13.16.030, 13.16.040, 13.21.020, 13.21.050, 13.21.060, 16.44.020, 16.46.020 (process and purposes for collecting impact fees).

1    The jury awarded $1.5 million in infringer profits against the City because the City distributed the

2    Package containing the one page 5472 Map to Northern. Plaintiff was required to demonstrate a causal

3    link between the City's distribution of the 5472 Map and profits generated by the City from the property

4    sales to Northern but failed to produce any such evidence.   The record contains no evidence that the City

5    successfully sold parcels 1 and 3 to Northern because of the 5472 Map or that the 5472 Map influenced

6    Northern/Lotus' decision to purchase parcels 1 and 3. The jury's decision to award Plaintiff infringer profits

7    despite his failure to establish a causal nexus between infringement and profits was a manifest error of law.

8    Plaintiff stands to receive a $1.5 million windfall despite failing to meet his burden to prove the causal link

9    between infringement and profits, a clear instance of manifest injustice. Based on these reasons, the Court

10   should alter or amend the judgment so as to deny Plaintiff any recovery of infringer profits.

11   Title 17 U.S.C. § 504(b) provides for recovery of "any profits of the infringer that are attributable to

12   infringement." *See also* Instruction 43. Direct profits are profits generated by selling an infringing product.

13   *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 710 (9th Cir. 2004). Indirect profits consist of

14   revenue with a more attenuated nexus to infringement. *Id.* The instant case concerns indirect profits

15   because Plaintiff did not allege that any Defendant sold Map 5472 and/or the improvement plans for Tract

16   5472 and produced no evidence to this effect at trial.   To recover indirect profits, Plaintiff is required to

17   show "a causal relationship between the infringement and the profits generated indirectly by the

18   infringement." *Id*. at 710-711; *see also Mackie v. Rieser*, 296 F.3d 909, 914 (9th Cir. 2002); Instruction 43.

19   "When an infringer's profits are only remotely or speculatively attributable to infringement, courts will deny

20   recovery to the copyright holder." *Polar Bear* at 711; 4 Nimmer on Copyright § 14.03, 14-34.

21   Although, to establish infringer profits, a plaintiff must present proof of an infringer's gross revenue,

22   leaving it up to the infringer to establish deductible expenses, <u>plaintiff must first establish a causal nexus</u>

23   <u>between the alleged infringement and the gross revenue</u>. Plaintiff "must proffer some evidence ... [that] the

24   infringement at least partially caused the profits that the infringer generated as a result of infringement."

25   *Polar Bear*, 384 F.3d at 711; *Mackie*, 296 F.3d at 911. "Such an approach dovetails with common sense -

26   there must first be a demonstration that the infringing acts had an effect on profits before the parties can

27   wrangle about apportionment. To do otherwise would be inconsistent with both rudimentary principles of

28   tort law, to which copyright law is often analogized." *Mackie*, 296 F.3d at 915.

1    In *Polar Bear Productions, Inc. v. Timex Corp.*, the Ninth Circuit held that "a copyright owner is required
2    to do more initially than toss up an undifferentiated gross revenue number; the revenue must bear a legally
3    significant relationship to the infringement. " 384 F.3d at 711. The Court stated the purpose behind this
4    requirement – "this rule of reason 'obviates a good deal of mischief' in claiming profits beyond what might
5    be attributable to the infringement.'" *Id.* (quoting 4 Nimmer on Copyright § 14.03[B], 14-39).

6    Several cases have expounded on what it takes to satisfy the requirement of a causal connection
7    between profits and infringement and leave no doubt that, to establish an entitlement to profits, Plaintiff
8    must do more than simply allege that the City distributed the 5472 Map to Northern and received $1.5
9    million in profits from the sale of parcels 1 and 3 to Northern. Plaintiff must establish a causal nexus
10   between the distribution of the 5472 Map and the profits from the sale of properties to Northern.

11   In *Mackie v. Rieser*, plaintiff, an artist, sought infringer profits from the defendant symphony orchestra,
12   claiming the orchestra had, without his permission, incorporated his artwork into a promotional brochure
13   that advertised a concert series distributed to 150,000 persons. Plaintiff sought profits that the orchestra
14   generated during that concert series. The Ninth Circuit held that plaintiff failed to establish a causal link
15   between the infringing use of his artwork and revenues the orchestra generated by featuring his artwork in
16   its brochure. 296 F.3d 909. The *Mackie* court could "surmise virtually endless permutations to account for
17   an individual's decision to subscribe to [the concert series], reasons that have nothing to do with the
18   artwork in question." *Id.* at 916. A subscriber could have decided to subscribe because of the orchestra's
19   reputation, or the conductor's reputation, or a specific musician, or the concert dates, or the new symphony
20   hall, or simply a love of music, among myriad other reasons. *Id.* Plaintiff failed to provide concrete
21   evidence that any individuals subscribed to the concert series because of the plaintiff's artwork. *Id.*

22   In *Polar Bear Products, Inc.*, the Ninth Circuit affirmed that a plaintiff must establish a causal nexus
23   between infringement and profits to recover infringer profits. The defendant Timex used plaintiff's film
24   footage in commercials beyond the term specified in the parties' licensing agreement. The Ninth Circuit
25   declined to award plaintiff any of Timex's profits from watch sales because plaintiff failed to show that the
26   infringement influenced purchasing decisions of persons who bought Timex watches and increased sales
27   revenue as a result. 384 F.3d at 714-715. *See also O'Connor v. Cindy Gerke & Assocs.*, 300 F.Supp.2d
28   ///

15

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT CITY OF WASCO'S MOTION TO ALTER OR AMEND THE JUDGMENT,
OR, IN THE ALTERNATIVE, FOR A NEW TRIAL PURSUANT TO RULES 59 AND 60 OF THE FEDERAL RULES OF CIVIL PROCEDURE

1  759, 770-74 (W.D. Wis. 2002) (plaintiff had not shown a nexus between defendant's infringing use of his
2  copyrighted video to advertise newly constructed homes and the home sales).

3      In *Estate of Vane v. The Fair, Inc.*, 849 F.2d 186 (5th Cir. 1988), the defendant had hired the plaintiff, a
4  photographer, to prepare slides showing merchandise from defendant's retail stores for use in printed
5  advertising materials. Defendant later hired an advertising agency to produce TV commercials that
6  incorporated plaintiff's slides as well as substantial material from other sources. The commercials aired on
7  several TV stations. The plaintiff sued, alleging that he never authorized defendant to use his slides in TV
8  commercials and sought to recover defendant's infringer profits. Plaintiff introduced expert testimony to
9  establish the profits earned as a result of airing the TV commercials featuring the infringing material. The
10  Fifth Circuit concluded that plaintiff's expert failed to specify the amount in profits that was generated by the
11  defendant's infringement, as distinct from the amount in profits generated by the non-infringing aspects of
12  the commercials. 849 F.2d at 188. The court found that only eight seconds of a thirty-second commercial
13  contained plaintiff's infringing slides so that it would be irrational to attribute all profits generated by the
14  commercial to those slides. *Id*. at 189. The court also noted that, although the photographs of particular
15  items in the commercials undoubtedly played a role in producing sales, other aspects of the commercials,
16  such as the text of the voice-overs, general slogans or phrases promoting the retail store itself and the
17  overall concept of the commercial's message, undoubtedly affected sales. Plaintiff's expert simply failed to
18  prove the amount in profits that should be attributed to infringement as distinct from other possible causes.
19  *Id*. at 188-190. For this reason, the Fifth Circuit held plaintiff was not entitled to infringer profits. *Id*. at 190.
20      In *Masterson Marketing, Inc. v. SKL Recreation Corp.*, 495 F.Supp.2d 1044 (S.D. Cal. 2007), the
21  plaintiff, a photographer, sued several defendants for unlawfully duplicating photographs he had taken of a
22  resort and displaying them on various travel related websites. Plaintiff sought to recover in infringer profits
23  the revenue defendants attained from using the infringing images on their websites. Plaintiff introduced
24  expert testimony to establish the portion of sales to be attributed to using the infringing images. The trial
25  court, however, denied recovery of infringer profits, concluding that there was no admissible evidence
26  establishing that the infringing images actually caused the public to stay at the resort in question thereby
27  generating profits for defendants. *Id*. at 1051. The plaintiff's evidence regarding the causal relationship
28  between the infringing images in defendants' advertising and an increase in profits were speculative. *Id*.

1    Of particular note, the *Masterson Marketing* plaintiff actually attempted to establish the profits that

2    defendants made as a result of the infringement and retained an expert who tried to show the percentage

3    of attributable to infringement.  By rejecting the expert's methodologies as unduly speculative and by

4    denying infringer profit recovery, the *Masterson Marketing* ruling underscores the fact that a plaintiff must

5    do more than simply allege that his infringing works were used as part of a marketing campaign.

6    Again, in *Straus, Jr. v. DVC Worldwide, Inc.*, 484 F.Supp.2d 620 (S.D. Tex. 2007), the court denied

7    plaintiff's claim for infringer profits based on unauthorized use of his photographs for a smoking cessation

8    campaign.  The evidence revealed that plaintiff's photographs were a relatively small part of other

9    photographs used in the advertising campaign.  On these facts, the court denied any recovery of infringer

10   profits, holding that there was no basis to link the unauthorized and infringing uses of plaintiff's photographs

11   to the revenues which the defendant obtained from its smoking cessation products.  484 F. Supp. at 647.

12   Compared to the above cases in which the courts denied infringer profit recovery, here Plaintiff's

13   evidence of infringer profits is thinner and, thus, certainly does not justify an award of $1.5 million against

14   the City.  With respect to the profits from the sale of the Valley Rose Estates parcels, the record establishes

15   that the City distributed the Package, with a copy of the 5472 Map, to Northern.  (Exhibit J-10, see

16   Okadigbo decl. ¶ 16, Ex. N; RT, at 558:24-559:7 (testimony of Joe Wu)).  However, Plaintiff introduced no

17   evidence that the 5472 Map influenced Northern and/or Lotus to purchase parcels 1 and 3 of the Valley

18   Rose Estates.  Plaintiff did not ask Mr. Wu, Northern's President, whether his decision to buy the two Valley

19   Rose Estates parcels was motivated in whole or in part by the 5472 Map.  Mr. Wu merely testified that,

20   during the time period of the purchase, his primary concerns were purchasing 68 finished lots and deciding

21   when the time for developing the 5472/6451 tract was opportune.  (RT, at 562:22-563:1).  In sum, Plaintiff

22   failed to produce any evidence establishing a causal link between distribution of the 5472 Map to Northern

23   and Northern/lotus' decision to purchase the Valley Rose Estates parcels.

24   In addition to Plaintiff's failure to produce any evidence linking Northern/Lotus' decision to buy the

25   Valley Rose Estates parcels to the 5472 Map, Plaintiff also failed to produce any evidence that the profits

26   obtained by the City from the sale of these parcels were attributable in whole or in part to the distribution of

27   the 5472 Map.  The City's counsel raised this point during closing argument.  (RT, at 1061:21-1062:2).

28   ///

1    The evidence establishes that the City initially purchased parcels 1 and 3 collectively for $128,000

2    (Exhibit J-27, see Okadigbo decl. ¶ 17, Ex. O, Exhibit J-28, see Okadigbo decl. ¶ 18, Ex. P; Trial Transcript,

3    at 757:5-8) and sold them to Northern/Lotus for $1.6 million. (RT, at 757:1-3, 900:23-25, 926:24-25). The

4    record establishes that the City only kept approximately $239,000 of the sales proceeds, as testified by

5    James Zervis, the City Manager and former Finance Director. (RT, at 757:13-16; see also Exhibit J-72, see

6    Okadigbo decl. ¶ 20, Ex. R (copy of $239,000 check received from sales transaction between the City and

7    Northern/Lotus). The Court had previously granted Plaintiff's Motion in Limine No. 5, preventing the City

8    from introducing evidence of how the additional $1.3 million from the sale was disbursed. (RT, at 757:13-

9    758:3, 1099:25-1100:12; Order on Plaintiff's Motions in Limine, at 3-4, see Okadigbo decl. ¶ 7, Ex. E).

10    Besides the 5472 Map, the Package contains extensive information about the City, the Valley Rose

11    Estates in general and the parcels which Northern/Lotus purchased. The Package included a description

12    of the City's economy and the composition of its population [BP02334], information regarding the golf

13    course adjacent to Tract 5472/6551 [BP02336-37], a basic description of the six parcels of land within the

14    Valley Rose Estates, including Tract 5472 [BP02338] projected information about residential development

15    in the City [BP02341], an assessor's parcel map [BP02419], an ownership map [BP02420], a parcel map of

16    the entire 480 acres (parcel map 9572)[BP02421], a zoning map [BP02424], an aerial photo [BP02425], a

17    sewer map [BP02426], and a water map [BP02427]. (Exhibit J-10, see Okadigbo decl. ¶ 16, Ex. N; RT, at

18    558:24-559:2, 559:8-10).

19    Mr. Wu could have based his decision to purchase the properties from the City on any of this

20    information contained in the Package, besides the 5472 Map. Or, more likely, he could have bought the

21    parcels because of the infrastructure improvements in Tract 5472. The 5472 Map could not have aided him

22    in identifying underground infrastructure improvements (e.g. sewer and storm drains) because it does not

23    depict this information (RT, at 850:25-2 (testimony from City's expert, Stephen Wong); Exhibit J-131, see

24    Okadigbo decl. ¶ 21, Ex. S (5472 Map)). Above-ground improvements had already been constructed and,

25    therefore, were visible in the field. (Jury Instruction 17, Fact No. 16). Since Mr. Wu's business consists of

26    purchasing and completing incomplete subdivisions (RT, at 556:17-24), it is unlikely that he would have

27    relied on the 5472 Map to ascertain the extent to which above-ground improvements had been completed,

28    instead of inspecting the property himself or having it inspected. Furthermore, the City advised him that

1   Tract 5472 contained improvements, as testified to by Larry Pennell, the former City Manager (RT, at

2   724:10-14) and as documented in the purchase agreement between the City and Northern. (Exhibit J-7,

3   see Okadigbo decl. ¶ 21, Ex. S [Purchase and Sale Agreement, § 6.4, p.6]).

4        Lastly, some 65 acres (parcel 3) of the 98 acres that the City sold to Northern/Lotus (parcels 1 and 3)

5   were undeveloped agricultural land, as testified to by Mr. Wu (RT, at 561:25-562:4) and as described in the

6   Package (Exhibit J-10, p.5, see Okadigbo decl. ¶ 16, Ex. N). *See also* Exhibit J-27, see Okadigbo decl. ¶

7   17, Ex. O; Exhibit J-28, see Okadigbo decl. ¶ 18, Ex. P (evidence of the City's tax sale purchase of parcels

8   1 and 3 and acreage of each parcel). The 5472 Map could hardly have influenced Northern/Lotus' decision

9   to purchase the 65 acres of agricultural land when the map relates only to the subdivision being developed

10  on the 33 acres encompassing Tract 5472.

11       Plaintiff failed to meet his burden of proving that Northern/Lotus was motivated wholly or partly by the

12  5472 Map to buy the Valley Rose Estates parcels or that success of the sale to Northern was achieved

13  directly because of the 5472 Map. The City stressed this point during closing argument. (RT, at 1061:12-

14  1062:14; 1072:5-16). Plaintiff's failure to establish a causal link between infringement and profits means

15  that he is not entitled to the $1.5 million in infringer profits awarded by the jury and, thus, that a manifest

16  injustice would result if Plaintiff were to receive this sum. Furthermore, the jury's decision to award Plaintiff

17  infringer profits even though Plaintiff failed to prove the requisite nexus between infringement and profits

18  was a manifest error of law. Accordingly, the Court should alter or amend the judgment under Rule 59(e) of

19  the Federal Rules of Civil Procedure by denying Plaintiff any recovery of infringer profits.

20                    **C. AS AN ALTERNATIVE, THE COURT SHOULD ORDER A NEW TRIAL PURSUANT
                         TO RULE 59(a) BECAUSE THE DAMAGES ARE EXCESSIVE AND THE VERDICT**
21                    **IS AGAINST THE CLEAR WEIGHT OF THE EVIDENCE.**

22       The $1.4 million in actual damages and $1.5 million in infringer profits are excessive and against the

23  clear weight of the evidence. The City requests that the Court order a new trial pursuant to Rule 59(a) if the

24  Court is not inclined to alter or amend the judgment. A court may set aside the verdict on the ground that it

25  is against the clear weight of the evidence. *Marcano Rivera v. Turabo Medical Center Partnership,* 415

26  F.3d 162, 171 (1st Cir. 2005). A trial judge has a duty to set aside a verdict even if it is supported by

27  substantial evidence if the judge "is of the opinion that the verdict is against the clear weight of evidence; or

28  is based upon evidence which is false or will result in a miscarriage of justice ...." *Gill v. Rollins Protective*

1   *Services Co.*, 773 F.2d 592, 594 (internal quotes omitted). A verdict should be set aside if, after giving full

2   respect to the jury's findings, the judge "is left with the definite and firm conviction that a mistake has been

3   committed by the jury." *Landes Construction Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1371-1372

4   (9th Cir. 1987). A court may also set aside a verdict if damages are excessive. *Montgomery Ward & Co. v.*

5   *Duncan*, 311 U.S. at 251. A court does not presume that the verdict is correct, nor does it view evidence in

6   the light most favorable to the party in whose favor the verdict was rendered. *Landes Construction Co.,*

7   *Inc.*, 833 F.2d at 1371; *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985).

8       Plaintiff simply failed to establish the requisite causal nexus between infringement and profits from sale

9   of the Valley Rose Estates parcels. Additionally, the jury made a mistake insofar as its actual damages

10   award exceeds the value of the 5472 Map and improvement plans and allows Plaintiff a double recovery.

11   The actual damages and infringer profits awards are <u>against the clear weight of the evidence</u> and

12   <u>excessive</u> as stated herein and in the preceding argument. Therefore, the Court should order a new trial

13   pursuant to Rule 59(a) as an alternative to altering or amending the judgment.

14

15          **D.  AS AN ALTERNATIVE, THE COURT SHOULD ORDER A NEW TRIAL PURSUANT
16   TO RULE 59(a), BASED ON PLAINTIFF'S COUNSEL'S MISCONDUCT IN
     DELIBERATELY MISSTATING THE LAW DURING OPENING AND CLOSING
     ARGUMENT WHEN ARGUING THAT COPYING THE INFRASTRACTURE
17   IMPROVEMENTS, WITHOUT MORE, CONSTITUTES COPYRIGHT INFRINGEMENT
     AND/OR DEFEATS DEFENDANTS' INDEPENDENT CREATION DEFENSE.**

18       A trial court may order a new trial if it concludes that counsel for the prevailing party committed

19   misconduct that made it "reasonably probable that the verdict was influenced by prejudicial statements."

20   *Tesser v. Board of Education*, 370 F.3d 314, 321 (2d Cir. 2004); *Miksis v. Howard*, 106 F.3d 754, 764 (7th

21   Cir. 1997). Some courts have insisted that the party seeking a new trial "make a concrete showing that the

22   misconduct of counsel consistently permeated the entire trial from beginning to end." *Sutkiewicz v. Monroe*

23   *County Sheriff*, 110 F.3d 352, 361 (6th Cir. 1977). Here, Plaintiff's counsel committed misconduct by

24   arguing repeatedly during trial that DeWalt's depiction of the infrastructure improvements in the 6451 Map

25   was copyright infringement even if DeWalt derived this information solely from its field observations and/or

26   that copying infrastructure improvements, without more, defeated the defense of independent creation.

27   These were blatant misstatements of law that, in all likelihood, caused the jury to disregard comparisons

28   between the 5472 Map with the 6451 Map and to find DeWalt liable for copyright infringement merely

because it drew the infrastructure improvements.  Furthermore, although the Court ruled that Instruction 33

should be stricken, the instruction was included in the set of instructions provided to the jury, which only

enhanced the probability that the jury misused it to validate Plaintiff's counsel's misstatements of law.

Had Plaintiff's counsel not misstated the law, it is entirely possible that the jury might have found that

DeWalt did not copy the 5472 Map, which, in turn, would have absolved the City of contributory and

vicarious infringement liability.[7]  Plaintiff's counsel's pervasive misconduct in arguing either that copying the

infrastructure improvements, without more, was infringement or defeated the defense of independent

creation constitutes grounds for a new trial under Rule 59(a).

Plaintiff's counsel stated directly in their Trial Brief and during their opening statement at trial that, even

if the infrastructure improvements depicted in DeWalt's 6451 Map were derived from DeWalt's observations

in the field and not from copying the 5472 Map, DeWalt would still have infringed on Plaintiff's copyright.

(Plaintiff's Trial Brief, at 10: 10- 12: 6, see Okadigbo decl. ¶ 8, Ex. F; RT, at 142: 14-19).  Plaintiff's counsel

reasoned that the physical improvements derived from the 5472 Map and/or improvement plans for Tract

5472 and, therefore, copying the improvements was synonymous with copying the 5472 Map and/or

improvement plans   (Plaintiff's Trial Brief, at 10: 10- 12: 6, see Okadigbo decl. ¶ 8, Ex. F; RT, at 142: 14-

19).[8]

In response, the City urged that Plaintiff's position that copying the infrastructure improvements defeats

the independent creation defense was merely a different way of expressing the prior argument that copying

the infrastructure improvements was copyright infringement.  In this regard, the City stated:

> Independent creation is one of the main affirmative defenses to copyright
> infringement.  If Plaintiff's counsel's position were to prevail, it would essentially,
> give the plaintiff a copyright monopoly just because he happened to have
> expressed his ideas in a set of plans.  Anybody ad infinitum that goes out and
> draws what they see would be liable for copyright infringement under their
> position.  And they wouldn't be able to raise an independent creation defense
> because their position would be, essentially, that anybody else who wishes to
> develop that property must rip out the improvements and do something different
> altogether, and copyright law doesn't require that." (RT, at 817:10-22; see also
> 817:2-9 (argument by DeWalt's counsel to the same effect)).

[7] Although the jury also found Northern and Lotus liable for copying the 5472 Map, Plaintiff had conceded in closing argument that these
entities did not copy the 5472 Map.  (RT, at 1027:17-21).  Plaintiff introduced no evidence that either of these entities copied the 5472 Map.
[8] Plaintiff's counsel stated: "they copied what was on the ground. ....what was put on the ground came from our tract map and improvement
plans.  So by copying it, they were basically committing the act of infringement in order to make a new tentative tract map." (RT, at 142:14- 19).

1

2       The City's counsel further advised the Court that he feared that Plaintiff was going to argue to the jury

3   during closing argument that copying what was on the ground is the same as copying the original. (RT, at

4   946:1-2).[9] The Court confirmed that such an argument would be "an absolute misstatement of law." (RT,

5   at 950:2- 6; see 946:9- 947:25). After learning of the Court's position, Plaintiff's counsel twice confirmed

6   that Plaintiff would not argue that copying the infrastructure improvements constituted copyright

7   infringement. (RT, at 946:1- 2, 950:16- 17).[10] The Court then commented: "if an objection were made

8   under those circumstances, I would sustain it. I think I'm giving the plaintiffs a sizable hint here that would

9   not be a good thing for them to argue." (RT, at 951: 20- 23). Plaintiff's counsel once more confirmed that

10  they would not contend that copying the infrastructure improvements was copyright infringement. (RT, at

11  952:19-23, 953:8-14).[11] Finally, DeWalt's counsel stated: "if the jury were led to conclude that the law says

12  if you go out and survey existing facilities and put them into a map, you violated copyright, that's what I

13  don't want to have happen". (RT, at 953:21- 24). The Court responded: "I understand that, and I think I

14  have taken care of that." (RT, at 953:25- 954: 1).

15      The City also sought to strike Jury Instruction 33 on the ground that Plaintiff's counsel intended to

16  misuse it in furtherance of their argument that copying the improvements was infringement. (RT, at 811:6-

17  20). Instruction 33 reads: "[a] work is copied if a defendant copied if a defendant copied from a third work

18  rather than from the plaintiff's work if such third work was itself a copy of the plaintiff's work." Plaintiff's

19  counsel confirmed the City's counsel's suspicions that they intended to use Instruction 33 to argue that

20  copying the infrastructure improvements without more was copyright infringement. (RT, at 811:24-812:12,

21  814:7-18). Based on the Court's ruling that copying the improvements alone would not constitute

22  infringement and on Plaintiff's counsel's failure to identify a third work besides the improvements in Tract

23  5472, the Court granted the City's motion to eliminate Instruction 33. (RT, at 954:7).

24

25

26  [9] See also RT, at 945:12- 13 ("physical improvements in the ground are not third copies within the meaning of Instruction Number 33").
    [10] RT, at 950:16-17 ("I'm not going to argue that he violated the copyright by going out there and surveying it").

27  [11] Plaintiff's counsel stated: "If you believe it is in violation, then we simply won't make it [that argument]." (RT, at 952:19- 23). Plaintiff's
    counsel then added: "[w]ell, I mean we have the Court's – we have taken the Court's hint and we understand it, and we certainly won't go there

28  as far as anything that you say what not to argue." (RT, at 953:8-14).

1    In their initial closing argument, Plaintiff's counsel avoided stating that copying the improvements in the

2    ground was infringement or defeated the defense of independent creation. (RT, at 1007-1032). All three

3    defense attorneys then argued that DeWalt surveyed or drew what was on the ground. (RT, at 1037:22-

4    24, 1038:23- 24(Northern); 1065:21- 23, 1066:15- 20, 1067:9- 11 (Wasco); 1092:7- 17 (DeWalt)).

5    In the rebuttal phase of closing argument, Plaintiff's counsel, while discussing the independent creation

6    defense, stated: "[a]nd our position is, no, you didn't independently create it. **You went out and created it**

7    **by copying what was on the ground.** And, therefore, your creation was dependent, it was not

8    independent." (RT, at 1102:17- 20). DeWalt's counsel objected on the ground that Plaintiff's counsel

9    misstated the law. (RT, at 1102:21- 22). The Court denied the objection and/or declined to give a curative

10   instruction, stating instead: "the wording is not a misstatement of law. It doesn't go to the level of what we

11   were talking about from a legal standpoint. It's still within the parameter of argument, what he has just

12   stated. But let's not spend too much time on it so we don't cross the line." (RT, at 1102:23- 1103:4).

13   Plaintiff's counsel returned to their theme, stating: "**[b]ased on that, there was no independent**

14   **creation, therefore, there was no defense to the fact that the drawings were substantially similar or**

15   **had substantial similarities.**" (RT, at 1103:5- 8). Northern's counsel immediately objected and moved to

16   strike arguing: "that does go past the line when you tie it all together." (RT, at 1103:9- 12). Again, the

17   Court did not sustain the objection; did not strike the improper argument; and did not admonish Plaintiff's

18   counsel.[12] (RT, at 1103:123-21). Finally, although it was not read to the jury, the Court provided Jury

19   Instruction 33 to the jury to use during their deliberations. *See* Jury Instructions (Doc. No. 320).

20   There is a reasonable probability that any or all of the above-described developments prejudiced

21   Defendants' defense to liability by communicating to the jury that copyright infringement could be found

22   regardless of whether DeWalt ever even saw the 5472 Map and improvement plans merely because their

23   6451 Map depicted the improvements.

24   The defense of independent creation attempts to prove the opposite of a plaintiff's claim that a

25   defendant copied plaintiff's works. *Calhoun v. Lillenas Publishing*, 298 F.3d 1228, 1230 (11th Cir. 2002)

26

27   [12] Instead, the Court stated: "ladies and gentlemen, some of this is so close, it is very difficult, depending on what inferences one can draw,
such as you, the triers of the fact, that the legal issues are very, very difficult. And so I urge you that---we will send...the instructions with the

28   verdict form. So remember, the law is as it is in the jury instructions. Nobody can change that part. So let's go ahead and finish." (RT, at
1103:13- 21).

1  (under copyright law, "independent creation" is not an affirmative defense. Rather, independent creation

2  attempts to prove the opposite of the [plaintiff's] primary claim, i.e. copying ...") (citation omitted). Since a

3  claim of infringement concerns copyrighted works and not physical structures or observable facts, it follows

4  that the independent creation defense is intended to rebut a plaintiff's claim of infringement with respect to

5  the plaintiff's copyrighted works and not physical facts.

6      To state that the independent creation defense is not available to Defendants because they did not

7  originally conceive of the design of the improvements is the same as stating that Plaintiff has a copyright in

8  the improvements themselves and, therefore, can prevent others from going out into the field and drawing

9  their observations onto a map or that Plaintiff may copyright ideas. Both positions are unsustainable as a

10  matter of law. *See* Instruction 27 (copyright does not give the author the right to prevent others from

11  copying or using the underlying ideas contained in the work ... ideas cannot be copyrighted"); *see also*

12  *Morgan v. Hawthorne Homes, Inc.*, 2009 U.S. Dist. LEXIS 31456, *40-41 (W.D. Pa. 2009) (in the context of

13  architectural plans, copying the physical structure depicted in plans, without copying the plans themselves,

14  is not infringement); *Harper & Row Publishers, Inc. v. Nations Enterprises*, 471 U.S. 539, 547 (1985)

15  (copyright law does not authorize ownership of ideas and ideas cannot be copyrighted). The City made

16  these points in its Amended Trial Brief and at trial. (RT, at 817:13-22, 815:3-6; Amended Trial Brief, at 7-8,

17  see Okadigbo decl. ¶ 3, Ex. A).

18      The effect of Plaintiff's counsel's misrepresentations of law during his opening and closing statements

19  was to convey to the jury that infringement could be found merely because the 6451 Map and the 5472

20  looked similar; the jury need not bother evaluate evidence that DeWalt did not copy the 6451 Map and/or

21  improvement plans. Plaintiff's counsel's misstatements of law made it reasonably probable that the jury

22  found DeWalt liable for copyright infringement without even comparing the 5472 Map with the 6451 Map or

23  without properly considering DeWalt's evidence that it created the 6451 Map independently from the 5472

24  Map. The jury might well also have misused Instruction 33 to achieve these results. By failing to admonish

25  Plaintiff, the Court did not remedy the above-identified prejudice to Defendants' defense to copyright

26  infringement. *See Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385 (9th Cir. 1993) (after an objection, the

27  court's admonishment must be sufficient to remedy the prejudice).

28

1    In *Gruca v. Alpha Therapeutic Corp.*, 51 F.3d 638 (7th Cir. 1995), the court held that defendant's

2    counsel's improper remarks and the trial court's erroneous instruction substantially prejudiced plaintiffs and

3    compelled a new trial. The Seventh Circuit found that this misstatement of law could have directly resulted

4    in the jury's verdict in favor of defendants, that the resulting prejudice was clear and substantial and that the

5    district court abused its discretion in denying plaintiff's motion for a new trial. *Id.* at 645, 646. The same

6    situation is presented here. Independent creation is the only argument standing between Defendants

7    Northern, Lotus, DeWalt and the City (with respect to the vicarious and contributory infringement claims)

8    and a finding of infringement. Plaintiff's counsel's misstatements, that copying what was on the ground

9    eliminated independent creation and/or the copying the improvements without more is infringement, could

10   certainly have been a deciding factor in the jury's finding of infringement. The Court committed a

11   substantial error of law by failing to admonish Plaintiff's counsel to refrain from misstating the law as to the

12   effect of copying the infrastructure improvements from field observations and by giving Instruction 33 to the

13   jury. Therefore, a new trial is the mandated remedy.

14              **E.  AS AN ALTERNATIVE TO ALTERING OR AMENDING THE JUDGMENT, THE
                    COURT SHOULD ORDER A NEW TRIAL BASED ON PLAINTIFF'S COUNSEL'S**
15                  **MISCONDUCT IN ARGUING THAT PLAINTIFF WAS ENTITLED TO RECOVER
                    ACTUAL DAMAGES FOR WORK THAT MARTIN-MCINTOSH COMPLETED**
16                  **OUTSIDE OF TRACT 5472/6451.**

17   "A court has a right to expect that counsel will state controlling law fairly and fully; indeed, unless this is

18   done the court cannot perform its task properly." *Golden Eagle Distribution Corp. v. Burroughs Corp.*, 801

19   F.2d 1531, 1537 (9th Cir. 1986). Courts have granted new trials when the prevailing party's counsel

20   engaged in misconduct by misstating facts or the law. *See, e.g. Wharf v. Burlington Northern Railroad Co.*,

21   60 F.3d 631, 637-638 (9th Cir. 1995) (counsel's misconduct in misstating facts to the jury).

22   Here, Plaintiff's counsel misled the Court and the jury by contending that, as a matter of law, Plaintiff

23   was entitled to recover actual damages for the work that Martin-McIntosh performed on all 480 acres of the

24   Valley Rose Estates even though the law permits a recovery only for the <u>actual use made of a plaintiff's</u>

25   <u>work</u>, which, in this instance, is the amount that a willing buyer would pay for the 5472 Map and

26   improvement plans, not the amount that Martin-McIntosh billed for 480 acres of work. Plaintiff's counsel

27   ought to have known that Plaintiff was entitled to recover actual damages only for the 5472 Map and plans.

28   The Court's order granting the City's motion in limine to restrict Plaintiff's evidence of damages to the

1   amount that the Legacy Group paid Martin-McIntosh for the 5472 Map and improvement plans put

2   Plaintiff's counsel on notice of what Plaintiff was entitled to recover.  (RT, at 125:11-20; Order on Wasco's

3   Motions in Limine, see Okadigbo decl. ¶ 6, Ex. D).  Plaintiff's admission that Martin-McIntosh billed $1.1

4   million for work it performed on the entire 480 acres of the Valley Rose Estates further put Plaintiff's

5   counsel on notice that the 5472 Map and plans, as distinct from other work, could not possibly have cost

6   $1.1 million.  (RT, at 299:19-300:6; see also Exhibit J-4, see Okadigbo decl. ¶ 14, Ex. L).  Plaintiff's

7   concession that DeWalt did not need to perform any work outside of Tract 5472 to prepare the subdivision

8   maps for Tract 5472/6451 because Martin-McIntosh had already completed all other such work should

9   have further confirmed to Plaintiff's counsel that only the amounts billed for the 5472 Map and

10  improvements were relevant for purposes of calculating actual damages.  (RT, at 199:13-200:23).

11      Plaintiff's counsel also should have known that Plaintiff's actual damages recovery was limited to "the

12  amount a willing buyer would reasonably have been required to pay a willing seller at the time of

13  infringement for the actual use made by the defendant of the plaintiff's work," as stated in Jury Instruction

14  42.  In sum, when Plaintiff's counsel argued the work Martin-McIntosh performed on the 447 acres outside

15  of Tract 5472 was a necessary preliminary step to preparing map and plans for Tract 5472, they either

16  knew or should have known that this fact was irrelevant to the calculation of Plaintiff's actual damages.

17      Nevertheless, Plaintiff's counsel misled the Court and the jury by conflating the value of the work

18  performed on all 480 acres of the Valley Rose Estates with the work performed only the 33 acres

19  comprising Tract 5472.   Plaintiff's counsel's misconduct ultimately resulted in a $1.4 million award that

20  Plaintiff does not deserve as a matter of law.  Therefore, the Court should grant a new trial pursuant to Rule

21  59(a) of the Federal Rules of Civil Procedure as an alternative to altering or amending the judgment.

22
          **F. AS AN ALTERNATIVE, THE COURT SHOULD REVERSE ITS PRIOR RULING
          BARRING THE CITY FROM ASSERTING THE AFFIRMATIVE DEFENSE OF
23        PUBLICATION AND ORDER A NEW TRIAL PURSUANT TO RULE 59(a).**

24      Plaintiff's direct, contributory and vicarious infringement claims against the City were all premised on

25  the notion that the City unlawfully distributed the 5472 Map and improvement plans to Northern and

26  DeWalt, respectively.  This Court granted Plaintiff's motion for summary adjudication to strike the City's

27  publication defense.  The City respectfully disagrees and requests that the Court reverse the ruling on the

28

1    ground that the publication defense absolves the City of any liability for direct, contributory or vicarious
2    infringement insofar as these claims are premised on the City's distribution of the 5472 Map and plans.
3        Plaintiff failed to establish that the publication defense is inapplicable to distribution based infringement
4    claims against public agencies. All cases cited by Plaintiff involved instances in which the plaintiff sued
5    developers or engineers for copying architectural plans and not for distributing the plans. *See Kunycia v.*
6    *Melville Realty Co.*, 755 F.Supp. 566 (S.D.N.Y. 1990); *Intown Enterprises, Inc. v. Barnes,* 721 F.Supp.
7    1263 (N.D. Ga. 1989); *Del Madera Properties v. Rhodes & Gardner, Inc.*, 637 F.Supp. 262 (N.D. Cal.
8    1985); *Danielson, Inc. v. Winchester-Conant Properties, Inc.*, 186 F.Supp.2d 1 (W.D. Mass. 2002); *Smith v.*
9    *Paul*, 174 Cal.App.2d 744 (1959). The *Danielson* case even states that, upon submission of plans to a
10   governmental agency, "the issue is no longer whether the people will have *access* to the work, but rather
11   whether they may *copy* the work." 186 F.Supp.2d at 22. *Danielson*'s acknowledgement that the public
12   may continue to access copyrighted works submitted to governmental agencies is synonymous with the
13   position that a governmental agency may distribute works to the public as a public record under their public
14   records act and open meeting laws. As the public has a right of access to documents submitted to a
15   governmental agency, as *Danielson* acknowledges, then the public's underlying entitlement to these
16   documents authorizes a governmental agency to distribute them regardless of whether or not a request for
17   them has been made.
18       In this instance, the City is obliged to adhere to the Public Records Act, the Ralph M. Brown Act and
19   other statutes that treat maps and plans submitted to governmental agencies as records to which the public
20   is entitled.[13] (RT, at 518:20-21, 519:4-13, 519:19-21, 520:5-7) (testimony by Robert Wren, City's Deputy
21   Public Works Director), 728:2-731:3 [in particular 729:14-23, 730:2-21, 731:1-3] (testimony of Dennis
22   McNamara, Senior City Planner (describing map review and approval process as involving dissemination of
23   maps to public as required by law)). At trial, Plaintiff even testified that the improvement plans for Tract
24   5472 are public records because they were approved plans. (RT, at 340:6-10,342:22-25). The City's
25   expert, Stephen Wong, confirmed that approved improvement plans are public records. (RT, at 871:14-
26   872:12). California courts have confirmed that the right of access to public records does not depend on the
27
     ---
28   [13] Public Records Act (Government Code § 6250 *et seq.*); Subdivision Map Act (Government Code §66473 *et seq.*); Ralph M. Brown Act (Government Code § 54950 *et seq.*); Environmental Quality Review Act (Public Resources Code § 21000 *et seq.*); City of Wasco Municipal Code, § 16.16.

1   purposes for a document request is made, underscoring the point that the City's distribution of the 5472

2   Map and improvement plans in the absence of a public records request is immaterial. *See, e.g. County of*

3   *Santa Clara v. Superior Court*, 170 Cal.App.4th 1301, 1335 (2009) ("[b]y express legislative mandate, 'the

4   CPRA does not allow limitations on access to a public record based upon the purpose for which the record

5   is being requested, if the record is otherwise subject to disclosure'"); *see also* Government Code § 62757.5.

6   The City was authorized to distribute the 5472 Map and improvement plans under the Public Records Act.

7        Plaintiff's only stated reason for why the plans should be withheld from the public was that City had not

8   yet accepted the improvements for Tract 5472.  (RT, at 340:6-14).  Plaintiff's counsel offered no legal

9   authority in support of the position that, although improvement plans are public records, they may

10  nonetheless be withheld from the public until the improvements have been accepted and there is none.

11  The testimony that the plans were approved and that they are public records dovetails with the point that

12  they may be distributed without violating Plaintiff's copyright interests.

13       In *Certified Engineering, Inc. v. First Fidelity Bank*, 849 F.Supp. 318 (D. N.J. 1994), the only case

14  addressing whether improvement plans, as distinct from architectural plans, may be distributed after being

15  submitted to governmental agencies, the court concluded that the defendant was free to distribute the plans

16  since they had previously been submitted to governmental agencies for review and approval.

17       In response, Plaintiff might attempt to distinguish between distribution of maps and plans pursuant to a

18  Public Records Act request and distribution of maps and plans in furtherance of, for example, the City's

19  objectives to sell land.  Such a distinction is of no import.  Because the 5472 Map and plans are considered

20  public records under the Public Records Act, it is of no consequence whether or not they were distributed

21  pursuant to a request.  Based on the above, the City requests that the Court reverse its prior ruling

22  prohibiting the City from asserting the defense of publication and order a new trial pursuant to Rule 59(a).

23

24   ### G.  AS AN ALTERNATIVE, THE COURT SHOULD ORDER A NEW TRIAL BASED ON THE GROUND THAT THE COURT COMMITTED SUBSTANTIAL ERROR IN ADMITTING EVIDENCE OF NON-COPYRIGHTABLE ELEMENTS OF MAP 5472.

25

26       The City moved in limine seeking to restrict Plaintiff's evidence of copying as to the 5472 Map solely to

27  elements of the 5472 Map that are copyrightable as a matter of law.  Well established case law holds that

28  non-copyrightable elements of a plaintiff's work cannot be considered to determine whether a defendant's

1 | work is substantially similar to a plaintiff's work. *See, e.g. Feist Publications, Inc. v. Rural Tel. Serv. Co.*,
2 | 499 U.S. 340, 361 (1991); *Cavalier v. Random House*, 297 F.3d 815, 822 (9th Cir. 1994); *Harper House,*
3 | *Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 207-208 (9th Cir. 1989). Plaintiff's claim that the 6451 Map is
4 | substantially similar to the 5472 Map was based, in part, on similarities in street names, lot numbering, and
5 | tract boundaries. None of these features of the 5472 Map are copyrightable and, therefore, must be
6 | excluded from the analysis of whether the 6451 Map is substantially similar to the 5472 Map.

7 | The City's Motion in Limine No. 6 noted that Plaintiff had admitted in his deposition that Martin-
8 | McIntosh did not generate street names for the 5472 Map. As a matter of law, then, the street names are
9 | not original and/or copyrightable elements of the 5472 Map and should have been excluded as a factor to
10 | consider when comparing the 5472 Map with the 6451 Map. (Wasco Motion in Limine No. 6, see Okadigbo
11 | decl. ¶ 5, Ex. "C"). Similarly, the City's Motion in Limine No. 6 informed the Court that tract boundaries are
12 | not copyrightable elements of the 5472 Map because tract boundaries are part of a property's legal
13 | description and, thus, are not unique to the 5472 Map. Put differently, Plaintiff could not possibly have had
14 | a copyright interest that prevented DeWalt from depicting accurately the tract boundary for Tract 5472.
15 | Because the tract boundary for Tract 5472 was not a copyrightable element of the 5472 Map, the Court
16 | should have barred Plaintiff from using this evidence to make his case that DeWalt copied the 5472 Map.

17 | With respect to the numbers contained in the 5472 Map, numbers are not copyrightable and must also
18 | have been excluded in a substantial similarity analysis. *See e.g. Southco, Inc. v. Kanebridge Corporation,*
19 | 390 F.2d 276 (3rd Cir. 2004); *R & B, Inc. v. Needa Parts Manufacturing, Inc.*, 418 F.Supp.2d 684 (E.D. Pa.
20 | 2005). In *R & B, Inc.*, the court held that "numbers themselves do not reflect the minimal degree of
21 | creativity necessary for copyright protection." *Id.* at 695. Jury Instruction 31 recognizes that numbers are
22 | not original works. However, the Court should have directed Plaintiff's counsel not to refer to the
23 | similarities in lot numbering between the 6451 Map and the 5472 Map as evidence of copying since the lot
24 | numbering sequences are not copyrightable elements of the 5472 Map.

25 | The Court's denial of the City's Motion in Limine No. 6 substantially prejudiced the City and other
26 | Defendants by expanding the universe of features that the jury was allowed to consider to determine if the
27 | 6451 Map was a copy of the 5472 Map. Plaintiff's counsel repeatedly questioned witnesses about
28 | similarities in tract boundaries, street names and lot numbering between the 5472 Map and the 6451 Map

1    as evidence of copying.  (RT, at 185:10-13, 14-15 (Plaintiff's testimony), 542:8-15 (testimony of Gerald

2    Helt, City Engineer), 438:18-22, 442:8-10 (testimony of James Delmarter, Plaintiff's expert).  Had the

3    Plaintiff's counsel been instructed not to refer to each of these non-copyrightable elements of the 5472 Map

4    as evidence of copying, it is entirely possible that the jury might have found that DeWalt did not copy the

5    5472 Map, which, in turn, would have absolved the City of contributory and vicarious infringement liability

6    for DeWalt's alleged copying of the 5472 Map.  Based on the above, the City requests a new trial pursuant

7    to Rule 59(a) on the grounds that the Court committed a substantial error in admitting evidence of non-

8    copyrightable elements of Map 5472.

9    **IV.    CONCLUSION**

10    The City is well aware that Rule 59 relief is to be granted only in extraordinary circumstances and

11    not to give litigants a second bite at the apple.  However, extraordinary circumstances exist here in that

12    Plaintiff stands to receive a substantial award in damages that is excessive, against the clear weight of the

13    evidence and wholly unsupported by law and manifestly unjust.  For these reasons, the City respectfully

14    requests that the Court alter or amend the judgment under Rule 59(e) of the Federal Rules of Civil

15    Procedure to reduce Plaintiff's actual damages and infringer profits award.  Alternatively, the City requests

16    that the Court order a new trial pursuant to Rule 59(a) of the Federal Rules of Civil Procedure.  The City

17    also requests relief under Rule 60(b) of the Federal Rules of Civil Procedure based on the same grounds it

18    has asserted under Rule 59.

19    DATED:  May 20, 2010                    GCR, LLP

20

21

22                                        By:____/s/Chaka C. Okadigbo_____
                                              CHAKA C. OKADIGBO
23                                            SUSAN GRAHAM BARNES
                                              Attorneys for Defendant
24                                            CITY OF WASCO

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT CITY OF WASCO'S MOTION TO ALTER OR AMEND THE JUDGMENT,
OR, IN THE ALTERNATIVE, FOR A NEW TRIAL PURSUANT TO RULES 59 AND 60 OF THE FEDERAL RULES OF CIVIL PROCEDURE

1

## PROOF OF SERVICE

2    I, Chaka C. Okadigbo, declare that I am over the age of eighteen (18) and not a party to this

3    action. My business address is 520 South Grand Avenue, Suite 695, Los Angeles, CA

4    90071.

5    On May 20, 2010, I served **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**

6    **DEFENDANT CITY OF WASCO'S MOTION TO ALTER OR AMEND THE JUDGMENT, OR, IN THE**

7    **ALTERNATIVE, FOR A NEW TRIAL PURSUANT TO RULES 59 AND 60 OF THE FEDERAL RULES**

8    **OF CIVIL PROCEDURE** upon the following parties pursuant to the method described below:

9        (1)    Jeffrey A. Travis, Esq. at jtravis@bortonpetrini.com

10       (2)    James Braze, Esq. at jbraze@bortonpetrini.com

11       (3)    Steven J. Hassing at stevehassing@yahoo.com

12       (4)    William L. Alexander at walexander@alexander-law.com

13       **BY ELECTRONIC SERVICE:**    Pursuant to Fed.R.Civ.P.5(b)(2) and Local Court Rule(s), the

14   foregoing document will be served by the court via CM/ECF. Pursuant to the CM/ECF docket for this case

15   proceeding, the foregoing person(s) are on the Electronic Mail Notice List to receive ECF transmission at

16   the email address(es) indicated above.

17       I declare under penalty of perjury under the laws of the state of California that the above is true and

18   correct.

19       Executed, May 20, 2010, Los Angeles, California.

20

21

22                        /s/ Chaka C. Okadigbo
                      Chaka C. Okadigbo

23

24

25

26

27

28