1   BONIFACIO BONNY GARCIA (SBN 100761)
    CHAKA C. OKADIGBO (224547)
2   GCR, LLP
    520 SOUTH GRAND AVENUE, SUITE 695
3   LOS ANGELES, CA 90071
    Tel: (213) 347-0210
4   Fax: (213) 347-0216

5   Attorneys for Defendant CITY OF WASCO

6

7

8                    UNITED STATES DISTRICT COURT

9          EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

10

11   ROGER McINTOSH                    Case No: 1:07-CV-01080-LJO-GSA

12              Plaintiff,             DECLARATION OF CHAKA C. OKADIGBO IN
                                       SUPPORT OF DEFENDANT CITY OF WASCO'S
13         vs.                         MOTION TO ALTER OR AMEND THE JUDGMENT,
                                       OR, IN THE ALTERNATIVE, FOR A NEW TRIAL
14   NORTHERN CALIFORNIA UNIVERSAL     PURSUANT TO RULES 59 AND 60 OF THE
     ENTERPRISES COMPANY, INC., et al.,  FEDERAL RULES OF CIVIL PROCEDURE
15
                Defendants.
16

17

18         I, Chaka C. Okadigbo, state, and if so called, will testify as follows:

19         1.     I am an attorney for the defendant in the above-named case and have been responsible

20   for preparing, reviewing, instructing and conducting discovery and investigation into the facts surrounding

21   this case.

22         2.     I am duly licensed to practice in the courts of the State of California including the Eastern

23   District of California.

24         3.     Attached hereto as Exhibit "A" is a true and correct copy of the City of Wasco's Amended

25   Trial Brief.

26         4.     Attached hereto as Exhibit "B" is a true and correct copy of the City of Wasco's Motion in

27   Limine No. 2.

28

1   5.  Attached hereto as Exhibit "C" is a true and correct copy of the City of Wasco's Motion in

2 Limine No. 6.

3   6.  Attached hereto as Exhibit "D" is a true and correct copy of the Court's Order on Wasco's

4 Motions in Limine.

5   7.  Attached hereto as Exhibit "E" is a true and correct copy of the Court's Order on

6 McIntosh's Motions in Limine.

7   8.  Attached hereto as Exhibit "F" is a true and correct copy of Plaintiff's Trial Brief.

8   9.  Attached hereto as Exhibit "G" is a true and correct copy of Exhibit D-250 which was

9 introduced into evidence at trial.

10   10.  Attached hereto as Exhibit "H" is a true and correct copy of Exhibit J-18 which was

11 introduced into evidence at trial.

12   11.  Attached hereto as Exhibit "I" is a true and correct copy of Exhibit J-16 which was

13 introduced into evidence at trial.

14   12.  Attached hereto as Exhibit "J" is a true and correct copy of Exhibit J-1 which was

15 introduced into evidence at trial.

16   13.  Attached hereto as Exhibit "K" is a true and correct copy of Exhibit J-39 which was

17 introduced into evidence at trial.

18   14.  Attached hereto as Exhibit "L" is a true and correct copy of Exhibit J-4 which was

19 introduced into evidence at trial.

20   15.  Attached hereto as Exhibit "M" is a true and correct copy of Exhibit J-100 which was

21 introduced into evidence at trial.

22   16.  Attached hereto as Exhibit "N" is a true and correct copy of Exhibit J-10 which was

23 introduced into evidence at trial.

24   17.  Attached hereto as Exhibit "O" is a true and correct copy of Exhibit J-27 which was

25 introduced into evidence at trial.

26   18.  Attached hereto as Exhibit "P" is a true and correct copy of Exhibit J-28 which was

27 introduced into evidence at trial.

28

DECLARATION OF CHAKA C. OKADIGBO IN SUPPORT OF DEFENDANT'S MOTION TO ALTER OR AMEND THE
JUDGMENT OR IN THE ALTERNATIVE FOR A NEW TRIAL

1      19.    Attached hereto as Exhibit "Q" is a true and correct copy of selected excerpts of Exhibit J-

2  84 which was introduced into evidence at trial.

3      20.    Attached hereto as Exhibit "R" is a true and correct copy of Exhibit J-72 which was

4  introduced into evidence at trial.

5      21.    Attached hereto as Exhibit "S" is a true and correct copy of Exhibit J-7 which was

6  introduced into evidence at trial.

7      22.    Attached hereto as Exhibit "T" is a true and correct copy of Exhibit P-108 which was

8  introduced into evidence at trial.

9      I declare under penalty of perjury under the laws of the State of California that the foregoing is

10  true and correct.

11      Executed this 20th day of May, 2010, at Los Angeles, California.

12

13                           By:    /s/Chaka C. Okadigbo
                                  Chaka C. Okadigbo

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

<u>**PROOF OF SERVICE**</u>

2   I, Chaka C. Okadigbo, declare that I am over the age of eighteen (18) and not a party to this

3   action. My business address is 520 South Grand Avenue, Suite 695, Los Angeles, CA

4   90071.

5   On May 20, 2010, I served **DECLARATION OF CHAKA C. OKADIGBO IN SUPPORT OF**

6   **DEFENDANT CITY OF WASCO'S MOTION TO ALTER OR AMEND THE JUDGMENT, OR, IN THE**

7   **ALTERNATIVE, FOR A NEW TRIAL PURSUANT TO RULES 59 AND 60 OF THE FEDERAL RULES**

8   **OF CIVIL PROCEDURE** upon the following parties pursuant to the method described below:

9   (1)   Jeffrey A. Travis, Esq. at jtravis@bortonpetrini.com

10  (2)   James Braze, Esq. at jbraze@bortonpetrini.com

11  (3)   Steven J. Hassing at stevehassing@yahoo.com

12  (4)   William L. Alexander at walexander@alexander-law.com

13  **BY ELECTRONIC SERVICE:**   Pursuant to Fed.R.Civ.P.5(b)(2) and Local Court Rule(s), the

14  foregoing document will be served by the court via CM/ECF.  Pursuant to the CM/ECF docket for this case

15  proceeding, the foregoing person(s) are on the Electronic Mail Notice List to receive ECF transmission at

16  the email address(es) indicated above.

17  I declare under penalty of perjury under the laws of the state of California that the above is true and

18  correct.

19  Executed, May 20, 2010, Los Angeles, California.

20

21

22  /s/ Chaka C. Okadigbo

    Chaka C. Okadigbo

23

24

25

26

27

28

# EXHIBIT A

1  BONIFACIO BONNY GARCIA (SBN 100761)
   SUSAN GRAHAM BARNES (phv)
2  CHAKA C. OKADIGBO (224547)
   GCR, LLP
3  520 SOUTH GRAND AVENUE, SUITE 695
   LOS ANGELES, CA 90071
4  Tel: (213) 347-0210; Fax (213) 347-0216

5  Attorneys for Defendant CITY OF WASCO

6

7

8                  UNITED STATES DISTRICT COURT

9        EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

10

11  ROGER McINTOSH                    Case No: 1:07-CV-01080-LJO-WMV

12          Plaintiff,

13      vs.                           **DEFENDANT CITY OF WASCO'S
                                      AMENDED TRIAL BRIEF**
14  NORTHERN CALIFORNIA
    UNIVERSAL ENTERPRISES            Trial Date: March 1, 2010
15  COMPANY, INC., *et al.*,          Time:  8:30 a.m.
                                      Dept:  4 (LJO)
16          Defendants.               Honorable Lawrence O'Neill

17

18      The City of Wasco ("the City"), through counsel, submits the following Trial Brief.

19              **I.    STATEMENT OF THE CASE**

20      The parties have agreed to the following joint statement of the case.

21      This case is about copyrights. Plaintiff, Roger McIntosh, claims to own a copyright in a

22  Tract Map and Improvement Plans for Tract 5472. Plaintiff claims that his copyright has been

23  infringed. Defendants, and each of them, deny Plaintiff's claims.

24              **II.    STATEMENT OF FACTS**

25      The parties have agreed to a joint statement of facts, a copy of which is attached as

26  Exhibit A to this Brief. The evidence of the City and the other defendants[1] will include the

27  following additional facts.

28  _____
    [1] The City's co-defendants are referred to herein as "Lotus," "Northern," and "DeWalt."

1   At the time Lotus purchased Tract 5472 from the City, the improvements described in the
2   improvement plans for Tract 5472 prepared by McIntosh-Martin were completed.
3   The new tentative map prepared by DeWalt was independently created by DeWalt beginning
4   with a new survey, which was the basis for the information conveyed in its tentative and final
5   maps for renamed Tract 6451. The DeWalt maps depicted observable physical facts disclosed
6   by its own survey, including above ground improvements (curbs, gutters, sidewalks, lot corner
7   tags and monuments). The existing improvements and the decision of Lotus/Northern not to rip
8   them out account for some similarities between Revised Tentative Map 5472 (prepared by
9   Martin-McIntosh) and DeWalt's tentative map 6451, but the maps are not substantially similar.
10  The City had no conversations with any of the defendants about using Revised Tentative Map
11  5472 and/or the Martin-McIntosh improvement plans or about the methodology or processes
12  they would use to prepare tentative Map 6451. City officials had hoped that Lotus would come
13  up with a new, upscale design for the tract but did not impose any requirement as to what the
14  new design should be or whether the old improvements should remain in place.
15  City officials treated the tentative map and improvement plans as public records and
16  believed that it was appropriate to make them available to organizations interested in developing
17  the site. The prior improvement plans were part of the site history to which a developer and its
18  engineers would expect to have access under California's public records laws (California Public
19  Records Act).
20  Plaintiff demanded that Lotus/Northern pay him $300,000 up front as a condition of
21  preparing a new tentative map for the tract and then began monitoring development of the tract
22  rather than asserting his claimed rights. Plaintiff himself had placed a $10,000 value on Martin-
23  McIntosh Revised Tentative map long before making his $300,000 demand to Lotus/Northern.
24  The City did not know and did not have reason to know about any infringing activities
25  engaged in by any other party. The City had no ability to supervise or control any of those
26  alleged activities. After Lotus/Northern's purchase of the tract, the City's activities were limited
27  to those ordinarily required to review and approve the maps and plans for Tract 6451 submitted
28

1   by Lotus, Northern and DeWalt under its Municipal Code. The City was not an employer of, or

2   partner or joint-venturer with any of the co-defendants.

3       The City did not require Lotus/Northern to submit improvement plans because the

4   improvements were already in place. The City provided a copy of the plans to DeWalt after the

5   City had already approved Tentative Map 6451. The City did not use or rely on the improvement

6   plans for any purpose in connection with approving the tentative and final maps prepared by

7   DeWalt. There will be no evidence from which it can be inferred that the City intended to

8   encourage Lotus, Northern or DeWalt from infringing on Plaintiff's alleged copyright interests

9   and no evidence that the City itself intended to violate any copyright interest of the Plaintiff. The

10  City ultimately paid for the construction, installation and acquisition of the improvements on the

11  tract. The City has made no profit from the allegedly infringing activities of its co-defendants.

12  ### III.   SUMMARY OF POINTS OF LAW

13  **A.**    **LIABLITY**

14         1.    <u>Plaintiff Will Be Unable to Establish His Vicarious and Contributory</u>

15              <u>Infringement Claims Against the City Based on His Inability to Prove His</u>
    <u>Underlying Infringement Claims Against Northern, Lotus and/or DeWalt.</u>

16

17      For the sake of brevity and undue repetition, the City refers the Court to the arguments

18  made by counsel for DeWalt regarding Plaintiff's inability to establish his underlying

19  infringement claims against Northern, Lotus and DeWalt and to the merits of the independent
    creation defense.

20

21      The City further contends that because proof of direct infringement by a primary

22  infringer is a necessary precondition to establishing vicarious and contributory liability,

23  Plaintiff's inability to establish his underlying infringement claims against Northern, Lotus

24  and/or DeWalt necessarily absolves the City of any liability for contributory or vicarious

25  copyright infringement. *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 380 F.3d 1154,

26  1160 (9th Cir. 2004); *Contesssa Food Products v. Lockspur Fish Processing Co.*, 123 Fed.App.

27  747 (9th Cir. 2005).

28

1    **2.    Plaintiff Will Not Establish His Vicarious and Contributory Infringement
          Claims Against the City, Based on His Inability to Prove that the City Had**
2         **Actual or Constructive Knowledge of Any of the Infringing Activities
          Allegedly Engaged In By Defendants Northern, Lotus and DeWalt.**
3

4           Plaintiff's contributory infringement claim requires establishing that the City knew of the

5    allegedly infringing activities of Northern, Lotus and/or DeWalt and that it materially induced,

6    caused, or contributed to such conduct. *Perfect 10, Inc. v. Visa International Service*

7    *Association*, 494 F.3d 788, 795 (9th Cir. 2007). Plaintiff's vicarious infringement claim requires

8    him to establish that the CITY had the right and ability to supervise the allegedly infringing

9    activities of Northern, Lotus and/or DeWalt. *Id.* at 802. Plaintiff cannot establish these

10   foundational elements of his contributory and vicarious infringement claims.

11          With respect to the contributory infringement claim, Plaintiff will fail to meet his burden

12   of showing that the City provided the 5472 tentative map and improvement plans to Northern,

13   Lotus and/or DeWalt with the intent to encourage infringement. The City, on the other hand,

14   will offer evidence that its motive in providing maps and plans to any of the co-defendants was

15   to provide information about the Subdivision that it considered to be public records. Plaintiff

16   will fail to establish otherwise.

17          Regarding his vicarious infringement claim, Plaintiff will be unable to establish that the

18   City had an ability to supervise or control Northern, Lotus and/or DeWalt's allegedly infringing

19   activities. The City never intended to encourage infringement and was never informed that any

20   of the Defendants were allegedly copying or otherwise unlawfully using tentative map 5472

21   and/or the improvement plans. Plaintiff will not provide any evidence to suggest otherwise.

22   And, with respect to improvement plans, the City informed Northern and Lotus that

23   improvement plans were not needed to finalize the development of Tract 6451. For these

24   reasons, Plaintiff's vicarious infringement claims against the City fail.

25   ///

26   ///

27   ///

28   ///

**B.    DAMAGES**

    **1.    Anticipated Issues Regarding Plaintiff's Actual Damages Claim.**

       The parties have agreed on jury instructions (Form 17.23 of the Ninth Circuit Model Instructions) which unmistakably establish that actual damages is "amount a willing buyer would have been reasonably required to pay a willing seller at the time of the infringement for the actual use made by the defendant of the plaintiff's work." 17 U.S.C. § 504(b); *Mackie v. Rieser,* 296 F.3d 909 (9th Cir. 2002). Furthermore, the Court further ruled in the City's favor on a motion in limine seeking to prevent Plaintiff from introducing evidence of the value of maps and plans besides Tract 5472. Indeed, the Court specifically stated that Plaintiff is limited to putting on evidence of the monetary amounts which the prior developer (Legacy) paid Plaintiff for the Tract 5472 map and plans.

       Plaintiff, however, continues to insist on offering evidence of the value of other Subdivision work, arguing that such work created value in Tract 5472. Indeed, Plaintiff showed counsel for Defendants a demonstrative exhibit which he intends to offer at trial that alleges $1.1 million in actual damages even though the documentary evidence does not support a claim that a 1992 expired Tract 5472 map and a set of Tract 5472 improvement plans are worth that much. To the contrary, the contract between Plaintiff and Legacy established the value of Tract 5472 map and plans combined at $70,000. Whether or not Plaintiff's claim that his other Subdivision work created value for Tract 5472 is accurate, it is irrelevant. Both the law and the Court's order establish that Plaintiff's actual damages will consist of no more than the amount a willing buyer (Legacy) would pay for Tract 5472 maps and plans in the unlikely event that Plaintiff prevails on his infringement claims.

       Interestingly, Plaintiff is attempting to prevent Defendants from discussing the fact that he has been previously paid for Tract 5472 work, arguing that such evidence is irrelevant on the issue of whether or not Defendants infringed on his alleged copyright interests in Tract 5472 map and plans. Plaintiff, however, expects to be able to discuss his past work in the Subdivision and the costs of the work for purposes of inflating his actual damages estimate. He cannot have it both ways. If the Court is inclined to limit Defendants from commenting on the payments

1    Plaintiff received, it should also bar Plaintiff from putting on any evidence of damages beyond
2    that which establishes the value of Tract 5472 map and plans.

3          In any event, since the Court has stated that Plaintiff's actual damages is the amount
4    Legacy agreed to pay for Plaintiff's Tract 5472 map and plans, Defendants should be permitted
5    to introduce any evidence that establishes the value of Tract 5472 map and plans during the time
6    Martin-McIntosh prepared the map and plans.

7          2.    **Plaintiff Will Fail to Either Establish Profits on the Part of the City or Prove**
               **a Causal Relationship Between the Collection of Revenue from Tract 6451**
8               **and Any Infringement on the Part of the City.**

9          Plaintiff expects to establish that the City's collection of fees from Tract 6451 constitutes
10   profit within the meaning of 17 U.S.C. § 504.

11         Impact fees are not profits, as the City has argued extensively in its motion in limine in
12   which it sought to prevent Plaintiff from introducing evidence of the collection of such fees as
13   profits. The Court ruled that the issue is one of fact and not law. The City expects to convince
14   the jury that the revenue collected from the Subdivision cannot be construed as profits insofar as
15   it has been collected to reimburse the City for the actual or projected impacts of the development
16   on the City's existing resources.

17         Regardless, Plaintiff must also convince the jury that there is a sufficient causal
18   connection between "infringer profits" and infringement. *Polar Bear Productions, Inc. v. Timex*
19   *Corp.*, 384 F.3d 700 (9th Cir. 2004). Plaintiff will be unable to shore up his vicarious and
20   contributory infringement claims against the City. He will, therefore, face the insurmountable
21   task of proving that there is a causal nexus between the distribution of Tract 5472 map and plans
22   and the collection of fees from Tract 5472. When an infringer's profits are only remotely and
23   speculatively attributable to infringement, courts will deny recovery to the copyright owner. *Id.*
24   A failure to establish his contributory and vicarious infringement claims against the City
25   necessarily means that the City committed no wrongdoing in approving the allegedly infringing
26   map (DeWalt's 6451 tentative map). As such, Plaintiff will fail to establish that the collection of
27   impact fees is causally related to the distribution of Tract 5472 map and plans.

28

---

4838-4702-3621                           6

1       If Plaintiff can establish that the City distributed the Tract 5472 map and plans for free

2 but cannot prove that the City was responsible for any infringement on the part of Northern,

3 Lotus and/or DeWalt, then there is no causal link between the distribution of the map and plans

4 and the collection of fees from Tract 6451.

5                    **IV.**     **ANTICIPATED EVIDENTIARY ISSUES**

6     **1.**     <u>**Evidence of Prior Litigation**</u>

7       The Court granted Plaintiff's motion in limine which sought to bar any testimony or

8 evidence regarding Plaintiff's prior lawsuit against the City for breach of contract. The City does

9 not understand the Court to have forbidden the City from presenting evidence to impeach

10 Plaintiff's credibility with respect to his damages estimate. Plaintiff admitted during his

11 deposition that he told Joe Wu, the President of Northern, that he expected to be paid $300,000

12 in unpaid monies. He further admitted during his deposition that he expected to recover these

13 monies as damages in this litigation. Such testimony is impeachment evidence related to

14 Plaintiff's credibility as to the value of his map and plans under Rules 607 and 608 of the Federal

15 Rules of Evidence. Plaintiff's Trial Brief establishes that he intends to offer evidence that the

16 1992 expired tract map and the Martin-McIntosh set of improvement plans for Tract 5472 are

17 worth in excess of $1 million. *Plaintiff's Trial Brief*, p.13. This testimony is not supported by

18 the evidence and to the extent that Plaintiff intends to testify on such exaggerated sums,

19 Defendants should be permitted to challenge his credibility on the valuation of the Tract 5472

20 map and plans.

21

22     **2.**     <u>**Plaintiff's Claim that DeWalt Could Never Have Independently Created the**</u>
<u>**6451 Tentative Map Is Unsupported By the Law.**</u>

23

24       Plaintiff's Trial Brief takes the position that DeWalt could never have independently

25 created its own tentative map without tearing out the existing subdivision improvements and

26 starting afresh. *Plaintiff's Trial Brief*, pp. 10-12. Plaintiff's position, however, is not supported

27 by the law. Copyright law does not authorize the ownership of ideas and ideas cannot be

28 copyrighted. *Harper & Row, Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 547 (1985);

1   *Cooling Systems and Flexibles v. Stuart Radiator*, 777 F.2d 485, 491 (9th Cir. 1985).  Neither

2   facts nor the idea embodied in a map is protected by copyright.  *Mason v. Montgomery Data,*

3   *Inc.*, 967 F.2d 135, 140 (5th Cir. 1992).  Plaintiff cannot bar others from depicting observable

4   physical facts in the Valley Rose Estates Subdivision merely because he conceived of these facts

5   and put them in a map.  *See, e.g. Morgan v. Hawthorne Homes, Inc.*, 2009 U.S. Dist. LEXIS

6   31456, *40-41 (W.D. Pa 2009) (holding, in the context of architectural plans, that copying a

7   structure depicted in plans, without copying the plans themselves, is not copyright infringement).

8   In any event, under Plaintiff's construction of copyright law, anyone (even school children) who

9   draws on a piece of paper what he or she observes in the Subdivision would be found liable to

10  Plaintiff for copyright infringement even if he or she is unaware of Plaintiff's copyright interests

11  or of the existence of map and plans for the Subdivision.  This simply is not the law.

12  ///

13  ///

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

**3.   Evidence Related to the California Public Records Act.**

The City understands that the Court has rejected its public domain defense in which the City asserted that it could freely distribute maps and plans as public records under various California statutes, including the California Public Records Act, the California Environmental Quality Act, all of which provide, or require, that maps and plans be made available to the public as public records or for purposes of public hearings associated with their review. The City does not intend to revisit its public domain defense at trial. However, the City intends to offer witness testimony regarding the City's motive for distributing the Tract 5472 map and plans. Plaintiff's contributory infringement claim against the City requires him to establish that the City intended to encourage infringement by distributing the map and plans. *See Gershwin Publishing Corp. v. Columbia Artists Management, Inc.* 443 F.2d 1159, 1162 (2nd Cir. 1963) ("one who, with knowledge of infringing activity induces, causes, or materially contributes to the infringing conduct of another, may be held liable as a contributory infringer"). Evidence as to the City's rationale for distributing Tract 5472 map and plans is relevant to refute any contention that the City intended to encourage infringement. Plaintiff has also submitted special verdict instructions indicating that he intends to claim that the City engaged in willful copyright infringement. Evidence of the City's motive in distributing the 5472 map and plans will also be relevant to rebut Plaintiff's contentions under Rule 401 of the Federal Rules of Evidence.

DATED: February 20, 2010                          GCR, LLP

By: _____
CHAKA C. OKADIGBO
SUSAN GRAHAM BARNES
BONIFACIO BONNY GARCIA
Attorneys for Defendant
CITY OF WASCO

# EXHIBIT B

1    BONIFACIO BONNY GARCIA (SBN 100761)
     CHAKA C. OKADIGBO (SBN 224547)
2    GCR, LLP
     520 SOUTH GRAND AVENUE, SUITE 695
3    LOS ANGELES, CA 90071
     Tel: (213) 347-0210
4    Fax: (213) 347-0216

5    Attorneys for Defendant CITY OF WASCO

6

7

8                 UNITED STATES DISTRICT COURT

9        EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

10

11    ROGER McINTOSH             Case No: 1:07-CV-01080-LJO-WMV

12           Plaintiff,           **DEFENDANTS CITY OF WASCO,**
                                     **DEWALT AND NORTHERN**
13          vs.                 **CALIFORNIA UNIVERSAL**
                                       **ENTERPRISES COMPANY'S MOTION *IN***
14    NORTHERN CALIFORNIA       ***LIMINE* NO. 2 TO EXCLUDE EVIDENCE**
      UNIVERSAL ENTERPRISES      **OF ANY DAMAGES NOT RELATED TO**
15    COMPANY, INC., *et al.,*         **THE ALLEGED INFRINGEMENT OF**
                                       **TRACT 5472 MAPS AND PLANS;**
16           Defendants.        **MEMORANDUM OF POINTS AND**
                                       **AUTHORITIES IN SUPPORT THEREOF.**

17

18

19

20                      **MOTION *IN LIMINE***

21       Defendant CITY OF WASCO "the City", joined by Defendants Dennis D. DeWalt, Inc.

22    ("DeWalt") and Northern California Universal Enterprises, Company ("NCUE"), hereby moves

23    the Court to instruct Plaintiff ROGER McINTOSH and his counsel "Plaintiff", before trial and

24    selection of the jury in the above-entitled case, that he may not refer to, mention, comment

25    upon, or otherwise introduce into evidence at trial any evidence or testimony related to damages

26    other than those caused by the alleged infringement of subdivision map and/or improvement

27

28

1    plans for Tract 5472.[1]   This motion is made on the grounds that the prejudicial impact of such

2    testimony and evidence will outweigh any probative value of the same, and that such evidence

3    will confuse and mislead the jury.  Federal Rules of Evidence §403.

4         This motion is made on the memorandum accompanying this motion, the Declaration of

5    Chaka C. Okadigbo, on the papers and records on file herein, and on such oral and documentary

6    evidence that may be presented at the hearing on this motion.

7    DATED:  January 29, 2010                    GCR, LLP

8

9

10                                   By: _____

11                                        CHAKA C. OKADIGBO
                                          Attorneys for Defendant
12                                        CITY OF WASCO

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27   [1] The City contends that the improvement plans are not protected by copyright laws.  However, to the extent that this
     Court finds that the improvement plans are protected by copyright, the City respectfully requests that any evidence
28   of damages be limited to the improvement plans for Tract 5472.

     4836-0958-2341                          2
     DEFENDANTS CITY OF WASCO, DEWALT AND NORTHERN CALIFORNIA UNIVERSAL ENTERPRISES COMPANY'S
        MOTION *IN LIMINE* NO. 2 TO EXCLUDE EVIDENCE OF ANY DAMAGES NOT RELATED TO THE ALLEGED
     INFRINGEMENT OF TRACT 5472 MAPS AND PLANS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

## MEMORANDUM OF POINTS AND AUTHORITIES

I.   **INTRODUCTION**

In or about 1994, the Legacy Group hired Martin-McIntosh, a civil engineering firm, to prepare subdivision maps for a new housing development, the Valley Rose Estates Subdivision "Subdivision". Martin-McIntosh prepared subdivision maps and improvement plans for six 6 tracts of land within the Subdivision, including Tract 5472, the tract at issue in this litigation. Ultimately, Legacy was unable to complete the development of the Subdivision. Nevertheless, Legacy constructed the Subdivision improvements and filed Martin-McIntosh's tentative map for Tract 5472 "Map 5472". Northern California Universal Enterprises co. "NCUE" and Lotus Developments, LP "Lotus" subsequently purchased the property and, as part of their efforts to complete the development of the Tract 5472, hired Defendant Dennis W. DeWalt, Inc. "DeWalt" to prepare tentative and final maps for Tract 5472. DeWalt prepared tentative and final maps for Tract 6451, the same property encompassed by Tract 5472. Plaintiff claims that Defendants NCUE, Lotus and DeWalt copied and used Map 5472 to prepare the tentative and final maps for Tract 6451. Plaintiff further maintains that he owns all Martin-McIntosh maps and improvement plans for all six Subdivision tracts and, thus, Defendants infringed upon his copyright interests. The City is being sued on contributory and vicarious copyright infringement theories.

Plaintiff seeks actual damages and infringer profits from all Defendants. The City anticipates, however, that Plaintiff will attempt to introduce evidence of actual damages that moves beyond the fair market value of the Martin-McIntosh improvement plans and tentative map for Tract 5472. For example, the City anticipates that Plaintiff will attempt to recover as actual damages the value all work Martin-McIntosh performed for the Subdivision, even though his claims of infringement relate only to the map and plans for Tract 5472/6451. Any evidence of damages resulting from any work Plaintiff performed related to other tracts and for which he was not compensated is irrelevant, prejudicial and likely to confuse or mislead the jury. Moreover, as a matter of law, Plaintiff cannot recover as actual damages anything more than the

1   fair market value of the Martin-McIntosh improvement plans and tentative map for Tract 5472.

2   Accordingly, the CITY seeks a court order instructing Plaintiff that evidence of actual damages

3   must be restricted to the fair market value of Map 5472, the Martin-McIntosh improvement

4   plans for Tract 5472, and infringer profits derived from the use of Map 5472 and the Martin-

5   McIntosh improvement plans for Tract 5472.

6   **II.    ARGUMENT**

7       **A.    The Court Has Authority to Exclude Evidence.**

8           Pursuant to Rule 402 of the Federal Rule of Evidence, irrelevant evidence is

9   inadmissible in court.  Under Rule 403 of the Federal Rules of Evidence, "evidence may be

10  excluded if its probative value is substantially outweighed by the danger of unfair prejudice,

11  confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of

12  time, or needless presentation of cumulative evidence."  In this instance, evidence unrelated to

13  the fair market value of Map 5472 and/or the Martin-McIntosh improvement plans is irrelevant

14  to the recovery of actual damages and, thus, should be barred.  Furthermore, it would be

15  prejudicial to the City and confusing and misleading to the jury if Plaintiff if were permitted to

16  introduce evidence of unrelated damages because the jury would be presented with a grossly

17  inflated estimate of the damages at issue which would unfairly affect its evaluation of this case.

18  The proper measurement of damages is the fair market value of the copied map and/or plans,

19  thus the City's motion is well taken.

20      **B.    Plaintiff Is Entitled to Only Those Damages Arising Only From the
           Infringement of the Copyrighted Work.**
21

22          Pursuant to 17 USC §504a, a copyright owner is entitled to actual damages and/or profit

23  suffered as a result of the infringement.  "From the statutory language, it is apparent that a

24  casual link between the infringement and the monetary remedy sought is a predicate to recovery

25  of both actual damages and profits.  We take this opportunity to reaffirm the principle that a

26  plaintiff in a §504b action must establish this casual connection . . ." *Polar Bear Prods. v.*

27

28

1    *Timex Corp.* 384 F.3d 700, 708 9ᵗʰ Cir. Wash. 2004.  Hence, Plaintiff must limit his evidence to

2    any actual damages and any infringer profit attributable to the alleged copyright violation.

3            Plaintiff has stated in his deposition that his copyright was intended to relate only to

4    work performed for Tract 5472.  "It was my intent to copyright the work done for 5472, and all

5    related work that was necessary to support the tract."  McIntosh Dep. p. 40:3-5, December 18,

6    2008 Vol. I, see Okadigbo Decl. ¶ 3, Ex. A.  He specifically denies any intent to copyright any

7    of the work related to any other tract within the Subdivision.  McIntosh Dep., p. 55:20-56:1, see

8    Okadigbo Decl. ¶ 3, Ex. A.  Thus, any evidence of damages must be limited to damages related

9    to the infringement of maps and plans related to Tract 5472.  Furthermore, the evidence of

10    actual damages must be limited to the fair market value of the copyrighted material.

11         **1.**     **Actual Damages.**

12            In a case where the Plaintiff cannot claim a lost sale or lost opportunity as a result of an

13    infringement, the Plaintiff is limited to showing the fair market value for the use of the

14    copyrighted material.  "The question is not what the owner would have charged, but rather what

15    is the fair market value.  In order to make out his claim that he has suffered actual damage

16    because of the infringer's failure to pay, the owner must show that the thing taken had a fair

17    market value." *On Davis v. The Gap, Inc.* 246 F.3d 152, 166 2d Cir. N.Y. 2001.  Fair market

18    value is determined by "what a willing buyer would have been reasonably required to pay to a

19    willing seller for [the owner's] work" *Mackie v. Rieser* 296 F.3d 909, 917 9ᵗʰ Cir. Wash. 2002

20    internal citations omitted.  In determining the appropriate measurement for damages for the

21    infringement of plans that have already been used in a project, the courts have found that the

22    damages are the fair market value of the plans as revised to be used in the new project.  For

23    example, in *Aitken, et al. v. Empire Constr. Co.*, an architect was retained to create plans for an

24    apartment complex.  The developer, without the architect's permission, took the same plans and

25    used them to build another apartment complex. The court determined that Plaintiff's damages in

26    that case was limited to "the fair market value of its architectural **plans as revised for use in**

27    constructing the [second apartment complex]." *Aitken, Hazen, Hoffman, Miller, P.C. v. Empire*

28

1    *Constr. Co.* 542 F. Supp. 252, 264 D. Neb. 1982 emphasis added. The court went on to note

2    that the evidence did not show that the "revised set of plans were of any greater value than the

3    original set. Indeed, there being only one potential buyer for the plans and the ... plans being a

4    revised, rather than an original, set of plans, the ... plans may have been of less value." *Id* at

5    263-264. In this case, Plaintiff had already prepared the tentative map for Tract 5472 of the

6    Subdivision. Plaintiff is therefore limited to producing evidence with regard to what a willing

7    buyer would have reasonably paid Plaintiff for the revision of the tentative map and

8    improvement plans for Tract 5472.

9         2.    **Profits.**

10    Any profits claimed by Plaintiff must also be the result of the alleged infringement of

11   the tentative map and improvement plans for Tract 5472. " [I]t nevertheless remains the duty of

12   the copyright plaintiff to establish a causal connection between the infringement and the gross

13   revenue reasonably associated with the infringement." *Polar Bear* at 716. As noted above,

14   Plaintiff is limiting his claims to the infringement of the tentative subdivision map and/or the

15   improvement plans for Tract 5472 only. Not surprisingly, Plaintiff has failed to present any

16   evidence that the City has derived any profits from the alleged copying and/or use of any map

17   or improvement plans besides those relating to Tract 5472.

18    Because Plaintiff has failed to produce any evidence establishing a causal link between

19   infringer profits and any infringement concerning the other Subdivision tracts besides 5472, he

20   should be barred from introducing such evidence at trial.

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28

DEFENDANTS CITY OF WASCO, DEWALT AND NORTHERN CALIFORNIA UNIVERSAL ENTERPRISES COMPANY'S MOTION *IN LIMINE* NO. 2 TO EXCLUDE EVIDENCE OF ANY DAMAGES NOT RELATED TO THE ALLEGED INFRINGEMENT OF TRACT 5472 MAPS AND PLANS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

## III.    CONCLUSION

The CITY respectfully requests that this Court instruct Plaintiff that his evidence of actual damages must be limited to the fair market value of the revision and use of his subdivision map and improvement plans for Tract 5472 at the time of the infringement.  In addition, the City respectfully requests an instruction that any evidence regarding profit be limited to those profits that are attributable to the infringement.  And, to the extent that the improvement plans were not registered and/or are not copyrightable, the City respectfully requests that the Court instruct Plaintiff not to introduce evidence related to damages arising from the infringement of the improvement plans for Tract 5472.

DATED: January 29, 2010                         GCR, LLP


                                                By:_____
                                                    CHAKA C. OKADIGBO
                                                    Attorneys for Defendant
                                                    CITY OF WASCO

DEFENDANTS CITY OF WASCO, DEWALT AND NORTHERN CALIFORNIA UNIVERSAL ENTERPRISES COMPANY'S
MOTION *IN LIMINE* NO. 2 TO EXCLUDE EVIDENCE OF ANY DAMAGES NOT RELATED TO THE ALLEGED
INFRINGEMENT OF TRACT 5472 MAPS AND PLANS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

# EXHIBIT C

1   BONIFACIO BONNY GARCIA (SBN 100761)
    CHAKA C. OKADIGBO (224547)
2   GCR, LLP
    500 SOUTH GRAND AVENUE, SUITE 695
3   LOS ANGELES, CA 90071
    Phone: (213) 347-0210
4   Fax: (213) 347-0216

5   Attorneys for Defendant CITY OF WASCO

6

7

8                   UNITED STATES DISTRICT COURT

9           EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

10

11   ROGER McINTOSH                Case No: 1:07-CV-01080-LJO-WMV

12         Plaintiff,

13      vs.                   **DEFENDANTS CITY OF WASCO AND**
                                **DENNIS W. DEWALT, INC.'S JOINT**
14   NORTHERN CALIFORNIA        **MOTION IN LIMINE NO. 6 TO EXCLUDE**
    UNIVERSAL ENTERPRISES       **TESTIMONY RELATING TO**
15   COMPANY, INC., *et al.,*         **NONCOPYRIGHTABLE ASPECTS OF THE**
                                **COPYRIGHTED WORKS AT ISSUE;**
16         Defendants.            **MEMORANDUM OF POINTS AND**
                                **AUTHORITIES IN SUPPORT THEREOF**

17

18

19                        **MOTION IN LIMINE**

20       Defendant City of Wasco ("City"), joined by Defendant Dennis W. Dewalt,

21   ("Defendants") hereby move this Court for an order excluding all testimony and evidence

22   produced by Plaintiff's expert James Delmarter as it relates to the alleged substantial similarities

23   of the tentative and final subdivision maps ("Maps").

24       This motion is made based on Federal Rules of Evidence 401 and 402 prohibiting the

25   admissibility of evidence that is not relevant; and Federal Rule of Evidence 403 prohibiting

26   relevant evidence that is outweighed by the prejudicial nature of same.

27   */ / /*

28

1    This motion is made on this motion, the accompanying memorandum of points and

2  authorities, and the exhibits filed herewith, the papers and records on file herein, and on such

3  oral and documentary evidence that may be presented at the hearing of this motion.

4  DATED: January 29, 2010                    GCR, LLP

5

6

7                                      By: _____

8                                          CHAKA C. OKADIGBO
                                            Attorneys for Defendant
9                                           CITY OF WASCO

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION

The instant lawsuit alleges, among other claims, that, as part of their efforts to complete the development of the Valley Rose Estates Subdivision, Defendants Northern California Universal Enterprises Company ("NCUE"), Lotus Developments, LP ("Lotus") and Dennis W. DeWalt, Inc. ("DeWalt") (collectively, "Defendants") copied a tentative map (Map 5472) and a set of improvement plans which Plaintiff claims he owns. Specifically, Plaintiff contends that Defendants submitted a tentative map (Tentative Map 6451) to the City, that is "substantially similar" to Map 5472. In support this contention, Plaintiff alludes to several features of both maps which he claims to be identical – similarities in lot configurations, street names, Subdivision tract boundaries, lot numbering sequences, and number of lots – none of which are protected by copyright law.

Defendants request that the Court restrict Plaintiff from offering testimony on these non-copyrightable elements of Map 5472 because such testimony is irrelevant under Federal Rules of Evidence 401 and 402 and, further, is highly prejudicial under Federal Rule of Evidence 403.

### II.     THIS COURT HAS THE AUTHORITY TO CONSIDER AND GRANT MOTIONS IN LIMINE

A party may make a motion in limine prior to or during a trial, for the purpose of limiting the disclosure and use of evidence. This Court has the authority to grant motions in limine under the appropriate circumstances, which fall within the inherent authority of the court to manage trials. *See G. Heileman Brewing Co. v. Joseph Oat Corp.*, 871 F. 2d 648, 653 n.6 (7th Cir. 1989); *In re Japanese Elec. Products Antitrust Litigation*, 723 F.2d 238, 260 (3d Cir. 1983), *rev'd on other grounds, Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

/ / /

/ / /

/ / /

/ / /

# III.   ARGUMENT

## A.   Non-Copyrightable Elements of the Map And Plans at Issue In This Litigation Evidence Are Not Relevant And, Therefore, Should Be Excluded Pursuant to Rules 401 and 402 of the Federal Rules of Evidence.

Evidence is only relevant if it has a tendency to prove or disprove a fact that is of consequence to the determination of the action. Fed. R. Evid. 401. Evidence which is not relevant is not admissible. Fed. R. Evid. 402. In the context of this litigation, evidence that is irrelevant to determining whether or not Defendants copied Map 5472 is irrelevant and should be excluded. Defendants expects Plaintiff to attempt to establish that Defendants copied Map 5472 by referring to elements of Map 5472 that, as a matter of law, are not protected by copyright and are irrelevant in determining whether infringement occurred. For this reason, these elements should be excluded from the determination of whether Map 5472 is substantially similar to Map 6451.

Proof of copyright infringement requires showing that "constituent elements of the work that are original" were copied. *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Plaintiff's allegation that Defendants copied Map 5472 requires proving that Map 6451 is "substantially similar" to Map 6451. *Funky Films, Inc. v. Time Warner*, 462 F.3d 1072, 1076. To determine whether or not two works are substantially similar, one must filter out and disregard non-protectable elements of the copyrighted work at issue and inquire only as to whether the "protectable elements," standing alone are substantially similar. *Cavalier v. Random House*, 297 F.3d 815, 822 (9th Cir. 2002); *Apple Computer v. Microsoft*, 35 F.3d 1435, 1442-43, 1446 (9th Cir. 1994). A trier of fact cannot base an infringement decision on the un-protectable aspects of the plaintiff's work. *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 207-208 (9th Cir. 1989). The court must determine whether any of the allegedly similar features between the copyrighted work and the alleged copy are protected by copyright. *Apple Computer, supra*, 35 F.3d at 1443. After determining the alleged similarities, the court must then "define the scope of the plaintiff's copyright – that is decide whether the work is entitled to 'broad' or 'thin' protection. Depending on the degree of protection, the court must set the appropriate

1  standard for a subjective comparison of the works to determine whether, as a whole they are

2  sufficiently similar to support a finding of illicit copying." By purging general ideas and non-

3  protectable elements, the focus becomes the expression of ideas, and not the ideas themselves.

4  *Cavalier v. Random House, Inc.*, 297 F.3d 815, 823 (9th Cir. 2002); 17 U.S.C. § 102(b). In other

5  words, any trivial elements of compilation and arrangement are not protected by copyright since

6  they fall below the threshold of originality. *United States v. Hamilton*, 583 F.2d 448, 451 (9th

7  Cir. 1978). In fact, it is a well-settled principal that "copyright of a map does not give the author

8  an exclusive right to the coloring, symbols, and key used in delineating boundaries of and

9  locations within the territory depicted." *Id.* It is well established that copyright law does not

10  protect objective facts and ideas contained in published works. *Harper & Row, Publishers, Inc.

11  v. Nation Enterprises*, 471 U.S. 539, 105 S. Ct. 2218; *Cooling Systems & Flexibles, Inc. v. Stuart

12  Radiator, Inc.*, 777 F.2d 485, 491 (9th Cir. 1985). Furthermore, copyright protection does not

13  protect against independent creation of similar, even identical, works.

14      Here, Plaintiff expects to establish that the Map 5472 is substantially similar to Map 6451

15  insofar as both maps contain the same lot configurations, lot numbering system, street names and

16  tract boundaries. See Expert Witness Disclosure of James K. Delmarter, see Okadigbo decl. ¶

17  10, Ex. H; see also Delmarter Dep. 65:24-66:2, Feb. 2, 2009, see Okadigbo decl. ¶ 8, Ex. F.[1]

18  However, none of these alleged similarities are copyrightable aspects of Map 5472 and,

19  therefore, should be excluded from the analysis of whether or not Map 5472 is substantially

20  similar to Map 6451.

21      In fact, Mr. Delmarter acknowledges that DeWalt surveyed the Subdivision and that the

22  Subdivision improvements had already been constructed before DeWalt performed its survey.

23  Delmarter Dep. 66:11-12; 67:7-13; 73:8-12, see Okadigbo decl. ¶ 8, Ex. F. The street alignments

24  were necessarily part of the improvements in place at the time DeWalt performed its survey.

25  Delmarter Dep. 66:11-12; 66:15-19, see Okadigbo decl. ¶ 8, Ex. F; Government Code § 66419.[2]

---

[1] Plaintiff's expert, James Delmarter, does not intend to testify to any additional alleged similarities between Map 5472 and Map 6451 at trial. Delmarter Dep. 38:14-18; 74:24-75:2, see Okadigbo decl. ¶ 8, Ex. F.
[2] Government Code § 66419 defines improvements as refers to any street work and utilities to be installed, or agreed to be installed, by the subdivider on the land to be used for public or private streets, highways, ways, and easements.
4851-1278-1317

5

1    Mr. Delmarter further testified during his deposition that Plaintiff informed him that he (or
2    Martin-McIntosh) had placed physical objects in the Subdivision (lot corner tags and monument
3    boundaries) that identify the boundaries of the Subdivision and the lot boundaries. Delmarter
4    Dep. 66:20-21; 67:1-4; 69:20-25, see Okadigbo decl. ¶ 8, Ex. F. Mr. Delmarter also testified that
5    the lot configurations and the street alignments could not have been depicted any differently
6    from what was reflected in Map 5472 unless NCUE and/or Lotus decided to tear out the existing
7    improvements and redesign the Subdivision. Delmarter Dep. 66:15-19, see Okadigbo decl. ¶ 8,
8    Ex. F.

9        Based on the above, it is clear that the *idea* of the Subdivision street alignments is not a
10   protected element of Map 5472 because the streets had already been constructed in accordance
11   with the Martin-McIntosh improvement plans by the prior developer and, therefore, could be
12   observed in plain view by any person or entity, such as DeWalt, wishing to draw a map
13   reflecting the street layouts. Indeed, Mr. Delmarter acknowledges that DeWalt surveyed the
14   Subdivision.

15       Furthermore, the ideas of the tract boundaries and lot configurations are neither original
16   nor protected in this instance because, with the construction of the Subdivision improvements,
17   and placement of the lot corners and monument boundaries before DeWalt performed its survey,
18   these ideas could have been, and were, ascertained by DeWalt from existing ground conditions in
19   the Subdivision without copying Map 5472. Again, Plaintiff's expert concedes that DeWalt
20   prepared its own survey and that the lot configurations and tract boundaries of Map 6451
21   necessarily resemble those of Map 5472, unless NCUE was intent on ripping out the Subdivision
22   improvements and redesigning the Subdivision. Delmarter Dep. 55:2-6; 66:15-19, see Okadigbo
23   decl. ¶ 8, Ex. F. In any event, the tract boundaries are established by law and, thus, are bound to
24   reflect the same shape regardless of which person or entity depicts such information in a map,
25   assuming that NCUE did not intend to tear out the existing Subdivision improvements. As such,
26
27   _____
     as are necessary for the general use of the lot owners in the subdivision and local neighborhood traffic and drainage
28   needs as a condition precedent to the approval and acceptance of the final map thereof.
     4851-1278-1317                                    6

1  the Court should exclude any testimony regarding the similarities between Map 6451 and Map

2  5472 on the issue of tract boundaries and lot configurations.

3        On the issue of lot numbering, the copying of numbers is not a protected copyright

4  interest because a numbering system lacks the requisite element of creativity needed to justify

5  copyright protection. *Southco, Inc. v. Kanebridge Corporation*, 390 F.2d 276 (3rd Cir. 2004); *R*

6  *& B, Inc. v. Needa Parts Manufacturing, Inc.*, 418 F.Supp.2d 864 (2005). Thus, the fact that

7  Map 6451 and Map 5472 contain the same lot numbering sequence is irrelevant to the issue of

8  whether or not Defendants copied Map 5472.

9        Lastly, with respect to street names, Plaintiff conceded during his deposition that neither

10  he nor Martin-McIntosh conceived of the street names for the Subdivision.  McIntosh Dep.

11  165:23-166:9, Dec. 18, 2008, see Okadigbo decl. ¶ 3, Ex. A.  Plaintiff believes that the prior

12  developer of the Subdivision generated the street names.   McIntosh Dep. 165:23-166:9, see

13  Okadigbo decl. ¶ 3, Ex. A.  Thus, as a matter of law, Plaintiff never had a copyright interest in

14  the street names for the Subdivision and cannot rely upon a similarity in street names for his

15  claim that Map 5472 and 6451 are substantially similar. *Feist Publications, Inc.*, *supra*, 499 U.S.

16  at 361 (copyright protection applicable only to components of a work that are original to the

17  author).

18        Based on the above analysis, the Court should exclude evidence of a substantial similarity

19  between Map 6451 and Map 5472 that is rooted in similarities between lot configurations, tract

20  boundaries, street names and lot numbering sequences because such evidence is irrelevant

21  pursuant to Rules 401 and 402 of the Federal Rules of Evidence.

22     **B.**    **Pursuant to Fed. R. Evid. 403, Testimony Relating to Non-Copyrightble Elements Should Be Excluded On The Grounds That It Is Unnecessarily**

23                   **Prejudicial.**

24        Even if this Court determines that testimony relating to the non-copyrightable elements of

25  Map 5472, the Court should exclude the evidence based on the fact that its probative value is

26  substantially outweighed by the danger of unfair prejudice.  Fed. R. Evid. Rule 403.  The concept

27  expressed by Rule 403 embodies the principle that "[c]ourts have recognized that it is sometimes

28  

4851-1278-1317                      7

DEFENDANTS CITY OF WASCO AND DENNIS W. DEWALT, INC.'S JOINT MOTION IN LIMINE NO. 6 TO EXCLUDE
TESTIMONY RELATING TO NONCOPYRIGHTABLE ASPECTS OF THE COPYRIGHTED WORKS AT ISSUE;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1   desirable that such evidence, even though it may be relevant, should be excluded where the

2   minute peg of relevancy will be entirely obscured by the dirty linen hung upon it." *Lucero v.*

3   *Donovan*, 354 F.2d 16, 18, n. 2 (9th Cir. 1965) (citations omitted).

4          Here, as explained in the preceding argument, Plaintiff's evidence of the similarities

5   between Map 5472 and Map 6451 is based entirely on non-copyrightable aspects of Map 5472.

6   More importantly, Plaintiff's expert witness is prepared to testify that Map 5472 and Map 6451

7   are "substantially similar" even though he has no understanding of the meaning of "substantial

8   similarity" within the context of copyright law.  Delmarter Dep. 34:12-14, see Okadigbo decl. ¶

9   8, Ex. F; *and see* Expert Witness Disclosure of James K. Delmarter, see Okadigbo decl. ¶ 10, Ex.

10  H.  Cumulatively, Plaintiff's conclusion that Map 6451 and Map 5472 are substantially similar is

11  founded upon non-copyrightable elements of Map 5472 and is based on expert testimony that

12  will be irrelevant and highly confusing to a jury given his expert's lack of understanding of

13  substantial similarity.

14         The determination of whether or not two works are substantially similar requires

15  disregarding non-copyrightable elements of the maps, as stated above.  Plaintiff's expert clearly

16  did consider which aspects of Map 5472 are copyrightable before reaching his conclusion that it

17  is substantially similar to Map 6451.  Furthermore, he testified that the construction of the

18  Subdivision improvements and the setting of monument boundaries and lot corners by Plaintiff

19  dictated the manner in which DeWalt could depict this information, assuming that NCUE did not

20  wish to tear out the existing improvements.  However, he lacks any understanding regarding how

21  these facts relate to the ultimate determination of whether or not Map 6451 is substantially

22  similar to Map 5472.

23         Indeed, despite conceding that the Subdivision tract and lot boundaries could be

24  ascertained from existing field conditions and that DeWalt surveyed the Subdivision, Mr.

25  Delmarter is, nevertheless, prepared to testify that the two maps at issue are substantial similar

26  even though he is not aware that copyright law does not restrict DeWalt from depicting in Map

27  6451 its observations from the field.  *See, e.g. Morgan v. Hawthorne Homes, Inc.*, 2009 U.S.

28

4851-1278-1317                                      8

1    Dist. LEXIS 31456, 40-41 (2009) (copying a structure depicted in plans, without copying the

2    plans themselves, is not copyright infringement); *Ellya, Inc. v. Kohl's Department Stores*, 2006

3    U.S. Dist. LEXIS 66637, 28-29 (2006) (copyright protection does not extend to depiction of

4    physical objects).

5        Mr. Delmarter's testimony will be highly prejudicial to Defendants if offered at trial

6    because it would only mislead and confuse the jury on a critical issue of law. Accordingly, the

7    Court should Bar Plaintiff from presenting any evidence regarding a substantial similarity

8    between Map 5472 and Map 6451 that is based on non-copyrightable aspects of Map 5472. The

9    Court should also bar Plaintiff from introducing expert testimony on the issue of substantial

10    similarity, given that his expert does not understand the meaning of the term within the context

11    of copyright law and, as such, his testimony is likely to confuse and mislead the jury.

12   **IV.**     **CONCLUSION**

13        This Court should eliminate any and all evidence presented by Plaintiff relating to

14    substantial similarities of non-copyrightable elements of Map 5472 because this evidence

15    irrelevant. Even if this Court found that such testimony is in fact relevant, the prejudicial effect

16    of this evidence far outweighs any potential probative value.

17    DATED: January 29, 2010             GCR, LLP

18

19

20                                By: _____

21                                  CHAKA C. OKADIGBO

22                                  Attorneys for Defendant

                                   CITY OF WASCO

23

24

25

26

27

28

DEFENDANTS CITY OF WASCO AND DENNIS W. DEWALT, INC.'S JOINT MOTION IN LIMINE NO. 6 TO EXCLUDE
TESTIMONY RELATING TO NONCOPYRIGHTABLE ASPECTS OF THE COPYRIGHTED WORKS AT ISSUE;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

# EXHIBIT D

1

2

3

4

5

6

7

8          IN THE UNITED STATES DISTRICT COURT

9        FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    ROGER McINTOSH,                        CASE NO. CV F 07-1080 LJO GSA

12              Plaintiff,            **ORDER ON WASCO'S MOTIONS IN**
                                      **LIMINE**
13         vs.                        (Docs. 212-219.)

14    NORTHERN CALIFORNIA
      UNIVERSAL ENTERPRISES,
15    INC., et al,

16              Defendants.
                                    /
17

18         Defendant City of Wasco ("Wasco") filed eight motions in limine, in which defendants Northern

19    California Universal Enterprises Company, Inc. ("NCUE"), Lotus Developments, L.P. ("Lotus"), and

20    Dennis W. DeWalt, Inc. ("DeWalt") joined. Plaintiff Roger McIntosh ("Mr. McItnsoh") opposed seven

21    of Wasco's motions in limine. The parties' moving and opposition papers are clear. This Court needs

22    no oral argument on Wasco's motions in limine. This Court issues the following rulings on Wasco's

23    motions in limine and VACATES the February 12, 2010 hearing on Wasco's motions in limine.

24    **WASCO'S MIL[1] NO. 1 TO EXCLUDE EXPERT TESTIMONY AS TO SUBSTANTIAL**

25    **SIMILARITY OF MAPS 5472 AND 6451**

26         Wasco, joined by DeWalt, seeks to exclude the testimony of Mr. McIntosh's civil engineer expert

27

28    _____
      [1]        As used in the headings, "MIL" refers to motion in limine.

                                         1

1    James Delmarter ("Mr. Delmarter") that Maps 5472 and 6451 are substantially similar in that Mr.

2    Delmarter is unqualified to offer such opinion on an ultimate issue of law.

3         Wasco plays a game of semantics. Wasco does not argue that Mr. Delmarter is unqualified to

4    opine as to "substantial conformance" of Maps 5472 and 6451 in civil engineering parlance. Wasco

5    focuses on the copyright terminology of "substantial similarity." Wasco fails to demonstrate that Mr.

6    Delmarter plans to testify as to substantial similarity in a legal sense. Mr. Delmarter's testimony is

7    proper if limited to the civil engineering context of "substantial conformance." Mr. McIntosh offers Mr.

8    Delmarter's testimony as to substantial conformance and extrapolates that testimony to argue substantial

9    similarity. Wasco's points address the weight of Mr. Delmarter's testimony, not its admissibility.

10   Wasco fails to substantiate that Mr. Delmarter is unqualified to offer his opinion which envelopes

11   neither an ultimate issue nor a legal conclusion. Mr. Delmarter's opinion is neither irrelevant nor

12   unfairly prejudicial.

13                              ***ORDER***

14        This Court DENIES the motion in limine.

15   **WASCO'S  MIL  NO.  2  TO  EXCLUDE  DAMAGES  UNRELATED  TO  ALLEGED**

16   **INFRINGEMENT**

17        Wasco, joined by DeWalt and NCUE, seeks to limit Mr. McIntosh's damages to the fair market

18   value and infringer profits from the use of Map 5472 and the McIntosh improvement plans.[2]

19        The thrust of Wasco's motion attempts to limit Mr. McIntosh to actual damages/profits

20   connected to Tract 5472. 17 U.S.C. § 540(a) and (b) permits him to seek such recovery. Wasco points

21   to nothing concrete to suggest that Mr. McIntosh will seeks damages attributable to tracts other than

22   Tract 5472. The fair market value for Mr. McIntosh's Tract 5472 work can be demonstrated by what

23   Legacy Group, L.P., the original developer, agreed to pay. Evidence as to work for tracts other than

24   Tract 5472 is irrelevant.

25                              ***ORDER***

26        This Court GRANTS the motion in limine insofar as to LIMIT evidence as to Mr. McIntosh's

27

28   _____
     [2]      The "McIntosh improvement plans" refer to Mr. McIntosh's subdivision and landscape designs depicted in technical drawings which he claims are subject to his February 22, 2007 copyright registration certificate.

1   work for Tract 5472 only.

2   **WASCO'S MIL NO. 3 TO EXCLUDE EVIDENCE OF INFRINGEMENT AND DAMAGES AS**

3   **TO McINTOSH IMPROVEMENT PLANS**

4           Wasco, joined by DeWalt, seeks to exclude evidence of infringement and damages as to the

5   McIntosh improvement plans in that the plans are not subject to copyright registration and there is no

6   evidence of damages in connection with the plans.

7           This motion in limine contradicts the position which Wasco took to oppose summary judgment.

8   At summary judgment, defendants agreed that Mr. McIntosh's interests in the McIntosh improvement

9   plans were subject to copyright protection.

10          Mr. McIntosh is entitled to a rebuttable presumption of valid copyright registration for the

11  McIntosh improvement plans. "Under the copyright laws, the registration of a copyright certificate

12  constitutes prima facie evidence of the validity of a copyright in a judicial proceeding . . ." *Entm't*

13  *Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1217 (9th Cir. 1997). "To rebut

14  the presumption, an infringement defendant must simply offer some evidence or proof to dispute or deny

15  the plaintiff's prima facie case of infringement." *Entm't Research Group*, 122 F.3d at 1217.

16          "[I]nadvertent mistakes on registration certificates do not invalidate a copyright and thus do not

17  bar infringement actions, unless . . . the claimant intended to defraud the Copyright Office by making

18  the misstatement." *Urantia Found. v. Maaherra*, 114 F.3d 955, 963 (9th Cir. 1997). The presumption

19  of a registered copyright's validity may be overcome by "evidence or proof to dispute or deny the

20  plaintiff's prima facie case of infringement." *Entm't Research Group*, 122 F.3d at 1217.

21          A challenge to copyright registration invokes factual issues for the jury. Defendants are not

22  prohibited to challenge Mr. McIntosh's copyright registration as to the McIntosh improvement plans.

23                                    ***ORDER***

24          This Court DENIES the motion in limine.

25  **WASCO'S MIL NO. 4 TO EXCLUDE MR. McINTOSH'S ATTORNEY FEES**

26          Wasco, joined by DeWalt, seeks to exclude Mr. McIntosh's attorney fees given his belated

27  copyright registration.

28          17 U.S.C. § 412 precludes attorney fees as to "(1) any infringement of copyright in an

1   unpublished work commenced before the effective date of its registration; or (2) any infringement of

2   copyright commenced after first publication of the work and before the effective date of its registration,

3   unless such registration is made within three months after the first publication of the work."

4        Mr. McIntosh concedes that 17 U.S.C. § 505 attorney fees are unavailable to him given that he

5   delayed to register is copyright until February 2007. Evidence of attorney fees will be excluded given

6   the parties' agreement that Mr. McIntosh is not entitled to attorney fees under 17 U.S.C. § 505. Attorney

7   fees will reserved post-judgment depending on the jury's verdict.

8                                          ***ORDER***

9        This Court GRANTS the motion in limine to EXCLUDE evidence of attorney fees at trial.

10   **WASCO'S MIL NO. 5 TO EXCLUDE IMPACT FEES**

11        Wasco seeks to exclude evidence of its subdivision impact fees as profits recoverable under 17

12   U.S.C. § 504.

13        17 U.S.C. § 504(b) is "expansive enough to afford parties an indirect profits remedy under

14   certain conditions." *Mackie v. Rieser*, 296 F.3d 909, 914 (9th Cir. 2002). A "copyright holder must

15   establish the existence of a casual link before indirect profits damages can be recovered." *Mackie*, 296

16   F.3d at 914.

17        17 U.S.C. § 504(b) "creates a two-step framework for recovery of indirect profits: (1) the

18   copyright claimant must first show a causal nexus between the infringement and the gross revenue; and

19   (2) once the causal nexus is shown, the infringer bears the burden of apportioning the profits that were

20   not the result of infringement." *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 711 (9th Cir.

21   2004). "Thus a copyright owner is required to do more initially than toss up an undifferentiated gross

22   revenue number; the revenue stream must bear a legally significant relationship to the infringement."

23   *Polar Bear Productions*, 384 F.3d at 711. "To recover indirect profits, Plaintiff must establish a causal

24   relationship between the infringement and the profits generated indirectly from such infringement."

25   *Polar Bear Productions*, 384 F.3d 714, n. 10.

26        Wasco treats impact fees as a legal issue for this Court's determination. The impact fees are

27   potential indirect profits from alleged infringement. Wasco raises valid points that its impact fees are

28   tied to actual costs of particular infrastructure or services. However, such points reflect factual issues

4

1   for jury determination. Although Wasco is entitled to argue that impact fees are not profits, this Court

2   is not in a position to make a factual finding that they are not recoverable profits.

3                                           ***ORDER***

4         This Court DENIES the motion in limine.

5   **WASCO'S MIL NO. 6 TO EXCLUDE EXPERT TESTIMONY OF SUBSTANTIAL**

6   **SIMILARITY BASED ON LOT CONFIGURATIONS, STREET NAMES, TRACT**

7   **BOUNDARIES AND LOT NUMBERS**

8         Wasco, joined by DeWalt, seeks to exclude testimony of Mr. McIntosh's civil engineer expert

9   James Delmarter ("Mr. Delmarter") that Maps 5472 and 6451 are substantially similar based on shared

10  lot configurations, street names, subdivision tract boundaries and lot numbering which Wasco

11  characterizes as non-copyrightable elements.

12        In short, Wasco seeks a ruling as a matter of law that Maps 5472 and 6451's shared similarities

13  in lot configurations, tract boundaries, street names and lot numbering are not evidence of substantial

14  similarity. Wasco's points address the weight, not admissibility, of Mr. Delmarter's opinion. Mr.

15  McIntosh does not intend to establish substantial similarity based solely on Maps 5472 and 6451's shared

16  similarities in lot configurations, tract boundaries, street names and lot numbering. Such matters are

17  factual issues which arguably contribute to substantial similarity. Defendants may argue that they do

18  not.

19                                          ***ORDER***

20        This Court DENIES the motion in limine.

21  **WASCO'S MIL NO. 7 TO EXCLUDE CONVERSATION WITH UNIDENTIFIED WASCO**

22  **EMPLOYEE THAT DEFENDANTS USED THE McINTOSH IMPROVEMENT PLANS**

23        Wasco, joined by NCUE, seeks to exclude Mr. McIntosh's testimony that a Wasco employee told

24  Mr. McIntosh that defendants used and/or relied on the McIntosh improvement plans.

25        Wasco anticipates that Mr. McIntosh will attempt to testify that in November 2006, a Wasco

26  Public Works Department employee, whom Mr. McIntosh identified has the "head of the corporation

27  yard," told Mr. McIntosh that defendants used and/or relied on the McIntosh improvement plans to

28  complete the subdivision. Mr. McIntosh attributes the employee to state that Joseph Wu, a NCUE/Lotus

                                              5

1   principal, used the McIntosh improvement plans.

2        Mr. McIntosh is unable to identify the employee based on a list of employees at the Public Works

3   Department during December 1, 2005 to December 31, 2007.

4        Mr. McIntosh offers no credibility or trustworthiness for the purported employee comment about

5   use of the McIntosh improvement plans. The employee comment is inadmissible hearsay, and there is

6   no evidence that the employee had authority to bind Wasco.

7        This Court GRANTS the motion in limine to EXCLUDE evidence of Mr. McIntosh's

8   conversation with the Public Works Department employee.

9   **WASCO'S MIL NO. 8 TO EXCLUDE EVIDENCE OF WASCO'S EXTINGUISHMENT OF MR.**

10  **McINTOSH'S MECHANIC'S LIEN ON TRACT 5472**

11       Wasco seeks to exclude evidence that Mr. McIntosh's mechanic's lien on Tract 5472 for work

12  performed during its original development was extinguished by Wasco's tax sale purchase of Tract 5472

13  in 2002.

14       The parties agree that details of the City's acquisition of Tract 5472 and extinguishment of Mr.

15  McIntosh's mechanic's lien are irrelevant to warrant exclusion of such evidence.

16       This Court GRANTS the motion in limine to EXCLUDE evidence of the mechanic's lien

17  extinguishment.

18               **ORDER AS TO DUTY OF COUNSEL**

19       Counsel are cautioned against filing motions for reconsideration without legal prerequisites

20  firmly established. Failure of counsel to raise or articulate points or issues does not justify

21  reconsideration.

22       Counsel are discouraged from filing motions "for clarification" when such motions are nothing

23  more than a statement of disagreement with the Court's ruling and/or an attempt to modify the ruling.

24  Being surprised at the Court's ruling, no matter where the I.Q. chart's result lands, is not a basis for such

25  a motion.

26       During trial, the parties' counsel shall meet with the Court each morning prior to jury arrival to

27  address evidentiary issues and disputes. The jury will **NOT** be kept waiting. The Court will rule on

28  matters to the extent possible prior to commencement of trial each day out of the jury's presence. If such

1   ruling depends on receipt of testimony or other evidence, the Court will rule as appropriate upon the

2   receipt of such testimony or evidence.  If evidentiary problems are anticipated, the parties' counsel are

3   required to notify the Court immediately that a hearing outside the jury's presence will be required, but

4   should not expect such hearing while the jury waits in the jury room.  Such hearings will take place

5   before jurors arrive or after they depart.

6         Finally, should objections be made in front of the jury on a purported violation of a motion in

7   limine ruling, counsel are expected to object stating the **LEGAL** ground, followed by reference to the

8   number of the motion in limine (e.g., "Objection, relevance, violation of plaintiff's motion in limine no.

9   4.")

10        IT IS SO ORDERED.

11   **Dated:**      **February 10, 2010**              /s/ Lawrence J. O'Neill
                                                  UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7

# EXHIBIT E

1

2

3

4

5

6

7

8

**IN THE UNITED STATES DISTRICT COURT**

9

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11 | ROGER McINTOSH,                                     CASE NO. CV F 07-1080 LJO GSA

12 |                         Plaintiff,                 **ORDER ON PLAINTIFF'S MOTIONS IN LIMINE**

13 |         vs.                                        (Docs. 206-211.)

14 | NORTHERN CALIFORNIA
UNIVERSAL ENTERPRISES,
15 | INC., et al,

16 |                         Defendants.

17 | _____/

18          Plaintiff Roger McIntosh ("Mr. McIntosh") filed six motions in limine.  Defendants Northern

19 | California Universal Enterprises Company, Inc. ("NCUE"), Lotus Developments, L.P. ("Lotus"), Dennis

20 | W. DeWalt, Inc. ("DeWalt"), and City of Wasco ("Wasco") oppose Mr. McIntosh's motions in limine.

21 | The parties' moving and opposition papers are clear.  This Court needs no oral argument on Mr.

22 | McIntosh's motions in limine.  This Court issues the following rulings on Mr. McIntosh's motions in

23 | limine and VACATES the February 12, 2010 hearing on Mr. McIntosh's motions in limine.

24 | **MR. McINTOSH'S MIL[1] NO. 1 TO EXCLUDE WASCO EXPERT OPINION WHETHER MR.**

25 | **McINTOSH'S COPYRIGHTED WORKS AND MAP 6451 ARE SUBSTANTIALLY SIMILAR**

26          Mr. McIntosh seeks to exclude opinion of Wasco civil engineer expert Steven Wong ("Mr.

27

28 | [1]        As used in headings, "MIL" refers to motion in limine.

1

1   Wong") whether Mr. McIntosh's copyrighted works and Map 6451 are substantially similar as legal

2   conclusion beyond Mr. Wong's expertise.

3          Wasco appears to limit Mr. Wong's testimony as to his observations between Mr. McIntosh's

4   copyrighted works and Tentative and Final Maps 6451 without concluding that they are substantially

5   similar.   Wasco concedes that Mr. Wong is unqualified to opine on a legal conclusion that Mr.

6   McIntosh's copyrighted works and Tentative and Final Maps 6451 are substantially similar. As such,

7   Mr. Wong's testimony is properly limited to his observations between Mr. McIntosh's copyrighted

8   works, on one hand, and Tentative and Final Maps 6451, on the other hand, without concluding that they

9   are substantially similar.

10                                    ***ORDER***

11          This Court GRANTS the motion in limine insofar as to LIMIT Mr. Wong's testimony as to his

12   observations between Mr. McIntosh's copyrighted works, on the one hand, and Tentative and Final

13   Maps 6451, on the other hand, without concluding that they are substantially similar.

14   **MR. McINTOSH'S MIL NO. 2 TO EXCLUDE EVIDENCE OF PRIOR LITIGATION**

15          Mr. McIntosh seeks to exclude evidence that his former Martin-McIntosh partnership pursued

16   a breach of contract claim against Wasco arising from original developer Legacy Group, L.P.'s failed

17   original subdivision development.

18          Wasco fails to demonstrate how the prior litigation supports impeachment.   Wasco does not

19   identify the evidence it intends to use for impeachment and presumably such evidence is Mr. McIntosh's

20   settlement demands or agreed to settlement.

21          Wasco fails to address the relevance of Mr. McIntosh's prior, resolved breach of contract claim

22   – either for Mr. McIntosh's impeachment or motive to support a post-judgment award of attorney fees.

23   Wasco does not claim an offset based on amounts Mr. McIntosh received to settle the claim.  Evidence

24   of the prior claim would serve to disparage Mr. McIntosh and confuse issues.

25                                    ***ORDER***

26          This Court GRANTS the motion in limine to EXCLUDE evidence of Mr. McIntosh's prior

27   litigation and settlement.

28   ///

                                             2

1  **MR. McINTOSH'S MIL NO. 3 TO LIMIT DeWALT WITNESSES AS TO HOW TENTATIVE**

2  **AND FINAL MAPS 6451 WERE DRAWN**

3       Mr. McIntosh seeks to limit testimony as to drawing of Tentative and Final Maps 6451 to four

4  former or current DeWalt employees and to prohibit new witness testimony as to how details of Map

5  6451 were determined.

6       In the absence of DeWalt discovery responses to identify additional witnesses, testimony of

7  Tentative and Final Map 6451 drawing is limited to Jeff Gutierrez, Greg Black, Sarah Burgi and Josh

8  Woodward. However, these witnesses are not limited to their deposition testimony (as defendants claim

9  Mr. McIntosh seeks) but may be impeached with it.

10                   *ORDER*

11       This Court GRANTS the motion in limine to LIMIT testimony of Tentative and Final Map 6451

12  drawing to Jeff Gutierrez, Greg Black, Sarah Burgi and Josh Woodward but their trial testimony is not

13  limited to the scope of their deposition testimony.

14  **MR. McINTOSH'S MIL NO. 4 TO EXCLUDE DEFENDANTS' EXPENSES IN DAMAGES**

15  **PHASE**

16       If Mr. McIntosh proves defendants' willful copyright infringement during the liability phase, Mr.

17  McIntosh seeks to exclude deduction of defendants' expenses from their gross profits in the damages

18  phase.

19       Mr. McIntosh fails to substantiate his claim that defendants may not deduct expenses. 17 U.S.C.

20  § 504(b) provides: "In establishing the infringer's profits, the copyright owner is required to present

21  proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible

22  expenses and the elements of profit attributable to factors other than the copyrighted work." The statute

23  is contrary to Mr. McIntosh's position

24                   *ORDER*

25       This Court DENIES the motion in limine.

26  **MR. McINTOSH'S MIL NO. 5 TO EXCLUDE WASCO'S BOND DEBT AS A DEDUCTION**

27  **TO PROFITS**

28       If Mr. McIntosh proves copyright infringement, Mr. McIntosh seeks to exclude Wasco's bond

3

1   debts to deduct as an expense from profits.

2       The parties fail to quantify the bond debts. The bond debts were incurred years prior to alleged

3   infringement. Wasco fails to establish how bond debts incurred in the early 1990s are germane to Wasco

4   profits earned more than 10 years later. The bond debts are too removed and disconnected from alleged

5   profits from infringement to constitute deductible expenses.

6                                  *ORDER*

7       This Court GRANTS the motion in limine to EXCLUDE evidence of Wasco's bond debts.

8   **MR. McINTOSH'S MIL NO. 6 TO EXCLUDE SURVEYOR HEATH JAMES**

9       Mr. McIntosh seeks to exclude former DeWalt surveyor Heath James' testimony in that DeWalt

10  delayed until the pretrial statement witness list to provide James' correct name and address, and Mr.

11  McIntosh has not deposed James.

12      F.R.Civ.P. 37(c)(1) addresses failure to provide discovery disclosures or supplements and

13  provides:

14          If a party fails to provide information or identify a witness as required by Rule
            26(a) or (e), the party is not allowed to use that information or witness . . . at a trial,
15          unless the failure was substantially justified or is harmless. In addition to or instead of
            this sanction, the court . . .
16
            (A) may order payment of the reasonable expenses, including attorney's fees,
17          caused by the failure;

18          (B) may inform the jury of the party's failure; and

19          (C) may impose other appropriate sanctions, including any of the orders listed in
            Rule 37(b)(2)(A)(i)-(vi).
20

21      There is no indication that DeWalt fulfilled its affirmative duty to update or supplement its

22  discovery disclosures or responses to reveal James' place of employment to enable Mr. McIntosh to

23  subpoena James without undue effort or expense. The record before this Court suggests that DeWalt

24  desired to spring James' testimony without the benefit to Mr. McIntosh of James' deposition. The

25  proper recourse for DeWalt's failure to satisfy its F.R.Civ.P. 26(e)(1) obligations is to exclude James

26  as a witness.

27                                 *ORDER*

28      This Court GRANTS the motion in limine insofar as to exclude JAMES as a witness but denies

                                      4

1    other requested relief or sanctions.

2                           **ORDER AS TO DUTY OF COUNSEL**

3            Counsel are cautioned against filing motions for reconsideration without legal prerequisites

4    firmly established.   Failure of counsel to raise or articulate points or issues does not justify

5    reconsideration.

6            Counsel are discouraged from filing motions "for clarification" when such motions are nothing

7    more than a statement of disagreement with the Court's ruling and/or an attempt to modify the ruling.

8    Being surprised at the Court's ruling, no matter where the I.Q. chart's result lands, is not a basis for such

9    a motion.

10           During trial, the parties' counsel shall meet with the Court each morning prior to jury arrival to

11   address evidentiary issues and disputes.   The jury will **NOT** be kept waiting.   The Court will rule on

12   matters to the extent possible prior to commencement of trial each day out of the jury's presence.   If such

13   ruling depends on receipt of testimony or other evidence, the Court will rule as appropriate upon the

14   receipt of such testimony or evidence.   If evidentiary problems are anticipated, the parties' counsel are

15   required to notify the Court immediately that a hearing outside the jury's presence will be required, but

16   should not expect such hearing while the jury waits in the jury room.   Such hearings will take place

17   before jurors arrive or after they depart.

18           Finally, should objections be made in front of the jury on a purported violation of a motion in

19   limine ruling, counsel are expected to object stating the **LEGAL** ground, followed by reference to the

20   number of the motion in limine (e.g., "Objection, relevance, violation of plaintiff's motion in limine no.

21   4.")

22           IT IS SO ORDERED.

23   Dated:    **February 10, 2010**            _____**/s/ Lawrence J. O'Neill**_____
                                                  UNITED STATES DISTRICT JUDGE

24

25

26

27

28

                                                5

# EXHIBIT F

nr

1  James J. Braze, Esq.; SBN 75911
   Jeffrey A. Travis, Esq.; SBN 235507
2  BORTON PETRINI, LLP
   5060 California Avenue, Suite 700 (93309)
3  Post Office Box 2026
   Bakersfield, CA 93303
4  Telephone (661) 322-3051
   email: jbraze@bortonpetrini.com
5  email: jtravis@bortonpetrini.com

6  Attorneys for Plaintiff, Roger McIntosh dba
   McIntosh & Associates
7

8                    UNITED STATES DISTRICT COURT

9         EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

10

11  ROGER McINTOSH,                    Case No.  1:07-CV- 01080 LJO-GSA

12              Plaintiff,             PLAINTIFF, ROGER MCINTOSH'S
                                       TRIAL BRIEF PURSUANT TO LOCAL
13  v.                                 RULE 16-285

14  NORTHERN CALIFORNIA UNIVERSAL
    ENTERPRISES COMPANY, a California
15  corporation; LOTUS DEVELOPMENTS,
    LLP; THE CITY OF WASCO, a municipal
16  corporation; DEWALT CM, INC., a California
    corporation also doing business as DEWALT
17  CORPORATION; and DOES 1 through 10,
    inclusive
18
19              Defendants.

20
    CITY OF WASCO,
21
                Cross-Complaint,
22
        vs.
23
    NORTHERN CALIFORNIA UNIVERSAL
24  ENTERPRISES COMPANY, INC.,

25              Cross-Defendant.

26

27

28

                                    1

1

2                                    I.

3                    BRIEF STATEMENT OF FACTS[1]

4            Roger McIntosh was assigned a copyright interest from his prior firm, Martin-

5   McIntosh. ("MM")  This copyright interest encompassed technical drawings in the form of a

6   tentative map and supporting improvement plans.  These works were for a subdivision in the City

7   of Wasco.  When the developer with whom MM went bankrupt, the subdivision lay dormant for

8   many years and all rights to the engineering works supporting the subdivision were retained by MM

9   and, later, McIntosh through assignment.

10           Wasco later marketed and touted the subdivision as a benefit because of the existing

11  improvements and an expedited mapping process.  Northern California Universal Enterprises Co.

12  and Lotus Developments, LP ("Northern") jumped at the chance to purchase the subdivision since

13  all they needed to start building homes was a new map to replace expired map, 5472.  DeWalt was

14  the engineering firm hired by Northern to prepare the new map.  No one except Northern bothered

15  to contact McIntosh about permission to use his works and, when they did, ignored demands for

16  payment.  Instead, DeWalt prepared an infringing map, Wasco freely gave copies of the 5472 Map

17  and plans to whoever asked for it on the project, and Northern obtained copies so that they could

18  repair the decay that had set in on the subdivision.

19                                   II.

20                    EXPECTED EVIDENTIARY ISSUES

21      A.   Redemption and Dissolution Agreement Assigning the Rights to the Copyrighted

22  Work to Roger McIntosh

23           When Martin-McIntosh dissolved in 1999 a Redemption and Dissolution Agreement

24  was signed which assigned all assets in California to Roger McIntosh.  This is a large Agreement

25  and contains sales prices, client lists, and other information which plaintiff would like to keep

26  confidential, if possible.  There were only a few pages that address the transfer of assets issue, the

27  _____

28      [1]Defendant, Dennis W. De Walt, Inc. has filed a joint stipulation of facts on behalf of all
    parties.

                                         2

1  rest are mostly supporting documents.

2         The privacy issue was brought up to the parties in February of 2009 and all parties
3  stipulated to the document being "Attorney's Eyes Only" until this Court had a chance to review the
4  issue. As part of the stipulation, all parties conceded to its admissibility.  The entire document has
5  been made a part of plaintiff's exhibit list.

6     **B.**    **Costs Paid to Martin-McIntosh for Its Previous Engineering Work On the**
7  **Valley Rose Estates Project**

8         All defendant's exhibits and deposition testimony contain exhibits that list how much
9  Martin-McIntosh was paid for its engineering work back in 1992-1993.  Insofar as many of these
10  exhibits and testimony are introduced solely for the purpose of showing that he was paid for the
11  work, plaintiff will object to all such testimony and evidence.  This testimony and/or evidence has
12  no bearing on the fair market value of the work nor can they be presented for any other purpose than
13  to try and influence the jury into using those payments as weight against any actual damages or
14  infringer's profits, should liability be found.

15         Plaintiff also believes that these invoices and payments should be precluded in the
16  same way that bond debts and the prior litigation were precluded pursuant to this Court's Order on
17  plaintiff's Motion in Limine Nos. 5 and 2.

18     **C.**    **Summary Report of Deductible Expenses to Infringer's Profits by Joe Wu of**
19  **Northern/Lotus**

20         Plaintiff will not object to the foundation for most of the thousands of pages of
21  exhibits presented by Northern/Lotus as to possible deductible expenses related to any profits they
22  made for the sale of homes.  However, plaintiff will object to a condensed summary of these
23  expenses insofar as Mr. Wu, the person who created these summaries, goes outside his personal
24  knowledge as a general contractor to extrapolate estimated property values and sale prices.
25  Conveniently, he is expected to testify he will likely sell at a loss.  An expert opinion is required for
26  these estimated under F.R.E. 702.

27         Further, Mr. Wu's opinion on the ultimate profit he would make is an "ultimate issue"
28  on profits that is suspect and speculative. *Hester v. BIC Corp.* 225 F.3d 178, 182 (2nd Cir. 2002).

1  In effect, Mr. Wu will be telling the jury nothing less than what decision to reach in regard to any

2  profits, and so should be excluded. *Id.*

3

4       **D.**      <u>**Plaintiff's Rebuttal Expert Testimony of Jubin Merati**</u>

5              Plaintiff designated Jubin Merati as a rebuttal expert in June of 2008 as to any

6  expected measure of damages . At that time no profit and loss documents had been presented by

7  Northern/Lotus.  This documentation was supposed to have been provided pursuant to a noticed

8  deposition plaintiff sent to Northern/Lotus' counsel in June of 2009.  Counsel for Northen objected

9  to this notice.  Plaintiff filed a motion to obtain this deposition and Northern/Lotus agreed to the

10  request and this part of plaintiff's motion was withdrawn and filed with the Court in August of 2009,

11  *See, Doc. No. 93*.  This Court signed this stipulation, all parties had notice of this and no party

12  objected at any time.

13             Later, and because of counsel for Northern's scheduling issues all parties agreed to

14  produce documents related to the deposition at a time mutually agreeable to everyone in Turlock.

15  All parties were made aware of this via email and through a deposition notice that was sent on

16  December 9, 2009 for a deposition to be taken on December 17, 2009.  Again, no objections were

17  made.

18             Because of further scheduling issues for Northern's counsel and for convenience

19  because of the holiday's, all parties again agreed to continue the deposition until January 7, 2010.

20  Again, no objections were  made.

21             At the deposition on January 7, 2010, counsel for Wasco, for the first time, objected

22  that the deposition was outside the discovery deadline. *See, page 19 of January 7, 2010 deposition*

23  *of Joe Wu*. At no time before or after the deposition has any of the defendants attempted to notice

24  the deposition of Mr. Merati.  However, on February 15, 2010, less than two weeks before trial,

25  counsel for Northern sent an email to plaintiff's counsel stating in part:

26        "I need to take [Mr. Merati's] deposition to find out what opinions he has regarding

27        Lotus's costs and expenses. If not allowed to depose him, I will object to his taking the
          witness stand at trial. It is not unusual to be deposing experts within two weeks of trial, or

28        even during trial. Deny me this right to discovery at your client's peril."

1          Plaintiff only continued the previous depositions three times at <u>Northern's</u>

2   request, not his own.  <u>At no point did any counsel ever object to this continuance nor has any</u>

3   <u>party ever noticed Mr. Merati's deposition.</u> Plaintiff will therefore, oppose any motion to exclude

4   Mr. Merati's deposition for the foregoing reasons.

5       **E.**   <u>**Evidence of Prior Litigation and Settlement**</u>

6          This Court's Order on plaintiff's Motion in Limine No. 2 excludes evidence of

7   Mr. McIntosh's prior litigation and settlement.  Plaintiff has noticed that included in each of the

8   defendant's exhibit list are documents such as declarations, settlement agreements, prior

9   complaints, and other documents that show or allude to the prior litigation and/or settlement.

10   Plaintiff will object to these at trial based on this Court's prior order.

11   

**III.**
**BIFURCATION**

12          At the Pre-Trial conference in January of this year, defendant proposed

13   bifurcation.  This request was premised largely on the fact that Northern/Lotus was intending on

14   introducing into evidence roughly 6,000 pages of exhibits related to deductible expenses for the

15   costs of completing the homes.  During the parties' meet and confer per this Court's order

16   relating to preparing joint exhibits, it was agreed by all parties that most of these documents,

17   except for a single volume of accounting summaries, (*See, Part II.C, supra*) would not be

18   objected to by plaintiff thereby streamlining any damages phase, if necessary, and given this

19   Court's order that Northern could present these expenses.

20          At the meet and confer, counsel for Northern joined by DeWalt proposed that we

21   request the Court remove bifurcation and try all the issues at once.  It was believed that doing so

22   would move things along considerably.  All parties except Wasco agreed with doing away with

23   bifurcation.

24          Further, and while going through the exhibits during the meet and confer and

25   beyond, it was discovered that many of the exhibits contained damages related information

26   making any attempts at separating liability from damages practically impossible.  Additionally,

27   many of the witnesses' that plaintiff intends to call have testimony that will not take much time

28   on both liability and damages and so having them make two trips seems pointless.

1  For the above reasons, plaintiff would join with Northern/Lotus/DeWalt in their

2  impression that all of these issues can be dealt with more efficiently and in the interest of all

3  witnesses' if bifurcation was removed and all issues are tried jointly.

4

5

6  ## IV.
   ## COPYRIGHT VALIDITY

7  To establish validity of a copyright, a plaintiff need only submit a copyright

8  registration certificate to shift the burden of coming forward with additional proof of plaintiff's

   ownership of a valid copyright. *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140,
9
   1144-1145 (9th Cir. 2003). A certificate constitutes prima facie evidence of the validity of the
10
   copyright in fact stated in the certificate. *Ibid.*
11

12  Plaintiff will present evidence and testimony that he copyrighted the

13  5472 Tentative Map and Improvement Plans were the subject of a copyright registration

   certificate and the subject of a proper assignment. If defendants can present no evidence to
14
   contradict this testimony and evidence, plaintiff will request the court direct a verdict in
15
   plaintiff's favor. It is a general rule that the trier of fact is required to assume the existence of a
16
   presumed fact unless and until that fact supporting a presumption has been rebutted. *St. Mary's*
17
   *Honor Ctr v. Hicks, 509 U.S. 502, 509-510 (1993).*
18

19  ## V.
   ## LIABILITY

20  **A.** **Plaintiff Will Present Direct Evidence That Defendants Directly Infringed His Copyrighted Map and Plans.**

21  The copyrighted works comprise McIntosh's Tentative Map and Improvement

22  Plans for the Valley Rose Estates. The improvement plans support the 5472 Map and now also

23  support the 6451 Map. Plaintiff will present evidence that all defendants made copies of the

24  Tentative Map and Improvement Plans for their use in developing the Valley Rose Estates

25  Subdivision and without permission from Roger McIntosh. This will be evidence separate and

26  apart from indirect evidence of copying done by DeWalt.

27  **B.** **Plaintiff Will Present Indirect Evidence That Defendants Created Tentative Map 6451 and Which Was a Copy of Plaintiff's Works.**

28

1         Since direct evidence of copying is usually not available, a plaintiff can also

2  establish copying through indirect evidence.  A plaintiff can establish indirect evidence of

3  copying by showing that:  (1) The defendant had access to the copyrighted works; and (2) the

4  infringing and copyrighted works are substantially similar. *Transco, Inc. v. Ajac Transmission*

5  *Parts Corp.*, 768 F.2d 1001, 1018 (9th Cir. 1985), *cert. den.* 474, U.S. 1059, 986.  If a plaintiff

6  shows that the defendant had access to the plaintiff's work in that there was a substantial

7  similarity between the infringed and the infringing works, then a presumption of copying arises

8  which shifts the burden to the defendant to rebut or show that the alleged infringing work was

9  independently created. *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 486 (9th Cir. 2000).

10        In the Ninth Circuit, access and substantial similarity are inextricably linked by

11  what has been termed the "inverse ratio rule" *See, Three Boys Music Corp.*, 212 F.3d at 486.

12  This rule states that plaintiff only has a lesser showing of substantial similarity if there is a strong

13  showing of access. *Ibid.*  Further, and  if the two works are "strikingly similar," then access is

14  inferred. *Three Boys Music Corp., supra*, at 485.

15        At trial, plaintiff will show that there was complete access to McIntosh's works.

16  These works were then requested by each of the defendants and copies were made by each of the

17  defendants to develop the Valley Rose Estates Subdivision.

18        The two works are also substantially similar since the essential elements of the

19  original work were identically copied so that the final 6451 Map would be approved by the City

20  of Wasco so that Northern could sell lots and Wasco could collect fees.

21    C.    <u>Each of the Defendants Were Also Contributorily Liable for Infringing</u>

             <u>Plaintiff's Works</u>.

22

23        A defendant may be liable for copyright infringement engaged in by another if it

    knew or had reason to know of the infringing activity and intentionally adduced or materially

24

    contributed to that infringing activity. *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 261-

25

    263 (9th Cir. 1996).

26

27        It will be undisputed at trial that each of the defendants knew or had reason to

    know the infringing activity.  In fact, it was critical that each of the parties understood that a

28

1   6451 Map based upon the existing improvements had to be done in order for a final map to be

2   approved. This is why at trial it will be shown that each of the defendants materially contributed

3   to the infringing activity because each of them had their part to play in ensuring that the final

4   6451 Map met the previous conditions set out by Wasco.

5

6   **D.   Each of the Defendants Were Also Vicariously Liable for Infringing Plaintiff's Works.**

7           A party can be vicariously liable for the infringing acts of another when that party

8   profits directly from the infringement and also has the ability to supervise the infringing activity

9   even if the party initially lacked knowledge of the infringement. *Metro Goldwyn Meyer Studios,*

10  *Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005).

11          Both Wasco and Northern/Lotus enjoyed a direct financial benefit from the final

12  approval of Map 6451. Without such a map, Northern/Lotus could not sell lots and Wasco could

13  not collect fees. Further, without having the map and plans already approved and prepared,

14  Wasco would have had to sell for a lot less and Northern/Lotus would have had to buy for a lot

15  more, the Valley Rose subdivision.

16                                          **VI.**

17                      **AMENDMENT ACCORDING TO PROOF AT TRIAL**

18                      (Contributory Liability As to All Defendants)

19          Rule 15(b) of the Federal Rules of Evidence allows a party to conform a pleading

20  to proof for an issue not specifically raised by the pleadings. *FRCP 15(b)*. Courts are to "freely

21  permit" an amendment that aids in presenting the merits of a case and where there is no evidence

22  that is to be introduced that would prejudice a defense on the merits. *Id.* Courts usually grant

23  amendment unless an opposing party can show bad faith, undue delay, unfair prejudice, or futility

24  of the amendment. *See, e.g., FilmTec Corp. v. Hydranautics*, 67 F.3d 931, 935 (Fed. Cir. 1995).

25          Plaintiff filed a direct infringement claim against all defendants. Plaintiff only

26  filed a contributory infringement claim against the City of Wasco. During the meet and confer

27  process with opposing counsel before trial, defendants were given notice that plaintiff would, at

28  the close of trial, make a motion to amend the pleadings to conform to proof for contributory

1   liability against Northern/Lotus and DeWalt. This was discussed at length and led to an

2   agreement that the special verdict form would include only the City of Wasco but that if this

3   Court grants the motion to amend, identical language could be used to include the remaining

4   defendants for a finding of contributory liability.

5          Here, there is almost identical evidence and issues at trial that would allow the

6   same allegation of contributory liability to be imposed on the other defendants. In this case, the

7   "four corners"of the case necessarily includes those facts which would also hold both

8   Northern/Lotus and DeWalt liable on a theory of contributory infringement.

9                                **VII.**

10             **DIRECTED VERDICTS ON LIABILITY**

11   A.    **Directed Verdicts Are Appropriate If There Is Insufficient Evidence to**
           **Support a Factual Controversy.**

12

13          Rule 50 of the Federal Rules of Civil Procedure provide that, "if a party has been

14   fully heard on an issue during a jury trial and the court finds that a reasonable jury would not

15   have a legally sufficient evidentiary basis to find for the party on that issue, the court may..grant a

16   motion for judgment as a matter of law...: *FRCP Rule 50(a)(1)*. Accordingly, such a motion may

17   be made at any time before the case is submitted to the jury. *FRCP 50(A)(2)*.

18          Although the grounds do not have to be technically precise, the moving party does

19   need to give fair notice to the court of the grounds for the motion. *Ziegler v. Fisher Price, Inc.,*

20   302 F.Supp.2d 999, 1007 (N.D. Iowa 2004). Furthermore, a major purpose of the motion is to

21   call a deficiency in the evidence to the attention of the court so the opposing counsel can cure any

22   alleged defects at trial. *Laborers Pension Fund v. ANC Environmental, Inc.,* 301 F.3d 768, 775

23   (7th Cir. 2002).

24   B.    **Plaintiff's Notice to the Court of Their Request for a Directed Verdict on**
           **Infringements**

25      1.    **Directed Verdict on Direct Infringement**

26          It will go unrefuted during trial that the City of Wasco made copies of and gave to

27   the other defendants copies of the copyrighted works. (both the 5472 Tentative Map and

28   Improvement Plans) These copies were made so that Wasco and the other defendants could

1  commercially benefit from McIntosh's works. This copying was even admitted during the

2  summary judgment phase of this litigation and these facts are not expected to change.

3

4        2.    **Directed Verdict on Indirect Infringement**

5      At the close of trial, plaintiff will have established conclusively that defendants

6  had access to and created a substantially similar 6451 Map as plaintiff's work. There are clear

7  admissions by DeWalt, that they reviewed and compared their work with McIntosh's copyrighted

8  work. This will be sufficient to show that there was no independent creation and plaintiff will

9  request this Court to direct the jury on this issue as to DeWalt. (Leaving open the issue of

10  contributory and vicarious liability for the jury)

11        3.    **Improvements That Were in the Ground Were Copies of Mcintosh's Original Work and Any Copies Based on That Work Are Direct Evidence of Infringement.**

12      Defendants are expected to attempt to argue that the 6451 Map was created

13  "independently" of the copyrighted works because, they only, 'drew what was on the ground.'

14  They will rely almost exclusively on a survey of the Valley Rose Estates conducted by DeWalt.

15  Yet, plaintiff will argue that, as a matter of law, even this is not "independent creation" because

16  they surveyed a work based on plaintiff's previous work and from which his work could be

17  reproduced.

18

19      A "copy" is defined by Title 17 U.S.C. 101, as follows:

20        "Material objects... in which a work is fixed by any method now known or later developed and from which the work can be

21  perceived, reproduced or otherwise communicated either directly or with the aid of a machine or device. The term 'copies' includes

22  the material object ... in which the work is first fixed." (17 U.S.C. 101.) (underline added)

23      This is an incredibly broad statute and the only limitation in order to meet the

24  definition of a copy under this provision is that the work be fixed, and that it be one that can be

25  perceived, reproduced or otherwise communicated. Thus, a copy of a copy of the copyrighted

26  material constitutes infringement. *See, 2 Nimmer on Copyright:* 8.01[A] (2006) ("In analyzing

27  the rights available to copyright owners, we are necessarily delineating the term 'infringement.'

28  ... [T]he grant of exclusive rights to the copyright owner certainly implies that the unauthorized

1 | exercise of such rights constitutes an infringement of copyright").

2 |     Additionally, an authorized copy of the copyrighted material may be considered a

3 | "copy" to which protection extends even when the copy takes the form of a different medium

4 | from the copyrighted material. *Nimmer* elucidates this principle:

5 |     "The fact that a work in one medium has been copied from
6 | a work in another medium does not render it any the less a 'copy.'
    Thus, a motion picture copied from a play, or a novel, a sketch
7 | copied from a photograph, or a plaque, or a doll copied from a
cartoon may be an infringing copy. One court has held that a series
8 | of photographs of a ballet performance could violate the copyright
on the dance." (*Nimmer, supra*, 8.01[B] (citations omitted).)

9 |     That copyright protection extends to authorized copies of the copyrighted work is

10 | so fundamental that there is scant case law on the subject. However, Justice Holmes, in

11 | *Bleinstein v. Donaldson Lithographing Co.* (1903) 118 U.S. 239, 249), held that even where an

12 | alleged infringing copy *could have been* generated by the defendant by viewing an un-

13 | copyrighted original source (in this case by viewing the *actual people* depicted in the protected

14 | work, as opposed to the protected work itself), if it was shown that the alleged infringing copy

15 | was actually generated by copying the protected work, then there would still be an infringement.

16 | As Justice Holmes famously stated, "although others are free to copy the original. *They are not*

17 | *free to copy the copy.*" *Id.* (underline added). A copy is thus, "the material object ... in which the

18 | work is first fixed." (See definition of "copies," 17 U.S.C. 101). *See also, Schumacher v.*

19 | *Schwencke*, 30 F. 690, 691 (S.D.N.Y. 1887).

20 |     Here, there is nothing under statute or law to suggest that McIntosh's work, as

21 | copied from his original map and plans, and as integrated into the ground was anything less than

22 | a copy of the original. The layout of the subdivision was, "the material object in which the work

23 | [was] first fixed." (*citing from* 15 U.S.C. §101). Defendant's deny this principle and, instead,

24 | will argue that because they went out and surveyed the existing improvements, this was not

25 | copying. This makes no sense since this would mean that anyone could simply find a

26 | representation of the original in a different medium and make non-infringing copies.

27 |     Taken out of the context of technical drawings, this would mean that if an original

28 | song was composed and submitted for copyright, that anyone would be free to listen to that song

1   on the airwaves, (a non-copyrightable medium)  write out the notes on a sheet music and not be

2   infringing because they didn't actually see the original sheet music or deposit that was

3   copyrighted.  Defendants' argument is one giant straw man argument.

4         Plaintiff therefore respectfully requests this Court issue a directed verdict on the

5   issue of indirect of McIntosh's copyrighted works if defendant presents no other evidence of

6   independent creation.

7                                         **VIII.**

8                                      **DAMAGES**

9   A.      **Damages and profits for infringement under 17 U.S.C. § 504.**

10         Under 17 U.S.C. § 504, a copyright owner is entitled to recover actual damages

11   suffered by him or her as a result of infringement and profits of the infringer attributable to that

12   infringement.  17 U.S.C. § 504.

13         Actual damages are determined by the loss in the fair market value of the

14   copyright measured by the profits lost due to the infringement or by the value of the use of the

15   copyrighted work to the infringer.  *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700,

16   708-709 (9th Cir. 2004).  As stated in *Polar Bear Productions*, "it is not improper for a jury to

17   consider either a hypothetical loss license fee or the value of the infringing use to the infringer to

18   determine actual damages provided the amount is not based on undue speculation."  (*Ibid.*)

19         An infringer can also be held liable for any profits that they derived attributable to

20   the infringing activity.  *Polar Bear Productions, Inc.*,384 F.3d at 711, 714 (9th Cir. 2004).  All

21   that plaintiff needs to show is the gross revenue of the infringer.  17 U.S.C. § 504(B).  This is

22   shown by the plaintiff showing that a causal nexus between the infringement and the infringer's

23   gross revenue.  *Polar Bear Productions* cited *supra*, at 711, 714 Note 10.  A causal nexus is

24   demonstrated by the plaintiff proffering some evidence that the infringement, "at least partially

25   caused the profits that the infringer generated as a result of the infringement."  *Polar Bear*

26   *Productions* cited *supra*, at 711.

27         In general, all defendants are jointly and severally liable for the plaintiff's actual

28   damages but each defendant is severally liable for the defendants' own illegal profits.  *Frank*

1 | *Music Corp. v. Metro Goldwyn Meyer, Inc.*, 772 F.2d 505, 519 (9th Cir. 1985).

2 | / / /

3 | **B.     Actual Damages.**

4 | Plaintiff will demonstrate that his actual damages for the infringing work was the

5 | fair market value of his work.  Plaintiff will show that the value of his work was the value of

6 | what it cost to create the 5472 Tentative Map and Improvement Plans.  These were

7 | all "supporting documents" expended in creating those works. *See, Del Madera v. Rhodes and*

8 | *Gardner, Inc.* 820 F.2d 973, 876-977 (9th Cir. 1987).

9 | Plaintiff will show that the value of his copyrighted works was in excess of

10 | $1 million.  This was so because there was a lot of engineering work that needed to be done in

11 | support of the 5472 Map.  All of this engineering work needed to be done to complete the 5472

12 | Improvement Plans, the onsite and offsite improvements, support the Master Studies and

13 | planning, and, ultimately, the 5472 Tentative Map. Defendants have been skeptical at the amount

14 | of the fair market value demanded by plaintiff, because, after all, they only charged $27,000.

15 | However, it cost DeWalt so little, because it cost plaintiff so much.

16 | Defendants are also expected to equivocate on this Court's prior order to Wasco's

17 | Motion in Limine No. 2 and which, in principle, went unopposed by plaintiff.  Plaintiff will

18 | attempt to introduce what it cost for costs related to the 5472 Tract.  According to defendants,

19 | this is not work "directly related" to Tract 5472.  Plaintiff will clearly show otherwise.

20 | It is also expected that defendants will attempt to introduce evidence of any costs

21 | paid to Martin-McIntosh as a way to reduce the fair market value of his works.  However,

22 | whether McIntosh was ever paid is irrelevant to any determinations of value and the actual

23 | damages provision of 17 U.S.C. §504 does not allow for any deductions in that amount based on

24 | whether the copyright holder was previously paid for his work.  Plaintiff will object to any such

25 | evidence.

26 | **C.     Infringer's Profits.**

27 | Plaintiff will also show that each of the defendants obtained gross revenues that

28 | were directly attributable to the infringing activity.  DeWalt, for example, obtained a direct

1  benefit of $27,000 which should have been paid to plaintiff; Northern was able to purchase a

2  subdivision for the amount of $1.6 million which would have been substantially increased if he

3  would have had to actually put the improvements in the ground; Wasco was also able to sell the

4  subdivision for an amount that did not include having to have a developer put what they

5  estimated to be $1.9 million of improvements in the ground; Northern/Lotus was also able to

6  avoid having to post a bond of $190,000 because the improvements were in the ground; and

7  Northern was able to sell homes because a final map was approved.  Each and every one of these

8  allowed the defendants to realize profits that they would not normally have seen had they been

9  required to create new map and plans and install different improvements based on those new map

10  and plans.

11        **D.**    **Joint and Several Liability.**

12          As stated above, generally all defendants are jointly and severally liable for actual

13  damages and each defendant is responsible for his or her own profits related to infringement.

14  However, there is an exception where the defendants are acting as partners or "practically

15  partners." *Frank Music Corp. v. Metro Goldwyn Meyer, Inc.*, 772 F.2d 505, 519 (9th Cir. 1985).

16  In such a case, and if the jury finds that the defendants meet certain relevant factors to establish

17  that the defendants were partners or practically partners, then those defendants who were such,

18  can be held jointly liable for each of their infringer's profits. *Ibid.*

19          Relevant factors to establish this partnership include the defendants' role in the

20  infringing activity; the degree of direction of activity; and each's financial interest in activity.

21  *See. Nelson v. Salabes, Inc. v. Morningside Development, LLC*, 284 F.3d 505, 517 (4th Cir.

22  2002).

23          Defendants have indicated that they see a more formal and rigid application of this

24  to mean a partnership as determined by partnership statutes (E.g., California Corporations Code).

25  According to them and their proposed definition,  unless each defendant is sharing in the other

26  defendants' profit, there can be, *per se*, no "partnership."  This approach is nowhere shown in

27  the copyright cases explaining this issue and, instead, there is a far more flexible approach as is

28  evidenced by this Circuit's use of the term "practically partners" because of their mutual interest

1  in participating in infringement. Plaintiff proposes that the use of the term as maintained by the

2  9th Circuit be used and any attempts at restricting a jury as to a finding of partnership based

3  solely on shared profits be rejected.

4                                              IX

5                              **ATTORNEYS' FEES**

6          Federal Rules of Civil Procedure provide for mandatory attorneys' fees for having

7  to prove denials to that party's request for admissions.  FRCP 37(C)(2).

8          Plaintiff believes this case has presented a clear case of copyright infringement,

9  fully supported by cases which are identical and with stronger facts than those in the same Circuit

10  and the Northern District and other Districts following the same law and policy.  There has been

11  no reasonable ground to believe that defendants could prevail on each of the matters admitted at

12  trial.  If infringement is found, plaintiff will present to this court its previous request for

13  admissions to all defendants and their denials without objection and request this court award

14  attorneys' fees for having to prosecute this action all the way to trial.

15

16  DATED:  February _____, 2010

17                                              Respectfully submitted,

18                                              BORTON PETRINI, LLP

19

20                                              By:_____

21                                                  James J. Braze, Jeffrey A. Travis, Attorney for Plaintiff,
                                                    Roger McIntosh dba McIntosh & Associates
22

23

24

25

26

27

28

**PROOF OF SERVICE**

**(FRCP No. 5(b)(2)(E))**

**STATE OF CALIFORNIA, COUNTY OF KERN**

I, Vanessa J. Claridge, declare:

I am a citizen of the United States. I am employed in the County of Kern, State of California. I am over the age of 18 and not a party to the within action; my business address is 5060 California Avenue, Suite 700, Bakersfield, California 93309.

On February ____, 2010, I served the foregoing document described as **PLAINTIFF ROGER MCINTOSH dba MCINTOSH & ASSOCIATES' TRIAL BRIEF** on the other party(ies) in this action as follows:

| | |
|---|---|
| Steven John Hassing, Esq. | Attorneys for Attorneys for Defendants, |
| Law Offices of Steven J. Hassing | Northern California Universal Enterprises |
| 425 Calabria Court | Company and Lotus Developments |
| Roseville, CA 95747 | Tel:    916/677-1776 |
| | **Fax:   916/677-1770** |
| email address: **stevehassing@yahoo.com** | |
| | |
| Chaka Okadigbo | Attorneys for Defendant, City of Wasco |
| **GCR, LLP** | |
| 520 S. Grand Ave, Suite 695 | Tel: 213/347-0210 |
| Los Angeles, CA 90071 | **Fax: 213-347-0216** |
| email address: **cokadigbo@gcrlegal.com** | |
| | |
| William L. Alexander, Esq. | Attorneys for Defendant, DeWalt CM, Inc. |

1  Alexander & Associates

2  1925 "G" Street                          Tel: 661/316-7888

3  Bakersfield, CA 93301                    **Fax: 661/316-7890**

4  email address: **walexander@alexander-law.com**

5

6  X      **BY ELECTRONIC SERVICE:**  Pursuant to Fed. R. Civ. P. 5(b)(2)(E) and Local Court

7          Rule(s), the foregoing document will be served by the court via CM/ECF.  Pursuant to the

8          CM/ECF docket for this case proceeding the following person(s) are on the Electronic Mail

9          Notice List to receive ECF transmission at the email address(es) indicated below:

10

11  X     **BY MAIL:**  As follows:  I am "readily familiar" with the firm's practice of collection and

12         processing correspondence for mailing.  Under that practice it would be deposited with U.S.

13         postal service on that same day with postage thereon fully prepaid at , California in the

14         ordinary course of business.  I am aware that on motion of the party served, service is

15         presumed invalid if postal cancellation date or postage meter date is more than one day after

16         date of deposit for mailing in affidavit.

17

18              Executed on **February _____, 2010**, at Bakersfield, California.

19

20              I declare that I am employed in the office of a member of the bar of this court at

21         whose direction the service was made.

22

23

24              _____Vanessa J. Claridge_____              _____/s/ Vanessa J. Claridge_____

25

26

27

28

# EXHIBIT G

BP001854

V-R-VALU.XLS

SCHEDULE OF VALUE

MARTIN-McINTOSH

| | TOTAL ENGR. COSTS | PERCENT COMPLETE | WORK IN-PLACE | PAID BY BOND DESIGN FEES | REVISIONS |
|---|---|---|---|---|---|
| TRACT 5472 (69 LOTS) | | | | | |
| Tentative Map | $10,000.00 | 100% | $10,000.00 | | |
| Storm Drain: | $18,000.00 | 100% | $18,000.00 | $18,000.00 | |
| street excavation, curb & gutter, aggregate base | | | | | |
| Sewer | $17,000.00 | 100% | $17,000.00 | $17,000.00 | |
| Water | $9,000.00 | 100% | $9,000.00 | $9,000.00 | |
| Street Improvements: Sidewalks, Special Concrete, Paving, street lights & Street Signs | $71,000.00 | 100% | $71,000.00 | $71,000.00 | |
| Final Tract Map | $23,000.00 | 100% | $23,000.00 | $23,000.00 | |
| Landscape and walls | $36,500.00 | 100% | $36,500.00 | $36,500.00 | |
| SUBTOTAL: | $184,500.00 | | $184,500.00 | $174,500.00 | |
| TRACT 5618 (293 LOTS) | | | | | |
| Tentative Map | $13,500.00 | 100% | $13,500.00 | $13,500.00 | |
| Storm Drain: | $36,000.00 | 95% | $34,200.00 | | |
| Street Excavation, Curb & Gutter, Aggregate Base | | | | | |
| Sewer | $24,000.00 | 95% | $22,800.00 | | |
| Water | $17,000.00 | 95% | $16,150.00 | | |
| Street Improvements: | $97,500.00 | 90% | $87,750.00 | | |
| Final Tract Map | $8,700.00 | 100% | $8,700.00 | $8,700.00 | |
| Landscape and Wall Plans | $31,000.00 | 90% | $27,900.00 | | |
| Revisions: | $18,500.00 | 100% | $18,500.00 | $18,500.00 | |

BP001855

*Master McIntosh*

LAND SURVEYING • CIVIL ENGINEERING
PLANNING • LANDSCAPE ARCHITECTURE

V-R-VALU.XLS

| | | | | |
|---|---|---|---|---|
| Zone Changes, Tentative Map, Grading, final map and plot plan to R-1 | | | | |
| SUBTOTAL: | $246,200.00 | | $229,500.00 | $40,700.00 |
| **OFF-SITE IMPROVEMENT PLANS** | | | | |
| Water Plans | $66,600.00 | 95% | $63,270.00 | $42,000.00 |
| Sewer Plans | $82,500.00 | 95% | $78,375.00 | $31,000.00 |
| Caltrans-Highway Planning | $45,500.00 | 95% | $43,225.00 | $29,500.00 |
| SUBTOTAL: | $194,600.00 | | $184,870.00 | $102,500.00 |
| **GENERAL ENGINEERING PLANNING** | | | | |
| Master Plan Studies: | | | | |
| Water | $17,500.00 | 100% | $17,500.00 | $17,500.00 |
| Sewer | $25,300.00 | 100% | $25,300.00 | $25,300.00 |
| Drainage | $13,300.00 | 100% | $13,300.00 | $13,300.00 |
| Traffic Studies | $16,800.00 | 100% | $16,800.00 | $16,800.00 |
| General Plan Amendment | $47,000.00 | 100% | $47,000.00 | $47,000.00 |
| Development Agreement | $21,000.00 | 100% | $21,000.00 | $21,000.00 |
| Parcel Map 9572 | $26,000.00 | 100% | $26,000.00 | $26,000.00 |
| Assessment District | $32,000.00 | 100% | $32,000.00 | |
| Assessment Street Lights | $2,000.00 | 100% | $2,000.00 | |
| Williamson Act Cancellation | $4,500.00 | 100% | $4,500.00 | |
| SUBTOTAL: | $205,400.00 | | $205,400.00 | $166,900.00 |
| **TOTAL ENGINEERING IN PLACE:** | | | $804,270.00 | $484,600.00 |

2001 WHEELAN COURT • BAKERSFIELD, CA • 805/834-4814 • FAX 805/834-0972

Page 2

# EXHIBIT H

07/21/2004  16:57   6613234674                     DEWALT                                    PAGE  01

# DEWALT
## *Corporation*

♦ ENGINEERING   ♦ PLANNING   ♦ SURVEYING   ♦ LAND DEVELOPMENT   ♦ CONSTRUCTION MANAGEMENT

July 21, 2004

04-01P

**NORTHERN CALIFORNIA UNIVERSAL ENTERPRISE CO.**
300 "B" Street
Turlock, CA 95380
FAX:   209.669.0498

Attn.:   Mr. Jess Marimia

Re:    Wasco Subdivision – Expired Tract 5472
       Proposal for Planning / Engineering / Surveying / Professional Services

Dear Mr. Marimia,

DeWalt Corporation is pleased to provide this proposal for the following Planning, Engineering, and Surveying services for the property on Valley Rose Park Way in the City of Wasco, County of Kern. You will recall that the Tentative Map for Tract 5472 was approved with conditions at one point in time. Many of the conditions of approval with regard to infrastructure improvements to the site in question were completed, yet the Tentative Map was allowed to expire before recordation.  Find below the various services that DeWalt Corporation proposes to provide to you for this project and their associated costs:

## TOPOGRAPHIC SURVEY:

Topographic survey will be performed in such a manner as to gather data which will be used for planning or engineering purposes. Please note that prior to the commencement of survey we will require a current (less that 30 days old) preliminary title report.

- Research existing horizontal and vertical monumentation with the Kern County Surveyor.
- Research existing infrastructure improvement plans with the Kern County Resource Management Agency, City of Wasco and any other related utility companies and service districts.
- Perform a boundary survey of the site, corroborating the existence of property corners and defining the site boundary. During the course of the boundary portion of the survey, we will also devote time to identifying any encroachment of the property lines.
- Perform a topographic survey of the existing pads, street and infrastructure improvements. Pad certification will be desired for proof of flood and grading plan conformance with County of Kern.
- Process and transfer the survey data for entry into electronic drafting software (AutoCAD) for the purposes of preparing the topographic survey plat.
- Dissemination of the Preliminary Title Report and identification of easements, licenses and recorded documents that encumber the property in question.
- Drafting and review of topographic survey plat.
- Validation and Certification of survey by a licensed land surveyor.
- **Cost :**

$7,500.00

Agreed and Understood:

By:
Title:   *PRESIDENT*                                        Date:

EXHIBIT
J-18

1930 22ND STREET BAKERSFIELD, CA 93301  (805) 323-4600   •   FAX  (805) 323-4874

Expired Tract 5472, Wasco, CA
Proposal for Planning, Engineering and Surveying
Page 2 of 3

## TENTATIVE MAP:

- Meetings with the Owner to discuss development plans / proposed layout / phasing
- Meetings with County Staff to discuss development options, scheduling and fees
- Preparation of Boundary and Easement Map from Record Data and available Title Information
- Prepare and Process Tentative Subdivision Map and Application Package
- Assist in coordination and completion of Tentative Map approval studies and mitigation measures
- Present Tentative Subdivision Map to Governing Bodies for Consideration and Action
- **Cost :**                                                     $5,500.00

Agreed and Understood:

By:
Title:                    _president_                    Date:

Upon approval of the Tentative Map, DeWalt Corporation and the owner will review and consider the conditions of approval. There may be items in the conditions of approval that will require DeWalt Corporation to engineer and process construction plans for approval by the County of Kern. Costs for these plans are un-determinable at this time and are _not_ a part of this proposal.

## FINAL MAPS:

- Prepare Final Subdivision Map for Recordation
- Process County Improvement Agreements if required
- Prepare legal descriptions as needed
- **Cost :**                                                     $5,500.00

Agreed and Understood:

By:
Title:                    _president_                    Date

## SURVEYING SERVICES:

- Surveying for Centerline Monument and lot corner installation
- **Cost:**
                                                              $7,500.00

Agreed and Understood:

By:
Title:                    _president_                    Date

BP000218

L 020

07/21/2004  18:57   5613234574                  DEWALT                                PAGE  03

Expired Tract 5472, Wasco, CA
Proposal for Planning, Engineering and Surveying
Page 3 of 3

Any work not specifically listed herein shall not be assumed to be included in this proposal.  Prices quoted do not include reimbursables such as printing, soils work, document transport, or any governmental, title or other fees. Billing will be monthly, with reimbursables billed separately.  Any "extra" work or changes to the scope of work, or revisions requested by the Owner, Title Company, or any other entity, will be performed on a time-and-materials basis per the attached DeWalt Corporation 2004 Fee Schedule as an "extra" or negotiated separately.

Thank you for this opportunity to work with **NORTHERN CALIFORNIA UNIVERSITAL ENTERPRISE CO.** on this project.  If you have any questions regarding any aspect of this proposal, please do not hesitate to contact me at (661) 323-4600x122.  Please sign in the spaces provided authorizing the services you are approving and return one copy to our office at your earliest convenience, indicating our notice to proceed.  We will then prepare a Standard Form of Agreement which will serve as our Contract (sample copy attached), and will forward it to you for execution.

Respectfully submitted,

Jeffrey A. Gutierrez, P.L.S. 7595
President / Director of Surveying
jag@dewaltcorp.com

cc:      Gregory O. Black / Project Manager

M:\Proposals\DWC\NCUECI\Wasco-ttm-FM-eng-survproposal.doc

BP000219

L 021



DEWALT
*Corporation*

• ENGINEERING   • PLANNING   • SURVEYING   • LAND DEVELOPMENT   • CONSTRUCTION MANAGEMENT

## *2004 FEE SCHEDULE*

### OFFICE

| | |
|---|---|
| C.E.O./C.F.O | $ 110.00 Per Hour |
| Consulting Civil Engineer / Land Surveyor | $ 98.00 Per Hour |
| Registered Civil Engineer | $ 92.00 Per Hour |
| Licensed Land Surveyor | $ 92.00 Per Hour |
| Staff Engineer | $ 80.00 Per Hour |
| Senior Designer / Senior Planner | $ 80.00 Per Hour |
| Senior Draftsperson | $ 76.00 Per Hour |
| Draftsperson | $ 68.00 Per Hour |
| Clerical | $ 50.00 Per Hour |
| Assistant Clerical | $ 26.00 Per Hour |

### FIELD

| | |
|---|---|
| 3-Man Survey Crew | $ 150.00 Per Hour |
| 2-Man Survey Crew | $ 120.00 Per Hour |
| 1-Man Survey Crew | $ 80.00 Per Hour |
| Construction Inspector | $ 86.00 Per Hour |
| Construction Manager | $ 80.00 Per Hour |
| Survey Coordinator | $ 78.00 Per Hour |
| Survey Technician | $ 68.00 Per Hour |

### MISCELLANEOUS / REIMBURSABLES

| | |
|---|---|
| GPS Total Station | $ 50.00 Per Hour |
| Robotic Total Station | $ 24.00 Per Hour |
| $H_2S$ Monitor | $ 10.00 Per Hour |
| Outside Consultant | $ Actual Cost |
| Materials / Reproduction | $ Actual Cost |
| Fees, Permits, Etc. | $ Actual Cost |
| Subsistence | $ 60.00 Per Day/ Per Person |
| Mileage | $ 0.55 Per Mile/ Per Vehicle |
| Courier | $ Employee's Hourly Rate |

*Rates subject to change January 1, 2005*

# EXHIBIT I

| Client Initials | Consultant Initials |
|---|---|

*This form of agreement is distributed by:*

**CELSOC**
CONSULTING ENGINEERS AND
LAND SURVEYORS OF CALIFORNIA

**AGREEMENT BETWEEN CLIENT AND CONSULTANT**
This form of agreement (Form A) was developed by the Consulting Engineers and Land Surveyors of California and is intended primarily for the use of CELSOC members and may not be reproduced without the permission of the Consulting Engineers and Land Surveyors of California. © 2003, 2001, 1998, 1994, 1991, 1989, 1987, 1984, 1982, 1979, 1978, 1975, 1973, 1970, 1967.

*Notice: This form of agreement is copyrighted by CELSOC and is only printed by CELSOC on security paper, which has the CELSOC logo background design.*

Project No. 2004-49

Agreement entered into at Bakersfield on this date of 7 Sept 2004 , by and between:

Client: Northern California Universal Enterpise   Consultant: DeWalt Corporation

Name  Mr. Joe Wu                          Name  Jeffrey A Gutierrez

Address  300 'E' Street                   Address  1930 22nd Street
         Turlock, Ca 95380                         Bakersfield, Ca 93301

Phone: 209-669-0606   Fax 209-669-0498    Phone 661-323-4600   Fax 661-323-4674

Email                                     Email  jag@dewaltcorp.com

                                          License No. PLS 7595

*Client and Consultant agree as follows:*

A.  Client retains Consultant to perform services for:

   WASCO SUBDIVISION-EXPIRED TRACT 5472
   hereinafter called "project."

B.  Consultant agrees to perform the following scope of services:
   TOPO SURVEY
   TENTATIVE MAP
   FINAL MAPS
   SURVEYING SERVICES

C.  Client agrees to compensate Consultant for such services as follows:

   LUMP SUM $26,000.00

D.  This agreement is subject to the Provisions of Agreement contained in paragraphs 1 through 32, and the provisions of the exhibits attached hereto and made a part hereof. (List exhibits below.)

   EXHIBIT 'A' SIGNED LETTER OF PROPOSAL


EXHIBIT J-16

Form A                    Page 1 of 9

4-0001

## PROVISIONS OF AGREEMENT

Client and Consultant agree that the following provisions shall be part of this agreement:

1.  Client and Consultant agree to cooperate with each other in order to fulfill their responsibilities and obligations under this agreement. Both Client and Consultant shall endeavor to maintain good working relationships among members of the project team.

2.  This agreement shall be binding upon the heirs, executors, administrators, successors and assigns of Client and Consultant.

3.  This agreement shall not be assigned by either Client or Consultant without the prior written consent of the other.

4.  This agreement contains the entire agreement between Client and Consultant relating to the project and the provision of services for the project. Any prior agreements, promises, negotiations or representations not expressly set forth in this agreement are of no force or effect. Subsequent modifications to this agreement shall be in writing and signed by both Client and Consultant.

5.  Consultant's or Client's waiver of any term, condition or covenant shall not constitute the waiver of any other term, condition or covenant. Consultant's or Client's waiver of any breach of this agreement shall not constitute the waiver of any other breach of the agreement.

6.  If any term, condition or covenant of this agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remaining provisions of this agreement shall be valid and binding on Client and Consultant.

7.  This agreement shall be governed by and construed in accordance with the laws of the State of California.

8.  If the scope of services includes Consultant's assistance in applying for governmental permits or approvals, Consultant's assistance shall not constitute a representation, warranty or guarantee that such permits or approvals will be acted upon favorably by any governmental agency.

9.  Upon Consultant's request, Client shall execute and deliver, or cause to be executed and delivered, such additional information, documents or money to pay governmental fees and charges which are necessary for Consultant to perform services pursuant to the terms of this agreement.

10. Client acknowledges all reports, plans, specifications, field data and notes and other documents, including all documents on electronic media, prepared by Consultant are instruments of service, and shall remain the property of Consultant and may be used by Consultant without the consent of Client. Upon request and payment of all costs involved, Client is entitled to a copy of all final plans and specifications for use in connection with the project for which the plans and specifications have been prepared. Client acknowledges that its right to utilize final plans and specifications and the services of Consultant provided pursuant to this agreement will continue only so long as Client is not in default, pursuant to the terms and conditions of this agreement, and Client has performed all its obligations under this agreement.

11. Client agrees not to use or permit any other person to use plans, specifications, drawings, cost estimates, reports, or other documents prepared by Consultant which plans, specifications, drawings, cost estimates, reports or other documents are not final and which are not signed and stamped or sealed by Consultant. Client shall be responsible for any such use of non-final plans, specifications, drawings, cost estimates, reports or other documents not signed and stamped or sealed by Consultant. Client hereby waives any claim for liability against Consultant for such use. Client further agrees that final plans, specifications, drawings, cost estimates, reports or other documents are for the exclusive use of Client and may be used by Client only for the project described on page 1 of 9 of this agreement. Such final plans, specifications, drawings, cost estimates, reports or other documents may not be changed or used on a different project without written authorization or approval by Consultant. If signed check-prints are required to be submitted with a stamp or seal, they shall not be considered final for purposes of this paragraph.

4-0002

2. In accepting and utilizing any drawings, reports and data on any form of electronic media generated and furnished by Consultant, Client covenants and agrees that all such electronic files are instruments of service of Consultant, who shall be deemed the author, and shall retain all common law, statutory law and other rights, including copyrights.

Client agrees not to reuse these electronic files, in whole or in part, for any purpose or project other than the project that is the subject of this agreement. Client agrees not to transfer these electronic files to others without the prior written consent of Consultant. Client further agrees to waive all claims against Consultant resulting in any way from any unauthorized changes or reuse of the electronic files for any other project by anyone other than Consultant.

Client and Consultant agree that any electronic files furnished by either party shall conform to the CADD specifications listed in Exhibit _____. Any changes to the CADD specifications by either Client or Consultant are subject to review and acceptance by the other party. Additional services by Consultant made necessary by changes to the CADD or other software specifications shall be compensated for as additional services.

Electronic files furnished by either party shall be subject to an acceptance period of fifteen (15) days during which the receiving party agrees to perform appropriate acceptance tests. The party furnishing the electronic file shall correct any discrepancies or errors detected and reported within the acceptance period. After the acceptance period the electronic files shall be deemed to be accepted and neither party shall have any obligation to correct errors or maintain electronic files.

Client is aware that differences may exist between the electronic files delivered and the printed hard copy construction documents. In the event of a conflict between the signed construction documents prepared by Consultant and electronic files, the signed and stamped or sealed hard copy construction documents shall govern.

In addition, Client agrees, to the fullest extent permitted by law, to indemnify and hold harmless Consultant, its officers, directors, employees, agents and subconsultants against all damages, liabilities or costs, including reasonable attorneys' fees and defense costs, arising from any changes made by anyone other than Consultant or from any reuse of the electronic files without the prior written consent of Consultant.

Under no circumstances shall delivery of electronic files for use by Client be deemed a sale by Consultant, and Consultant makes no warranties, either express or implied, of merchantability and fitness for any particular purpose. In no event shall Consultant be liable for indirect or consequential damages as a result of Client's use or reuse of the electronic files.

13. Consultant makes no representations concerning soils or geological conditions unless specifically included in writing in this agreement, or by amendments to this agreement, and shall not be responsible for any liability that may arise out of the making of or failure to make soils or geological surveys, subsurface soils or geological tests, or general soils or geological testing.

14. Client acknowledges Consultant has the right to complete all services agreed to be rendered pursuant to this agreement. In the event this agreement is terminated before the completion of all services, unless Consultant is responsible for such early termination, Client agrees to release Consultant from all liability for services performed. In the event all or any portion of the services by Consultant are suspended, abandoned, or otherwise terminated, Client shall pay Consultant all fees and charges for services provided prior to termination, not to exceed the contract limits specified herein, if any. Client acknowledges if the project services are suspended and restarted, there will be additional charges due to suspension of the services which shall be paid for by Client as extra services pursuant to paragraph 29. Client acknowledges if project services are terminated for the convenience of Client, Consultant is entitled to reasonable termination costs and expenses, to be paid by Client as extra services pursuant to paragraph 29.

If the scope of services to be provided by Consultant pursuant to the terms of this agreement includes an ALTA survey, Client agrees that Consultant may sign one of the ALTA survey statements attached to this agreement and incorporated herein by reference. In the event Consultant is required to sign a statement or certificate which

4 0002

differs from the ALTA survey statements contained in the attachment to this agreement, Client hereby agrees to indemnify and hold Consultant harmless from any and all liability arising from or resulting from the signing of any statement which differs from those statements contained in the attachment to this agreement.

16. If the scope of services to be provided by Consultant pursuant to the terms of this agreement includes the preparation of grading plans but excludes construction staking services, Client acknowledges that such staking services normally include coordinating civil engineering services and the preparation of record drawings based upon information provided by others, and Client will be required to retain such services from another consultant or pay Consultant pursuant to this agreement for such services as extra services in accordance with paragraph 29.

17. Unless the scope of services to be provided by Consultant expressly includes Consultant's assistance in determinations regarding the application of prevailing wages, Client and Consultant acknowledge that it is Client's exclusive responsibility to determine whether the project, which is the subject of this agreement, is a "public work" as defined in California Labor Code Section 1720, or whether prevailing wage rates are to be paid to certain workers in connection with the project, or determine the rate of prevailing wages to be paid certain workers. Consultant will develop its schedule of labor rates in reliance on the determinations of Client. In the event of a dispute regarding whether the project is a "public work", whether prevailing wages are to be paid, or the amount of prevailing wages to be paid to individual workers, Client agrees to pay Consultant for any and all additional costs and expenses (including additional wages, penalties & interest) incurred by Consultant and further agrees to the maximum extent permitted by law to defend, indemnify and hold harmless Consultant, its officers, directors, employees, agents and subconsultants from all damages, liabilities or costs, including reasonable attorneys' fees and costs, arising from or related to the Client's determinations regarding the application of or payment of prevailing wages.

18. If the scope of services contained in this agreement does not include construction-phase services for this project, Client acknowledges such construction-phase services will be provided by Client or by others and Client assumes all responsibility for interpretation of the contract documents and for construction observation and supervision and waives any claim against Consultant that may in any way be connected thereto. In addition, Client agrees to indemnify and hold Consultant harmless from any loss, claim, or cost, including reasonable attorneys' fees and costs of defense, arising or resulting from the performance of such services by other persons or entities and from any and all claims arising from the modification, clarification, interpretation, adjustments or changes made to the contract documents to reflect changed field or other conditions, except for claims arising from the sole negligence or willful misconduct of Consultant.

19. If the scope of work of Consultant includes the rendition of professional services for a project which is a common interest development subject to the provisions of Civil Code section 1375, Client agrees to reimburse Consultant for all costs associated with Consultant's participation in the pre-litigation process described in Civil Code section 1375. Further, Client agrees to pay Consultant's fees for time incurred participating in the pre-litigation process. These fees and costs shall be paid as extra services in accordance with paragraph 29. Such extra services shall be paid at Consultant's normal hourly rates in effect at the time Consultant participates in the pre-litigation process. For purposes of this paragraph, a "common interest development" shall be a common interest development as defined in Civil Code section 1375.

Client agrees, to the maximum extent permitted by law, to defend, indemnify and hold harmless Consultant, its officers, directors, employees, agents and subconsultants from all damages, liabilities or costs, including reasonable attorneys' fees and costs, arising from or related to Consultant's participation in the pre-litigation process pursuant to Civil Code section 1375.

Client agrees that if Client receives a Notice of Commencement of Legal Proceedings pursuant to Civil Code section 1375, Client will notify Consultant within 10 days of Client's receipt of the Notice of Commencement of Legal Proceedings, provided the Notice of Commencement of Legal Proceedings either identifies Consultant as a potentially responsible party or the face of the Notice contains information which identifies Consultant's potential responsibility. If Client does not timely notify Consultant, then Client agrees, to the maximum extent permitted by law, to defend, indemnify and hold harmless Consultant, its officers, directors, employees, agents

A-0004

and subconsultants from all damages, liabilities or costs, including reasonable attorneys' fees and costs, arising from or related to Client's failure to timely notify Consultant.

20. Consultant shall be entitled to immediately, and without notice, suspend the performance of any and all of its obligations pursuant to this agreement if Client files a voluntary petition seeking relief under the United States Bankruptcy Code or if there is an involuntary bankruptcy petition filed against Client in the United States Bankruptcy Court, and that petition is not dismissed within fifteen (15) days of its filing. Any suspension of services made pursuant to the provisions of this paragraph shall continue until such time as this agreement has been fully and properly assumed in accordance with the applicable provisions of the United States Bankruptcy Code and in compliance with the final order or judgment issued by the Bankruptcy Court. If the suspension of performance of Consultant's obligation pursuant to this agreement continues for a period in excess of ninety (90) days, Consultant shall have the right to terminate all services pursuant to this agreement.

21. This agreement shall not be construed to alter, affect or waive any design professional's lien, mechanic's lien or stop notice right which Consultant may have for the performance of services pursuant to this agreement. Client agrees to provide to Consultant the present name and address of the record owner of the property upon which the project is to be located. Client also agrees to provide Consultant with the name and address of any and all lenders who may loan money on the project and who are entitled to receive a preliminary notice.

22. If payment for Consultant's services is to be made on behalf of Client by a third-party lender, Client agrees that Consultant shall not be required to indemnify the third-party lender, in the form of an endorsement or otherwise, as a condition to receiving payment for services.

23. The Consultant shall not be required to execute any documents subsequent to the signing of this Agreement that in any way might, in the judgment of the Consultant, increase the Consultant's contractual or legal obligations or risk, or adversely affect the availability or cost of its professional or general liability insurance. Nor shall Consultant be required to sign any documents, requested by any party, including Client, that would result in the Consultant's having to certify, guarantee, warrant or state the existence of conditions whose existence the Consultant cannot ascertain. The Client also agrees not to make resolution of any dispute with the Consultant or payment of any money due to the Consultant, in any way contingent upon the Consultant's signing any such certification, guarantee, warranty or statement.

24. All fees and other charges due Consultant will be billed monthly and shall be due at the time of billing unless specified otherwise in this agreement. If Client fails to pay Consultant within thirty (30) days after invoices are rendered, Consultant shall have the right in its sole discretion to consider such default in payment a material breach of this entire agreement, and, upon written notice, Consultant's duties, obligations and responsibilities under this agreement may be suspended or terminated. In such event, Client shall promptly pay Consultant for all outstanding fees and charges due Consultant at the time of suspension or termination. If Consultant elects to suspend or terminate Consultant's services pursuant to this provision, Consultant is entitled to reasonable suspension or termination costs or expenses.

25. Client agrees that all billings from Consultant to Client are correct and binding on Client unless Client, within ten (10) days from the date of receipt of such billing, notifies Consultant in writing of alleged inaccuracies, discrepancies, or errors in billing.

26. Client agrees to pay a monthly late payment charge, which will be the lesser of one and one-half percent (1-1/2%) per month or a monthly charge not to exceed the maximum legal rate, which will be applied to any unpaid balance commencing thirty (30) days after the date of the billing.

27. If Consultant, pursuant to this agreement, produces plans, specifications, or other documents and/or performs field services, and such plans, specifications, or other documents and/or field services are required by any governmental agency, and such governmental agency changes its ordinances, codes, policies, procedures or requirements after the date of this agreement, any additional office or field services thereby required shall be paid for by Client as extra services in accordance with paragraph 29.

4-0005

28. In the event Consultant's fee schedule changes due to any increase of costs such as the granting of wage increases and/or other employee benefits to field or office employees due to the terms of any labor agreement, or increase in the cost of living, during the lifetime of this agreement, a percentage increase shall be applied to all remaining fees and charges to reflect the increased costs.

29. Client agrees that if Client requests services not specified in the scope of services described in this agreement, Client will pay for all such additional services as extra services, in accordance with Consultant's billing rates utilized for this agreement.

30. In the event that any staking or record monuments are destroyed, damaged or disturbed by an act of God or parties other than Consultant, the cost of restaking shall be paid for by Client as extra services in accordance with paragraph 29.

31. Client acknowledges that the design services performed pursuant to this agreement are based upon field and other conditions existing at the time these services were performed. Client further acknowledges that field and other conditions may change by the time project construction occurs and clarification, adjustments, modifications and other changes may be necessary to reflect changed field or other conditions. Such clarifications, adjustments, modifications and other changes shall be paid for by Client as extra services in accordance with paragraph 29.

32. Client shall pay the costs of all checking and inspection fees, zoning and annexation application fees, assessment fees, soils or geotechnical engineering fees, soils or geotechnical testing fees, aerial topography fees, and all other fees, permits, bond premiums, applicable taxes on professional services, title company charges, blueprints and reproductions, and all other similar charges not specifically covered by the terms of this agreement.

33. Client acknowledges and agrees that if Consultant provides surveying services, which services require the filing of a Record of Survey in accordance with Business and Professions Code section 8762, or a Corner Record pursuant to Business and Professions Code section 8773, all of the costs of preparation, examination and filing for the Record of Survey or Corner Record will be paid by Client as extra services in accordance with paragraph 29.

34. Consultant is not responsible for delay caused by activities or factors beyond Consultant's reasonable control, including but not limited to, delays by reason of strikes, lockouts, work slowdowns or stoppages, accidents, acts of God, failure of Client to furnish timely information or approve or disapprove of Consultant's services or instruments of service promptly, faulty performance by Client or other contractors or governmental agencies. When such delays beyond Consultant's reasonable control occur, Client agrees Consultant shall not be responsible for damages nor shall Consultant be deemed to be in default of this agreement. Further, when such delays occur, Client agrees that, to the extent such delays cause Consultant to perform extra services, such services shall be paid for by Client as extra services in accordance with paragraph 29.

35. Notwithstanding any other provision of this Agreement, and to the fullest extent permitted by law, neither the Client nor the Consultant, their respective officers, directors, partners, employees, contractors or subconsultants shall be liable to the other or shall make any claim for any incidental, indirect or consequential damages arising out of or connected in any way to the Project or to this Agreement. This mutual waiver of consequential damages shall include, but is not limited to, loss of use, loss of profit, loss of business, loss of income, loss of reputation or any other incidental, indirect or consequential damage that either party may have incurred from any cause or action.

36. Consultant shall not be liable for damages resulting from the actions or inactions of governmental agencies including, but not limited to, permit processing, environmental impact reports, dedications, general plans and amendments thereto, zoning matters, annexations or consolidations, use or conditional use permits, project or plan approvals, and building permits. Client agrees that it is the responsibility of Client to maintain in good standing all governmental approvals or permits and to timely apply for any necessary extensions thereof.

37. If the scope of services requires Consultant to estimate quantities, such estimates are made on the basis of Consultant's experience and qualifications and represent Consultant's best judgment as a professional generally familiar with the industry. However, such estimates are only estimates and shall not constitute representations,

Form A                                    Page 6 of 9

warranties or guarantees of the quantities of the subject of the estimate. If the scope of services requires Consultant to provide its opinion of probable construction costs, such opinion is to be made on the basis of Consultant's experience and qualifications and represents Consultant's best judgment as to the probable construction costs. However, since Consultant has no control over costs or the price of labor, equipment or materials, or over the contractor's method of pricing, such opinions of probable construction costs do not constitute representations, warranties or guarantees of the accuracy of such opinions, as compared to bid or actual costs.

38. Estimates of land areas provided under this agreement are not intended to be, nor should they be considered to be, precise. The estimate will be performed pursuant to generally accepted standards of professional practice in effect at the time of performance.

39. Client acknowledges that Consultant is not responsible for the performance of work by third parties including, but not limited to, the construction contractor and its subcontractors.

40. Consultant makes no warranty, either express or implied, as to its findings, recommendations, plans, specifications, or professional advice except that the services were performed pursuant to generally accepted standards of professional practice in effect at the time of performance.

41. In the event (1) Client agrees to, authorizes, or permits changes in the plans, specifications or documents prepared by Consultant, which changes are not consented to in writing by Consultant, or (2) Client agrees to, authorizes or permits construction of unauthorized changes in the plans, specifications or documents prepared by Consultant, which changes are not consented to in writing by Consultant, or (3) Client does not follow recommendations prepared by Consultant pursuant to this agreement, which changed recommendations are not consented to in writing by Consultant: Client acknowledges that the unauthorized changes and their effects are not the responsibility of Consultant and Client agrees to release Consultant from all liability arising from the use of such changes, and further agrees to defend, indemnify and hold harmless Consultant, its officers, directors, agents, employees and subconsultants from and against all claims, demands, damages or costs, including attorneys' fees, arising from the unauthorized changes.

42. Client agrees that in accordance with generally accepted construction practices, the construction contractor and construction subcontractors will be required to assume sole and complete responsibility for job site conditions during the course of construction of the project, including safety of all persons and property, and that this requirement shall apply continuously and not be limited to normal working hours. Neither the professional activities of Consultant nor the presence of Consultant or his or her employees or subconsultants at a construction site shall relieve the contractor and its subcontractors of their obligations, duties and responsibilities including, but not limited to, construction means, methods, sequence, techniques or procedures necessary for performing, superintending or coordinating all portions of the work of construction in accordance with the contract documents and applicable health or safety requirements of any regulatory agency or of state law.

43. Client agrees to require its contractor and subcontractors to review the plans, specifications and documents prepared by Consultant prior to the commencement of construction-phase work. If the contractor and/or subcontractors determine there are deficiencies, conflicts, errors, omissions, code violations, improper uses of materials, or other deficiencies in the plans, specifications and documents prepared by Consultant, contractors and subcontractors shall notify Client so those deficiencies may be corrected by Consultant prior to the commencement of construction-phase work.

44. If during the construction phase of the project Client discovers or becomes aware of changed field or other conditions which necessitate clarifications, modifications or other changes to the plans, specifications, estimates or other documents prepared by Consultant, Client agrees to notify Consultant and retain Consultant to prepare the necessary changes or modifications before construction activities proceed. Further, Client agrees to require a provision in its construction contracts for the project which requires the contractor to promptly notify Client of any changed field or other conditions so that Client may in turn notify Consultant pursuant to the provisions of this paragraph. Any extra work performed by Consultant pursuant to this paragraph shall be paid for as extra services pursuant to paragraph 29.

4-0007

45. Client agrees to purchase and maintain, or cause Contractor to purchase and maintain, during the course of construction, builder's risk "all risk" insurance which will name Consultant as an additional named insured as its interest may appear.

46. Client acknowledges that Consultant's scope of services for this project does not include any services related in any way to asbestos and/or hazardous or toxic materials. Should Consultant or any other party encounter such materials on the job site, or should it in any other way become known that such materials are present or may be present on the job site or any adjacent or nearby areas which may affect Consultant's services, Consultant may, at its option, suspend or terminate work on the project until such time as Client retains a qualified contractor to abate and/or remove the asbestos and/or hazardous or toxic materials and warrant that the job site is free from any hazard which may result from the existence of such materials.

47. Client hereby agrees to bring no cause of action on any basis whatsoever against Consultant, its officers and directors, principals, employees, agents and subconsultants if such claim or cause of action in any way would involve Consultant's services for the investigation, detection, abatement, replacement, use or specification, or removal of products, materials or processes containing asbestos, asbestos cement pipe, and/or any hazardous or toxic materials. Client further agrees to defend, indemnify and hold harmless Consultant, its officers, directors, principals, employees and subconsultants from any asbestos and/or hazardous or toxic material related claims that may be brought by third parties as a result of the services provided by Consultant pursuant to this agreement, except claims caused by the sole negligence or willful misconduct of Consultant.

48. Client agrees to defend, indemnify and hold harmless Consultant, its officers, directors, principals, employees and subconsultants from and against all claims, losses, damages and cost caused by, arising out of, or relating to, the presence of any fungus, mildew, mold or resulting allergens, provided that such claim, loss, damage or cost is not due to the sole negligence or willful misconduct of Consultant.

49. In the event of any litigation arising from or related to the services provided under this agreement, the prevailing party will be entitled to recovery of all reasonable costs incurred, including staff time, court costs, attorneys' fees, experts' fees and other related expenses.

50. Client agrees that in the event Consultant institutes litigation to enforce or interpret the provisions of this agreement, such litigation is to be brought and adjudicated in the appropriate court in the county in which Consultant's place of business is located, and Client waives the right to bring, try or remove such litigation to any other county or judicial district.

51. (a) Except as provided in subdivisions (b) and (c), in an effort to resolve any conflicts that arise during the design or construction of the project or following completion of the project, Client and Consultant agree that all disputes between them arising out of or relating to this agreement shall be submitted to nonbinding mediation, unless the parties mutually agree otherwise.

Client and Consultant further agree to include a similar mediation provision in all agreements with independent contractors and consultants retained for the project and to require all independent contractors and consultants also to include a similar mediation provision in all agreements with subcontractors, subconsultants, suppliers or fabricators so retained, thereby providing for mediation as the primary method for dispute resolution between the parties to those agreements.

(b) Subdivision (a) shall not preclude or limit Consultant's right to file an action for collection of fees if the amount in dispute is within the jurisdiction of the small claims court.

(c) Subdivision (a) shall not preclude or limit Consultant's right to record, perfect or enforce applicable mechanic's lien or stop notice remedies.

52. Client agrees to limit the liability of Consultant, its principals, employees and subconsultants, to Client and to all contractors and subcontractors on the project, for any claim or action arising in tort, contract, or strict liability, to the sum of $50,000 or Consultant's fee, whichever is greater. Client and Consultant acknowledge that this provision was expressly negotiated and agreed upon.

4-0008

IN WITNESS WHEREOF, the parties hereby execute this agreement upon the terms and conditions stated above.

Client _Northern California Universal Enterprise_ Consultant _DeWalt Corporation_

By _____     By _____

Name _____     Name _Jeffrey A Gutierrez_____

Title _____     Title _President_____

Date Signed _____     Date Signed _9 - 8 '04_____
Client should mail completed contract to the address shown for Consultant.

Form A                                   Page 9 of 9

4-0009

# EXHIBIT J

ITT 16



Martin-McIntosh

LAND SURVEYING · CIVIL ENGINEERING

March 18, 1992

Mr. Michael S. Brown
16255 Ventura Blvd., Suite 1000
Encino, CA 91436

Reference:    Proposal for Professional Planning and Engineering Services for
              Valley Rose Subdivision - Wasco, California
              Martin-McIntosh Project # 92-22

Dear Mr. Brown:

        We are pleased to submit our proposal for professional planning and engineering
services for the design of Valley Rose Subdivision in Wasco, California.  Martin-
McIntosh proposes to provide the following design services:

1.      Prepare Conceptual Plan Alternatives with associated densities.
2.      Prepare Draft Guidance Package consisting of the following:
        a.      Define Issues.
        b.      Determine roles and responsibilities of project players.
        c.      Determine development process.
        d.      Determine review process with City of Wasco.
3.      Refine Draft and Prepare Final Guidance Package.
4.      Prepare Final Conceptual Plan with preliminary lot layout.

We estimate the cost for the above services to be $15,200.00.

        Upon approval of the Conceptual Plan for the project, the following services
would be performed:

1.      Develop Master Plans for water, sewer, and drainage systems.
2.      Develop a phased Traffic and Circulation Plan per Cal-Trans requirement.
3.      Determine boundaries for first Williamson Act cancellation.
4.      Develop Tentative Tract Map for first 100 acres and process through City of
        Wasco.

EXHIBIT
J-1

17

Valley Rose Proposal
March 18, 1992
Page 2

5.      Write Environmental Findings for first Tentative Map.
6.      Process Zone Change through City of Wasco.
7.      Coordinate Development Agreement.

We estimate the cost for these services to be $54,800.00

        A field survey will be required for some of the above work and for all
Improvement Plans and Final Maps.  The following services would be provided:

1.      Boundary Survey
2.      Topographic Survey - 200' grid.
3.      Utility Research.
4.      Title Report - Easements.
5.      Topo Map
6.      Boundary Map.
7.      Soils Report

We estimate the cost for these services to be $19,100.00.

        This proposal is provided to you with the following qualifications:

1.      If fast-track timing is pursued, Martin-McIntosh would not be responsible for
        costs associated with developer - initiated revisions or unusual City of Wasco
        requirements.
2.      Costs of printing and reproductions are not included, and would be billed on a
        cost plus 10% basis.
3.      Public meetings are based on normal processing procedures and do not include
        cost for appeals, if required.


        This proposal is subject to your acceptance and execution of our standard
agreement.  Thank you for the opportunity to provide this proposal.  If you have any
questions, please feel free to contact us.

                                Sincerely,
                                MARTIN-MCINTOSH


                                Gene Martin

GM/pm

18



LAND SURVEYING • CIVIL ENGINEERING

May 11, 1992

Mr. Michael S. Brown
16255 Ventura Blvd., Suite 1000
Encino, CA 91436

Reference:   Addition to Agreement, dated March 18, 1992
Valley Rose Subdivision, Wasco, CA
M-Mc #92-22   — *Billing*

Dear Mr. Brown:

As you are aware, we are proceeding with a number of the tasks as outlined in
our letter and agreement, dated March 18, 1992. As the scope has been more clearly
defined and the need for additional services determined, we are pleased to submit our
proposal for these services:

1)   Prepare Parcel Map No. 9572. This map is required as part of your
agreement to purchase the land from the seller. We estimate the cost of
these services to be $ 5,000.

2)   Prepare Improvement Plans and Final Map for Tract No. 5472. These
will be developed from the approved Tentative Map. We estimate the
cost of these services to be $57,900.

3)   Prepare Improvement Plans and Final Map for Tract No. 5618. These
will be developed from the approved Tentative Map. We estimate the
cost of these services to be $183,000.

4)   In our March 18 letter, we included an estimated fee of $54,800 for
Master Planning services. The scope of these services have changed
somewhat. For example, the scope of the sewer, water and drainage studies has
been reduced, Since the City has provided us with approved studies to use as a
basis for our work. However, we have expanded the Master Plan to include
landscaping and design guidelines for the public facilities. The estimated fee for
these services should remain unchanged.

EXHIBIT 6
Deponent McIntosh
Date 10-18-02 Rptr. B.C.
WWW.DEPOBOOK.COM

4130 ARDMORE AVE., SUITE 101 • BAKERSFIELD, CA. 93309 • 805/834-4814

8x6

19

Mr. Michael Brown
May 11, 1992
Page 2

In addition to the above services, Improvement Plans for off-site water, sewer, drainage and roadway facilities will be required. The concept design for this work has not yet been determined. We will provide an estimated fee as soon as possible.

Enclosed is an updated schedule which includes the above additional services. Please review the estimate as well as the schedule. If you have any questions, please feel free to call me.

This proposal is subject to your acceptance and will become an extension to our current agreement dated March 18, 1992.

Sincerely,
MARTIN-MCINTOSH

Gene Martin

Accepted:

_____     _____
Michael S. Brown               Date

GM:RJS:pm

Enclosure

2'



LAND SURVEYING • CIVIL ENGINEERING

March 8, 1993

Legacy Group, LP
C/O Scapa & Brown
16000 Ventura Blvd.
Suite 1200
Encino, CA 91436

ATTN: Mr. Michael S. Brown

RE:     Valley Rose Estates - Cost Update
        Martin-McIntosh Project No. 92-22

Dear Mr. Brown:

The purpose of this letter is to bring you up to date regarding costs on the above project.
As you are aware, your contract with Martin-McIntosh is hourly based on our current rate
schedule. On March 18, 1992, and June 24, 1992, you were provided with the scope of
the work and estimates of cost as they were known at that time. Since then, the scope of
the project has increased requiring additional design services.

The following is a list of tasks and contract items which changed in scope or were added
to the project at the request of the Legacy Group since the June 24, 1992 letter. The costs
shown are in addition to the original budget estimates.

    1. Route 46 Offsite Survey - Work was required to perform
    design for Route 46 Improvements. (No original budget.)     $ 4,550.00

    2. Offsite Sewer Survey - Work was required as a result of
    the City's decision to require construction of sewer lines to
    existing Waste Water Treatment Plant.
    (No original budget.)     $ 6,570.00

    3. Offsite Water Survey - Work was required for design of
    Route 46 water main, water storage tank and booster
    station. (No original budget.)

    $ 11,860.00

2001 WHEELAN COURT • BAKERSFIELD, CA 93309 • 805/834-4814



23

Legacy Group, LP
March 8, 1993
Page 2

4. Development Agreement - Time was originally budgeted
only for review of engineering issues in the document. At
the request of the Legacy Group, we were involved in
writing and editing of a number of technical sections in
addition to the review of the entire document.
(Original budget - $5,000)                                        $  16,100.00

5. Parcel Map #9572 - Original budget estimated
completion of a Final Map based on a previously approved
Tentative Map. Upon approval of the Land Plan, Legacy
Group authorized a revised Tentative Parcel Map to be
prepared based on the Land Plan to obtain City approval of
the revised Map. The City then limited the number of
parcels after submittal of the Tentative Map, requiring
redesign. In addition, Legacy Group requested preparation
of legal descriptions for drilling islands and research into the
mineral rights ownership, surface waiver processing and
research of waiver statutes. (Original budget - $10,000)          $  16,040.00

6. Williamson Act Cancellation - Work was required to
process Tentative Map No. 5618. Corrected previous land
owner's cancellation legal descriptions on the property. (No
original budget.)                                                 $    4,280.00

7. Master Studies (Water, Sewer, Drainage) - Original
budget estimate included revisions to previously approved
studies necessary to reflect changes in roadway alignments.
The City then required a rewrite of all studies, and re-
analysis of the systems per the standards provided. Multiple
City reviews occurred over a five month period requiring a
number of changes and refinements.
(Original budget - $15,000)                                       $  40,720.00

8. Revisions to Tract 5618 - At the request of Legacy
Group, we revised the Tract to increase the number of R-1
lots, reducing the number of R-2 lots, including changes to
the Tentative Map, Grading Plan, Street Plans, Plot Plan
and Final Map. (No original budget.)                              $  12,660.00

Legacy Group, LP
March 8, 1993
Page 3

*9. <u>Offsite Sewer</u> - After early concurrence from the City to allow an on-site WWTP, the City then reversed their thinking and required a pump station and force main connection to the City's existing WWTP south of the project. (Original budget - $25,000)

$ 22,060.00

*10. <u>Oversizing Pump Station</u> - The City authorized oversizing of the pump station, gravity sewers and force main. (City has agreed to reimburse Legacy Group for this work.) (No original budget.)

$ 2,000.00

*11. <u>Offsite Water</u> - Legacy Group authorized an alternate water study and the design of an offsite water main and a storage tank. Also, investigation of the use of existing Ag wells and coordination with well driller. Original budget allowed only for the development of a well site and on-site storage tanks. (Original budget - $25,000)

$ 18,430.00

*12. <u>Offsite Highway (Caltrans)</u> - CalTrans has required that the Legacy Group provide a Project Study Report (not originally required). Also modification of required improvements on Route 46 following the first plan check. (Original budget - $25,000)

$ 12,570.00

*13. <u>Plot Plans for Tracts 5472 & 5618</u> - Legacy Group requested our review of floor plans and development of Plot Plans and matrices to show lot availability. Also, a Special Planning District is required to provide flexibility in setbacks to accommodate models and meet stated project objectives. (No original budget.)

$ 6,600.00

Total Additional Cost Through February 22, 1993       $174,440.00

The costs shown above represent our services through February 26, 1993. The work noted with an asterisk (*) is on-going and additional costs will be incurred. It should also be noted that our experience with Quad Consultants to date has been difficult. Their review process is very slow and many times we find that their review comments represent personal views and are not necessarily the requirements of City Codes and Ordinances presently in place.

2

Legacy Group, LP
March 8, 1992
Page 4

While some personal opinion is expected, a meeting of the minds usually resolves issues. In this case we are finding a lack of commitment by City staff to the Codes and Standards provided to us early in the project.  Unless this procedure is modified, we expect the costs for completion of plans currently in process to exceed our best estimates.

I hope this brings you up to date on the status of the various phases of the project.  If you have any questions or comments, please call me.

Sincerely,
Martin-McIntosh

Gene Martin

GM:RJS:yr

cc:    R. Staub
        C. Christensen
        J. Higgins

# EXHIBIT K



RECEIVED

JUN 29 1992

Law Offices of
~~~~ & Brown

LAND SURVEYING • CIVIL ENGINEERING

June 24, 1992

Mr. Michael S. Brown
16000 Ventura Blvd., Suite 1200
Encino, CA 91436


Reference:    Addition to Agreement, dated March 18, 1992
              Valley Rose Subdivision, Wasco, CA
              M-Mc #92-22

Dear Mr. Brown:

    As you are aware, we are proceeding with a number of the tasks as outlined in our letter and agreement, dated March 18, 1992. As the scope has been more clearly defined and the need for additional services determined, we are pleased to submit our proposal for these services:

    1)    Prepare Tentative and Final Parcel Map No. 9572. This map is required as part of your agreement to purchase the land from the seller. We estimate the cost of these services to be $ 10,000.

    2)    Prepare Tentative Map Improvement Plans and Final Map for Tract No. 5472. We estimate the cost of these services to be $70,000.

    3)    In our March 18 letter, we included an estimated fee of $55,000 for Master Planning services. The scope of these services has changed considerably since that time. For example, we have expanded the Master Plan to include landscaping and design guidelines for the public facilities. The City had originally provided us with approved sewer, water and drainage studies to use as a basis for our work. They have now requested that these studies be completely revised to bring them to their current standards. We estimate the Master Planning services to be increased to $62,800.

    4)    Prepare Tentative Map, Improvement Plans and Final Map for Tract No. 5618. We estimate these services to be $225,000.

4130 ARDMORE AVE., SUITE 101 • BAKERSFIELD, CA. 93309 • 805/834-4814



EXHIBIT
J-39

Mr. Michael Brown
June 24, 1992
Page 2

    5)     Prepare Engineering Studies and Improvement Plans for required off-site sewer, water and highway work.  We estimate these services to be $75,000.

    In order to provide the many required items of work to the City and to meet scheduling deadlines, some work is currently being done on all of the above items. However, it is our intention to only provide our services to you as required to meet your schedule.  We estimate that about 35% of Items 4 & 5 will be required at this time so that the bonding process can go forward.

    This proposal is subject to your acceptance and will become an extension to our current agreement dated March 18, 1992.

                    Sincerely,
                    MARTIN-MCINTOSH

                    Gene Martin

Accepted:

_____    _____
Michael S. Brown            Date

GM:RJS:pm

Enclosure

BP000418

# EXHIBIT L

# VALLEY ROSE ACCOUNT SUMMARY

| JOB #'S | DESCRIPTION | TOTAL INVOICED | TOTAL PAID | DATE OF LAST PAYMENT | AMOUNT OF LAST PAYMENT |
|---|---|---|---|---|---|
| 92-22 | Valley Rose Golf Course & Sub.Sec 4 | $18,499.27 | $18,499.27 | 6/21/93 | $22.? |
| 92-22.01 | Survey Topo & Boundary | $47,000.46 | $47,000.46 | 10/27/93 | $1,088.0 |
| 92-22.02 | Master Planning | $142,893.98 | $129,837.77 | 3/21/94 | $2,000.0 |
| 92-22.03 | Williamson Act Cancellation | $4,190.45 | $4,190.45 | 11/12/92 | $380.0 |
| 92-22.04 | Tract #5472 | $308,419.37 | $240,776.18 | 4/28/94 | $6,662.2 |
| 92-22.05 | Tract #5618 | $275,257.17 | $149,459.94 | 4/28/94 | $64.0 |
| 92-22.06 | Parcel Map 9572 | $26,073.40 | $25,835.80 | 6/21/93 | $27.0 |
| 92-22.07 | Business Card Development | $142.76 | $142.76 | 9/8/92 | $142.7 |
| 92-22.08 | Assessment District Engineering | $36,113.11 | $0.00 | | |
| 92-22.09 | Offsite Sewer | $111,125.83 | $67,943.18 | 5/9/94 | $6,635.1 |
| 92-22.10 | Offsite Water | $101,633.48 | $69,855.35 | 4/28/94 | $2,969.9 |
| 92-22.11 | Offsite Highway (CalTrans) | $59,111.82 | $51,698.89 | 4/28/94 | $1,621.6 |
| 92-22.12 | Color Rendering | $4,260.29 | $946.16 | 2/2/94 | $946.1 |
| 92-22.13 | Resubdivide R-2 in Tr. 5618 | $180.00 | $180.00 | 2/2/94 | $180.0 |
| 92-22.14 | Surveying Extras | $77.10 | $77.10 | 2/17/94 | $77.1 |
| 92-22.15 | Unbilled Assessment Work | $11,157.89 | | | |
| 92-22.16 | Lot Study Plan | $3,773.90 | $2,000.00 | 3/2/94 | $2,000.0 |
| | | | | | |
| TOTALS: | | $1,149,910.28 | $808,443.31 | | $24,816.3 |
| | | | | | |
| | City of Wasco | | $195,729.62 | | |
| | Michael Brown | | $612,512.02 | | |
| | | | $808,241.64 | | |



EXHIBIT
J-4