James J. Braze, Esq.; SBN 75911
Jeffrey A. Travis, Esq.; SBN 235507
BORTON PETRINI, LLP
5060 California Avenue, Suite 700
Post Office Box 2026
Bakersfield, CA 93303
Telephone (661) 322-3051
email: jbraze@bortonpetrini.com
email: jtravis@bortonpetrini.com

Attorneys for Plaintiff, Roger McIntosh

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| ROGER McINTOSH,<br><br>  Plaintiff,<br><br>v.<br><br>NORTHERN CALIFORNIA UNIVERSAL ENTERPRISES COMPANY, a California corporation; LOTUS DEVELOPMENTS, LLP; THE CITY OF WASCO, a municipal corporation; DEWALT CM, INC., a California corporation also doing business as DEWALT CORPORATION; and DOES 1 through 10, inclusive<br><br>  Defendants. | Case No. 1:07-CV- 01080 LJO-GSA<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DETERMINE GOOD FAITH SETTLEMENT PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 877.6(a)(1) |
| CITY OF WASCO,<br><br>  Cross-Complaint,<br><br>vs.<br><br>NORTHERN CALIFORNIA UNIVERSAL ENTERPRISES COMPANY, INC.,<br><br>  Cross-Defendant. | |

/ / /

/ / /

H:\PUBLIC\054493\060971
McIntosh v. Northern\MTN
FOR GFS 6-9-10.wpd

1

MEMO OF P'S AND A'S IN SUP OF NT OF MOTION TO DETERMINE GOOD FAITH SETTLEMENT, ETC.

# I.

## INTRODUCTION

Before the court is plaintiff Roger McIntosh's Motion for Determination that the Settlement Agreement ("Settlement") entered into by the plaintiff Roger McIntosh ("McIntosh") and defendant City of Wasco ("Wasco") in or about June of 2010 was made in good faith pursuant to California Code of Civil Procedure section 877.6 thereby barring any claims against Wasco for equitable or implied indemnity. (Declarations of Jeffrey A. Travis and Chaka Okadigbo, ¶¶8 and 5, respectively)

The parties were unsuccessful in reaching a joint stipulation between plaintiff and the three other defendants, Northern California Universal Enterprises Company, Inc. ("Northern"), Lotus Developments, LP ("Lotus") and Dennis W. DeWalt, Inc. ("DeWalt"). (Travis Decl., ¶¶5-7) Specifically, and although Northern and Lotus were not objecting to the fact that a settlement had been reached between Wasco and McIntosh, they did object to the proportionate allocations as between actual damages and profits presented by both plaintiff and Wasco. (Id.)

McIntosh and Wasco agreed to a final settlement amount of $750,000. The jury awarded plaintiff actual damages in the amount of $1.4 million jointly and severally as to all the defendants and $1.5 million in infringer's profits attributable to Wasco. Plaintiff allocates a 40% share (the percentage of the settlement amount to Wasco's total liability) of $600,000 to profits and $150,000 to actual damages. (See, Exhibit A attached to Declaration of Jeffrey A Travis, ¶¶4 and 8 and Okadigbo Decl., ¶4)

Northern's and Lotus expressed disagreement as to the position that the allocation is disproportionate because the City of Wasco was responsible for copying both the 5472 Tentative Map and the 5472 Improvement Plans. Therefore, and according to them, all of the settlement amount should be allocated toward actual damages..

As of the date of signing this declaration, the plaintiff has yet to receive any response from DeWalt and whether they oppose or agree to the settlement or its allocations despite repeated telephone calls and email correspondences to opposing counsel for DeWalt. (Travis Decl., ¶7)

Based upon the respective positions of the non-settling defendants and in order to

H:\PUBLIC\054493\060971
McIntosh v. Northern\MTN
FOR GFS 6-9-10.wpd

2

MEMO OF P'S AND A'S IN SUP OF NT OF MOTION TO DETERMINE GOOD FAITH SETTLEMENT, ETC.

bring this matter to a close as between McIntosh and Wasco, both parties jointly bring this motion to determine a good faith settlement pursuant.

## II.

## BACKGROUND

In July of 2007, McIntosh brought a claim against Northern and Lotus for infringing on his 5472 Tentative Map and Improvement Plans which were created between 1992 and 1994. Later, second and third amended complaints brought in the remaining defendants, the City of Wasco and DeWalt. In addition to direct infringement, the complaint also further alleged derivative liability against all defendants.

At trial, the verdict established that all defendants were liable for copying the 5472 Map and the City of Wasco was liable for copying the 5472 Improvement Plans. (*See*, Verdict, Doc. No. 328) The verdict also awarded plaintiff actual damages in the amount of $1.4 million as to all the defendants and $1.5 million in infringer's profits attributable to Wasco. This is in addition to additional infringer's profits of approximately $1.8 million for both Lotus and Northern.

Actual damages are attributable to all defendants jointly and severally and infringer's profits are only attributable to the infringer who received those profits. However, in this case, both Northern and Lotus, per the verdict, were also considered to be individually liable for each of their respective infringer's profits. After the jury verdict, post-trial motions have been filed. While they were pending, McIntosh and Wasco reached a settlement. (The Settlement Agreement is attached as Exhibit "A" to the Declaration of Jeffrey A. Travis) Plaintiff's motion seeks to determine the good faith of the settlement proceeds on the following grounds: 1) The settlement is reasonable in light of the approximation of plaintiff's total recovery versus the settling parties' proportionate liability; 2) The amount paid in settlement is reasonable; 3) The allocation of the settlement proceeds to the plaintiff is reasonable; and 4) There has been no collusion, fraud or tortious conduct between the settling parties aimed at making the non-settling parties pay more than their fair share.

/ / /

/ / /

/ / /

H:\PUBLIC\054493\060971
McIntosh v. Northern\MTN
FOR GFS 6-9-10.wpd

3

MEMO OF P'S AND A'S IN SUP OF NT OF MOTION TO DETERMINE GOOD FAITH SETTLEMENT, ETC.

## III.

## ANALYSIS

California Code of Civil Procedure section 877.6(a)(1) provides:

> "Any party to an action in which it is alleged that two or more parties are joint tortfeasors or co-obligors on a contract shall be entitled to a hearing on the issue of good faith of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors or co-obligors, upon giving notice in the manner provided in subdivision (b) of Section 1005. Upon showing of good cause, the Court may shorten the time for giving the required notice to permit the determination of the issue being made before the commencement of the trial of the action or before verdict or judgment if settlement is made after the trial has commenced." (See, Cal. Code Civ. Proc., § 877.6(a)(1).)

Under California laws interpreted by the Ninth Circuit, test for "good faith" is defined as follows:

> "Section 877 applies to settlement made in good faith only. Individuals not participating in the settlement are barred from seeking contribution only if the settling parties acted in good faith with respect to them. Hence, good faith of the dismissal alone is not sufficient. The dismissal should represent a settlement which is a good faith determination of relative liabilities. Only in this situation are both policies behind Section 877 - Equitable and Settlement - Further." (*Commercial Union Ins. Co. v. Ford Motor Co.*, 640 F.2d 210, Ninth Circuit, cert den., 454 USA 58 1981.)

California courts have interpreted good faith in a situation where plaintiff settles with fewer than all defendants, as follows:

> "The settling parties owe the non-settling parties a legal duty to refrain from tortious or other wrongful conduct; absent conduct violative of such duty, the settling parties may act to further their respective interests without regard to the effect of their settlement upon other defendants." (*Dompeling v. Superior Court* (1981) 117 Cal.App.3d 798, 809-810.)

One of the primary purposes of good faith settlements is to encourage settlement between parties. (*River Garden Farms, Inc.* v. *Superior Court* observed, (*River Garden Farms, Inc. v. Superior Court*, (1972) 26 Cal.App.3d 986, 993)) As part of encouraging settlements, this includes allowing a Court to order a good faith settlement even if it relieves a defendant of paying more than their theoretical proportionate fair share. (*Tech-Built, Inc. v. Woodward-Clyde & Associates* (1985) 38 Cal.3d 488, 499, citing, *Dompeling v. Superior Court* (1981) 117 Cal.App.3d

H:\PUBLIC\054493\060971
McIntosh v. Northern\MTN
FOR GFS 6-9-10.wpd

4

MEMO OF P'S AND A'S IN SUP OF NT OF MOTION TO DETERMINE GOOD FAITH SETTLEMENT, ETC.

798).

The California Supreme Court set forth various factors for determining whether a settlement has been made in good faith. (*Tech-Built* (1985) 38 Cal.3d 488) These factors are:

    1.    A rough approximation of plaintiff's total recovery and the settlors' proportionate liability;
    2.    The amount paid in settlement;
    3.    The allocation of settlement proceeds among the plaintiff;
    4.    A recognition that a settlor should pay less in settlement than he would if he would were found liable after trial;
    5.    The financial conditions and insurance policy limits of settling defendants; and
    6.    The existence of collusion, fraud or tortious conduct aimed to injure the non-settling defendants' interests. (*Tech-Built*, 38 Cal.3d 488, 499.)

The California Supreme Court further explained that:

> "The party asserting a lack of good faith . . . should be permitted to demonstrate if he can let the settlement so far 'out of the ballpark' in relation to these factors has to be inconsistent with the equitable objectives of the statute. Such a demonstration would establish that a proposed settlement was not a "settlement made in good faith" . . . *Tech-Built,* 38 Cal.3d at 500-501.

Practical considerations require that any evaluation be made on the basis of information available at the time of the settlement. (*Ibid* at 499.)

**A.    Proportionate Liability.**

Here, the settling parties seek to apportion the total settlement amount of $750,000 between the profits owed by Wasco equaling $1.5 million and their proportionate share of their liability for actual damages of $1.4 million. (*See*, Exhibit A, attached to Travis Decl.) Therefore, and according to plaintiff's calculations, the proportionate share between profits and liability for Wasco on the settlement would be $600,000 allocated to the profits and $150,000 allocated to actual damages. The settlement allocation proposed by the plaintiff is based on totaling Wasco's proportionate share of actual damages ($350,000) with their share of profits ($1.5 million) divided into the settlement amount to determine an overall percentage of app. 40%. (.4054) (Travis Decl., ¶*) Therefore, $600,000 is 40% of $1.5 million and $150,000 is 42% of Wasco's proportionate share of actual damages.[1]

---

[1] It is assumed that each defendant is responsible for actual damages equal to $350,000, or, one quarter of $1.4 million.

H:\PUBLIC\054493\060971
McIntosh v. Northern\MTN
FOR GFS 6-9-10.wpd

5

MEMO OF P'S AND A'S IN SUP OF NT OF MOTION TO DETERMINE GOOD FAITH SETTLEMENT, ETC.

1   In response to proposing this settlement and the allocations to the non-settling
2 defendants, Northern and Lotus contend that because the City of Wasco copied both the Map and
3 the Plans and DeWalt, Northern and Lotus were only found to have copied the Map, this does not
4 meet the "rough approximation test" normally used in these cases.  According to Northern and
5 Lotus, the additional act of copying the Map increases the proportionate share of liability to Wasco
6 beyond a mere one-fourth proportionate share.

7   The inherent and impossible problem with Northern's position is that the jury never
8 apportioned fault and they were never asked to do so.  The problem with this position is that there
9 is no way of knowing what portion of the actual damages the jury assigned to the Map as opposed
10 to the Plans.  Therefore, this would require speculation as to what that amount might be.

11   Northern's and Lotus' position also assumes that the value of the Map and the Plans
12 were different or, that the value of the Plans were more valuable than the Map itself. The jury did
13 not make any such determination as far as what was more valuable than the other and this an
14 artificial construction made by defendants with no basis in the testimony or evidence at trial.

15   To the contrary, at trial, it was plaintiff's position that getting an infringing map that
16 was substantially similar to plaintiff's Map was the key to being able to sell these or occupy homes
17 pursuant to the Government Code.  That is what made the Map so valuable because all of the
18 engineering had already been done making it easier for Northern and Lotus to fast track the process
19 through the City of Wasco and avoid expensive engineering costs.  The engineering costs were
20 established without refutation by the defendants and that amount totaled $1.4 million after offsets
21 for amounts paid.  Northern and Lotus, through its engineer DeWalt, had to do so little because
22 McIntosh had to do so much.  This effort was all centered on getting an infringing Map to avoid
23 having to redo those efforts.  (*See, Del Madera Properties v. Rhodes & Gardner*, 637 F.Supp 262,
24 264 (N.D. Ca. 1985)

**B.    The Amount Paid in Settlement.**

> "A defendant's settlement figure must not be grossly disproportionate to what a reasonable person at the time of the settlement would estimate the settling defendant's liability to be. (*Torres v. Union Pacific Railroad Co.* (1984) 157 Cal.App.3d 499, 509.)

H:\PUBLIC\054493\060971
McIntosh v. Northern\MTN
FOR GFS 6-9-10.wpd

6

MEMO OF P'S AND A'S IN SUP OF NT OF MOTION TO DETERMINE GOOD FAITH SETTLEMENT, ETC.

The California Court of Appeal further explained:

> "For the damages are often speculative and the probability of legal liability therefore is often uncertain and remote and even where the claimant's damages are obviously great and the liability therefore is certain, a disproportionately low settlement figure is often reasonable in the case of a relatively insolvent and uninsured or underinsured joint tortfeasor.

The settlement between plaintiff and Wasco is not "out of the ballpark" considering that Wasco is a small municipality with limited resources and given the total future amount that will be expended by both parties in prosecuting and defending post-trial motions and the years that are expected to conclude this matter on appeal. Furthermore, and although there was a jury verdict in favor of plaintiff, there is always a risk to plaintiff of a remittitur or new trial. The settlement amount avoids all of these risks and costs.

Just because Wasco's ultimate proportionate share is reduced is not the determinative factor. (*See, Tech-Bilt, supra*, at 499) The total amount represents approximately 42 cents on the dollar of the total damages and profits awarded against Wasco. This is a fair settlement considering the circumstances. For the same reasons the fourth and fifth factors set forth by *Tech-Built*, a recognition that a settler should pay less in settlement than if you are found liable after trial, and the financial conditions of the settling defendant, are also met.

C. **Collusion, Fraud or Tortious Conduct Aimed at Injuring Non-Settling Defendants' Interests.**

The *Tech-Built* factors require that there be no collusion, fraud or tortious conduct aimed at injuring the non-settling defendants' interests.

Here, both plaintiff and Wasco came to a reasonable arms length negotiation as to what was in their best interests and for a fair amount of the total award against Wasco. (Travis Decl., ¶8) This amount totaled approximately 40% and is a settlement calculated to not only provide an immediate agreement with Wasco without additional litigation, but also avoids any risks associated with any adverse rulings to plaintiff on the post-trial motions and appeals. This is not the type of settlement that puts the remaining non-settling defendants on the hook for the entire actual damages award, but in fact reduces it through an approximation of Wasco's proportionate interest.

H:\PUBLIC\054493\060971
McIntosh v. Northern\MTN
FOR GFS 6-9-10.wpd

7

MEMO OF P'S AND A'S IN SUP OF NT OF MOTION TO DETERMINE GOOD FAITH SETTLEMENT, ETC.

## IV.

## CONCLUSION

Based on the foregoing, it is respectfully requested that this Court issue an order determining the good faith of the settlement between plaintiff Roger McIntosh, and defendant City of Wasco.

DATED: June 17, 2010

        Respectfully submitted,

        BORTON PETRINI, LLP


        By:___/s/ Jeffrey A. Travis_____
           Jeffrey A. Travis, Attorney for Plaintiff,
           Roger McIntosh dba McIntosh & Associates

H:\PUBLIC\054493\060971
McIntosh v. Northern\MTN
FOR GFS 6-9-10.wpd

8

MEMO OF P'S AND A'S IN SUP OF NT OF MOTION TO DETERMINE GOOD FAITH SETTLEMENT, ETC.

## PROOF OF SERVICE
### (FRCP No. 5(b)(2)(E))
### STATE OF CALIFORNIA, COUNTY OF KERN

I, Vanessa J. Claridge, declare:

I am a citizen of the United States. I am employed in the County of Kern, State of California. I am over the age of 18 and not a party to the within action; my business address is 5060 California Avenue, Suite 700, Bakersfield, California 93309.

On **June 17, 2010**, I served the foregoing document described as **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NOTICE OF MOTION TO DETERMINE GOOD FAITH SETTLEMENT PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 877.6(a)(1)** on the other party(ies) in this action as follows:

| | |
|---|---|
| Steven John Hassing, Esq.<br>Law Offices of Steven J. Hassing<br>425 Calabria Court<br>Roseville, CA 95747<br>email address: **stevehassing@yahoo.com** | Attorneys for Attorneys for Defendants,<br>Northern California Universal Enterprises<br>Company and Lotus Developments<br>Tel:   916/677-1776<br>**Fax:   916/677-1770** |
| Chaka Okadigbo, Esq.<br>**GCR, LLP**<br>520 S. Grand Ave, Suite 695<br>Los Angeles, CA 90071<br>email address: **cokadigbo@gcrlegal.com** | Attorneys for Def./Appellant, City of Wasco<br><br>Tel: 213/347-0210<br>**Fax: 213-347-0216** |
| Ann T. Schwing, Esq.<br>**McDonough Holland & Allen PC**<br>500 Capitol Mall, 18th Floor<br>Sacramento, CA  95814-4704<br>email address: | Attorneys for Def./Appellant, City of Wasco<br><br>Tel:  916/444-3900<br>**Fax: 916/444-8334** |
| William L. Alexander, Esq.<br>**Alexander & Associates**<br>1925 "G" Street<br>Bakersfield, CA 93301<br>email address: **walexander@alexander-law.com** | Attorneys for Defendant, DeWalt CM, Inc.<br><br>Tel: 661/316-7888<br>**Fax: 661/316-7890** |

X  **BY ELECTRONIC SERVICE:** Pursuant to Fed. R. Civ. P. 5(b)(2)(E) and Local Court Rule(s), the foregoing document will be served by the court via CM/ECF. Pursuant to the CM/ECF docket for this case proceeding the following person(s) are on the Electronic Mail Notice List to receive ECF transmission at the email address(es) indicated below:

X  **BY MAIL:**  As follows:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at , California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on **June 17, 2010**, at Bakersfield, California.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

_____Vanessa J. Claridge_____     _____/s/ Vanessa J. Claridge_____

H:\PUBLIC\054493\060971
McIntosh v. Northern\MTN
FOR GFS 6-9-10.wpd

9
MEMO OF P'S AND A'S IN SUP OF NT OF MOTION TO DETERMINE GOOD FAITH SETTLEMENT, ETC.