IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROGER McINTOSH,<br><br>    Plaintiff,<br>    vs.<br>NORTHERN CALIFORNIA UNIVERSAL ENTERPRISES, INC., et al,<br><br>    Defendants.<br>_____ / | CASE NO. CV F 07-1080 LJO GSA<br><br>**ORDER ON MOTION FOR GOOD FAITH SETTLEMENT**<br>(Doc. 391.) |

## INTRODUCTION

Plaintiff Roger McIntosh ("Mr. McIntosh") and defendant City of Wasco ("Wasco") seek this Court's determination that their $750,000 settlement of Mr. McIntosh's copyright infringement claims and allocation of the $750,000 between infringing actual damages and profits are in good faith. Defendants Northern California Universal Enterprises, Inc. ("NCUE") and Lotus Developments, L.P. ("Lotus") challenged the proposed allocation between actual damages and profits as "unfair and inequitable" based on what they characterize as Wasco's greater culpability. Defendant Dennis W. DeWalt, Inc. ("DeWalt")[1] agrees with NCUE and Lotus and contends that the proposed allocation between actual damages and profits injuriously reduces the offset to which NCUE, Lotus and DeWalt are entitled. This Court considered Mr. McIntosh's good faith settlement motion, joined by Wasco, on the record and without a hearing. For the reasons discussed below, this Court GRANTS the good faith settlement motion, including its proposed allocation of actual damages and profits.

---

[1] NCUE, Lotus, DeWalt and Wasco will be referred to collectively as "defendants."

1

# BACKGROUND

## Summary

This action arises from alleged infringing use of a tentative map and improvement plans to develop 33.51 acres of a 480-acre parcel as a subdivision in Wasco. Mr. McIntosh, a Bakersfield civil engineer, claims that defendants "created a residential subdivision by copying and using McIntosh's copyrighted works and employing a tangible embodiment of the landscape design McIntosh conceived and created." This Court conducted a jury trial on March 1-4 and 8-9, 2010. The jury returned a March 10, 2010 verdict to award Mr. McIntosh $6,884,315, comprising what the jury found as Mr. McIntosh's actual damages and NCUE, Lotus and Wasco's profits from infringing use of Mr. McIntosh's copyrighted works.

## Jury Verdict

With its verdict, the jury found that:

1. Defendants copied Mr. McIntosh's tentative map and that only Wasco had copied Mr. McIntosh's improvement plans;
2. NCUE, Lotus and Wasco profited directly from copying of either Mr. McIntosh's tentative map or improvement plans done by any of the other defendants;
3. NCUE, Lotus and Wasco failed to exercise their right and ability to supervise or control the other defendants' copying of Mr. McIntosh's tentative map or improvement plans;
4. Mr. McIntosh is entitled to $1.4 million in actual damages;
5. NCUE and Lotus each profited $1,992,107.50 from their respective infringing activity;
6. Wasco profited $1.5 million from its infringing activity;
7. DeWalt did not profit from its infringing activity; and
8. NCUE and Lotus acted as partners or practically partners in committing infringing activity.

## Mr. McIntosh And Wasco's Settlement

With post-trial motions pending, Mr. McIntosh and Wasco entered into a June 17, 2010 Settlement Agreement and Release ("settlement agreement") to settle Mr. McIntosh's claims against Wasco for $750,000 with $400,000 payable within 10 days to this Court's good faith settlement

determination and the remainder in four annual installments.  Mr. McIntosh and Wasco seek to allocate $600,000 toward Wasco's infringer profits and $150,000 toward "Wasco's proportionate share of actual damages" of $1.4 million for which defendants are jointly and severally liable.  Infringer profits are attributable only to the defendant which received the profits.[2]

Mr. McIntosh and Wasco reach the allocation based on the following calculations:

1. One fourth of the $1.4 million actual damages equals $350,000;[3]
2. $350,000 plus Wasco's $1.5 million infringing profits equals $1.85 million;
3. Wasco's $750,000 settlement divided by $1.85 million equals .4054 to serve as percentage for the allocation;
4. **$600,000 proposed profits allocation** divided by Wasco's $1.5 million infringing profits equals .40 (or 40 percent); and
5. **$150,000 proposed actual damages allocation** divided by $350,000 (1/4 of $1.4 million actual damages award) equals .42 (or 42 percent).

In sum, 40 percent of Wasco's profits is $600,000 and roughly 40 percent of its proposed share of actual damages is $150,000.

The settlement agreement provides that if this Court "does not deem the above allocations between infringer profits and actual damages to be acceptable, the parties agree to accept any alternative allocation required by the Court as a condition of its determination that this Agreement constitutes a good faith settlement."

## DISCUSSION

### Good Faith Settlement Determination

Mr. McIntosh, joined by Wasco, contends the settlement is in good faith in that it is "reasonable," "fairly apportions the settlement amount between the defendants," and is based on no "fraud or tortious

---

[2] When a copyright is infringed, all infringers are jointly and severally liable for plaintiffs' actual damages, but each defendant is severally liable for his or its own illegal profit; one defendant is not liable for the profit made by another." *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 519 (9th Cir. 1985) (citing *MCA, Inc. v. Wilson*, 677 F.2d 180, 186 (2d Cir.1981)).

[3] Mr. McIntosh and Wasco propose that the $1.4 million actual damages should be divided equally among the four defendants.

3

1 conduct" to injure NCUE, Lotus or DeWalt.

2 NCUE, Lotus and DeWalt seek to allocate the entire $750,000 settlement to actual damages because the jury found that Wasco had infringed on Mr. McIntosh's tentative map and improvement plans but found that NCUE, Lotus and DeWalt had infringed on only the tentative map. DeWalt agrees to such an allocation but also proposes alternative allocations to avoid injury to NCUE, Lotus and DeWalt from a reduction of "the offset or credit against actual damages to which the non-settling defendants are entitled."

In case such as this, state law governs determination of a good faith settlement. *See Owen by and through Owen v. U.S.*, 713 F.2d 1461, 1464 (9th Cir. 1983); *Spectra-Physics, Inc. v. Chase Manhattan Bank*, 654 F.Supp. 311, 313 (N.D. Cal. 1987). Under California Code of Civil Procedure section 877.6 ("section 877.6"), a party may seek determination of good faith settlement:

> (a)(1) Any party to an action in which it is alleged that two or more parties are joint tortfeasors . . . shall be entitled to a hearing on the issue of the good faith of a settlement entered into by the plaintiff . . . and one or more alleged tortfeasors . . .

"A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor . . . from any further claims against the settling tortfeasor . . . for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault." Cal. Code Civ. Proc., § 877.6(c). "The party asserting the lack of good faith shall have the burden of proof on that issue." Cal. Code Civ. Proc., § 877.6(d); *see City of Grand Terrace v. Superior Court*, 192 Cal.App.3d 1251, 1261, 238 Cal.Rptr. 119, 125 (1987).

A district court's good faith finding is one of "fact" and will be reversed "only upon a showing that it was clearly erroneous because of lack of evidentiary support or erroneous application of law." *Owen*, 713 F.2d at 1466; *Power v. Union Pac. Railroad Co.*, 655 F.2d 1380, 1382-1383 (9th Cir. 1981)).

"Individuals not participating in the settlement are barred from seeking contribution only if the settling parties acted in good faith with respect to them." *Commercial Union Ins. Co. v. Ford Motor Co.*, 640 F.2d 210, 213 (9th Cir.), *cert. denied*, 454 U.S. 858 (1981). "The settling parties owe the nonsettling parties a legal duty to refrain from tortious or other wrongful conduct; absent conduct violative of such duty, the settling parties may act to further their respective interests without regard to the effect of their settlement upon other defendants." *Dompeling v. Superior Court*, 117 Cal.App.3d

4

798, 809-810, 173 Cal.Rptr. 38 (1981).

Section 877.6 goals "are, first, equitable sharing of costs among the parties at fault, and second, encouragement of settlements. Auxiliary to the latter is some assurance of settlement finality. Because the statute limits contribution to the judgment debtors, the concept of equitable sharing stops far short of equal sharing." *River Garden Farms, Inc. v. Superior Court*, 26 Cal.App.3d 986, 993, 103 Cal.Rptr. 498 (1972).

A court may "inquire, among other things, whether the amount of the settlement is within the reasonable range of the settling tortfeasor's proportional share of comparative liability for the plaintiff's injuries. This is not to say that bad faith is 'established by a showing that a settling defendant paid less than his theoretical proportionate or fair share.'" *Tech-Bilt, Inc. v. Woodward-Clyde & Associates*, 38 Cal.3d 488, 499, 213 Cal.Rptr. 256 (1985) (citation omitted).

### *Tech-Bilt* Factors

In *Tech-Bilt*, 38 Cal.3d 488, 499, 213 Cal.Rptr. 256, 263, the California Supreme Court established factors to determine good faith settlement:

1. A rough approximation of plaintiffs' total recovery and the settlor's proportionate liability;
2. The amount paid in settlement;
3. The allocation of settlement proceeds among plaintiffs;
4. A recognition that a settlor should pay less in settlement than he would if he were found liable after trial;
5. The financial conditions and insurance policy limits of settling defendants; and
6. The existence of collusion, fraud or tortious conduct aimed to injure nonsettling defendants' interests.

The California Supreme Court explained:

> The party asserting the lack of good faith . . . should be permitted to demonstrate, if he can, that the settlement is so far "out of the ballpark" in relation to these factors as to be inconsistent with the equitable objectives of the statute. Such a demonstration would establish that the proposed settlement was not a "settlement made in good faith" within the terms of section 877.6.

*Tech-Bilt*, 38 Cal.3d at 500-501, 213 Cal.Rptr. 263-264.

"Practical considerations" require that evaluation "be made on the basis of the information available at the time of settlement." *Tech-Bilt*, 38 Cal.3d at 499, 213 Cal.Rptr. at 263.

### Amount Paid In Settlement And Proportionate Liability

"In order to promote the finality of settlements, we hold that a defendant's settlement figure must not be grossly disproportionate to what a reasonable person, at the time of the settlement, would estimate the settling defendant's liability to be." *Torres v. Union Pacific R. Co.*, 157 Cal.App.3d 499, 509, 203 Cal.Rptr. 825 (1984).

The California Court of Appeal further explained:

> For the damages are often speculative, and the probability of legal liability therefor is often uncertain or remote. And even where the claimant's damages are obviously great, and the liability therefor certain, a disproportionately low settlement figure is often reasonable in the case of a relatively insolvent, and uninsured, or underinsured, joint tortfeasor.

*Stambaugh v. Superior Court*, 62 Cal.App.3d 231, 238, 132 Cal.Rptr. 843 (1976).

One of the most important good faith settlement factors "is the settling party's proportionate liability" in that "if there is no substantial evidence to support a critical assumption as to the nature and extent of a settling defendant's liability, then determination of good faith based upon such assumption is an abuse of discretion." *Toyota Motor Sales U.S.A., Inc. v. Superior Court*, 220 Cal.App.3d 864, 871, 269 Cal.Rptr. 647 (1990).

Mr. McIntosh and Wasco argue that the $750,000 settlement is in the ballpark "considering that Wasco is a small municipality with limited resources" and the amount of future fees and expenses if settlement were not reached.

There is no dispute over the dollar amount of Wasco's $750,000 settlement or that it is proportionate to Wasco's overall fair share. In fact, DeWalt notes that it "does not contest the good faith amount of the settlement" and "only challenges the allocation." This Court finds nothing to suggest that the $750,000 settlement is disproportionately low. The amount of $750,000 is fair and well within the ballpark of reasonableness.

NCUE, Lotus and DeWalt dispute allocation of $600,000 to Wasco's infringing profits and $150,000 to actual damages. As explained above, Mr. McIntosh and Wasco assessed the allocation based on the $750,000 settlement representing 40 percent of Wasco's proposed combined infringing

1  profits and actual damages of $1.85 million. NCUE, Lotus and DeWalt challenge the allocation in that
2  the jury found that Wasco had infringed on Mr. McIntosh's tentative map and improvement plans but
3  that NCUE, Lotus and DeWalt had infringed only the tentative map. NCUE, Lotus and DeWalt argue
4  that infringing the improvement plans increases Wasco's proportionate share of liability beyond one
5  fourth of the $1.4 million actual damages award.

6  NCUE, Lotus and DeWalt complain that the $1.4 million actual damages should not be divided
7  equally among the four defendants when "actual damages are joint and several." Without meaningful
8  explanation, NCUE and Lotus attribute a $20,500 value to the tentative map leaving $1,379,500, the
9  balance of actual damages, attributable to infringing upon the improvement plans. As such, NCUE and
10 Lotus characterize as "unfair . . . to lose all right to seek indemnity from [Wasco] based upon a reduction
11 of only $150,000 from the $1,400,000 of actual damages." "[A] defendant's settlement figure must not
12 be grossly disproportionate to what a reasonable person, at the time of the settlement, would estimate
13 the settling defendant's liability to be." *Long Beach Memorial Medical Center v. Superior Court*, 172
14 Cal.App.4th 865, 874, 91 Cal.Rptr.3d 494 (2009) (citations omitted). NCUE and Lotus conclude that
15 "$150,000 is grossly disproportional to the $1,379,500 for the which [Wasco] is culpable."

16 DeWalt proposes multiple allocations of the $750,000 settlement to actual damages ranging from
17 $362,250 to the entire $750,000. DeWalt argues that since NCUE and Lotus are aligned, the $1.4
18 million actual damages should be split by three (rather than four based on the number of defendants) to
19 increase Wasco's proportionate share. DeWalt alternatively proposes that the entire $1.4 actual damages
20 award should be allocated to Wasco since liability for actual damages is joint and several and Wasco
21 "bears a much larger responsibility for actual damages" in that the jury found that Wasco copied the
22 improvement plans which "were a much larger portion" of Mr. McIntosh's work. DeWalt also proposes
23 allocating $714,000 or $732,000 of the settlement to actual damages based on limited reductions for Mr.
24 McIntosh's tentative map charges.

25 Mr. McIntosh and Wasco argue that in the absence of a jury apportionment of fault, "there is no
26 way of knowing what portion of actual damages the jury assigned to the Map as opposed to the Plans."
27 Mr. McIntosh and Wasco point to the tentative map's value in that all engineering was completed to fast
28 track NCUE and Lotus' process for City approval without "expensive engineering costs." Mr. McIntosh

7

and Wasco conclude that the $150,000 allocation to actual damages is "an approximation of Wasco's proportionate interest."

NCUE, Lotus and DeWalt fail to carry their burden that the settlement and in turn its allocation lacks good faith. NCUE and Lotus fail to explain attribution of all but $20,500 of the actual damages to Wasco based simply on Wasco's including the tentative map in Wasco marketing brochures for the subdivision. Quite frankly, NCUE, Lotus and DeWalt's proposed allocation of the entire $750,000 settlement is unreasonable and disproportionate with no substantial grounds to pin more than half of the actual damages on Wasco, one of four defendants. NCUE and Lotus conveniently ignore that the jury found that NCUE and Lotus had profited directly from copying of either the tentative map or improvement plans done by any of the other defendants. NCUE, Lotus and DeWalt brazenly seek an undeserved windfall. Moreover, DeWalt's alternative proposals are no more than a shell game with the distracting result of allocating to Wasco a disproportionate amount of actual damages without substantial justification and to penalize Wasco for its reasonable settlement.

The proposed allocation to Wasco of $350,000 as a quarter of the $1.4 million actual damages is reasonable to assess the good faith of Wasco's settlement. An allocation of $150,000 of the settlement to actual damages is likewise reasonable in the absence of NCUE, Lotus and DeWalt's substantive challenge to the allocation. The settlement amount and allocation of it between actual damages and profits satisfies good faith requirements.

**Collusion, Fraud Or Tortious Conduct**

In their declarations, counsel for Mr. McIntosh and Wasco state: "The proposed settlement was made in good faith and was not made as the result of any collusion, fraud or tortious conduct between the settling parties aimed at making the non-settling parties pay more than their fair share." Mr. McIntosh and Wasco contend that they "came to a reasonable arms length negotiation as to what was in their best interests and for a fair amount of the total award against Wasco." Mr. McIntosh seeks to avoid "risks associated with any adverse rulings" on post-trial motions or appeal.

The settlement's good faith is supported by an absence of collusion, fraud or tortious conduct.

**CONCLUSION AND ORDER**

For the reasons discussed above, this Court:

1. GRANTS that Wasco's settlement with Mr. McIntosh is in good faith, including the allocation between actual damages and profits;

2. ORDERS Mr. McIntosh, no later than July 8, 2010 to file opposition, if any, to NCUE, Lotus and DeWalt's pending post-trial motions;[4] and

3. ORDERS NCUE, Lotus and DeWalt to file no reply papers for their post-trial motions, unless this Court orders otherwise.

IT IS SO ORDERED.

Dated:  June 29, 2010           /s/ Lawrence J. O'Neill
                                UNITED STATES DISTRICT JUDGE

---

[4] This order moots Wasco's post-trial motions, and Mr. McIntosh need not respond to them.