nr

1  James J. Braze, Esq.; SBN 75911
   Jeffrey A. Travis, Esq.; SBN 235507
2  BORTON PETRINI, LLP
   5060 California Avenue, Suite 700
3  Post Office Box 2026
   Bakersfield, CA 93303
4  Telephone (661) 322-3051
   email: jbraze@bortonpetrini.com
5  email: jtravis@bortonpetrini.com

6  Attorneys for Plaintiff, Roger McIntosh

7

8                    UNITED STATES DISTRICT COURT

9          EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

10

11  ROGER McINTOSH,                        Case No.  1:07-CV- 01080 LJO-GSA

12              Plaintiff,

13  v.                                     PLAINTIFF'S OPPOSITION TO
                                           DENNIS W. DeWALT, INC.'S MOTION
14  NORTHERN CALIFORNIA UNIVERSAL          TO ALTER OR AMEND THE
    ENTERPRISES COMPANY, a California      JUDGMENT
15  corporation; LOTUS DEVELOPMENTS,
    LLP; THE CITY OF WASCO, a municipal
16  corporation; DEWALT CM, INC., a California
    corporation also doing business as DEWALT
17  CORPORATION; and DOES 1 through 10,
    inclusive
18
19              Defendants.

20  CITY OF WASCO,

21              Cross-Complaint,

22        vs.

23  NORTHERN CALIFORNIA UNIVERSAL
    ENTERPRISES COMPANY, INC.,
24

25              Cross-Defendant.

26

27  / / /

28

H:\PUBLIC\054493\060971
McIntosh v.
Northern\PLTF'S OPP
DEWALT MNT
ALTER-AMEND.wpd

1

PLTF'S OPPO TO DENNIS W. DeWALT, INC.'S MOTO ALTER OR AMEND THE JUDGMENT

# I.

## <u>REVIEW OF PERTINENT TRIAL TESTIMONY</u><br><u>AND WASCO'S MOTION IN LIMINE NO. 2</u>

It was plaintiff's argument at trial that the value and copying the 5472 Tentative Map was inherently tied up in the value of the efforts expended in creating it. This is keeping in mind with the holding in *Del Madera Properties v. Rose and Gardner* that efforts expended in creating the Tentative Map his efforts expended in creating tangible works of authorship. *(See, Del Madera Properties v. Rhodes and Gardner, Inc.*, 820 F.2d 973, 976-977 (9th Cir. 1987) ("*Del Madera II*")) It is also where the court in the prior *Del Madera* case Said that the new developer had two choices: It could either submits its own modifications to the development project or pay the plaintiff the value of his copyright. (*Del Madera Properties v. Rhodes and Gardner, Inc.*, 637 F.Supp 262, 264 (N.D. Ca. 1985) ("*Del Madera I*")) The value of the work is intimately connected to the work supporting it.

A developer reaps a windfall if they can copy what has come before and retain the benefit of all the documents that support that copy. When McIntosh's tentative map was copied by DeWalt and Northern, the developer did not have to modify the development project, saving him the great cost of modifying the development. At trial, it was shown the improvements were worth $1.9 million from the bonding estimate. (Exh. J-73, page 2 attached to Travis Decl.) Paying for a bond, and modifying the subdivision were both costs  the developer avoided by having the map copied. (488:11-18; 489:8-16; 490:21-491:1-4)[1]. This is also why it was important for Wasco to promote the subdivision with a copy of the Tentative Map because if the developer knew they already had approval for a Tentative and Final Map and did not have to put improvements in and could fast-track the mapping process. (J10, pages 5, 10,11 Appendix C, BP02422)

The arguments put forth by Dennis W. De Walt, Inc. ("DeWalt")  is based on the

---

[1]Reporters' Transcript, Exhibit 43 of Travis Declaration.  To make finding the referenced exhibits easier, we have 1) Provided a single declaration for both oppositions, and 2) provided the Court with a chart attached to the Travis Declaration identifying each trial exhibit and its corresponding paragraph referenced in the declaration.

H:\PUBLIC\054493\060971<br>McIntosh v.<br>Northern\PLTF'S OPP<br>DEWALT MNT<br>ALTER-AMEND.wpd

premise that the order granting the City of Wasco's ("Wasco") Motion in Limine No. 2 limited any testimony by plaintiff for preparing Tract Map No. 5472.  Yet, at trial the evidence was clear that the work that was related to Tract 5472 was not just work that had to be done on the tract proper but was also work that needed to be done to prepare Tract 5472. For example, evidence at trial established:

- Martin-McIntosh needed it to perform master studies, planning and other engineering work in order to prepare Tract 5472.  (163:11-22; 189:4-15.)
- The Martin-McIntosh Improvement Plans were needed to support the 5472 Map.  (164:18-23.)
- The Martin-McIntosh Improvement Plans were needed to support the 6451 Map prepared by DeWalt.  (J134, based on "Associative Improvement Plans", 484:6-18.)
- All construction on the 6451 Tract needed to be detailed in Martin-McIntosh's Improvement Plans.  (178:7-16.)
- The entire cost to finally prepare Tract 5472 was $1,149,910.28. (170:13-25; 171:1-13, Exhibit J4) (Exhibit J4 is a final tally of all engineering performed and contracted for in Exhibits J1, J32, J41, J44, J46-J50 and J53-60 but which are not attached)
- The entire work performed on the entire 480 acres needed to be designed first in order to prepare Tract 5472.  (190-19-25, 191:1-23.)
- Both of DeWalt's 6451Maps were based on the Improvement Plans so as to obtain final approval by the City of Wasco.  (J134; J135; and Testimony of Keith Woodcock, 483:22-484.)

All of this testimony was completely unrefuted by any of the defendants.  It was also a jury issue as to whether the jury believed whether Joe Wu, the Principal of Northern and Lotus, chose not to use McIntosh's work because of the amount requested by McIntosh or whether he just chose to steal McIntosh's work product and retain the benefit of what had come before. (244:7-19.) In fact, Mr. Wu testified he did not care what McIntosh wanted, all he wanted was to have a

H:\PUBLIC\054493\060971 McIntosh v. Northern\PLTF'S OPP DEWALT MNT ALTER-AMEND.wpd

Tentative Map prepared. (565:1-12)  This was so, even though Joe Wu in preparing his own architectural plans on designs admitted that this was his own work product and was not anybody else's to take.  (578:13-22.)

## II.

## LEGAL ARGUMENT

**A.     The Jury Award Was Not Excessive and Was Supported by the Evidence Plaintiff Presented at Trial and There Was No Evidence to Rebut the Award.   (Opp. to Part I.A.)**

DeWalt argues that the jury verdict was excessive because plaintiff's total original charges were approximately $1.1 million and he was paid for most of these original charges.  In sum, they are claiming that any established value of the copyrighted work is offset by any amounts previously paid for that work.  Essentially, DeWalt is arguing that the amount was excessive because there was double recovery.

As cited *supra*, efforts expended in creating the Tentative Map are also efforts expended in creating tangible works of authorship.  (See, *Del Madera II*.)  Therefore, and as also stated in Part I of this Opposition, the value of the Tentative Map is not in simply recreating the map itself, but in what supports that map so that the developer can get final approval by the City.  Part of this process is that there is a time limit to getting approval of any tentative map. (732:17-25; 73:1-7; J-87, p. 7 (A01054).) Thus, the value of the map is encompassed in what that document and its supporting documents that map but also in the allowance by the City to by statute proceed with the proposed development for a fixed period of time.  As the City's employee, Dennis McNamara said, once that map has expired "it is no longer a valid document. . . . " (733:5-6.)  Once a map has expired, then a city could require zoning and a new general plan.

This is what happened and what was undisputed at trial in this case.  The previous Tentative Map prepared by Martin-McIntosh had expired as did the development agreement between the original developer (Legacy Group and Martin-McIntosh; (*See*, Doc. No. 320, JI No. 17, Fact Nos. 18-19.)  In sum, and before Legacy Group was unable to complete development, over a million dollars was spent in preparing the engineering necessary for completing the Valley Rose Estates.

H:\PUBLIC\054493\060971
McIntosh v.
Northern\PLTF'S OPP
DEWALT MNT
ALTER-AMEND.wpd

4

PLTF'S OPPO TO DENNIS W. DeWALT, INC.'S MOTO ALTER OR AMEND THE JUDGMENT

1   (Exh. "J4.")You could not have the 5472 Tract without also preparing the general plan, master

2   studies and other engineering which included the Improvement Plans.

3          Finally, it was also undisputed at trial that in the agreement  between Martin-

4   McIntosh and the Legacy Group on March 19, 1992, the engineering was for the 5472 project

5   specifically and any default by Legacy would mean that all intellectual property would revert back

6   to Martin-McIntosh.  (See, Exh. J-24, p.1.)

7          If McIntosh was paid, he was paid for by the rights by Legacy to retain the rights to

8   the engineering for the time specified in the development agreement between it and the City of

9   Wasco and also pursuant to Legacy's agreement with Martin-McIntosh. After the expiration, no one

10   had rights to any of that work other than McIntosh.

11          The value of the 5472 Tentative Map was determined at trial in view of what benefits

12   the 6451 Map was retained by the developer, and for engineering it did not have to pay for in order

13   to get a final approval of the 6451 Map.  This amounted to the total value of the prior engineering

14   for preparing the 5472 Tract which was approximately $1.1 million. Unrefuted testimony, based on

15   the present value of McIntosh's services being double that of the hourly rate by Martin-McIntosh in

16   1992, and then subtracting the amount paid roughly $800,000 to reach the total final value of

17   $1.4 million.  (601:2-11; and Exh. J4.)  It was also unrefuted that plaintiff was paid roughly

18   $800,000 for his work from 1992 through 1994.  Thus, there was no double recovery because what

19   was paid was discounted in the final calculations presented by plaintiff.

20          DeWalt also contends that "plaintiff failed to introduce any evidence as to what

21   amount of the $1,100,000.00 was his actual <u>cost</u> of the work . . . and what portion was <u>profit</u> to

22   plaintiff."  Yet, separating plaintiff's original profit from costs was not required under Jury

23   Instruction No. 42 for Actual Damages. (*See*, Doc. No. 320, No. 42.) Artificially separating these two

24   is a straw man argument created by DeWalt in an attempt to mitigate the damages award against

25   them and they provide no law in support.  This novel analysis also makes no sense since value is

26   usually set based on how much it cost to create a product or service and then adding profit on top

27   of that.  But, there are times when you have to sell a product at or even below your costs, that doesn't

28

H:\PUBLIC\054493\060971
McIntosh v.
Northern\PLTF'S OPP
DEWALT MNT
ALTER-AMEND.wpd

5

PLTF'S OPPO TO DENNIS W. DeWALT, INC.'S MOTO ALTER OR AMEND THE JUDGMENT

1    mean there's no value to it, it just means that value doesn't meet or exceed costs.

2            Even if this were the case, DeWalt points to no evidence that would allow this court

3    to somehow perform calculations to separate out plaintiff's original profit from original losses.

4    These were also questions unasked by DeWalt during trial.  It is not plaintiff's burden to do

5    DeWalt's job for them sifting through all the evidence to determine what the cost of labor, overhead,

6    general administration and office expenses, and synthesize what portion of what was paid was profit

7    as to proposed costs, this was their burden at trial and on the motion which have not been met.

8            In sum, there was no double recovery because all original payments were deducted.

9    in plaintiff's calculations  There is also no requirement in the instructions to the jury or under the law

10   that original profits needed to be deducted from original charges to get to value. .

11   **B.     Actual Damages Were Based on the Value of the Map That Included All Efforts
         Expended in Creating and Supporting Tentative Map No. 5472.  (Opp. to Part II. A.)**

12

13           DeWalt argues that there is no evidence of the fair market value of the copyrighted

14   work which included a reduction in the fair market value, any inquiries of sale, any marketability,

15   any industry practices and no value to DeWalt.

16           In response, plaintiff would refer this court to Part I above demonstrating that the

17   value of the work is in the efforts expended in creating that work which included all the engineering

18   that was necessary in order to support the map.  This was what was argued and presented at trial

19   through the testimony and the evidence and which was never refuted by any of the defendants.

20   Therefore, the value is not in the act of physically reproducing the 5472 Map through an infringing

21   copy but that, by copying it, you retain all of the efforts expended in the documents that supported

22   it.  For example, in looking at Tentative Tract Map 6451, this specifically states that it is based upon

23   the Improvement Plans prepared by Martin-McIntosh.  (See, J134.) This is further demonstrated in

24   the fact that Final Map No. 6451 was required to be substantially similar or substantially conformed

25   to the 6451 Tentative Map in order to meet approval and ultimately acceptance by the City of Wasco.

26   (See Final Map No. 6451, first page, J-126.)

27           DeWalt had to do so little because McIntosh had to do so much.

28

H:\PUBLIC\054493\060971
McIntosh v.
Northern\PLTF'S OPP
DEWALT MNT
ALTER-AMEND.wpd

6

PLTF'S OPPO TO DENNIS W. DeWALT, INC.'S MOTO ALTER OR AMEND THE JUDGMENT

It was also a question of fact at trial whether or not Joe Wu, as the principal for both Northern and Lotus, was a willing buyer.  The evidence suggested that he was not a willing buyer and simply wanted to get a similar map that would get "fast-track" acceptance by the City of Wasco as quickly and cheaply as possible.  (565:1-12; J10, pp. 10-11.)  At trial, it was demonstrated that Joe Wu, after initially calling McIntosh and receiving a proposal by McIntosh, never called him back to determine what a reasonable value of McIntosh's work might be.  (176:19-25; 177:1-13; 563:2-564:1.)  It was demonstrated at trial that McIntosh was willing to negotiate, Joe Wu was not.  In fact, at trial, McIntosh testified that he was "willing to offer a proposal to Wu but he never got a call back from him."  (176:19-25; 176:1-13.)

DeWalt also contends that there was no evidence of reduction in fair market value, inquiries of sale, marketability, industry practices and no evidence of what the value was to DeWalt. However, none of this evidence was presented by them at trial.  This was not plaintiff's burden. DeWalt could have designated an expert on these issues or examined plaintiff's expert on these issues but, for their own reasons, chose not to do so.  Furthermore, they want this court to speculate as to what these might be to offset any damages that were awarded by the jury.  They cannot now try to have the court retry this case in a vacuum based upon speculative offsets that they never presented.

**C.**   **Plaintiff Presented Ample Evidence at Trial to Show That Engineering for Tract 5472 Including Engineering That Related to Engineering Work for Parcel 9571 and Were Necessary Costs to Prepare Tentative Tract Map 5472.  (Opp. to Part II.B.)**

DeWalt is contending that embedded in the approximately $1.1 million in charges shown on Exhibit "J4," there were charges that were unrelated to Tentative Tract Map No. 5472 and it should have discounted by the jury but were not.  They are now asking this court to review the trial testimony and evidence to make those discounts that they claim the jury overlooked.

All defendants have consistently refused to acknowledge or present any evidence refuting the fact that to prepare Tract 5472, Martin-McIntosh had to prepare master studies, general planning, improvement plans and other engineering for the entire parcel.  (*See, Part I, supra*; 163:11-

H:\PUBLIC\054493\060971
McIntosh v.
Northern\PLTF'S OPP
DEWALT MNT
ALTER-AMEND.wpd

7

PLTF'S OPPO TO DENNIS W. DeWALT, INC.'S MOTO ALTER OR AMEND THE JUDGMENT

22; and 189:4-15.)[2]  Without that required engineering, the 6451 Map would have been worthless as would the 5472 Map.  They would have just been a concept with nothing supporting them. Drawing the map was easy but making it acceptable for approval by the City was the costly and difficult part and which allowed Northern to fast-track through Wasco's planning department.

Further support for plaintiff's argument at trial was demonstrated by the fact that Improvement Plans were needed to support the 5472 Map; (J-134; 164:18-23.)  All construction needed to be detailed in the 5472 Improvement Plans; (178:7-16) and the total cost to prepare the Tract 5472 was $1,149,910.28 (170:13-25; 171:1-13; See,. J-4 and Exhibit "J" attached to Okadigbo Declaration in support of Wasco's Motion).

DeWalt presented no evidence at trial or in their motion that refutes the above proposition.  They try to do it for the first time in their motion by referring to Exhibits "J-100" and "D-224" and asking this Court to now draw an inference of offsets, but this is insufficient to meeting their burden on this motion.  It is unclear what parts of those exhibits they believe support their argument.  DeWalt also refers to trial testimony where they claim that things such as performing work for the Valley Rose Golf Course was unrelated to the 5472 Tract.  (*See,* 189:4-18.)  But, this testimony does not say this.  In fact, the testimony referred to never even references the Valley Rose Golf Course.

DeWalt makes attorney arguments that much of the work "seems" analogous to unrelated work (referring to Trial Testimony 303:10-304:3, and Exhibit P-108), but this was never presented, proven or submitted at trial.  There is simply no trial testimony, other than what was testified by McIntosh, as to what was and what was not related or necessary for preparing Tract 5472 and which supported the 5472 Map.  DeWalt now wants this court to again infer a lack of a relationship between the engineering done by McIntosh and infringement when it was their burden at trial and in their motion to show how plaintiff's testimony was inaccurate in the work unrelated to Tract 5472.  They failed to do this and it would require additional trial testimony to support the

---

[2]This was also supported by many other documents such as P-108 and P-102-P-105 but would be too numerous too attach.

H:\PUBLIC\054493\060971
McIntosh v.
Northern\PLTF'S OPP
DEWALT MNT
ALTER-AMEND.wpd

8

PLTF'S OPPO TO DENNIS W. DeWALT, INC.'S MOTO ALTER OR AMEND THE JUDGMENT

inferences they want this Court to make.

**D.  McIntosh Is Entitled to Recover the Value of the Work Which Included All Costs Related to in Supporting That Work.  (Opp. to Part II.C.1-2.)**

In this section, DeWalt is claiming that McIntosh is claiming recovery for costs expended when he should only be able to recover profits that he made.  DeWalt presents no law to support this proposition nor does DeWalt present any evidence showing what those costs would be relative to what any profits would be.  This is also not part of the jury instruction for actual damages which is Jury Instruction No. 42 that was submitted to the jury in this case. (*See,* previous discussion on this point in Part II.A, *supra*.)

**E.  The Clear Weight of the Evidence Showed That DeWalt Did Not Independently Create the 6451 Map but There Was Evidence of Both Direct and Indirect Infringement Against DeWalt from Which the Jury Could Not Conclude Otherwise.  (Opp. to Part III.)**

Plaintiff and defendants are like two ships passing in a night.  At trial, the bulk of plaintiff's testimony and plaintiff's witnesses' testimony, including expert witnesses, was that there was direct evidence of copying by DeWalt as to the 6451 Map.  Independent creation is a defense to indirect evidence of infringement, not direct evidence.

The direct evidence was unrefuted and overwhelming.  This included: the fact that there were identical bearings on the 6451 and 5472, to the second; (J-133; J-135, p. 2; J-134; P-108, p. 426;182:7-25, 183:1-10, 186:4-19, and 443:9-445) there was identical lot numbering between the 5472 Map Improvement Plans and the 6451 Maps; (J-133;  J-135, p. 2; J-134; P-108; p. 436, and184:18-25, 185:1-13); there were identical map boundaries; J-133;  J-135, p. 2; J-134; P-108, p. 436; and 185:14-22); there was identical lot numbering; (J-133; J-135, p. 2; J-134; P-108, p. 436; and 438:18-22, 442:2-12; there were identical street names (438:18-22); there were identical places where each of the street names were located; (180:21-25 and 181:1-11); there were identical mistakes between maps (J-133;  J-135, p. 2; J-134; P-108, p. 436; and 167:16-25, 168:1-6, 169:25-170:12); and that there were even identical street curves to the second (J-133; J-135, p. 2; J-134; P-108, p. 436; 207:24-25, 208:1-11, and 210:1-23).

H:\PUBLIC\054493\060971
McIntosh v.
Northern\PLTF'S OPP
DEWALT MNT
ALTER-AMEND.wpd

1    All of the above evidence was direct evidence of infringement and inapplicable to the

2    independent creation defense.  None of this evidence was cited by DeWalt in its moving papers.  In

3    fact, it is not cited by any of the defendants in their moving papers and was completely ignored.

4    What was also ignored was the fact that Dewalt admitted that they used the 5472 Map in preparing

5    the 6451 Map.  (425:21-426, 427:17-428:16, and 434:11-17.)

6    Instead, DeWalt is relying on the fact that they performed a survey with its related

7    shot points to demonstrate the fact that they independently created a map with all of the above

8    identical configurations.  But DeWalt never presents any witnesses or evidence or any testimony to

9    show how all of the identical bearings, distances, lot configurations, mistakes, street curves and the

10   like got onto the 6451 Map independently.  There was not one shred of evidence or testimony from

11   which any of this was explained.  Rather, DeWalt relies on red herrings such as the fact they did not

12   earn any profits and did not copy the Improvement Plan to suggest the weight of the evidence was

13   against the verdict.

14   In a truly puzzling statement, DeWalt also claims the *jury* and plaintiff admitted that

15   DeWalt independently created the allegedly infringing work.  (See Motion, p. 15, ln. 23.)DeWalt

16   argues that because the jury found that DeWalt did not copy the Improvement Plans, and because

17   the improvement plans were part of the P-108 Exhibit that was submitted as a deposit to the

18   copyright office, and because Tentative Map No. 5472 was included in the P-108 Exhibit, therefore

19   there could be no infringement of the 5472 Map because, as DeWalt understands it, P-108 was, in

20   its entirety, the Improvement Plans.  Therefore, in their mind the verdict was inconsistent.

21   This argument rests on the fallacious assumption that P-108 included only the 5472

22   Improvement Plans.  Where this came from is unclear but it was clearly identified at trial that P-108

23   was the deposit to the copyright office and which contained more than just the Improvement Plans.

24   In fact, it was conceded at trial that they also contained Parcel Map 9572 and Tract Map 5618 in

25   addition to Tentative Map No. 5472 all of which were identified as distinct from Improvement Plans.

26   (*See, e.g.*, 189:4-6, 190:1-9.)  DeWalt's argument relies on a false assumption and should be

27   completely disregarded.

28

H:\PUBLIC\054493\060971
McIntosh v.
Northern\PLTF'S OPP
DEWALT MNT
ALTER-AMEND.wpd

10

PLTF'S OPPO TO DENNIS W. DeWALT, INC.'S MOTO ALTER OR AMEND THE JUDGMENT

**F.    At Trial There Was Sufficient Evidence of Direct Infringement That Any Misstatement of Law in Rebuttal Argument Was Not an Error of Law Sufficient to Warrant a New Trial.  (Opp. to Part IV.A.)**

A district court may alter or amend a judgment under Rule 59(e) if the court is presented with newly discovered evidence, there was clear error or manifest injustice or, there is an intervening change in controlling law.  (*Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (Ninth Cir. 2001).)  The decision to alter or amend a judgment is generally committed to the discretion of the trial judge.  (See, *Marber ex rel Barber v. Colorado Department of Revenue*, 562 F.3d 1222, 1228 (Tenth Cir. 2009).)  The District Court is called upon to balance the competing interests of the need to bring the litigation to a close and the need to render rulings based on all the facts. (*Templet v. HydroChem, Inc.* 367 F.3d 473, 478-479 (Fifth Cir. 2004).)

DeWalt is not presenting the court with newly discovered evidence and there is no citation to any change in controlling law so, it is assumed that the clear error refers to one allegedly made by the Court during trial.

The essential argument by DeWalt is that the jury was swayed by Jury Instruction No. 33 that was not read but given and, by a statement made by plaintiff's counsel in rebuttal that would indicate that simply copying what was on the ground constituted infringement.  To DeWalt, this information communicated to the jury was a large enough error of law that this was enough to give "credence" in support" to the legal proposition "that by copying what was on the ground DeWalt committed copyright infringement" and negating independent creation.  (*See, Motion*, IV.A.)

Yet, DeWalt fails to mention the evidence referred to in Part II.E. of this Opposition whereby there was direct evidence that DeWalt directly copied information from the Tentative Map onto the infringing map. Furthermore, Jury Instruction No. 33 was never read to the jury and was only told to the jury that if they wanted jury instructions they would be given to them.[3]  Again, DeWalt completely ignores all of the other evidence that was stacked so high against them that even if this court allowed a statement in closing argument to misstate the law, any misstatement in rebuttal

---

[3]From the record, it is difficult to tell whether or not instructions were even given to the jury. We will assume that they were.

1  was not sufficient to alter or amend or declare a new trial because of it.

2      This court also, through spontaneous instructions just after the jury was impaneled

3  and before deliberations, told the jury that attorney argument is not evidence.  (133:2-14 and

4  1006:10-1007:1) After the alleged misstatement, the Court specifically told the jury that they were

5  to look at the jury instructions to determine the law, and not attorney argument. (1103:13-21) The

6  jury could have also been equally swayed by Instruction 27 which Wasco conceded in its motion

7  makes No. 33 "unsustainable as a matter of law." (See, Wasco's Motion to Alter/Amend, p. 24, Lines

8  9-10) Further, all defendant's equally presented argument contradicting statements made by

9  plaintiff's counsel. (Northern, 1037:22-24, 1038:1-12; Wasco, 1065:16-1067:23; DeWalt, 1092,

10  1093:9-20, and 1094:12.)

11      Finally, DeWalt makes no request as to what they want this court to do if it finds that

12  there was a clear error.  This court could easily conclude that if it had a new trial that because of the

13  overwhelming evidence of direct and indirect infringement, the jury instruction or the lack thereof

14  would have made no difference whatsoever.  If DeWalt is asking the court to alter or amend the

15  verdict, it provides no guidance as to how this court is supposed to do that.  It also provides no

16  proposal to which the plaintiff can rebut in this Opposition.  The request on its face is vague and

17  ambiguous and gives no direction and on this separate basis should also be denied.

18  **G.    DeWalt's Proposed Special Jury Instructions Were Properly Rejected by the Court
       with No Objections by DeWalt.**

19

20      Special jury instructions should normally be reasonably neutral statements of the law

21  and not overly argumentative.  (*See, Federal Civil Rules Handbook*, 2010, Rule 51, "Form and

22  Content of Requests.")

23      DeWalt focuses on four of its special jury instructions that were rejected by this Court

24  in arguing that the verdict was based upon an error of law.  In essence, DeWalt is arguing that if the

25  jury had seen these instructions, then they could have come to a wholly different conclusion.

26      The instructions themselves are argumentative and are mixed questions of law and

27  fact that would unfairly lead the jury to a conclusion in favor of DeWalt.  Furthermore, DeWalt has

28

H:\PUBLIC\054493\060971
McIntosh v.
Northern\PLTF'S OPP
DEWALT MNT
ALTER-AMEND.wpd

12

PLTF'S OPPO TO DENNIS W. DeWALT, INC.'S MOTO ALTER OR AMEND THE JUDGMENT

1  not demonstrated that any of the issues of law that are in each of the jury instructions were somehow

2  missing in any of the other jury instructions that were submitted to the jury.  As examples:

3         Special Jury Instruction No. 1: The issue of law was that facts in the public domain

4  have no copyright protection.  Yet, this rule, without the argumentative facts, was already included

5  in Jury Instruction No. 36; and

6         Special Jury Instruction No. 4, which DeWalt titles "substantial similarity."  There

7  was, of course, an instruction already given for substantial similarity.  (*See*, SI Nos. 32 and 34.)

8  However, substantial similarity requires two elements of access and similarity which were not

9  elements contained in DeWalt's Special Jury Instruction No. 4 and therefore is an inaccurate

10  statement of the law.  Also, the Ninth Circuit's Special Jury Instruction for Copyright specifically

11  excludes any special jury instructions for substantial similarity because of the fact intensive basis

12  upon which that instruction has to be assumed.  Therefore, any instruction would essentially be doing

13  the job of the jury within the instruction rather than allowing them to draw their own conclusions

14  about the facts that were presented.  For the same reason, Special Jury Instruction No. 5 was also

15  properly excluded.  Neither one of these is as DeWalt claims an "accurate statement of the law"

16  because the law cannot establish a conclusion that could only be made by the fact finder.  In sum,

17  all of their instructions were argumentative and properly excluded.

18         For the above reasons, any request to alter or amend based upon the rejection of

19  DeWalt's proposed special jury instructions should be denied.

20  **H.**   **There Was No Prejudicial Misconduct by Plaintiff's Counsel That Permeated the Entire Trial Sufficient for this Court to Alter or Amend the Trial Verdict.  (Opp. to**

21  **Part V.A.)**

22         A moving party is only entitled to a new trial when the opposing counsel's conduct

23  causes prejudice to that party and unfairly influences a verdict.  (*Tesser v. Board of Education of City*

24  *School District of City of New York*, 370 F.3d 314, 321 (Second Cir. 2004.)  The party seeking a new

25  trial "must make a concrete showing that the misconduct of counsel consistently permeated the entire

26  trial from beginning to end."  (*Sutikiecz v. Monroe County Sheriff*, 110 F.3d 352, 361 (Sixth Cir.

27  1997).)  When determining the prejudicial effect of attorney misconduct, the court should look to

28

H:\PUBLIC\054493\060971
McIntosh v.
Northern\PLTF'S OPP
DEWALT MNT
ALTER-AMEND.wpd

13

PLTF'S OPPO TO DENNIS W. DeWALT, INC.'S MOTO ALTER OR AMEND THE JUDGMENT

1   the totality of the circumstances and weigh factors such as what was said, how often, relevancy to

2   the issues before the jury, how those comments were treated by the parties in the court, the strength

3   of the case and even the verdict itself. (*Hemmings v. Tidyman's, Inc.,* 285 F.3d 1174, 1193 (Ninth

4   Cir. 2002).)  In *Tesser*, the court concluded:

5           "In light of the relevant lack of severity of the apparent
        misconduct, the District Court's curative instructions and the court's
6        willingness to adopt remedial measures . . . we conclude that the court
        did not abuse its discretion by determining the defendant's lawyer
7        statements, did not unfairly influence the jury, deliberations and
        verdict . . . and that a new trial is therefore not warranted on that
8        basis. (350 F.3d at 322.)

9           Even more so, and where the court instructs the jury that the arguments and

10  statements by attorneys are not evidence, there is a presumption that the jury follow that instruction.

11  This serves as a factor militating against fighting the necessary extent of attorney misconduct

12  justifying a reversal. (*Jones v. Williams,* 35 F.App.X. 424, 428, (2002).)

13          DeWalt is insisting that there was prejudicial misconduct by plaintiff's counsel as to

14  the issue of independent versus "dependent" creation put forth by plaintiff's counsel.  They raise this

15  issue in Part V.B through D.

16          Defendant points to one "misstatement" by plaintiff's counsel in plaintiff's rebuttal

17  argument and also to the fact that Jury Instruction No. 33 was not read but included in the jury

18  instructions. (*See*, Motion, Part IV.A.B.)  What is absent from the moving papers is the fact that this

19  court through spontaneous instructions just after the jury was impaneled and before deliberations told

20  the jury that attorney evidence is not argument.  (133:2-14 and 1006:10-1007:1, *see also, supra*,

21  discussion at II.F.)

22          Most importantly, DeWalt acts as if there was no evidence of copying from which

23  the jury could find infringement other than a simple translation from what was on the ground to the

24  infringing map.  This included direct evidence of copying as detailed in Part II.E, *supra*.

25          DeWalt also contends that there was misstatement by plaintiff's counsel as to

26  misleading of actual damages and what that should equal. (See, Motion, Part V.A.) DeWalt argues

27  that plaintiff's counsel misstated the law but they never argued why those calculations were

28

H:\PUBLIC\054493\060971
McIntosh v.
Northern\PLTF'S OPP
DEWALT MNT
ALTER-AMEND.wpd

14

PLTF'S OPPO TO DENNIS W. DeWALT, INC.'S MOTO ALTER OR AMEND THE JUDGMENT

1  incorrect.  There is no law, no case, no facts to indicate that they should have been calculated any

2  other way than what they were at trial.  This is similar to the argument that DeWalt makes in Part II

3  of their motion and which was opposed above in that if there was any additional calculations that

4  needed to be performed to reflect an accurate value of the copyrighted work including any additional

5  offsets, then this is what DeWalt should have presented at trial.  They did not do so.  DeWalt like

6  all of the defendants had an opportunity to bring in their own expert to rebut any of plaintiff's

7  calculations.  DeWalt also had the opportunity to even use plaintiff's expert, Merati, and ask

8  questions relating to whether certain offsets should have been included.  However, they objected to

9  Merati testifying on this issue and therefore this was unavailable to them.  The problem is that

10  DeWalt is now trying to bring in through attorney argument additional expert testimony when the

11  trial is already over.

12       DeWalt wants this court to recalculate plaintiff's expert numbers in a post trial motion

13  without the input of Merati or any other rebuttal testimony and after the jury has left the building.

14  **I.      There Is No Inconsistency in the Jury Verdict and DeWalt Creates the False Assumption That the Copyright Deposit Only Included the Improvement Plans (Opp.**

15  **to Part VI).**

16       Identical to their argument in Part III of their Motion, and opposed supra, at II.E.

17  DeWalt attempts to shoehorn an argument here where there is none. They again rest on the false

18  assumption that the copyright deposit included only the improvement plans.  This was never

19  represented at trial in the testimony or evidence.  All parties clearly represented the 5472 Tentative

20  Map and improvement plans as distinct. This was even reflected in the jury instructions verdict.

21                                       **III.**

22                                   **CONCLUSION**

23       For all of the above reasons, plaintiff requests this court deny the entire motion to

24  alter or amend and also deny any request for a new trial.  The evidence at trial was clear and

25  convincing of direct and indirect copyright infringement against DeWalt.  The evidence of actual

26  damages was also un-refuted and all DeWalt is now attempting to do is re-litigate this matter through

27  attorney argument in a post trial motion.  What they should have argued or could have presented or

28

H:\PUBLIC\054493\060971 McIntosh v. Northern\PLTF'S OPP DEWALT MNT ALTER-AMEND.wpd

15

PLTF'S OPPO TO DENNIS W. DeWALT, INC.'S MOTO ALTER OR AMEND THE JUDGMENT

1    could have submitted is any offsets or any other way to calculate damages is too late.  Therefore, we

2    ask the court deny the motion in its entirety.

3    DATED:   July 2, 2010

4                                                    Respectfully submitted,

5                                                    BORTON PETRINI, LLP

6

7                                                    By:____/s/ James J. Braze /s/ Jeffrey A. Travis_____

8                                                    James J. Braze, Jeffrey A. Travis, Attorney for Plaintiff,
                                                     Roger McIntosh

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

H:\PUBLIC\054493\060971
McIntosh v.
Northern\PLTF'S OPP
DEWALT MNT
ALTER-AMEND.wpd

16
PLTF'S OPPO TO DENNIS W. DeWALT, INC.'S MOTO ALTER OR AMEND THE JUDGMENT

**PROOF OF SERVICE**
**(FRCP No. 5(b)(2)(E))**

**STATE OF CALIFORNIA, COUNTY OF KERN**

I, Vanessa J. Claridge, declare:

I am a citizen of the United States. I am employed in the County of Kern, State of California. I am over the age of 18 and not a party to the within action; my business address is 5060 California Avenue, Suite 700, Bakersfield, California 93309.

On **July 2, 2010**, I served the foregoing document described as **PLAINTIFF'S OPPOSITION TO DENNIS W. DeWALT, INC.'S MOTION TO ALTER OR AMEND THE JUDGMENT** on the other party(ies) in this action as follows:

| | |
|---|---|
| Steven John Hassing, Esq. | Attorneys for Attorneys for Defendants, |
| Law Offices of Steven J. Hassing | Northern California Universal Enterprises |
| 425 Calabria Court | Company and Lotus Developments |
| Roseville, CA 95747 | Tel:    916/677-1776 |
| email address: **stevehassing@yahoo.com** | **Fax:   916/677-1770** |
| | |
| Chaka Okadigbo, Esq. | Attorneys for Def./Appellant, City of Wasco |
| **GCR, LLP** | |
| 520 S. Grand Ave,  Suite 695 | Tel: 213/347-0210 |
| Los Angeles, CA 90071 | **Fax: 213-347-0216** |
| email address: **cokadigbo@gcrlegal.com** | |
| | |
| Ann T. Schwing, Esq. | Attorneys for Def./Appellant, City of Wasco |
| **McDonough Holland & Allen PC** | |
| 500 Capitol Mall, 18th Floor | Tel:  916/444-3900 |
| Sacramento, CA  95814-4704 | **Fax:  916/444-8334** |
| email address: | |
| | |
| William L. Alexander, Esq. | Attorneys for Defendant, DeWalt CM, Inc. |
| **Alexander & Associates** | |
| 1925 "G" Street | Tel: 661/316-7888 |
| Bakersfield, CA 93301 | **Fax: 661/316-7890** |
| email address: **walexander@alexander-law.com** | |

X      **BY ELECTRONIC SERVICE:**  Pursuant to Fed. R. Civ. P. 5(b)(2)(E) and Local Court Rule(s), the foregoing document will be served by the court via CM/ECF.  Pursuant to the CM/ECF docket for this case proceeding the following person(s) are on the Electronic Mail Notice List to receive ECF transmission at the email address(es) indicated below:

X      **BY MAIL:**  As follows:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at , California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on **July 2, 2010**, at Bakersfield, California.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

| | |
|---|---|
| Vanessa J. Claridge | /s/ Vanessa J. Claridge |

H:\PUBLIC\054493\060971
McIntosh v.
Northern\PLTF'S OPP
DEWALT MNT
ALTER-AMEND.wpd

17

PLTF'S OPPO TO DENNIS W. DeWALT, INC.'S MOTO ALTER OR AMEND THE JUDGMENT