nr

1  James J. Braze, Esq.; SB
   Jeffrey A. Travis, Esq.; SBN 235507
2  BORTON PETRINI, LLP
   5060 California Avenue, Suite 700
3  Post Office Box 2026
   Bakersfield, CA 93303
4  Telephone (661) 322-3051
   email: jbraze@bortonpetrini.com
5  email: jtravis@bortonpetrini.com

6  Attorneys for Plaintiff, Roger McIntosh

7

8                    UNITED STATES DISTRICT COURT

9        EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

10

11  ROGER McINTOSH,                        Case No.  1:07-CV- 01080 LJO-GSA

12                Plaintiff,               PLAINTIFF'S OPPOSITION TO
                                           NORTHERN CALIFORNIA UNIVERSAL
13  v.                                     ENTERPRISES COMPANY'S, LOTUS
                                           DEVELOPMENTS, LLP'S MOTION FOR
14  NORTHERN CALIFORNIA UNIVERSAL          NEW TRIAL OR IN THE ALTERNATIVE
    ENTERPRISES COMPANY, a California      TO ALTER OR AMEND JUDGMENT
15  corporation; LOTUS DEVELOPMENTS,
    LLP; THE CITY OF WASCO, a municipal
16  corporation; DEWALT CM, INC., a California
    corporation also doing business as DEWALT
17  CORPORATION; and DOES 1 through 10,
    inclusive
18
                  Defendants.
19

20  ─────────────────────────────────

21  CITY OF WASCO,

22                Cross-Complaint,

23       vs.

24  NORTHERN CALIFORNIA UNIVERSAL
    ENTERPRISES COMPANY, INC.,
25
                  Cross-Defendant.
26

27  / / /

28  / / /

H:\PUBLIC\054493\060971
McIntosh v.
Northern\PLTF'S OPP TO
NOR-LOTUS' MO FOR
NEW TR.wpd

PL'S OPP TO NO CALIFORNIAS MOT, ETC

# TABLE OF CONTENTS

I.   REVIEW OF PERTINENT TRIAL TESTIMONY AND
     WASCO'S MOTION IN LIMINE NO. 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

II.  THERE WAS NO JUDICIAL ADMISSION BY PLAINTIFF'S
     COUNSEL DURING CLOSING ARGUMENT
     (Opp. to Part II.A.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

     A.   Whether an Admission Precluded a Finding of Direct
          Infringement Is Moot Because There Was a Finding of
          Vicarious Infringement  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

     B.   The Statement That Plaintiff's Counsel Did Not "Think"
          There Was Evidence of Direct Infringement Does Not
          Rise to the Level of an Admission . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

III. VICARIOUS INFRINGEMENT WAS PROPERLY PLEADED
     AND THERE WAS NO OBJECTION BY DEFENDANTS
     WHEN THE VERDICT FORMS WERE SUBMITTED
     OR WHEN THE JURY INSTRUCTIONS FOR VICARIOUS
     INFRINGEMENT WERE READ (Opp. to Part II.B.)  . . . . . . . . . . . . . . . . . . . . .  6

     A.   The Second Amended Complaint Pleaded the Elements
          Necessary for Vicarious Infringement Against All
          Defendants  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

     B.   Northern Willingly Approved and Failed to Object to the
          Reading and this Omission of Jury Instruction
          Nos. 24 and 36 to the Jury . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

     C.   There Were Sufficient Facts at Trial to Support a Claim
          of Vicarious Infringement Against Defendants
          (Opp. to Part II.C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

          1.   There Was Sufficient Evidence for the Jury to
               Conclude That Northern Had the Right and Ability
               to Control the Infringing Activity  . . . . . . . . . . . . . . . . . . . . . . . . . .  8

          2.   There Was Sufficient Evidence for a Jury to Conclude
               That Northern Directly Profited from the Infringing
               Activity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

IV.  THE DAMAGES AGAINST NORTHERN AND LOTUS
     WERE SUPPORTED BY THE EVIDENCE AND THE
     LAW (Opp. to Part III OF NORTHERN'S MOTION) . . . . . . . . . . . . . . . . . . . .  10

     A.   The Evidence at Trial Established That Most of the Work
          Performed in the Valley Was Parcel on the Valley Rose
          Estates And Was Required to Prepare Tract 5472
          Thereby Adding Value to an Infringing Map Which
          Retained the Benefit of this Prior Work
          (Opp. to Part III. A.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

H:\PUBLIC\054493\060971
McIntosh v.
Northern\PLTF'S OPP TO
NOR-LOTUS' MO FOR
NEW TR.wpd

                                    1          PL'S OPP TO NO CALIFORNIAS MOT, ETC

B.   Northern Improperly Attempts During a Post-trial
Motion to Perform Expert Calculations to Reduce
the Profit Award (Opp. to Part III.B.1.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

C.   Without a Final Map You Cannot Sell Homes and
Formed the Basis on Which Plaintiff Based Their
Relationship Between Profits and Infringement
(Opp. to Part III.B.2.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

D.   The Testimony and Reports of Jubin Merati at Trial
Were Properly Admitted As Were Projections of
Home Sales and Losses Allowed By Joe Wu
(Opp. to Part III.B.3.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

E.   There Is No Support in the Law That Gross Revenues
Only Equate to Amounts Actually Received and Defendant
Opened the Door in Any Case When They Sought to Reduce
Their Profits by Offering Prospective Losses
(Opp. to Part III.B.4.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

V.   ANY MISSTATEMENT OF THE LAW WAS NOT SO
PERVASIVE THROUGHOUT THE TRIAL THAT THE
DEFENDANT WAS UNFAIRLY PREJUDICED
(Opp. to Part V.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

VI.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

PROOF OF SERVICE

H:\PUBLIC\054493\050971
McIntosh v.
Northern\PLTF'S OPP TO
NOR-LOTUS' MO FOR
NEW TR.wpd

PL'S OPP TO NO CALIFORNIAS MOT, ETC

# TABLE OF AUTHORITIES

## Federal Cases

*Adobe Systems, Inc. v. Canus Productions, Inc.*,
173 F.Supp.2d 1044 (Central Dist. of CA 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Crull v. GEM Ins. Co.*, 58 F.3d 1386 (9th Cir. 1995).) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Del Madera Properties v. Rhodes and Gardner, Inc.*, 820 F.2d 973,
976-977 (9th Cir. 1987) ("*Del Madera II*")) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

(*Del Madera Properties v. Rhodes and Gardner, Inc.*, 637 F.Supp 262
264 (N.D. Ca. 1985) ("*Del Madera I*")) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Garrett v. Federal Exp. Corp* (D.Or. 2005) Not reported in F.Supp.2d,
2005 WL 773757, 13.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*MacDonald v. General Motors Corp*.110 F.3d 337
(6th Cir. 1997).) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,5

*Melford Olden Honey, Inc. v. Adee*, 452 F.3d 956
(8th Cir. 2006).) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Metro- Goldwyn-Mayer Studios, Inc. v. Grokster Ltd.*,
545 U.S. 913 2005.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6,8

*Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1065 n. 6
(9th Cir.2002)(en banc), *amended by* 319 F.3d 1053
(9th Cir.2003)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Nintendo of America, Inc. v. Dragon Pacific Intern.*, 40 F.3d 1007,
1012 (9th Cir.1994), *cert. denied*, 515 U.S. 1107 (1995).) . . . . . . . . . . . . . . . . . . . . . . . . 15

*Oscanyan v. Arms Co.*, 103 U.S. 261, 263, 13 Otto 261,
26 L.Ed. 539 (1880); *MacDonald v. General Motors Corp.*
110 F.3d 337 (6th Cir. 1997).) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 711,
714 n.10 (9th Cir.2004).) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Softel, Inc. v. Dragon Medical and Scientific Communications, Ltd.*,
891 F.Supp. 935 (So. Dist. of NY 1995), Reconsideration Granted
in Part, 37 U.S. P.Q.2d 1282, Order Affirmed and Remanded,
118 F.3d 955, cert. den., 523 U.S. 1020.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15,16

(*Sovak v. Chugai Pharmaceutical Co.* (9th Cir. 2002)
280 F.3d 1266.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Sutkiewicz v. Monroe County Sheriff*, 110 F.3d 352,
361 (6th Cir. 1997).) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 512 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007).) . . . . . . . . . . . . . . . . 6

H:\PUBLIC\054493\060971
McIntosh v.
Northern\PLTF'S OPP TO
NOR-LOTUS' MO FOR
NEW TR.wpd

*Tesser v. Board of Education of City School District of City of New York*,
370 F.3d 314, 321, 2nd Cir. 2004), citing *Greenway v. Buffalo
Hill Motel*, 143 F.3d 47, 51 (2nd Cir. (1998).) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*U.S. v. Bentson*, 947 F.2d 1353, (9th Cir. 1991.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

(*U.S. v. James* 987 F.2d 648, 651 (9th Cir. 1993).) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*U.S. Payphone, Inc. v. Executive Unlimited of Durham, Inc.*,
781 F.Supp. 412, (Middle Dist. NC (1991).) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*U.S. v. Wheeler*, 540 F.3d 683, 689 (7th Cir. 2008).) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## **Federal Statutes**

F.R.C.P. Rule 51(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

F.R.C.P. Rule 51(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Government Code § 66499.30 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

17 U.S.C. § 504(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

H:\PUBLIC\054493\060971
McIntosh v.
Northern\PLTF'S OPP TO
NOR-LOTUS' MO FOR
NEW TR.wpd

IV        PL'S OPP TO NO CALIFORNIAS MOT, ETC

1

## I.

2

### REVIEW OF PERTINENT TRIAL TESTIMONY
### AND WASCO'S MOTION IN LIMINE NO. 2

3

4    It was plaintiff's argument at trial that the value and copying the 5472 Tentative Map

5   was inherently tied up in the value of the efforts expended in creating it.  This is keeping in mind

6   with the holding in *Del Madera Properties v. Rhodes and Gardner* that held efforts expended in

7   creating a Tentative Map are efforts expended in creating tangible works of authorship.  *(See, Del*

8   *Madera Properties v. Rhodes and Gardner, Inc.*, 820 F.2d 973, 976-977 (9th Cir. 1987) ("*Del*

9   *Madera II*")) The *Del Madera* Court also held that the new developer had two choices.  It could

10  either submit its own modifications to the development project or pay the plaintiff the value of his

11  copyright.  (*Del Madera Properties v. Rhodes and Gardner, Inc.*, 637 F.Supp 262, 264 (N.D. Ca.

12  1985) ("*Del Madera I*"))  The value of the work is intimately connected to the engineering work

13  supporting it.

14    A developer reaps a windfall if they can copy what has come before and retain the

15  benefit of all the documents that support that copy.  When McIntosh's tentative map was copied by

16  DeWalt and Northern, the developer did not have to modify the development project, saving him the

17  great cost of modifying the development. At trial, it was shown the improvements were worth

18  $1.9 million from the bonding estimate. (Exh. J-73, attached as Exh. 32 to Travis Decl.) Paying for

19  a bond, and modifying the subdivision were both costs  the developer avoided by having the map

20  copied. (488:11-18; 489:8-16; 490:21-491:1-4)[1]. This is also why it was important for Wasco to

21  promote the subdivision with a copy of the Tentative Map because if the developer knew they

22  already had approval for a Tentative and Final Map and did not have to put improvements in and

23  could fast-track the mapping process. (J10, pages 5, 10,11 Appendix C, (BP02422).)

24    The arguments put forth by Northern California Universal Enterprises Co. and Lotus

25  Developments, LP (hereinafter collectively referred to as "Northern") is based on the premise that

26

27    [1]Reporters' Transcript, Exhibit 43 of Travis Declaration.  To make finding the referenced
exhibits easier, we have 1) Provided a single declaration for both oppositions, and 2) provided the

28  Court with a chart attached to the Travis Declaration identifying each trial exhibit and its
corresponding paragraph referenced in the declaration.

H:\PUBLIC\054493\060971
McIntosh v.
Northern\PLTF'S OPP TO
NOR-LOTUS' MO FOR
NEW TR.wpd

1          PL'S OPP TO NO CALIFORNIAS MOT, ETC

the order granting Wasco's Motion in Limine No. 2 limited any testimony by plaintiff for preparing Tract Map No. 5472.[2] Yet, at trial the evidence was clear that the engineering work that was related to Tract 5472 was not just work that had to be done on the tract proper but was also work that needed to be done to prepare Tract 5472. For example, evidence at trial established:

- Martin-McIntosh needed to perform master studies, planning and other engineering work in order to prepare Tract 5472. (Trial Testimony ("TT", 163:11-22; 189:4-15.)

- The Martin-McIntosh Improvement Plans were needed to support the 5472 Map. (164:18-23.)

- The Martin-McIntosh Improvement Plans were needed to support the 6451 Map prepared by DeWalt. (J134, based on "Associative Improvement Plans", 484:6-18.)

- All construction on the 6451 Tract needed to be detailed in Martin-McIntosh's Improvement Plans. (J134, 178:7-16.)

- The entire cost to finally prepare Tract 5472 was $1,149,910.28. (170:13-25; 171:1-13, Exh. J4) (Exh. J4 is a final tally of all engineering performed and contracted for in Exhs. J1, J32, J41, J44, J46-J50 and J53-60 but which are not attached.)

- The entire work performed on the entire 480 acres needed to be designed first in order to prepare Tract 5472. (190-19-191:23.)

- Both of DeWalt's 6451Maps were based on the Improvement Plans so as to obtain final approval by the City of Wasco and which are required by the City of Wasco. (J134; J135; and Testimony of Keith Woodcock, 483:22-484:22.)

All of this testimony was completely unrefuted by any of the defendants. It was also a jury issue as to whether the jury believed whether Joe Wu, the Principal of Northern and Lotus, chose not to use McIntosh's work because of the amount requested by McIntosh or whether he just

---

[2]Northern's claim is there is only one choice for determining the value of the 5472 Map and that is the actual cost of preparing the map at a cost of $20,500.

1  chose to steal McIntosh's work product and retain the benefit of what had come before. (244:7-19.)

2  In fact, Mr. Wu testified he did not care what McIntosh wanted, all he wanted was to have a

3  Tentative Map prepared. (565:1-12)   This was so, even though Joe Wu in preparing his own

4  architectural plans admitted that this was his own work product and was not anybody else's to take.

5  (578:13-22)

6  **II.**

7  **THERE WAS NO JUDICIAL ADMISSION BY**
**PLAINTIFF'S COUNSEL DURING CLOSING**
8  **ARGUMENT (Opp. to Part II.A.)**

9  **A.    Whether an Admission Precluded a Finding of Direct Infringement Is Moot Because**
       **There Was a Finding of Vicarious Infringement.**
10

11          In addition to finding a direct infringement by Northern California Universal

12  Enterprises Co. and Lotus Development, LLP (both collectively referred to hereinafter as "Northern")

13  there was also a finding of vicarious infringement against both.  (See Exh. 42, Verdict Form, Doc.

14  No. 328, Questions 17-22.)   Northern in addition to Lotus Development were also found to be

15  "practically partners" and jointly and severally liable for each other's damages.  (*Ibid.*, Questions 32-

16  33.)  The effect of both is that Northern and Lotus are equally liable whether they be direct infringers

17  or vicarious infringers.  To the extent that this court finds no error in the jury instructions  for

18  vicarious infringement, a judicial admission of no direct infringement is moot since they are still

19  going to be equally liable whether the infringement be direct or indirect.  Therefore, the court need

20  not even address this issue if vicarious infringement and as discussed below.

21  **B.    The Statement That Plaintiff's Counsel Did Not "Think" There Was Evidence of Direct**
       **Infringement Does Not Rise to the Level of an Admission.**
22

23          There is a distinction in the law between a concession for the sake of argument and

24  a judicial admission. (*U.S. v. Bentson*, 947 F.2d 1353, (9th Cir. 1991.) A judicial admission is made

25  when counsel for a party clearly, deliberately, and unambiguously makes an admission. *(Oscanyan v.*

26  *Arms Co.*, 103 U.S. 261, 263, 13 Otto 261, 26 L.Ed. 539 (1880); *MacDonald v. General Motors*

27  *Corp.*110 F.3d 337 (6th Cir. 1997).)  But, where counsel creates ambiguity in their statements using

28  words such as "probably" or "suggesting" and leaving some room for doubt, no admission is made.

H:\PUBLIC\054493\060971
McIntosh v.
Northern\PLTF'S OPP TO
NOR-LOTUS' MO FOR
NEW TR.wpd

3                    PL'S OPP TO NO CALIFORNIAS MOT, ETC

1   (*Macdonald*, at 340.)

2       Other examples of statements creating ambiguity that avoids admission include

3   counsel stating in opening and closing that there was only one issue to resolve at trial and which did

4   not constitute judicial admission that all other elements of the crime were satisfied. (*U.S. v. James*

5   987 F.2d 648, 651 (9th Cir. 1993).)  Additionally, representations made by plaintiff's counsel in

6   depositions were not judicial admissions because they "were not entirely clear."(*Garrett v. Federal*

7   *Exp. Corp* (D.Or. 2005) Not reported in F.Supp.2d, 2005 WL 773757, 13.)

8       At trial, plaintiff's counsel in addressing whether Northern copied McIntosh's works

9   said, "I don't think so.  I don't think he copied anything.  So I think the answer is probably no."

10  (1027:17-22)  This is hardly the unqualified admission claimed by defendant.  The statement

11  suggests ambiguity.  There is also no rule of law that states that if a party fails to object to statements

12  (which are not evidence) by opposing counsel in closing argument, that this constitutes an admission

13  in concert.

14      Further, there was a lot of documentary evidence presented at trial.  It is impossible

15  for Northern or any other party to say what the jurors considered when making the factual

16  determinations from this evidence that led them to a verdict for direct infringement.  There are no

17  juror affidavits to give this court any guidance as to whether they saw something in the evidence that

18  the parties did not or cause any other doubt about their finding of infringement against Northern.

19      We do know that Joe Wu admitted to receiving Martin-mcintosh's Improvement

20  Plans; (574:12-576:4) we know he admitted to having improvement plans; (577:22-578:12) we also

21  know Wu called McIntosh before buying the subdivision to ask him to prepare a new tentative map;

22  (176:19-25; 177:1-13) Northern also admitted to investigating as to whether or not the 5472 Map

23  had expired (590:2-20); and we also know that Northern hired DeWalt to prepare a new tract map

24  for what was explicitly stated on the contract as expired Tract Map No. 5472.  (Exh. J-16, p. 1.)  This

25  is in addition to the developer information package that Joe Wu admits he received by the City of

26  Wasco that also included the 5472 Tract Map.  (J-10, Tentative Map 4372, Appendix "C"; 558:24-

27  559:10.)

28  / / /

H:\PUBLIC\054493\060971
McIntosh v.
Northern\PLTF'S OPP TO
NOR-LOTUS' MO FOR
NEW TR.wpd

4       PL'S OPP TO NO CALIFORNIAS MOT, ETC

**III.**

**VICARIOUS INFRINGEMENT WAS PROPERLY PLEADED AND THERE WAS NO OBJECTION BY DEFENDANTS WHEN THE VERDICT FORMS WERE SUBMITTED OR WHEN THE JURY INSTRUCTIONS FOR VICARIOUS INFRINGEMENT WERE READ (Opp. to Part II.B.)**

**A.    The Second Amended Complaint Pleaded the Elements Necessary for Vicarious Infringement Against All Defendants.**

Detailed factual allegations are not necessary nor is it necessary to set out all legal theories in pleadings. (*Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 512 (2002); *Crull v. GEM Ins. Co.*, 58 F.3d 1386 (9th Cir. 1995).)  Still, the pleading must contain enough in the allegations to give the defendants fair notice of a complaint's claims and their grounds. *(Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007).)   The test for vicarious infringement is whether the defendants profited directly from the infringing activity of the direct infringer, had the right and ability to control the infringing activity, and failed to exercise the right and ability to control the infringing activity.  (*Metro- Goldwyn-Mayer Studios, Inc. v. Grokster Ltd.*, 545 U.S. 913 2005.)

Plaintiff's third amended complaint ("TAC") pleaded the elements of vicarious infringement sufficient to give all defendants notice of this claim against them.  (*See*, TAC, Exh. 38, Doc. No. 76)  The allegations in the TAC were that all of the defendants were contributorily liable. (Allegations 45 and 46 of the TAC.)   These allegations also included the elements of vicarious infringement.  (*Ibid.*)  The allegations identified first Wasco, and then the remaining defendants giving all of them sufficient notice of vicarious infringement as to all.

Further, and after the TAC was filed and served, no one filed and answered any pre-answer motions attacking the sufficiency of the pleadings on any issue.  In fact, the first objection that has been formally made as to the sufficiency of vicarious infringement as to any party in the TAC (other than Wasco) has been made for the first time in Northern's post-trial motion.

**B.    Northern Willingly Approved and Failed to Object to the Reading and this Omission of Jury Instruction Nos. 24 and 36 to the Jury.**

There is clear statutory authority that if an objection is not made to jury instructions

H:\PUBLIC\054493\060971
McIntosh v.
Northern\PLTF'S OPP TO
NOR-LOTUS' MO FOR
NEW TR.wpd

5                    PL'S OPP TO NO CALIFORNIAS MOT, ETC

1    before the judge submits the case to the jury then any later objection is waived and the party loses

2    the right to challenge the instruction on appeal. (F.R.C.P. Rule 51(c); *Melford Olden Honey, Inc. v.*

3    *Adee*, 452 F.3d 956 (8th Cir. 2006).) Therefore, if a party never objects to a jury instruction, they are

4    limited to objections of plain error under F.R.C.P. Rule 51(d) under extreme circumstances. (*U.S. v.*

5    *Wheeler*, 540 F.3d 683, 689 (7th Cir. 2008).)

6              Before trial, all parties approved and submitted to the court joint jury instructions.

7    (*See*, Exh. 40, Doc. No. 259, Jury Instruction Nos. 17.0 and 17.20.) All parties also submitted a joint

8    verdict form (Exh. 41, Doc. No. 299, Nos. 19-24).  Both the jury instructions and the verdict form

9    contained instructions for vicarious infringement and the verdict form specifically listed both

10    Northern and Lotus in the recitation of the allegations of vicarious infringement as to both of those

11    parties. (*Id.*) All of these were jointly submitted by all parties including Northern and Lotus.(*Id.*)

12              Later, the court denied plaintiff's motion to amend the pleadings according to proof

13    for contributory liability against Northern and Lotus.  After the Court ruled, it asked all parties, and

14    before the instructions were to be read before the jury, "anything else?  Any other legal issues?

15    Verdict.  Any other matters on jury instructions?"  (962:17-18.)  Neither Northern nor Lotus ever

16    objected to the instructions or the verdict form as to vicarious infringement.

17              Finally, the court read the jury instructions to the jury. This included the Court

18    reading the instruction for vicarious copyright infringement. (986:12-17; 992:10-993:4.) The Court

19    then gave the parties notice that if there were any last minute issues on the verdict to show up early

20    on the day of deliberations to argue those issues. (998:22-24.) Before deliberations, the Court asked

21    all counsel whether there was any reason not to call out the jury, Northern/Lotus' counsel responded,

22    "no, your Honor." (1005:24-1006:2.)

23              At no time before or during trial did Northern or Lotus ever object to the instruction

24    of vicarious infringement against them and in fact jointly approved the instructions and verdict form

25    asking the jury to walk through the elements for vicarious infringement against both parties.  The

26    motion should be denied on this point.

27    ///

28    ///

H:\PUBLIC\054493\060971
McIntosh v.
Northern\PLTF'S OPP TO
NOR-LOTUS' MO FOR
NEW TR.wpd

6        PL'S OPP TO NO CALIFORNIAS MOT, ETC

**C.** **There Were Sufficient Facts at Trial to Support a Claim of Vicarious Infringement Against Defendants (Opp. to Part II.C).**

Northern argues what appears to be a claim that the weight of the evidence did not support a finding of vicarious infringement against them.

The Supreme Court noted that vicarious liability, "allows imposition of liability when a defendant profits directly from the infringement and has a right and ability to supervise the direct infringer, <u>even if the defendant initially lacks knowledge of the infringement</u>." (*Metro-Goldwyn-Mayer, supra*, (underline added).) Therefore, whether the defendant initially knew of the infringing activities is initially irrelevant to the fact of whether or not they had the ability to supervise and control that activity from which they profited.

**1.** **There Was Sufficient Evidence for the Jury to Conclude That Northern Had the Right and Ability to Control the Infringing Activity.**

Northern's motion cites to the case of *Adobe Systems, Inc. v. Canus Productions, Inc.*, 173 F.Supp.2d 1044 (Central Dist. of CA 2001). In the *Adobe* case and others like it they involve swap meets where there is one single entity that oversees a host of sales booths rented by their respective businesses. (*Id.*) In these type of swap meet or auction cases there is always a question of fact as to the degree of control over the infringing activity. (See, *Adobe* at 1053.) In *Adobe*, the court held that:

> ". . . The spectrum of control has, at one end, the landlord-tenant model, usually representing minimal ability of the premises owner to control the infringing activities as someone using his premises; and, at the other end, the employer-employee model, which represents maximum control by the premises owner. Such maximum control may be present either through a master-servant relationship or through 'pervasive participation' in the business of the infringing party." (*Ibid.*)

Unlike the swap meet/auction cases, Northern had ultimate control and participation over the infringing activity. The jury had sufficient evidence to conclude that Northern had the ability to supervise and control the infringing activity because it was Northern that hired DeWalt to prepare a new map for expired Tract 5472. (Exhs., J-18, J-16, p 1; see, *supra*, Part III.B.) As stated above, Joe Wu, the managing partner of both, called Roger McIntosh before the project even began

and before he ever purchased the property to see if he would process a new map because he knew the old one had expired.  He knew McIntosh wanted to be paid for the value of map; and he knew he had to process a new map because he had received a developer information package from Wasco with the old map attached to it. As Stephen Wong, Wasco's expert stated, absent tearing out existing improvements, the tentative map had to conform to McIntosh's work. (876:3-14.)

Wu had also received McIntosh's improvement plans with the copyright symbol when he was preparing the subdivision for development. (See, e.g, P-108, p. BP000436;:(172:19-22) Northern hired DeWalt and Lotus paid the bills. (See, e.g., Exhs. J-3 and J-19, and Exh. 14, selected invoices and statements paid by Northern and Lotus)  The contract was Northern's, it was their project and the map reflecting existing improvements and a similar map reflecting improvements had to be made.  (J-134, Tentative Tract 6451, based on the "Associative Improvement Plans")  As Greg Black of DeWalt admitted, if Northern had told them to stop they would have stopped. (399:5-19.)

There is ample evidence showing Northern through Wu was intimately involved with the oversight and preparation of the infringing map and knew what had to be done to proceed with developing the property.  (535:2-536:4.)  This is clearly on the spectrum of control needed to meet the test for vicarious infringement.  It is also unlike the auction cases cited by Northern where the swap meet owner or manager had no idea what was going on underneath his or her nose.  The motion on this grounds should be denied.

**2.**     **There Was Sufficient Evidence for a Jury to Conclude That Northern Directly Profited from the Infringing Activity.**

There was also sufficient evidence for a jury to conclude that Northern directly benefitted by profiting from the infringing activity.  The definition of profits was set forth in the Ninth Circuit Jury Instruction No. 17.24 and which was submitted to the jury and which instructed them that any profits that are "attributable to the infringement" are to be awarded to the plaintiff. (Exh. 37, Doc. No. 320).  This requires a causal relationship between the profits and the infringement. (*Id.*)

Here, Northern had the ability to supervise and control the infringing activity.  Both

H:\PUBLIC\054493\060971
McIntosh v.
Northern\PLTF'S OPP TO
NOR-LOTUS' MO FOR
NEW TR.wpd

8            PL'S OPP TO NO CALIFORNIAS MOT, ETC

1   Northern and Lotus profited directly because without an infringing map, the evidence at trial showed

2   they could not sell houses.  (*Gov. Code*, § 66499.30; Woodcock Testimony 493:16-21.)   This

3   singular point was singularly ignored by Northern.  Yet, this is also a point that even Joe Wu

4   admitted at trial. (570:6-7)

5            Regardless of what Northern or Lotus put in the ground, no matter how many houses

6   they built, no matter what type of amenities they installed, the fact is that without a map that was

7   similar to McIntosh's copyrighted map, it was all for naught if they could not sell those houses

8   because no other map would conform to the improvements.  This is a requirement by statute and

9   what made that map so valuable.  Without it, no sales.  It is also why the new Tentative Map

10  prepared by DeWalt referred to the Improvement Plans because it had to conform to them.

11  (Exh. J134, based on the "Associative Improvement Plans"; 877:13-19.)

12                                         **IV.**

13       **THE DAMAGES AGAINST NORTHERN AND**
       **LOTUS   WERE   SUPPORTED   BY   THE**
14     **EVIDENCE AND THE LAW (Opp. to Part III OF**
       **NORTHERN'S MOTION)**

15

16  **A.**   **The Evidence at Trial Established That Most of the Work Performed in the Valley Was**
       **Parcel on the Valley Rose Estates And Was Required to Prepare Tract 5472 Thereby**
17     **Adding Value to an Infringing Map Which Retained the Benefit of this Prior Work.**
       **(Opp. to Part III. A.)**

18

19           Northern argues that "the jury . . . could not have found that plaintiff was entitled to

20  any damages." (Part III.A.)  This is based, according to them, on the "uncontroverted evidence" that

21  "established the fair market value to be $20,500."  (*Ibid.*)

22           Plaintiff refers this court to its position explained in Part I, *supra*, which shows that

23  the 5472 and 6451 Maps were based on the 5472 Improvement Plans, master studies and other

24  engineering that needed to be done before the 5472 or 6451 Maps could be approved and accepted

25  and which supported those Maps.  This is what plaintiff proved gave the 5472 Map value and which

26  was presented to the jury.  What the jury believes is up to them to decide.  There was no evidence

27  presented by defendants refuting this testimony or evidence.

28           The jury heard both sides of the evidence and found the value is greater than the act

H:\PUBLIC\054493\060971
McIntosh v.
Northern\PLTF'S OPP TO
NOR-LOTUS' MO FOR
NEW TR.wpd

9                           PL'S OPP TO NO CALIFORNIAS MOT, ETC

of simply redrawing an infringing map as all defendants suggest.  We know this because they awarded a verdict that amounted to $1.4 million which is based on plaintiff's argument that the map was supported by extensive engineering.  Northern argues that the value is $20,500 but completely ignores plaintiff's evidence and testimony presented at trial in their moving papers.

Defendants never presented any rebutting testimony to refute the relation between the prior engineering with the 5472 Map.  Northern had an engineering expert designated but never used him.  Wasco had an engineering expert but never designated him for any testimony to rebut any of this evidence presented by plaintiff.  None of the defendants ever bothered to designate an expert to come to their own estimates of the value of the copyrighted work.  In fact, the only testimony on value was presented by plaintiff's experts.  Northern now wants this court to do its own weighing of the evidence to come to a conclusion opposite that of the jury.

This is simply a matter of wishing for a different outcome.  The jury weighed the evidence and came to its own conclusion about the value of the map and decided that the cost for simply redrawing the map did not accurately represent its value.

**B.** **Northern Improperly Attempts During a Post-trial Motion to Perform Expert Calculations to Reduce the Profit Award (Opp. to Part III.B.1.)**

The "invited error doctrine" holds that, "one may not complain on review of errors below for which he is responsible.'" (*Sovak v. Chugai Pharmaceutical Co.* (9th Cir. 2002) 280 F.3d 1266.)  Invited error occurs when the appellant opens the door to objectionable testimony by introducing it, rather than waiting for the other party to do so. *(Mukhtar v. Cal. State Univ., Hayward,* 299 F.3d 1053, 1065 n. 6 (9th Cir.2002)(en banc), *amended by* 319 F.3d 1053 (9th Cir.2003))

Northern makes two different arguments to attempt to reduce the profit award.  First, they argue that plaintiff could only recover profit "actually received."  Second, they argue that Dr. Merati employed an accounting trick for the 19 sold homes and the actual allocation of expenses show Lotus had a net loss of $1,221,547.61.  (*See Part III.B.1*, p. 15:13-18.)

In response to Northern's first argument, Northern's attacks a monster of their own making.  At trial, defendant presented its own client, Joe Wu, to testify as to a certain accounting

H:\PUBLIC\054493\060971
McIntosh v.
Northern\PLTF'S OPP TO
NOR-LOTUS' MO FOR
NEW TR.wpd

10                    PL'S OPP TO NO CALIFORNIAS MOT, ETC

1   report his office had prepared relating to profits and losses for the Valley Rose Estates subdivision.

2   (*See,* Exh. 6, D-217, pages 2-3) Included in the calculations that ultimately led to Mr. Wu's projected

3   losses <u>were his projected sales of the remaining lots for a loss</u>. (*Id.* and 902:22-904:2.)  Mr. Wu also

4   presented projected <u>future losses</u> for the sales of his remaining 38 lots. (904:10-905.)  Dr. Merati

5   ("Merati") was called by plaintiff's as a rebuttal expert to Mr. Wu's own calculations.  In rebuttal,

6   and based on his professional experience, Merati anticipated future profits from sales.  It was then

7   for the jury to decide who to believe.

8           It was Northern who invited any alleged error in calculating future profits or losses

9   into the overall profit award, not plaintiff.  Northern's entire defense to profits was to project out as

10  much future expenses and losses as possible to come to the conclusion they would make nothing and

11  would be in the red.  They cannot now come complaining that plaintiff's expert rebutted these

12  assumptions and the jury believed him over Northern.

13          Further, there is no rule of law that says that future profits cannot be deducted and

14  which is discussed *infra* at IV.E

15          As to Northern's second argument, that Merati improperly calculated his expenses,

16  rebutting this would require Merati having to re-take the witness stand to explain why he did the

17  calculations the way that he did.   If Northern had wanted to question Merati on this issue they had

18  the opportunity at his deposition and at trial.  They chose not to for their own reasons.  Northern now

19  asks this court to allow Northern to insert itself as an expert to rebut Merati's testimony, and without

20  the ability of plaintiff's expert to explain any perceived questions regarding his own reports.

21  **C.**     **<u>Without a Final Map You Cannot Sell Homes and Formed the Basis on Which Plaintiff</u>**
    **<u>Based Their Relationship Between Profits and Infringement.  (Opp. to Part III.B.2.)</u>**

22

23          Nowhere in Northern's motion does it address the fundamental relationship

24  established by plaintiff at trial which is that according to statute and the testimony of Wasco's

25  witnesses and Joe Wu, without a final map you cannot sell lease finance or even occupy a home.

26  (*See discussion, supra* at III.C.2.)  This is what was provided to the jury and was never rebutted by

27  any of the defendants.    In fact, it was conceded by all.  Nor could they, it's the law in California.

28  It also provided further evidence of the value of the 5472 Map and any map that copied plaintiff's

H:\PUBLIC\054493\060971
McIntosh v.
Northern\PLTF'S OPP TO
NOR-LOTUS' MO FOR
NEW TR.wpd

11          PL'S OPP TO NO CALIFORNIAS MOT, ETC

1    because it got them around having to redesign the subdivision which contained improvements worth

2    $1.9 million. (J-73, page 2.)  All DeWalt had to do was do some perfunctory surveys, copy the map

3    and both it and Northern received the full value of everything that McIntosh had done before them.

4         Defendants make the new arguments that there was no causal relationship between profit and

5    infringement because: (1) There was no effect on value by having DeWalt create the map; (2) there

6    was no evidence homeowners cared to have created the map; and (3) there was no evidence that

7    DeWalt performed its work faster.  (Motion, Part III.B.2.)  All these arguments are non-sequiturs and,

8    they are also moot at this point. They are only arguments and there was no evidence on these points

9    at trial.   Contrary to what Northern seems to suggests  it was not plaintiff's burden to prove all of

10   these elements to offset any profit claims.

11   **D.    The Testimony and Reports of Jubin Merati at Trial Were Properly Admitted As Were
          Projections of Home Sales and Losses Allowed By Joe Wu  (Opp. to Part III.B.3.)**

12

13        Northern is requesting a new trial because a report by plaintiff's expert, Dr. Jubin

14   Merati, was based on projected home sales.  Northern apparently forgets that they themselves

15   submitted Joe Wu, the principal of both Northern and Lotus, to testify as a non-retained expert as

16   to his profit and loss summaries, which included his estimation of projected sales and losses from

17   his home and lot sales. (906:4-907:4.)

18        At trial, plaintiff introduced an expert report by Merati. (Exhs. P-112-P-115.) These

19   reports were Merati's conclusions in supporting documents as to total profits from sales of existing

20   homes and also profits from projected sales of existing and homes to be built on finished lots. (*Ibid.*)

21   At the time, counsel for Northern objected to P-112's introduction into evidence and asked to voir

22   dire Merati on the report but then later withdrew that objection.  (652:15-25.)  Merati's report was

23   admitted.  Northern then later moved to have P-112 and P-114 taken out of evidence but the motion

24   was denied.  (691:4-11.)  The court ruled that Merati's testimony goes to the weight of credibility.

25   (*Ibid.*)

26        Northern objects to the one portion of Dr. Merati's reports where Merati calculated

27   projected future home sales to determine what Northern's gross revenues were going to be.  (686:2-

28   19.)  Merati based his assumptions as a forensic economist that Northern would stand to make a

H:\PUBLIC\054493\060971
McIntosh v.
Northern\PLTF'S OPP TO
NOR-LOTUS' MO FOR
NEW TR.wpd

                                        12              PL'S OPP TO NO CALIFORNIAS MOT, ETC

1   sizable profit based on past average sales and based on a static market. (688:14-689:1-12.) Northern

2   bases its argument on the fact that Merati's testimony, "lacked the required reliability" because of

3   the speculative nature of its projected home sales. (See Motion, p. 20.) Yet, Northern never explains

4   why. Merati's opinion was based on his review of past sales and future economic outlook which is

5   in his bailiwick.

6          Additionally, Merati based his assumptions on the conduct of Northern because

7   Northern elected to pull building permits to build houses for the unfinished lots.  (654:1-7.)

8   Northern and Lotus were both in the business of overtaking failed subdivisions and building homes

9   for a profit. (556:17-557:1, 558:9-10 and 560:5-7.) Therefore, there was sufficient reason to believe

10  that is exactly what Northern and Lotus were going to be doing, make money on future sales.

11         Northern's only expert report was by Northern's principal, Joe Wu.  There is no

12  indication in the motion as to why Merati's testimony was unreliable, speculative, or unsupported

13  by the evidence in the record.  In fact, all evidence suggests otherwise and the jury was free to decide

14  who it believed.  In this case, they chose to believe Merati and the verdict was what it was.

15  **E.    There Is No Support in the Law That Gross Revenues Only Equate to Amounts
16  Actually Received and Defendant Opened the Door in Any Case When They Sought to
    Reduce Their Profits by Offering Prospective Losses.  (Opp. to Part III.B.4.)**

17         In establishing the infringer's profits, the copyright owner is required to present proof

18  only of the infringer's gross revenue, and the infringer is required to prove his or her deductible

19  expenses and the elements of profit attributable to factors other than the copyrighted work. (17

20  U.S.C. § 504(b).) The copyright claimant must first show a causal nexus between the infringement

21  and the infringer's gross revenue.  Once a causal nexus is shown, the infringer bears the burden of

22  apportioning the profits that were not the result of infringement." *(Polar Bear Productions, Inc. v.*

23  *Timex Corp.*, 384 F.3d 700, 711, 714 n.10 (9th Cir.2004).)

24         Profits should be non-speculative and, once established, if what portion of the work

25  was attributable to the infringement from any non-infringing material cannot be ascertained, all of

26  a defendant's profits should be awarded to the plaintiff. (*Nintendo of America, Inc. v. Dragon Pacific*

27  *Intern.*, 40 F.3d 1007, 1012 (9th Cir.1994), *cert. denied*, 515 U.S. 1107 (1995).)

28         Recovery of profits attributable to infringement in addition to actual damages is

H:\PUBLIC\054493\060971
McIntosh v.
Northern\PLTF'S OPP TO
NOR-LOTUS' MO FOR
NEW TR.wpd

13          PL'S OPP TO NO CALIFORNIAS MOT, ETC

designed to ensure that infringers are not able to retain a benefit flowing from the wrongful conduct that is not fully taken into account in an award of actual damages. *(U.S. Payphone, Inc. v. Executive Unlimited of Durham, Inc.*, 781 F.Supp. 412, (Middle Dist. NC (1991).)  There is no case law that suggests or holds that plaintiff cannot seek to recover profits based upon future sales of the infringing work.

In many cases, infringement covers articles and product which infringement is found those profits can be traced and recovered and any remaining infringing articles can be returned or destroyed.  This is not the case here where you have an infringing map (the 6451 Map) which is inherently tied to the improvements in the ground.  At trial, all sides agreed that but for destroying those improvements you have to use a similar map.  (See, e,g,, 876:3-14.) So Northern and Lotus who are both tagged with infringement now have a large number of existing homes and lots for future homes which will necessarily be the subject of infringing profits per the jury's findings.  Yet, and unlike tangible articles, infringement here cannot be so neatly undone.  These are lots which if not accounted for in the profit award will yield future profits attributable to infringement.  Failing to account for them now will yield a windfall to Northern later.

Finally, any attempts to exclude prospective profits presented by plaintiff is invited error. (*See, supra*, discussion at IV.B.) Northern complains about the prospective profits presented by plaintiff but it was Northern and Lotus that opened the door to this testimony. It was Joe Wu's testimony prospective losses that plaintiff's expert rebutted as to prospective profits. (D-217, pp. 2-3.)  If Northern now finds itself in a hole, it is a hole that they dug, not plaintiff.  Apparently the jury was faced with the choice of whether to believe either Northern was going to intentionally sell homes at a loss or, was going to sell homes at a profit and accepted plaintiff's expert numbers as to what those profits likely would be.

Even though prospective, non-speculative profits are not disallowed, Northern's "profits" and plaintiff's expert testimony can be viewed another way.  This court can also find that the award of profits is akin to goodwill.  At trial, it was shown that the existing homes had intrinsic value to the infringer for the reasons stated above.  Similar to goodwill, this can be considered profit. (See, *Softel, Inc., supra.*)

H:\PUBLIC\054493\060971
McIntosh v.
Northern\PLTF'S OPP TO
NOR-LOTUS' MO FOR
NEW TR.wpd

14          PL'S OPP TO NO CALIFORNIAS MOT, ETC

1    As a final alternative, this Court can retain jurisdiction over the Valley Rose Estates

2    and monitor profits from future sales of homes as they are sold.

3    **V.**

4    **ANY MISSTATEMENT OF THE LAW WAS**
     **NOT SO PERVASIVE THROUGHOUT THE**
5    **TRIAL THAT THE DEFENDANT WAS**
     **UNFAIRLY PREJUDICED (Opp. to Part V.)**

6

7    A party is only entitled to a new trial when opposing counsel's conduct causes

8    prejudice to the moving party and then unfairly influences the verdict.  (See, *Tesser v. Board of*

9    *Education of City School District of City of New York*, 370 F.3d 314, 321, 2nd Cir. 2004), citing

10   *Greenway v. Buffalo Hill Motel*, 143 F.3d 47, 51 (2nd Cir. (1998).)  The party seeking a new trial

11   "must make a concrete showing that the misconduct of counsel consistently permeated the entire trial

12   from beginning to end." (*Sutkiewicz v. Monroe County Sheriff*, 110 F.3d 352, 361 (6th Cir. 1997).)

13   Northern points to one "misstatement" by plaintiff's counsel in plaintiff's rebuttal

14   argument and also to the fact that Jury Instruction No. 33 was not read but included in the jury

15   instructions. (*See*, Motion, Part IV.A.B.)  What is absent from the moving papers is the fact that this

16   Court through spontaneous instructions just after the jury was impaneled and before deliberations

17   that attorney evidence is not argument.  (133:2-14 and 1006:10-1007:1.)

18   Most importantly, Northern acts as if there was no evidence of copying from which

19   the jury could find infringement other than a simple translation from what was on the ground to the

20   infringing map.  To the contrary, plaintiff provided ample of direct evidence of copying such as

21   infringing map.

22   Identical Bearings from the 5472 Map to the 6451 Maps (J-133; J-134; J-127; P-108

23   (p. 436), or ("Maps"); 182:7-25; 183:1-10; 186:4-19; 443:9-445); Identical lot numbering; (Maps.;

24   and 184:18-25; 185:1-13, 438:18-22; 442:2-12); Identical boundaries; (Maps.;185:14-22 ); Identical

25   street names (Maps, 438:18-22 ); Identical street locations (Maps, 180:21-25; 181:1-11); carryover

26   mistakes between maps (Maps;167:16-25; 168:1-6; 169:25-170:12); and Identical street curves

27   (Maps; 207:24-25; 208:1-11; 210:1-23.

28

H:\PUBLIC\054493\060971
McIntosh v.
Northern\PLTF'S OPP TO
NOR-LOTUS' MO FOR
NEW TR.wpd

15          PL'S OPP TO NO CALIFORNIAS MOT, ETC

1               To ignore all of this and declare that the jury was swayed by one statement by counsel

2  during rebuttal is not believable.

3               Typically, there would also be jury affidavits declaring that the jury relied on this

4  statement or that it somehow influenced their decision.  None have been produced.  In sum, there

5  is simply no evidence that the alleged misstatement was so pervasive throughout trial to rise to the

6  level of prejudicial misconduct by counsel.  This is especially true in light of the fact that this court

7  gave a specific admonition after the statements made by counsel.  (1103:13-21.)  Finally, Northern

8  also concedes in its motion that all defendants argued one after the other that simply copying only

9  what was on the ground was not infringement.  Therefore, none of this argument was ever objected

10  to and the jury had the full weight of their arguments to counteract any alleged misstatement by

11  plaintiff's counsel in rebuttal.

**VI.**

**<u>CONCLUSION</u>**

               For all of the above reasons, plaintiff requests that the court deny in its entirety

Northern's Motion for New Trial or in the Alternative, to Alter and Amend and Lift the Order to Stay

the Judgment.

DATED:   July 2, 2010

                           Respectfully submitted,

                           BORTON PETRINI, LLP

                           By:    /s/ James J. Braze /s/ Jeffrey A. Travis
                              James J. Braze, Jeffrey A. Travis, Attorney for Plaintiff,
                              Roger McIntosh

H:\PUBLIC\054493\060971
McIntosh v.
Northern\PLTF'S OPP TO
NOR-LOTUS' MO FOR
NEW TR.wpd

16         PL'S OPP TO NO CALIFORNIAS MOT, ETC

**PROOF OF SERVICE**
**(FRCP No. 5(b)(2)(E))**

**STATE OF CALIFORNIA, COUNTY OF KERN**

I, Vanessa J. Claridge, declare:

I am a citizen of the United States. I am employed in the County of Kern, State of California. I am over the age of 18 and not a party to the within action; my business address is 5060 California Avenue, Suite 700, Bakersfield, California 93309.

On **July 2, 2010**, I served the foregoing document described as **PLAINTIFF'S OPPOSITION TO NORTHERN CALIFORNIA UNIVERSAL ENTERPRISES COMPANY'S, LOTUS DEVELOPMENTS, LLP'S MOTION FOR NEW TRIAL OR IN THE ALTERNATIVE TO ALTER OR AMEND JUDGMENT** on the other party(ies) in this action as follows:

| | |
|---|---|
| Steven John Hassing, Esq. | Attorneys for Attorneys for Defendants, |
| Law Offices of Steven J. Hassing | Northern California Universal Enterprises |
| 425 Calabria Court | Company and Lotus Developments |
| Roseville, CA 95747 | Tel:    916/677-1776 |
| email address: **stevehassing@yahoo.com** | **Fax:   916/677-1770** |
| | |
| Chaka Okadigbo, Esq. | Attorneys for Def./Appellant, City of Wasco |
| **GCR, LLP** | |
| 520 S. Grand Ave, Suite 695 | Tel: 213/347-0210 |
| Los Angeles, CA 90071 | **Fax: 213-347-0216** |
| email address: **cokadigbo@gcrlegal.com** | |
| | |
| Ann T. Schwing, Esq. | Attorneys for Def./Appellant, City of Wasco |
| **McDonough Holland & Allen PC** | |
| 500 Capitol Mall, 18th Floor | Tel: 916/444-3900 |
| Sacramento, CA 95814-4704 | **Fax: 916/444-8334** |
| email address: | |
| | |
| William L. Alexander, Esq. | Attorneys for Defendant, DeWalt CM, Inc. |
| **Alexander & Associates** | |
| 1925 "G" Street | Tel: 661/316-7888 |
| Bakersfield, CA 93301 | **Fax: 661/316-7890** |
| email address: **walexander@alexander-law.com** | |

X    **BY ELECTRONIC SERVICE:** Pursuant to Fed. R. Civ. P. 5(b)(2)(E) and Local Court Rule(s), the foregoing document will be served by the court via CM/ECF.  Pursuant to the CM/ECF docket for this case proceeding the following person(s) are on the Electronic Mail Notice List to receive ECF transmission at the email address(es) indicated below:

X    **BY MAIL:**   As follows:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at , California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on **July 2, 2010**, at Bakersfield, California.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

_____Vanessa J. Claridge_____          _____/s/ Vanessa J. Claridge_____

H:\PUBLIC\054493\060971
McIntosh v.
Northern\PLTF'S OPP TO
NOR-LOTUS' MO FOR
NEW TR.wpd

17          PL'S OPP TO NO CALIFORNIAS MOT, ETC