Steven J. Hassing
California SBN 152125
LAW OFFICES OF STEVEN J. HASSING
425 Calabria Court
Roseville, CA  95747
Telephone:  (916) 677-1776
Facsimile:   (916) 677-1770

Attorney *for Defendant, Northern California Universal Enterprise Company and Lotus Developments, L.P.*

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROGER MCINTOSH,<br><br>                          Plaintiff(s);<br>v.<br><br>NORTHERN CALIFORNIA UNIVERSAL ENTERPRISES COMPANY, ET AL.,<br><br>                          Defendant(s). | No.  1:07-CV-01080-LJO-GSA<br><br>**NORTHERN'S AND LOTUS'S OPPOSITION TO MOTION FOR ATTORNEY'S FEES**<br><br>DATE:  AUGUST 25, 2010<br>TIME:   8:30 A.M.<br>DEPT.:  4 (LJO)<br><br>HONORABLE LAWRENCE J. O'NEILL<br><br>LOCAL RULES 230(c); 293<br>Rule 37(c) FRCP |

**I**
**INTRODUCTION**

Plaintiff seeks $221,528 in attorney's fees against Northern and Lotus, (hereinafter referred to jointly as "Northern") allegedly incurred in proving facts which he claims should have been admitted during discovery.  The motion also seeks attorney's fees from

1

DeWalt, a separate and unrelated defendant.[1]  The motion was filed in bad faith, is meritless and warrants sanctions under Rule 11(b)(2) & (3).

Plaintiff falsely claims that by Northern's failure to admit eight "facts" he was forced to incur $221,528 fees. Northern admitted each fact which it was obligated to admit by Rule 36.  The "facts" not admitted and which form the basis of Plaintiff's motion were either not proved at trial, not substantially important or subject to the exemptions provided under Rules 37(2)(c)(C) & (D).

Rule 36 allows a party to serve discovery upon an opposing party requesting the responding party to admit facts, application of law to fact, opinions about facts or the application of law to fact and the genuiness of documents.  There can be significant consequences for failing to admit that which legitimately should have been.  Specifically, if the propounding party later proves the fact which he had previously sought admitted, the court may award sanctions for the cost, including attorney's fees, expended in doing so.  (Rule 37(c)(2), FRCP).

Sanctions may not be awarded in the following instances;

- If the request was objectionable under Rule 36(a). (Rule 37(c)(2)(A)).
- If the admission sought was of no substantial importance. (Rule 37(c)(2)(B)).
- If the party failing to admit had a reasonable ground to believe that it might prevail on the matter. (Rule 37(c)(2)(C)).

---

[1] Obviously, a separate motion should have been filed against DeWalt which would have precluded Plaintiff's attempted obfuscation by switching back and forth between defendants and attempting to saddle all one defendant with arguments applicable to the other.

- If there was other good reason for the failure to admit. (Rule 37(c)(2)(D)).

Plaintiff bases his motion on the following requests, each of which were denied.

- **(RFA # 8)** Admit that the 6451 Tentative and Final Maps are substantially similar to Tentative Map 5472.

- **(RFA#12)** Admit that you received from the City of Wasco improvement plans prepared by Martin-McIntosh for completing repairs to the Valley Rose Estates subdivision.

- **(RFA# 13)** Admit that you received improvement plans prepared by Martin-McIntosh from the City of Wasco.

- **(RFA# 14)** Admit that you received improvement plans prepared by Martin-McIntosh from DeWalt.

- **(RFA# 24)** Admit that Tentative Map No. 6451 for the Valley Rose Estates subdivision replaced expired Tentative Map No. 5472.

- **(RFA# 29)** Admit that the "Associative Approved Improvement Plans" referenced in the "Notes" section of Tentative Map No. 6451 refers to the improvement plans prepared by Martin-McIntosh.

- **(RFA# 30)** Admit that the numbered lots on the Wall Improvement Plans (Nos. BP000452-BP00456) refers to the buildable lots on Tentative Map No. 6451.

- **(RFA# 31)** Admit that the numbered lots on the Wall Improvement Plans (Plaintiff's Bates Nos. BP000452-BP000456) refers to the lots on Tentative Map No. 5472.

3

Attached to each set of requests was an 8.5 inch x 11 inch copy of Tentative Tract Map 6451 and the Vesting Tentative Tract Map No. 6541.  No other maps, plans or documents were provided.  (see Exhibits "A" and "C" to Travis Declaration).

## II
## SUBSTANTIAL SIMILARITY

Plaintiff points mainly to requests 8, 24 and 29 in arguing that Northern's denials caused him to incur these excess fees.  Most prevalent is number 8 which asked Northern to admit that the 6451 Tentative and Final Maps are <u>substantially similar</u> to Tentative Map 5472.  Northern cannot be sanctioned for denying request number 8 on various grounds.

First, the request is compound, asking Northern to admit that map 5472 is substantially similar to tentative map 6451 *and* final map 6451.  Such requests may not contain compound, conjunctive, or disjunctive statements. *Havenfield Corp. v H & R Block, Inc.,* 509 F.2d 1263 (8th Cir. 1975),

Second, Plaintiff cannot establish that the jury found the maps to be "substantially similar".  All the jury was asked to do is determine if map 5472 had been copied. It determined that it had been.  The jury was not asked, and therefore did not reveal, whether if found the maps to be "substantially similar" or whether it simply determined that DeWalt had actually copied certain parts the map. (verdict form questions #1, 3, 5 & 7).

Third, as admitted by Plaintiff, Northern readily admitted <u>the fact</u> that the maps were similar,[2] (RFA #7), had the same lot numbering, (RFA #3) and had the same street names, (RFA#4).  Accordingly, the "facts" upon which "substantial similarity" can be analyzed and perhaps determined were admitted as requested.  But to expect a defendant to "admit" that the maps were "substantially similar" asked too much for the following reasons.

Fourth, substantial similarity is an elusive concept, not subject to precise definition. *Concrete Machinery Co., Inc v. Classic Lawn Ornaments, Inc*., 843 F.2d 600, 606 (1st. Cir. 1988).  Substantial similarity requires that the copying is quantitatively and qualitatively sufficient to support the legal conclusion that infringement (actual copying) has occurred. 4 <u>NIMMER</u> sec 13.01 [B], at 13-12.  In the Ninth Circuit, a two-part test is employed to determining substantial similarity, an objective extrinsic test and a subjective intrinsic test.  *See, e.g., Three Boys Music Corp. v. Bolton,* 212 F.3d 477, 485 (9th Cir. 2000). The extrinsic test considers whether two works share a similarity of ideas and expression as measured by external, objective criteria.  The extrinsic test requires "analytical dissection of a work and expert testimony."  "Analytical dissection" requires breaking the works "down into their constituent elements, and comparing those elements for proof of copying as measured by 'substantial similarity.'  Because the requirement is one of substantial similarity to *protected* elements of the copyrighted work, it is essential

---

[2] <u>Black's Law Dictionary</u>, sixth ed. (1990) defines "similar" as nearly corresponding; resembling in many respects, somewhat like; having a general likeness, although allowing for some degree of difference. Black's goes on to state that, "it is a word with different meanings depending on context in which it is used". "... **in some cases "similar" may mean identical or exactly alike"**. (Id).

to distinguish between the protected and unprotected material in a plaintiff's work. *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004). The intrinsic test examines an ordinary person's subjective impression of the similarities between two works and is the exclusive province of the jury. *Funky Films, Inc. v. Time Warner Entertainment Co.*, 462 F.3d 1072, 1077 (9th Cir. 2006). Obviously, these complexities do not make it reasonable to require admission of "substantial similarity".

To show that two works are substantially similar, plaintiff must demonstrate that the works are substantially similar in both ideas and expression. *Frybarger v. International Business Machines Corp.*, 812 F.2d 525, 529 (9th Cir. 1987). Although plaintiff must first show that the ideas are substantially similar, the ideas themselves are not protected by copyright and therefore, cannot be infringed. *Mazer v. Stein*, 347 U.S. 201, 217-218 (1954).

To determine whether similarities result from unprotectable expression, analytic dissection of similarities may be performed. If this demonstrates that all similarities in expression arise from use of common ideas, then no substantial similarity can be found. *Data East USA, Inc. v. Epyx, Inc.*, 862 F.2d 204, 208 (9th Cir. 1988). The term "substantially similar" is also a legal term of art. It dictates whether factual copying, once established, is legally actionable. *Positive Black Talk Inc. v. Cash Money Records, Inc.* 394 F.3d 357, 370 (5th Cir. 2004).

Finally, Northern had reasonable grounds to believe that it might prevail on substantial similarity. In fact, in support of its summary judgment motion it attached

color coded copies of maps 6451 and 5472 showing over 200 differences. (Hassing dec.).

Rule 36 does not authorize requests for admissions of law without relating the legal conclusion to the facts of the case. *Long v Howard University*, 561 F.Supp.2d 85, 94 (citing *OAO Alfa Bank v. Center for Public Integrity,* 387 F.Supp.2d. 20, (2005).

Obviously, to simply request that Northern "admit" that the maps were substantially similar demanded denial. The term, being used in two different ways in determining copyright infringement is ambiguous enough that admission could not be made. Further, although Northern had no problem admitting that the maps were similar and admitting to the various elements that were similar, Northern was simply not qualified to actually admit to the legal term "substantially similar"

<u>Request number 24 asked Northern to admit that Tentative Map No. 6451 replaced expired Tentative Map No. 5472.</u>

Request 24 was not well thought out. Not only did map 6451 not "replace" map 5472 but Plaintiff did not prove that it did. That was never an issue in the case. At trial it was established that map 5472 expired many years ago. Northern was then required to file a "new" tentative map. There was no testimony about one map "replacing" another. This denial was accurate and of no substantial importance.

<u>Request number 29 asked Northern to admit that the "Associative Approved Improvement Plans" referenced in the "Notes" section of Tentative Map No. 6451 refers to the improvement plans prepared by Martin-McIntosh.</u>

This request in and of itself, like request number 24, is of no substantial importance because it was intended to try and prove that Northern used Plaintiff's

7

improvement plans. Plaintiff did not prove that Northern used his plans and the jury found that Northern did not copy them.

<u>Request number 30 asked Northern to admit that the numbered lots on the Wall Improvement Plans (Nos. BP000452-BP00456) refers to the buildable lots on Tentative Map No. 6451</u>.

This denial was justified because the wall improvement plans drafted by Plaintiff back in 1990 or 1991 could not have referred to the lots on map 6451 which was created ten years <u>later</u>. Further, it was never established that Northern ever used any of Plaintiff's plans. There was no substantial importance to this fact.

<u>Request number 31 asked Northern to admit that the numbered lots on the Wall Improvement Plans (Plaintiff's Bates Nos. BP000452-BP000456) refers to the lots on Tentative Map No. 5472.</u>

As it turned out, the statement in request number 31 appears to be true. However, the wall improvement plans were not provided with the requests for admission and this fact turned out to be of no substantial importance. As drafted, it was obviously meant to try and tie Northern to the use of Plaintiff's plans and that was never established at trial. In the end, the jury determined that Northern did not copy any improvement plans.

### III
### ACCESS TO PLANS

Plaintiff also alleges that Northern denied various requests designed to help prove access. In this regard, he points to requests 12, "<u>admit that you received from the City of Wasco improvement plans prepared by Martin-McIntosh for completing repairs to the Valley Rose Estates subdivision</u>"; 13, <u>admit that you received improvement plans prepared by Martin-McIntosh from the City of Wasco</u>; and 14, <u>admit that you received improvement plans prepared by Martin-McIntosh from DeWalt.</u>

8

None of these requests, if admitted, would have done anything to lessen Plaintiff's burden of proving his case at trial because access of the improvement plans was not proved at trial nor was copying of them by Northern proved. As to <u>numbers 12 and 13</u>, it was established at trial (and admitted by Wu in his deposition) that he "obtained" a set of plans for the pump station but that they turned out to be of no use to him in making the repair needed. The request asked Northern to admit that it received improvement plans (plural) "for completing repairs to the <u>subdivision</u>". This was not established nor did the jury find that Northern copied any plans.

As to number 14, It was never established at trial that Northern obtained <u>any improvement plans</u> from DeWalt. Number 14 was answered accurately.

## IV
## PLAINTIFF HAS NOT ADEQUATELY ESTABLISHED THE FEES HE SEEKS

The fees sought are set forth in a declaration by Jeff Travis. There are no declarations from any of the other attorneys whose fees are sought by this motion. There are no declarations as to the reasonableness and necessity of those efforts.

At paragraphs 14 and 17 of his declaration, Mr. Travis states that Plaintiff incurred $28,619.45 in fees because of Northern's denials of requests 8, 24, 30 and 31. As noted above, these requests are diverse and it would be helpful to know what fees were associated with which requests in order to more adequately refute the reasonableness and necessity of fees. However, in light of the arguments noted earlier in the brief, none of the fees should be taxed as costs anyway.

Paragraph 18 of Mr. Travis's declaration was intended to explain how the remainder of the fees were allocated. The explanation is unclear and in trying to track the

fees designated by underlining and handwritten notes on Exhibit "J" one becomes hopelessly confused. For instance, although Mr. Travis alleges that the "total" amount of fees incurred based on both Northern's and DeWalt's denials was $309,160.55, the true figure, represented by the underlined items is only about $125,000.00.

Further, are we to believe that all the time spent during trial is to be allocated to these admissions? And if so, which ones specifically? In addition, Plaintiff provides no authority for adding in "fees" allocated to paralegals and costs related to taking depositions.

## V
## CONCLUSION

Plaintiff's motion was not filed in good faith. The requests noted were denied for good cause, the facts alleged therein were not proven at trial and Plaintiff failed miserably to substantiate the need, reasonableness and amount of fees *actually incurred* in proving any issue of importance. The motion should be denied in full.

Dated this 11th day of August, 2010         /s/ Steven J. Hassing
                                            Steven J Hassing, Attorney for
                                            Northern and Lotus

# CERTIFICATE OF SERVICE

1. On August 11th, 2010, I served the following document:

   **NORTHERN'S AND LOTUS'S OPPOSITION TO MOTION FOR ATTORNEY'S FEES**

2. The above-named document was served by the following means to the persons as listed below:

__XX__   United States Mail, first class postage fully prepaid and addressed to:

   James Braze
   Jeffrey Travis
   Borton, Petrini, LLP
   5060 California Ave, Suite 700
   Bakersfield 93309

   Chaka Okadigbo
   Garcia Calderon Ruiz, LLP
   520 South Grand Avenue, Ste. 695
   Los Angeles, CA  90071

   William L. Alexander
   Alexander & Associates
   1925 G Street
   Bakersfield, CA  93301

   By fax transmission. I faxed the document to the persons at the fax number listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission is attached.

   I declare under penalty of perjury that the foregoing is true and correct.

   Dated this 11th day of August, 2010.

                                          /s/ Kimberley A. Hassing
                                          Kimberley A. Hassing