IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROGER McINTOSH,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>NORTHERN CALIFORNIA<br>UNIVERSAL ENTERPRISES,<br>INC., et al,<br><br>　　　　　Defendants.<br>_____/ | CASE NO. CV F 07-1080 LJO GSA<br><br>**ORDER ON PLAINTIFF'S F.R.Civ.P. 37(c)(2)**<br>**MOTION FOR ATTORNEY FEES**<br>(Doc. 406.) |

**INTRODUCTION**

Plaintiff Roger McIntosh ("Mr. McIntosh") seeks a combined $309,160.55 attorney fees under F.R.Civ.P. 37(c)(2) from defendants Northern California Universal Enterprises Company ("NCUE"), Lotus Developments, LP ("Lotus") and Dennis W. DeWalt, Inc. ("DeWalt") after Mr. McIntosh's favorable jury verdict on his copyright infringement claims arising from his preparation of a subdivision tentative map and improvement plans. NCUE, Lotus and DeWalt (collectively "defendants") respond that Mr. McIntosh fails to substantiate his requested attorney fees based on defendants' denial of requests for admission which defendants characterize as lacking "substantial importance." This Court considered Mr. McIntosh's attorney fees motion on the record without a hearing, pursuant to Local Rule 230(g). For the reasons discussed below, this Court DENIES Mr. McIntosh attorney fees.

1

# BACKGROUND

## Summary

This action arises from alleged infringing use of a tentative map and improvement plans to develop 33.51 acres as a subdivision in the City of Wasco ("Wasco").[1] Mr. McIntosh, a Bakersfield civil engineer, prepared a tentative map ("Map 5472") for what was known as Tract 5472 of the subdivision and improvement plans (streets, sidewalks, curbs, gutters, storm drains, sewer, water and utilities) for Tract 5472. Subdivision construction ceased with the original developer's bankruptcy, and Map 5472 expired with no final map recorded for Tract 5472.

After the subdivision lay dormant for 10 years, Lotus, a limited partnership, purchased Tract 5472, and NCUE, a general contractor, took over development of the subdivision with existing improvements constructed by the original developer. Rather than redesign Tract 5472, which was renamed Tract 6451, NCUE with Wasco's permission, chose to process new Tentative Map 6451 to replace expired Map 5472. NCUE hired DeWalt, a Bakersfield engineering firm, to survey existing improvements and prepare and process a new Tentative Map 6451 and final map. DeWalt processed its survey information to create Tentative Map 6451 to depict observed site improvements and conditions. Wasco approved Tentative Map 6451 and later Final Map 6451 to permit resumption of subdivision development.

Mr. McIntosh registered his copyright on Map 5472 and his improvement plans on February 22, 2007. Mr. McIntosh proceeded on this third-amended complaint ("TAC") against defendants and Wasco to allege "Defendants' construction of the Subdivision is based on landscape and subdivision designs substantially similar to the subdivision and landscape design conceived and created by McIntosh that is represented in the plans and that is the subject of Copyright Registration Certificate No. VAU-721-180." The TAC alleges that the "copying of the Plans by defendants constitutes infringement of McIntosh's registered copyright and the technical drawings depicted in the Plans, in violation of the Copyright Act." Mr. McIntosh claims Tentative Map 6451 is "substantially similar" to Map 5472 in that the street names, lot configuration, numbering system and tract boundaries appear identical.

---

[1] Wasco is a former a defendant and settled with Mr. McIntosh during the pendency of post-trial motions.

**Mr. McIntosh's Requests For Admission To NCUE And Lotus**

With their January 30, 2009 responses, NCUE and Lotus denied Mr. McIntosh's respective Request for Admission Nos. 8, 12-14, 24 and 29-31 (collectively the "NCUE/Lotus RFAs") that:

1. "6451 Tentative and Final Maps are substantially similar to Tentative Map 5472";
2. NCUE and Lotus "received from the City of Wasco improvement plans prepared by Martin-McIntosh[2] for completing repairs" to the subdivision;
3. NCUE and Lotus "received improvement plans prepared by Martin-McIntosh from the City of Wasco";
4. NCUE and Lotus "received improvement plans prepared by Martin-McIntosh from Dewalt";
5. "Tentative Map No. 6451 for the Valley Rose Estates subdivision replaced expired Tentative Map No. 5472";
6. The "'Associative Approved Improvement Plans' referenced in the 'Notes' section of Tentative Map No. 6451 refers to the improvement plans prepared by Martin-McIntosh";
7. The "numbered lots on the Wall Improvement Plans . . . refers [sic] to the buildable lots on Tentative Map No. 6451";
8. The "numbered lots on the Wall Improvement Plans . . . refers [sic] to the lots on Tentative Map No. 5472."

**Mr. McIntosh's Requests For Admission To DeWalt**

Mr. McIntosh takes issues with DeWalt's September 17, 2009 responses to his Request for Admission Nos. 2 and 14-16 (collectively the "DeWalt RFAs").

Mr. McIntosh's Request for Admission No. 2 asked DeWalt to admit that it "received emails from Dennis McNamara from the City of Wasco with copies of Roger McIntosh's improvement plans attached to those emails." DeWalt responded that it lacked "sufficient information and belief on which to either admit or deny this request and, therefore, denies this request on that basis."

---

[2] When Mr. McIntosh prepared Map 5472 and the improvement plans, his business was a partnership known as Martin-McIntosh. The partnership later dissolved, and Mr. McIntosh retained rights to partnership work in connection with the subdivision.

3

DeWalt denied Mr. McIntosh's Request for Admission No. 14 that "6451 Tentative and Final Maps include the subdivision design as Tentative Map No. 5472."

Mr. McIntosh's Request for Admission No. 15 asked DeWalt to admit that 6451 Tentative and Final Maps are substantially similar to Tentative Map No. 5472." DeWalt asserted objections of "speculation, vague and ambiguous" and subject to the objections "denied" the request for admission and noted "there are obviously similarities between the maps."

Mr. McIntosh's Request for Admission No. 16 asked DeWalt to admit that DeWalt had "received improvement plans prepared by Martin-McIntosh for Tract 5472 from the City of Wasco." DeWalt responded that it lacked "sufficient information and belief on which to either admit or deny this request and, therefore, denies this request on that basis."

**Jury Verdict**

This Court conducted a jury trial on March 1-4 and 8-9, 2010. With its verdict, the jury found that:

1. Defendants and Wasco copied Map 5472 and that only Wasco had copied Mr. McIntosh's improvement plans;
2. NCUE, Lotus and Wasco profited directly from copying of either Map 5472 or Mr. McIntosh's improvement plans done by any of the other defendants;
3. NCUE, Lotus and Wasco failed to exercise their right and ability to supervise or control the other defendants' copying of Map 5472 or Mr. McIntosh's improvement plans;
4. Mr. McIntosh is entitled to $1.4 million in actual damages;
5. NCUE and Lotus each profited $1,992,107.50 from their respective infringing activity;
6. Wasco profited $1.5 million from its infringing activity;
7. DeWalt did not profit from its infringing activity; and
8. NCUE and Lotus acted as partners or practically partners in committing infringing activity.

**Post-Trial Matters**

In anticipation of post-trial motions, this Court issued its April 16, 2010 order ("April 16 order") to deem then Mr. McIntosh's F.R.Civ.P. 37(c)(2) attorney fees motion as premature. The April 16 order

4

1  explained:

2  > If appropriate, plaintiff may refile the motion pending the outcome of post-trial motions.
3  > If plaintiff refiles the motion, this Court ADMONISHES plaintiff specifically to: (1) attribute and allocate attorney fees that flow directly from denial of requests for
4  > admission and need to prove denied requests for admission; and (2) demonstrate calculation of reasonable fees.  This Court will not accept a mere splitting of all fees
5  > incurred since denial of the requests of admission, as plaintiff currently proposes.  This Court also will  not comb through billings to ascertain reasonableness or need for
6  > incurred attorney fees.

7  With post-trial motions, pending Wasco reached a $750,000 good faith settlement with Mr.
8  McIntosh whereby $150,000 was apportioned to actual damages and $600,000 to Wasco's profits.

9  This Court's July 7, 2010 order granted defendants a new trial on actual damages and infringing
10 profits unless Mr. McIntosh accepted an amended judgment of $161,500 for Mr. McIntosh's actual
11 damages and $0 for infringing profits.  Mr. McIntosh accepted such an amended judgment which was
12 entered on July 23, 2010.

13 **DISCUSSION**

14 **F.R.Civ.P. 37(c)(2) Attorney Fees Standards**

15 Mr. McIntosh contends that denials to the NCUE/Lotus and DeWalt RFAs compelled Mr.
16 McIntosh to engage in significant law and motion practice, discovery and trial preparation and to "try
17 his case" because the NCUE/Lotus and DeWalt RFAs asked defendants to admit elements to establish
18 defendants' liability.  Mr. McIntosh contends that the "evidence was overwhelmingly in favor of plaintiff
19 on substantial similarity and copying."  As such, he seeks to recover $87,632.55 attorney fees from
20 DeWalt which Mr. McIntosh claims to have incurred during September 17, 2009 (date of DeWalt's
21 responses) through trial and $110,764 attorney fees from NCUE and Lotus each which Mr. McIntosh
22 claims to have incurred during February 4, 2009 (near date of NCUE and Lotus' responses) through trial.
23 Mr. McIntosh seeks from defendants total attorney fees of $309,160.55 "in proving these specific
24 admissions."

25 Defendants challenge that failure to admit to the NCUE/Lotus and DeWalt RFAs resulted in the
26 attorney fees which Mr. McIntosh claims.  Defendants contend that "facts" subject to the NCUE/Lotus
27 and DeWalt RFAs were neither proved at trial nor are substantially important.

28 F.R.Civ.P. 37(c)(2) addresses a failure to admit a request for admission and provides in pertinent

part:

> If a party fails to admit what is requested under Rule 36 and if the requesting party later proves . . . the matter true, the requesting party may move that the party who failed to admit pay the reasonable expenses, including attorney's fees, incurred in making that proof. The court must so order unless:
>
> (A) the request was held objectionable under Rule 36(a);
>
> (B) the admission sought was of no substantial importance;
>
> (C) the party failing to admit had a reasonable ground to believe that it might prevail on the matter; or
>
> (D) there was other good reason for the failure to admit.

As to reasonable grounds to believe in prevailing, the issue is not whether the responding party prevailed at trial "but whether [it] acted reasonably in believing that it might prevail." *Marchand v. Mercy Medical Center*, 22 F.3d 933, 937 (9th Cir. 1994) (quoting advisory committee notes on 1970 amendment to F.R.Civ.P. 37). Moreover, denial of flawed requests for admission, although not objectionable, may substantiate "other good reason for failure to admit." *See Long v. Howard University,* 561 F.Supp.2d 85, 93 (D. D.C. 2008) ("very broad and ambiguous language" in requests for admission rendered them "significantly flawed" to warrant denials).

### Denial Of Substantial Similarity And Access To Mr. McIntosh's Work

Mr. McIntosh argues the absence of reasonable grounds for defendants' effective denials that Maps 5472 and 6451 were substantially similar given the "weight of all evidence." Mr. McIntosh contends no evidence explains away "the identical similarities in the two maps or give[s] the parties reasonable grounds for denying these admissions." Mr. McIntosh claims that he "proved that the two maps had to be similar because they both had to conform to the approved plans" for Wasco acceptance. Mr. McIntosh claims that Maps 5472 and 6451's similarity was "obvious" because Map 6451 "had to conform to the improvement plans."

Mr. McIntosh continues that DeWalt's denial of access to Mr. McIntosh's improvement plans required testimony of DeWalt and Wasco employees to show DeWalt's receipt of the improvement plans to establish liability.

DeWalt attacks Mr. McIntosh's failure "to break down and explain the direct relationship" between the denied requests for admission and attorney fees to render the DeWalt RFAs of no

6

substantial importance. DeWalt argues that the DeWalt RFAs addressing DeWalt's receipt of Mr. McIntosh's improvement plans lacked substantial importance given that "the jury found for DeWalt and against plaintiff on the issue of the improvement plans." DeWalt notes that the scope of the DeWalt RFAs did not resolve the substantial similarity issue in that the DeWalt RFAs addressed limited issues and the jury was required to address other matters as to substantial similarity. DeWalt continues that it had reasonable grounds to believe that it would prevail on the substantial similarity issue given evidence that DeWalt independently created the 6451 maps and the DeWalt RFAs' broad application of substantial similarity, leaving DeWalt to speculate and object.

NCUE and Lotus challenge several of the NCUE/Lotus RFAs as compound to render them flawed. NCUE and Lotus note that the broad NCUE/Lotus RFAs regarding substantial similarity do not address the jury's specific findings of copying and that substantial similarity "is an elusive concept, not subject to precise definition." NCUE and Lotus note that since substantial similarity in an imprecise concept, they had "reasonable grounds" to believe that they would prevail. Similar to DeWalt, NCUE and Lotus argue that the NCUE/Lotus RFAs addressing Mr. McIntosh's improvement plans lack substantial importance given the jury's finding that NCUE/Lotus did not copy the improvement plans. NCUE and Lotus further note incomplete evidence that NCUE or Lotus received the improvement plans.

Mr. McIntosh fails to establish that the defendants' responses to the NCUE/Lotus and DeWalt RFAs invoke Mr. McIntosh's entitlement to F.R.Civ.P. 37(c)(2) attorney fees. Mr. McIntosh further fails to demonstrate a direct correlation between defendants' responses and efforts necessary to secure the jury findings. Mr. McIntosh treats substantial similarity as a precise concept subject to easy discernment. It is not.

The "question of substantial similarity . . . dictates whether the factual copying, once established, is legally actionable." *Positive Black Talk, Inc. v. Cash Money Records*, 394 F.3d 357, 370 (5th Cir. 2004). The substantial similarity test contains intrinsic and extrinsic tests. *Funky Films, Inc. v. Time Warner Entertainment Co.*, 462 F.3d 1072, 1077 (9th Cir. 2006). The intrinsic test examines an ordinary person's subjective impressions of the similarities between two works and is the jury's exclusive province. *Funky Films,* 462 F.3d at 1077. "The 'intrinsic test' is a subjective comparison that focuses on 'whether the ordinary, reasonable audience' would find the works substantially similar in the 'total

concept and feel of the works.'" *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002) (quoting *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994)).

"The extrinsic test considers whether two works share a similarity of ideas and expressions as measured by external, objective criteria." *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004). Extrinsic analysis is objective and depends on "specific criteria which can be listed and analyzed," not "the responses of the trier of fact." *Funky Films*, 462 F.3d at 1077 (quoting *Kouf*, 16 F.3d at 1045). "The extrinsic test requires "analytical dissection of a work and expert testimony." *Three Blind boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000). "Analytical dissection" entails breaking the works "down into their constituent elements, and comparing those elements for proof of copying as measured by 'substantial similarity.'" *Rice v. Fox Broad. Co.*, 148 F.Supp.2d 1029, 1051 (C.D. Cal. 2001), *reversed on other grounds*, 330 F.3d 1170 (9th Cir. 2003).

Given the elusive substantial similarity concept, defendants had reasonable grounds to believe that they would prevail on the substantial similarity issue.

Mr. McIntosh likewise fails to demonstrate that defendants' responses as to assess to Mr. McIntosh's copyrighted works warrant F.R.Civ.P. 37(c)(2) attorney fees. Defendants correctly note that assess to Mr. McIntosh's improvement plans lacked substantial importance in the absence of jury findings that defendants copied the improvement plans. In the end, Mr. McIntosh's failure to connect defendants' responses to unnecessary attorney fees dooms Mr. McIntosh's attorney fees claim.

### Mr. McIntosh's Attorney Fees Calculation

To support his $309,160.55 fees, Mr. McIntosh relies on the declaration of his counsel Jeffrey Travis ("Mr. Travis"). Mr. Travis explains that he reviewed nearly 100 pages of his firm's billings since the dates of defendants' respective denials of the NCUE/Lotus and DeWalt RFAs and included those billings which "I believe were necessary to prove admissions denied and that form the basis of this motion." Mr. Travis claims he excluded "fee items that were directly related to Wasco or that were not related to proving admissions denied by both Northern and Lotus." Mr. McIntosh contends that his requested fees "were necessary to establish substantial similarity which was essential to proving indirect evidence of copying."

DeWalt argues that Mr. McIntosh has failed to establish the amount of requested attorney fees

given an absence of proof that the fees "are directly attributable to DeWalt's denial of each request for admission." DeWalt points to its counsel's detailed Excel analysis of Mr. McIntosh's attorney billings and explains that Mr. McIntosh's total fees during January 3, 2009 to April 6, 2010 were $291,055.50, nearly $20,000 less than what Mr. McIntosh seeks to recover here. Using Mr. Travis' criteria, DeWalt contends that Mr. McIntosh's fees as to defendants are limited to $145,663 of which only $117,988 was incurred during September 23, 2009 to March 4, 2010.

DeWalt chastises Mr. McIntosh's ignorance of requirements of Local Rule 293, which addresses attorney fees and provides in pertinent part:

> (b) **Matters to be Shown.** All motions for awards of attorneys' fees pursuant to statute shall, at a minimum, include an affidavit showing:
>
> (1) that the moving party was a prevailing party, in whole or in part, in the subject action, and, if the party prevailed only in part, the specific basis on which the moving party claims to be a prevailing party;
>
> (2) that the moving party is eligible to receive an award of attorneys' fees, and the basis of such eligibility;
>
> (3) the amount of attorneys' fees sought;
>
> (4) the information pertaining to each of the criteria set forth in (c); and
>
> (5) such other matters as are required under the statute under which the fee award is claimed.
>
> (c) **Criteria for Award.** In fixing an award of attorneys' fees in those actions in which such an award is appropriate, the Court will consider the following criteria:
>
> (1) the time and labor required of the attorney(s);
>
> (2) the novelty and difficulty of the questions presented;
>
> (3) the skill required to perform the legal service properly;
>
> (4) the preclusion of other employment by the attorney(s) because of the acceptance of the action;
>
> (5) the customary fee charged in matters of the type involved;
>
> (6) whether the fee contracted between the attorney and the client is fixed or contingent;
>
> (7) any time limitations imposed by the client or the circumstances;

    (8) the amount of money, or the value of the rights involved, and the results obtained;

    (9) the experience, reputation, and ability of the attorney(s);

    (10) the "undesirability" of the action;

    (11) the nature and length of the professional relationship between the attorney and the client;

    (12) awards in similar actions; and

    (13) such other matters as the Court may deem appropriate under the circumstances.  (Bold in original.)

  DeWalt notes that Mr. Travis' moving declaration addresses only the time spent by Mr. McIntosh's attorneys, not the other criteria Local Rule 293.  NCUE and Lotus complain that "[t]here are no declarations as to the reasonableness and necessity of those efforts."  DeWalt notes that Mr. McIntosh fails to comply with the April 16 order to "attribute and allocate attorneys fees that flow directly from denial of requests for admission and need to prove denied requests for admission" and to "demonstrate calculation of reasonable fees."  DeWalt explains that contrary to the April 16 order, Mr. McIntosh "has apparently split (with no methodology provided) all fees incurred since denial of the requests for admission."  DeWalt concludes that Mr. McIntosh "arbitrarily divided and allocated the remaining fees requested or used a method not disclosed."  NCUE and Lotus characterize Mr. McIntosh's attorney fees calculation as "hopelessly" confusing.

  In his supplemental reply declaration, Mr. Travis' notes that he "inadvertently overlooked" the Local Rule 293(c) criteria and offers brief, insubstantial comments to address the criteria.[3]

  Mr. McIntosh's calculation of attorney fees is abysmal overreaching.  His claim of including fees "attributable to proving substantial similarity" rings hallow.  Given Mr. McIntosh's original attorney fees motion, this Court feared that Mr. McIntosh would fail meaningfully to substantiate attorney fees and rest on the jury's grossly excessive verdict, which this Court has reduced by more than 97 percent.  The

---

[3] Mr. McIntosh's reply brief notes that "what is found in the supplemental declaration is that there is not much there that was already shown by the fee statements or known to defendants."  Mr. McIntosh appears to claim that the Local Rule 293(c) criteria are de minimis to his requested attorney fees.

April 16 order provided Mr. McIntosh strict guidance on seeking attorney fees.  Mr. McIntosh has proven either unable or unwilling to abide by the April 16 order and Local Rule 293.

Even with his reply papers, Mr. McIntosh fails meaningfully to address Local Rule 293 criteria, except time expended.  Nothing substantiates attorney hourly billing rates ranging from $280 to $525 or $125 paralegal hourly billing rates.  Mr. Travis effectively acknowledges his failure to address the criteria.

In essence, Mr. McIntosh has provided his attorneys' billings and asks this Court to accept his dubious calculations despite the April 16 order's admonishments that this Court "will not accept a mere splitting of all fees incurred since denial of the requests of admission" and "will  not comb through billings to ascertain reasonableness or need for incurred attorney fees."  A party seeking attorney fees "should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933 (1983).  Mr. McIntosh has done the opposite by claiming excessive amounts expended to address limited issues.  Mr. McIntosh does not challenge the fee calculations of DeWalt's counsel which indicate that Mr. McIntosh seeks to recover from defendants more than he was billed.  In his reply papers, Mr. McIntosh emphasizes his overreaching by noting that "$309,160.55 represents the total amount incurred to defend against the three defendants."  Mr. McIntosh does not distinguish that requested fees are attributable to establish the denied NCUE/Lotus and DeWalt RFAs.

In short, Mr. McIntosh is entitled to no attorney fees award given Mr. McIntosh's outrageous and unsupported fees calculation and the absence of causal connection between fees incurred and denial of the NCUE/Lotus and DeWalt RFAs.

**CONCLUSION AND ORDER**

For the reasons discussed above, this Court DENIES Mr. McIntosh attorney fees.

IT IS SO ORDERED.

**Dated:   August 23, 2010**               /s/ Lawrence J. O'Neill
                                           UNITED STATES DISTRICT JUDGE